**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| | § | Civil Action No. 3:20-cv-01815-CCC |
| Plaintiff, | § | |
| | § | (Judge Christopher C. Conner) |
| v. | § | |
| | § | |
| CABOT OIL & GAS CORPORATION, *et al.*, | § § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO TRANSFER
VENUE TO SOUTHERN DISTRICT OF TEXAS**

TABLE OF CONTENTS

INTRODUCTION ....................................................................................................1

STATEMENT OF QUESTION INVOLVED .......................................................3

PROCEDURAL HISTORY....................................................................................3

SUMMARY OF PLAINTIFFS' FACTUAL ALLEGATIONS..............................3

ARGUMENT AND AUTHORITIES....................................................................6

      A.    This Case Could Have Been Filed in the Southern
           District of   Texas ..........................................................7

      B.    The Private and Public Interests Weigh in Favor of
           Transfer.......................................................................7

           1.    Preferences of the Parties .....................................9

           2.    Location Where Claims Arose ...........................11

           3.    Location of Parties, Documents and
               Witnesses...........................................................14

           4.    Public Interest Factors........................................15

CONCLUSION.....................................................................................................19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: 3M Co. Secs. Litig.*,
  2020 WL 5105233 (D.N.J. Aug. 31, 2020) ......................................................18

*Allegheny County Empls. Ret. Sys. v. Energy Transfer LP*,
  2020 WL 1888950 (E.D. Pa. Apr. 16, 2020) .....................................................18

*In re Anadarko Petroleum Corp.*,
  No. 10 Civ. 4905 (PGG), 2012 WL 12894796 (S.D.N.Y. Mar. 19,
  2012) .................................................................................................................7

*Belmont v. MB Inv. Partners, Inc.*,
  708 F.3d 470 (3d Cir. 2013) ..............................................................................13

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014) ........................................................................11, 13

*City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*,
  442 Fed. App'x 672 (3d Cir. 2011) ....................................................................12

*City of Warren Police and Fire Ret. Sys. v. Zebra Techs. Corp.*,
  CV 17-44`1, 2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) .............................7, 9

*In re Digital Island Secs. Litig.*,
  357 F.3d 322 (3d Cir. 2004) ..............................................................................13

*Fain v. USA Technologies, Inc.*,
  707 Fed. App'x 91 (3d Cir. Aug. 30, 2017) .......................................................12

*Franklin U .S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
  No. Civ.A. 2:13-05805-JL, 2014 WL 1555133 (D.N.J. Apr. 14,
  2014) ......................................................................................................9, 10, 16

*Gamboa v. Citizens, Inc.*,
  A-17-CV-241-RP, 2018 WL 2107205 (W.D. Tex. May 7, 2018) .....................13

*In re Global Cash Access Holdings, Inc. Secs. Litig.*,
  2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) .......................................9, 15, 17

*Globis Capital Partners, L.P. v. Stonepath Grp., Inc.*,
  241 Fed. App'x 832 (3d Cir. 2007) ...................................................................13

*Greenwald v. Holstein*,
  2015 WL 12843229 (D.N.J. May 29, 2015) .........................................................9

*In re Hanger Orthopedic Group, Inc. Secs. Litig.*,
  418 F. Supp. 2d 164 (E.D.N.Y. 2006) .................................................................9

*In re Hertz Global Holdings Inc.*,
   905 F.3d 106(3d Cir. 2018) ..................................................................12

*Ho v. Flotek Indus., Inc.*,
   248 F. Supp. 3d 847 (S.D. Tex. 2017), *aff'd sub nom. Alaska
   Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th
   Cir. 2019) ..............................................................................................13

*Howard v. Arconic Inc.*,
   395 F. Supp. 3d 516 (W.D. Pa. 2019)......................................................8

*Huang v. Sonus Networks, Inc.*,
   2016 WL 1090436 (D.N.J. Mar. 21, 2016) .......................................9, 16

*Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council
   Philadelphia & Vicinity v. Anadarko Petroleum Corp.*,
   788 F. App'x 268 (5th Cir. 2019) ...........................................................12

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) .......................................................................6

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001) ...................................................................13

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
   330 U.S. 518 (1947)................................................................................10

*In re McDermott Intern., Inc. Secs. Litig.*,
   No. 08 Civ. 9943(DC), 2009 WL 1010039 (S.D.N.Y. Apr. 13,
   2009) .........................................................................................................7

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
   909 F.3d 48 (3d Cir. 2018) .......................................................................6

*In re Merck & Co., Inc. Secs., Deriv. & ERISA Litig.*,
   MDL No. 1658 (SRC), 2011 WL 3444199 (D.N.J. Aug. 8, 2011)....................18

