UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　Plaintiff,<br><br>　　vs.<br><br>CABOT OIL & GAS CORPORATION, et al.,<br><br>　　　　　　　　　Defendants. | Civ. Action No. 3:20-cv-01815-CCC<br><br><u>CLASS ACTION</u><br><br>The Honorable Christopher C. Conner<br><br>LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF TEXAS |

4821-3474-3010.v1

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF QUESTION INVOLVED.................................................3

III.  FACTUAL AND PROCEDURAL BACKGROUND ....................................3

IV.   ARGUMENT.......................................................................................7

    A.    Defendants Fail to Establish That the Private and Public Interest Factors Strongly Favor Transfer ........................................................8

        1.    The Private Interest Factors Do Not Favor Transfer ...............10

            a.    Lead Plaintiff's Venue Preference Weighs Against Transfer.................................................................10

            b.    Defendants' Venue Preference Does Not Warrant Shifting Inconvenience from Defendants to Lead Plaintiff .........................................................13

            c.    Lead Plaintiff's Claims Arise from Defendants' Activity in Pennsylvania.................................................15

            d.    Defendants' Convenience as Indicated by Physical and Financial Condition Should Be Afforded No Weight...........................................................16

            e.    Convenience of Witnesses Favors This District............16

            f.    The Location of Books and Records Is Neutral ............19

    B.    The Public Interest Factors Do Not Favor Transfer...........................20

V.    CONCLUSION...................................................................................23

- i -

4821-3474-3010.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Advanced Fluid Sys., Inc. v. Huber*,
   2014 WL 1808652 (M.D. Pa. May 7, 2014)..............................................8, 9, 20

*Amgen, Inc. v. Ariad Pharms., Inc.*,
   513 F. Supp. 2d 34 (D. Del. 2007)...................................................................17

*Battle v. Wal-Mart Stores, Inc.*,
   2019 WL 5290540 (E.D. Pa. Oct. 17, 2019) ...............................................17, 22

*Berger v. Marriot Int'l, Inc.*,
   2020 WL 4815803 (E.D. Pa. Aug. 19, 2020) .....................................8, 9, 11, 12

*Berman v. Informix Corp.*,
   30 F. Supp. 2d 653 (S.D.N.Y. 1998) .................................................................11

*Coppola v. Ferrellgas, Inc.*,
   250 F.R.D. 195 (E.D. Pa. 2008)........................................................................17

*Edwards v. Equifax Info. Servs., LLC*,
   313 F. Supp. 3d 618 (E.D. Pa. 2018)................................................................13

*EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*,
   379 F. Supp. 2d 728 (E.D. Pa. 2005)................................................................14

*Gielata v. Heckmann*,
   2010 WL 3940815 (D. Del. Oct. 6, 2010).............................................13, 16, 19

*Huang v. Sonus Networks, Inc.*,
   2016 WL 1090436 (D.N.J. Mar. 21, 2016) .....................................................9, 14

*In re DBSI, Inc.*,
   2014 WL 4828882 (D. Del. Sept. 25, 2014).......................................................16

*In re Geopharma, Inc.*,
   2005 WL 1123883 (S.D.N.Y. May 11, 2005) ...............................................18, 23

- ii -

**Page**

*In re Heckmann Corp. Sec. Litig.*,
  2011 WL 1219230 (D. Del. Mar. 31, 2011) ......................................................13

*Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
  797 F. Supp. 2d 472 (D. Del. 2011)...................................................................8

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ..................................................................*passim*

*Kiker v. SmithKline Beecham Corp.*,
  2014 WL 4948624 (E.D. Pa. Oct. 1, 2014) ......................................................18

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947)....................................................................................11, 12

*Leatherman v. Cabot Oil & Gas Corp.*,
  2013 WL 1285491 (E.D. Pa. Mar. 29, 2013) ...................................................21

*Lony v. E.I. du Pont de Nemours & Co.*,
  886 F.2d 628 (3d Cir. 1989) ...............................................................................8

*Moore v. St. Paul Cos., Inc.*,
  1995 WL 11187 (D.N.J. Jan. 3, 1995)...............................................................21

*Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*,
  2020 WL 1808270 (W.D. Pa. Apr. 9, 2020)......................................................22

*Plumbers' Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co.*,
  753 F. Supp. 2d 166 (S.D.N.Y. 2010) ...............................................................15

*Ret. Sys. v. Energy Transfer LP*,
  2020 WL 1888950 (E.D. Pa. Apr. 16, 2020)...............................................*passim*

*S-G Sec., Inc. v. Fuqua Inv. Co.*,
  466 F. Supp. 1114 (D. Mass. 1978)...................................................................10

*Sanders v. Ethicon, Inc.*,
  2015 WL 1781572 (E.D. Pa. Apr. 16, 2015).....................................................12

4821-3474-3010.v1

**Page**

*Sec. Police & Fire Pros. of Am. Ret. Fund v. Pfizer, Inc.*,
   2011 WL 5080803 (D.N.J. Oct. 25, 2011) ...........................................................9

