**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated, | § § § § | |
| | § | Civil Action No. 3:20-cv-01815-CCC |
| Plaintiff, | § | |
| | § | (Judge Christopher C. Conner) |
| v. | § | |
| | § | |
| CABOT OIL & GAS CORPORATION, *et al.*, | § § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO**
**TRANSFER VENUE TO SOUTHERN DISTRICT OF TEXAS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ...............................................................................................1

ARGUMENT AND AUTHORITIES......................................................................2

    A. The Parties' Forum Preferences Weigh in Favor of Transfer ...................3

    B. The "Claims" and "Convenience" Factors Support Transfer....................5

    C. Court Congestion and Other Public Factors Support Transfer................10

CONCLUSION .................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: 3M Co. Secs. Litig.*,
   2020 WL 5105233 (D.N.J. Aug. 31, 2020) ........................................................12

*Allegheny County Empls. Ret. Sys. v. Energy Transfer LP*,
   2020 WL 1888950 (E.D. Pa. Apr. 16, 2020)......................................................12

*In re Anadarko Petrleum Corp.*,
   2012 WL 12894796 (S.D.N.Y. Mar. 19, 2012)...............................................7, 11

*In re Bank of Am. AIG Disclosure Secs. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013) ..................................................................9

*Bolton v. Tesoro Petroleum Corp.*,
   549 F. Supp. 1312 (E.D. Pa. 1982)....................................................................3, 6

*City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent
   Biosolutions, Inc.*,
   322 F. Supp. 3d 676(D. Md. 2018)........................................................................4

*City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*,
   442 Fed. App'x 672 (3d Cir. 2011) .......................................................................8

*City of Warren Police and Fire Ret. Sys. v. Zebra Tech. Corp.*,
   2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) ......................................................6

*Culp v. Gainsco, Inc.*,
   No. 0320854CIV, 2004 WL 2300426 (S.D. Fla. Oct. 1, 2004) ..........................7

*Fain v. USA Technologies, Inc.*,
   707 Fed. App'x 91 (3d Cir. Aug. 30, 2017) .........................................................8

*Franklin U .S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
   No. Civ.A. 2:13-05805-JL, 2014 WL 1555133 (D.N.J. Apr. 14,
   2014) ................................................................................................................6, 11

*In re Global Cash Access Holdings, Inc. Secs. Litig.*,
   2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008) ...................................................6, 7

*Greenwald v. Holstein*,
   2015 WL 12843229 (D.N.J. May 29, 2015)...........................................................6

*In re Hanger Orthopedic Group, Inc. Secs. Litig.*,
   418 F. Supp. 2d 164 (E.D.N.Y. 2006) ...............................................................6, 7

*Huang v. Sonus Networks, Inc.*,
   2016 WL 1090436 (D.N.J. Mar. 21, 2016) ............................................................5

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) ..................................................................................2

*Koster v. (Am.) Lumbermens Mut. Cas. Co.*,
  330 U.S. 518 (1947)............................................................................................4

*Lubbers v. Flagstar Bancorp. Inc.*,
  162 F. Supp. 3d 571 (E.D. Mich. 2016) ..............................................................9

*Malack v. BDO Seidman, LLP*,
  617 F.3d 743 (3d Cir. 2010) ................................................................................4

*In re McDermott Intern., Inc. Secs. Litig.*,
  No. 08 Civ. 9943(DC), 2009 WL 1010039 (S.D.N.Y. Apr. 13,
  2009) ..................................................................................................................11

*In re McGraw-Hill Glob. Educ. Holdings LLC*,
  909 F.3d 48 (3d Cir. 2018) ..................................................................................2

*In re Nematron Corp. Secs. Litig.*,
  30 F. Supp. 2d 397 (S.D.N.Y. 1998) ................................................................3, 4

*Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*,
  No. 2:19-cv-307, 2020 WL 1808270 (W.D. Pa. Apr. 9, 2020)............2, 4, 5, 6, 7

*Panitch v. Quaker Oats Co.*,
  No. 16-4586, 2017 WL 1333285 (E.D. Pa. Apr. 5, 2017) ...................................5

