**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CABOT OIL & GAS CORPORATION, *et al.*,<br><br>Defendants. | § § § § § § § § § § § § § § | Civil Action No. 3:20-cv-01815-CCC<br><br>(Judge Christopher C. Conner) |

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................1

STATEMENT OF QUESTION INVOLVED .......................................................2

PROCEDURAL HISTORY .................................................................................2

FACTUAL BACKGROUND ...............................................................................3

ARGUMENT AND AUTHORITIES.................................................................12

I.　　PLAINTIFF FAILS TO PLEAD AN ACTIONABLE
　　　MISSTATEMENT, SCHEME TO DEFRAUD, OR STRONG,
　　　COGENT, AND COMPELLING INFERENCE OF SCIENTER ...............12

　　　　A.　Plaintiff Fails To Allege Any Actionable False or Fraudulent
　　　　　　Statements ....................................................................................18

　　　　B.　No Challenged Statements Are Attributed to Defendant
　　　　　　Stalnaker.......................................................................................22

　　　　C.　Plaintiff's Scienter Allegations Are Deficient .................................23

II.　　THE ALLEGATIONS DO NOT PLAUSIBLY SHOW CAUSATION .....28

III.　　THE SECTION 20 CONTROL PERSON CLAIMS FAIL .......................30

CONCLUSION.................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Asar*,
768 F. App'x 175 (5th Cir. 2019)................................................................15, 30

*Alberici v. Recro Pharma, Inc.*,
2020 WL 806719 (E.D. Pa. Feb. 14, 2020)........................................................25

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2017) ................................................................22

*In re Amarin Corp. PLC Secs. Litig.*,
2021 WL 1171669 (D.N.J. Mar. 29, 2021) ..........................................................3

*Anderson v. Abbott Labs.*,
140 F. Supp. 2d 894 (N.D. Ill. 2001)..................................................................17

*In re Bank of Am. AIG Disclosure Secs. Litig.*,
980 F. Supp. 2d 564 (S.D.N.Y. 2013) ..........................................................21, 26

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ...............................................................................14

*In re BP p.l.c. Secs. Litig.*,
2017 WL 7037706 (S.D. Tex. June 30, 2017).....................................................16

*In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*,
830 F. Supp. 361 (S.D. Tex. 1993).....................................................................17

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) .............................................................................29

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
497 F.3d 546 (5th Cir. 2007) ..............................................................................25

*Chan v. New Oriental Educ. & Tech. Grp.*,
2019 WL 2865452 (D.N.J. July 3, 2019) ......................................................24, 26

*Cho v. UCBH Holdings, Inc.*,
  2011 WL 3809903 (N.D. Cal. May 17, 2011) .......................................................15

*Cho v. UCBH Holdings, Inc.*,
  890 F. Supp. 2d 1190 (N.D. Cal. 2012) ...............................................................15

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
  388 F. Supp. 2d 932 (S.D. Ind. 2005) ..................................................................17

*City of Edinburgh Council v. Pfizer, Inc.*,
  754 F.3d 159 (3d Cir. 2014) ..............................................................................12

*City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*,
  442 Fed. App'x 672 (3d Cir. 2011) ......................................................................14

*City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*,
  129 F. Supp. 3d 48 (S.D.N.Y. 2015) ....................................................................28

*In re Cognizant Tech. Solutions Corp. Secs. Litig.*,
  2018 WL 3772675 (D.N.J. Aug. 8, 2018) ............................................................30

*In re Crude Oil Commodity Futures Litig.*,
  913 F. Supp. 2d 41 (S.D.N.Y. 2012) .....................................................................9

*Crutchfield v. Match Group, Inc.*,
  2021 WL 1167578 (N.D. Tex. Mar. 26, 2021) ..............................................18, 25

*In re Digital Island Secs. Litig.*,
  357 F.3d 322 (3d Cir. 2004) ...............................................................................14

*Dillard v. Platform Specialty Prods. Corp.*,
  2016 WL 10586301 (S.D. Fla. Dec. 8, 2016) .......................................................27

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ..............................................................................14

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan
  Chase Co.*,
  553 F.3d 187 (2d Cir. 2009) ...............................................................................16

*Edgar v. Anadarko Petroleum Corp.*,
  2019 WL 1167786 (S.D. Tex. Mar. 13, 2019) .....................................................24

*Elec. Workers Pension Fund, Local 103 v. Six Flags Entertainment Corp.*,
2021 WL 807251 (N.D. Tex. Mar. 3, 2021).......................................................27

*Ely v. Cabot Oil & Gas Corp.*,
No. 3:09-CV-2284, 2017 WL 1196510 (M.D. Pa. Mar. 31, 2017)............5, 7, 20

*Eng v. Edison Int'l*,
2018 WL 1367419 (S.D. Cal. Mar. 16, 2018) ..................................................28

*Exkae Ltd. v. Domo, Inc.*,
2020 WL 7352735 (D. Utah. Dec. 15, 2020) ...................................................13

*In re Express Scripts, Inc.*,
2010 WL 2671456 (E.D. Mo. June 30, 2010) ...................................................17

*Fain v. USA Technologies, Inc.*,
707 Fed. App'x 91 (3d Cir. Aug. 30, 2017) ....................................................23

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
565 F.3d 200 (5th Cir. 2009) ..........................................................................23

*In re Ford Motor Co. Secs. Litig.*,
381 F.3d 563 (6th Cir. 2004) ..........................................................................16

*In re Francesca's Holdings Corp. Secs. Litig.*,
2015 WL 1600464 (S.D.N.Y. Mar. 31, 2015)..................................................10

*In re Galena Biopharma, Inc. Secs. Litig.*,
2019 WL 5957859 (D.N.J. Nov. 12, 2019) ......................................................17

*Gamboa v. Citizens, Inc.*,
2018 WL 2107205 (W.D. Tex. May 7, 2018) ...................................................13

*In re GeoPharma, Inc. Secs. Litig.*,
399 F. Supp. 2d 432 (S.D.N.Y. 2005) ..............................................................26

*Globis Capital Partners, L.P. v. Stonepath Grp., Inc.*,
241 Fed. App'x 832 (3d Cir. 2007) ..................................................................14

*Greenberg v. Crossroads Sys., Inc.*,
364 F.3d 657 (5th Cir. 2004) ..........................................................................28

*Grupo Verzatec S.A. de C.V. v. RFE Investment Partners*,
  No. 17-CV-9887 (ALC), 2019 WL 1437617 (S.D.N.Y. Mar. 29,
  2019) ..................................................................................................22

*In re Hertz Global Holdings Inc.*,
  905 F.3d 106(3d Cir. 2018) ........................................................16, 23

*In re HEXO Corp. Secs. Litig.*,
  2021 WL 878589 (S.D.N.Y. Mar. 8, 2021)........................................18

*Ho v. Flotek Indus., Inc.*,
  248 F. Supp. 3d 847 (S.D. Tex. 2017), *aff'd sub nom. Alaska
  Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th
  Cir. 2019) ...........................................................................................13

*Howard v. Arconic Inc.*,
  395 F. Supp. 3d 516 (W.D. Pa. 2019)...........................................16, 21

*Ieradi v. Mylan Labs., Inc.*,
  230 F.3d 594 (3d Cir. 2000) ...............................................17, 19, 20

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
  537 F.3d 527 (5th Cir. 2008) ...........................................................25

*In re Innocoll Holdings*,
  2018 WL 4252537 (E.D. Pa. Sept. 5, 2018)......................................25

*Inst. Invr's Grp. v. Avaya, Inc.*,
  564 F.3d 242 (3d Cir. 2009) ............................................................22

*Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council
  Philadelphia & Vicinity v. Anadarko Petroleum Corp.*,
  788 F. App'x 268 (5th Cir. 2019).......................................12, 14, 24

*In re ITT Educ. Servs., Inc. Sec. Litig.*,
  34 F. Supp. 3d 298 (S.D.N.Y. 2014) ................................................15

*Janus Capital Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011)..........................................................................22

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001) ............................................................13

*In re KBR, Inc. Secs. Litig.*,
  2018 WL 4208681 (S.D. Tex. Aug. 31, 2018) ..................................................15

