**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| HOWARD JACOBOWITZ, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:21-CV-00301-RJC |
| RANGE RESOURCES CORPORATION, JEFFREY L. VENTURA, MARK S. SCUCCHI, and ROBER S. MANNY, | ) ) ) ) | |
| Defendants. | ) ) | |

**OPINION**

Presently pending before the Court is a Motion to Transfer Venue to the Northern District of Texas filed by Defendants Range Resources, Corporation, Jeffrey L. Ventura, Mark S. Scucchi, and Roger S. Manny (collectively, "the Defendants"). (ECF No. 26). The motion has been fully briefed and is ripe for disposition.

For the reasons that follow, the motion will be granted.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The allegations in the Complaint are as follows. Plaintiff Howard Jacobowitz brings this federal securities class action individually and on behalf of all others similarly situated, specifically, individuals who purchased or otherwise acquired Range Resources Corporation ("Range Resources" or "the Company") stock between April 29, 2016 and February 10, 2021 (the "Class Period") and who seek to recover damages caused by Defendants'[1] alleged violations

---

[1] Defendant Range Resources is a Delaware corporation with principal executive offices located at 100 Throckmorton Street, Suite 1200, Fort Worth, Texas. Defendant Jeffrey L. Ventura ("Ventura") has served as Range Resources' Chief Executive Officer and President at all relevant times. Defendant Mark S. Scucchi ("Scucchi") has served as Range Resources' Senior Vice President – Chief Financial Officer ("CFO") since May 16, 2018. Defendant Roger S. Manny ("Manny") served as Range Resources' CFO from before the start of the Class Period until May 16, 2018. Complaint at ¶¶ 13-16.

of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against Range Resources and certain of its top officials. Complaint ¶ 1. Range Resources operates as an independent natural gas, natural gas liquids ("NGLs"), and oil company in the United States. The Company and its subsidiary, Range Resources –Appalachia, LLC, engage in the exploration, development, and acquisition of natural gas and oil properties in, among other U.S. regions, Fayette County, Pennsylvania. As of December 31, 2019, the Company purportedly owned and operated 1,272 net producing wells in the Appalachian region, including Pennsylvania.  Complaint ¶ 2.

Plaintiffs allege that throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Range Resources had improperly designated the status of its wells in Pennsylvania since at least 2013; (ii) the foregoing conduct subjected the Company to a heightened risk of regulatory investigation and enforcement, as well as artificially decreased the Company's periodically reported cost estimates to plug and abandon its wells; (iii) the Company was the subject of a Pennsylvania Department of Environmental Protection ("DEP") investigation from sometime between September 2017 to January 2021 for improperly designating the status of its wells; (iv) the DEP investigation foreseeably would and ultimately did lead to the Company incurring regulatory fines; and (v) as a result, the Company's public statements were materially false and misleading at all relevant times.

On February 10, 2021, shortly before the close of the trading session, the DEP issued a press release announcing that Range Resources had paid a $294,000 civil penalty to the

agency on January 8, 2021 for violating the 2012 Oil and Gas Act. The DEP had begun investigating the Company after the agency found conflicting and inaccurate information on the status of a Company well in Fayette County, Pennsylvania—specifically concerning whether the well in question was correctly designated as inactive for the purposes of DEP regulation. After subpoenaing Range Resources for information on other wells the Company had requested to designate as inactive, the DEP found that "between Tuesday, July 16, 2013, and Monday, October 11, 2017, forty-two of Range Resources' conventional wells were placed on inactive status but were never used again" and that several of the Company's "wells had not been in use for 12 months at the time Range Resources submitted its applications for inactive status," even though "after 12 consecutive months of no production, the well would be classified as abandoned and must be plugged." In addition to paying the DEP's civil penalty, Range Resources was ultimately required to plug the wells the agency identified as having no viable future use to remediate the issue. Complaint ¶ 5. The following day, Range Resources' stock price fell $0.62 per share, or 6.08%, from its closing price on February 10, 2021, to close at $9.57 per share on February 11, 2021. Complaint ¶ 6. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages. Complaint ¶ 7.

Plaintiffs allege venue is proper in the Western District of Pennsylvania pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b), because substantial acts in furtherance of the alleged wrongdoing took place in this District, and the alleged misstatements entered and the subsequent damages took place in this District. Range Resources operates a well that is the subject of this litigation in Fayette County, Pennsylvania, which is located in this District. Moreover, pursuant to Range Resources' most recent annual report on

Form 10-K, as of February 19, 2021, there were 258,570,848 shares of the Company's common stock outstanding, and Plaintiffs allege, there are presumably hundreds, if not thousands, of investors in Range Resources' common stock located within the U.S., some of whom undoubtedly reside in this District. Complaint ¶ 10.

