**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CABOT OIL & GAS CORPORATION, et al.,<br><br>Defendants. | Civil Action 4:21-cv-02045<br><br>Chief District Judge Lee H. Rosenthal<br><br><u>CLASS ACTION</u> |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

NATURE AND STAGE OF THE PROCEEDINGS ..................................................... 1

SUMMARY OF THE ARGUMENT .......................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

    I.        CABOT'S OPERATIONS ................................................................... 3

    II.      CABOT MISREPRESENTED ITS SUBSTANTIAL COMPLIANCE
            WITH LAW AND EFFORTS TO PROTECT THE ENVIRONMENT ............... 3

    III.     THE TRUTH EMERGES ................................................................... 5

LEGAL STANDARD ................................................................................................. 6

ARGUMENT ............................................................................................................... 7

    I.        DEFENDANTS HARDLY CONTEST SCHEME LIABILITY ............................ 7

    II.      PLAINTIFFS ADEQUATELY PLEAD MATERIAL
            MISREPRESENTATIONS ................................................................. 8

          A.     Defendants' Misrepresentations About The Lawfulness Of
                Cabot's Operations ................................................................. 9

          B.     Defendants' Misrepresentations About Their Groundwater
                Pollution ................................................................................ 11

          C.     Defendants' Challenge To Cabot's Legal Compliance
                Statements Fail ...................................................................... 12

               1.     This Court's *Plains* Decision Exemplifies The
                       Requisite Context-Based Falsity Analysis ................................. 12

               2.     The Fact-Bound *Plains* Analysis Supports A
                       Finding Of Falsity Here ...................................................... 14

          D.     Defendants' Other Falsity Arguments Similarly Fail ............................. 16

          E.     Stalnaker Made Misstatements ..................................................... 20

    III.     PLAINTIFFS ADEQUATELY ALLEGE SCIENTER ................................... 21

          A.     Defendants' Involvement In The Underlying Misconduct
                 Supports Scienter .................................................................. 21

          B.     Cabot's Repeat Offenses Support Scienter ............................................. 23

          C.     Dinges's Stock Sales .................................................................... 24

          D.     Defendants' Scienter Arguments Fail ................................................ 24

    IV.     PLAINTIFFS ADEQUATELY ALLEGE LOSS CAUSATION ........................ 26

    V.     THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS ................... 28

CONCLUSION ........................................................................................................... 28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Akorn, Inc. Sec. Litig.*,
  240 F. Supp. 3d 802 (N.D. Ill. 2017) ...................................................................................24

*In re Alphabet, Inc. Sec. Litig.*,
  1 F.4th 687 (9th Cir. 2021) .....................................................................................................7

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005)...............................................................................20, 21

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)...................................................................................23

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................................6

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)...................................................................................................................8

*In re BHP Billiton Ltd. Sec. Litig.*,
  276 F. Supp. 3d 65 (S.D.N.Y. 2017)......................................................................................11

*Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*,
  646 F. Supp. 2d 860 (S.D. Tex. 2009) ...................................................................................22

*In re BP p.l.c. Sec. Litig.*,
  843 F. Supp. 2d 712 (S.D. Tex. 2012) ...................................................................................17

*Carlton v. Cannon*,
  184 F. Supp. 3d 428 (S.D. Tex. 2016) .......................................................................10, 16, 19

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
  497 F.3d 546 (5th Cir. 2007) ..................................................................................................24

*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
  399 F.3d 651 (6th Cir. 2005) ............................................................................................16, 17

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
  2013 WL 1100819 (W.D. La. Mar. 15, 2013) ........................................................................24

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
  2016 WL 215476 (S.D. Tex. Jan. 19, 2016).........................................................7, 19, 20, 21

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
    2020 WL 3026564 (D.N.J. June 5, 2020) ................................................................23

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
    323 F. Supp. 3d 393 (S.D.N.Y. 2018) ..................................................................17

*Eastwood Enters., LLC v. Farha*,
    2009 WL 3157668 (M.D. Fla. Sept. 28, 2009) .....................................................24

*In re El Paso Elec. Co. Sec. Litig.*,
    2004 WL 377555 (W.D. Tex. Feb. 23, 2004) ......................................................18

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    235 F. Supp. 2d 549 (S.D. Tex. 2002) ............................................................22, 24

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
    2004 WL 5278716 (E.D. Tex. June 16, 2004) ...........................................21, 25, 27

*Frank v. Dana Corp.*,
    646 F.3d 954 (6th Cir. 2011) ...........................................................................24

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum*,
    2021 WL 182316 (S.D. Tex. Jan. 19, 2021) ........................................................11

*In re Gentiva Sec. Litig.*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ................................................................23

*In re Goldman Sachs Grp., Inc. Sec. Litig.*,
    2014 WL 2815571 (S.D.N.Y. June 23, 2014) ......................................................17

*Gregson v. Zurich Am. Ins. Co.*,
    322 F.3d 883 (5th Cir. 2003) ...........................................................................16

*Hall v. Rent-A-Ctr., Inc.*,
    2017 WL 6398742 (E.D. Tex. Oct. 19, 2017) .....................................................10

*Holzwasser v. Staktek Holdings, Inc.*,
    2006 WL 897746 (W.D. Tex. Mar. 30, 2006) .............................................22, 25, 26

*Ieradi v. Mylan Lab'ys, Inc.*,
    230 F.3d 594 (3d Cir. 2000) ............................................................................19

*Isquith v. Middle S. Utils., Inc.*,
    847 F.2d 186 (5th Cir. 1988) ...........................................................................8, 9

*Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*,
    510 F. Supp. 3d 583 (M.D. Tenn. 2020) ............................................................20

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)..................................................................................................20

*KB Partners I, L.P. v. Pain Therapeutics, Inc.*,
  2015 WL 7760201 (W.D. Tex. Dec. 1, 2015) ...........................................................19

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ....................................................................................25

*Kohut v. KBR, Inc.*,
  2015 WL 11995250 (S.D. Tex. Sept. 3, 2015) .................................................7, 8, 21

*Lapin v. Goldman Sachs Grp. Inc.*,
  506 F. Supp. 2d 221 (S.D.N.Y. 2006)........................................................................17

*Lorenzo v. SEC*,
  139 S. Ct. 1094 (2019)....................................................................................7, 20, 21

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................ *passim*

*Masterson v. Commonwealth Bankshares, Inc.*,
  2013 WL 6917423 (E.D. Va. Dec. 27, 2013) ...........................................................23

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)....................................................................................................6, 7

*Meyer v. Jinkosolar Holdings Co., Ltd.*,
  761 F.3d 245 (2d Cir. 2014)................................................................................12, 18

*In re NetSolve, Inc. Sec. Litig.*,
  185 F. Supp. 2d 684 (W.D. Tex. 2001)................................................................22, 23

*In re OCA, Inc. Sec. & Derivative Litig.*,
  2006 WL 3747560 (E.D. La. Dec. 14, 2006)...............................................................9

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)..............................................................................................13, 16

*Owens v. Jastrow,*
  789 F.3d 529 (5th Cir. 2015) ....................................................................................19

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
  2018 WL 276338 (N.D. Tex. Jan. 3, 2018) ..............................................................27

*In re Petrobras Sec. Litig.*,
  116 F. Supp. 3d 368 (S.D.N.Y. 2015).......................................................................17

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
  245 F. Supp. 3d 870 (S.D. Tex. 2017) ....................................................................13

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*
  307 F. Supp. 3d 583 (S.D. Tex. 2018) ...............................................12, 13, 14, 15

*Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*,
  769 F.3d 313 (5th Cir. 2014) ..........................................................................26, 27

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
  679 F.3d 972 (8th Cir. 2012) .................................................................................12

*Puddu v. 6D Glob. Techs., Inc.*,
  2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) ....................................................7, 8

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) ...............................................19, 20, 25, 27

*Roofer's Pension Fund v. Papa*,
  2018 WL 3601229 (D.N.J. July 27, 2018).............................................................17

*Rosky v. Farha*,
  2009 WL 3853592 (M.D. Fla. Mar. 30, 2009) ......................................................17

*Rubinstein v. Collins*,
  20 F.3d 160 (5th Cir. 1994) .....................................................................................9

*Schott v. Nobilis Health Corp.*,
  211 F. Supp. 3d 936 (S.D. Tex. 2016) .............................................................26, 27

