**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> CABOT OIL & GAS CORPORATION, *et al.*, <br><br> Defendants. | Case No: 4:21-CV-02045 |

**<u>DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I     THERE ARE NO ACTIONABLY MISLEADING STATEMENTS .................... 1

    II.    STALNAKER DID NOT "MAKE" ANY ALLEGED
         MISSTATEMENTS AND IS NOT LIABLE AS A CONTROL PERSON .......... 5

    III.   THE OPPOSITION CONFIRMS THAT SCIENTER HAS NOT BEEN
         PLED .................................................................................................................. 6

    IV.   PLAINTIFFS' CASES ARE DISTINGUISHABLE ............................................. 7

    V.    PLAINTIFFS HAVE NOT PLED LOSS CAUSATION ..................................... 7

CONCLUSION ...................................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
    292 F.3d 424 (5th Cir. 2002) ...............................................................................................6

*Alaska Elec. Pens. Fnd. v. Flotek Indus., Inc.*,
    915 F.3d 975 (5th Cir. 2019) ...............................................................................................1

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................................8

*Borneo Energy Senirian Berhad v. Sustainable Power Corporation*,
    646 F. Supp. 2d 860 (S.D. Tex. 2009) .................................................................................7

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016) .................................................................................7

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
    388 F. Supp. 2d 932 (S.D. Ind. 2005) .................................................................................4

*Crutchfield v. Match Group, Inc.*,
    -- F. Supp. 3d --, 2021 WL 1167578 (N.D. Tex. Mar. 26, 2021) .............................................3

*Edgar v. Anadarko Petroleum Corp.*,
    2018 WL 3032573 (S.D. Tex. June 19, 2018)......................................................................2

*Edgar v. Anadarko Petroleum Corp.*,
    2019 WL 1167786 (S.D. Tex. Mar. 13, 2019), *aff'd*, *Iron Workers Benefit &
    Pension Fund – Iron Workers Dist. Council Philadelphia & Vicinity v.
    Anadarko Petroleum Corp.*, 788 F. App'x 268 (5th Cir. 2019)..................................................5

*Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*,
    565 F.3d 200 (5th Cir. 2009) ...............................................................................................4

*Heinze v. Tesco Corp.*,
    971 F.3d 475 (5th Cir. 2020) ...............................................................................................1

*In re BP p.l.c. Secs. Litig.*,
    922 F. Supp. 2d 600 (S.D. Tex. 2013) .................................................................................5

*In re Edward D. Jones & Co., L.P. Secs. Litig.*,
    2019 WL 5887209 (E.D. Cal. Nov. 12, 2019)......................................................................5

*In re Metawave Comms. Corp. Secs. Litig.*,
    298 F. Supp. 2d 1056 (W.D. Wash. 2003)...........................................................................5

*In re Plains All American Pipeline, L.P. Secs. Litig.*,
    307 F. Supp. 3d 583 (S.D. Tex. 2018), *aff'd, Police and Fire Ret. Sys. of
    City of Detroit v. Plains All American Pipeline, L.P.*,
    777 F. App'x 726 (5th Cir. 2019) ..............................................................................1, 2

*In re Tyco International, Ltd. MDL*,
    2004 WL 2348315 (D.N.H. Oct. 14, 2004) ....................................................................7

*Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*,
    537 F.3d 527 (5th Cir. 2008) ........................................................................................4

*Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council Philadelphia
    & Vicinity v. Anadarko Petroleum Corp.*,
    788 F. App'x 268 (5th Cir. 2019) ..................................................................................3

*Kakkar v. Bellicum Pharms., Inc.*,
    2020 WL 2845279 (S.D. Tex. May 29, 2020) ...........................................................1, 6

*Local 731 I.B. v. Diodes, Inc.*,
    810 F.3d 951 (5th Cir. 2016) ........................................................................................6

*Meyer v. Jinkosolar Holdings Co.*,
    761 F.3d 245 (2d Cir. 2014).........................................................................................7

*Owens v. Jastrow*,
    789 F.3d 529 (5th Cir. 2015) ........................................................................................2

*Public Pension Fund Group v. KV Pharmaceutical Co.*,
    679 F.3d 972 (8th Cir. 2012) ........................................................................................7

*Shen v. Exela Technologies Inc.*,
    2021 WL 2489584 (N.D. Tex. June 24, 2021) ...............................................................3

*Singh v. Cigna Corp*,
    918 F.3d 57 (2d Cir. 2019).............................................................................................7

