**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CABOT OIL & GAS CORPORATION, *et al.*,<br><br>Defendants. | Case No: 4:21-CV-02045 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL RELIEF FROM PSLRA STAY**

Plaintiffs' motion to lift the stay is contrary to the weight of authority (including well-reasoned decisions by Judge Godbey and Judge Fitzwater in the Northern District and the Fifth Circuit's own interpretation of Congress's intent) and asks the Court to set a destabilizing precedent effectively allowing any Rule 10b-5 plaintiff to obtain Section 220 documents in every case before satisfying the federal pleading requirements when a parallel Section 220 books and records production is also made. Securities class actions are commonly followed by Section 220 demands (and derivative claims) by other plaintiffs.[1] If the company refuses to produce documents

---

[1] *See, e.g.*, Choi, S., Erickson, J., and Pritchard, A.C., "Piling On? An Empirical Study of Parallel Derivative Suits," 14 J. Empirical Legal Stud. 653 (2017) (discussing common phenomenon of follow-on derivative suits after a Rule 10b-5 class action is filed) (available at https://repository.law.umich.edu/cgi/viewcontent.cgi?article=2890&context=articles); "A Small Step Toward Curbing the Follow-On Derivative Suit Curse," *The D&O Diary* (noting "the rise in the filing of follow-on derivative lawsuits in the wake of securities class action lawsuit filings") (available at https://www.dandodiary.com/2012/01/articles/shareholders-derivative-litigation/a-small-step-toward-curbing-the-follow-on-derivative-suit-curse/). As reflected in the cases cited

- 1 -

in response to a Section 220 demand, the shareholder who made the demand can file an action in the Delaware Court of Chancery to compel production.[2]   Section 220 actions are subject to significantly lower pleading standards than what apply in a Rule 10b-5 case or a shareholder derivative suit.[3]   Accordingly, the effect of allowing Rule 10b-5 plaintiffs to access Section 220 productions before a Rule 12 decision is, quite plainly, to circumvent the Private Securities Litigation Reform Act ("PSLRA") pleading standards.

### *Courts Have Repeatedly Refused To Allow Access to Section 220 Records*

For good reason then, courts have repeatedly rejected efforts by securities plaintiffs to obtain Section 220 documents while a motion to dismiss is pending.  *See In re Pattern Energy Grp. Inc. Secs. Litig.*, 2021 WL 312752, at *2 (D. Del. Jan. 28, 2021) ("By choosing [to file a securities class action before making a Section 220 books and records demand], [Plaintiffs] subjected themselves to the PSLRA discovery stay, as well as the Delaware Chancery Court's rule that plaintiffs in federal securities actions are generally barred from making books and records requests under 8 Del. C. § 220") (citing *Beiser v. PMC-Sierra, Inc.*, 2009 WL 483321, at *3 (Del. Ch. Feb. 26, 2009) (listing safeguards required for Section 220 productions, including that the requesting party is "not currently involved in the federal [securities] action"); *In re Facebook, Inc. S'holder Deriv. Privacy Litig.*, 411 F. Supp. 3d 649, 655 (N.D. Cal. 2019) (rejecting attempt by federal securities plaintiffs to lift PSLRA stay to obtain documents produced in response to books

---

on pages 2-3 below, courts have addressed the intersection of Section 220 demands and federal securities class actions on multiple instances.

[2] *See* 8 Del. C. §220(c).

[3] *See, e.g., In re Facebook, Inc. Section 220 Litig.*, 2019 WL 2320842, at *2 (Del. Ch. May 30, 2019) (observing that "the 'credible basis' standard applicable in this Section 220 action imposes the lowest burden of proof known in our law. . . .");  *Sutherland v. Dardanelle Timber Co.*, 2006 WL 1451531, at *8 (Del. Ch. May 16, 2006) (explaining that "credible basis" standard for Section 220 actions "should not be understood by litigants to require a showing akin to that required to withstand a motion to dismiss under Court of Chancery Rule 12(b)(6)").

and records demands; because none of the *Beiser* safeguards are present, "Plaintiffs fail to persuade the Court that any request for a books and records inspection under Delaware law would not be simply an effort to bypass the PSLRA discovery stay"); *Klein v. Ellison*, 2021 WL 5104384, at *2 (N.D. Cal. June 25, 2021) (holding that plaintiffs who have already filed a federal securities action lack a proper purpose for making a books and records demand).