*Metropolitan Life Ins. Co. v. Bank One, N.A.*,
   2012 WL 4464026 (D.N.J. Sept. 25, 2012).............................................8

*In re Nematron Corp. Secs. Litig.*,
   30 F. Supp. 2d 397 (S.D.N.Y. 1998) ......................................................10

*Oran v. Stafford*,
   226 F.3d 275 (3d Cir. 2000) ...................................................................12

*Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*,
   No. 2:19-cv-307, 2020 WL 1808270 (W.D. Pa. Apr. 9, 2020).6, 7, 8, 10, 11, 14,
   15

*Panitch v. Quaker Oats Co.*,
   No. 16-4586, 2017 WL 1333285 (E.D. Pa. Apr. 5, 2017) .......................8

*Police and Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*,
  777 F. App'x 726 (5th Cir. 2019) ................................................................12

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) .......................................................................12

*Sanders v. AVEO Pharm., Inc.*,
  No. 13-11157-DJC, 2015 WL 1276824 (D. Mass. Mar. 20, 2015)..............10, 13

*Scanlan v. Am. Airlines Grp., Inc.*,
  366 F. Supp. 3d 673 (E.D. Pa. 2019)...........................................................10

*Teamsters Local 443 Health Services & Ins. Plan v. Chou*,
  2020 WL 5028065 (Del. Ch. Aug. 24, 2020) ..................................................8

*Teamsters Local 456 Pens. Fnd. v. Univ. Health Servs.*,
  396 F. Supp. 3d 413 (E.D. Pa. 2019)...........................................................12

*Windler v. Cabot Oil & Gas Corp.*,
  No. 4:20-cv-02827 (S.D. Tex.)......................................................................2

*Wojtunik v. Kealy*,
  2003 WL 22006240 (E.D. Pa. Aug. 26, 2003) ...............................................9

*In re Yahoo! Inc.*,
  No. CV 07-3125 CAS, 2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ................................................................................................7

**Rules and Statutes**

15 U.S.C. §§ 78(b)(1)................................................................................14

28 U.S.C. § 1404(a) ...................................................................................6

Fed. R. Civ. P. 15(a)..................................................................................14

Defendants Cabot Oil & Gas Corporation ("Cabot"), Dan O. Dinges and Scott C. Schroeder ("Defendants") move to transfer this case to the United States District Court for the Southern District of Texas.

## INTRODUCTION

This is a putative nationwide securities class action against an oil and gas company headquartered in Houston, Texas and two individual defendants who reside in the Houston area. As other courts have observed, it is "routine" for securities class actions to be transferred to the federal district where the company is headquartered.[1] While Plaintiff's claims ostensibly relate to an environmental investigation by the Commonwealth of Pennsylvania regarding alleged groundwater contamination in Susquehanna County, the focus in a securities class action is on the company's ***disclosures*** to investors and not whether the company is liable in the underlying investigation. Indeed, there are legions of cases where securities fraud claims were dismissed despite significant underlying alleged regulatory or criminal violations by the company.[2] Plaintiff is not seeking to redress alleged environmental injuries to Pennsylvania residents, but to redress alleged economic injuries based on declines in Cabot's stock price affecting a putative nationwide class of investors with no unique connection to Pennsylvania.

---

[1] *See infra* footnote 20.

[2] *See infra* footnote 32.

1

This case should be litigated in Houston. The challenged disclosures were made – and are deemed by law to have been made – in the Southern District of Texas.[3] The persons responsible for preparing the disclosures live and work in that district. The Southern District of Texas has a stronger connection to the claims and a consistently shorter backlog of civil cases than the Middle District of Pennsylvania. Plaintiff effectively had one foot planted in Texas when it filed this case, as it attempted to rely on the former Texas plaintiff's notice to declare the 60-day lead plaintiff application window over.[4] Meanwhile, the flag Plaintiff has attempted to plant in the Middle District of Pennsylvania is, at best, half-mast. The Complaint is a barebones pleading that does not begin to comply with this circuit's rigorous particularity requirements for pleading a securities fraud claim.

Deference to Plaintiff's choice of forum is not warranted. The Court should thus transfer this action to the Southern District of Texas.

---

[3] *See* Ex. 1, Declaration of Deidre L. Shearer ("Shearer Declaration" or "Shearer Decl.") (attesting that public disclosures identified in Complaint were made at Cabot's headquarters in Houston); *see infra* footnote 22 (collecting cases).

[4] *See* ECF No. 17 (Nov. 12, 2020 Order, which recounts Plaintiff's initial reliance on Texas notice); *see also* ECF No. 5 at 2 (describing August 13, 2020 filing of *Windler v. Cabot Oil & Gas Corp.*, No. 4:20-cv-02827 (S.D. Tex.) and October 6, 2020 voluntary dismissal of *Windler* action).