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) ....................................................................7, 8, 10

*Sovereign Bank, F.S.B. v. Rochester Cmty. Sav. Bank*,
   907 F. Supp. 123 (E.D. Pa. 1995)................................................................2, 10

*Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*,
   2009 WL 1845236 (E.D. Pa. June 26, 2009).......................................................8

## STATUTES, RULES AND REGULATIONS

28 U.S.C.
   §1404(a) ...........................................................................................................2

Exchange Act .....................................................................................10, 18

## SECONDARY AUTHORITIES

Private Securities Litigation Reform Act of 1995 ("PSLRA")
   Pub. L. No. 104-67, 109 Stat. 737 (1995) ..........................................................7

4821-3474-3010.v1

Lead Plaintiff Delaware County Employees Retirement System ("Lead Plaintiff" or "Delaware County") respectfully submits this Memorandum of Law in opposition to Defendants'[1] motion to transfer the above-captioned action to the United States District Court for the Southern District of Texas (ECF Nos. 29-30) (the "Motion").

## I.    INTRODUCTION

This matter concerns Defendants' alleged misrepresentations to investors concerning Cabot's (non)compliance with environmental laws and regulations through its fracking operations in Susquehanna County – within the jurisdiction of the United States District Court for the Middle District of Pennsylvania (the "District"). Therefore, not only is this District the site of significant conduct underlying this action, but (as Defendants fail to mention in their Motion) it is also where most of Cabot's employees work, and where *all* of Cabot's production and operations occur – as they have for years.  Lead Plaintiff, a fiduciary representing retired and active public employees from roughly 124 miles away in Delaware County, Pennsylvania, elected to file this action in this District, and its choice is entitled to considerable deference.

---

[1]    "Defendants" refers to Cabot Oil & Gas Corporation ("Cabot" or the "Company"), Dan O. Dinges, and Scott C. Schroeder.

- 1 -

4821-3474-3010.v1

While the Court in its discretion may transfer venue under 28 U.S.C. §1404(a), it should do so only if it finds Defendants have met their heavy burden of establishing "the need for transfer" to their preferred venue, in particular by showing that the convenience of the parties and witnesses strongly favors transfer of the action from this District to Texas. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).[2] A careful consideration of the public and private interest factor analysis set forth in *Jumara* establishes that the Motion should be denied because Defendants have failed to make the requisite showing.

***First***, Defendants fail to rebut the strong presumption in favor of litigation proceeding in Lead Plaintiff's chosen venue. Their argument that securities fraud claims brought under the Securities Exchange Act of 1934 ("Exchange Act") must be tried in the location of the corporate defendant's headquarters is at odds with the Exchange Act's liberal venue provision, which courts have long recognized "'represents an affirmative congressional policy choice to allow plaintiffs in securities cases the ***widest possible choice of forums*** in which to sue.'" *Sovereign Bank, F.S.B. v. Rochester Cmty. Sav. Bank*, 907 F. Supp. 123, 126 (E.D. Pa. 1995).

***Second***, the presumption in favor of Lead Plaintiff's chosen venue is substantial here, given that Lead Plaintiff's choice is this District, where the underlying conduct

---

[2]     Unless otherwise noted: (1) all internal citations and quotation marks are omitted; and (2) all emphasis is added.

4821-3474-3010.v1

about which Defendants allegedly lied took place.  Indeed, important third-party witnesses located in this District that Lead Plaintiff expects to rely on at trial (such as Pennsylvania officials and former Cabot employees) would likely be unavailable to testify live if this case were transferred to Texas.  In contrast, Defendants fail to identify any third-party who would be unavailable here.  Defendants cannot even claim their *own* convenience militates against litigating in this District, given their exclusive, "pure-play" production operation here – this is literally the only place Cabot produces anything.

Taken together, Defendants' showing under these and the other private and public interest factors does not support transfer to Texas.

## II.   STATEMENT OF QUESTION INVOLVED

Question Involved:  Whether Defendants demonstrate that the convenience of the parties and witnesses strongly favors transfer.

## III.   FACTUAL AND PROCEDURAL BACKGROUND

Delaware County represents retired and active public employees from the fifth most populous county in Pennsylvania and serves to safeguard and invest the pension funds of its constituents.  It is located in Media, Pennsylvania, approximately 124 miles from the United States Courthouse for the United States District Court for the Middle District of Pennsylvania in Scranton, where this Court sits.