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013) ................................................................................8

*Scanlan v. Am. Airlines Grp., Inc.*,
  366 F. Supp. 3d 673 (E.D. Pa. 2019)...................................................................4

*Steck v. Santander Consumer USA Holdings Inc.*,
  2015 WL 3767445 ...............................................................................................6

*Teamsters Local 456 Pens. Fnd. v. Univ. Health Servs.*,
  396 F. Supp. 3d 413 (E.D. Pa. 2019)...................................................................8

*Wojtunik v. Kealy*,
  2003 WL 22006240 (E.D. Pa. Aug. 26, 2003) ....................................................6

**Rules and Statutes**

15 U.S.C. §§ 78(b)(1)...............................................................................................8

## INTRODUCTION

Plaintiff does not dispute that the disclosures at issue were prepared, filed, and audited in Houston by individuals who live and work in the Southern District of Texas. While the Opposition predictably focuses on the presence of Cabot's natural gas operations in Pennsylvania,[1] it is the ***disclosures*** (and the state of mind of the individuals who made them) that occupy center stage in a securities class action. Similarly, while Cabot has numerous employees in Pennsylvania, the only employees personally sued as defendants in this case live and work in the Southern District of Texas, which is where Cabot's investment relations team is based and where the public SEC filings at issue in this case were prepared, filed, and audited.

Bottom line, this is at its core a securities case, not an environmental case. The center of gravity for this dispute is Houston, where the challenged statements were made, where the individuals who made them live, and where the original securities class action over these matters was filed. It would be more sensible that court personnel and prospective jurors in that jurisdiction bear the burdens associated with this litigation, particularly given the court congestion differential between the two venues. While Plaintiff focuses on other less pertinent metrics in the *Federal Court Management Statistics* report, the fact remains that the Middle

---

[1] Cabot made clear in its opening brief that its natural gas operations are in Pennsylvania. *See* Defendants' Opening Brief, ECF No. 30 at 3.

District of Pennsylvania has consistently averaged more civil cases per judge, longer median times from filing to disposition in civil and criminal cases, and a larger proportion of civil cases pending for more than three years (a percentage nearly twice as high for the most recent year) during the time periods covered by the report.[2]

This case should thus be transferred to the Southern District of Texas.

## ARGUMENT AND AUTHORITIES

Plaintiff does not dispute that this case could have been brought in the Southern District of Texas.  As set forth below, the pertinent private and public interests tip strongly in favor of transfer.[3]

Contrary to Plaintiff's assertion, securities class actions are not routinely transferred to the jurisdiction of the company's headquarters because of some purported "special rule" for securities cases (*see* Opp. at 9).  Plaintiff has it backwards:  It is precisely because the traditional *Jumara* factors themselves overwhelmingly support transfer in securities cases that such cases are usually

---

[2] The "Civil Filings" row in the "Actions per Judgeship" section reflects higher per-judge civil case totals for all six years in the Middle District.  The "From Filing to Disposition" rows in Exhibits 3 and 4 reflect shorter median times every year in the Southern District of Texas.

[3] *Osborne v. Emp. Benefits Admin. Bd. of Kraft Heinz*, No. 2:19-cv-307, 2020 WL 1808270, at *3, *7-8 (W.D. Pa. Apr. 9, 2020) (citing *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995)).

transferred, as the center of gravity is typically where the challenged disclosures are made. This case is no different and should be transferred.