*Kushner v. Beverly Enters., Inc.*,
  317 F.3d 820 (8th Cir. 2003) ...........................................................................17

*Lubbers v. Flagstar Bancorp. Inc.*,
  162 F. Supp. 3d 571 (E.D. Mich. 2016) ...........................................................21

*N. Port Firefighters' Pension-Local Option Plan v. Temple-Inland,*
  *Inc.*,
  936 F. Supp. 2d 722 (N.D. Tex. 2013) .............................................................22

*Nardy v. Chipotle Mexican Grill, Inc.*,
  2019 WL 3297467 (D. Colo. Mar. 29, 2019) ....................................................16

*In re Nokia Corp. Secs. Litig.*,
  2021 WL 1199030 (S.D.N.Y. Mar. 29, 2021) ...................................................13

*Ong v. Chipotle Mexican Grill, Inc.*,
  294 F. Supp. 3d 199 (S.D.N.Y. 2018) ..............................................................16

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ............................................................................23

*Ortiz v. Canopy Growth Corp.*,
  2021 WL 1967714 (D.N.J. May 17, 2021).................................................13, 27

*In re Party City Sec. Litig.*,
  147 F. Supp. 2d 282 (D.N.J. 2001).................................................................27

*In re Plains All Am. Pipeline, L.P. Secs. Litig.*,
  307 F. Supp. 3d 583 (S.D. Tex. Mar. 30, 2018), *aff'd*, 777 F.
  App'x ...........................................................................................................17, 24

*Police and Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline,*
  *L.P.*,
  777 F. App'x 726 (5th Cir. 2019)................................................................14, 15

*Oklahoma Law Enforcement Ret. Sys. v. Papa John's Int'l, Inc.*,
  -- F. Supp. 3d --, 2020 WL 1243808 (S.D.N.Y. Mar. 16, 2020).......................16

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) .........................................................................14, 23

*Richman v. Goldman Sachs Group, Inc.*,
    868 F. Supp. 2d 261 (S.D.N.Y. 2012) ...............................................................20

*Rosenzweig v. Azurix Corp.*,
    332 F.3d 854 (5th Cir. 2003) ............................................................................14

*Sanders v. AVEO Pharm., Inc.*,
    2015 WL 1276824 (D. Mass. Mar. 20, 2015) ...................................................13

*Schiller v. Phys. Res. Grp.*,
    2002 WL 318441 (N.D. Tex. Feb. 26, 2002) ....................................................20

*SEC v. Mapp*,
    240 F. Supp. 3d 569 (E.D. Tex. 2017)...............................................................22

*SEPTA v. Orrstown Fin. Servs., Inc.*,
    2016 WL 7117455 (M.D. Pa. Dec. 7, 2016) .....................................................20

*Silsby v. Icahn*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014) .................................................................20

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019) ................................................................................15

*Smallen v. Western Union Co.*,
    2019 WL 1382823 (D. Colo. Mar. 27, 2019), *aff'd*, 950 F.3d 1297
    (10th Cir. 2020)............................................................................................16, 17

*Smith v. Antares Pharma, Inc.*,
    2021 WL 754091 (D.N.J. Feb. 26, 2021) ..........................................................25

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ............................................................................23

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ...............................................................27

*Tanaskovic v. Realogy Holdings Corp.*,
    2021 WL 211049 (D.N.J. Jan, 21, 2021)..............................................................3

*Teamsters Local 456 Pens. Fnd. v. Univ. Health Servs.*,
    396 F. Supp. 3d 413 (E.D. Pa. 2019)......................................................14, 24, 30

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007).............................................................................13, 20, 25

*Thorpe v. Walter Inv. Mgmt., Corp.*,
    111 F. Supp. 3d 1336 (S.D. Fla. 2015)..............................................................15

*In re Univ. Health Servs., Inc. Deriv. Litig.*,
    2019 WL 3886838 (E.D. Pa. Aug. 19, 2019) ....................................................17

Defendants Cabot Oil & Gas Corporation ("Cabot"), Dan O. Dinges, Scott C. Schroeder, and Phil L. Stalnaker ("Defendants") move to dismiss this action under the Private Securities Litigation Reform Act ("PSLRA") and Fed. R. Civ. P. 9(b) and 12(b)(6).

## INTRODUCTION

Plaintiff's allegations fall far short of the rigorous requirements Congress established for pleading a Section 10(b)/Rule 10b-5 claim.  For more than a decade, Cabot has faced highly-publicized allegations regarding the purported impact of its natural gas wells on methane levels in Susquehanna County groundwater.  Far from concealing these issues, Cabot disclosed throughout the alleged class period that "from time to time" it receives notices of environmental violations from Pennsylvania authorities.  Cabot further disclosed specific notices of violation issued by the Pennsylvania Department of Environmental Protection ("PaDEP").  Cabot never guaranteed it was fully compliant with all environmental regulations or that it would not face further sanctions over alleged methane contamination.

This case should meet the same fate as legions of other unsuccessful attempts by securities fraud plaintiffs to conjure "false disclosure" claims from alleged environmental or regulatory violations.  The key issue in a securities fraud case is not whether a company is liable for the purported underlying violations, but whether the company's ***disclosures to investors*** were actionably and materially misleading

-1-

and whether the complaint alleges particularized facts supporting a strong, cogent, and compelling inference that the persons who made them acted fraudulently. The fact that Pennsylvania authorities issued additional notices of violation and subsequently filed criminal charges does not demonstrate that Defendants made material misstatements or acted with scienter. Cabot tempered its public statements regarding environmental compliance with warnings of ongoing challenges and potential future liability to Pennsylvania regulators. The allegations also fall far short of what is required to demonstrate that the individual Defendants acted with scienter. Plaintiff likewise has not plausibly pled that the subsequent disclosures about additional violations actually caused any meaningful stock price decline. The Complaint cannot stand because it fails to state a securities fraud claim.

## STATEMENT OF QUESTION INVOLVED

1.     Whether the Court should dismiss this action for failure to state a claim under Fed. R. Civ. P. 8 and 12(b)(6), failure to plead fraud with particularity under Fed. R. Civ. P. 9(b), failure to identify material actionable misstatements or omissions, failure to plead specific facts supporting a strong inference of scienter, failure to allege causation, and failure to satisfy the PSLRA's pleading requirements.

## PROCEDURAL HISTORY

The Court appointed Delaware County Employee Retirement System as Lead Plaintiff on February 3, 2021. (ECF No. 25.) Lead Plaintiff filed its Amended

Complaint ("Compl.") on April 12, 2021.  (ECF No. 47.)  Briefing is complete on

Defendants' motion to transfer venue.  (ECF Nos. 29, 30, 41, 46.)

## FACTUAL BACKGROUND[1]

Cabot is a Houston-based energy company with natural gas properties located

in northeastern Pennsylvania, primarily in Susquehanna County.  (Compl. ¶ 19.)

Defendant Dan O. Dinges is presently Cabot's Chairman, President, and CEO.  (*Id.*

¶ 20.)  Defendant Scott C. Schroeder presently serves as Cabot's CFO and Executive

Vice President.  (*Id.* ¶ 21.)  Both Dinges and Schroeder served in those roles

throughout the alleged class period.  (*Id.* ¶¶ 20-21.)  Defendant Phil L. Stalnaker

served as Cabot's Vice President, Regional Manager North Region at the start of the

alleged class period, became Senior Vice President, North Region in 2017, and

became Senior Vice President, Operations in 2019.  (*Id.* ¶ 22.)