On May 4, 2021, Defendants filed the now-pending Motion to Transfer, seeking transfer to the Northern District of Texas, and attached to their brief the declaration of David P. Poole, Senior Vice President – General Counsel and Corporate Secretary of Range Resources Corporation, in support of said motion. (ECF No. 27-1) ("Poole Declaration"). On May 18, 2021, Plaintiff filed a brief in opposition to the motion (ECF No. 33) and on May 25, 2021, Defendants filed their reply brief. (ECF No. 34).

## II. LEGAL STANDARD

In considering a motion to transfer under 28 U.S.C. § 1404(a), district courts in our Circuit apply a two-part inquiry. First, as required by § 1404(a), a court must determine whether the action could have been originally brought in the transferee forum (i.e., whether venue in the transferee district is proper). Then, in addition to considering the factors enumerated by § 1404(a), a court should apply the balancing test set forth by the United States Court of Appeals for the Third Circuit in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), which requires district courts to weigh a number of public and private interests in order to determine whether the transferee forum "would best serve the convenience of the parties and witnesses as well as the interests of justice." *Mitel Networks Corp. v. Facebook, Inc.,* 943 F. Supp. 2d 463, 467 (D. Del. 2013). "The decision to transfer is in the court's discretion," but "a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). If a court considering transfer determines that a case could have been properly brought in another district,

the court must then evaluate "all relevant factors," including "the private and public interests protected by the language of § 1404(a)," to determine if transfer is in the interest of justice. *Jumara,* 55 F.3d at 879. The party moving to transfer bears the burden to demonstrate that transfer is appropriate. *Id.* at 879.

In *Jumara,* the non-exhaustive list of private interest factors includes: (1) plaintiff's forum preference; (2) defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records, but only to the extent that the files could not be produced in the alternative forum. *Id.*

*Jumara* also sets forth public factors courts should consider when determining whether to transfer a case: (1) "the enforceability of the judgment"; (2) "practical considerations that could make the trial easy, expeditious, or inexpensive"; (3) "the relative administrative difficulty in the two fora resulting from court congestion"; (4) "the local interest in deciding local controversies at home"; (5) "the public policies of the fora"; and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879-80.

District courts are to consider both the public and private factors to determine, on balance, whether the litigation would "more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, et al., Federal Practice & Procedure, § 3847 (2d ed. 1986)). And the Court should keep in mind that "[t]he purpose of transferring venue under § 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Stillwagon v. Innsbrook Golf & Marina, LLC*, No. 11-1338, 2013

5

WL 1180312, at \*24 (W.D. Pa. Mar. 20, 2013) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)).

At each step of the transfer inquiry, the moving party bears the burden of demonstrating that transfer of venue is appropriate and, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

## III.  DISCUSSION

As noted supra, Defendants have provided a declaration of Senior Vice President – General Counsel and Corporate Secretary of Range Resources Corporation, David P. Poole.   He declares the following. Range is headquartered at 100 Throckmorton Street, Suite 1200, Fort Worth, Texas. Compl. ¶ 13; Poole Decl. ¶¶ 4, 5. Individual defendants Jeffery L. Ventura (Range's CEO), Mark S. Succhi (Range's Senior Vice President and CFO), and Roger S. Manny (Range's former CFO) (collectively, "Individual Defendants"), all reside and work (or, in the case of Mr. Manny, who has retired, worked) in the Fort Worth area. Poole Decl. ¶¶ 6–8. Mr. Ventura, Mr. Scucchi, and Mr. Manny signed the Sarbanes-Oxley certifications cited in the Complaint at Range's Fort Worth headquarters. The documents were filed with the Securities and Exchange Commission from Range's headquarters in Fort Worth. Poole Decl. ¶ 11.  The employees responsible for preparing Range's securities filings—including all the filings identified in the Complaint—live in the Fort Worth area and work from Range's headquarters. Poole Decl. ¶ 10. Range's investor relations department employees, who assist with securities filings, earnings releases and other communications with investors such as quarterly calls and press releases, work from at Range's Fort Worth headquarters office and live in the Fort Worth area.  Poole Decl. ¶ 12. Employees in Range's accounting department, who are responsible for

the company's securities filings, as well as Range's accounting and financial information, work from Range's Fort Worth headquarters and live in the Fort Worth area. Poole Decl. ¶ 13. Range's financial statements are audited by Ernst & Young in Fort Worth. Poole Decl. ¶ 14. The employees responsible for conducting electronic searches of Range's IT systems for documents, information, and email that are requested in litigation matters are in Range's Legal and IT departments, and work and reside in the Fort Worth, Texas area. Poole Decl. ¶ 15.