*In re Sec. Litig. BMC Software, Inc.*,
  183 F. Supp. 2d 860 (S.D. Tex. 2001) ...................................................................26

*SEC v. Farmer*,
  2015 WL 5838867 (S.D. Tex. Oct. 7, 2015)............................................................8

*Smith v. Reg'l Transit Auth.*,
  756 F.3d 340 (5th Cir. 2014) ...................................................................................7

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007).....................................................................................8, 21, 25

*Trendsetter Inv'rs, LLC v. Hyperdynamics Corp.*,
  2007 WL 172627 (S.D. Tex. Jan. 18, 2007)...........................................................22

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)..................................................................................................8

v

*In re Tyco Int'l, Ltd.*,
  2004 WL 2348315 (D.N.H. Oct. 14, 2004) ...........................................................................12

*In re VEON Ltd. Sec. Litig.*,
  2017 WL 4162342 (S.D.N.Y. Sept. 19, 2017)........................................................................17

*In re Virtus Inv. Partners, Inc. Sec. Litig.*,
  195 F. Supp. 3d 528 (S.D.N.Y. 2016)....................................................................................17

*Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*,
  28 F. Supp. 3d 93 (D. Mass. 2014) .......................................................................................24

*Wieland v. Stone Energy Corp.*,
  2007 WL 2903178 (W.D. La. Aug. 17, 2007)........................................................................26

**Statutes**

15 U.S.C. § 78u-4(b)(2) .....................................................................................................................7

**Other Authorities**

17 C.F.R. § 240.10b-5(b)...................................................................................................................8

# GLOSSARY OF TERMS[1]

| | |
|---|---|
| "Cabot" or the "Company" | Cabot Oil & Gas Corporation. |
| "CEO" | Chief Executive Officer. |
| "CFO" | Chief Financial Officer. |
| "Class Period" | October 23, 2015 to June 12, 2020, inclusive. |
| "Clean Streams Law" | Pennsylvania Clean Streams Law, 35 P.S. §§ 691.1 et seq. |
| "Complaint" | Consolidated Complaint For Violation of The Federal Securities Laws (ECF No. 47). |
| "December 2010 Consent Order" | Global Consent Order and Agreement concerning pollution in Dimock Township, Susquehanna County, Pennsylvania, which Cabot entered into with the PaDEP on December 15, 2010. |
| "Defendants" | Cabot; its CEO and Chairman, Dan O. Dinges; CFO and Executive Vice President, Scott C. Schroeder; and Senior Vice President and Regional Manager, Phil L. Stalnaker. |
| "Dinges" | Defendant Dan O. Dinges, Cabot CEO and Chairman. |
| "Exchange Act" | The Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq. |
| "FDA" | Food and Drug Administration. |
| "Geologist" | A former geologist in Cabot's Pittsburgh, PA office from 2011 to 2018. |
| "Grand Jury" | Pennsylvania's Forty-Third Statewide Investigating Grand Jury. |
| "Individual Defendants" | Dinges, Schroeder, and Stalnaker. |
| "June 2018 Letter" | Letter from the PaDEP addressed to Stalnaker on June 11, 2018, referencing outstanding PaDEP violations privately issued to Cabot prior to and during the Class Period. |
| "Motion to Dismiss," "MTD," or "Motion" | Defendants' Motion to Dismiss (ECF No. 63) and Defendants' Memorandum in Support of Motion to Dismiss (ECF No. 64). |
| "NOV" or "Violation" | Notice of Violation issued privately to the Company by the PaDEP. |

---

[1] Unless otherwise noted, internal quotation marks and citations are omitted and emphasis is added.

| "PaDEP" | Pennsylvania Department of Environmental Protection. |
|---|---|
| "Plaintiffs" | Lead Plaintiff Delaware County Employees Retirement System and additional plaintiff Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan. |
| "PSLRA" | Private Securities Litigation Reform Act of 1995. |
| "Rule" | Federal Rule of Civil Procedure. |
| "Rule 10b-5" or "10b-5" | SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. |
| "S&EA Committee" | Cabot's Safety and Environmental Affairs Committee. |
| "Schroeder" | Defendant Scott C. Schroeder, Cabot CFO and Executive Vice President. |
| "SEC" | U.S. Securities and Exchange Commission. |
| "Stalnaker" | Defendant Phil L. Stalnaker, Cabot Senior Vice President and Regional Manager. |
| "¶ __" | Refers to a paragraph in the Complaint, unless otherwise noted. |

## NATURE AND STAGE OF THE PROCEEDINGS

This securities fraud class action arises under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5.  Plaintiffs submit this Memorandum of Law in Opposition to Defendants' Motion to Dismiss.[2]

## SUMMARY OF THE ARGUMENT

From 2015 to 2020, Defendants repeatedly represented that Cabot was in "substantial compl[iance]" with governing laws, and an active steward of the environment.  Simultaneously, outside public view, Cabot's chief regulator in Pennsylvania—where Cabot conducted essentially all of its operations—cited it for multiple gas-well pollution violations, both new and in continuing breach of a December 2010 Consent Order Cabot executed upon earlier violations.  Cabot's infractions were so extreme that in July 2020, after a lengthy Grand Jury investigation, Pennsylvania charged Cabot with fifteen environmental crimes, including nine felonies for "knowing[]" misconduct, which it had committed, unabated, *for years*.  This was nothing like "substantial compliance."  By misrepresenting Cabot's years-long regulatory "indifference" (as the Grand Jury put it), Defendants had provided investors a materially misleading portrayal of the Company's legal compliance, polluting activities, and risk.

Defendants' scienter is equally plain.  The Individual Defendants' knowledge of the underlying facts is affirmed by, *e.g.*, their persistent failure to comply with consent orders; the non-public June 2018 Letter from Pennsylvania cataloging Cabot's continuing violations of the December 2010 Consent Order and denying its request to drill new wells; and additional violations

---

[2] Pursuant to this Court's Procedures, Plaintiffs state the issues to be ruled upon and relevant standards of review *infra* at 6-7 (Rule 12(b)(6) standard), 8-9 (materiality/falsity), 21 (scienter), and 26 (loss causation).  *See* Court Procedures Rule 9.A.4.  Should the Court grant Defendants' Motion, Plaintiffs respectfully seek leave to amend the Complaint to address the ruling.

Pennsylvania delivered to Defendant Stalnaker before and during the Class Period. Every violation at issue concerned Cabot's core Pennsylvania operations and came from a critical regulator. Further, Board-level committees met multiple times per year specifically to review management reports regarding regulatory violations and Company responses, supporting allegations that Defendants contemporaneously discussed the violations as they accrued. Bolstering Plaintiffs' contention are the Grand Jury and Pennsylvania Attorney General's findings that Cabot "***knowingly***" and criminally violated Pennsylvania law through its Class Period violations.

Defendants fail to engage with these facts. They argue they had no duty to disclose regulatory issues or uncharged conduct, ignoring their obligation under the securities laws to speak fully and accurately on topics they publicly addressed. They claim their statements were non-actionable, aspirational opinions—but opinions are actionable where, as here, alleged facts and context show the statements knowingly omitted material, contrary facts. And their suggestion that Cabot's legal compliance in Pennsylvania—the only place it did or earned anything—was immaterial to investors is absurd. Defendants also suggest risk disclosures sufficiently warned investors, immunizing their alleged misstatements. But these boilerplate, contingent warnings were themselves false, as the warned-of risks had already materialized.

Next, Defendants contend that scienter cannot be supported by criminal or regulatory investigations. Courts regularly hold otherwise. Defendants simply ignore the extensive direct and circumstantial facts showing their knowledge/recklessness, erroneously insisting scienter can be alleged only with "smoking-gun" evidence. Defendants even proffer their own factual spin that contradicts Plaintiffs' allegations—an improper approach at this stage.

2

On loss causation, Defendants offer more of the same. Contradicting the Complaint, Defendants assert self-serving explanations for Cabot's stock price declines, and their own hand-picked benchmarks by which to measure them. But Plaintiffs' causation allegations, not Defendants', control—and easily satisfy Rule 8(a)'s requirements.

The Motion should be denied.