*Societe Generale Secs. Servs., GbmH v. Caterpillar, Inc.*,
    2018 WL 4616356 (N.D. Ill. Sept. 26, 2018) ................................................................4

*Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*,
    365 F.3d 353 (5th Cir. 2004) ........................................................................................5

*Stephens v. Uranium Energy Corp.*,
    2016 WL 3855860 (S.D. Tex. July 15, 2016)............................................................1, 6

*Trendsetter Investors, LLC v. Hyperdynamics Corporation*,
    2007 WL 172627 (S.D. Tex. Jan. 18, 2007)...................................................................7

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp. 2d 744 (S.D.N.Y. 2011)............................................................................8

## INTRODUCTION[1]

Plaintiffs identify no fraudulent statements.  The charges in the Grand Jury Presentment involve fewer than 5% of Cabot's wells and fail to show Cabot was not in "substantial compliance" across its footprint.  Cabot warned it received notices of violation and did not definitively assure compliance.  The Court should also deny Plaintiffs' conclusory request to amend.[2]

## ARGUMENT

### I.    THERE ARE NO ACTIONABLY MISLEADING STATEMENTS

The Opposition focuses on Cabot's disclosure that "we believe that we substantially comply with the Clean Water Act and related federal and state regulations" (Opp. at 3-5, 12-13, 19), but fails to explain how this statement differs from similar "substantial compliance" disclosures rejected as inactionable.[3]  "A reasonable investor would not understand" Cabot's "high-level, general statements" that it believed "it was operating in substantial compliance with regulatory requirements, as implicitly assuring absolute compliance. . . . "  *See In re Plains All American Pipeline, L.P. Secs. Litig.*, 307 F. Supp. 3d 583, 635 (S.D. Tex. 2018) (Rosenthal, J.), *aff'd, Police and Fire Ret. Sys. v. Plains All American Pipeline, L.P.*, 777 F. App'x 726 (5th Cir. 2019).  Likewise, "[a] reasonable investor would understand the use of 'hedges and disclaimers,' such as the phrase '*substantial* compliance,' and would not reasonably infer" that Cabot "had fully

---

[1] This reply is limited to 2,500 words.  (ECF #62.)

[2] *See Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at *24 (S.D. Tex. July 15, 2016) (Rosenthal, J.) (denying leave to amend initial amended complaint after selection of lead plaintiffs); *Kakkar v. Bellicum Pharms., Inc.*, 2020 WL 2845279, at *5 (S.D. Tex. May 29, 2020) (denying "nested" request to amend initial post-appointment complaint); *Heinze v. Tesco Corp.*, 971 F.3d 475, 485 (5th Cir. 2020) (affirming denial of leave to amend *first* amended complaint); *Alaska Elec. Pens. Fnd. v. Flotek Indus., Inc.*, 915 F.3d 975, 979 (5th Cir. 2019) (initial post-appointment complaint dismissed).

[3] *See* ECF #64 ("Mem.") at footnote 35.

1

complied with every regulation or requirement." *See* 307 F. Supp. 3d at 635. "Nor would a reasonable investor infer" that Pennsylvania authorities "had or would have no objections" to Cabot's compliance efforts, as "reasonable investors would understand" that "notices of regulatory violations are common" for companies in Cabot's industry. *See id.*; *see also* Mem. footnote 43 (citing cases with similar "time to time" disclosures as Cabot's). The Court also contrasted Plains' opinion that it "*believed* it was in *substantial* compliance with applicable regulations" – which resembles Cabot's statements – with Plains' definitive statement that "there *were* no regulatory violations that could cause a material adverse effect." *See* 307 F. Supp. 3d at 635 (emphasis in original); *see also Edgar v. Anadarko Petroleum Corp.*, 2018 WL 3032573, at *15 (S.D. Tex. June 19, 2018) (Rosenthal, J.) (definitive statement that Anadarko "operates its global onshore and offshore operations in compliance").

Plaintiffs do not cite ***any*** definitive public assurances by Cabot that it was in full compliance or that Pennsylvania authorities agreed Cabot was compliant. Instead, Cabot cautioned it faced risks and received notices of violation. (*See* Mem. at 6-7.) Cabot also disclosed that "remediation" efforts included "the provision of alternative sources of drinking water,"[4] which conveyed PaDEP's view that Cabot's wells may have impacted water quality, as well as the concept that "remediation" and "compliance" are not simple binary determinations about whether a well is leaking methane or whether cementing is adequate, but involve lengthy and uncertain negotiations with PaDEP over multiple potential remedial options, as well as subjective regulatory determinations about whether an alleged violation is "remediated" to PaDEP's satisfaction.[5]

---

[4] *See, e.g.,* Ex. 7 at 33. All exhibit citations are to ECF #65.