The Court should thus deny Plaintiffs' motion. In its prior November 26, 2021 Order, the Court correctly observed that "Plaintiffs who forego their right to make a books and records request, as permitted under Delaware law, 8 Del. Ch. 220, are generally not permitted to make those requests after filing a federal securities lawsuit," and that "[a]llowing the putative class plaintiffs to hear the arguments on Cabot[4] documents effectively circumvents the requirement for making a books and records request before they filed this federal litigation." *See* ECF #102, Nov. 26, 2021 Order at 2-3. Allowing Plaintiffs access to the Section 220 documents themselves would be an even greater circumvention of this requirement and should be denied. The Fifth Circuit has likewise characterized "the use of discovery in state court suits to avoid the discovery stay imposed in federal securities class actions" – which is effectively what granting Plaintiffs' motion would allow – as an "abuse" that the PSLRA was intended to prevent.[5]

### Courts Have Routinely Rejected Requests to Lift PSLRA Stay in Other Contexts

Courts have denied motions to lift the PSLRA stay in numerous other contexts, including where the documents at issue were allegedly produced in other investigations or proceedings, and

---

[4] For sake of simplicity, Defendants will continue using the pre-merger corporate name (Cabot) rather than the name of the post-merger company (Coterra).

[5] *See Newby v. Enron Corp.*, 338 F.3d 467, 472 (5th Cir. 2003) ("One of those abuses was the use of discovery in state court suits to avoid the discovery stay imposed in federal securities class actions").

have made clear that simply being denied access to documents purportedly central to, or necessary to prove, a plaintiff's claims (or documents produced to a regulator) is not undue prejudice.  *See, e.g., In re Odyssey Healthcare, Inc.*, 2005 WL 1539229, at *1 (N.D. Tex. June 10, 2005) (Godbey, J.) (denying motion to lift stay to obtain documents produced in government investigations and concluding that recognizing an exception for such documents "cannot prevail" in light of the PSLRA's text) (citing *Baldridge, et al. v. Sidhu, et al.*, No. 3:04-CV-0319-D (N.D. Tex. Feb. 17, 2005) (Fitzwater, J.) (attached as Ex. 1 hereto)); *In re Petrobras Secs. Litig.*, 2015 WL 13653969, at *1-2 (S.D.N.Y. Apr. 13, 2015) (denying motion to lift stay to obtain production of documents produced to government investigators, and observing that "the existence of parallel government enforcement proceedings is commonplace in actions subject to the PSLRA.  Finding 'undue prejudice' on that ground 'would create an exception that would swallow the PSLRA's automatic discovery stay'") (quoting *NECA-IBEW Pension Trust Fund v. Bank of Am. Corp.*, 2011 WL 6844456, at *3 (S.D.N.Y. Dec. 29, 2011)); *Mangrove Partners Master Fund, LP v. 683 Capital Partners, LP*, 2020 WL 7335313, at *2-3 (S.D.N.Y. Dec. 14, 2020) (denying motion to lift stay to obtain production of plan of conversion and related board minutes; noting that stay cannot be lifted simply because plaintiff wants to discover information purportedly central to their claims); *Crago v. Charles Schwab & Co., Inc.*, 2017 WL 8292442, at *2 (N.D. Cal. July 24, 2017) (denying motion to lift stay to obtain trading data); *Avila v. LifeLock Inc.*, 2016 WL 7799624, at *1-2 (D. Ariz. Apr. 22, 2016) (denying motion to lift stay to obtain documents from related lawsuits); *Lusk v. Life Time Fitness, Inc.*, 2015 WL 2374205, at *2-3 (D. Minn. May 18, 2015) (denying motion to lift stay where fact pattern did not involve "one plaintiff or group of plaintiffs falling behind a bevy of other plaintiffs and interested parties because he alone lacks information or documents"); *Dusek v. JP Morgan Chase & Co.*, 2015 WL 12826483, at *2-3 (M.D. Fla. Jan. 21, 2015) (denying motion