2

## STATEMENT OF QUESTION INVOLVED

1.        Whether the Court should transfer this action to the United States District Court for the Southern District of Texas.

## PROCEDURAL HISTORY

As stated above, this case was preceded by another securities class action filing in Houston asserting the same claims on behalf of the same putative class.  The parties previously agreed that venue motions would be due 15 days after appointment of lead plaintiffs, which occurred on February 3, and that no answer or motion to dismiss would be required until after the filing of an amended complaint.[5]

## SUMMARY OF PLAINTIFF'S FACTUAL ALLEGATIONS

Cabot is an independent oil and gas company engaged in the development, exploitation, exploration and production of natural gas properties.  While Cabot's natural gas properties are located in northeastern Pennsylvania, and while Cabot has an office in Pittsburgh, Cabot's corporate headquarters is located at Three Memorial City Plaza, 840 Gessner Road, Suite 1400, Houston, Texas 77024.[6]  The two individual Defendants, Chairman, President and CEO Dan O. Dinges and CFO and Executive Vice President Scott C. Schroeder, reside within the Southern District of Texas and work primarily from the Houston corporate headquarters, which is where

---

[5] *See* ECF Nos. 13, 22, 26.  The deadline was later extended to today due to the severe weather in Texas.  *See* ECF No. 28.

[6] *See* Ex. 1, Shearer Decl. ¶.4.

3

they maintain their offices.[7]  Cabot's general counsel is also based in Houston, as is its investor relations team and its outside disclosure counsel.[8]  The employees responsible for preparing Cabot's SEC filings – including all of the Form 10-Q and 10-K filings cited in the Complaint – likewise reside in Houston.[9]  The financial statements in Cabot's periodic SEC filings are audited by PricewaterhouseCoopers LLP in Houston.[10]  The cover page of every Form 10-K and Form 10-Q cited in the Complaint states that Cabot's principal executive offices are located in Houston.[11] Cabot investors are thus fully informed that they are buying stock in a company headquartered in Houston.

This case is part of a cascade of so-called "event driven" securities lawsuits, in which plaintiffs attempt to shoehorn allegations of environmental noncompliance, safety issues, regulatory violations or other adverse "events" into a securities fraud complaint.[12]  Plaintiff filed this suit after the Pennsylvania Attorney General's office charged Cabot in June 2020 with violating Pennsylvania environmental laws in

---

[7] *See id.* ¶ 5.

[8] *See id.* ¶¶ 4, 6.  Cabot's investor relations team, based in Houston, is responsible for drafting earnings-related press releases and talking points for earnings calls with investors and analysts.

[9] *See id.*

[10] *See id.* ¶6.

[11] *See* Declaration of Peter A. Stokes ("Stokes Decl.") ¶ 7.

[12] *See, e.g.,* footnote 34 (listing examples of similar cases).

4

connection with alleged groundwater contamination in Susquehanna County.[13]  By Plaintiff's admission, Cabot's stock price declined by only approximately 3% after this announcement, with no allegation that this modest decline was significantly different in magnitude from the normal daily variation in Cabot's stock price or the stock price of other companies in the notoriously cyclical oil and gas industry.[14] There is no assertion that Pennsylvania authorities have shut down any Cabot facilities as a result of the June 2020 announcement.

Plaintiff nonetheless asserts that Cabot's careful public disclosures amount to securities fraud.  Much like in other "event driven" suits, the Complaint asserts in conclusory fashion that Cabot's prior SEC filings – which were prepared at Cabot's Houston headquarters – must have been fraudulent based on the Attorney General's announcement, with no factual allegations regarding the veracity of Cabot's disclosures other than the Pennsylvania Attorney General announcement and Cabot's prior disclosures.  Plaintiff cannot credibly claim that the risk of potential adverse actions by Pennsylvania authorities over alleged groundwater contamination was unknown to investors.  Cabot has faced highly publicized allegations for more than a decade regarding the purported impact of hydraulic fracturing on methane

---

[13] *See* Compl. ¶ 6.

[14] *See id.* ¶ 31.  Plaintiff also alleges that a 12% decline occurred on July 26, 2019. *See id.* ¶ 26.

levels in Susquehanna County groundwater.  As Plaintiff concedes, Cabot repeatedly disclosed in its own public SEC filings that it faced unresolved claims from Pennsylvania regulators over alleged groundwater pollution in that region.[15]  While Cabot stated that it "believe[d] the source of methane has been remediated" and was "working with" Pennsylvania regulators "to reach agreement on the disposition" of these matters, Cabot made clear that no "agreement" with regulators had been reached.[16]  At no point did Cabot tell investors it could fully assure the alleged contamination was "remediated" to the satisfaction of Pennsylvania authorities or that no further governmental action would be pursued.