4821-3474-3010.v1

Cabot is an oil and gas company incorporated in Delaware and headquartered in Houston, Texas. For years, its operations have consisted almost exclusively of the production of natural gas from the Marcellus Shale in Susquehanna County, Pennsylvania, in this District. Cabot describes itself as a "pure-play Marcellus Shale company focused on [its] low-cost, high-return position in Susquehanna County, Pennsylvania." Ex. A at 6 (all Exhibits are attached to the Declaration of Lawrence F. Stengel, filed herewith). In other words, Cabot's entire business consists of production in this District. In 2019 and 2020, Cabot disclosed that its production in the Marcellus Shale "represent[ed] *substantially all* of [its] total equivalent production for the year" (*see* Ex. B at 8, Ex. C at 8), and, as shown below, Cabot has derived 89.8% or more of its total annual production from this District since 2015:

| Cabot's Annual Production | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|
| Marcellus Net Prod. (Bcf) | 540.8 | 581.9 | 641.7 | 729.9 | 865.3 | 857.7 |
| Total Prod. (Bcfe) | 602.5 | 627.1 | 685.3 | 735.0 | 865.3 | 857.7 |
| Marcellus as % of Total Prod. | 89.8% | 92.8% | 93.6% | 99.3% | 100.0% | 100.0% |

*See* Ex. D at 13, Ex. C at 12; *see also* Ex. A at 10.

In fact, in 2011, "Cabot [was] named #1 performing S&P 500 stock, driven by [its] success in the Marcellus." Ex. E at 13. By 2016, Cabot had made $4.6 billion in capital investments in its Pennsylvania operations. *Id.* at 9. Today, "Cabot is one of the largest and lowest-cost U.S. producers of gas in the prolific Marcellus region of Pennsylvania." Ex. F.

- 4 -

Consistent with its exclusive focus on the Marcellus Shale, Cabot has a heavy presence in Pennsylvania and in this District. Of Cabot's 503 total employees, 411 (over 81%) work in Pennsylvania, with 323 (over 64%) in this District, as shown below. Ex. C at 19. Moreover, Cabot's wholly-owned subsidiary – GasSearch Drilling Services Corporation ("GDS"), based in Montrose, Pennsylvania – is the top employer in Susquehanna County. *See* Ex. G.

| Employee Type | Number | Location | % of Total | % PA | % M.D. Pa. |
|---|---|---|---|---|---|
| Upstream | 92 | Houston, TX | 18.29% | 0.00% | 0.00% |
| Upstream | 88 | Pittsburgh, PA | 17.50% | | 0.00% |
| Upstream | 94 | Susquehanna, PA | 18.69% | 81.71% | 64.21% |
| GDS | 229 | Montrose, PA | 45.53% | | |

Cabot's operations here are regulated by Pennsylvania authorities, including the Pennsylvania Department of Environmental Protection ("PaDEP"). PaDEP regulates oil and natural gas exploration and production in Pennsylvania, including the development and enforcement of statewide regulations and standards. Ex. H.

In 2009, PaDEP began investigating defective Cabot gas wells in Dimock Township, Susquehanna County "that allowed methane to migrate into water supplies, making those supplies unusable and endangering area residents." Ex. I at 1. On December 15, 2010, PaDEP and Cabot entered into a Consent Order and Settlement Agreement related to issues stemming from Cabot's wells in this District (the "2010 Consent Order"). *See* Ex. J at 14-15.

- 5 -

4821-3474-3010.v1

But on June 11, 2018, PaDEP issued a letter to Cabot documenting defective Cabot wells covered by the 2010 Consent Order that still had not been remediated as of 2018 – more than seven years later. *See id*. at 17-20. And on July 26, 2019, Cabot disclosed that the Company had received two additional proposed Consent Orders from PaDEP related to Notices of Violation in 2017 for additional failures to prevent the migration of gas into groundwater in and around Susquehanna County. Ex. K at 29.

Then, in June 2020, based on a recommendation from the State's Forty-Third Statewide Investigating Grand Jury ("Grand Jury"), the Pennsylvania Attorney General charged Cabot with committing environmental crimes in northeastern Pennsylvania specifically related to its non-compliance with the 2010 Consent Order and 2017 Notices of Violation. Ex. L. The Grand Jury received evidence from PaDEP detailing Cabot's criminal violations in and around Susquehanna County. For example, PaDEP officials submitted evidence of Cabot's ongoing well integrity issues and an analysis "demonstrating that Cabot's gas wells impacted" drinking water there. Ex. J at 13-16 (Grand Jury received testimony of PaDEP Program Manager (Michael) Seth Pelepko and Oil and Gas Inspector Supervisor Ken Kennedy). Based on this and other evidence, the Grand Jury found that Cabot "failed to acknowledge and correct conduct that polluted Pennsylvania water through stray gas migration," and concluded

- 6 -

that "[i]n light of Cabot's long-term indifference . . . criminal charges are appropriate." *Id.* at 25-26.

Delaware County filed its original complaint for violation of the federal securities laws against Cabot on October 5, 2020, alleging that Cabot and certain senior executives made materially false or misleading public statements from 2015-2020 that defrauded and injured investors in Cabot's publicly traded securities. ECF No. 1 at 2-4. The alleged misrepresentations concern whether Cabot had remediated known environmental violations and taken steps necessary to comply with Pennsylvania law.