**A.      The Parties' Forum Preferences Weigh in Favor of Transfer**

Plaintiff's treatment of the "party preferences" factors ignores the asymmetric nature of securities litigation. This is not a situation where transfer would simply shift inconvenience from one party to another. The named plaintiff's role in a securities class action is typically "quite minimal" and is far more limited than that of the defendants.[4] Indeed, the alleged absence of individualized issues requiring evidence and testimony from the named plaintiff is part and parcel of Plaintiff's rationale for asserting these claims on a classwide basis. The issues of falsity, materiality, and scienter pertain to Defendants' alleged conduct in preparing the disclosures, not Plaintiff's. In addition, Plaintiff has asserted that reliance can be

---

[4] *See Bolton v. Tesoro Petroleum Corp.*, 549 F. Supp. 1312, 1313 (E.D. Pa. 1982) ("the nominal plaintiff's role in the litigation is likely to be quite minimal'); *In re Nematron Corp. Secs. Litig.*, 30 F. Supp. 2d 397, 402 (S.D.N.Y. 1998) ("[T]rials in securities class actions focus almost entirely on the defendants' conduct.").

presumed on a classwide basis and thus need not be established individually.[5]

Plaintiff also allege that damages are capable of classwide determination.[6]

In short, Plaintiff fails to identify any unique circumstances in this case that would warrant overriding the well-settled principle that "[a]n individual plaintiff's forum preference . . . is entitled to little weight in a shareholder derivative suit or in a class action."[7] Plaintiff openly asserts that class members are "geographically dispersed" and thus have no unique connection to this forum.[8] The Opposition does not argue that Plaintiff is in possession of any unique evidence that it must introduce in person at trial to prove its claims.[9] The fact that the Middle District of Pennsylvania is closer to Plaintiff's offices thus does not outweigh the burden placed

---

[5] *See* Compl. ¶¶ 35-37; *Malack v. BDO Seidman, LLP*, 617 F.3d 743, 747 (3d Cir. 2010) (discussing classwide presumptions of reliance in securities cases); *In re Nematron*, 30 F. Supp. 2d at 402 ("The Complaint is premised upon a 'fraud on the market' theory, such that matters within any particular plaintiff's individual knowledge would not be particularly relevant to the claims and likely defenses").

[6] *See* Compl. ¶ 43(d); *City of Cape Coral Mun. Firefighters' Ret. Plan v. Emergent Biosolutions, Inc.*, 322 F. Supp. 3d 676, 691(D. Md. 2018) (certifying class where damages and causation could be established through "event study" showing impact of alleged misstatements on stock price for class members).

[7] *See Osborne*, 2020 WL 1808270, at *6; *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 677 (E.D. Pa. 2019) ("[W]here there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened") (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)).

[8] *See* Compl. ¶ 40.

[9] *See Osborne*, 2020 WL 1808270, at *9 (finding that plaintiffs "will have 'little, if any, documentary evidence to contribute' at trial given the nature of each suit).

4

on Defendants by requiring Cabot's seniormost executives to testify in a distant jurisdiction.   Again, the putative class members Plaintiff purports to represent bought stock in a company that disclosed on the first page of every SEC filing identified in the Complaint that it is headquartered in Texas.  Transferring this case to that venue would align with investors' expectations.

The "party preferences" factors thus weigh heavily in favor of transfer.

### B.   The "Claims" and "Convenience" Factors Support Transfer

The Opposition fails to distinguish Defendants' case citations making clear that securities claims are deemed by law to arise in the jurisdiction where the alleged misstatements were made.[10]  Nor does Plaintiff contest Defendants' factual assertion that the disclosures were made in the Southern District of Texas by Cabot employees who are based in that jurisdiction, and that the electronic documents are stored there. That the claims ostensibly relate to operational activities of Cabot in Pennsylvania is insufficient to outweigh the far stronger legal and factual nexus this case has with the Southern District of Texas given that the claims arose in that jurisdiction.[11]

---

[10] *See Osborne v. Employee Benefits Admin. Board of Kraft Heinz*, 2020 WL 1808270, at *7 (W.D. Pa. Apr. 9, 2020) ("'[I]n the context of claims based on misrepresentations and omissions, misrepresentations and omissions are deemed to occur in the district where they were transmitted or withheld, not where they are received'") (quoting *Panitch v. Quaker Oats Co.*, No. 16-4586, 2017 WL 1333285, at *6 (E.D. Pa. Apr. 5, 2017)).