Over the past 15 years, the United States has benefited from a revolution in

natural gas exploration and production, driven by improvements in technology that

allow natural gas to be produced economically from "unconventional" sources like

---

[1] In addition to the allegations, the Court may also consider the full text of documents cited in the Complaint, public SEC filings, stock price data, and any other documents or information that may be judicially noticed. *See Tanaskovic v. Realogy Holdings Corp.*, 2021 WL 211049, at *3 (D.N.J. Jan, 21, 2021).  Public securities prices are judicially noticeable and may be considered on a motion to dismiss.  *See In re Amarin Corp. PLC Secs. Litig.*, 2021 WL 1171669, at *8 (D.N.J. Mar. 29, 2021). Defendants thus request that the Court take judicial notice of the exhibits.  The page numbers refer to the internal numbers in the exhibit (where applicable) rather than the page of the PDF.

the Marcellus Shale.  Cabot has been on the forefront of this revolution and is currently the second-largest natural gas producer in Pennsylvania.  In addition to fueling economic growth, the increased accessibility of cleaner-burning natural gas has produced significant environmental benefits.  Plaintiff pleads no facts disputing Cabot's statements that, as of early 2020, natural gas accounted for 38% of U.S. electric power generation, contributing to a ***near-28% reduction in greenhouse gas emissions*** from electric generation from 2007-17 while helping U.S. families and business ***save $1.1 trillion*** on their energy bills between 2008 and 2018.[2]

The production of energy resources in any form, however, is not without environmental impact or risk, nor has the arrival of the natural gas industry in Pennsylvania been without controversy.  As described by U.S. Magistrate Judge Martin C. Carlson (who presided over a protracted lawsuit against Cabot brought in part by Nolen Scott Ely, one of the complainants cited in the Amended Complaint[3]), while many Susquehanna County residents have welcomed the benefits of natural gas production, Cabot has faced a "legal broadside" from other residents, including the 44 plaintiffs who had joined Mr. Ely's suit, alleging that Cabot's wells have

---

[2] *See* Ex. 19 at 3, 7 (citing U.S. EPA data).  Plaintiff also pleads no facts disputing Cabot's statement that methane emissions have fallen 82% in the Appalachian Basin despite a 379% increase in oil and natural gas production in the basin.  *See id.* at 6.

[3] *See* Compl. ¶¶ 67-70.

caused methane to enter the water supply. *See Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2017 WL 1196510, at *2-3 (M.D. Pa. Mar. 31, 2017).

Whether Cabot's wells have actually caused such contamination, however, has been hotly contested. Indeed, following six years of litigation and a three-week trial, Judge Carlson set aside the jury verdict in Mr. Ely's case based in part on the insufficiency of evidence showing that Cabot caused the alleged contamination. *See id.* Judge Carlson observed that "***the evidence demonstrated convincingly that the plaintiffs' problems with their water were witnessed by all of them before Cabot had begun drilling***" the wells at issue. *See id.* at *11. He described the evidence against Cabot as ***"spare," "weak," and "lack[ing] rigor,"*** observing that it was premised on expert testimony that had ***"weak factual support"*** and was rebutted by "uncontradicted evidence" from Cabot's experts. *See id.* at *1, 11, 14, 15.

Cabot has also faced scrutiny from PaDEP, which has the power to restrict Cabot's production activities Pennsylvania and to impose penalties. In December 2010, Cabot agreed to a publicly-disclosed Consent Order with PaDEP, which restricted Cabot from drilling within a nine-square-mile area in Dimock, Pennsylvania (the "Dimock Box") and imposed remediation obligations.[4] Plaintiff alleges that Cabot "had become the poster child for the hazards fracking posed to

---

[4] *See* Compl. ¶ 65; Ex. 25 (Dec. 2010 Consent Order).

rural communities."[5]   Plaintiff cannot dispute, however, that the controversy over methane contamination in Dimock, the 2010 Consent Order, and the "Dimock Box" restrictions were publicly disclosed before the class period, or that Cabot openly disclosed to investors that it relied on hydraulic fracturing.

Cabot warned throughout the class period that it did not have a perfect environmental compliance record and faced the prospects of future sanctions.  In its October 22, 2015 Form 10-Q, and in every quarterly and annual SEC filing thereafter, Cabot warned that "[f]rom time to time we receive notices of violation from governmental and regulatory authorities in areas in which we operate relating to alleged violations of environmental statutes or the rules and regulations promulgated thereunder.  While we cannot predict with certainty whether these notices of violation will result in fines and/or penalties, if fines and/or penalties are imposed, they may result in monetary sanctions individually or in the aggregate in excess of $100,000."[6]   Cabot thus made clear it faced periodic accusations by regulators that it violated environmental laws and could face future penalties.

---

[5] *See* Compl. ¶ 3.  Hydraulic fracturing, which Plaintiff refers to as "fracking," involves the injection of fluids and sand into a well under high pressure to create fractures in the formation.  Cabot extensively disclosed that it relied on hydraulic fracturing and faced regulatory, legislative, public relations, and compliance risks relating to this technology.  *See* Ex. 1 at 20, 22, 25, 27, 29, 30.

[6] *See* Ex. 1 at 33; Ex. 2 at 32; Ex. 3 at 25; Ex. 4 at 28; Ex. 5 at 29; Ex. 7 at 33; Ex. 8 at 26; Ex. 9 at 31; Ex. 10 at 34; Ex. 11 at 32; Ex. 12 at 27; Ex. 13 at 29; Ex. 14 at 29;

Cabot also warned that "[d]rilling natural gas and oil wells *is a high-risk activity*" that entails numerous risks, including "equipment failures" and "compliance" with regulations relating to "fracturing," as well as "*pipe or cement failures* and casing collapse, which *can release natural gas, oil, drilling fluids or hydraulic fracturing fluids*," and "*uncontrolled flows of natural gas, oil or well fluids*."[7] Cabot also warned that "risks of substantial costs and liabilities related to environmental compliance issues are part of oil and natural gas production operations. *No assurance can be given that significant costs and liabilities will not be incurred*," and further warned about "concerns raised relating to *potential impacts of hydraulic fracturing on groundwater quality*."[8]

Cabot also disclosed it was facing specific environmental proceedings. In its February 22, 2016 Form 10-K, Cabot disclosed that:

> On November 12, 2015, we received a proposed Consent Order and Agreement from the Pennsylvania Department of Environmental Protection (PaDEP) relating to gas migration allegations in an area surrounding several wells owned and operated by us in Susquehanna County, Pennsylvania. The allegations relating to these wells were initially raised by residents in the area in August 2011. We received a Notice of Violation from the PaDEP in September 2011 for failure to prevent the migration of gas into fresh groundwater sources in the area

---

Ex. 15 at 33; Ex. 16 at 26; Ex. 17 at 29; Ex. 18 at 29; Ex. 20 at 33; Ex. 21 at 25; Ex. 22 at 27; Ex. 23 at 27; Ex. 24 at 36.

[7] *See* Ex. 2 at 20, 26-30; Ex. 7 at 23, 26-30; Ex. 11 at 22, 26-30; Ex. 15 at 22, 25-29; Ex. 20 at 21, 24-28; Ex. 24 at 23, 26, 29-32.

[8] *See* Ex. 2 at 18-20, 25-27, 29-312; Ex. 7 at 23, 26-30; Ex. 11 at 22, 25-29; Ex. 15 at 22, 25-29; Ex. 20 at 21, 24-28; Ex. 24 at 23, 26, 29-32.

- 7 -

surrounding these wells. Since then, we have been engaged with the PaDEP in investigating the incident and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents. We believe the source of methane has been remediated and are working with the PaDEP to reach agreement on the disposition of this matter. The proposed Consent Order and Agreement is the culmination of this effort and, if finalized, would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $300,000. We will continue to work with the PaDEP to finalize the Consent Order and Agreement and bring this matter to a close.[9]

Cabot disclosed on February 27, 2017 that it entered into a consent order with respect to this alleged violation.[10]  There is no allegation that these disclosures caused any decline in Cabot's stock price.

Plaintiff's claims are based on two subsequent modest one-day declines in Cabot's stock price.[11]  On July 26, 2019, Cabot disclosed in its second-quarter Form 10-Q that it received proposed consent orders from PaDEP pertaining to two additional notices of violation issued during 2017.[12]  While Plaintiff alleges that Cabot's stock price declined by 12% that day, Plaintiff admits that Cabot also

---

[9] *See* Ex. 2 at 32; *see also* Ex. 3 at 24-25 (repeating disclosure); Ex. 4 at 28 (same); Ex. 5 at 29 (same).

[10] Ex. 7 at 33 (disclosing agreement to pay $0.3 million, plug well at issue, provide alternative sources of drinking water, and perform additional monitoring to ensure source of methane has been remediated – thus conveying uncertainty to investors as to whether alleged issue was permanently fixed).