As yet decided is which of the proposed lead plaintiffs will be appointed to represent the class. On May 4, 2021, the Court set a briefing schedule on this issue. (ECF No. 23). Later that same date, Defendants filed the motion to transfer. The next day, the Court entered a briefing schedule on the motion to transfer and further indicated that consideration of the merits of the motions for appointment of counsel and appointment as lead plaintiff shall be held in abeyance pending resolution of the Motion to Transfer. At this juncture, it appears that no potential lead plaintiff resides in either Pennsylvania or Texas.

## A. Venue is Proper in the Northern District of Texas

As noted above, we may only transfer this action to a district or division where it may have been brought originally. 28 U.S.C. §1404(a). Section 1391 of Title 28 United States Code provides in relevant part that:

(b) Venue in general. -- A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

7

There is no dispute that this case could have been brought in the Northern District of Texas, nor could there be. Defendant Range Resources is headquartered in Texas, Individual Defendants Ventura, Succhi, and Manny all reside and work, or previously worked, in the Fort Worth, Texas area. The Individual Defendants signed the Sarbanes-Oxley certifications at Range Resource's Fort Worth headquarters. The employees responsible for preparing Range's securities filings, accounting, and investor relations live in the Fort Worth, Texas area. For these reasons, and given the nature of the allegations in the Complaint, we find that this case could have been brought in the proposed transferee forum, the Northern District of Texas.

### B. The Jumara Factors

*Private interests – Convenience of Parties and Witnesses*

1. Plaintiff's Forum Preference

The Complaint alleges that hundreds, if not thousands of investors are located in the United States and that in all likelihood a portion of those investors live in Pennsylvania. In a class action such as this, where the allegations are that the defendant violated federal securities law, the courts are more apt to give plaintiff's choice of forum less weight, especially as the potential members of the class will be scattered across the United States. *See Osborne*, 2020 WL 1808270, at *6 (when a plaintiff in a securities suit seeks to represent a nationwide class of shareholders, the representative plaintiff's "forum preference . . . is entitled to little weight."); *Huang,* 2016 WL 1090436, at *2; *Scanlan v. Am. Airlines Grp., Inc.*, 366 F. Supp. 3d 673, 677 (E.D. Pa. 2019) ("[W]here there are hundreds of potential plaintiffs ... the claim of any one plaintiff that a forum is appropriate merely because it is his home forum is considerably weakened.") (quoting *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947)). As alleged, Plaintiffs do not appear to have a particular personal interest that would entitle their

choice of forum to special weight. The nature of this suit will in all likelihood not require active participation by Plaintiff.  Indeed, where a plaintiff is suing on behalf of a putative class, courts have "afforded less deference to a [p]laintiff's choice of forum" because "in such actions the participation of the class representative is generally minimal" and "the potential members of the class will likely be scattered across the United States." *Santomenno v. Transamerica Life Ins. Co.*, 2012 WL 1113615, at \*5 (D. N.J. Mar. 30, 2012). Therefore, the first *Jumara* factor weighs slightly against transfer in that it is Plaintiff's choice of forum, but will be afforded little deference.

### 2. Defendants' Forum Preference

Defendants prefer the case be transferred to the Northern District of Texas, and all of the Defendants are located in that state.  This factor weighs in favor of transfer. *Huang v. Sonus Networks, Inc.*, 2016 WL 1090436, \*2 (D. N.J. Mar. 21, 2016).

### 3. Where the Claim Arose

At their core, Plaintiff's claims arose from alleged false and misleading statements to investors and others, although those representations concern compliance with Pennsylvania environmental law and regulations.  The securities claims arose from those alleged misstatements, which originated in Texas.   "[I]t is well established that in securities cases 'misrepresentations and omissions are deemed to occur in the district from which they are transmitted or withheld,'" which is why securities suits are routinely transferred to defendants' corporate headquarters. *In re Amkor Tech., Inc. Sec. Litig.,* 2006 WL 3857488, at \*5 (E.D. Pa. Dec. 28, 2006) (citation omitted) (transferring securities suit to district of defendant's headquarters).  Because the claims involve whether Defendants  drafted accurate  securities filings, correctly certified compliance with the law,  followed standard accounting  practices and

otherwise complied with securities regulations (Complaint ¶¶ 22, 23, 26, 31), and because all of these and other core decisions were carried out in the Northern District of Texas, this factor weighs in favor of transfer. *Wojtunik v. Kealy*, 2003 WL 22006240, at *8 (E.D. Pa. Aug. 26, 2003).