## STATEMENT OF FACTS

### I.      CABOT'S OPERATIONS

Since 2015 and as shown below, Cabot has extracted more than 89% of its annual natural gas production from the Marcellus Shale Deposit in Susquehanna County, Pennsylvania.

| Cabot's Annual Production | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 |
|---|---|---|---|---|---|---|
| Marcellus Net Prod. (Bcf) | 540.8 | 581.9 | 641.7 | 729.9 | 865.3 | 857.7 |
| Total Prod. (Bcfe) | 602.5 | 627.1 | 685.3 | 735.0 | 865.3 | 857.7 |
| Marcellus as % of Total Prod. | 89.8% | 92.8% | 93.6% | 99.3% | 100.0% | 100.0% |

¶¶ 2-3, 28-30; *see also* ECF No. 41-1 at 10, 19, 24.

Cabot's operations therefore were governed by Pennsylvania laws and regulations that prohibited the pollution of groundwater, and set gas-well cement and construction standards. ¶¶ 34-37, 40. The PaDEP, Cabot's primary regulator, was responsible for determining when pollution had occurred and issuing orders as necessary to enforce Pennsylvania's Clean Streams Law. ¶ 38. A knowing violation of this law constitutes a felony. ¶¶ 34-37.

### II.     CABOT MISREPRESENTED ITS SUBSTANTIAL COMPLIANCE WITH LAW AND EFFORTS TO PROTECT THE ENVIRONMENT

During the Class Period, Defendants repeatedly asserted Cabot's compliance with governing laws and regulations and efforts toward environmental stewardship. *See infra*

3

Argument II.A-B.  Defendants' statements omitted material facts, thereby misleading investors.
*See id.*

For example, unknown to investors, Defendants committed and were notified about numerous violations in Cabot's Susquehanna County operations before and during the Class Period—at least seven major violations as of June 11, 2018, and another after.  Some were outstanding, unresolved violations originally identified in the December 2010 Consent Order signed by Cabot CEO Defendant Dinges; others were new.  ¶¶ 65-66, 90-97.

Specifically, as seen below, Pennsylvania privately issued Cabot at least three pre-Class Period NOVs regarding multiple wells—on October 20, 2011 ("October 2011 Violation"), June 16, 2014 ("June 2014 Violation"), and December 19, 2014 ("December 2014 Violation")—which continued, unresolved, until at least June 11, 2018. ¶¶ 90, 93-94.  During the Class Period, it privately issued at least five more, concerning several additional wells: on March 16, 2017 ("March 2017 Violation"), June 20, 2017 ("June 2017 Violation"), November 16, 2017 ("November 2017 Violation"), March 21, 2018 ("March 2018 Violation"), and October 18, 2019 ("October 2019 Violation").  ¶¶ 94-96, 98.

| | Cabot's Undisclosed Violations Related to 25+ Pennsylvania Wells | | | | |
|---|---|---|---|---|---|
| | Cabot Gas Well Name (# of defective wells) | PaDEP Privately Issued Violations | Violation of December 2010 Consent Order | Cabot Disclosed on 7/26/2019 | Disclosed Through Criminal Charges on 6/15/2020 |
| 1 | G Shields (4) | October 2011 Violation | X | | X |
| 2 | Costello/ Gesford (4) | June 2014 Violation | X | | X |
| 3 | Ratzel (3) | December 2014 Violation | X | | X |
| 4 | Howell (4) | March 2017 Violation | | | X |
| 5 | Howell (4) | June 2017 Violation | | X | |
| 6 | Jeffers Farm (7) | November 2017 Violation | | X | |
| 7 | Ely (2) | March 2018 Violation | X | | X |
| 8 | POWERS M (1) | October 2019 Violation | | | X |

4

These undisclosed violations (several personally noticed to Stalnaker, the head of Cabot's Pennsylvania operations) detail a pattern of consistent failures: (1) gas and/or fluids migration into fresh groundwater sources (October 2011, June & December 2014, March & June 2017, March 2018, October 2019 Violations); (2) faulty well construction and operation issues (October 2011, December 2014, June & November 2017, March 2018, October 2019 Violations); (3) inadequate cement issues (December 2014, June & November 2017 Violations); and (4) unpermitted discharge of polluting substances (October 2011, June & December 2014, June & November 2017, March 2018, October 2019 Violations).  ¶¶ 79-87, 95-96, 100-07.

Meanwhile, the PaDEP privately sent Stalnaker the June 2018 Letter, which denied Cabot's request to renew drilling in the area due to Cabot's failure to remediate outstanding violations in breach of its obligations under the December 2010 Consent Order.  ¶¶ 90, 101-06.  Defendants' violations remained largely unresolved as of January 2020.  ¶ 92.

### III.     THE TRUTH EMERGES

The truth about Cabot's substantial **non**compliance incrementally emerged on July 26, 2019, when Cabot reported that it had received proposed consent orders from Pennsylvania arising from the June 2017 and November 2017 Violations. ¶ 137.  Both were similar to violations in the December 2010 Consent Order, but previously unknown to investors.  Omitting mention of Cabot's numerous other continuing violations, Defendants stated that the June 2017 Violation had "***been resolved***" and Cabot was working to resolve the November 2017 Violation.  ¶ 139.  As a result of this partial disclosure, the price of Cabot stock declined significantly.  ¶ 174.

The full extent of Cabot's noncompliance, however, would remain concealed until Pennsylvania criminally charged Cabot on June 15, 2020, based on its longstanding violations. ¶¶ 90-94, 98.  Pennsylvania charged Cabot with fifteen criminal counts, including nine felonies for knowing violations of the Clean Streams Law's prohibition against discharging industrial waste

5

in connection with the ongoing October 2011, June 2014, December 2014, and March 2018 Violations, and for failing to resolve the March 2017, June 2017, November 2017, and October 2019 Violations.  ¶¶ 90-91, 96-98.  It further charged that through January 9, 2020, Cabot did "knowingly fail to comply with orders of the [PaDEP], including . . . [the December 2010 Consent Order] . . . when it failed to remediate its . . . wells to eliminate the discharge of natural gas, which allowed contamination to continue unabated."  ¶ 92.  Underlying the charges, the Grand Jury had found that contamination from Cabot's operations had continued after the December 2010 Consent Order, but Cabot had only partially started remediating wells subject thereto by approximately August *2018*—after the Grand Jury's investigation began.  ¶¶ 57-59, 85-87.  In February 2020, noting Cabot's failure to correct its polluting conduct over "many years," and "***Cabot's long-term indifference to the damage it caused to the environment and citizens*** of Susquehanna County," the Grand Jury determined "criminal charges are appropriate."  ¶ 88.

Pennsylvania's charges disclosed material facts previously unknown to investors, including that, throughout the Class Period, Cabot did "***knowingly*** discharge, permit to flow or continue to discharge or permit to flow, methane into groundwater" from numerous gas wells.  ¶¶ 89-92, 107.  Following the disclosure, the price of Cabot stock declined significantly.  ¶ 177.

## LEGAL STANDARD

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor" and "rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009).  To withstand one, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint must adequately allege each element of any Section 10(b) and Rule 10b-5 claims: (1) a false statement or omission of material fact in connection with the sale or purchase of a security; (2) made with scienter; (3) upon which the plaintiff relied; (4) that caused plaintiff's losses. *Matrixx Initiatives, Inc. v.*

6

*Siracusano*, 563 U.S. 27, 37-38 (2011). To satisfy the PSLRA, plaintiffs must plead each misrepresentation with "particularity" and allege facts giving rise to "a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). And to satisfy Rule 9(b), plaintiffs must allege "the who, what, when, where, and how" of the fraud. *Kohut v. KBR, Inc.*, 2015 WL 11995250, at *9 (S.D. Tex. Sept. 3, 2015) (Rosenthal, J.).

In assessing a Rule 12(b)(6) motion, the Court does not resolve disputed fact issues. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). The "complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *2 (S.D. Tex. Jan. 19, 2016).

## ARGUMENT

## I.   DEFENDANTS HARDLY CONTEST SCHEME LIABILITY

Defendants' course of conduct operated as a fraud on investors, *i.e.*, a "scheme." ¶¶ 27 ("Each Defendant is liable as a participant in a fraudulent scheme . . . ."), 192 (alleging scheme liability claims under Rule 10b-5). The Complaint explicitly alleges a "straightforward fraudulent scheme" whereby Defendants, unbeknownst to investors, "cut corners and knowingly violated the very environmental laws [they] publicly claimed to uphold . . . ." ¶ 1.