[5] *See Owens v. Jastrow*, 789 F.3d 529, 538, 543 (5th Cir. 2015) (rejecting claim over issues requiring "subjective determinations").

Additionally, while Cabot's express disclosures about PaDEP notices and cementing risks warrant dismissal, the public availability of the notices on PaDEP's database further supports dismissal.   (*See* Mem. at 26 (public disclosure undercuts scienter); *Gregory v. ProNAI Therapeutics Inc.*, 297 F. Supp. 3d 372, 411 (S.D.N.Y. 2018) (considering disclosures on government website).)   Plaintiffs' conclusory assertion the notices are "private" contradicts Pennsylvania law regarding public availability of environmental records.  *See* 35 P.S. § 691.607; 25 Summ. Pa. Jur. 2d Environmental Law § 9:327 (2d ed.) (PaJur Environ § 9:327).

Further, whether Cabot's wells actually caused elevated groundwater methane levels was hotly contested.  (*See* Mem. at 5 (citing *Ely* court decision); Compl. ¶¶ 67-70, 90 (reciting Ely allegations).  Plaintiffs offer no particularized facts showing that Defendants definitively knew any well was actually leaking methane or had a deficient cement job, or even showing the specific content of the notices of violation.  The mere fact PaDEP made allegations does not show that Cabot executives "were aware that [Cabot] was, as a matter of law, in violation" of regulations or that specific wells were actually cemented improperly.[6]  And again, Cabot disclosed it received notices of violation.

Plaintiffs' arguments regarding the "June 2018 Letter" that "denied Cabot's request to renew drilling" in the Dimock Box (*see* Opp. at 5, 22; *see also* Compl. ¶¶ 65, 105) also fail.  There

---

[6] *See* Mem. footnote 33; *Iron Workers Benefit & Pension Fund – Iron Workers Dist. Council Philadelphia & Vicinity v. Anadarko Petroleum Corp.*, 788 F. App'x 268, 270 (5th Cir. 2019) (affirming dismissal despite evidence that "could have led [individual defendants] to conclude that Anadarko's Colorado operations weren't in compliance with Commission rules" but did not show that "Walker and McBride were aware that Anadarko was, as a matter of law, in violation of Commission rules"); *Shen v. Exela Technologies Inc.*, 2021 WL 2489584, at *77 (N.D. Tex. June 24, 2021) (dismissing Rule 10b-5 claim even though company's **own litigation expert** had estimated company would face significant liability; allegations did not show "any defendant agreed that the estimate was accurate"); *Crutchfield v. Match Group, Inc.*, -- F. Supp. 3d --, 2021 WL 1167578, at *15 (N.D. Tex. Mar. 26, 2021) (allegations did not show "Defendants' actual knowledge of the viability of [the FTC's] legal challenges").

3

is no allegation Cabot told investors it had fully satisfied the 2010 Consent Order or anticipated being authorized to operate in the Dimock Box.  The letter does not render any affirmative disclosures misleading, and its contents have not been alleged with particularity.

Further, the charges in the June 2020 Presentment are based on 25 wells.  (*See* Compl. ¶ 90 (listing 13 wells); ¶¶ 95-96 (listing 12 additional wells).)  This represents *fewer than 5%* of Cabot's 788 wells at the end of 2019.[7]  Plaintiffs allege no specific noncompliance regarding the vast majority of Cabot's wells, supporting an inference that Cabot *was* in substantial compliance. Plaintiffs also do not controvert Cabot's statement that "[w]e believe the source of methane has been remediated" as to the August and September 2011 notices.  (*See* Mem. at 7-8.)

Plaintiffs are also wrong that by "elect[ing] to address compliance," Cabot undertook a duty to confess alleged noncompliance.  (*See* Opp. at 17 n. 10.)  A "claim of incomplete disclosure is actionable only if what [Cabot] said is misleading."  *Ind. Elec. Workers' Pension Trust Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541 (5th Cir. 2008).  Cabot tempered its disclosures with cautionary statements, taking an appropriate middle course while negotiating contested issues with PaDEP.  *See* Mem. at 18 n. 37; *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 211 (5th Cir. 2009) (endorsing "middle course" disclosure about future plans).