4

to lift stay to depose Bernard Madoff in prison); *Willis v. Big Lots, Inc.*, 2014 WL 12656500, at *1-3 (S.D. Ohio Apr. 16, 2014) (denying motion to lift stay to obtain documents produced to SEC and emphasizing that "exceptional circumstances" are required to lift stay); *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *2 (S.D.N.Y. 2006) ("Undue prejudice does not arise from a delay in the gathering of evidence or the development of settlement or litigation postures. This is because delay is an inherent part of every stay of discovery required by the PSLRA"); *In re Spectranetics Corp. Secs. Litig.*, 2009 WL 3346611, at *1, 10 (D. Colo. Oct. 14, 2009) (denying request to obtain documents provided to FINRA and other regulators; "Plaintiff has failed to show undue prejudice beyond different treatment from Regulators (a result that Congress appeared to contemplate), and it has not shown the level of 'exceptional circumstances' courts require to lift the discovery stay"); *In re Sunrise Senior Living, Inc.*, 584 F. Supp. 2d 14, 15, 18-19 (D.D.C. 2008) (rejecting request to lift stay to obtain documents produced to SEC; observing that "an SEC investigation occurring contemporaneously with private litigation is not at all an uncommon occurrence," and that "it is unlikely that such contemporaneous investigations and their possible impact on parties in private litigation escaped the awareness of Congress" in enacting the stay); *see also Medhekar v. U.S. Dist. Ct. for the N.D. Cal.*, 99 F.3d 325, 328 (9th Cir. 1996) (holding that in enacting PSLRA, "Congress clearly intended that complaints in these securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by defendants after the action has been filed").

### *Plaintiffs' Cases Are Distinguishable*

Plaintiffs' cases, by contrast, are distinguishable.  In *New York State Teachers' Retirement System v. General Motors Co.*, the documents at issue were not Section 220 books and records, but documents that already had to be produced in another federal suit that involved injury and

wrongful death claims, not shareholder claims. *See* 2015 WL 1565462, at *1 (E.D. Mich. Apr. 8, 2015). In *Waldman v. Wachovia Corp.*, the documents at issue were produced to the SEC, and the court found that the "unique procedural posture" of the case counseled in favor of lifting the stay, as the plaintiffs "must determine whether to continue with this case despite the settlement reached between defendants and the SEC, which will afford some compensation to the plaintiff class." 2009 WL 86763, at *2 (S.D.N.Y. Jan. 12, 2009). By contrast, there is nothing "unique" about the posture of this case, which is an ordinary Rule 10b-5 class action against a solvent company that is proceeding through a typical Rule 12 pleading stage challenge, with a parallel derivative suit that is also at the Rule 12 stage on the same timetable. Accepting Plaintiffs' position here would, as Judge Fitzwater observed, "effectively result in a structural, or at least categorical, exception to the discovery stay that is neither apparent nor discernible from § 78u-4(b)(3)(B)." *See Baldridge*, No. 3:04-cv-00319-D, Ex. 1 hereto at 3. The circumstances here simply do not constitute the "extraordinary circumstances" necessary to warrant lifting the stay. *See Dusek*, 2015 WL 12826483, at *2 ("In actions to which the PSLRA applies, the party seeking discovery must show that 'extraordinary circumstances' exist to lift the stay") (quoting 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2046.2 (3d ed.)).

Plaintiffs' remaining cases are likewise distinguishable. In *In re FirstEnergy Corp. Securities Litigation*, the documents at issue were likewise "produced for government investigators and the federal grand jury." 229 F.R.D. 541, 545 (N.D. Ohio 2004). While Plaintiffs state in conclusory fashion that the Pennsylvania Attorney General "almost certainly came to possess many of the same documents" in the Section 220 production, Cabot did not produce its Board or SEA minutes or SEA materials packets (which comprise the documents filed under seal in the derivative action) to the Pennsylvania authorities. There is also no assertion that the Pennsylvania

6

regulators or Attorney General were focused on the alleged knowledge or scienter of the individual defendants in this action, let alone on whether Defendants made misstatements to investors.