## ARGUMENT AND AUTHORITIES

A motion to transfer is appropriate under 28 U.S.C. § 1404(a) if the action could have originally been filed in the transferee forum and if the balancing of the applicable private and public interests favors a transfer.[17]

---

[15] *See id.* ¶¶ 20-27.

[16] *See id.*  The phrase "working with . . . to reach agreement" conveys on its face that no agreement has yet been reached.

[17] *See Osborne*, 2020 WL 1808270, at *3 (citing *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).

6

**A.      This Case Could Have Been Filed in the Southern District of Texas**

This case could have been filed in the Southern District of Texas.  Exchange Act claims "may be brought in a district where a defendant resides or is found, among other things."[18]  Cabot is headquartered in the Southern District of Texas.  Mr. Dinges and Mr. Schroeder live there.

**B.      The Private and Public Interests Weigh in Favor of Transfer**

The applicable private and public interests likewise support transfer.  In assessing the private interests, courts consider the forum preferences of both plaintiffs and defendants, the place where the claims arose, and the location of parties, documents and witnesses.[19]

These interests typically converge in securities cases and weigh heavily in favor of litigating the case where the company is headquartered and where the challenged disclosures were made.  As noted above, it is "routine" for federal courts to transfer securities class action claims to the district of the company's headquarters.[20]  The core liability issue is not whether Cabot is responsible for

---

[18] *Osborne*, 2020 WL 1808270, at *5.

[19] *See id.* at *6-9.

[20] *See In re Anadarko Petroleum Corp.*, No. 10 Civ. 4905 (PGG), 2012 WL 12894796, at *9 (S.D.N.Y. Mar. 19, 2012) ("'While there is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered, such transfers to the issuer's home district are routine as a practical matter'") (quoting *In re McDermott Intern., Inc. Secs. Litig.*, No. 08 Civ. 9943(DC), 2009 WL 1010039, at *6 (S.D.N.Y. Apr. 13, 2009)); *see also*

alleged environmental injuries, but whether Cabot's disclosures to investors were false and whether the persons who made them acted with scienter.[21]   Those disclosures occurred – and are deemed to have occurred – at Cabot's headquarters.[22]

The fact that the disclosures may relate to Cabot's environmental practices and business operations in this district is insufficient to prevent transfer.   Courts

---

*City of Warren Police and Fire Ret. Sys. v. Zebra Techs. Corp.*, CV 17-44`1 (SJF), 2019 WL 3997354, at *6 (E.D.N.Y. Aug. 23, 2019) (same); *In re Yahoo! Inc.*, No. CV 07-3125 CAS, 2008 WL 707405, at *9 (C.D. Cal. Mar. 10, 2008) (same); *see also Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*, No. 2:19-cv-307, 2020 WL 1808270, at *7-8 (W.D. Pa. Apr. 9, 2020) (transferring class and derivative actions to forum where defendant was headquartered and made purported false and misleading statements); *Metropolitan Life Ins. Co. v. Bank One, N.A.*, 2012 WL 4464026, at *6 (D.N.J. Sept. 25, 2012) (recognizing that "[n]umerous courts have transferred claims to districts where the alleged misrepresentations were made, and not where the alleged misrepresentations were received or relied upon").

[21] *See, e.g., Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 528 (W.D. Pa. 2019) (dismissing securities case arising from Grenfell Tower tragedy and emphasizing that "this is not a products liability case" but, rather, a securities disclosure case); *cf Teamsters Local 443 Health Services & Ins. Plan v. Chou*, 2020 WL 5028065, at *1 (Del. Ch. Aug. 24, 2020) (noting that while shareholder derivative cases "often invoke judicial sympathies" due to impact of company's actions on "the public at large," the issue in a derivative case is whether the company "should *itself* recover damages that ultimately inure to the benefit of the corporate owners, its stockholders").