On February 3, 2021, pursuant to the Private Securities Litigation Reform Act of 1995, this Court appointed Delaware County as Lead Plaintiff of the putative class. ECF Nos. 24-25. Pursuant to a Court-ordered schedule entered on March 5, 2021, Delaware County will file an amended class action complaint setting forth the class's claims on April 12, 2021. ECF No. 36.

## IV.   ARGUMENT

A motion to transfer should be denied unless the movant can establish both that: (1) the action could have been brought in the proposed transferee venue; and (2) numerous private and public interest factors clearly show a "need" for transfer. *Jumara*, 55 F.3d at 879 (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1970)). The decision of whether to transfer an action to a different venue rests

squarely within the court's discretion; however, "transfer is not to be liberally granted." *Shutte*, 431 F.2d at 25; *see also Lony v. E.I. du Pont de Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989) ("[G]reat deference is accorded a plaintiff's choice of forum."). The movant bears the burden of establishing "the need for transfer." *Jumara*, 55 F.3d at 879. That burden is a "heavy one." *Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.,* 797 F. Supp. 2d 472, 477 (D. Del. 2011).

As detailed below, Cabot fails to carry its burden of demonstrating that "'the balance of convenience of the parties is ***strongly*** in favor of [transfer].'" *Berger v. Marriot Int'l, Inc.*, 2020 WL 4815803, at *6 (E.D. Pa. Aug. 19, 2020) (emphasis and alteration in original) (citing *Shutte*, 431 F.2d at 25).

### A.   Defendants Fail to Establish That the Private and Public Interest Factors Strongly Favor Transfer

Even where an action "'might have been brought'" in another venue, "[t]he burden of establishing the need for transfer still rests with the movant." *Jumara*, 55 F.3d at 879. When evaluating a transfer motion, courts in this Circuit apply "a multi-factored balancing test," *Villari Brandes & Kline, P.C. v. Plainfield Specialty Holdings II, Inc.*, 2009 WL 1845236, at *5 (E.D. Pa. June 26, 2009), and weigh "'all relevant factors'" to determine "'whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Advanced Fluid Sys., Inc. v. Huber*, 2014 WL 1808652, at *17

4821-3474-3010.v1

(M.D. Pa. May 7, 2014) (Conner, J.).  As set forth in §§IV.A.1-2, *infra*, courts typically assess certain private and public interest factors in considering whether transfer is needed in light of the particular facts of the given case.  *Id.* at *17, *19 (citing *Jumara*, 55 F.3d at 879-80).

Here, even assuming that this action could have been originally filed in Houston, the relevant private and public interest factors do not support transfer.  In fact, consideration of those factors militate strongly against transfer.  Defendants attempt to side-step the *Jumara* multi-factor standard by arguing that federal securities cases are "routinely" transferred to the forum where the defendant corporation has its headquarters.  *See* Mot. at 7-9 (citing, *e.g.*, *Huang v. Sonus Networks, Inc.*, 2016 WL 1090436, at *3 (D.N.J. Mar. 21, 2016)).  But there is no special rule for securities cases that the location of a corporation's headquarters dictates venue; rather, as discussed below, courts in this Circuit apply the *Jumara* factors to securities fraud cases and other types of actions alike.  *See, e.g.*, *Sec. Police & Fire Pros. of Am. Ret. Fund v. Pfizer, Inc.*, 2011 WL 5080803, at *3-*4 (D.N.J. Oct. 25, 2011) (applying *Jumara* factors in securities action); *Berger*, 2020 WL 4815803, at *1 (negligence action).

An analysis of the pertinent factors makes clear that this District is the appropriate venue for this action, not Houston.

- 9 -

4821-3474-3010.v1

### 1.   The Private Interest Factors Do Not Favor Transfer

An evaluation of the private interest factors identified in *Jumara* and its progeny – (1) plaintiff's forum preference; (2) the defendant's preference; (3) where the claim arose; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records – to this case demonstrates that this District is where this case belongs.  Defendants, on the other hand, fail to meet their heavy burden of establishing that Houston is the more appropriate venue.

### a.   Lead Plaintiff's Venue Preference Weighs Against Transfer

"'[P]laintiff's choice of venue should not be lightly disturbed.'"  *Jumara*, 55 F.3d at 879; *see also Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request.").  Delaware County's status as Lead Plaintiff asserting claims under the Exchange Act, as courts recognize that the ordinary presumption favoring a plaintiff's preferred venue "is even stronger in cases brought under the Exchange Act's liberal venue provision, since it 'represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue.'"  *Sovereign Bank*, 907 F. Supp. at 126; *see also S-G Sec., Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1121-22 (D. Mass. 1978) (same).

- 10 -

Furthermore, "the plaintiff's choice is generally accorded more deference where there is a material connection or significant contact between the forum state and the underlying events allegedly underlying the claim." *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998); *see also Berger*, 2020 WL 4815803, at *6 (same). Such a connection exists here. Delaware County brought this action in its home state, in a nearby courthouse, and in the District that is the epicenter of the conduct underlying this case. Cabot's alleged misrepresentations concern its illegal conduct in this District, its failure to remediate harms to the local environment and landowners, and its ongoing interactions with Pennsylvania regulators who oversee Cabot's extensive operations here.