[11] *See Huang v. Sonus Networks, Inc.*, 2016 WL 1090436, at *3 (D.N.J. Mar. 21, 2016) (fact that defendants' product development employees were located in New Jersey insufficient to prevent transfer to district where company was headquartered

5

The fact that Cabot may have a legal obligation to produce witnesses in either venue moreover does not lessen the inconvenience and expense Cabot itself (and, by extension, its stockholders) would face if required to produce witnesses (including its two most senior officers) in a more distant forum.  Courts routinely weigh the disruption caused to the defendant corporation itself as a factor supporting transfer.[12]

and where alleged misstatements were made); *Greenwald v. Holstein*, 2015 WL 12843229, at *8 (D.N.J. May 29, 2015) (granting transfer to Southern District of Ohio and holding that "although the sale of AWG [at issue in the securities complaint] may have occurred in New Jersey, many of the alleged misrepresentations that serve as the basis for the fraud occurred in Ohio, not New Jersey"); *Wojtunik v. Kealy*, 2003 WL 22006240, at *4 (E.D. Pa. Aug. 26, 2003) (granting transfer where company's public statements were "made from Arizona"; fact "that IFC conducted some business in the Eastern District of Pennsylvania" did not establish venue in Pennsylvania for Section 1391(b) purposes); *City of Warren Police and Fire Ret. Sys. v. Zebra Tech. Corp.*, 2019 WL 3997354, at *6 (E.D.N.Y. Aug. 23, 2019) ("The fact that some of the challenged statements concern the integration of Enterprise, which is based in Holtsville, does not change the fact that the statements and omissions originated in Illinois," where the company was headquartered; granting transfer); *In re Global Cash Access Holdings, Inc. Secs. Litig.*, 2008 WL 4344531, at *6 (S.D.N.Y. Sept. 18, 2008) ("Although [the offerings] undoubtedly occurred in New York, they are insufficient to pull the 'center of gravity' of this litigation away from Nevada, where the critical alleged misstatements and omissions occurred"); *Franklin U .S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, No. Civ.A. 2:13-05805-JL, 2014 WL 1555133, at *8 (D.N.J. Apr. 14, 2014) (holding that district where "center of gravity" of dispute is located has "stronger local interest"); *In re Hanger Orthopedic Group, Inc. Secs. Litig.*, 418 F. Supp. 2d 164, 171 (E.D.N.Y. 2006) (fact that "some of the alleged billing fraud" occurred in New York does not shift "center of gravity" from headquarters).

[12] *See, e.g., Bolton*, 549 F. Supp. at 1316 (noting that transfer "could minimize the disruption to defendants' business activities"); *Osborne*, 2020 WL 1808270, at *8 (considering "the burden imposed on the company" by litigating in plaintiff's preferred forum); *Steck v. Santander Consumer USA Holdings Inc.*, 2015 WL 3767445, at *4 (S.D.N.Y. June 17, 2015) (noting support for proposition "that transfer to the district in which the issuer has its headquarters may reduce the 'risk

Plaintiff also does not disclaim that it may call Cabot's Houston-based auditor and disclosure counsel as nonparty witnesses, which further weighs in favor of transfer.[13] Further, while Defendants acknowledge that the "location of documents" factor may not have the same potency it did before the advent of electronic discovery, this factor nonetheless remains relevant and further weighs in favor of transfer.[14]

The Opposition also takes little if any issue with Defendants' portrayal of the substantive Third Circuit standards applicable to securities claims – standards that focus heavily on the state of mind of the Texas-based individuals who made the alleged misstatements, and which are not met simply because a company was the

---

of disrupting company operations'") (quoting *In re Hanger Orthopedic Grp., Inc. Secs. Litig.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006)); *In re Anadarko Petrleum Corp.*, 2012 WL 12894796, at *8 (S.D.N.Y. Mar. 19, 2012) (fact that "Anadarko is headquartered in the Southern District of Texas and its investor relations department is located there" weighed in favor of transfer).