[11] *See* Compl. ¶¶ 174, 177.

[12] *See id.* ¶ 137.

- 8 -

disclosed "disappointing" quarterly financial results – a far likelier explanation for the decline (especially considering the absence of any decline after the February 22, 2016 violation disclosure and Cabot's disclosure that the penalty would likely not exceed $215,000).[13]

On June 15, 2020, the Pennsylvania Attorney General's office announced criminal charges against Cabot for allegedly failing to remediate gas migration issues.[14]  Cabot's stock price, however, declined by only approximately 3% from its closing price on Friday, June 12, 2020, to its closing price on Monday, June 15, 2020.  Natural gas spot prices at the U.S. Henry Hub benchmark declined on June 15, 2020, and reached *a 20-year low* on June 16, 2020.[15]  The U.S. Natural Gas Fund – an exchange-traded security tied to natural gas prices – also declined by 3.5% from

---

[13] *See id.* ¶¶ 172, 174; Ex. 17 at 29; *see also infra* footnote 18.

[14] *See* Compl. ¶¶ 176-77.

[15]*See* Ex. 27 (Henry Hub Natural Gas Spot Price Chart); Ex. 28 (article describing June 16, 2020 Henry Hub natural gas spot price as reaching "its lowest level in more than 20 years. . . ."). Commodities prices are judicially noticeable. *See In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 52 (S.D.N.Y. 2012).

closing on June 12, 2020, to closing on June 15, 2020.[16]  The S&P GSCI Natural Gas Index likewise declined by 3.2% on June 15, 2020.[17]

By any measure, the allegations fail to show that the market was shocked on June 15 by any specific purported deficiencies in Cabot's prior disclosures, which is unsurprising because Cabot consistently disclosed it faced challenges from Pennsylvania regulators.  There is no allegation the charging documents found that any specific Cabot executive, let alone the individual Defendants, personally intended to violate the law.  There is also no allegation that the Attorney General or PaDEP have taken any action to shut down or suspend Cabot's operations in Pennsylvania as a result of the charges, nor is there any particularized assertion that the amount of any potential financial penalties upon conviction was material.[18]

---

[16] *See* Ex. 29 (U.S. Natural Gas Fund ("UNG") Chart); Ex. 30 (excerpt from February 26, 2021 UNG Form 10-K describing fund as tied to Henry Hub prices). While Plaintiff cites the Dow Jones U.S. Exploration & Production Index (the "E&P Index") (Compl. ¶ 177), Plaintiff does not identify what portion of the Index is comprised of oil-focused companies.  By 2020, "substantially all of [Cabot's] reserves" were "natural gas," not oil.  (Ex. 24 at 10.)

[17] *See* Ex. 31.

[18] *See* Ex. 24 at 49 (showing $200.5 million net income for 2020 and greater amounts in prior years); *In re Francesca's Holdings Corp. Secs. Litig.*, 2015 WL 1600464, at *16 (S.D.N.Y. Mar. 31, 2015) (holding that provenance of $250,000 purchase immaterial for company with $79 million in reported revenue; collecting cases).

The remainder of the Complaint consists of rehashed allegations from Mr. Ely and other Dimock residents regarding alleged water quality issues,[19] a description of the Attorney General charges,[20] allegations about other similar PaDEP notices of violation,[21] and anonymous allegations from an unnamed alleged former Cabot "geologist" that he saw copies of "cement log reports" at some undisclosed time in Defendant Stalnaker's office showing purported shortcomings in the cementing of Cabot's wells.[22]  There is no allegation, however, that any witness (including the unnamed geologist) had specific knowledge of methane leaking from Cabot wells, or that the "geologist" personally voiced his or her alleged concerns to any individual Defendant (or what the specific reports seen in Stalnaker's office actually said).

Plaintiff also cites testimony from a PaDEP "inspector supervisor" who "[b]y 2015" had allegedly "identified 11 wells needing further evaluation."[23]  Saying that a well needs "further evaluation" is far from a definitive statement that the well is actually leaking methane.  While Plaintiff alleges that the methane found in Susquehanna County water was "by and large thermogenic" and thus purportedly

---

[19] *See* Compl. ¶¶ 67-77.

[20] *See* Compl. ¶¶ 89-99.

[21] *See* Compl. ¶ 100-08.

[22] *See* Compl. ¶¶ 109-117.

[23] *See* Compl. ¶ 86.

- 11 -

came from deep underground sources,[24] Plaintiff does not allege particularized facts showing there was no thermogenic methane in the water prior to Cabot's arrival or that similar arguments about the alleged thermogenic origin of methane were not advanced in Mr. Ely's suit.

## ARGUMENT AND AUTHORITIES

I.   **PLAINTIFF FAILS TO PLEAD AN ACTIONABLE MISSTATEMENT, SCHEME TO DEFRAUD, OR STRONG, COGENT, AND COMPELLING INFERENCE OF SCIENTER.**

Securities fraud claims are subject to "exacting" pleading requirements and must be dismissed absent specific allegations showing actionable material misstatements and particularized facts supporting a strong, cogent, and compelling inference that the statements were made with fraudulent intent or severe recklessness.[25] Disclosures must be read in context with the total mix of public information, not in isolation, to assess whether they are materially misleading or

---

[24] *See* Compl. ¶ 79.

[25] *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 168 (3d Cir. 2014) (emphasizing "exacting" requirements of particularized facts to establish both falsity and scienter); *Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council Philadelphia & Vicinity v. Anadarko Petroleum Corp.*, 788 F. App'x 268, 269-70 (5th Cir. 2019) (per curium).

fraudulent.[26]   Courts must likewise consider all allegations and judicially noticeable

facts "holistically" in assessing whether a strong inference of scienter is pled.[27]

A disclosure must be more than arguably misleading to survive a motion to

dismiss, but must be so blatantly and inexcusably misleading as to create an

"obvious" risk of deceiving investors sufficient to support a strong inference of

scienter.[28]   Scienter is "limited to those highly unreasonable omissions or

misrepresentations that involve not merely simple or even inexcusable negligence,

but an extreme departure from the standards of ordinary care, and that present a

danger of misleading buyers or sellers which is either known to the defendant or is

---

[26] *See Exkae Ltd. v. Domo, Inc.*, 2020 WL 7352735, at *7 (D. Utah. Dec. 15, 2020) ("A reasonable investor reads a public statement in context, not isolation"); *In re Nokia Corp. Secs. Litig.*, 2021 WL 1199030, at *19 (S.D.N.Y. Mar. 29, 2021) ("Reviewing the challenged statements in their full context reveals that Nokia did in fact disclose the 5G challenges they were encountering").

[27] *See Ortiz v. Canopy Growth Corp.*, 2021 WL 1967714, at *11 (D.N.J. May 17, 2021) (emphasizing that court must weigh "all facts" holistically to determine whether inference of scienter is strong); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (courts must consider judicially noticeable documents when evaluating motions to dismiss in securities cases).

[28]   *See Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017) ("Even if Flotek could have provided clearer disclosures . . ., Flotek's actual disclosures are not so blatantly misleading as to be severely reckless."), *aff'd sub nom. Alaska Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019); *see also Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) (claim fails where "the duty to disclose . . . was not so clear"); *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (plaintiff "must show more than that it is debatable whether the disclosures were adequate"); *Sanders v. AVEO Pharm., Inc.*, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015) (finding no strong inference of scienter when sufficiency of disclosures is "at least debatable.").

so obvious that the defendant must have been aware of it."[29]  Plaintiff must plead

particularized facts demonstrating that the disclosures were made with a mental state

approaching "conscious deception." [30]   Even allegations showing "gross

mismanagement" or "gross negligence" in the disclosures are insufficient.[31]

Courts routinely dismiss securities complaints premised on alleged regulatory

violations or criminal charges.[32]  Reports reflecting conclusions by government

enforcement bodies (or even by a company's own audit committee) are insufficient

---

[29] *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 866 (5th Cir. 2003).