### 4. Convenience of the Parties

Here, the named individual defendants, as well as the majority if not all of the Range Resources employees are located in the proposed forum, and it is plainly evident that the proposed forum would be a more convenient forum. This is especially true given the potential disruption of a trial and compliance with discovery matters would have on the day-to-day operations of the corporation, especially because the Individual Defendants are senior officers. Putative lead Plaintiffs have not posited any credible theory to support a finding of burden or inconvenience they would suffer should the case be transferred. For these reasons, this factor weighs in favor of transfer.

### 5. Convenience of the Witnesses

Again, should the case be transferred to the proposed forum, the convenience of the witnesses with the most relevant testimony weighs in favor of transfer. As explained *supra*, the Individual Defendants and likely witnesses employed by Range Resources and its accounting firm are all located there, and Range Resource's financial statements were audited there by third-party Ernst & Young. Certain discovery from witnesses may be necessarily originate in Pennsylvania, though not necessarily this District, for example, DEP personnel, but overall, in light of the allegations in the Complaint, this factor weighs in favor of granting the motion to transfer. *Wojtunik*, 2003 WL 22006240, at *10.

6. Location of Documents

As to the location of the books and records this factor favors transfer but, in light of the conveniences afforded in this digital age, is afforded little weight. *See generally, FG SRC LLC v. Xilinx, Inc.*, 2021 WL 495614, *6 (D. Del. Feb. 10, 2021). Given the state of technology which has shortened the time it takes to transfer information, reduced the bulk or size of documents, and lowered the cost of moving and producing information from one place to another, this factor is given less consideration.

Conclusion

On balance, the Court finds that the private *Jumara* factors weigh in favor of transferring this action to the Northern District of Texas, as the bulk of the allegedly unlawful activity occurred there. Transfer would likely make litigation more convenient for the parties and witnesses.

*Public Interests – Interest of Justice*

1. Factors One and Six: Enforceability of the Judgment and Familiarity with Applicable State Law

Because this action arises from alleged violations of a federal statute, judgment entered in either district would be enforceable. Moreover, as to the sixth factor, any judge in either forum would be adequately familiar with the applicable law. *Liggett Grp., Inc. v. R.J. Reynolds Tobacco Co.,* 102 F Supp.2d 518, 537 (D. N.J. 2000). Thus, these two factors are neutral.

2. Practical Considerations

The Court must next weigh "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. As noted previously, the Individual

Defendants and Range Resources, as well as the substantial preponderance of material witnesses overall, are located in the Northern District of Texas. This factor weighs in favor of the transfer.

### 3. Court Congestion

With regard to the relative administrative difficulty resulting from court congestion, the Court finds this factor disfavors transfer. As of March 31, 2021, the Northern District of Texas had 8,524 total filings spread over 12 judgeships, for an average of 636 filings per judge. See District Courts – Combined Civil and Criminal Federal Court Management Statistics (date http://www.uscourts.gove/statistics/table/na/federal-court-management -statistics/2021/03. The Western District of Pennsylvania has 3,870 total filings, spread over 10 judgeships, for an average of 383 filings per judge. Nevertheless, courts do not hesitate to transfer cases where the remaining factors in securities litigation compel transfer to a corporate headquarters. *See Wojtunik*, 2003 WL 22006240, at *11.

### 4. Local Interest

Plaintiff argues that the enforcement of Pennsylvania environmental protection laws favors this forum, however, this is an action based principally upon securities laws and regulations (as opposed to violations of Pennsylvania law) against a corporation located in Texas, whose executives, employees and accountants are alleged to have violated federal securities laws by misstating central information in their securities filings which were drafted, filed and certified in Texas. Local interest would be greater where Range Resources is located. None of the putative lead plaintiffs appear to have any connection to Pennsylvania, and although the disclosures concern an investigation conducted in Pennsylvania, the injuries allegedly suffered are not unique to Pennsylvania residents. This factor weighs in favor of transfer to the proposed forum.

12

5.  Public Policies of the Fora

Public interest factor five, the public policies of the fora, appears to be neutral, if not irrelevant, as the violation alleged arises from a federal statute equally applicable in either fora, as across the Nation, rather than pursuant to any specific state law.

Conclusion

In the end, the Court finds that the public *Jumara* factors weigh in favor of transferring this action to the proposed forum because discovery would mostly take place there, witnesses time would be more efficiently spent, and local interest would be greater there.

## IV.  Conclusion

In conclusion, for the reasons stated herein, this Court will order that this case be transferred to the Northern District of Texas pursuant to 28 U.S.C. §1404(a).  An appropriate order follows.

Dated:  June 16, 2021

s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

cc:  record counsel via CM-ECF