Defendants contend Plaintiffs' scheme liability claims fail because they have "not pled facts showing a scheme to defraud other than . . . deficient allegations of misrepresentations and omissions . . . ." MTD 22. Their unsupported single-sentence "argument" is incorrect. *See, e.g., In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021) (*Lorenzo* "foreclosed" "argument that Rule 10b-5(a) and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims" as "'considerable overlap' exists among the [10b-5] subsections") (*citing Lorenzo v. SEC*, 139 S. Ct. 1094, 1101-02 (2019)); *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *11 (S.D.N.Y. Mar. 30, 2021) ("[S]cheme liability" can be established "by pointing to alleged misrepresentations or

7

omissions."); *SEC v. Farmer*, 2015 WL 5838867, at *14 (S.D. Tex. Oct. 7, 2015) ("scheme" liability shown where "the defendant . . . engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme") (alteration in original). Accordingly, scheme liability claims against all Defendants remain.

## II.   PLAINTIFFS ADEQUATELY PLEAD MATERIAL MISREPRESENTATIONS

The Complaint adequately alleges that Defendants violated Rule 10b-5(b), which makes it unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).

A material fact is one a reasonable investor would likely consider significant when deciding to invest and that alters the "total mix" of information available about the investment.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988).  Materiality is a mixed question of law and fact ordinarily left for the trier of fact, and can be decided on a motion to dismiss only if the misstated or omitted fact was "so obviously [un]important to an investor that reasonable minds cannot differ on the question."  *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).

To plead a misrepresentation, a plaintiff must:

(1) specify each statement alleged to have been misleading; (2) identify the speaker; (3) state when and where the statement was made; (4) plead with particularity the contents of the false representation; (5) plead with particularity what the person making the misrepresentation obtained thereby; and (6) explain the reason or reasons why the statement is misleading.

*Kohut*, 2015 WL 11995250, at *10.  "[T]he disclosure required by the securities laws is measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead prospective buyers."  *Lormand*, 565 F.3d at 248-49.  A defendant bears a duty to disclose facts "necessary in order to make the statements made . . . not misleading."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 318 (2007) (alteration in original).  Whether there has been

8

adequate disclosure "is a mixed question of fact and law and, therefore, is a question for a jury." *Isquith v. Middle S. Utils., Inc*., 847 F.2d 186, 208 (5th Cir. 1988).[3]

The Complaint amply pleads that Defendants made misrepresentations that "would lead a reasonable investor to form an impression [regarding Cabot's legal compliance and polluting activities] . . . in contradiction to the reality"; as such, "those statements can be considered false under the PSLRA's heightened pleading standard." *In re OCA, Inc. Sec. & Derivative Litig*., 2006 WL 3747560, at *16 (E.D. La. Dec. 14, 2006).

### A. Defendants' Misrepresentations About The Lawfulness Of Cabot's Operations

Throughout the Class Period, Defendants represented that Cabot's operations substantially complied with applicable law, *e.g.*: (1) Cabot's Forms 10-K (signed and certified by Dinges and CFO Schroeder on behalf of Cabot, asserting that Defendants "believe" they "substantially comply with the Clean Water Act and related federal and state regulations") (¶ 122); (2) Cabot's 2016 Annual Report (issued under the names of Dinges, Schroeder, and Stalnaker, asserting Cabot's "unwavering commitment to comply with or exceed all regulations") (¶ 125); (3) Cabot's Proxy Statements (representing that all "employees, officers and directors are *required* to comply with" a "Code of Business Conduct" "requiring *strict adherence to all laws and regulations applicable to the Company's business*") (¶¶ 132-33); and (4) Cabot's Code of Business Conduct, describing

---

[3] Defendants incorrectly suggest Rule 10b-5 prohibits only "blatantly misleading" statements. MTD 13 n.28. Their duty is greater: "Once the defendants engaged in public discussions concerning the [issue], they had a duty to disclose a mix of information that is not misleading." *Lormand*, 565 F.3d at 248-49; *see also Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994) ("[A] duty to speak the full truth arises when a defendant undertakes . . . to say anything.").

Cabot's "***policy to comply fully with the letter and the spirit of all applicable federal, state, and local environmental protection laws and regulations***") (¶ 135).[4]

In reality, Cabot continuously violated the laws of Pennsylvania—where it conducted nearly 100% of its operations—at all relevant times. It accumulated statutory violations for serially polluting groundwater and failing to remediate outstanding violations for years. ¶¶ 90-92, 94-97, 100, 106-08. Defendants "knowingly" violated both state statutes (¶¶ 89, 95-99, 107), and the December 2010 Consent Order (¶¶ 6-7, 64-66, 84-88, 90-94, 100, 104-06).

Underscoring their severity, the regulatory violations—nearly all of which were unknown to the public—constituted felony crimes under Pennsylvania law. ¶¶ 88-92, 98-99; *see also* ¶¶ 57-58 (Grand Jury noting Cabot's "long-term indifference" to environment). And they directly impacted Cabot's business, causing Pennsylvania to deny Cabot's requests for approval to drill new wells in 2018. ¶¶ 101-05.

This rampant undisclosed misconduct rendered Defendants' statements materially false and misleading. Indeed, the extent and severity of Defendants' alleged knowing violations are irreconcilable with their statements. *See Hall v. Rent-A-Ctr., Inc.*, 2017 WL 6398742, at *21 (E.D. Tex. Oct. 19, 2017), R. & R. adopted, 2017 WL 6379334 (E.D. Tex. Dec. 14, 2017) (Mazzant, J.) (misleading statements created "impression of a state of affairs that differ[ed] in a material way from [the] one that actually existed") (alterations in original). Thus, "plaintiffs have plausibly alleged, with particularity, that the statements . . . materially misled investors to believe" that Cabot conducted its operations substantially in accordance with the law, "when it [did] not." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 472 (S.D. Tex. 2016) (Rosenthal, J.).

---

[4] Dinges and Schroeder signed each Class Period Form 10-Q and 10-K and certified that they did not "omit to state a material fact necessary to make the statements made . . . not misleading." ¶ 121.

### B.      Defendants' Misrepresentations About Their Groundwater Pollution

Defendants repeatedly represented that Cabot operated with the "least possible impact to the environment" (¶ 127 (2019 Annual Report signed by Defendants, stating: "We make every effort to reduce and limit our impact on water")); with an "unwavering commitment" toward environmental regulations (¶ 125 (March 2017 statement in Annual Report)); and drilled its wells by "environmentally friendly" means (¶ 126 (August 2018 Schroeder statement), ¶ 56 (collecting statements)).  These statements were materially misleading because they omitted mention, ***first***, of Cabot's chronic pollution of Pennsylvania's groundwater, *see*, e.g., ¶¶ 94-97, and ***second***, that Cabot had breached its obligations under the December 2010 Consent Order.  ¶¶ 90-93, 100, 103-07.

Particularized allegations show that, before and during the Class Period, Cabot's Pennsylvania operations consistently caused pollution and contamination of groundwater.  Upon investigation, PaDEP repeatedly found that Cabot violated required well cementing and casing standards, and polluted as a result.  ¶¶ 79, 83, 85, 93, 96, 106-07.  A Geologist confirmed that cement defects and issues allowing leaks predominated at Cabot's Pennsylvania wells.  ¶¶ 109, 111-12.  In addition, Cabot knowingly failed to remediate previously-identified violations that caused groundwater pollution, allowing such contamination to continue, in breach of the December 2010 Consent Order.  ¶¶ 85-88, 90, 92-93, 100-06.

These facts cannot be squared with Defendants' representations of environmental commitment, rendering them materially misleading.  *See Ga. Firefighters' Pension Fund v. Anadarko Petroleum*, 2021 WL 182316, at *9-10 (S.D. Tex. Jan. 19, 2021) (defendant who speaks publicly "must disclose material, adverse facts that affect the validity" of public statements); *In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 80 (S.D.N.Y. 2017) (claims of safety commitment actionable due to undisclosed safety problems).

11

### C.      Defendants' Challenge To Cabot's Legal Compliance Statements Fail

Defendants declare their alleged "compliance" misstatements "are indistinguishable" from "disclosures rejected as insufficient to support a securities fraud claim" in other cases.  MTD 19.  But their suggestion that claims of falsity "premised on alleged regulatory violations or criminal charges" cannot be actionable is incorrect.  *Id*. 14.  Indisputably, a defendant's noncompliance with law can support a securities fraud claim premised on statements of substantial compliance, like those here.  *See, e.g., Meyer v. Jinkosolar Holdings Co., Ltd*., 761 F.3d 245, 251 (2d Cir. 2014) (compliance statements omitting material noncompliance at principal company facility actionable as they "gave comfort to investors that reasonably effective steps were being taken to comply" with applicable laws).[5]    Falsity hinges on context—and particularly, the extent of the noncompliance allegedly belying a defendant's representations of legal compliance.