In sum, *Cabot's own stated belief* that it was in substantial compliance is not rendered fraudulent just because outside parties believed some wells were noncompliant.[8]  The remaining

---

[7] Cabot disclosed on February 22, 2016 that it had "548.1 net wells. . . ." (Ex. 2 at 8.)  Each year thereafter, Cabot disclosed that it had drilled additional wells, which increased Cabot's net well count to 553.0 by the end of 2016; 609.3 by the end of 2017; 695.5 by the end of 2018, and 788.0 by the end of 2019.  *See* Ex. 7 at 8; Ex. 11 at 7; Ex. 15 at 7; Ex. 20 at 8.  The term "net wells" reflects Cabot's ownership interest based on the working interest.  *See* Ex. 20 at 4.

[8] *See City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 946 (S.D. Ind. 2005) (company can still "believe in" its compliance even when it is the "object of a state investigation"); *Societe Generale Secs. Servs., GbmH v. Caterpillar, Inc.*, 2018 WL 4616356, at *6 (N.D. Ill. Sept. 26, 2018) (same).

alleged misstatements are indistinguishable from those routinely held inactionable.[9]   Further, insufficient misrepresentation claims cannot be repackaged as scheme claims, and no particularized facts are pled to support a scheme claim.[10]

## II.   STALNAKER DID NOT "MAKE" ANY ALLEGED MISSTATEMENTS AND IS NOT LIABLE AS A CONTROL PERSON

Contrary to the Opposition (p. 20), Plaintiffs' conclusory allegation that the Form 10-Ks "were 'prepared and distributed by and under the names of' all Defendants" is insufficient to plead that Stalnaker – who is not alleged to have signed Cabot's SEC filings – "made" those statements.[11] The claims against Stalnaker fail, and the allegations that Stalnaker knew of the alleged violations cannot establish Cabot's scienter.  *See Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, at *18 (S.D. Tex. Mar. 13, 2019) (allegations that "accuse nonspeakers" of knowledge do not show scienter), *aff'd*, 788 F. App'x 268 (5th Cir. 2019).  Plaintiffs also do not rebut Stalnaker's Section 20 argument about lack of control.[12]

---

[9] *See* Mem. at 18-21; *id.* at 14-15 and footnote 34; *Plains All Am.*, 777 F. App'x at 728-31 (rejecting claims over "aspirational statements").

[10] *See* Mem. at 22 & n. 47; *In re Edward D. Jones & Co., L.P. Secs. Litig.*, 2019 WL 5887209, at *7-8 (E.D. Cal. Nov. 12, 2019) (dismissing scheme claim that was "nothing more than a repackaging of" deficiently pled omissions claims).

[11] *See Edgar*, 2019 WL 1167786, at *9 (rejecting similar conclusory allegation that officer was "maker" of statement based on his title); *Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (requiring "specific facts" such as a "signature on the document").

[12] *See* Mem. at 30 and n. 68; *see also In re Metawave Comms. Corp. Secs. Litig.*, 298 F. Supp. 2d 1056, 1091 (W.D. Wash. 2003) (dismissing control person claim against "subordinate" executive outranked by officer defendants); *In re BP p.l.c. Secs. Litig.*, 922 F. Supp. 2d 600, 640 (S.D. Tex. 2013) (rejecting control person allegation).

## III.    THE OPPOSITION CONFIRMS THAT SCIENTER HAS NOT BEEN PLED

The allegation that fewer than 5% of Cabot's wells were named in the Grand Jury Presentment does not render any of Cabot's disclosures misleading, let alone so blatantly deficient as to be fraudulent.[13]  Cabot's cautionary statements weigh heavily against any such inference.[14]

Further, Plaintiffs have not established the individual Defendants' personal scienter with particularity.  (*See* Mem. at 23-25.)  Courts have rejected "central operations" arguments involving far smaller companies.[15]  Cabot had hundreds of employees and annual revenues exceeding $1.1 billion.[16]  Generalized alleged knowledge of the 2010 Consent Order or subsequent notices of violation does not substitute for particularized allegations that Defendants knew specific statements were false,[17] or that any wells were actually deficient "as a matter of law."[18]  The single stock sale by one Defendant 20 months before the first alleged stock drop, without alleging how many shares he retained or that he timed the sale to maximize profit, does not show scienter.[19]

---

[13] *See* Mem. at 13 n. 28 (collecting cases rejecting claims where sufficiency of disclosures is "debatable").

[14] *See* Mem. at 20 n. 41 (collecting cases).