Even if one assumed *arguendo* that Section 220 Board-level materials included some underlying documents that were provided to regulators or referenced information or data that was provided to regulators, ordering production of the documents would still go beyond what appears to have been contemplated in *In re FirstEnergy* and in Plaintiffs' other case authorities, which ordered production of documents provided to regulators and ***did not appear to require the company to produce purely internal communications*** where such documents were allegedly shared with or described to directors or others in the company. Plaintiffs' authorities do not support lifting the stay for production of compilations or descriptions of information produced to regulators that are allegedly transmitted to others at the company.[6]

Plaintiffs' other cases likewise involve situations – often with extreme facts or far more "unique" circumstances – where the documents at issue were apparently produced externally. *See In re Enron Corp. Secs., Deriv. & ERISA Litig.*, 2002 WL 31845114, at *1-2 (S.D. Tex. Aug. 16, 2002) (allowing production of documents that bankrupt company had already provided to government investigators); *In re Metropolitan Secs. Litig.*, 2005 WL 940898, at *1-2 (E.D. Wash. Mar. 31, 2005) (involving similar scenario where bankrupt company produced same documents to regulators); *In re Bank of Am. Corp. Secs., Deriv. & ERISA Litig.*, 2009 WL 4796169, at *1-2 (S.D.N.Y. Nov. 16, 2009) (allowing production of documents already produced to government relating to investigation of Bank of America-Merrill Lynch merger following 2008 financial

---

[6] To be sure, Defendants believe the claims fail as a matter of law regardless of whether the Section 220 documents are considered. Defendants, however, also believe that companies should not be effectively forced to waive the PSLRA's protections simply by complying with a Delaware books and records request or by making appropriate use of such records in a parallel derivative suit.

crisis); *In re FirstEnergy Corp. Sec. Litig.*, 2021 WL 2414763, at *4-5 (S.D. Ohio June 14, 2001) (relying on Sixth Circuit precedents involving extreme cases with "billions of dollars" in losses and where documents "had already been produced to federal authorities"). While these cases would not support lifting the stay here even if their reasoning is applicable in this circuit, Judge Fitzwater correctly concluded that adopting an exception for every circumstance where a company produces documents to a regulator or another litigant is inconsistent with the PSLRA's text and intent. *See Baldridge*, Ex. 1 at 3-4 ("The court declines to accept this reasoning. . . . Neither the plain terms of the statute nor the purpose of the discovery stay lends itself to so facile a showing of undue prejudice"). Defendants submit that Judge Fitzwater's approach is the correct one.

### *No "Exceptional Circumstances" Are Present That Would Warrant Lifting the Stay*

In sum, Plaintiffs have failed to show that the mere existence of shareholder derivative proceedings, Section 220 demands, and governmental investigations – circumstances that frequently exist in shareholder class actions – constitute the sort of "exceptional circumstances" that justify lifting the stay. This is not a case where a company facing bankruptcy or a potentially debilitating regulatory fine has already produced the exact same documents to regulators or other parties. Instead, this is an ordinary private Rule 10b-5 class action over modest and temporary stock price declines involving a solvent company, with no particularized assertion that Cabot has faced or will face any debilitating government sanctions for the alleged violations at issue (or that Cabot is about to settle other claims in a manner that would eliminate Plaintiffs' ability to recover if they survive dismissal and prove their claims at trial). The fact that there are parallel derivative proceedings and a Pennsylvania government investigation does not make this case exceptional. *See In re Sunrise Senior Living*, 584 F. Supp. 2d at 18-19 ("[A]n SEC investigation occurring contemporaneously with private litigation is not at all an uncommon occurrence," and "it is