[22] *See Osborne v. Employee Benefits Admin. Board of Kraft Heinz*, 2020 WL 1808270, at *7 (W.D. Pa. Apr. 9, 2020) ("'[I]n the context of claims based on misrepresentations and omissions, misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received'") (quoting *Panitch v. Quaker Oats Co.*, No. 16-4586, 2017 WL 1333285, at *6 (E.D. Pa. Apr. 5, 2017)).

frequently grant transfer even in situations where at least part of the operational or

business events relevant to the claims occurred in the plaintiff's chosen forum.[23]

### 1.      Preferences of the Parties

The "preferences of the parties" factor weighs in favor of transfer.  Defendants

prefer to litigate this case in the Southern District of Texas, where Cabot is

---

[23] *See Huang v. Sonus Networks, Inc.*, 2016 WL 1090436, at *3 (D.N.J. Mar. 21, 2016) (fact that defendants' product development employees were located in New Jersey insufficient to prevent transfer to district where company was headquartered and where alleged misstatements were made); *Greenwald v. Holstein*, 2015 WL 12843229, at *8 (D.N.J. May 29, 2015) (granting transfer to Southern District of Ohio and holding that "although the sale of AWG [at issue in the securities complaint] may have occurred in New Jersey, many of the alleged misrepresentations that serve as the basis for the fraud occurred in Ohio, not New Jersey"); *Wojtunik v. Kealy*, 2003 WL 22006240, at *4 (E.D. Pa. Aug. 26, 2003) (granting transfer where company's public statements were "made from Arizona"; fact "that IFC conducted some business in the Eastern District of Pennsylvania" did not establish venue in Pennsylvania for Section 1391(b) purposes); *City of Warren Police and Fire Ret. Sys. v. Zebra Tech. Corp.*, 2019 WL 3997354, at *6 (E.D.N.Y. Aug. 23, 2019) ("The fact that some of the challenged statements concern the integration of Enterprise, which is based in Holtsville, does not change the fact that the statements and omissions originated in Illinois," where the company was headquartered; granting transfer); *In re Global Cash Access Holdings, Inc. Secs. Litig.*, 2008 WL 4344531, at *6 (S.D.N.Y. Sept. 18, 2008) ("Although [the offerings] undoubtedly occurred in New York, they are insufficient to pull the 'center of gravity' of this litigation away from Nevada, where the critical alleged misstatements and omissions occurred"); *Franklin U .S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. Civ.A. 2:13-05805-JL, 2014 WL 1555133, at *8 (D.N.J. Apr. 14, 2014) (holding that district where "center of gravity" of dispute is located has "stronger local interest"); *In re Hanger Orthopedic Group, Inc. Secs. Litig.*, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006) (fact that "some of the alleged billing fraud" occurred in New York does not shift "center of gravity" from headquarters).

headquartered and where the individual Defendants reside.[24]   In contrast, while Plaintiff has filed its claim here, it has done so on behalf of a putative nationwide class of investors in a company with a current market capitalization in excess of $7 billion.[25]   It is well-settled that "[a]n individual plaintiff's forum preference . . . *is entitled to little weight in a shareholder derivative suit or in a class action*," where the plaintiff is representing a class of geographically dispersed parties with no alleged connection to the plaintiff's chosen forum.[26]   The named plaintiff's role in a securities class action is typically far more limited than the defendants.[27]   Delaware County moreover appears to be located in the Eastern District, which would further undercut any deference owed to its forum preference.[28]

---

[24] *See id.* at *7 (considering defendants' preference "incrementally" in favor of transfer.

[25] *See* Ex. 2 (printout of Yahoo! Finance page for Cabot as of February 25, 2021).

[26] *See Osborne*, 2020 WL 1808270, at *6; *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 677 (E.D. Pa. 2019) ("[W]here there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

[27] *See Bolton*, 549 F. Supp. at 1313 ("the nominal plaintiff's role in the litigation is likely to be quite minimal'); *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 402 (S.D.N.Y. 1998) ("[T]rials in securities class actions focus almost entirely on the defendants' conduct.").

[28] *See Sanders*, 2015 WL 1781572, at *2 (giving plaintiff's Eastern District of Pennsylvania choice of forum less deference where plaintiff resided in the Middle District).

### 2.    Location Where Claims Arose

The claims arose in Houston.  As set forth above, this is not an environmental compliance case, but a securities disclosure case where the claims are deemed by law to have arisen in the jurisdiction where the disclosures were made.[29]  The Form 10-K and Form 10-Q filings referenced in the Complaint – which are the only public disclosures alleged to be misleading – were prepared and filed in Houston by Cabot employees based in the Houston area.[30]

The core issues with respect to liability likewise pertain to the accuracy of the disclosures prepared in Houston and whether the Houston-based individual Defendants acted with fraudulent intent.  A securities plaintiff must plead and prove that the disclosures were materially false and were made with scienter, which requires specific facts showing intent to defraud or severe recklessness by the maker of the alleged misstatements.[31]  Companies and individuals are not subject to strict liability in securities cases merely because the operation of the business allegedly violated environmental, safety or other laws.  To the contrary, courts frequently dismiss securities fraud claims arising from these types of events based on the failure

---

[29] *See supra* footnote 22; *Osborne*, 2020 WL 1808270, at *7.