Defendants recognize that Lead Plaintiff's choice deserves some weight, yet assert the presumption favoring this District should be discounted because: (1) its weight is lessened in "a shareholder derivative suit or in a class action"; and (2) Delaware County is in the Eastern District of Pennsylvania. Mot. at 10. Defendants' argument, which relies on cases quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947), is misplaced.

This case is not like *Koster* – "a derivative action brought by a policy-holding 'member' of a mutual insurance company challenging transactions that allegedly diluted the policy's value" – because Delaware County is a Court-appointed fiduciary of absent class members, which itself represents the financial interests of retired and

- 11 -

active public employees of a Pennsylvania county. *See Allegheny Cnty. Emps.' Ret. Sys. v. Energy Transfer LP*, 2020 WL 1888950, at \*5 (E.D. Pa. Apr. 16, 2020) (distinguishing *Koster* and declining to discount plaintiff's choice of forum since "the lead plaintiffs are fiduciaries representing the interests of large groups of public employees, one of which, Allegheny County Employees' Retirement System, represents Pennsylvanians"). And, unlike a derivative action where the corporate defendant is the nominal plaintiff, Delaware County – a Pennsylvania fund – is the plaintiff here.

Defendants' argument based on Lead Plaintiff's residence in eastern Pennsylvania is equally unavailing. Mot. at 10 (citing *Sanders v. Ethicon, Inc.*, 2015 WL 1781572, at \*2 (E.D. Pa. Apr. 16, 2015)). As noted above, Lead Plaintiff's offices are just 124 miles from this Court, rendering this venue convenient to Lead Plaintiff (unlike Houston, which is over 1,500 miles away). *Cf. Berger*, 2020 WL 4815803, at \*3 ("[W]hile the Eastern District of Pennsylvania is not Plaintiff's home district, it is nevertheless a convenient forum for him."). And, critically, this District is where all of Cabot's operations occur, where all of the alleged violations about which Defendants allegedly lied occurred, and where several material ***third-party*** witnesses and sources of potential discovery reside. *See infra* §§I.A.3 & 5. Thus, Lead Plaintiff makes any "showing of convenience" needed for its venue choice to be accorded deference. *See* Mot. at 10 (citing *Sanders*, 2015 WL 1781572, at \*2).

- 12 -

4821-3474-3010.v1

Accordingly, Defendants "'must establish that the balance of convenience of the parties and witnesses strongly favor'" transfer to their preferred venue. *Gielata v. Heckmann*, 2010 WL 3940815, at *3 (D. Del. Oct. 6, 2010) (R. & R.), *adopted In re Heckmann Corp. Sec. Litig.*, 2011 WL 1219230 (D. Del. Mar. 31, 2011); *see also Energy Transfer*, 2020 WL 1888950, at *6 ("The controlling question is whether a combination of other factors is sufficient to overcome the presumption that the plaintiff's preference governs."). For the reasons that follow, Defendants fail to carry their burden.

> **b.** **Defendants' Venue Preference Does Not Warrant Shifting Inconvenience from Defendants to Lead Plaintiff**

Defendants' venue preference generally "is not accorded particular weight." *Energy Transfer*, 2020 WL 1888950, at *6 (citing *Edwards v. Equifax Info. Servs., LLC*, 313 F. Supp. 3d 618, 622 (E.D. Pa. 2018)). For their preference to outweigh Lead Plaintiff's, it is Defendants' "responsibility to **prove** that litigating in the plaintiff's forum 'would pose a unique or unusual burden on its operations.'" *Heckmann*, 2010 WL 3940815, at *3. "[M]ere inconvenience to a defendant is insufficient to warrant transfer . . . [and] [t]ransfer will be denied 'if the factors are evenly balanced or weigh only slightly in favor of the transfer,' or if a change in venue merely shifts the inconvenience to the nonmovant." *Id.*

- 13 -

4821-3474-3010.v1

Although Defendants prefer to litigate in Houston, "where Cabot is headquartered and where the individual Defendants reside," Mot. at 9-10, they do not strenuously contend that to litigate in this District would pose an unusual burden on Cabot's operations. Plainly, it would not. Notably absent from Defendants' Motion is the fact that 100% of Cabot's operations are in this District and have been for years, all of its production comes from this District, and approximately 82% of Cabot's global workforce is employed in Pennsylvania, with over 64% working in this District.[3]

Moreover, the requested transfer would place a substantial inconvenience on Lead Plaintiff. *See Energy Transfer*, 2020 WL 1888950, at *6 ("Significantly, transfer is not warranted where the effect would be to shift inconvenience from defendant to plaintiff."). The transfer Defendants seek would require Delaware County to travel approximately 1,500 miles to Houston, where it has no connection. In contrast, there would be no unusual burden on Defendants to litigate in the venue where all of Cabot's production and operations occur. Accordingly, this factor does not support transfer. *See EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip.,*

---

[3]     Defendants' reliance on *Huang*, 2016 WL 1090436, at *3, is misplaced. Mot. at 9. In *Huang*, transfer was warranted because the defendants only had a small number of employees in the district, whereas here over 82% of Cabot's global workforce is located in Pennsylvania (over 64% in this District) and essentially 100% of its revenue is derived in the Commonwealth.