[13] While Plaintiff characterizes these entities as "enormous global partnerships," courts have weighed the conduct and location of outside auditors or consultants (including the same accounting firm at issue here) in the proposed transferee forum as a factor favoring transfer. *See Osborne*, 2020 WL 1808270, at *9 (fact that PricewaterhouseCoopers audited company's financial statements in Chicago and that outside legal and financial advisors were located outside district weighed in favor of transfer); *see also Culp v. Gainsco, Inc.*, No. 0320854CIV, 2004 WL 2300426, at *6 (S.D. Fla. Oct. 1, 2004) (granting transfer to district where KPMG employees involved in SEC filings were located). Plaintiff cites no caselaw for its contention that the "global" nature of these firms should preclude a finding in Defendants' favor on this factor.

[14] *See In re Global Cash Access*, 2008 WL 4344531, at *5 (holding that while "the location of relevant documents may be of less significance" in light of modern technology, "it nonetheless retains some relevance to the venue inquiry").

subject of a government investigation or penalty.[15]  Nor does Plaintiff make any

meaningful attempt to argue that the allegations in its existing complaint come close

to meeting this circuit's pleading requirements for securities fraud claims.[16]  The fact

that Cabot was subject to an environmental investigation and enforcement

proceedings in Pennsylvania, or that violations of Pennsylvania environmental laws

allegedly occurred, fails to establish any element of a securities fraud claim.[17]

---

[15] *See* Defendants' Opening Brief, ECF No. 30 at 11-12 and footnotes 32-33 therein; *see also Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241, 246-47 (3d Cir. 2013) (affirming dismissal despite customs violations leading to $7 million in anticipated fines; refusing to apply "collective scienter" and "core operations" theories where no particularized allegations supported inference that CEO and CFO personally knew of facts contradicting their public statements); *Fain v. USA Technologies, Inc.*, 707 Fed. App'x 91, 96-97 (3d Cir. Aug. 30, 2017) (affirming dismissal despite significant financial restatement; "That Defendants were in top positions at USA Technologies, alone, is not enough" to support strong inference that executives knew of accounting errors, despite purportedly "obvious nature of the error" and 900% understatement of bad debt); *City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*, 442 Fed. App'x 672, 676 (3d Cir. 2011) (affirming dismissal despite alleged price fixing conspiracy); *Teamsters Local 456 Pens. Fnd. v. Univ. Health Servs.*, 396 F. Supp. 3d 413, 439 (E.D. Pa. 2019) (dismissing securities class action despite $127 million settlement with DOJ).

[16] Plaintiff instead insists that it "will file an amended class action complaint setting forth the class's claims on April 12, 2021." (*See* Opp. at 7.)  The Opposition does not explain why Plaintiff was unable to "set[] forth the class's claims" in Plaintiff's existing complaint, nor does it dispute that original complaints are subject to the substantive statutory requirements for securities claims.  *See* 15 U.S.C. §§ 78(b)(1); (b)(2)(A); (c)(1) (making clear that PSLRA's substantive requirements apply to any "complaint" filed in a federal securities case).

[17] *See supra* footnote 15.

Indeed, Cabot disclosed throughout the alleged class period that "[f]rom time to time ***we receive notices of violation from governmental and regulatory authorities*** in areas in which we operate ***relating to alleged violations of environmental statutes*** or the rules and regulations promulgated thereunder" and that these proceedings "***may result in monetary sanctions***, individually or in the aggregate, ***in excess of $100,000***."[18]  Defendants thus expressly disclosed that Cabot periodically received citations for alleged environmental violations and faced the prospect of additional penalties.  The fact that Cabot ultimately faced additional allegations from Pennsylvania regulators does not support a securities fraud claim when Cabot expressly disclosed that it periodically received such allegations and made clear that it could face additional claims in the future.[19]  Plaintiff's assertion

---

[18]  *See* Cabot's February 22, 2016 Form 10-K at 32; available at https://www.sec.gov/Archives/edgar/data/858470/000085847016000036/cog-12312015x10k.htm.