[30] *Globis Capital Partners, L.P. v. Stonepath Grp., Inc.*, 241 Fed. App'x 832, 835 (3d Cir. 2007) (affirming dismissal and emphasizing that recklessness closely approaches "'conscious deception'") (quoting *In re Digital Island Secs. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004)); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 493-94 (3d Cir. 2013) (affirming dismissal and emphasizing that making statements without sufficient investigation does not show recklessness).

[31] *See MCI WorldCom*, 340 F.3d at 253–54 ("gross mismanagement" of accounting compliance failed to demonstrate strong inference of scienter); *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) ("[n]egligence, even gross negligence, does not rise to the level of the nefarious mental state necessary to constitute securities fraud" under the PSLRA).

[32] *See, e.g., Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 241 (3d Cir. 2013) (affirming dismissal despite customs violations leading to $7 million in anticipated fines); *City of Roseville Empls. Ret. Sys. v. Horizon Lines, Inc.*, 442 Fed. App'x 672, 676 (3d Cir. 2011) (affirming dismissal despite alleged price fixing conspiracy); *Anadarko*, 788 F. App'x at 269-70 (affirming dismissal of securities class action arising from fatal explosion despite alleged regulatory violations); *Police and Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 728-730 (5th Cir. 2019) (per curium) (affirming dismissal of claims against Plains All American arising from California oil spill that resulted in criminal charges); *Teamsters Local 456 Pens. Fnd. v. Univ. Health Servs.*, 396 F. Supp. 3d 413, 439 (E.D. Pa. 2019) (dismissing despite $127 million settlement with DOJ).

- 14 -

to support a strong inference of fraud.[33]  Statements that a company has a code of conduct, prioritizes safety, intends to follow best practices, or intends to comply with legal requirements have repeatedly been held inactionable and do not trigger an open-ended duty to "confess" alleged noncompliance. [34]   Statements that

---

[33] *See Alaska Elec. Pension Fund v. Asar*, 768 F. App'x 175, 180-89 (5th Cir. 2019) (conclusions in company's own audit committee report insufficient to support scienter, where report lacked particularized allegations about individual defendants' state of mind); *Thorpe v. Walter Inv. Mgmt., Corp.*, 111 F. Supp. 3d 1336, 1376 (S.D. Fla. 2015) (explaining that, "as state of mind is the key issue in analyzing scienter, unless [a government] investigation reveals each defendant's state of mind for the alleged fraud, the effect of the investigation on the scienter analysis is limited"); *In re ITT Educ. Servs., Inc. Sec. Litig.*, 34 F. Supp. 3d 298, 309 (S.D.N.Y. 2014) (government investigations are "not tremendously probative" of scienter); *Cho v. UCBH Holdings, Inc.*, 890 F. Supp. 2d 1190, 1203 (N.D. Cal. 2012) (allegations from SEC complaints are "unproved and are contested" and may "not be used to establish facts to demonstrate scienter"); *Cho v. UCBH Holdings, Inc.*, 2011 WL 3809903, at *12-13 (N.D. Cal. May 17, 2011) (holding that an FDIC report concluding that "UCB senior executives" engaged in "intentional misconduct" was insufficiently particularized to show scienter as to the CFO).

[34] *See Plains All Am.*, 777 F. App'x at 728-731 ("aspirational statements" about defendant's "commitment to safety," "outlines of procedures," "commitment to proper systems and their intention to comply with regulations," and that defendant "believed it was in compliance with the law" were inactionable despite subsequent criminal charges); *Singh v. Cigna Corp.*, 918 F.3d 57, 63-64 (2d Cir. 2019) (general statements regarding regulatory compliance and a company's code of ethics are not material statements of fact); *In re KBR, Inc. Secs. Litig.*, 2018 WL 4208681, at *5-6 (S.D. Tex. Aug. 31, 2018) (dismissing claims based on code of conduct); *In re Anadarko*, 957 F. Supp. 2d at 820 (finding statements that "Anadarko will not compromise health or safety in the workplace," that safety is a "top priority" and that a "safety-first culture is a way of life at Anadarko" inactionable despite safety violations); *In re BP*, 852 F. Supp. 2d at 812 (finding statements that "[t]hroughout 2008, senior leadership across the group continued to hold safety as their highest priority," that "[s]afety will continue to have first call on the company resources," that "BP constantly seeks to improve its safety performance," and that "BP has well-developed systems, processes and metrics for reporting safety performance" to be

- 15 -

management "believes" their company "substantially complies" with applicable

regulations have likewise been held to be inactionable statements of opinion when,

as here, they are qualified with express disclosures that a regulator may disagree

inactionable even though plaintiffs alleged "very specific facts" showing serious safety problems); *Smallen v. Western Union Co.*, 2019 WL 1382823, at \*2, 15-26 (D. Colo. Mar. 27, 2019) (statements that Western Union had "good monitoring systems in place," a "multi-faceted program to prevent consumer fraud" and was a "market leader," and that "compliance culture is in our DNA," held inactionable by district court despite $500 million penalty for inadequate fraud prevention), *aff'd*, 950 F.3d 1297 (10th Cir. 2020); *In re BP p.l.c. Secs. Litig.*, 2017 WL 7037706, at \*12 (S.D. Tex. June 30, 2017) (holding that "generalized statements regarding [BP's] post-Texas City commitment to safety" were inactionable); *In re Ford Motor Co. Secs. Litig.*, 381 F.3d 563, 570-71 (6th Cir. 2004) (finding statement by defendant that Ford was "a worldwide leader in automotive safety" to be inactionable); *Howard v. Arconic Inc.*, 395 F. Supp. 3d 516, 544 (W.D. Pa. 2019) (dismissing claims over statements that product was "designed and tested to meet safety and environmental building codes" and is "fully tested"); *Nardy v. Chipotle Mexican Grill, Inc.*, 2019 WL 3297467, at \*14, \*15 (D. Colo. Mar. 29, 2019) ("I find that Plaintiffs have also not stated a claim based on the October 2016 press release to the extent it discussed Chipotle [having] "successfully implement[ed] an industry leading food safety program*Oklahoma Law Enforcement Ret. Sys. v. Papa John's Int'l, Inc.*, -- F. Supp. 3d --, 2020 WL 1243808, at \*7 (S.D.N.Y. Mar. 16, 2020) (noting that corporate "assurances about workplace safety and intolerance for sexual harassment" have been held inactionable); *Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232-33 (S.D.N.Y. 2018) (dismissing claims based on Chipotle's statements that Chipotle is "committed to serving safe, high quality food" and that its "food safety programs are also designed to ensure that [the Company] compl[ies] with applicable federal, state and local food safety regulations," despite alleged food safety shortcomings); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 206 (2d Cir. 2009) (statement that defendant "set the standard for best practices in risk management techniques" was inactionable); *Whole Foods*, 905 F.3d at 902 (holding that "generalized statements about Whole Foods' transparency, quality, and responsibility are the sort of puffery that a reasonable investor would not rely on").

with management's views or find that violations are occurring.[35]  The securities laws impose no freestanding duty to disclose uncharged purported illegal conduct or to confess the merits of a government investigation or a contested claim.[36]  Imposing such a duty would harm shareholders, who ultimately own the business and would be ill-served by a rule forcing their companies to make premature public confessions

---

[35] *See In re Univ. Health Servs., Inc. Deriv. Litig.*, 2019 WL 3886838, at *42 (E.D. Pa. Aug. 19, 2019) (rejecting claim over statement that management believed company was in substantial compliance with regulations); *In re Plains All Am. Pipeline, L.P. Secs. Litig.*, 307 F. Supp. 3d 583, 622, 634-35 (S.D. Tex. Mar. 30, 2018) (rejecting claims over "substantial compliance" statements), *aff'd*, 777 F. App'x at 731; *In re Express Scripts, Inc.*, 2010 WL 2671456, at *10, 16 (E.D. Mo. June 30, 2010) (dismiss securities complaint despite statement that "[w]e believe we are operating our business in substantial compliance with all existing legal requirements material to the operation of our business" and subsequent state attorney general suit); *City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 946 (S.D. Ind. 2005) (rejecting claim over "substantial compliance" statement; company can still "believe in" its compliance even when it is the "object of a state investigation"); *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 826 (8th Cir. 2003) (rejecting claim over statement of belief in substantial compliance with regulations); *Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 901 (N.D. Ill. 2001) (dismissing despite statement that company believed it was in substantial compliance).