### 1.      This Court's *Plains* Decision Exemplifies The Requisite Context-Based Falsity Analysis

This Court's decision in *In re Plains All American Pipeline, L.P. Securities Litigation*, 307 F. Supp. 3d 583 (S.D. Tex. 2018), aff'd on other grounds sub nom. *Police and Fire Retirement System of the City of Detroit v. Plains All American Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019) ("*Plains*"), reflects the fact-specific analysis courts employ when evaluating whether statements of legal compliance are actionably misleading.[6]  The Court's analysis of the facts found wanting in *Plains* shows the adequacy of the allegations here.

---

[5] *See also, e.g., Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 981 (8th Cir. 2012) (receipt of FDA violation notices relevant to falsity of statements of material regulatory compliance); *In re Tyco Int'l, Ltd.*, 2004 WL 2348315, at *10 (D.N.H. Oct. 14, 2004) (allegations related to ongoing criminal case supported claim that assertions that accounting was in compliance with applicable standards were false).

[6] The Court raised whether and how the allegations in this case differ from those in *Plains* during a July 22, 2021 conference.  *See* ECF No. 88.

In *Plains*, after an oil spill involving two small lines (Lines 901 and 903) within Plains's "huge pipeline network," plaintiffs alleged the defendants made material misstatements asserting their belief that Plains's pipelines were maintained in "substantial compliance" with applicable laws. *See Plains* at 632-33. The Court ruled the statements were not rendered misleading by allegations that regulators "had sent informal communications and had issued two infraction notices about recordkeeping practices on a different and small part of the company's large-scale pipeline network and operation." *Id.* at 633 (citing prior op. at 59).

After the Court permitted an amendment, the plaintiffs attempted to plead facts supporting both material falsity and an inference under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund,* 575 U.S. 175, 195-96 (2015), "that the defendants knew of facts conflicting with" their "compliance" statements. *Plains* at 634. They alleged that: (1) albeit small, Lines 901 and 903 were in "high-consequence areas"; (2) Plains failed to conduct preventative evaluations and maintain records for Line 901; (3) Plains failed to meet safety and integrity management regulations regarding other pipelines; and (4) certain defendants received regulatory letters noting violations regarding other pipelines. *Id*.

The Court found falsity still was not pled because the alleged misstatements "applied to all of Plains's pipeline operations, ***of which Lines 901 and 903 were a small part***." *Id.*; *see also In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 899 (S.D. Tex. 2017) (Lines 901 and 903 comprise "***eight one-thousandths of one percent*** of Plains's pipeline network"). It also observed that: (1) most of the notices concerned violations on ***other*** pipelines that issued either pre- or post-class period or resulted in no further action; (2) "Plains learned about many" of these "***after*** the statements were made"; and (3) "many" of the Line 901 and 903 violations occurred after the spill. *Plains* at 634-35. The plaintiffs had also insufficiently pleaded that "the defendants

13

*knew* that Plains was in violation when the statements were made." *Id.* at 635 (emphasis in original).    Specifically, claims that the executive-officer defendants had received regulatory communications were "***based only on those defendants' positions at Plains***," not allegations (like here) that notices were provided to the defendants. *Id.*

"Evaluated in context," the Court found the alleged misstatements had not "implicitly" assured perfect compliance, and the few violations at issue—scattered around Plains's sprawling pipeline network over many years—were "common" and not more significant than what investors would expect.   *Id.* ("[R]easonable investors would understand that, for a very large pipeline company, with a huge network of pipelines . . . notices of regulatory violations are common.").

### 2.    The Fact-Bound *Plains* Analysis Supports A Finding Of Falsity Here

Although the cases involve similar statements, Plaintiffs' allegations concerning: (1) the extent of Cabot's undisclosed violations of law; (2) their importance to Cabot; and (3) Defendants' knowledge far outstrip those in *Plains*.

*First*, the violations alleged here concerned Cabot operations concentrated in **one** Pennsylvania county that provided virtually **all** of Cabot's Class Period production, revenues, and growth, making regulatory troubles there a major concern.   ¶¶ 3, 15, 28-30, 32, 53.   Cabot's violations are thus more centrally-important to it than Plains's issues, concerning "a small part" of its "huge" pipeline network, were to Plains. *Plains,* at 634-35.

*Second,* the alleged violations here are more severe than those in *Plains*.   Cabot's violations were serial, coming, *e.g.*, in 2010, 2011, 2014, 2017, 2018, and 2019 (often more than one per year), all in Cabot's operations-center. *See* ¶¶ 90, 93-94, 106-08.   Cabot chronically failed to remediate violations, even years after notification, and despite worsening noncompliance. *See* ¶¶ 85-87, 90, 93-94, 103-07, 129.   Cabot's Pennsylvania violations supported fifteen criminal charges (nine felonies) against it. ¶ 89.  They involved knowing violations of Pennsylvania statutes

and the terms of a consent order that Dinges executed. *See* ¶¶ 6, 89-93. Moreover, Cabot's violations prevented it from obtaining regulatory approvals for planned expansion. ¶¶ 101-05. The few violations in *Plains* concerning Lines 901 and 903 were not nearly as flagrant, recurring, extensive or impactful. *Plains* at 633-35.

*Third*, while most of the violations in *Plains* led to notices **after** the alleged misstatements or outside the class period (*Plains* at 634-35), the violations here paralleled the misstatements: nearly all issued: (1) within the Class Period (¶¶ 94 (2018), 96 (2017 & 2019), 106(d), 107); or (2) before it, **but then continued unresolved during it** (¶¶ 90 (pre-2015 violations continued until at least June 2018), 92-93 (violations continued until **January 2020**), 106). Thus, when Defendants made their misrepresentations between October 2015 and March 2020 (*see* ¶¶ 119-27, 132-33[7]), multiple violations affecting Cabot's critical Pennsylvania operations were continuing.

*Fourth*, unlike the allegations of knowledge in *Plains* based "only" on defendants' "positions at Plains" (*Plains* at 635), Defendants' knowledge here is well-pleaded. For example, several of the violations that continued un-remediated during the Class Period were personally addressed to Stalnaker. ¶ 106.[8] Others were violations of the consent order Dinges signed and discussed on behalf of Cabot in 2010. ¶¶ 5-6, 65, 100-03. Stalnaker and other members of Cabot's senior management received NOVs from Pennsylvania and reported on the same to Cabot's Board of Directors (Dinges was Board Chairman). ¶¶ 20, 26, 42. Indeed, the S&EA Committee, which met at least twice yearly, was specifically responsible for reviewing with management

---

[7] Cabot's definitive Form DEF 14A Proxy Statements were filed during the Class Period (*see* ¶ 133) on March 22, 2016 (¶ 51), and on March 21, 2017, March 22, 2018, March 19, 2019, and March 17, 2020. *See* exhibits attached to the Declaration of Joe Kendall, filed herewith. The dates of the 2017-2020 filings may be judicially noticed.

[8] Stalnaker also was the addressee on at least one other violation, and signed a related consent order. ¶ 108.

investigations, violations and remediation efforts concerning environmental laws or regulations. ¶¶ 43-44.[9]  Given that Pennsylvania housed Cabot's operations, the inference is strong that Defendants reported on the relevant violations during the Class Period. *See Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (complaint must be construed "in the light most favorable" to plaintiff, "with every doubt resolved on his behalf").  The inference of knowledge is further bolstered by the fact that, after lengthy investigations (¶¶ 57-59), Cabot was charged with nine "knowing[]" felony violations of Pennsylvania law in connection with the prolonged violations (¶¶ 89-92).

Thus, the allegations are like those posited in *Omnicare*, where the hypothetical defendant stated, about legal compliance: "We believe our conduct is lawful." *Omnicare*, 575 U.S. at 188. This statement would be misleading, the Supreme Court noted, if the speaker had knowledge that the government "was taking the opposite view," as investors expect that a stated opinion "fairly aligns with the information in the [speaker]'s possession at the time." *Id.* at 188-89.  Defendants' statements did ***not*** "fairly align" with Cabot's actual knowledge of its legal and regulatory entanglement in Pennsylvania and so, opinion or not, were actionable.  *See Carlton*, 184 F. Supp. 3d at 468 (falsity established where defendants created "impression of a state of affairs" materially different than the "one that actually existed").