[15] *See* Opp. at 14; *Kakkar*, 2020 WL 2845279, at *4 (rejecting argument where company had more than 100 employees); *Stephens*, 2016 WL 3855860, at *15 (Rosenthal, J.) (addressing company with "61 employees") (citing *Local 731 I.B. v. Diodes, Inc.*, 810 F.3d 951, 959 (5th Cir. 2016)).

[16] *See* Ex. 20 at 36 (annual revenues); *id.* at 19 (showing 274 Cabot upstream employees at end of 2019); Ex. 2 at 21 (459 at end of 2015); Ex. 7 at 21 (421 at end of 2016 ); Ex. 11 at 20 (308 at end of 2017); Ex. 15 at 20 (303 at end of 2018).

[17] *See Kakkar*, 2020 WL 2845279, at *4 ("Plaintiff erroneously conflates 'knowledge' with 'an intent to deceive'").

[18] *See supra* footnote 6.  No individual Defendants were charged, further distinguishing Plaintiffs' cases.  (*Compare* Opp. at 23 *with* Mem. footnote 33.)

[19] *See* Mem. at 27 n. 56; *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 435 (5th Cir. 2002) (considering lack of sales by other defendants).

## IV.   PLAINTIFFS' CASES ARE DISTINGUISHABLE

Plaintiffs' authorities are distinguishable.   In *Public Pension Fund Group v. KV Pharmaceutical Co.*, the court noted that "KV not only represented its *belief* that it was in material compliance . . . but affirmatively stated '[w]e are currently in material compliance. . . .'"  679 F.3d 972, 980 n. 6 (8th Cir. 2012).  *In re Tyco International, Ltd. MDL* involved the inapposite Dennis Kozlowski scandal.  2004 WL 2348315, at *4 (D.N.H. Oct. 14, 2004).  In *Borneo Energy Senirian Berhad v. Sustainable Power Corporation*, the defendant was separately sued for running a pump-and-dump.  646 F. Supp. 2d 860, 862-63 (S.D. Tex. 2009) (Rosenthal, J.).  In *Trendsetter Investors, LLC v. Hyperdynamics Corporation*, the executives made numerous concrete statements about well production that were contradicted by specific information.  2007 WL 172627, at *18-20 (S.D. Tex. Jan. 18, 2007) (Rosenthal, J.).  In *Carlton v. Cannon*, the defendants allegedly knew that actual yields were lower than reported.  184 F. Supp. 3d 428, 483 (S.D. Tex. 2016) (Rosenthal, J.).  The Second Circuit moreover distinguished *Meyer v. Jinkosolar*, which did not address scienter and involved more specific affirmative disclosures.  *See Singh v. Cigna Corp*, 918 F.3d 57, 64 (2d Cir. 2019) (distinguishing *Meyer v. Jinkosolar Holdings Co.*, 761 F.3d 245, 251 (2d Cir. 2014)).[20]

## V.   PLAINTIFFS HAVE NOT PLED LOSS CAUSATION

Plaintiffs' reliance on "partial disclosure" and pre-*Twombly* loss causation cases is unavailing.  *See* Opp. at 27 (citing cases).  Mere allegations of correlation do not "show" causation.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007) (allegations of parallel conduct insufficient to plead conspiracy).  Given Plaintiffs' concession that the first stock drop followed a "disappointing" earnings release, and given the Opposition's failure to rebut Defendants' "trading

---

[20] Plaintiffs' citations to pre-*Singh* Second Circuit district court cases are similarly unavailing. *See* ECF #90 at 17 n. 11.  Further, unlike in those cases, Cabot did not tell "half truths," but disclosed it received notices of violation.

7

range" argument as to the second, the allegations do not cross the line from possible to plausible.

*See* Mem. at 28-29, footnotes 58 & 60; *see also Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 757 (S.D.N.Y. 2011) (rejecting "no need to disaggregate" argument as incompatible with *Iqbal/Twombly*).  The small size of the stock drops also weighs against scienter, as it shows no meaningful disparity between Cabot's sober disclosures and its actual risk profile. (Mem. at 29.)

## CONCLUSION

The Court should dismiss with prejudice.[21]

Dated:  September 6, 2021

Respectfully submitted,

/s/ Peter A. Stokes
Gerard G. Pecht
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
gerard.pecht@nortonrosefulbright.com

Peter A. Stokes
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598
peter.stokes@nortonrosefulbright.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that I filed this document on September 6, 2021 through the Court's ECF system, which automatically transmits the filing to all counsel of record for all parties in this litigation.

/s/ Peter A. Stokes

---

[21] *See supra* footnote 2.

8