unlikely that such contemporaneous investigations and their possible impact on parties in private litigation escaped the awareness of Congress" in enacting the stay); *In re Spectranetics*, 2009 WL 3346611, at \*10 ("Plaintiff has failed to show undue prejudice beyond different treatment from Regulators (a result that Congress appeared to contemplate)"); *In re Petrobras*, 2015 WL 13653969, at \*1-2 (""[T]he existence of parallel government enforcement proceedings is commonplace in actions subject to the PSLRA. Finding 'undue prejudice' on that ground 'would create an exception that would swallow the PSLRA's automatic discovery stay'"); *Baldridge*, No. 3:04-cv-00319-D, Ex. 1 at 2-3 (denying request for documents produced to SEC and rejecting reasoning in other cases lifting stay based on productions in other proceedings).

Likewise, the mere fact that plaintiffs' counsel in the derivative case made high-level characterizations during oral argument regarding their belief about what the Section 220 documents show (which Defendants dispute[7]) does not constitute an "exceptional" circumstance that has caused any "prejudice" to Plaintiffs other than the Congressionally-approved "prejudice" of not obtaining discovery while a motion to dismiss is pending. *See Baldridge*, No. 3:04-cv-00319-D, Ex. 1 at 4 ("An inordinate focus on the absence of prejudice to the producing party risks substituting an assessment of that party's prejudice *vel non* in producing discovery for a proper analysis of the requesting party's undue prejudice in not obtaining it").

Plaintiffs have thus failed to show undue prejudice or otherwise demonstrate that the stay should be lifted. The fact that Plaintiffs waited until after oral argument on the motion to dismiss

---

[7] These conclusory assertions by counsel in the derivative case would, if treated as pleadings, fall far short of the PSLRA's particularity requirements. Regardless, Plaintiffs have failed to established any undue prejudice on their part, which is the core statutory inquiry in determining whether to lift the stay.

before moving for production of the Delaware records further undercuts any claim of prejudice,[8] while potentially prejudicing Defendants by prolonging the litigation. As Judge Godbey aptly noted, Plaintiffs complain that other parties "will receive certain information before Lead Plaintiffs do, but do not explain how this puts them in a worse situation than would obtain if there were no government investigation and they merely faced the disadvantages inherent in the stay." *In re Odyssey Healthcare*, 2005 WL 1539229, at *2. And, by openly seeking to use the Section 220 state court mechanism as the impetus for their request, Plaintiffs are inviting one of the same "abuses" that the Fifth Circuit cited in *Newby*, which is "the use of discovery in state court suits to avoid the discovery stay imposed in federal securities class actions." *Newby*, 338 F.3d at 472.

### Conclusion

Plaintiffs' motion is contrary to the PSLRA's plain language and would create precisely the sort of "categorical" exception that Judge Fitzwater properly criticized in *Baldridge*. For the reasons set forth herein and in Defendants' prior briefing with respect to Plaintiffs' attendance at oral argument and the sealing of exhibits, the Court should deny Plaintiffs' motion in its entirety. Defendants also pray for all further relief to which Defendants are justly entitled.

---

[8] Cabot disclosed on November 3, 2021, that it made a Section 220 production, and previously disclosed on July 30, 2021 that it was attempting to resolve the pending (and publicly filed) Section 220 action "through an agreed production." *See* July 30, 2021 Form 10-Q at 28 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000858470/000085847021000049/cog-20210630.htm) and Nov. 3, 2021 Form 10-Q at 15 (available at https://www.sec.gov/ix?doc=/Archives/edgar/data/0000858470/000085847021000060/cog-20210930.htm). The Section 220 action was dismissed on September 21, 2021. *See* Ex. 2, Order of Dismissal. Plaintiffs thus knew or should have known that Cabot had made (or was making) a Section 220 production, yet waited until December to file a motion to compel.

Dated: December 28, 2021    Respectfully submitted,

/s/ Peter A. Stokes
Gerard G. Pecht
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
gerard.pecht@nortonrosefulbright.com

Peter A. Stokes
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598
peter.stokes@nortonrosefulbright.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that I filed this document on December 28, 2021 through the Court's ECF system, which automatically transmits the filing to all counsel of record for all parties in this litigation.

/s/ Peter A. Stokes

11