[30] *See* Ex. 1, Shearer Decl. ¶¶ 4-6.

[31] *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168 (3d Cir. 2014) (emphasizing "exacting" requirements of particularized facts to establish both falsity and scienter).

to show an actionable public misstatement or the required "strong inference" of scienter.[32] The fraudulent intent of senior executives may not be presumed based on their positions, but must typically be established through particularized allegations and evidence showing their personal awareness of facts contradicting their disclosures or facts showing concrete personal motives to defraud.[33] Companies moreover do not have a freestanding duty to "volunteer" the existence of alleged

---

[32] *See, e.g., Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241 (3d Cir. 2013) (affirming dismissal despite customs violations leading to $7 million in anticipated fines); *City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*, 442 Fed. App'x 672, 676 (3d Cir. 2011) (affirming dismissal despite alleged price fixing conspiracy); *Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council Philadelphia & Vicinity v. Anadarko Petroleum Corp.*, 788 F. App'x 268, 269-70 (5th Cir. 2019) (per curium) (affirming dismissal of securities class action arising from fatal explosion despite alleged regulatory violations); *Police and Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 728-730 (5th Cir. 2019) (per curium) (affirming dismissal of claims against Plains All American arising from California oil spill that resulted in criminal charges); *Teamsters Local 456 Pens. Fnd. v. Univ. Health Servs.*, 396 F. Supp. 3d 413, 439 (E.D. Pa. 2019) (dismissing despite $127 million settlement with DOJ).

[33] *See Rahman*, 736 F.3d at 246-47 (refusing to apply "collective scienter" and "core operations" theories where no particularized allegations supported inference that CEO and CFO personally knew of facts contradicting their public statements); *Fain v. USA Technologies, Inc.*, 707 Fed. App'x 91, 96-97 (3d Cir. Aug. 30, 2017) (affirming dismissal despite significant financial restatement; "That Defendants were in top positions at USA Technologies, alone, is not enough" to support strong inference that executives knew of accounting errors, despite purportedly "obvious nature of the error" and 900% understatement of bad debt); *In re Hertz Global Holdings Inc.*, 905 F.3d 106, 113, 117(3d Cir. 2018) (allegations that "the Individual Defendants presided over a poorly managed corporation and that the mismanagement created an environment in which improper accounting practices flourished" insufficient to survive dismissal); *Oran v. Stafford*, 226 F.3d 275, 288-89 (3d Cir. 2000) (analyzing individual motives of named defendants).

12

regulatory or legal violations. [34] Disclosures must be more than arguably or debatably misleading to survive a motion to dismiss.[35] Plaintiff must show that the disclosures were made with a mental state approaching "conscious deception."[36]

The cases cited in the preceding paragraph yield two unmistakable takeaways. First, Plaintiff's conclusory Complaint comes nowhere close to satisfying this circuit's "exacting" requirements for securities fraud claims[37] (which should further

---

[34] *See City of Edinburgh*, 754 F.3d at 174 (emphasizing that companies generally have no duty to volunteer unfavorable facts unless omission would render affirmative statements misleading).

[35] *See Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017) ("Even if Flotek could have provided clearer disclosures . . ., Flotek's actual disclosures are not so blatantly misleading as to be severely reckless."), *aff'd sub nom. Alaska Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019); *see also Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) (claim fails where "the duty to disclose . . . was not so clear"); *Gamboa v. Citizens, Inc.*, A-17-CV-241-RP, 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (explaining plaintiff "must show more than that it is debatable whether the disclosures were adequate"); *Sanders v. AVEO Pharm., Inc.*, No. 13-11157-DJC, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015) (finding no strong inference of scienter even if statements are arguably misleading when sufficiency of disclosures is "at least debatable.").

[36] *Globis Capital Partners, L.P. v. Stonepath Grp., Inc.*, 241 Fed. App'x 832, 835 (3d Cir. 2007) (affirming dismissal and emphasizing that Third Circuit "employ[s] a demanding standard of recklessness to ensure that 'the culpability attaching to such reckless conduct closely approaches that which attaches to conscious deception'") (quoting *In re Digital Island Secs. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004)); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493-94 (3d Cir. 2013) (affirming dismissal and emphasizing that making statements without sufficient investigation does not rise to "extreme departure from the standards of ordinary care" required to show recklessness).

[37] *See City of Edinburgh Council*, 754 F.3d at 168 (emphasizing "exacting" requirements).