4821-3474-3010.v1

*Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005) ("the purpose of a venue transfer is not to shift inconvenience from one party to another").

### c.    Lead Plaintiff's Claims Arise from Defendants' Activity in Pennsylvania

The factor considering where the claim arose also weighs against transfer. This case arises from Defendants' false or misleading statements concerning compliance with ***Pennsylvania law*** relating to matters affecting Cabot's business that occurred ***in Pennsylvania*** – *i.e.*, Cabot's alleged environmental crimes, regulatory interactions, and underlying activities ***in this District***. Thus, while Defendants' alleged misstatements may have been made in Houston, Mot. at 11, the facts that Lead Plaintiff will put forth to show those statements were false arise from Cabot's extensive conduct here. For example, Lead Plaintiff will prove falsity through facts concerning, among other things, Cabot's conduct and operations in this District, the PaDEP's and Pennsylvania Attorney General's investigations into Cabot's activities here, and the civil consent decrees and criminal indictments in Pennsylvania relating to Cabot's failure to prevent and remediate the migration of gas into groundwater sources here. In addition, Lead Plaintiff will likely rely on the same facts to establish Defendants' scienter. *See Plumbers' Union Loc. No. 12 Pension Fund v. Swiss Reinsurance Co.*, 753 F. Supp. 2d 166, 185 (S.D.N.Y. 2010) ("'[F]alsity and scienter

in private securities fraud cases are generally strongly inferred from the same set of facts . . . .'") (alterations in original).

Because many of the facts that rendered Defendants' statements fraudulent occurred or arose here, Defendants fail to show that this factor favors transfer. At a minimum, where "events giving rise to th[e] litigation occurred" in both the plaintiff's and defendants' preferred venues, "this factor is neutral." *See In re DBSI, Inc.*, 2014 WL 4828882, at *5-*6 (D. Del. Sept. 25, 2014); *also Heckmann*, 2010 WL 3940815, at *4 (finding that where "both parties' contentions rest on a reasonable basis . . . this factor is neutral").

### d.   Defendants' Convenience as Indicated by Physical and Financial Condition Should Be Afforded No Weight

Defendants' argument that it would be "significantly" burdensome to Cabot to litigate in this District, Mot. 14-15, is undermined by the fact that substantially all of Cabot's total production and operations in 2018-2020 occurred here. Moreover, Defendants do not contend, and have not shown, that they "lack[] the resources required to litigate" in this District. *Energy Transfer*, 2020 WL 1888950, at *6. This factor does not favor transfer.

### e.   Convenience of Witnesses Favors This District

Courts recognize that, among the *Jumara* factors, it is the "convenience of [non-party] witnesses, but only to the extent they may actually be unavailable for trial in the

- 16 -

forum . . . that is the more important factor and is accorded greater weight," since such witnesses, often critical to developing discovery and evidence, may be less likely to be willing to travel far in order to testify. *Id.* This factor does not favor transfer because Defendants have failed to demonstrate that any potential non-party witness will be unable or unwilling to travel to this District. *See Amgen, Inc. v. Ariad Pharms., Inc.*, 513 F. Supp. 2d 34, 46 (D. Del. 2007) (convenience of witnesses did not favor transfer where defendant had "not shown that the proposed witnesses would be unavailable for trial in this forum").

Defendants identify the following witnesses who, they claim, would be inconvenienced by traveling to this District: (1) Houston-based Cabot employees; (2) Cabot's auditor, PricewaterhouseCoopers LLP ("PwC"); and (3) its outside counsel, Baker Botts LLP. ECF No. 30-1. Defendants' showing fails for at least two reasons.

**First**, a corporation "is obligated to procure the attendance of its own employees for trial." *Coppola v. Ferrellgas, Inc.*, 250 F.R.D. 195, 199 (E.D. Pa. 2008).[4] Therefore, the minority of Cabot's employees that do not reside in Pennsylvania will be available for trial in this District. Moreover, Defendants' contention that Cabot employees with information relevant to this case will be

---

[4]    *See also Energy Transfer*, 2020 WL 1888950, at *6 (collecting cases); *Battle v. Wal-Mart Stores, Inc.*, 2019 WL 5290540, at *3 (E.D. Pa. Oct. 17, 2019) ("This determination is especially true considering that Plaintiff's witnesses, whom he does not employ, would be required to travel . . . if the action were transferred.").