[19] *See, e.g., Howard*, 395 F. Supp. 3d at 552, 566-67 (observing that "a reasonable investor reading the 10-K risk disclosures would not conclude that Arconic faced *no* legal or compliance risks, or that the risk management and compliance programs Arconic had adopted were completely adequate to prevent all such risks," where Form 10-K disclosed that "additional legal proceedings and contingencies may arise from time to time" arising from product liability, health, safety, and export laws); *Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 578-79 (E.D. Mich. 2016) (dismissing claim over risk disclosure that "[f]rom time to time, governmental agencies conduct investigations or examinations of various mortgage related practices of the Bank") (citing *In re Bank of Am. AIG Disclosure Secs. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013) ("[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk")).

that third-party witness testimony from Pennsylvania regulators, journalists, and former employees will be a key part of its case is thus misplaced, as Plaintiff cannot explain how such testimony would show a material misstatement. By contrast, the people who actually prepared and audited the SEC filings live and work in Houston.

In sum, nothing in the Opposition dislodges the "center of gravity" for this dispute from the Southern District of Texas. The claims arose there both legally and factually. To the extent that conduct and enforcement activity in Pennsylvania may bear in part on some portion of the claims, the Southern District of Texas remains the focal point for the core inquiry of whether the individuals who made the challenged statements acted fraudulently in making them. Indeed, Plaintiff fails to explain how the alleged Pennsylvania violations render Cabot's Texas-drafted statements misleading, given Cabot's express disclosure that it faced periodic claims from Pennsylvania officials over alleged violations of environmental laws. The "location of claims" and "convenience" factors thus tip heavily in favor of transfer.

### C.     Court Congestion and Other Public Factors Support Transfer

Plaintiff lastly does not dispute that the number of civil cases per judge, the median times from filing to disposition in civil and criminal cases, and the percentage of civil cases more than three years old have been persistently higher in the Middle District of Pennsylvania than in the Southern District of Texas throughout the time periods covered in the most recent *Federal Court Management*

10

*Statistics Report.*[20]   While Plaintiff focuses on the number of total filings and pending cases per judge (*see* Opp. at 21), Defendants submit that the filing-to-disposition and percentage of aged cases statistics provide a more accurate picture regarding the actual comparative workload per judge and the impact on civil cases. Those data points consistently and significantly favor the Southern District of Texas. Simply put, some cases impose more burdens on the judiciary than others, and the statistics suggest that the mix of cases in this jurisdiction have caused greater congestion despite a lower number of total cases per judge.

It would thus be more sensible for the public burdens of this case to fall on judicial personnel and potential jurors in the Southern District of Texas, which is the center of gravity for a securities suit premised on disclosures made in that district.[21] Plaintiff's case citations do not warrant a different outcome.[22]

---

[20] *Compare* Ex. 3 to Declaration of Peter A. Stokes (Statistics Page for MDPA) *with* Ex. 4 (Statistics Page for SDTX).   The full report is available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf.

[21] *See Franklin*, 2014 WL 1555133, at *8 (holding that district where "center of gravity" of dispute is located has "stronger local interest" in adjudicating dispute).

[22] While Plaintiff relies heavily on *In re Geopharma, Inc.*, a 2005 decision from the Southern District of New York, multiple subsequent decisions from that court have endorsed transfer in securities cases to the district where the company is headquartered.  *Compare* 2005 WL 1123883 (S.D.N.Y. May 11, 2005) *with In re Anadarko*, 2012 WL 12894796, at *9 ("'While there is no *per se* rule requiring or presumptively favoring the transfer of a securities-fraud action to the district where the issuer is headquartered, such transfers to the issuer's home district are routine as a practical matter'") (quoting *In re McDermott Intern., Inc. Secs. Litig.*, No. 08 Civ.