[36] *See In re Galena Biopharma, Inc. Secs. Litig.*, 2019 WL 5957859, at *10 (D.N.J. Nov. 12, 2019) (collecting cases for proposition that the securities laws do not require companies "to disclose uncharged, unadjudicated wrongdoing" or "to accuse itself of wrongdoing"); *Ieradi v. Mylan Labs., Inc.*, 230 F.3d 594, 599 (3d Cir. 2000) ("We think this public disclosure [of FTC investigation] was more than sufficient to put potential investors such as Ieradi on notice that Mylan's alleged anticompetitive activity in raising the prices of its drugs . . . could subject the company to antitrust action"); *In re Browning-Ferris Indus., Inc. S'holder Deriv. Litig.*, 830 F. Supp. 361, 370 (S.D. Tex. 1993) (no duty "to confess guilt to uncharged crimes"); *Smallen v. Western Union Co.*, 2019 WL 1382823, at *13 (D. Colo. Mar. 27, 2018) (no duty for Western Union to "confess" alleged noncompliance).

to contested allegations.[37]  Even statements that a lawsuit is "completely meritless"

– a ***far stronger statement*** than Cabot made here – fail to support a claim.[38]

### A. Plaintiff Fails To Allege Any Actionable False or Fraudulent Statements

The challenged statements consist largely if not entirely of inactionable

generalized statements of aspiration or opinion, including statements that Cabot

undertook "efforts to improve the environment," "do the right thing," and be a

"beacon of light"; that "[w]e make every effort to reduce and limit our impact on air,

water and the environment with the best technologies currently available"; that

"Cabot's objective is to deliver profitable results and to conduct our operations in a

safe and prudent manner for the protection of our employees and contractors with

an unwavering commitment to comply with or exceed all regulations to enhance the

environment and communities where we operate"; that "[o]ur commitment to free

cash flow, return on capital, and return of capital back to shareholders with the least

possible impact to the environment remains paramount in importance to us"; that its

---

[37] *See In re HEXO Corp. Secs. Litig.*, 2021 WL 878589, at *16 (S.D.N.Y. Mar. 8, 2021) (rejecting argument that companies must make disclosures that undermine their bargaining position with government entities; "This Court was unaware that compliance with the securities laws required a corporate suicide pact").

[38] *See Crutchfield v. Match Group, Inc.*, 2021 WL 1167578, at *6, 14-15 (N.D. Tex. Mar. 26, 2021) (observing that "district courts have routinely found that a company-issued statement regarding its belief that a pending lawsuit is unfounded or without merit is an opinion that is generally not actionable as a misstatement of fact").

well completion process was "environmentally friendly"; that Cabot's "policy" is to require "strict adherence" by employees "to all laws" and "to observe and comply with all governmental laws"; and that "we believe that we substantially comply with the Clean Water Act and related federal and state regulations" and "believe the source of methane [at issue in the notice of violation disclosed in February 2016] has been remediated."[39]

These statements are indistinguishable from the generalized positive statements and "substantial compliance" disclosures rejected as insufficient to support a securities fraud claim by the numerous cases cited in footnotes 34 and 35 above. Most significantly, these statements must be considered in context with the numerous other stark public disclosures making clear Cabot was previously sanctioned over contamination allegations, was subject to a 2010 Consent Order, continued to receive notices of violation, faced risk from "*cement failures*," "*uncontrolled flows*" of fluids, and "concerns raised relating to potential impacts of hydraulic fracturing on *groundwater quality*," and that "[n]o assurance can be given that significant costs and liabilities will not be incurred."[40] As in *Ieradi*, Cabot's total mix of disclosures was more than sufficient (and certainly not so indisputably

---

[39] *See* Compl. ¶¶ 1, 55, 122, 125-28; 132-35.

[40] *See supra* at 7.

deficient as to be fraudulent) to notify investors that Cabot's remediation efforts could be found inadequate and that future sanctions were possible.[41]

Viewed holistically, the allegations do not show that Cabot defrauded investors. The allegations depict a company facing long-running, highly-publicized, disputed challenges from regulators, activists, and private litigants. Judicially noticeable public records supported Cabot's belief that its practices were defensible, including Judge Carlson's emphatic criticism of Mr. Ely's evidence.[42] Cabot took an appropriate middle ground. It expressed its opinion that it substantially complied with regulations and believed it had remediated the February 2016 notice, while

---

[41] *See Ieradi*, 230 F.3d at 599; *see also Owens*, 789 F.3d at 540-41 (noting that while plaintiffs disputed the sufficiency of defendant's disclosures of alleged "red flags," the fact that the red flags were "disclosed to the public . . . negates the inference that defendants acted with scienter"); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 369-70 (S.D.N.Y. 2014) (holding that company's disclosures regarding litigation risks "weigh heavily against scienter"); *Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 274-76 (S.D.N.Y. 2012) (observing that defendants provided at least "some notice about ongoing governmental investigations" and rejecting fraud claim over failure to disclose Wells notice given lack of an "obvious duty to disclose" the notice); *Schiller v. Phys. Res. Grp.*, 2002 WL 318441, at *14 (N.D. Tex. Feb. 26, 2002) (rejecting fraud claim where company publicly disclosed arbitration proceeding against seller of allegedly overvalued assets, which undercut inference that company acted fraudulently by not immediately writing off the assets).

[42] *See Tellabs*, 551 U.S. at 322 (courts must consider judicially noticeable records in holistic evaluation of scienter). Defendants request that the Court take judicial notice of the *Ely* decision, which relates to the allegations by Mr. Ely cited in the Complaint. *See SEPTA v. Orrstown Fin. Servs., Inc.*, 2016 WL 7117455, at *5-6 (M.D. Pa. Dec. 7, 2016) (holding that courts may take judicial notice of judicial proceedings that relate to matters at issue).

tempering these disclosures with warnings that it continued to receive notices of violation and could experience cement failures. The fact that Cabot ultimately faced additional allegations does not support a securities fraud claim when Cabot disclosed it continued to receive citations and could face future claims.[43] Plaintiff moreover fails to challenge Cabot's other statements about the environmental benefits of natural gas and the reduction of greenhouse gases, which provides further context and support for Cabot's generalized statements about its environmental practices and overall commitment to environmental stewardship.[44]

Plaintiff's claims also fail to the extent they are based on forward-looking predictions of future liability or future environmental goals. The PSLRA safe harbor and "bespeaks caution" doctrine provide additional protections for forward-looking

---

[43] *See, e.g., Howard*, 395 F. Supp. 3d at 552, 566-67 (observing that "a reasonable investor reading the 10-K risk disclosures would not conclude that Arconic faced *no* legal or compliance risks, or that the risk management and compliance programs Arconic had adopted were completely adequate to prevent all such risks," where Form 10-K disclosed that "additional legal proceedings and contingencies may arise from time to time"); *Lubbers v. Flagstar Bancorp. Inc.*, 162 F. Supp. 3d 571, 578-79 (E.D. Mich. 2016) (dismissing claim over risk disclosure that "[f]rom time to time, governmental agencies conduct investigations or examinations of various mortgage related practices of the Bank") (citing *In re Bank of Am. AIG Disclosure Secs. Litig.*, 980 F. Supp. 2d 564, 579 (S.D.N.Y. 2013) ("[W]here there is disclosure that is broad enough to cover a specific risk, the disclosure is not misleading simply because it fails to discuss the specific risk").

[44] Indeed, the "beacon of light" statement was a reference to Cabot's overall view – again unchallenged by Plaintiff – that the *use* of natural gas instead of other power sources provided environmental benefits. *See* Ex. 19 at 7.

statements accompanied by cautionary language.[45] Opinions are likewise not misleading when the full context of the disclosures makes clear that the company's compliance practices may be found insufficient, as Cabot plainly disclosed here.[46]

Plaintiff has thus failed to allege an actionable misstatement. To the extent Plaintiff is also purporting to allege a "scheme" or "course of conduct" claim under SEC Rule 10b-5(a) or (c), that claim similarly fails. Plaintiff has not pled facts showing a scheme to defraud other than its deficient allegations of misrepresentations and omissions, which are insufficient to state a scheme claim.[47]

### B. No Challenged Statements Are Attributed to Defendant Stalnaker

The Complaint moreover fails to attribute *any* specific purported misstatement to Defendant Stalnaker. Only the "maker" of a statement can be liable.[48] Plaintiff does not identify any specific public statements attributed to

---

[45] *See Inst. Invr's Grp. v. Avaya, Inc.*, 564 F.3d 242, 252-53 (3d Cir. 2009); *N. Port Firefighters' Pension-Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 758–59 (N.D. Tex. 2013) (granting dismissal based on safe harbor).