### D.   Defendants' Other Falsity Arguments Similarly Fail

*First*, Defendants suggest "alleged regulatory violations or criminal charges. . . . [or] conclusions by government enforcement bodies" somehow cannot support findings of fraudulent misrepresentations at the pleadings stage.  MTD 14-15.  But courts routinely rely on such facts.

---

[9] The Board Audit Committee also was responsible for overseeing Cabot's "compliance . . . with legal and regulatory requirements" and received management reports on regulatory matters. ¶ 46.

16

*See e.g., City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 687-88 (6th Cir. 2005) ("existence of ancillary claims" on similar grounds supports fraud finding); *Roofer's Pension Fund v. Papa*, 2018 WL 3601229, at \*21 (D.N.J. July 27, 2018) ("existence of . . . criminal investigation" supported fraud claim); *Rosky v. Farha*, 2009 WL 3853592, at \*7 (M.D. Fla. Mar. 30, 2009) ("[c]ourts commonly hold that pending government investigations are relevant and provide notice of a possible fraud").[10]

*Second*, Defendants suggest misstatements concerning codes of conduct or company practices are inactionable. MTD 15. But where a defendant's actual conduct materially departs from the asserted code or practice, courts have not hesitated to find plausible allegations of falsity. *See In re Goldman Sachs Grp., Inc. Sec. Litig.*, 2014 WL 2815571, at \*5 (S.D.N.Y. June 23, 2014) (representations about company's controls and integrity held actionable because "directly at odds with its alleged conduct"); *In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d 712, 758–59 (S.D. Tex. 2012) (assertions of compliance with key safety plan held false because conflicted with alleged facts).[11]

---

[10] Defendants' suggestion that they had no duty to "confess alleged noncompliance" (MTD 15) is misguided; corporate actors must disclose uncharged noncompliance or potential criminal conduct when failure to disclose "would make other statements materially misleading." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 441 (S.D.N.Y. 2018); *see also In re Virtus Inv. Partners, Inc. Sec. Litig.*, 195 F. Supp. 3d 528, 536 (S.D.N.Y. 2016) ("critical consideration" in determining whether corporation "must disclose mismanagement or uncharged criminal conduct" is whether alleged omissions are "sufficiently connected" to defendants' "***existing disclosures*** to make those public statements misleading"). Having elected to address Cabot's legal compliance, Defendants were duty-bound to speak fully and truthfully.

[11] *See also In re VEON Ltd. Sec. Litig.*, 2017 WL 4162342, at \*8 (S.D.N.Y. Sept. 19, 2017) (statements about allegedly ineffective internal controls deemed actionable); *In re Petrobras Sec. Litig.*, 116 F. Supp. 3d 368, 381 (S.D.N.Y. 2015) (statements of legal compliance and corporate integrity could mislead investors "as reflective of the true state of affairs at the Company"); *Lapin v. Goldman Sachs Grp. Inc.,* 506 F. Supp. 2d 221, 240 (S.D.N.Y. 2006) (statements in company's "business principles" actionable).

*Third*, Defendants wrongly claim their compliance statements were "inactionable generalized statements of aspiration or opinion." MTD 18. "[A]spiration" is inapt: compliance with the laws of Pennsylvania—where Cabot's operations occurred and all of its reserves were located—was vital for business; not some hopeful goal. ¶¶ 31-32, 53. Indeed, it affected Cabot's relationship with PaDEP and its ability to drill new wells. ¶¶ 101-05. It speaks volumes that Defendants assured regulatory compliance repeatedly in Cabot's most important public filings. ¶¶ 48-52, 119-25, 130, 132. Insofar as Defendants suggest their misrepresentations were immaterial, they are wrong. *See In re El Paso Elec. Co. Sec. Litig.*, 2004 WL 377555, at *6 (W.D. Tex. Feb. 23, 2004) ("a reasonably prudent investor might refrain from investing their money in a company that is involved in . . . potentially illegal" conduct).

*Fourth*, Defendants argue their misrepresentations could not be misleading in light of their disclosures of risks and certain previous violations. MTD 19-20. These boilerplate warnings (MTD 6) did not authorize Defendants to omit reference to actual material events affecting Cabot's operations. *See, e.g.*, *Lormand,* 565 F.3d at 246-48 ("these warnings, while somewhat specific, do not provide sufficiently meaningful caution about clearly present danger that was materializing"); *Jinkosolar*, 761 F.3d at 251 (finding compliance statements actionable because "[a] generic warning of a risk will not suffice when undisclosed facts on the ground would substantially affect a reasonable investor's calculations of probability"). Moreover, because Defendants omitted that potential warned-of risks had actually materialized, these "disclosures" were themselves misleading. ¶¶ 119, 130-31. Defendants were not free "to notify investors that Cabot's

18

remediation efforts ***could be found inadequate***" (MTD 20) when Pennsylvania had already deemed them so.  ¶¶ 90-94, 102-07; *see also* ¶¶ 84-88.[12]

Similarly, Defendants' selective representations that Cabot received notices "from time to time" (and disclosure of "the February 2016 notice") and "could experience cement failures" (MTD 20-21) bolstered the ***mis***impression that when Cabot received violations, it disclosed them. These incomplete, actionable disclosures—the tip of the iceberg—only reinforced the falsity of Defendants' misrepresentations.  ¶¶ 119-20, 123-24; *see Carlton*, 184 F. Supp. 3d at 468, 472 (misrepresentation actionable despite partial disclosure); *KB Partners I, L.P. v. Pain Therapeutics, Inc.*, 2015 WL 7760201, at *8 (W.D. Tex. Dec. 1, 2015) (where "[d]efendants chose to tell the market" about material topic they acquire duty "to 'speak the full truth' regarding" it).

*Fifth*, Defendants present certain extrinsic civil proceedings and offer a counter-narrative to argue their statements were not misleading.  MTD 20-21.  But Defendants are not permitted to urge different facts at this stage.  Plaintiffs' allegations must be construed liberally and taken as true. *Cobalt*, 2016 WL 215476, at *2.  Defendants' potential liability in the lawsuit they reference (in which a jury found them liable) is irrelevant to whether Defendants misled investors by failing to disclose ongoing, extensive violations of Pennsylvania laws when claiming substantial compliance with them.[13]

---

[12] The significance of the undisclosed regulatory violations that contradicted Defendants' public statements distinguish this case from those Defendants cite in note 41.  *Ieradi v. Mylan Lab'ys, Inc.*, involved information that was so specialized, reasonable investors could not have understood its implications, unlike the easily-grasped violations here.  230 F.3d 594, 600 (3d Cir. 2000). Meanwhile, *Owens v. Jastrow* involved undisclosed "red flags" that defendants learned ***after*** making the alleged misrepresentations—unlike Defendants' misrepresentations here, that issued concurrently with myriad violations.  789 F.3d 529, 540 (5th Cir. 2015).

[13] Defendants' bald assertion that some of their "compliance" statements were non-misleading opinions fails (MTD 22).  Even if opinions, those statements are actionable given the material, contrary facts they omitted.  *See supra* Argument II.C; *Ramirez v. Exxon Mobil Corp.*, 334 F.

Defendants' threadbare invocation of the PSLRA safe harbor is equally weak.  MTD 21-22.  Defendants do not identify which statements they claim fall within the safe harbor, or why, nor do they specify which purportedly meaningful cautions apply to which statements.  The cautionary statements Defendants *appear* to have in mind (MTD 6-7), repeated "only with slight variations" and "used in conjunction with ***each*** alleged misrepresentation," are "generic and formulaic," not meaningful.  *See Lormand*, 565 F.3d at 245 (emphasis in original).  Moreover, where, as here, cautionary language treats "as a future risk" "certain dangers that had already begun to materialize then the warnings are no longer meaningful."  *Cobalt*, 2016 WL 215476, at \*6.

### E.      Stalnaker Made Misstatements

Defendants argue that Plaintiffs allege no misrepresentations by Stalnaker (MTD 22-23), ignoring the claimed misrepresentations in Annual Reports "prepared and distributed by and under the names of" all Defendants, including Stalnaker.  ¶¶ 22, 26, 125, 127-29.  Stalnaker is liable as a "maker" of the statements in documents distributed under his name, which he helped prepare, and which concerned operations he oversaw.  *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *Lorenzo*, 139 S. Ct. at 1098 ("*maker* of a statement" has "ultimate authority over the statement, including its content and whether and how to communicate it") (emphasis in original); *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, 510 F. Supp. 3d 583, 596 (M.D. Tenn. 2020) (finding executive "made" alleged misstatements in corporate annual reports prepared and issued under his name).[14]

---

Supp. 3d 832, 847-48 (N.D. Tex. 2018) (opinion statements actionable where contradictory "underlying facts [were] not provided").