13

weigh against deferring to Plaintiff's choice of forum[38]).   Simply alleging in conclusory fashion that Cabot was charged with environmental violations and cutting-and-pasting block quotes from Cabot's SEC disclosures does not amount to particularized facts supporting a strong, cogent and compelling inference that the persons who made Cabot's careful public disclosures acted with scienter.   And second, the crux of the liability inquiry will focus on whether the disclosures made in Houston were actionably false and whether Cabot executives in Houston acted with fraudulent intent.   The "center of gravity" for this case is Houston.

### 3.   Location of Parties, Documents and Witnesses

The location of the parties, relevant documents and witnesses likewise supports transfer.[39]   As set forth in the Shearer Declaration, the key witnesses involved in preparing the disclosures at issue in this case are located in Houston.[40]   Cabot's outside auditors and disclosure counsel are also located in Houston.[41]   It would be significantly more burdensome and disruptive to Cabot if its two most senior officers, Mr. Dinges and Mr. Schroeder, along with Cabot's Houston-based

---

[38] To be sure, Plaintiff has a right to amend under Fed. R. Civ. P. 15(a) and intends to exercise that right.  Nothing in the PSLRA's plain language, however, excuses original complaints from its pleading requirements.  *See* 15 U.S.C. §§ 78(b)(1); (b)(2)(A); (c)(1) (making clear that PSLRA's substantive requirements apply to any "complaint" filed in a federal securities case).

[39] *See Osborne*, 2020 WL 1808270, at *8-9.

[40] *See* Ex. 1, Shearer Decl. ¶¶ 4-6.

[41] *See id.*

employees who were involved with the disclosures, were required to attend trial in the Middle District of Pennsylvania than in the Southern District of Texas.[42]  The relevant documents pertaining to the preparation of the challenged Form 10-Ks and Form 10-Qs, as well as Cabot's servers and the emails and documents bearing on the critical issue of whether Mr. Dinges or Mr. Schroeder personally knew any of their statements were false, are likewise predominantly located in Houston.[43]  While documents concededly can be produced across jurisdictions, the location of parties, documents and witnesses nonetheless supports transfer.[44]

### 4.    Public Interest Factors

The relevant public interest factors likewise support transfer.[45]  There is a strong public interest in having lawsuits heard in the district at the "center of gravity" for the dispute, as it is more sensible that the burdens of litigation (particularly complex class action litigation) should fall on prospective jurors and court personnel

---

[42] *See id.* ¶¶ 5-6.

[43] *See id.* ¶ 9.

[44] *See In re Global Cash Access*, 2008 WL 4344531, at *5 (holding that while "the location of relevant documents may be of less significance" in light of modern technology, "it nonetheless retains some relevance to the venue inquiry").

[45] *See Osborne*, 2020 WL 1808270, at *10 (discussing obligation to consider "interests of justice," "practical considerations," court congestion, local interests and other factors).

15

in the district having the most direct connection with the claims.[46]  As stated above, this is a securities case to recover economic damages on behalf of Cabot shareholders based on public disclosures prepared and filed in Houston, not an action seeking to vindicate alleged environmental injuries to Pennsylvania residents.

Court congestion also weighs in favor of transfer.[47]  According to the most recent *Federal Court Management Statistics* report, while the Southern District of Texas has more pending cases per judge, this discrepancy is a function of the district's large criminal docket (which, judging from the statistics, presumably includes a significant volume of cases resolved by early guilty pleas).[48]  The Middle District of Pennsylvania has averaged more civil cases per judge and longer median times from filing to disposition in civil and criminal cases for all six 12-month periods covered in the report.[49]  The Middle District of Pennsylvania has also

---

[46] *See Franklin*, 2014 WL 1555133, at *8 (holding that district where "center of gravity" of dispute is located has "stronger local interest" in adjudicating dispute).

[47] *See Huang v. Sonus Networks, Inc.*, No. 15-2407, 2016 WL 1090436, at *4 (D.N.J. Mar. 21, 2016) (finding that court congestion statistics favored transfer).

[48] *Compare* Ex. 3 (Statistics Page for MDPA) *with* Ex. 4 (Statistics Page for SDTX). The full report is available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.

[49] The "Civil Filings" row in the "Actions per Judgeship" section reflects higher per-judge civil case totals for all six years in the Middle District.  The "From Filing to Disposition" rows in Exhibits 3 and 4 reflect shorter median times every year in the Southern District of Texas.

consistently had a larger proportion of civil cases pending for more than three years – a percentage that is nearly twice as high for the most recent 12-month period.[50] Judicial economy is better served by adjudicating securities claims against a Houston-based company in a less-congested Houston court.