- 17 -

inconvenienced is dubious, since over 81% of Cabot's employees are located in Pennsylvania, with over 64% in this District. Indeed, as courts have recognized, if Defendants' position were "taken to its logical conclusion, [it] would create a presumption that securities class actions should be brought in the home district of the defendant" – a result at odds with the clear provisions of the Exchange Act. *In re Geopharma, Inc.*, 2005 WL 1123883, at *2 (S.D.N.Y. May 11, 2005) ("convenience of defendants' **party** witnesses cannot operate to eliminate section 27's explicit provision for jurisdiction wherever any violation occurred") (emphasis in original).

**Second**, Defendants fail to establish that transfer benefits the convenience of any actual non-party witness. While Defendants generally identify PwC and Baker Botts LLP, their suggestion that these entities – enormous global partnerships, which Cabot pays for their services – would be unavailable for trial in this District is simply unfounded. Aside from these firms, Defendants do not identify any specific non-party witness who might be unavailable for trial here. Therefore, Defendants fail to meet their burden as to this factor.

Further militating against transfer is the fact that non-party witnesses, the majority of whom reside in and around this District, would suffer substantial inconvenience – and would likely be unavailable for trial – if the case were transferred. *See Kiker v. SmithKline Beecham Corp.*, 2014 WL 4948624, at *7 (E.D. Pa. Oct. 1, 2014) ("the convenience of key nonparty witnesses and, more importantly,

- 18 -

the ability to compel them to testify in person at trial, is the main focus of this factor"). For example, at trial, Lead Plaintiff likely will seek testimony from non-party witnesses, including PaDEP staff. PaDEP personnel likely will provide testimony regarding what PaDEP learned and communicated to Cabot about, *e.g.*, its: (1) failure to prevent and remediate stray gas migration in Susquehanna County;[5] and (2) any required corrective measures. Former Cabot employees that worked on these issues in Pennsylvania will likely also have relevant information. In addition, local "journalistic sources," such as reporters at StateImpact and The Citizens Voice and other outlets that provided extensive coverage of Cabot's activity in this District, "may have information that could reveal whether the alleged misrepresentations . . . occurred." *Energy Transfer*, 2020 WL 1888950, at \*6. Thus, transfer would risk curtailing the presentation of evidence from non-party fact witnesses located outside of the Texas court's subpoena power in Pennsylvania, and unduly prejudice Lead Plaintiff, while Defendants have failed to show that litigating in this District would present similar risks.

### f.    The Location of Books and Records Is Neutral

The location of documents "is only relevant when the books and records are unavailable for trial in the nonmovant's chosen forum." *Heckmann*, 2010 WL

---

[5]    *See* Ex. M (showing PaDEP inspections giving rise to the November and June 2017 Notices of Violation were conducted by Ken Kennedy, Christopher Southard, Cory Beck, and David Schoonover).

4821-3474-3010.v1

3940815, at *5 (citing *Jumara*, 55 F.3d at 879).  Defendants concede that records on "Cabot's servers . . . predominately located in Houston," can easily "be produced across jurisdictions."  Mot. at 15.  Meanwhile, documents from Lead Plaintiff, Cabot's many Pennsylvania employees, and third parties in Pennsylvania are located in this State and District.  Thus, this factor does not support transfer.  *See Advanced Fluid*, 2014 WL 1808652, at *18 (location of records a neutral factor if "no indication that the relevant records and documents cannot be transmitted electronically").

### B.      The Public Interest Factors Do Not Favor Transfer

The *Jumara* public interest factors – "(1) the enforceability of the judgment; (2) practical considerations in conducting trial; (3) relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding local controversies at home; (5) public policies of the two fora; and (6) the court's familiarity with the applicable state law in diversity cases" – also do not support transfer to Houston.  *Advanced Fluid*, 2014 WL 1808652, at *19.

***First***, with respect to practical considerations that could make trial easy, expeditious, or inexpensive, as shown above, there are significant third-party witnesses who may be compelled to appear at a trial in this District, but could not be compelled to appear in Houston.  Cabot's Houston-based employees, in contrast, must appear wherever Cabot may litigate.  Thus, this Court's subpoena power will make trial easier and more expeditious, and this factor does not favor transfer.  *See*

- 20 -

4821-3474-3010.v1

*Leatherman v. Cabot Oil & Gas Corp.*, 2013 WL 1285491, at \*4 (E.D. Pa. Mar. 29, 2013) (practical considerations favored venue where relevant accident site and witnesses were found).

***Second***, the relative congestion of the two fora also does not support transfer. *Moore v. St. Paul Cos., Inc.*, 1995 WL 11187, at \*11 (D.N.J. Jan. 3, 1995) (factor "not decisive, but may be given some weight"). The Federal Court Management Statistics report shows that, per Judgeship, the Southern District of Texas had more total filings (862) than the Middle District of Pennsylvania (489), and more pending cases (770 versus 639), in the twelve-month period ended September 30, 2020. ECF Nos. 30-3 & 30-4. In terms of the "Numerical Standing" rankings for all ninety-four U.S. District Courts, as shown in the below chart, the Southern District of Texas ranked 7th highest in the nation in Total Filings per Judgeship, 14th in Weighted Filings, and 14th in Pending Cases for the twelve-month period ended September 30, 2020, after trending higher in the rankings for these metrics over the previous three years. In that same time, the Middle District of Pennsylvania carried a significant caseload, but ranked lower in all three metrics.