**CONCLUSION**

Despite Plaintiff's efforts to recast this as a Pennsylvania-centric environmental dispute, this is a securities disclosure case arising from SEC reports that were prepared, filed, and audited in Houston. The focal point at trial will be the state of mind of the Cabot employees in Houston who prepared the disclosures. As noted above and previously, it is not uncommon for securities cases to implicate operational issues occurring in other locations, yet for the "center of gravity" to be deemed the venue where the company is headquartered and where the challenged statements were made. Plaintiff cannot even explain how the existence or merits of the Pennsylvania environmental allegations renders any of Cabot's Texas-drafted public statements misleading given Cabot's express disclosure that it periodically

---

9943(DC), 2009 WL 1010039, at *6 (S.D.N.Y. Apr. 13, 2009)). Further, as previously noted, the two Third Circuit district court decisions Plaintiff cites involved allegations where, unlike here, it appears that at least some of the alleged misstatements were made in jurisdictions other than the proposed transferee forum. *See In re: 3M Co. Secs. Litig.*, 2020 WL 5105233, at *3-4 (D.N.J. Aug. 31, 2020) (declining to transfer securities class action to location of company's headquarters, where at least one alleged misstatement was made in New York rather than at company's headquarters and one plaintiff was based in District of New Jersey); *Allegheny County Empls. Ret. Sys. v. Energy Transfer LP*, 2020 WL 1888950, at *6 (E.D. Pa. Apr. 16, 2020) (denying transfer where "some of Defendants' alleged false statements and misrepresentations originated from their headquarters in Dallas"). The *Energy Transfer* case also involved allegations of potential "state corruption" concerning government officials in Pennsylvania, which "has a strong public interest in having judges sitting here preside in cases involving the Commonwealth and its actors." *See id.* at *7. Plaintiff's claims here, by contrast, do not appear to involve any similar allegation of corruption by Pennsylvania officials.

12

faces such allegations and could be exposed to penalties exceeding $100,000.  The

Court should thus transfer this action to the Southern District of Texas.

Dated:　　　　April 5, 2021　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　/s/ Peter A. Stokes　　　　　　
　　　　　　　　　　　　　　　　　Peter A. Stokes
　　　　　　　　　　　　　　　　　State Bar No. 24028017
　　　　　　　　　　　　　　　　　peter.stokes@nortonrosefulbright.com
　　　　　　　　　　　　　　　　　98 San Jacinto Boulevard, Suite 1100
　　　　　　　　　　　　　　　　　Austin, Texas 78701-4255
　　　　　　　　　　　　　　　　　Telephone:  (512) 474-5201
　　　　　　　　　　　　　　　　　Facsimile:  (512) 536-4598

　　　　　　　　　　　　　　　　　Amy L. Barrette
　　　　　　　　　　　　　　　　　PA ID No.: 87318
　　　　　　　　　　　　　　　　　BUCHANAN INGERSOLL & ROONEY,
　　　　　　　　　　　　　　　　　PC
　　　　　　　　　　　　　　　　　Union Trust Building
　　　　　　　　　　　　　　　　　501 Grant Street, Suite 200
　　　　　　　　　　　　　　　　　Pittsburgh, PA 15219
　　　　　　　　　　　　　　　　　Telephone: 412-562-1626
　　　　　　　　　　　　　　　　　Facsimile: 412-562-1041
　　　　　　　　　　　　　　　　　Email: amy.barrette@bipc.com

　　　　　　　　　　　　　　　　　*Counsel for Defendants*

　　　　　　　　　　　　　　　　　OF COUNSEL:
　　　　　　　　　　　　　　　　　Gerard G. Pecht
　　　　　　　　　　　　　　　　　State Bar No. 15701800
　　　　　　　　　　　　　　　　　1301 McKinney, Suite 5100
　　　　　　　　　　　　　　　　　Houston, TX 77010-3095
　　　　　　　　　　　　　　　　　Telephone:  (713) 651-5151
　　　　　　　　　　　　　　　　　Facsimile:  (713) 651-5246

13

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.8(b)(2) of the Rules of Court of the United States District Court for the Middle District of Pennsylvania, I hereby certify that **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE TO SOUTHERN DISTRICT OF TEXAS** contains 3,691 words, excluding the title page, tables, and certifications, as counted by Microsoft Word 2016.

/s/ *Peter A. Stokes*
Peter A. Stokes

14

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on April 5, 2021, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ *Peter A. Stokes*
Peter A. Stokes

15