[46] *See supra* footnote 41.

[47] *See, e.g., In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2017) ("Courts have held that a plaintiff may not cast claims of misrepresentations as claims under Rule 10b-5(a) and(c) and thus evade the pleading requirements imposed in misrepresentation cases"); *SEC v. Mapp*, 240 F. Supp. 3d 569, 585 (E.D. Tex. 2017).

[48] *See Grupo Verzatec S.A. de C.V. v. RFE Investment Partners*, No. 17-CV-9887 (ALC), 2019 WL 1437617, at *5-6 (S.D.N.Y. Mar. 29, 2019) ("[C]ourts regularly dismiss Section 10(b) claims where a plaintiff failed to show the defendant made any of the alleged misrepresentations"); *Janus Capital Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135, 142-44 (2011) ("In the ordinary case, attribution within a

Stalnaker or for which Stalnaker had ultimate authority or control.  There is no assertion that Stalnaker signed any SEC filing or made any oral misstatements.

### C.   Plaintiff's Scienter Allegations Are Deficient

Plaintiff's scienter allegations suffer from numerous other fatal deficiencies. A corporation's scienter may not be established based solely on the existence of alleged regulatory violations at the company, or presumed based on the individual Defendants' positions, but must typically be established through particularized allegations showing the individual named Defendants were personally aware of facts contradicting their disclosures or had concrete personal motives to defraud.[49]

---

statement or implicit from surrounding circumstances is strong evidence that a statement was made by – and only by – the party to who it is attributed").

[49] *See Rahman*, 736 F.3d at 246-47 (refusing to apply "collective scienter" and "core operations" theories where no particularized allegations supported inference that CEO and CFO personally knew of facts contradicting their public statements); *Fain v. USA Technologies, Inc.*, 707 Fed. App'x 91, 96-97 (3d Cir. Aug. 30, 2017) ("That Defendants were in top positions at USA Technologies, alone, is not enough" to support strong inference that executives knew of accounting errors, despite purportedly "obvious nature of the error" and 900% understatement of bad debt); *In re Hertz Global Holdings Inc.*, 905 F.3d 106, 113, 117(3d Cir. 2018) (allegations that "the Individual Defendants presided over a poorly managed corporation and that the mismanagement created an environment in which improper accounting practices flourished" insufficient); *Oran v. Stafford*, 226 F.3d 275, 288-89 (3d Cir. 2000) (analyzing individual motives of named defendants); *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 208 (5th Cir. 2009) (plaintiff must establish intent of individual who made the alleged misstatement and may not rely on purported "collective" knowledge); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366, 383 (5th Cir. 2004) (same).

Plaintiff fails to identify *any* instance where any individual Defendant was specifically apprised of facts contradicting their public statements.  Asserting that an unnamed "geologist" saw "cement bond log reports" in Defendant Stalnaker's office at some undisclosed time during a seven-year period is patently insufficient to show that Stalnaker (let alone the individual Defendants who actually made the alleged misstatements) knew Cabot was violating environmental laws.  Courts have rejected far stronger "confidential witness" and "internal document" allegations and have insisted that plaintiffs plead particularized facts showing that the executives were aware that the company "was, *as a matter of law*, in violation" of the regulations or legal standards at issue (and not simply that executives were aware of potential noncompliance or of disputed allegations). [50]  Plaintiff fails to allege: (i) that

---

[50] *See Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council Philadelphia & Vicinity v. Anadarko Petroleum Corp.*, 788 F. App'x 268, 270 (5th Cir. 2019) (affirming dismissal despite evidence that "could have led [individual defendants] to conclude that Anadarko's Colorado operations weren't in compliance with Commission rules," where allegations did not support strong inference that "Walker and McBride were aware that Anadarko was, as a matter of law, in violation of Commission rules"); *Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, at *14-16 (S.D. Tex. Mar. 13, 2019) (district court opinion detailing allegations of biannual meetings, PowerPoint presentations, weekly reports and budgets that were insufficient to show scienter); *Teamsters*, 396 F. Supp. 3d at 471-472 (dismissing complaint despite 37 paragraphs of allegations from ten confidential sources alleging that senior executives knew of alleged scheme); *Chan v. New Oriental Educ. & Tech. Grp.*, 2019 WL 2865452, at *9-12 (D.N.J. July 3, 2019) (rejecting allegations from eleven confidential witnesses, including one who purported "to give first-hand knowledge imputing fraudulent activity to" the CEO); *In re Plains All Am. Pipeline, L.P. Secs. Litig.*, 307 F. Supp. 3d 583, 639-42 (S.D. Tex. 2018) (dismissing claims despite allegation that individual defendants received reports showing alleged

---

- 24 -

Stalnaker or any other named Defendant read the reports; (ii) what the specific reports observed in his office actually said or when they were seen; (iii) that the "geologist" voiced any concerns to any named Defendant; (iv) that any other specific Cabot employee shared his or her concerns; (v) that the "geologist" actually had personal experience cementing wells; or (vi) that any actual leakage of gas was ever detected or observed by anyone within Cabot.[51]  Confidential witness allegations that lack such details are "discounted" and do not demonstrate scienter.[52]  The fact

---

violations and were required by law to compile reports that would have revealed safety violations), *aff'd*, 777 F. App'x at 731; *Owens*, 789 F.3d at 538, 542-45 (holding that allegations that a confidential witness sent an email directly to the defendants detailing deficiencies in the company's internal valuation models, and reiterated his or her concerns at meetings attended by the defendants, did not give rise to a strong inference of scienter despite the company's resulting $1.62 billion impairment and subsequent bankruptcy); *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 537-40 (5th Cir. 2008) (affirming dismissal despite allegations that one defendant was "informed, in great detail, . . . of all the problems associated with" the company's project-tracking software); *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 552 (5th Cir. 2007) (affirming dismissal despite allegations CEO told confidential witness "he did not want to know the details of a revenue issue so that he would not be liable").

[51] *See* Compl. ¶¶ 109-114.

[52] *See Crutchfield*, 2021 WL 1167578, at *16 ("Courts following *Tellabs* must discount allegations from confidential sources. . . ."); *Smith v. Antares Pharma, Inc.*, 2021 WL 754091, at *5 (D.N.J. Feb. 26, 2021) ("'steeply discount[ing]'" confidential witness allegations that "everyone at the Company" knew of purported problems); *Alberici v. Recro Pharma, Inc.*, 2020 WL 806719, at *16-18 (E.D. Pa. Feb. 14, 2020) (rejecting confidential witness allegation that failed to show exactly what was conveyed to defendants or which defendants were informed); *In re Innocoll Holdings*, 2018 WL 4252537, at *8 (E.D. Pa. Sept. 5, 2018) (observing that confidential witness allegations lacking "the dates they acquired the information"

that Pennsylvania regulators have not sought to shut down or further restrict Cabot's drilling operations as a result of the alleged violations further undercuts any inference that the alleged violations show any fraud in Cabot's disclosures.

Plaintiff also fails to plead facts showing that the Pennsylvania notices of violation were not publicly available records,[53] which further undercuts any inference that Defendants acted fraudulently by not disclosing alleged violations sooner.  An inference of scienter is hardly cogent when the purportedly concealed information is already publicly available.  *See Alberici*, 2020 WL 806719, at *18 (public availability of clinical data weighed against scienter); *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 586 (S.D.N.Y. 2013) ("third party disclosure" of relevant facts weighed against scienter); *In re GeoPharma, Inc. Secs. Litig.*, 399 F. Supp. 2d 432, 452 (S.D.N.Y. 2005) ("Plaintiffs have cited no case, and I am aware of none, where a plaintiff adequately pled scienter based solely on the contradiction between **public** information and the company's public statements") (emphasis in original).