[14]   Regardless, Stalnaker remains liable for his integral participation in the alleged fraudulent scheme.  *See supra* Argument I.  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005)*,* cited by Defendants, is inapplicable because Stalnaker made statements, and regardless, pre-dates

20

## III.    PLAINTIFFS ADEQUATELY ALLEGE SCIENTER

Scienter entails "an intent to deceive, manipulate or defraud or . . . severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Kohut* 2015 WL 11995250, at *10. "Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve" not just negligence, "but an extreme departure from the standards of ordinary care." *Id*.

Courts must consider all scienter allegations "holistically" and may not "scrutinize" each "in isolation." *Tellabs*, 551 U.S. at 326.  Allegations suffice if a "reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324.  The inference "need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences." *Id*.  A "tie favors the plaintiff." *Cobalt*, 2016 WL 215476, at *3.  And, "[d]ue to the fact that there will rarely be direct evidence of intent to defraud, allegations of circumstantial evidence of conscious misbehavior or recklessness justifying a strong inference of scienter will suffice." *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL 5278716, at *11 (E.D. Tex. June 16, 2004).

### A.    Defendants' Involvement In The Underlying Misconduct Supports Scienter

As alleged, Defendants knew of the numerous violations and polluting activities that rendered their statements misleading.  *See* ¶¶ 24, 26, 42.  Stalnaker and Dinges were Cabot's point-persons with Pennsylvania, signing consent orders with the PaDEP prior to and during the Class

---

and conflicts with *Lorenzo*. *See Alstom* at 475 (suggesting, pre-*Lorenzo*, that misconduct distinct from misstatements necessary for scheme liability).

21

Period regarding multiple violations that required remediation. ¶¶ 4-6, 65, 108, 153-58.[15] Stalnaker was also the addressee and recipient of: (1) the June 2018 Letter from Pennsylvania denying Cabot's request to open new wells due to ongoing violations of the December 2010 Consent Order (signed by Dinges) (¶¶ 90, 101-05); and (2) multiple NOVs. ¶¶ 106-08. Cabot's violation of the December 2010 Consent Order (¶¶ 90, 92-93, 105-06) *itself* supports an inference of scienter. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 674-75, 706 (S.D. Tex. 2002) (firm's violation of SEC consent decree considered in scienter finding). Further, the fact that Pennsylvania denied Cabot's request to expand its operations due to continuing violations corroborates that Defendants, Cabot's leaders, knew of the undisclosed misconduct. Plaintiffs adequately plead scienter because Defendants knew of undisclosed material facts that rendered their public statements misleading. *See Borneo Energy Sendirian Berhad v. Sustainable Power Corp.,* 646 F. Supp. 2d 860, 869 (S.D. Tex. 2009) (Rosenthal, J.) (scienter found where defendants omitted facts that materially undermined alleged misstatements); *Trendsetter Inv'rs, LLC v. Hyperdynamics Corp.,* 2007 WL 172627, at *20-23 (S.D. Tex. Jan. 18, 2007) (Rosenthal, J.) (same).

Further, virtually all of Cabot's operations were in Pennsylvania (¶¶ 28-30), making regulatory and legal compliance there mission-critical (¶ 53)—and Defendants' knowledge of the extensive continuing violations issued by this key regulator is entirely plausible. ¶ 150; *see also Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) (fact that misstatements "pertained to [company's] core business" supported scienter); *In re NetSolve, Inc.*

---

[15] Dinges issued a statement and signed a press release regarding the December 2010 Consent Order. ¶ 7. There is no basis for an inference that he was ***un*aware** (contrary to Plaintiffs' allegations) of Cabot's multiple continuing violations of it during the Class Period.

*Sec. Litig.*, 185 F. Supp. 2d 684, 697 (W.D. Tex. 2001) (scienter where misstatements concerned "lifeblood of the company").

An inference of scienter is also supported by the S&EA Committee, which received reports from management (*i.e.*, the Individual Defendants) regarding regulatory violations and remediation. ¶¶ 43-45. Pennsylvania's leading regulatory role supports the inference that management and the S&EA Committee discussed Cabot's serial, ongoing Pennsylvania violations. ¶¶ 43-45, 151-52. *See Lormand*, 565 F.3d at 232 ("[C]ourts must . . . draw all reasonable inferences in the plaintiff's favor."). Any *failure* to discuss the violations and Cabot's lax remediation efforts would establish Defendants' recklessness, given their promise to address those problems in the December 2010 Consent Order, signed by Dinges.

### B.    Cabot's Repeat Offenses Support Scienter

Furthermore, after the Grand Jury investigation, Pennsylvania charged Cabot with multiple "***knowing[]***" criminal violations based on the rampant Class Period misconduct. *See* ¶¶ 57-59, 89-92, 147-48. *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *30-31 (D.N.J. June 5, 2020) (criminal indictment bolstered inference of scienter); *Masterson v. Commonwealth Bankshares, Inc.,* 2013 WL 6917423, at *10 (E.D. Va. Dec. 27, 2013), R. & R. adopted, 2 F. Supp. 3d 824 (E.D. Va. 2014) (criminal indictments supported finding of defendants' scienter); *In re Gentiva Sec. Litig.,* 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (courts consider "a governmental investigation as one piece of the puzzle when" evaluating scienter). The duration, severity, and magnitude of the undisclosed misconduct further indicate scienter. ¶¶ 149, 166; *see also In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 721-22 (W.D. Tex. 2010) ("magnitude" and duration of alleged violation supported scienter finding).

23

### C.       Dinges's Stock Sales

Dinges's insider stock sales, suspicious as to timing and scope, also support a finding of scienter.  *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 553 (5th Cir. 2007).  After not trading Cabot stock for five years, on November 2, 2017, Dinges sold 66,610 shares—his lone Class Period sale—while Cabot's stock price was near its Class Period high. ¶¶ 167-68; *see also Cent. Laborers,'* 497 F.3d at 553 ("Suspicious" generally means "sales are out of line with prior trading practices or at times calculated to maximize personal profit."). Thus, Dinges garnered over *$1.8 million* in proceeds and sold while Cabot was committing undisclosed environmental violations.  *See* ¶¶ 105-06; *see also City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*, 2013 WL 1100819, at *5 (W.D. La. Mar. 15, 2013) (stock sale at inflated price by executive indicated scienter).

### D.       Defendants' Scienter Arguments Fail

*First*, Defendants' suggestion that alleged "regulatory violations" or criminal investigations and charges cannot support an inference of scienter (MTD 14, 23) is incorrect. *See e.g. Frank v. Dana Corp.*, 646 F.3d 954, 961-62 (6th Cir. 2011) (investigation by SEC bolstered inference of scienter); *In re Akorn, Inc. Sec. Litig.*, 240 F. Supp. 3d 802, 820 (N.D. Ill. 2017) ("That the SEC and DOJ initiated investigations provides additional support for finding that scienter has been adequately pleaded."); *Eastwood Enters., LLC v. Farha*, 2009 WL 3157668, at *4 (M.D. Fla. Sept. 28, 2009) ("investigations into [company] by various government agencies only serve to bolster the inference of scienter at this stage"); *Washtenaw Cnty. Emps. Ret. Sys. v. Avid Tech., Inc.*, 28 F. Supp. 3d 93, 115 (D. Mass. 2014) (government investigation "one more piece of the puzzle . . . that add up to a strong inference of scienter."); *Enron,* 235 F. Supp. 2d at 688 (including facts "unearthed in current investigations by the SEC" in scienter analysis).

24

*Second*, contrary to Defendants' claim, Plaintiffs do allege facts showing Defendants' awareness "of facts contradicting their disclosures." MTD 23. The "circumstantial evidence" detailed above collectively does so. *See Ramirez*, 334 F. Supp. 3d at 845. Defendants' insistence on "smoking-gun" evidence (MTD 24) demands more than the Supreme Court requires. *See Tellabs*, 551 U.S. at 324. Pleading scienter does not "require the pleading of facts which, because of the lack of discovery, are in defendants' exclusive possession." *Fleming*, 2004 WL 5278716, at *6.