There is also no doubt that the Southern District of Texas is capable of adjudicating federal securities claims.[51]  According to the Stanford Law School Securities Class Action Clearinghouse site (which tracks securities class action filings), 130 securities class actions have been filed in the Southern District of Texas (owing to the large number of public companies headquartered there), as compared to five in the Middle District of Pennsylvania.[52]  These statistics are consistent with the policy favoring resolution of securities cases where companies are headquartered.

Further, while Cabot takes shareholder losses seriously and regrets when investors lose money, this is not a case where Plaintiff alleges catastrophic economic losses to Pennsylvania residents.  For itself, Delaware County alleges a total loss of $158,608.71, which reflects approximately seven percent of its alleged

---

[50] The "Number (and %) of Civil Cases Over 3 Years Old" column reflects that 10.4% of the civil cases pending in this District are more than three years old, versus 5.5% in the Southern District.

[51] *See Global Cash Access*, 2008 WL 4344531, at *7 ("Federal courts throughout the nation are equally capable of applying federal securities laws").

[52] *See* Ex. 5 and 6 (screenshots of search results for each district).

$2,156,402.95 investment (and which reflects a small percentage of Cabot's overall $7 billion market capitalization).[53]   Even if Delaware County could establish liability, its actual recoverable loss would likely be below $158,608.71, as securities plaintiffs may only recover losses actually caused by the alleged misstatements and cannot recover losses caused by market downturns, the vagaries of the oil and gas industry or other issues unrelated to the alleged fraud.[54]  In other words, this is not a case where Pennsylvania residents were allegedly victimized by a Ponzi scheme or a total corporate collapse.  The suit seeks recovery of more limited alleged losses by investors nationwide in a cyclical industry prone to large stock price swings.  There is no compelling public interest reason why a case over alleged stock price losses affecting investors nationwide should be litigated in a forum other than where the company is based and where the challenged statements were made.

Defendants acknowledge that courts do sometimes deny transfer in securities cases.[55]  As noted above, however, Defendants believe that the preponderance of

---

[53] *See* ECF No. 6-4 (listing Delaware County's alleged purchases and losses).

[54] *See In re Merck & Co., Inc. Secs., Deriv. & ERISA Litig.*, MDL No. 1658 (SRC), 2011 WL 3444199, at \*34 (D.N.J. Aug. 8, 2011) (discussing required causal nexus).

[55] *See In re: 3M Co. Secs. Litig.*, 2020 WL 5105233, at \*3-4 (D.N.J. Aug. 31, 2020) (declining to transfer securities class action to location of company's headquarters, where at least one alleged misstatement was made in New York rather than at company's headquarters and one plaintiff was based in District of New Jersey); *Allegheny County Empls. Ret. Sys. v. Energy Transfer LP*, 2020 WL 1888950, at \*6 (E.D. Pa. Apr. 16, 2020) (denying transfer in case where "some of Defendants'

18

case authority supports transfer to the district where a company is headquartered and where the challenged public statements were prepared.  The claims here are based on public SEC filings emanating from Cabot's Texas headquarters.  Plaintiff is not suing to vindicate alleged environmental injuries in Pennsylvania, but to vindicate purported economic injuries to a nationwide class of investors in a Texas-based company.  Those investors bought stock in a company that has told investors it is headquartered in Texas.  Transferring this case would align with putative class members' expectations and would serve the private and public interests.

## CONCLUSION

The Court should thus transfer this action to the Southern District of Texas.

---

alleged false statements and misrepresentations originated from their headquarters in Dallas").

Dated:        February 25, 2021        Respectfully submitted,

/s/ Peter A. Stokes
Peter A. Stokes *pro hac vice*
TX  State Bar No. 24028017
peter.stokes@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598

Amy L. Barrette
PA ID No.  87318
BUCHANAN INGERSOLL & ROONEY,
PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-1626
Facsimile: 412-562-1041
Email: amy.barrette@bipc.com

*Counsel for Defendants*

OF COUNSEL:
Gerard G. Pecht (application for special
admission to be filed)
State Bar No. 15701800
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246

20

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.8(b)(2) of the Rules of Court of the United States District Court for the Middle District of Pennsylvania, I hereby certify that **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF TEXAS** contains 4,944 words, excluding the title page, tables, and certifications, as counted by Microsoft Word 2016.

/s/ *Peter A. Stokes*
Peter A. Stokes

21

## CERTIFICATE OF CONCURRENCE

I hereby certify that pursuant to L.R. 7.1, I conferred by telephone with counsel for Lead Plaintiff regarding the relief requested in this motion and was informed that Lead Plaintiff does not concur with the motion.

/s/ *Peter A. Stokes*

Peter A. Stokes

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on February 25, 2021, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.


/s/ *Peter A. Stokes*

Peter A. Stokes

23