- 21 -

**U.S. District Court "Numerical Standing" Rankings Within U.S. (1st to 94th)**

| | Twelve-Month Periods Ending | | | | | |
|---|---|---|---|---|---|---|
| | Sept. 30, 2018 | | Sept. 30, 2019 | | Sept. 30, 2020 | |
| | M.D. Pa. | S.D. Tex. | M.D. Pa. | S.D. Tex. | M.D. Pa. | S.D. Tex. |
| Total Filings | 32nd | 11th | 51st | 8th | 38th | 7th |
| **Weighted Filings** | 35th | 18th | 51st | 12th | 36th | 14th |
| Pending Cases | 20th | 19th | 26th | 15th | 23rd | 14th |

Exs. N-Q; ECF Nos. 30-3 & 30-4.

Finally, Defendants' argument minimizing congestion from the criminal docket in the Southern District of Texas should not be credited. Due to criminal defendants' speedy trial rights, a district court's criminal docket "is required to take precedence over the civil matters." *Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*, 2020 WL 1808270, at *11 (W.D. Pa. Apr. 9, 2020).

***Third***, the "local interest" factor does not support transfer. This District has a clear interest in the events underlying this case – in particular, Defendants' operations, conduct, and interactions with residents and regulators here. *See also Battle*, 2019 WL 5290540, at *3 ("Considering Defendants' retail presence within the Eastern District, this Court is not persuaded by Defendants' argument that the citizens and the courts of this District have no interest in this action."). Further, Lead Plaintiff represents retired and active public employees of Delaware County, Pennsylvania who

- 22 -

experienced financial loss as a result of Defendants' fraud. *Cf. Energy Transfer*, 2020 WL 1888950, at *5.

Defendants assert an invented "[public] policy" favoring resolution of securities cases where publicly traded companies are headquartered. Mot. at 17. But there is no such policy "that securities class actions should be brought in the home district of the defendant." *Geopharma*, 2005 WL 1123883, at *2. And, contrary to Defendants' suggestion, this District is more than competent to handle securities actions. It currently has twelve such actions pending. Ex. R.

***Finally***, a judgment in either District would be enforceable, rendering that factor neutral.

## V. CONCLUSION

For the reasons stated herein, Defendants' Motion should be denied.

DATED: March 25, 2021                     SAXTON & STUMP
                                          LAWRENCE F. STENGEL (PA #32809)


                                          s/ LAWRENCE F. STENGEL
                                          LAWRENCE F. STENGEL

                                          280 Granite Run Drive, Suite 300
                                          Lancaster, PA 17601
                                          Telephone: 717/556-1000
                                          717/441-3810 (fax)
                                          lfs@saxtonstump.com

                                          Local Counsel

- 23 -

4821-3474-3010.v1

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARRYL J. ALVARADO
KEVIN A. LAVELLE
FRANCISCO J. MEJIA
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
klavelle@rgrdlaw.com
fmejia@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 24 -

4821-3474-3010.v1

## CERTIFICATE OF COMPLIANCE

I, LAWRENCE F. STENGEL, hereby certify that LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF TEXAS complies with the requirements of Middle District of Pennsylvania Rules of Court, Rule 7.8(b)(2). According to Microsoft Word, exclusive of the Title/Cover page, Table of Contents, Table of Authorities, and Certificate of Compliance, the brief contains 4,845 words.

DATED:  March 25, 2021                           SAXTON & STUMP
                                                 LAWRENCE F. STENGEL (PA #32809)


                                                    s/ LAWRENCE F. STENGEL
                                                    LAWRENCE F. STENGEL

                                                 280 Granite Run Drive, Suite 300
                                                 Lancaster, PA  17601
                                                 Telephone:  717/556-1000
                                                 717/441-3810 (fax)
                                                 lfs@saxtonstump.com

                                                 Local Counsel

## CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on March 25, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ LAWRENCE F. STENGEL
LAWRENCE F. STENGEL

SAXTON & STUMP
280 Granite Run Drive, Suite 300
Lancaster, PA  17601
Telephone:  717/556-1000
717/441-3810 (fax)

E-mail:  lfs@saxtonstump.com

# Mailing Information for a Case 3:20-cv-01815-CCC Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Amy L. Barrette**
  amy.barrette@bipc.com,tara.klingensmith@bipc.com

- **Lawrence F. Stengel**
  lfs@saxtonstump.com,cag@saxtonstump.com,jss@saxtonstump.com

- **Peter Stokes**
  peter.stokes@nortonrosefulbright.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)