---

could be discounted); *Chan*, 2019 WL 2865452, at *9 (plaintiff must identify "the dates when the material information was acquired" by confidential witness).

[53] Indeed, PaDEP maintains a searchable public database of inspection records that includes notices of violation to Cabot.  *See* http://cedatareporting.pa.gov/Reportserver/Pages/ReportViewer.aspx?/Public/DEP/OG/SSRS/OG_Inspection_Docs; Ex. 32 (screenshot of Cabot search).

In addition, the direct allegations of scienter must be "correspondingly greater" when, as here, Plaintiff does not adequately plead a personal motive to defraud.[54]  Plaintiff's assertion that Defendant Dinges sold 66,610 shares of Cabot stock on November 2, 2017[55] – ***20 months*** before the first stock price decline at issue in this case, and before Cabot had even received the November 16, 2017 notice of violation – comes nowhere close to establishing a sufficient motive to defraud.[56]

Plaintiff has thus failed to allege particularized facts supporting a strong, cogent, and compelling inference of scienter.  The far stronger inference is that Cabot made accurate, measured, and reasonable disclosures, provided appropriate cautionary statements, and at a minimum did not make disclosures that were so blatantly and inarguably deficient to be fraudulent or reckless.

---

[54] *See Ortiz*, 2021 WL 1967714, at *43; *Elec. Workers Pension Fund, Local 103 v. Six Flags Entertainment Corp.*, 2021 WL 807251, at *24 (N.D. Tex. Mar. 3, 2021).

[55] *See* Compl. ¶ 167.

[56] *See In re Party City Sec. Litig.*, 147 F. Supp. 2d 282, 313 (D.N.J. 2001) (concluding sales of stock three, four and twelve months before the disclosure of bad news were too attenuated to infer scienter); *Dillard v. Platform Specialty Prods. Corp.*, 2016 WL 10586301, at *9 (S.D. Fla. Dec. 8, 2016) ("An allegation that [defendant] sold stock on two days totaling $10 million over 10 months before the March 11 disclosure does not raise an inference of scienter"); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 279 (S.D.N.Y. 2008) (lapse of "approximately four months" between defendant's "substantial sales and the revelation of the alleged falsity" "inescapably attenuate[d] any inference of scienter").

- 27 -

## II.    THE ALLEGATIONS DO NOT PLAUSIBLY SHOW CAUSATION

Plaintiff has also not pled facts plausibly showing that the stock price declines on July 26, 2019, and June 15, 2020 were caused by revelation of the alleged environmental violations.  Plaintiff openly alleges a far likelier explanation for the July 26, 2019 drop: the announcement of "disappointing" earnings.[57]  A securities complaint may be dismissed when it alleges a more plausible alternative basis for a price decline without attempting to disaggregate the losses caused by the alternative event or pleading facts plausibly showing the "corrective" information caused a material part of the loss.[58]  Plaintiff alleges no facts plausibly suggesting that the disclosure of the PaDEP notices on July 26 – with an estimated maximum penalty of just $215,000, an immaterial sum to Cabot's earnings – caused a material portion of the decline, particularly given Plaintiff's failure to allege any stock price decline after the similar 2016 disclosures of PaDEP notices.[59]

Plaintiff also has not plausibly alleged that the approximate 3% decline from closing on June 12, 2020 to closing on June 15, 2020 was outside Cabot's normal daily trading range or was caused by the Pennsylvania Attorney General

---

[57] *See* Compl. ¶ 173.

[58] *See City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 84-85 (S.D.N.Y. 2015).

[59] *See supra* footnote 18.

announcement. [60]   The roller-coaster chart in paragraph 178 refutes such an inference, showing that the stock routinely rose or fell by more dramatic amounts.[61] The $0.67 decline in Cabot's stock price from the close on June 12 to the close on June 15 is smaller than the swing in closing prices on May 6, 11, 20, 27 and 28 and June 8, 10, and 25 from the prior trading day close.   Natural gas prices were declining, reaching a 20-year low June 16.[62]   Other natural gas-linked securities fell by nearly identical amounts as Cabot's stock on June 15.[63]   Plaintiff's allegations are not sufficient under *Iqbal* to nudge its causation claim from conceivable to plausible.

The absence of significant stock price movement also weighs against materiality and scienter, as it shows the market did not perceive a significant disparity between Cabot's publicly disclosed risk profile and the subsequent announcement of alleged violations.[64]   If the market perceived little if any disparity, there can hardly be a cogent and compelling inference that Cabot's disclosures

---

[60] *See Eng v. Edison Int'l*, 2018 WL 1367419, at *5 (S.D. Cal. Mar. 16, 2018) (dismissing claims where stock price drops "were well within [the stock's] average trading range") (citing *Greenberg v. Crossroads Sys., Inc.*, 364 F.3d 657, 665 n.9 (5th Cir. 2004)).

[61] *See also* Ex. 26.

[62] *See supra* at 9-10.

[63] *See supra* at 9-10.

[64] *See, e.g., In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1425 (3d Cir. 1997) (disclosure was "immaterial as a matter of law" where it had no effect on the stock price).

created such an "obvious" risk of misleading investors as to be reckless.[65] Viewed holistically with all judicially noticeable facts, the allegations do not show scienter.[66]

## III. THE SECTION 20 CONTROL PERSON CLAIMS FAIL

Having failed to plead a primary Section 10(b) claim, Plaintiff's secondary control person claims likewise fail.[67] Plaintiff also fails to plead that the individual Defendants culpably participated in any alleged fraud or that Stalnaker had the power to control statements by senior officers.[68]

## CONCLUSION

For the reasons set forth above, the Court should dismiss this action.

---

[65] *See supra* at 13.

[66] The scienter allegations are far less severe than in *Allegheny County Employees Retirement System v. Energy Transfer LP*, which involved alleged concrete misrepresentations of fact regarding the percentage completion of a pipeline and specific allegations that the company violated bribery laws. *See* 2021 WL 1264027, at *3, 15 (E.D. Pa. Apr. 6, 2021).

[67] *See* 396 F. Supp. 3d at 477; *Asar*, 768 F. App'x at 189 (same).

[68] *See In re Cognizant Tech. Solutions Corp. Secs. Litig.*, 2018 WL 3772675, at *35 (D.N.J. Aug. 8, 2018).

Dated:        June 11, 2021        Respectfully submitted,

/s/ Peter A. Stokes
Gerard G. Pecht (*pro hac vice*)
TX ID No. 15701800
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
gerard.pecht@nortonrosefulbright.com

Peter A. Stokes (*pro hac vice*)
TX ID No. 24028017
peter.stokes@nortonrosefulbright.com
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598
peter.stokes@nortonrosefulbright.com

Amy L. Barrette
PA ID No. 87318
BUCHANAN INGERSOLL & ROONEY, PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219
Telephone: 412-562-1626
Facsimile: 412-562-1041
Email: amy.barrette@bipc.com

*Counsel for Defendants*

- 31 -

## CERTIFICATE OF COMPLIANCE

In accordance with Local Rule 7.8(b)(2) of the Rules of Court of the United States District Court for the Middle District of Pennsylvania, I hereby certify that **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS** contains 8,484 words, excluding the title page, tables, and certifications, as counted by Microsoft Word 2016.

/s/ *Peter A. Stokes*

Peter A. Stokes

## **CERTIFICATE OF CONFERENCE**

I hereby certify that pursuant to M.D. Pa. L.R. 7.1, I conferred with Plaintiff's counsel regarding Defendants' intent to file this motion and advised Plaintiff's counsel regarding the grounds for this motion, and that I was advised by Plaintiff's counsel on May 27, 2021 that Plaintiff intends to oppose this motion in full.

/s/ *Peter A. Stokes*

Peter A. Stokes

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was filed with the Court's electronic case filing (ECF) system on June 11, 2021, which caused an electronic copy of this document to be served on all counsel of record in this matter who have registered for ECF service.

/s/ *Peter A. Stokes*
Peter A. Stokes