Defendants side-step most of Plaintiffs' scienter allegations, and attack ancillary allegations concerning the Geologist. MTD 24-25. However, those allegations corroborate the other allegations of rampant well issues that led to pollution and continuing Class Period violations. *Compare* ¶¶ 111-13 *with* ¶¶ 104-07.

*Third*, Defendants' unsubstantiated claim that Pennsylvania has "not sought to shut down or further restrict Cabot's . . . operations" is misplaced. MTD 25-26. Plaintiffs allege something different—that Cabot's violations **did** cause Pennsylvania in June 2018 to reject Cabot's application to expand drilling. ¶ 105. Defendants' alternative facts cannot be considered. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) ("unless the district court converts" it "into a motion for summary judgment," defendants may not assert "new version of the facts" on Rule 12(b)(6) motion).

*Fourth*, Defendants attempt to create the impression that all the alleged violations were publicly known during the Class Period, citing a one-page screenshot created by counsel in 2021. MTD 26 n.53. Tellingly, they stop short of affirmatively **asserting** this to the Court, leaving it at insinuation. This disingenuous argument ignores Plaintiffs' explicit allegations that, with few (misleading) exceptions, those violations and communications were non-public until June 2020.

25

*See* ¶¶ 24, 57, 90, 93, 94, 96-97, 100, 103, 106-07, 129.  Plaintiffs' allegations must be credited—

not Defendants' contradictory "facts."  *See Holzwasser*, 2006 WL 897746, at *4 ("the strong-

inference pleading standard does not license the Court to resolve disputed facts at this stage").

Regardless, Defendants' screenshot gathered after the Class Period—even if considered (it should

not be)—is unavailing, as it does not show all relevant alleged violations and communications to

Cabot nor, critically, when any of the information shown was first publicly disclosed.[16]

## IV.   PLAINTIFFS ADEQUATELY ALLEGE LOSS CAUSATION

To plead loss causation, Plaintiffs must allege only "a facially 'plausible' causal

relationship between the fraudulent statements or omissions and plaintiff's economic loss," *i.e.*, "a

material misrepresentation or omission, followed by the leaking out of relevant or related truth

about the fraud that caused a significant part of the depreciation of the stock and plaintiff's

economic loss."  *Lormand*, 565 F.3d at 258.  Such a "corrective disclosure" can occur "through a

series of partial disclosures."  *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 957 (S.D. Tex.

2016) (Rosenthal, J.).  Loss causation allegations are subject to Rule 8(a)'s notice pleading

standard, which "is not a . . . difficult one to satisfy."  *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys,*

*Inc.*, 769 F.3d 313, 321 (5th Cir. 2014).

Plaintiffs have adequately pled loss causation by giving Defendants "some indication of

the loss and the causal connection" they have "in mind."  *Id.*  Plaintiffs allege Defendants'

---

[16]   To the extent Defendants suggest their misrepresentations were not material because the truth
was on the market about Cabot's endemic issues with Pennsylvania, this "intensely fact-specific"
affirmative defense "is not appropriately disposed of on a motion to dismiss."  *See Wieland v.*
*Stone Energy Corp.*, 2007 WL 2903178, at *11 (W.D. La. Aug. 17, 2007), R. & R. adopted, 2007
WL 4403548 (W.D. La. Oct. 1, 2007).  It is established only if Defendants "show that the material
negative information that [they] did not disclose was transmitted to the public with a degree of
intensity and credibility sufficient to effectively counterbalance any misleading impression created
by the [alleged misstatement]," something Defendants utterly fail to do.  *In re Sec. Litig. BMC*
*Software, Inc.*, 183 F. Supp. 2d 860, 906 (S.D. Tex. 2001).

misrepresentations were corrected through partial disclosures of previously-undisclosed regulatory violations and environmental issues on July 26, 2019 (¶¶ 137-39, 169-75, 178) and June 15, 2020 (¶¶ 140, 176-78).   Plaintiffs allege these Company-specific disclosures were followed by significant Cabot stock price declines that greatly exceeded any decline in Cabot's peer company index.   ¶¶ 172, 174, 174 n.4, 177.   This adequately pleads loss causation.   *See Parmelee v. Santander Consumer USA Holdings, Inc.,* 2018 WL 276338, at *6 (N.D. Tex. Jan. 3, 2018) (allegations that "company's stock price dropped" and then "dropped again" in response to the release of negative information about the company sufficient); *Fleming,* 2004 WL 5278716, at *42 (allegations that stock price dropped "in the days after the truth was revealed" sufficient).

Defendants do not dispute that the alleged corrective disclosures relate to the alleged fraud, but raise factual challenges and alternative theories about what caused the subsequent price declines.   *See, e.g.,* MTD 28-29 (positing Cabot stock fell because "[n]atural gas prices were declining").   Their substitute causation facts must be disregarded.   *See Amedisys*, 769 F.3d at 320 (court must "accept[] all well-pleaded facts as true").   Given the expert-intensive causation analysis (*see* ¶ 172), courts recognize that questions of the validity of claimed corrective disclosures "is a highly fact intensive inquiry that need not be reached at this point." *Schott*, 211 F. Supp. 3d at *959-60; *see also Ramirez*, 334 F. Supp. 3d at 858 ("it is often inappropriate to . . . resolve disputes over loss causation" at the Rule 12(b)(6) stage).

Should the Court resolve them now without the benefit of fact or expert discovery, Defendants' fact-intensive arguments (MTD 28-29) fall flat.   It is entirely plausible that a substantial cause of the July 26, 2019 price decline was the negative regulatory news from Pennsylvania—the locus of all of Cabot's operations.   Contrary to Defendants' argument, the existence of the 2016 violations would tend to make the 2019 disclosure of ***further*** violations

27

troubling for investors concerned with whether Cabot was crosswise with a key regulator. Defendants' earnings-related argument presupposes that Cabot's results were entirely unrelated to the underlying violations, which defies reason given that Pennsylvania had previously impeded Cabot from expanding production due to continuing violations. ¶ 105. And Defendants' arguments about how best to measure Cabot's relative price decline on July 26, 2019, ignores that Plaintiffs employ the benchmark index Cabot regularly referenced in public disclosures. ¶ 174 n.4. Defendants' extrinsic evidence is for another day.

## V.    THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS

Defendants' boilerplate "control person" arguments (MTD 30) fail to dispute Plaintiffs' allegations of their control. *See* ¶¶ 15, 20-27, 42, 144. Because Plaintiffs' primary claim under Rule 10b-5 is adequately alleged, their Section 20(a) claim should be sustained as well.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion should be denied.

Dated: August 10, 2021                          Respectfully submitted,

                                                **KENDALL LAW GROUP, PLLC**

                                                *s/ Joe Kendall*
                                                Joe Kendall, Attorney-in-Charge
                                                Texas Bar No. 11260700
                                                Southern District Bar No. 30973
                                                3811 Turtle Creek Blvd., Suite 1450
                                                Dallas, TX 75219
                                                Telephone: 214-744-3000
                                                Facsimile: 214-744-3015
                                                jkendall@kendalllawgroup.com

                                                *Local Counsel for Plaintiffs*

28

**ROBBINS GELLER RUDMAN
& DOWD LLP**
Darryl J. Alvarado
Kevin A. Lavelle
Francisco J. Mejia
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
klavelle@rgrdlaw.com
fmejia@rgrdlaw.com

*Lead Counsel for Lead Plaintiff and the
Class*

**KESSLER TOPAZ
MELTZER & CHECK, LLP**
Andrew L. Zivitz
Joshua E. D'Ancona
Henry W. Longley
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610-667-7706
Facsimile: 610-667-7056
azivitz@ktmc.com
jdancona@ktmc.com
hlongley@ktmc.com

*Additional Counsel for the Class and
Counsel for Additional Plaintiff Iron
Workers District Council (Philadelphia
and Vicinity) Retirement and Pension Plan*

29

**CERTIFICATE OF SERVICE
AND STATEMENT REGARDING LENGTH**

I certify that on August 10, 2021, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system.  Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

In addition, in accordance with the Order of May 29, 2021, this memorandum of law does not exceed 8,500 words in length (counting all brief text, headings, and footnotes), but contains 8,413 words.  ECF No. 62.

DATED: August 10, 2021                    *s/ Joe Kendall*
                                          Joe Kendall