**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action 4:21-cv-02045 |
| | Chief District Judge Lee H. Rosenthal |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. | |
| CABOT OIL & GAS CORPORATION, et al., | |
| Defendants. | |

**PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS' MOTION**
**TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

**PAGE**

NATURE AND STAGE OF THE PROCEEDINGS ........................................................................ 1

SUMMARY OF THE ARGUMENT .............................................................................................. 1

STATEMENT OF FACTS .............................................................................................................. 3

I.     CABOT'S OPERATIONS ..................................................................................................... 3

II.    CABOT MISREPRESENTED ITS COMPLIANCE ........................................................... 4

LEGAL STANDARD ..................................................................................................................... 6

ARGUMENT ................................................................................................................................... 7

I.     PLAINTIFFS ADEQUATELY PLEAD MATERIAL MISREPRESENTATIONS .......... 7

         A.    Defendants' Previously Sustained Misstatements ..................................................... 8

         B.    Defendants' Materially Misleading "Substantial Compliance" Statements .......... 11

         C.    Stalnaker Made Misstatements ............................................................................... 15

         D.    Scheme Liability Is Adequately Pled ..................................................................... 15

II.    PLAINTIFFS ADEQUATELY ALLEGE SCIENTER ..................................................... 16

         A.    The Individual Defendants Were Regularly Informed Of Contrary Facts ............ 17

         B.    Cabot's *Knowing Criminal* Violations And Repeat Offenses Support
             Scienter ................................................................................................................... 21

         C.    A Holistic Analysis Of The Complaint Strongly Supports Scienter ..................... 22

III.   PLAINTIFFS ADEQUATELY ALLEGE LOSS CAUSATION ..................................... 24

IV.   THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS ............................... 25

CONCLUSION .............................................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Sec. Litig.*,
 1 F.4th 687 (9th Cir. 2021) .......................................................................................................16

*In re Alstom SA Sec. Litig.*,
 406 F. Supp. 2d 433 (S.D.N.Y. 2005)........................................................................................15

*In re ArthroCare Corp. Sec. Litig.*,
 726 F. Supp. 2d 696 (W.D. Tex. 2010)......................................................................................21

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009)......................................................................................................................6

*Basic, Inc. v. Levinson*,
 485 U.S. 224 (1988)......................................................................................................................7

*Borneo Energy Sendirian Berhad v. Sustainable Power Corp.*,
 646 F. Supp. 2d 860 (S.D. Tex. 2009) ......................................................................................23

*In re BP P.L.C. Sec. Litig.*,
 843 F. Supp. 2d 712 (S.D. Tex. 2012) ......................................................................................23

*Brody v. Zix Corp.*,
 2006 WL 2739352 (N.D. Tex. Sept. 26, 2006).....................................................................17, 18

*In re Cabot Oil & Gas Corp. Derivative Litig.*,
 2022 WL 991999 (S.D. Tex. Mar. 31, 2022).............................................................................20

*Carlton v. Cannon*,
 184 F. Supp. 3d 428 (S.D. Tex. 2016) ......................................................................................12

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*,
 497 F.3d 546 (5th Cir. 2007) .....................................................................................................23

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*,
 2013 WL 1100819 (W.D. La. Mar. 15, 2013) ...........................................................................23

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
 2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ............................................................................7, 16

*In re Cognizant Tech. Sols. Corp. Sec. Litig.*,
 2020 WL 3026564 (D.N.J. June 5, 2020)..................................................................................21

*Del. Cty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
  2022 WL 112029 (S.D. Tex. Jan. 12, 2022) ................................................................ *passim*

*Edgar v. Anadarko Petroleum Corp.*,
  2018 WL 3032573, (S.D. Tex. June 19, 2018) ........................................................17

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  235 F. Supp. 2d 549 (S.D. Tex. 2002) .....................................................................22

*In re Fleming Cos. Inc. Sec. & Derivative Litig.*,
  2004 WL 5278716 (E.D. Tex. June 16, 2004) .......................................16, 17, 18, 24

*In re Gentiva Sec. Litig.*,
  932 F. Supp. 2d 352 (E.D.N.Y. 2013) .................................................................21, 22

*Gov't of Guam Ret. Fund v. Invacare Corp.*,
  2014 WL 4064256 (N.D. Ohio Aug. 18, 2014) .........................................................19

*Halliburton Energy Servs., Inc. v. NL Indus.*,
  553 F. Supp. 2d 733 (S.D. Tex. 2008) ......................................................................10

*Holzwasser v. Staktek Holdings, Inc.*,
  2006 WL 897746 (W.D. Tex. Mar. 30, 2006) ..........................................................22

*Isquith v. Middle S. Utils., Inc.*,
  847 F.2d 186 (5th Cir. 1988) .....................................................................................8

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) .................................................................................................15

*Kohut v. KBR, Inc.*,
  2015 WL 11995250 (S.D. Tex. Sept. 3, 2015) .........................................................16

*Lee v. Active Power, Inc.*,
  29 F. Supp. 3d 876 (W.D. Tex. July 2, 2014) ......................................................19, 20

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011) ......................................................................................14

*LLS Am., LLC v. Lazy M, LLC*,
  2014 WL 3907832 (E.D. Wash. Aug. 11, 2014) .......................................................13

*Lorenzo v. S.E.C.*,
  139 S. Ct. 1094 (2019) .........................................................................................15, 16

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................ *passim*

iii

*Marcus v. J.C. Penney Co., Inc.*,
 2015 WL 5766870 (E.D. Tex. Sept. 29, 2015) ...................................................................17

*Masterson v. Commonwealth Bankshares, Inc.*,
 2013 WL 6917423 (E.D. Va. Dec. 27, 2013) ....................................................................21

*Matrixx Initiatives, Inc. v. Siracusano*,
 563 U.S. 27 (2011)................................................................................................................7

*MicroCapital Fund LP v. Conn's Inc.*,
 2019 WL 3451153 (S.D. Tex. July 24, 2019)....................................................................19

*Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*,
 523 F.3d 75 (1st Cir. 2008)................................................................................................22

*Moye v. Tr. Lowell T. Cage*,
 2010 WL 3259386 (S.D. Tex. Aug. 17, 2010) ..................................................................10

*In re NetSolve, Inc. Sec. Litig.*,
 185 F. Supp. 2d 684 (W.D. Tex. 2001)..............................................................................22

*In re OCA, Inc. Sec. & Derivative Litig.*,
 2006 WL 3747560 (E.D. La. Dec. 14, 2006)......................................................................8

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
 2018 WL 276338 (N.D. Tex. Jan. 3, 2018) .......................................................................24

*In re Plains All Am. Pipeline, L.P. Sec. Litig.*,
 307 F. Supp. 3d 583 (S.D. Tex. 2018) .........................................................................13, 17

*Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*,
 769 F.3d 313 (5th Cir. 2014) .............................................................................................24

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
 679 F.3d 972 (8th Cir. 2012) .............................................................................................20

*Puddu v. 6D Glob. Techs., Inc.*,
 2021 WL 1198566 (S.D.N.Y. Mar. 30, 2021) ...................................................................16

*Ramirez v. Exxon Mobil Corp.*,
 334 F. Supp. 3d 832 (N.D. Tex. 2018) ..........................................................................17, 25

*Reese v. Malone*,
 747 F.3d 557 (9th Cir. 2014) .............................................................................................23

*Rubinstein v. Collins*,
 20 F.3d 160 (5th Cir. 1994) ...............................................................................................11

iv

*Schott v. Nobilis Health Corp.*,
  211 F. Supp. 3d 936 (S.D. Tex. 2016) ..................................................................24, 25

*Schuh v. HCA Holdings, Inc.*,
  947 F. Supp. 2d 882 (M.D. Tenn. 2013).................................................................13, 14

*Smith v. Reg'l Transit Auth.*,
  756 F.3d 340 (5th Cir. 2014) ....................................................................................7

*In re SolarWinds Corp. Sec. Litig.*,
  2022 WL 958385 (W.D. Tex. Mar. 30, 2022) ......................................................15, 23

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)..............................................................................................7, 8, 16

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)..................................................................................................7

*In re Venator Materials PLC Sec. Litig.*,
  2021 WL 2980581 (S.D. Tex. July 7, 2021)............................................................19

**Statutes**

15 U.S.C. § 78u-4(b)(2) ....................................................................................................7

**Other Authorities**

17 C.F.R. § 240.10b-5(b)..................................................................................................7

**GLOSSARY OF TERMS**[1]

| | |
|---|---|
| "Board" | Cabot's Board of Directors. |
| "Cabot" or the "Company" | Cabot Oil & Gas Corporation. |
| "CEO" | Chief Executive Officer. |
| "CFO" | Chief Financial Officer. |
| "Class Period" | February 22, 2016 to June 12, 2020, inclusive. |
| "Clean Streams Law" | Pennsylvania Clean Streams Law, 35 P.S. §§ 691.1 *et seq.* |
| "Complaint" | First Amended Consolidated Complaint For Violation of The Federal Securities Laws (ECF No. 110). |
| "December 2010 Consent Order" | Global Consent Order and Agreement concerning pollution in Dimock Township, Susquehanna County, Pennsylvania, which Cabot entered into with the Pennsylvania Department on December 15, 2010. |
| "Defendants" | Cabot; its CEO and Chairman, Dan O. Dinges; CFO and Executive Vice President, Scott C. Schroeder; and Vice President and Regional Manager, Phil L. Stalnaker. |
| "Dinges" | Defendant Dan O. Dinges, Cabot CEO and Chairman. |
| "EHS Employees" | A former Environmental Health & Safety Manager for a wholly owned subsidiary of Cabot from 2017 to 2019 and a former Cabot Environmental Health & Safety Specialist from 2011 to 2021. |
| "Exchange Act" | The Securities Exchange Act of 1934, 15 U.S.C. § 78 *et seq.* |
| "FDA" | U.S. Food and Drug Administration. |
| "Geologist" | A former geologist in Cabot's Pittsburgh, PA office from 2011 to 2018. |
| "Grand Jury" | Pennsylvania's Forty-Third Statewide Investigating Grand Jury. |
| "Individual Defendants" | Dinges, Schroeder, and Stalnaker. |
| "June 2018 Letter" | Letter from the Pennsylvania Department addressed to Stalnaker on June 11, 2018, referencing outstanding Pennsylvania Department violations privately issued to Cabot prior to and during the Class Period. |

---

[1] Unless otherwise noted, internal quotation marks and citations are omitted and emphasis is added.

| "Motion to Dismiss," "MTD," or "Motion" | Defendants' Motion to Dismiss Amended Complaint (ECF No. 111). |
|---|---|
| "Notice of Violation" | Notice of Violation issued privately to the Company by the Pennsylvania Department. |
| "Opinion" or "Op." | Memorandum and Opinion (ECF No. 109); *Del. Cty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2022 WL 112029 (S.D. Tex. Jan. 12, 2022) (Rosenthal, J.). |
| "Pennsylvania Department" | Pennsylvania Department of Environmental Protection. |
| "Plaintiffs" | Lead Plaintiff Delaware County Employees Retirement System and additional plaintiff Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan. |
| "PSLRA" | Private Securities Litigation Reform Act of 1995. |
| "Rule" | Federal Rule of Civil Procedure. |
| "Rule 10b-5" or "10b-5" | SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. |
| "S&EA Committee" | Cabot's Safety and Environmental Affairs Committee. |
| "Schroeder" | Defendant Scott C. Schroeder, Cabot CFO and Executive Vice President. |
| "SEC" | U.S. Securities and Exchange Commission. |
| "Stalnaker" | Defendant Phil L. Stalnaker, Cabot Vice President and Regional Manager. |
| "¶ __" | Refers to a paragraph in the Complaint, unless otherwise noted. |

## NATURE AND STAGE OF THE PROCEEDINGS

This securities fraud class action arises under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. On January 12, 2022, in the Opinion, the Court dismissed Plaintiffs' consolidated complaint with leave to amend four categories of misstatements. Plaintiffs filed the amended Complaint on February 11, 2022. Defendants filed the Motion to Dismiss on March 10, 2022. Plaintiffs submit this Memorandum of Law in Opposition to Defendants' Motion.[2]

## SUMMARY OF THE ARGUMENT

This case concerns misrepresentations that Cabot, an oil and gas fracking company, made to the market from 2016-2020 about its regulatory compliance in Pennsylvania—a critical issue to Cabot, since, by 2019, *100% of Cabot's operations, reserves, and revenues* were in that state.

During the Class Period: (1) Cabot allowed groundwater pollution from numerous well sites **and** failed to remediate a host of prior violations cited by state regulators; (2) Cabot knowingly allowed violations to persist, leading regulators to reject Cabot's application to drill more wells; and (3) Cabot's egregious conduct led to multiple felony charges for continuous and "***knowing[]***" violations of Pennsylvania environmental laws from December 15, 2010 through January 9, 2020.

At the same time, Defendants misrepresented that Cabot performed "appropriate" remediation on wells that had polluted fresh groundwater in violation of the applicable law. In the Opinion, the Court ruled that these misrepresentations were actionably misleading under Section 10(b), after considering full briefing and oral argument. Op. 23-24.

In other alleged misstatements, Defendants asserted that Cabot "substantially" complied with governing laws and regulations. In the Opinion, the Court allowed Plaintiffs to plead

---

[2] Pursuant to the Court's Procedures, Rule 9.A.4, Plaintiffs state the issues to be ruled upon and relevant standards of review *infra* at 6-7 (Rule 12(b)(6) standard), 7-8 (materiality/falsity), 16-17 (scienter), and 24 (loss causation).

additional facts to support the falsity of these statements, and to establish the Defendants' knowledge or recklessness concerning their misstatements. *Id.* Plaintiffs have done so.

The Complaint now includes considerable new factual allegations of falsity and scienter. With respect to falsity, Plaintiffs built on existing facts showing concealed, unresolved violations and remediations Cabot had never even begun (despite Defendants' public statements to the contrary) with new allegations of ***hundreds*** of additional violations cited by Pennsylvania regulators. The repeatedly violative wells and well sites comprised as much as 19% of Cabot's Pennsylvania annual gas production, and contributed approximately $1 billion in revenue in the relevant period. Former employee accounts reinforce recurrent Cabot well violations. By any measure, Cabot was ***not*** in substantial compliance when it represented it was.

These new facts, along with previously-alleged facts showing the central importance of the operations and regulations in question, and Cabot's internal policies and reporting processes regarding its repeated violations, amply support a strong inference of scienter. The Complaint adds specific detail from former employees regarding meetings, conference calls, and internal Cabot reports documenting violations and stalled remediation efforts that were provided to the Individual Defendants at least six times per year during the Class Period. It also adds facts about the 2020 ***felony criminal charges*** related to the precise violations at issue, which decisively support a finding of scienter. Those charges, based on ***a finding of probable cause*** after a years-long investigation and actual ***evidence*** provided to a statewide Grand Jury, are for "***knowing***" persistent and un-remediated violations that occurred during the entire Class Period. If the undisclosed evidence supports a finding of "knowing" misconduct under a heightened criminal standard, it surely supports an inference of "recklessness" at the pleading stage in this civil case.

Defendants' arguments for dismissal are unavailing. They ask the Court to reconsider its

2

falsity rulings on the sustained material misstatements regarding Cabot's purported remediation efforts in Pennsylvania, but there are no changes in law or other "extraordinary circumstances" that would justify disturbing the Court's Opinion on this point. Their second falsity argument that Cabot's repeat and continuing violations—which affected wells and well sites responsible for approximately 10-19% of Cabot's annual production and $1 billion in revenue, and led to multiple felony criminal charges and the denial of an application to drill more wells—were not substantial *enough* strains credulity and should be rejected. Their scienter argument asks the Court to close its eyes to the fact that the Individual Defendants personally received regular reports on violations, regulator interactions, and remediation status, and the fact that, at the conclusion of the Class Period, Cabot was charged with *knowing* felony violations that spanned 2016-2020 in connection with the very conduct Defendants allegedly misrepresented here. This supports a compelling inference of knowledge or recklessness *at the pleading stage*, before discovery has even begun. Last, Defendants' loss causation arguments rest on substitute facts inappropriate for a Rule 12(b)(6) motion.

## STATEMENT OF FACTS

### I.   CABOT'S OPERATIONS

Cabot is a fracking company. ¶ 43. During the Class Period, Cabot's Marcellus Shale operations in Susquehanna County, Pennsylvania were the "cornerstone asset of its portfolio" and the "primary driver of record production and reserve growth." ¶¶ 29-30, 43-44. By 2019, "substantially all" of Cabot's annual production came from Susquehanna County. ¶¶ 30-31.

Pennsylvania environmental laws and regulations that governed Cabot's operations prohibited it from polluting the State's groundwater, and required it to comply with gas-well cement and construction standards. ¶¶ 33, 41. These laws, including the Clean Streams Law, are enforced by the Pennsylvania Department. ¶¶ 33, 37, 39-40.

After several high profile pollution cases caused by Cabot wells, in 2010, the Pennsylvania Department and Cabot entered into the December 2010 Consent Order to address and plan the resolution of significant violations of environmental law by Cabot in prior years that had caused gas migration into Pennsylvania groundwater. ¶¶ 93-94. Cabot agreed to perform all actions necessary to comply with applicable laws, regulations, and extensive remedial work. ¶¶ 47, 118.

## II.　CABOT MISREPRESENTED ITS COMPLIANCE

Despite its commitments under the December 2010 Consent Order, unknown to investors, Cabot repeatedly violated Pennsylvania law by knowingly failing to: (1) fix faulty gas wells and redress known violations, for years, in violation of the December 2010 Consent Order; (2) remediate violations at wells identified in various Notices of Violation and formal letters issued by the Pennsylvania Department; and (3) prevent gas migration into fresh groundwater by failing to employ proper construction standards in wells across Pennsylvania. ¶ 190.

From January 2011 to March 2020, the Pennsylvania Department cited Cabot for *781 violations*. ¶ 142. It privately issued Cabot pre-Class Period Notices of Violation for multiple wells that were not remediated or resolved for years and, during the Class Period, privately issued many more for additional wells. ¶¶ 126, 128, 144. On June 11, 2018, the Pennsylvania Department privately sent Stalnaker the June 2018 Letter underscoring extensive unresolved violations, stating that "Cabot is not in compliance with its obligation under the 2010 Agreement and cannot begin drilling new Gas Wells within the Dimock/Carter Road Area." ¶¶ 137-39.

As a result of Cabot's chronic noncompliance, on June 15, 2020 the Pennsylvania Attorney General charged Cabot with fifteen criminal counts, including nine felonies, for knowingly contaminating Pennsylvania's groundwater. ¶¶ 50, 120, 262. This followed a statewide Grand Jury's conclusion—based upon extensive *evidence*—that Cabot had "*knowingly*" violated

4

applicable environmental laws. ¶¶ 38, 53, 85, 122-23, 208, 215, 218. Evidence showed that Cabot undertook little to no remedial work on numerous gas wells until approximately August 2018. ¶ 118. The Grand Jury found "that, *over a period of many years, and despite mounting evidence, Cabot Oil & Gas failed to acknowledge and correct conduct that polluted Pennsylvania water*" and noted Cabot's "*long-term indifference to the damage it caused*." ¶¶ 50, 85, 119, 190, 217.

The Pennsylvania Attorney General reviewed the Grand Jury's findings of fact and found them consistent with its own investigative findings. It concluded: the "presentments *prove* that Cabot took shortcuts that broke the law" by failing to remediate violations, and "[t]he Grand Jury repeatedly found *evidence* of a company that *placed profit over our laws*." ¶¶ 2, 50. It stated that Cabot did not test for methane in residential water wells prior to drilling in an attempt to avoid liability: "In essence, they didn't test their samples so that there would be no proof that they were contaminating nearby water supplies." ¶¶ 8, 111, 190 (noting "repeated and systematic violation[s] of Pennsylvania environmental law"). It noted there was *probable cause* that Cabot purposely committed the alleged crimes and knowingly violated environmental laws, including that it:

- "did *knowingly* discharge, permit to flow or continue to discharge or permit to flow, methane into groundwater"; and

- "did *knowingly* fail to comply with orders of the department, including but not limited to the December 15, 2010 Consent Order and Settlement Agreement, when it failed to remediate its gas wells to eliminate the discharge of natural gas, which allowed contamination to continue unabated." ¶ 86.

Despite Cabot's extensive, undisclosed regulatory violations, Defendants made false and misleading statements that Cabot: (1) "substantially" complied with applicable laws (¶ 186); (2) had received a Notice of Violation in 2011 from Pennsylvania and "performed appropriate remediation efforts" and "believe[d] the source of methane has been remediated" (¶ 187); (3) had finalized a Consent Order with the Pennsylvania Department and that "the source of methane has been remediated" (¶ 188); and (4) had received proposed Consent Orders related to two Notices

of Violation received in 2017 and "will continue to work with the [Pennsylvania Department] to finalize [them], and to complete the ongoing investigation and remediation" (¶ 205).

Consistent with the felony charges it faces for ***years-long knowing criminal violations***, Cabot's misrepresentations to investors were known at the highest levels of management. The Individual Defendants were routinely apprised of Cabot's continuing violations, regulatory interactions and failures to remediate, and internal documents show that, on at least nine specific occasions, Cabot management was informed by the Pennsylvania Department that Cabot was not in compliance with environmental laws and/or that methane was leaking from its wells. ¶¶ 9, 54-58, 80, 220. The Individual Defendants attended Board meetings and reviewed Board materials, among documents, detailing Cabot's unresolved environmental violations. ¶¶ 55-59.

Former EHS Employees and a Geologist corroborate and provide further evidence that the Individual Defendants were regularly informed of Cabot's violations and failures during the Class Period. ¶¶ 160-61, 164-68, 170-83. For example, the Individual Defendants received Quarterly Update Reports from Cabot's Director of Safety & Environmental Compliance before each Board meeting, six times per year, which tabulated Cabot's environmental violations, all gas migration cases, and the status of Cabot's compliance (or lack thereof) with its remediation obligations. ¶¶ 69-70, 79-80, 173, 177, 180-83. The Individual Defendants were therefore warned that mandatory remediation was not occurring on at least ***twenty-four*** separate occasions during the more than four-year Class Period. ¶ 180.

### LEGAL STANDARD

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor" and "rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). To withstand one, a complaint need only contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a claim under Section

10(b) and Rule 10b-5, a plaintiff must allege: (1) a false statement or omission of material fact in connection with the sale or purchase of a security; (2) made with scienter; (3) upon which the plaintiff relied; and (4) that caused plaintiff's losses. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011). A plaintiff must plead each misrepresentation with "particularity" and allege facts giving rise to "a strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2).

In assessing a Rule 12(b)(6) motion, the Court does not resolve disputed fact issues. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). The "complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *2 (S.D. Tex. Jan. 19, 2016).

## ARGUMENT

## I.   PLAINTIFFS ADEQUATELY PLEAD MATERIAL MISREPRESENTATIONS

The Complaint adequately alleges that Defendants violated Rule 10b-5(b), which makes it unlawful "to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). A material fact is one a reasonable investor would likely consider significant when deciding to invest and that alters the "total mix" of information available about the investment. *Basic, Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988). Materiality is a mixed question of law and fact, and can be decided on a motion to dismiss only if the misstated or omitted fact was "so obviously [un]important to an investor that reasonable minds cannot differ on the question." *TSC Indus., Inc. v. Northway, Inc*., 426 U.S. 438, 450 (1976).

"[T]he disclosure required by the securities laws is measured not by literal truth, but by the ability of the statements to accurately inform rather than mislead prospective buyers." *Lormand*, 565 F.3d at 248-49. A defendant bears a duty to disclose facts "necessary in order to make the statements made . . . not misleading." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308,

318 (2007) (alteration in original). Whether there has been adequate disclosure "is a mixed question of fact and law and, therefore, is a question for a jury." *Isquith v. Middle S. Utils., Inc.*, 847 F.2d 186, 208 (5th Cir. 1988).

Defendants wrongly suggest Rule 10b-5 prohibits only "blatantly and inexcusably misleading" statements. MTD 15. But Defendants' duty is greater: "Once the defendants engaged in public discussions concerning the [issue], they had a duty to disclose a mix of information that is not misleading." *Lormand*, 565 F.3d at 248-49. Here, Defendants made misrepresentations that "would lead a reasonable investor to form an impression . . . in contradiction to the reality"; as such, "those statements can be considered false under the PSLRA's heightened pleading standard." *In re OCA, Inc. Sec. & Derivative Litig.*, 2006 WL 3747560, at \*16 (E.D. La. Dec. 14, 2006).

### A. Defendants' Previously Sustained Misstatements

The Court has sustained three categories of misrepresentations (Op. 21-24):

**2011 Remediation Statements.** Cabot's 2015 Form 10-K stated, in relevant part, that the Company received a Notice of Violation from the Pennsylvania Department in September 2011 and had been "engaged with the [Pennsylvania Department] in investigating the incident and have performed appropriate remediation efforts" and "believe the source of methane has been remediated and are working with the [Pennsylvania Department] to reach agreement on the disposition of this matter." ¶ 187. Cabot's Forms 10-Q filed on May 3, 2016, July 29, 2016, and October 28, 2016 contained substantively similar representations. ¶ 188.

**2016 Remediation Statements.** Cabot's 2016 Form 10-K stated that the Company had finalized a Consent Order and Agreement with the Pennsylvania Department on December 30, 2016, and again assured investors that the Company "performed appropriate remediation efforts" and that "[w]e believe the source of methane has been remediated . . . the related gas well is being permanently plugged. . . ." ¶ 188.

8

**2017 Remediation Statements.** Cabot's 2Q19 Form 10-Q, filed July 26, 2019, disclosed that Cabot had received proposed Consent Orders and Agreements related to two Notices of Violation received in June and November 2017 from the Pennsylvania Department regarding its failure to prevent gas migration into groundwater sources around Susquehanna County. ¶ 189. Defendants yet again assured investors, in part, that "we have been engaged with the [Pennsylvania Department] in investigating the incidents and have performed appropriate remediation efforts" and that "we believe these water quality complaints have been resolved and we are working with the [Pennsylvania Department] to reach agreement on the disposition of this matter." *Id.*

Upon full briefing and oral argument on these misrepresentations, the Court ruled that Plaintiffs sufficiently alleged that "Cabot had not remediated or resolved the environmental law and various Consent Order obligations for wells in Susquehanna County when the Pennsylvania Attorney General's Office announced the June 2020 criminal charges" and "[s]tatements that Cabot had resolved or remediated issues with the well sites are contrary to these and other facts alleged." Op. 23. Thus, the Court held that Plaintiffs "have sufficiently alleged three categories of actionable misstatements" and "alleged sufficient facts that, if proven, could make these statements false and materially misleading." *Id.* at 23, 26.

This ruling was sound. Defendants did little to no remediation work until *August 2018*, and even then only on a few wells. ¶ 118. As the June 2018 Letter makes clear, as of that date Defendants had not remediated multiple longstanding violations. ¶¶ 137-39. The Attorney General charged that from *December 15, 2010 through January 9, 2020*, Cabot "did *knowingly* fail to comply with orders of the department, *including but not limited to* the December 15, 2010 Consent Order and Settlement Agreement, when it failed to remediate its gas wells . . . which allowed contamination to continue unabated." ¶¶ 86, 123, 218. Defendants' statements concerning Cabot's

9

efforts to remediate and comply with regulatory orders are in sharp contrast to reality.

Nevertheless, Defendants seek reconsideration of this ruling. *See* MTD 18-20. But although the law of the case "doctrine does not limit a court's power to reconsider prior rulings, 'as a rule courts should be loathe to do so in the absence of extraordinary circumstances'" in the interest of "finality and efficiency." *Moye v. Tr. Lowell T. Cage*, 2010 WL 3259386, at \*8 (S.D. Tex. Aug. 17, 2010) (Rosenthal, J.). Extraordinary circumstances are "new evidence, intervening controlling authority, or a clearly erroneous decision that would work a manifest injustice"—none of which is present here. *Id*. The claims on the sustained misstatements are exactly the same as they were on the prior dismissal motion. Moreover, courts follow the law of the case doctrine where, as here, "the parties had a 'full and fair' opportunity to litigate the initial determination." *Halliburton Energy Servs., Inc. v. NL Indus.*, 553 F. Supp. 2d 733, 778 (S.D. Tex. 2008) (Rosenthal, J.). There is no basis to revisit the Court's Opinion sustaining these misstatements.

For the "2011" and "2016" previously upheld misstatements, Defendants reargue that the Complaint does not allege facts showing that Cabot had not "performed appropriate remediation efforts." MTD 18. This ignores the Complaint's extensive allegations of Cabot's chronic failures to remediate or comply with regulatory requirements, which were the subject of the knowing criminal charges brought by Pennsylvania. ¶¶ 86, 118, 123, 137-39. That the Stalter wells were not later referenced by name in the June 2018 Letter or criminal charges does not support an inference that these wells were not a part of Cabot's "long-term indifference" and company-wide compliance failures. ¶¶ 85, 119, 190, 208, 217. Indeed, on their face, the "2011" and "2016" disclosures relate to a violation that went un-remediated for five years. These statements also misrepresented that Cabot was constructively collaborating with the Pennsylvania Department, but the Complaint alleges that Pennsylvania criminally charged Cabot for doing the exact opposite.

10

*See Lormand*, 565 F.3d at 248-49 ("Once the defendants engaged in public discussions concerning the [issue], they had a duty to disclose a mix of information that is not misleading.").

As to the "2017" previously upheld misstatements, Defendants disingenuously argue that there are no allegations that the Pennsylvania Department or Pennsylvania Attorney General accused Cabot of any violations relating to the Howell and Jeffers Farm wells after June 17, 2019 (the date Cabot received the proposed consent orders). MTD 18-19. This ignores longstanding continuing violations at the Howell and Jeffers Farm wells noted in the June 2018 Letter (¶ 129), which formed the basis of specific criminal charges against Cabot (¶¶ 130, 180). Cabot's remediation efforts were therefore hardly "appropriate," as Defendants told investors, and, having decided to speak concerning the Notices of Violation, Defendants misleadingly failed to disclose, in connection with the "2011," "2016," and "2017" misstatements, that there were numerous additional Notices of Violations and continuing violations for gas migration and defective casing that remained unresolved. ¶¶ 121-40, 144-47, 189-90. *See Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994) (duty to speak full truth arises when defendant undertakes "a duty to say anything"). Nor is there any indication that the Howell and Jeffers Farm wells were fully remediated.[3]

Finally, Defendants' regurgitated argument that the sustained statements are immaterial and "expressions of opinion" (MTD 19-20) is without merit, as explained by Plaintiffs' prior briefing (ECF No. 90 at 18) and by the Court in rejecting this argument (Op. 21-23).

**B.      Defendants' Materially Misleading "Substantial Compliance" Statements**

In each of Cabot's Forms 10-K for years 2015-2019 (signed and certified by Dinges and Schroeder), Defendants falsely assured investors that Cabot "believe[s] that we substantially comply with the Clean Water Act and related federal and state regulations." *See* ¶¶ 65, 83, 186.

---

[3] Indeed, the July 2019 disclosure concerning the November 2017 violation stated Cabot was required to submit a "detailed written remediation plan," confirming remediation had not occurred. ¶ 205.

The Court previously held that Plaintiffs had not alleged whether the wells experiencing violations "were a substantial piece of Cabot's production or a substantial number of wells out of Cabot's total wells . . . ." Op. 20. As explained below, the Complaint now does so.

Defendants continuously violated the laws of Pennsylvania, where Cabot conducted virtually all of its operations, receiving 333 citations from the Pennsylvania Department from October 2016 to March 2020. ¶¶ 31, 141-42. Defendants accumulated Notices of Violation for serially polluting groundwater and failing to remediate violations for years (¶¶ 126, 128, 144), which led the Pennsylvania Grand Jury to conclude that Defendants "knowingly" violated the December 2010 Consent Order and other Pennsylvania Department orders (¶¶ 86, 123). These undisclosed violations formed the basis for criminal charges that Defendants "knowingly" committed felonies under Pennsylvania law spanning the Class Period. ¶¶ 38, 42, 49, 86, 121-23, 190, 215, 218. Cabot's widespread noncompliance is further confirmed by the Geologist, who described extensive flaws in the Company's cementing process meant to prevent gas migration.[4] ¶¶ 157-59, 190. Thus, Defendants' statements were actionable because they created "an impression of a state of affairs that differ[ed] in a material way from [the] one that actually existed." *Carlton v. Cannon*, 184 F. Supp. 3d 428, 468 (S.D. Tex. 2016) (Rosenthal, J.) (alterations in original).

The Complaint also alleges that violations spanned dozens of wells that comprised a material portion of Cabot's total well pads and Class Period gas production and revenues, including a forensic analysis of gas production by well site. The Complaint analyzes 65 wells and well sites that failed to comply with Pennsylvania law, 25 of which were included in the Presentment of Charges. ¶¶ 141, 150. The 65 wells and well sites impacted roughly *17%* of Cabot's well pads,

---

[4] Consistent with the Court's Opinion, Plaintiffs now "identify when the geologist witnessed cement bond log issues or how many well sites he visited out of all of Cabot's Marcellus Shale operations" (*see* Op. 20) by including the number of well sites that the Geologist helped drill, number of cement bond logs the Geologist reviewed, and an estimate of the number of bond logs that indicated inadequate cement. ¶ 159.

were responsible for a total of approximately *13%* of Cabot's total Class Period gas production, and up to *19%* of its annual production, generating approximately $1 billion in revenue—around *11.6%* of Cabot's total revenue from 2016-2020. *See* ¶¶ 150-51, 190.[5]  The large number of well pads and the material amount of production and revenue contributed by the alleged violative wells and well sites rendered misleading Defendants' "substantial compliance" statements.[6]

Defendants' challenges to the Complaint's well-pled allegations and analyses fail. *First*, Defendants improperly challenge the accuracy of the allegations. MTD 2-3. *See LLS Am., LLC v. Lazy M, LLC*, 2014 WL 3907832, at *2 (E.D. Wash. Aug. 11, 2014) ("Defendant claims that Plaintiff's figures are totally inaccurate and misrepresent the facts" but "a motion to dismiss . . . is not the appropriate means to challenge these disputed issues of fact."). Contrary to Defendants' contentions (MTD 2), Plaintiffs' counsel have the qualifications to perform these calculations, and the resulting chart and conclusions, which identify the information relied upon in rendering those calculations, are sufficient at the pleadings stage. ¶ 150; *Cf. Schuh v. HCA Holdings, Inc.*, 947 F. Supp. 2d 882, 890-91 (M.D. Tenn. 2013) (holding that factual allegations were sufficient to make

---

[5] As Dinges explained on a May 1, 2020 earnings call, remediation can impact the entire well pad: "the impact of an unplanned downtime related to remedial work on 1 well on a large pad that resulted in the deferral of over 230 completed stages from the first quarter to the second quarter[.]" ¶ 154.

[6] In the Opinion, the Court stated that "[w]ithout more, the court cannot conclude that it is materially and actionably false for Cabot to have asserted it was in substantial compliance with laws and regulations, even if the court accepts as true that all identified well sites in the complaint were defective." Op. 11 (citing *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 307 F. Supp. 3d 583 (S.D. Tex. 2018) ("*Plains*")). As explained above, Plaintiffs' amendments have rectified this prior pleading deficiency. Indeed, the Court's analysis of the facts found wanting in *Plains* shows the adequacy of the allegations here. Although the cases involve similar statements, Plaintiffs' allegations here are far stronger concerning: (1) the extent of Cabot's undisclosed violations of law; (2) their importance to Cabot's total operations and revenues; and (3) Defendants' knowledge. First, unlike in *Plains*, the violations alleged here concerned Cabot operations concentrated in a single Pennsylvania county that provided virtually all of Cabot's Class Period production, revenues, and growth, making regulatory troubles there a material concern. ¶¶ 29-32. Second, the alleged violations here are more severe than those in *Plains* and involved a chronic indifference to known violations, resulting in criminal charges. ¶ 50. Third, while most of the violations in *Plains* led to notices after the alleged misstatements or outside the class period (*Plains* at 634-35), the violations here paralleled the misstatements or occurred prior to the misstatements, but then continued unresolved when the misstatements were made. Fourth, unlike the allegations of knowledge in *Plains* based "only" on defendants' "positions at Plains" (*Plains* at 635), Defendants' knowledge here is well-pleaded.  Thus, Defendants' statements were not consistent with Cabot's actual knowledge of its legal and regulatory entanglement in Pennsylvania, and were actionable.

claim plausible even where charts in complaint were missing significant relevant information and did not explain how certain conclusions were made). Tellingly, Defendants do not provide alternative data, despite having provided a self-serving calculation in their prior briefing (that conspicuously failed to consider the gas production from the relevant wells[7]), nor do they claim the information underlying Plaintiffs' calculations is incorrect.

*Second,* Defendants repeat their argument that the violating wells comprised a "small fraction of Cabot's overall footprint"—a meaningless metric—but do not dispute Plaintiffs' calculations showing that those wells accounted for ***13%*** of Cabot's total Class Period gas production, up to ***19%*** of Cabot's annual production, and ***11.6%*** of Cabot's total revenue from 2016-2020. MTD 3.

*Third,* Defendants incorrectly claim that Plaintiffs' data includes certain wells and well sites that should not be included in the calculations. *Id*. But Plaintiffs' data includes the 25 separate wells from the Presentment of Charges (¶ 141), the additional unresolved violations from the June 2018 Letter that were not included in the Presentment of Charges (¶ 144), and other continuing and repeat violations that occurred prior to and during the Class Period when Defendants' made their misleading "substantial compliance" statements (¶¶ 146, 148).[8]

*Fourth,* the data Plaintiffs relied upon was not publicly available, including the identification of the violative wells and key details Plaintiffs obtained from a Pennsylvania Right to Know Law request. ¶ 54. Neither information in the non-public June 2018 Letter nor the Presentment of Charges was available to the public until June 2020, and Plaintiffs' forensic

---

[7] "[T]he charges in the June 2020 Presentment are based on 25 wells. . . . This represents ***fewer than 5%*** of Cabot's 788 wells at the end of 2019." ECF 93 at 4 (emphasis in original).

[8] Even if the analysis only included those wells and well sites with unresolved violations ***during*** the Class Period from the Presentment of Charges, June 2018 Letter and the additional "continuing" violations (¶¶120-147), those wells and well sites still account for approximately 7.4% of Cabot's Class Period gas production. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 719 (2d Cir. 2011) (noting "presumptive 5% threshold of materiality" and finding materiality in metrics that fell below that threshold, because business segment at issue played a "significant role" in the business).

14

analysis could not have been conducted without this information.

### C.    Stalnaker Made Misstatements

Stalnaker is liable as a "maker" of statements under Rule 10b-5(b) in documents that he helped prepare (¶¶ 27, 166, 234) and that concerned operations he oversaw (¶¶ 23-24, 59, 78, 80, 121, 165, 233). *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *Lorenzo v. S.E.C.*, 139 S. Ct. 1094, 1098 (2019) ("*maker* of a statement" has "ultimate authority over the statement, including its content and whether and how to communicate it") (emphasis in original). Defendants' arguments that Plaintiffs "fail[] to plead that Stalnaker had the power to control statements by senior officers" are flawed. MTD 25. The Complaint alleges Stalnaker is an executive officer who ran Cabot's most important region, where all of the violations occurred. ¶ 23. In this capacity, Stalnaker spoke on behalf of Cabot on quarterly earnings calls and regularly presented to the Board on issues concerning its Marcellus operations. ¶¶ 23, 59, 166, 224, 233-34.[9] Stalnaker was the ***source*** of information on Pennsylvania operations, and directly participated in the ***preparation and review*** of Cabot's SEC filings related to its Marcellus operations. ¶¶ 166, 233-34. Thus, "Plaintiffs have properly alleged him to be a 'maker'" of the alleged misstatements. *In re SolarWinds Corp. Sec. Litig.*, 2022 WL 958385, at *10 (W.D. Tex. Mar. 30, 2022) (defendant made statement that he reviewed and approved).

### D.    Scheme Liability Is Adequately Pled

Defendants' course of conduct operated as a fraud on investors, i.e., a "scheme." ¶¶ 27, 212, 265, 279. In addition, the Complaint explicitly alleges a "straightforward fraudulent scheme" whereby Defendants, unbeknownst to investors, "knowingly violated the very environmental laws

---

[9] As discussed *infra*, Stalnaker is also liable under Rule 10b-5(a) and (c) for his integral participation in the alleged fraudulent scheme. *In re Alstom SA Sec. Litig.,* cited by Defendants (MTD 20-21 n.55), pre-dates and conflicts with *Lorenzo* and is inapplicable because Stalnaker "made" statements. *See* 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005).

[they] publicly claimed to uphold." ¶¶ 1-2. Each of the Individual Defendants is liable as a participant in schemes to: (1) put profits over compliance by knowingly failing to comply with applicable environmental laws and or remediate prior violations; and (2) defraud investors by disseminating false and misleading statements to the public. ¶¶ 212, 265. Accordingly, Plaintiffs adequately allege scheme claims against all Defendants. Defendants fail to meaningfully address the scheme allegations. MTD 21 n.55. Contrary to their suggestion, a fraudulent scheme can consist of misrepresentations. *See, e.g., In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 709 (9th Cir. 2021) (*Lorenzo* "foreclosed" "argument that Rule 10b-5(a) and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims") (*citing Lorenzo*, 139 S. Ct. at 1101-02); *Puddu v. 6D Glob. Techs., Inc.*, 2021 WL 1198566, at *11 (S.D.N.Y. Mar. 30, 2021) ("[S]cheme liability" can be established "by pointing to alleged misrepresentations or omissions.").

## II.    PLAINTIFFS ADEQUATELY ALLEGE SCIENTER

Scienter entails "an intent to deceive, manipulate or defraud" or "severe recklessness in which the danger of misleading buyers or sellers is either known to the defendant or is so obvious that the defendant must have been aware of it." *Kohut v. KBR, Inc.,* 2015 WL 11995250, at *10 (S.D. Tex. Sept. 3, 2015). Courts consider scienter allegations "***holistically***" and may not "scrutinize" each "in isolation." *Tellabs*, 551 U.S. at 326. Allegations suffice "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324. The inference "need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the most plausible of competing inferences." *Id*. A "tie favors the plaintiff." *Cobalt*, 2016 WL 215476, at *3. And, "[d]ue to the fact that there will rarely be direct evidence of intent to defraud, allegations of circumstantial evidence . . . justifying a strong inference of scienter will suffice." *In re Fleming Cos. Inc. Sec. & Derivative Litig.*, 2004 WL

16

5278716, at *11 (E.D. Tex. June 16, 2004). The following allegations—viewed holistically—amply support a strong inference of scienter.

### A.     The Individual Defendants Were Regularly Informed Of Contrary Facts

Courts hold that "specific allegations of receiving regular, detailed information" provides a strong inference of scienter. *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 853 (N.D. Tex. 2018); *see also Marcus v. J.C. Penney Co., Inc.*, 2015 WL 5766870, at *6 (E.D. Tex. Sept. 29, 2015) (allegations defendants were aware of facts undermining their statements, regular meetings and review supported scienter); *Brody v. Zix Corp.*, 2006 WL 2739352, at *7 (N.D. Tex. Sept. 26, 2006) (defendants' receipt of "information from computer tracking reports" "would give rise to a strong inference of scienter").

In the Opinion, the Court noted that Plaintiffs had "not alleged instances in which specific individual officers were apprised of facts contradicting their subsequent public statements." Op. 27. Plaintiffs have remedied that shortcoming, alleging that the Individual Defendants received and reviewed regular updates on Cabot's non-compliance with environmental laws, including the Pennsylvania Department's findings of methane leaks from its wells and that it was not in compliance with applicable regulations. The Complaint alleges the following additional facts evidencing Defendants' scienter throughout the Class Period—facts in addition to those that led Pennsylvania to charge Cabot with "knowing[]" felony violations.[10]

**Quarterly Update Reports.** Cabot's Environmental Health & Safety department provided Quarterly Update Reports to the Board and management, including Dinges, Schroeder, and

---

[10] Contrary to Defendants' assertion (MTD 21), the scienter allegations described herein are significantly stronger than the allegations in *Plains* and *Edgar v. Anadarko Petroleum Corp.*, which relied on group allegations based on defendants' senior positions and lacked allegations specific to the defendants' personal knowledge. 307 F. Supp. 3d at 639; 2018 WL 3032573, at *16 (S.D. Tex. June 19, 2018) (Rosenthal, J.). Here, Plaintiffs' allegations are far more detailed and wide-ranging, supported by many sources including former employees and dealings with regulators, identifying by name the Individual Defendants that had direct, personal knowledge of the issues. *See* ¶¶ 211-53.

17

Stalnaker, prior to each Board meeting during the Class Period. ¶¶ 173, 177, 180-83. These reports detailed environmental issues and remediation efforts at Cabot wells. ¶¶ 173, 183. Former EHS Employees described the preparation of the Quarterly Update Report, including: (1) instructions provided by management to report details of Environmental Health & Safety incidents; (2) the individuals in charge of compiling the report; (3) the timeline for such preparation; and (4) when the report was sent to the Board and the Defendants.[11] ¶¶ 173, 180-83. The Quarterly Update Reports included the number of violations, larger spill cleanups, and remediation cases with the potential for private lawsuits. ¶¶ 183, 221. One EHS Employee stated that gas migration issues were ***always*** included in the Quarterly Update Reports due to potential liability. ¶ 183. *See Brody*, 2006 WL 2739352 at *7 (inferring scienter based on testimony of confidential witness that defendants regularly received reports that would have alerted them that their statements were misleading); *Fleming*, 2004 WL 5278716, at *28-34 (inferring scienter from statements of witnesses that defendants received weekly reports and attended weekly meetings).

**Weekly Calls and Log.** Cabot held weekly conference calls to apprise management of environmental violations and the status of remediation activities. ¶¶ 67, 169-72, 174-77, 224-25. Plaintiffs, based on multiple EHS Employee reports, detail that these calls included reports of gas migration, landowner complaints, and issues with the Pennsylvania Department. *Id.* One EHS Employee described in detail an ongoing log that Cabot maintained to keep track of the status of any incidents, kept on a shared drive accessible to Stalnaker and others to review and update. ¶¶ 178-79. Courts have held that such allegations contribute to a strong inference of scienter,

---

[11] According to the Opinion, "[t]o the extent that the plaintiffs' scienter argument is based on the availability of some internal document setting out certain facts, the complaint must make specific allegations about the document, its author, contents, and character, and when and by whom it was received, to link it to the person making the challenged statement, at the time the statement was made." Op. 26. The Complaint has been supplemented with such evidence that, when viewed holistically with the other evidence, supports a strong inference of Defendants' scienter.

undermining Defendants' argument to the contrary. *See* MTD 21; s*ee also MicroCapital Fund LP v. Conn's Inc.*, 2019 WL 3451153, at *15 (S.D. Tex. July 24, 2019), R. & R. adopted, 2019 WL 4673209 (S.D. Tex. Sept. 24, 2019) ("while Plaintiffs do not describe in detail the content of each daily report . . . or the matters discussed in each meeting . . . when considered holistically, the CW allegations contribute to a strong inference of scienter"); *In re Venator Materials PLC Sec. Litig.*, 2021 WL 2980581, at *26 (S.D. Tex. July 7, 2021) (absence of "precise dates and contents of specific reports . . . not necessarily fatal at this juncture where there's a factual basis establishing that underlying specificity exists").

**Direct Dealings with the Pennsylvania Department.** Stalnaker and Dinges both dealt directly with the Pennsylvania Department, and thus knew that Cabot was not complying with its orders during the Class Period. Dinges signed the December 2010 Consent Order and an April 15, 2010 Consent Order and Agreement, while Stalnaker signed a November 4, 2009 Consent Order and Agreement concerning Cabot's similar violations. ¶¶ 45-47. The Pennsylvania Department further issued Notices of Violation addressed to Stalnaker in September 2011, on October 20, 2011, June 16, 2014, and December 19, 2014. ¶¶ 139, 149. Stalnaker signed the final version of the 2016 Consent Order and was also the recipient of the June 2018 Letter and multiple other Notices of Violation. ¶¶ 11, 78, 139, 149, 188. Stalnaker also was repeatedly described on Cabot conference calls as "running our north region" and the person who "runs our Marcellus." ¶ 233. *See Gov't of Guam Ret. Fund v. Invacare Corp.*, 2014 WL 4064256, at *7 (N.D. Ohio Aug. 18, 2014) ("Defendants appreciated the gravity of the FDA's concerns, knew the risks facing the Company"). Importantly, Stalnaker's knowledge is imputed to Cabot because he furnished false information and was involved in drafting the SEC filings. ¶¶ 166, 234. *See Lee v. Active Power, Inc.*, 29 F. Supp. 3d 876, 882-84 (W.D. Tex. July 2, 2014) (individual's scienter imputed to

19

company where he "furnished information for inclusion in the false statements" at issue).

**Further Evidence of Defendants' Knowledge.** The Complaint provides further evidence demonstrating Defendants knew of ongoing violations, belying their Class Period statements:

- The Complaint details daily operational meetings where geologists and engineers briefed Stalnaker on well status and contamination issues. ¶¶ 80, 224, 235. The daily meetings included discussion about spills, Pennsylvania Department visits, cementing problems, landowner complaints and violations. *Id.*

- All gas leaks and gas migration were reported to Stalnaker, whose "sign-off" was required on remediation activities costing over $25,000. ¶ 168. The Geologist had "no doubt" that Stalnaker knew about every Notice of Violation and also all contamination that required remediation. ¶¶ 167-68.

- The Geologist stated Stalnaker said he spoke to Dinges "regularly," and would request information from Cabot managers in preparation for calls with Dinges. ¶ 164.

- Stalnaker received the June 2018 Letter and multiple Notices of Violations. ¶¶ 23, 121, 137-39, 224, 235. As a senior member of management, Stalnaker was required by the Company's Code of Business Conduct to promptly report the information he received to Dinges, members of the Audit Committee, and others. ¶¶ 78, 165, 167, 234.

- Stalnaker presented to Cabot's directors and senior management at least on a quarterly basis to keep them apprised of Cabot's Pennsylvania operations, including information concerning drill sites for wells and their status. ¶¶ 23, 165, 224, 233-34. The Geologist confirmed that Stalnaker's presentations would include PowerPoint slide decks that were provided to Dinges for approval. ¶ 165.

- According to counsels' description of internal Company documents in the *In re Cabot Oil & Gas Corp. Derivative Litigation*, No. 4:21-cv-02046 (S.D. Tex.), on at least nine specific occasions Dinges and the Board were informed that methane was migrating out of its wells and that the Pennsylvania Department believed that Cabot was not in compliance with Pennsylvania's environmental laws. ¶ 56.[12]

- Company policy tasked both the Board's S&EA Committee and Cabot's

---

[12] The Court's recent opinion dismissing the derivative action, without prejudice, supports Plaintiffs' opposition here. *In re Cabot Oil & Gas Corp. Derivative Litig.*, 2022 WL 991999 (S.D. Tex. Mar. 31, 2022) (Rosenthal, J.). There, the Court found that the Board records demonstrated that certain Individual Defendants and Board members ***knew*** of the unresolved violations. That the Court further held that the derivative plaintiffs failed to plead demand futility because the documents cited showed that the Board continued to attempt to work with regulators to resolve the violations is irrelevant here, as the alleged misstatements concealed the existence of continuing violations and the lack of remediation. *See Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 983 n.8 (8th Cir. 2012) ("[h]aving chosen to represent it was in material compliance with FDA regulations and cGMP, [the company] was obligated to make a full disclosure of any material facts" concerning the receipt of FDA violation notices). In any event, Plaintiffs' reliance on Board documents to establish Defendants' knowledge is just one piece of Plaintiffs' holistic scienter showing.

20

Environmental Health & Safety department with monitoring compliance with and violations of environmental laws, interactions with regulators, and remediation efforts (or lack thereof), and providing updates to management. ¶¶ 54, 60-61, 66, 69, 79-80.

- Despite being regularly informed of violations, the Individual Defendants were motivated to ignore such issues by the costs and corresponding downtime associated with proper remediation, and the highly competitive nature of the industry. ¶¶ 240-42; 160 (Geologist stating the Company was reluctant to repair cement casings because of the expense and was "all about doing things fast and as cost effectively as possible.").

**B.     Cabot's _Knowing Criminal_ Violations And Repeat Offenses Support Scienter**

The malfeasance Plaintiffs allege here is probative of Defendants' scienter. Criminal and regulatory investigations show that prior to and throughout the Class Period, Cabot repeatedly *ignored* violations of environmental law and *knowingly* failed to remediate them *for years*. ¶ 215. The Pennsylvania Department sent Cabot the June 2018 Letter describing Cabot's continuing non-compliance in the eight years following the December 2010 Consent Order. ¶¶ 65, 72, 74, 78, 235. *See In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 721-22 (W.D. Tex. 2010) (magnitude and duration of alleged violation supported scienter finding). Cabot was then criminally charged with multiple "***knowing[]***" felony violations of Pennsylvania environmental law based on ***evidence*** shown to a Grand Jury. ¶ 217. Specifically, the charges allege that Cabot "did ***knowingly fail to comply with orders of the department***, including but not limited to the December 15, 2010 Consent Order and Settlement Agreement, when it failed to remediate its gas wells to eliminate the discharge of natural gas, which allowed contamination to continue unabated" for years. ¶ 218.

Such criminal conduct, which involves deceit, is probative of scienter. *See In re Cognizant Tech. Sols. Corp. Sec. Litig.*, 2020 WL 3026564, at *30-31 (D.N.J. June 5, 2020) (criminal indictment bolstered inference of scienter); *Masterson v. Commonwealth Bankshares, Inc.,* 2013 WL 6917423, at *10 (E.D. Va. Dec. 27, 2013), R. & R. adopted, 2 F. Supp. 3d 824 (E.D. Va. 2014) (criminal indictments supported finding of defendants' scienter); *In re Gentiva Sec. Litig.,* 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013) (courts consider "a governmental investigation as one piece

of the puzzle when" evaluating scienter); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 235 F. Supp. 2d 549, 674-75, 706 (S.D. Tex. 2002) (noting firm's violation of SEC consent decree).

### C.    A Holistic Analysis Of The Complaint Strongly Supports Scienter

Other facts, when viewed holistically with those discussed above, support a finding of scienter. *First,* Cabot's gas production in Pennsylvania is its core operation (¶¶ 29, 31, 238)—as Cabot expressly acknowledged—and, thus, environmental matters impacting these operations are presumed to be known by senior management. *See Holzwasser v. Staktek Holdings, Inc.*, 2006 WL 897746, at *4 (W.D. Tex. Mar. 30, 2006) (misstatements that "pertained to [company's] core business" supported scienter); *In re NetSolve, Inc. Sec. Litig.*, 185 F. Supp. 2d 684, 697 (W.D. Tex. 2001) (scienter where misstatements concerned "lifeblood of the company").

*Second*, Cabot operates in a highly regulated industry and, consistent with the regular reports on Cabot's violations and remediation failures noted above, Defendants closely monitored its compliance with environmental laws. ¶ 244; *see Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp.*, 523 F.3d 75, 91 (1st Cir. 2008) (highly regulated industry supports a strong inference of scienter).

*Third,* Dinges and Schroeder signed Cabot's Forms 10-K and 10-Q during the Class Period, and certified that it had sufficient internal controls in place to ensure material information was made known to them. ¶¶ 21-22, 73-74. Their certifications support an inference that they were either duly informed of the regulatory and remediation failures the documents referenced or reckless in not knowing of these issues. Moreover, in annual letters to shareholders, Dinges asserted the importance of regulatory compliance and Cabot's environmental impact. ¶¶ 193, 195.

*Fourth,* Dinges publicly and repeatedly addressed the violations and Cabot's environmental issues indicating knowledge of the issues.[13] Schroeder also spoke publicly about

---

[13] Prior to the Class Period, Dinges publicly spoke about Cabot's interactions with the Pennsylvania Department and assured investors that Cabot was doing all it could to mitigate potential risks related to gas migration caused by

Cabot's operations. ¶ 194. *See In re BP P.L.C. Sec. Litig.*, 843 F. Supp. 2d 712, 783 (S.D. Tex. 2012) (strong inference of scienter where CEO's "own actions as the spokesperson and champion for BP's reform efforts weigh[ed] strongly in favor of the inference that [he] paid special attention to BP's process safety efforts or, at the least, was reckless in not doing so while continuing to publicly tout improvements"); *SolarWinds*, 2022 WL 958385, at *6 (finding that defendant's statements "bear a striking similarity to the defendant CEO in *BP*"); *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (defendants' knowledge supported "by the fact that [they] specifically addressed it in [their] statement[s]"). Moreover, Defendants concede that Cabot's operations have been controversial and have been scrutinized by the Pennsylvania Department, further supporting Individual Defendants' knowledge of the issues. MTD 7.

*Fifth,* Dinges's insider sales, suspicious in timing and size, also support a scienter finding. *See Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 553 (5th Cir. 2007) ("Suspicious" generally means "sales are out of line with prior trading practices or at times calculated to maximize personal profit."). After not trading ***for five years***, on November 2, 2017, Dinges sold 66,610 Cabot shares for over $1.8 million in proceeds while the stock price neared its Class Period high. ¶¶ 248-49; *see City of Omaha Police & Fire Ret. Sys. v. LHC Grp., Inc.*, 2013 WL 1100819, at *5 (W.D. La. Mar. 15, 2013) (stock sale at inflated price indicated scienter).[14]

There is no reasonable basis for an inference that Defendants were unaware of Cabot's numerous continuing violations and misconduct. The totality of the allegations supports a finding of scienter "at least as compelling as any other opposing inference." *Borneo Energy Sendirian Berhad v. Sustainable Power Corp.,* 646 F. Supp. 2d 860, 869 (S.D. Tex. 2009) (Rosenthal, J.).

---

fracking. ¶¶ 227, 230-31. And during the Class Period, Dinges discussed on an earnings call the disruption caused by remediating just one well to the overall well pad. ¶ 154.

[14] Two other executive officers sold significant amounts of stock during the Class Period, as well, including General Counsel, George Kevin Cunningham, who signed the December 2010 Consent Order along with Dinges. ¶¶ 250-51.

23

### III.    PLAINTIFFS ADEQUATELY ALLEGE LOSS CAUSATION

To plead loss causation, Plaintiffs must allege only "a facially 'plausible' causal relationship between the fraudulent statements or omissions and plaintiff's economic loss," i.e., "a material misrepresentation or omission," followed by a disclosure "of relevant or related truth about the fraud that caused a significant part of the depreciation of the stock" and investor loss. *Lormand*, 565 F.3d at 258. Such a "corrective disclosure" can occur through "partial disclosures." *Schott v. Nobilis Health Corp.*, 211 F. Supp. 3d 936, 957 (S.D. Tex. 2016) (Rosenthal, J.). Loss causation allegations must meet Rule 8(a)'s notice pleading standard, which "is not a . . . difficult one to satisfy." *Pub. Emps.' Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 321 (5th Cir. 2014).

Plaintiffs have adequately pled loss causation by giving "some indication of the loss and the causal connection" they have "in mind." *Id.* Plaintiffs allege Defendants' misrepresentations were corrected through partial disclosures of previously-undisclosed regulatory issues on July 26, 2019 and June 15, 2020, followed by Cabot stock price declines that exceeded any decline in the Dow Jones U.S. Exploration & Production Index, the relevant index of peer companies used by Cabot. ¶¶ 205, 256, 258, 260 n.12, 262-64.[15] *See Parmelee v. Santander Consumer USA Holdings, Inc.,* 2018 WL 276338, at *6 (N.D. Tex. Jan. 3, 2018) (allegations that "company's stock price dropped" twice upon release of fraud-related information sufficient); *Fleming,* 2004 WL 5278716, at *42 (allegations that price dropped "in the days after the truth was revealed" sufficient).

Defendants concede the corrective disclosures relate to the alleged fraud, but improperly raise fact disputes about what caused the price declines. *See, e.g.,* MTD 25 (Cabot stock fell because "[n]atural gas prices were declining"); *cf. Amedisys*, 769 F.3d at 320 (court must "accept[] all well-pleaded facts as true"). Given the expert-intensive causation analysis, courts recognize the

---

[15] Cabot's stock price declined 12%, on volume of more than 22.6 million shares, on July 26, 2019 (¶¶ 205, 260) and declined more than 3%, on volume of more than 7.6 million shares, as a result of the June 15, 2020 disclosure (¶ 263).

24

validity of corrective disclosures "is a highly fact intensive inquiry that need not be reached at this point." *Schott*, 211 F. Supp. 3d at *959-60; *see also Ramirez*, 334 F. Supp. 3d at 858 ("it is often inappropriate to . . . resolve disputes over loss causation" at the Rule 12(b)(6) stage).

Should the Court resolve these issues without fact or expert discovery, Defendants' fact-bound arguments fail. It is entirely plausible that a substantial cause of the July 26, 2019 price decline was the adverse regulatory news from Pennsylvania—the seat of all of Cabot's operations. Contrary to Defendants' claim (MTD 23-24), Plaintiffs allege the corrective disclosures revealed that Cabot had failed to adequately remediate polluting wells for years. *Supra* ¶¶ 205, 255-64. Defendants also presuppose—contrary to the Complaint—that Cabot's gas production guidance is unrelated to the underlying violations. MTD 24. But the Complaint specifically alleges that gas production is directly tied to the violations, as Pennsylvania had previously prevented Cabot from expanding production due to continuing violations. ¶ 259. In fact, in Q2 2020, Cabot disclosed a reduction in production guidance due to the impact of remediation. *Id.* Finally, Defendants' factual dispute regarding how best to measure Cabot's relative price decline on July 26, 2019 ignores that Plaintiffs employ the benchmark index Cabot itself used in SEC filings. ¶ 260 n.12.

## IV. THE INDIVIDUAL DEFENDANTS ARE CONTROL PERSONS

Contrary to Defendants' arguments (MTD 25), given his highly senior position and role in informing Defendants' public representations, Stalnaker was a control person of Cabot. *See Ramirez*, 334 F. Supp. 3d at 859 (control person liability adequately pleaded against executive even where primary violation against that individual was not). Because Plaintiffs' primary claim under Rule 10b-5 is adequately alleged, their Section 20(a) claim should be sustained as well.

## CONCLUSION

For the foregoing reasons, Defendants' Motion should be denied. Should the Court grant Defendants' Motion, Plaintiffs respectfully seek leave to amend the Complaint.

25

DATED:　April 13, 2022

KENDALL LAW GROUP, PLLC
JOE KENDALL (S.D. Texas Bar No. 30973,
Texas Bar No. 11260700, Attorney in Charge)


s/ JOE KENDALL
JOE KENDALL

3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
　& DOWD LLP
DARRYL J. ALVARADO
KEVIN A. LAVELLE
FRANCISCO J. MEJIA
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
klavelle@rgrdlaw.com
fmejia@rgrdlaw.com

Lead Counsel for Lead Plaintiff

KESSLER TOPAZ MELTZER
　& CHECK, LLP
ANDREW L. ZIVITZ
JOSHUA E. D'ANCONA
ALEX B. HELLER
HELEN J. BASS
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
jdancona@ktmc.com
aheller@ktmc.com
hbass@ktmc.com

Additional Counsel for the Class

26

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on April 13, 2022, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ JOE KENDALL

JOE KENDALL

KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)


E-mail:  jkendall@kendalllawgroup.com

27

# Mailing Information for a Case 4:21-cv-02045 Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl James Alvarado**
  dalvarado@rgrdlaw.com

- **Joshua Edward D'Ancona**
  jdancona@ktmc.com,ssidibe@ktmc.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Kevin Lavelle**
  klavelle@rgrdlaw.com

- **Henry W. Longley**
  hlongley@ktmc.com

- **Francisco J Mejia**
  fmejia@rgrdlaw.com,E_File_SD@rgrdlaw.com,kjohnson@rgrdlaw.com

- **Gerard G Pecht**
  gerard.pecht@nortonrosefulbright.com,sumera.khan@nortonrosefulbright.com,tanya.lowe@nortonrosefulbright.com

- **Kelly A Potter**
  kelly.potter@nortonrosefulbright.com

- **Peter Andrew Stokes**
  peter.stokes@nortonrosefulbright.com,julie.wright@nortonrosefulbright.com

- **Andrew L. Zivitz**
  azivitz@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Amy               L. Barrette
Buchanan Ingersoll & Rooney PC
Union Trust Building
501 Grant Street, Suite 200
Pittsburgh, PA 15219

Lawrence          F. Stengel
Saxton & Stump LLC
280 Granite Run Drive
Suite 300
Lancaster, PA 17601
```

Case 4:21-cv-02045    Document 11/3    CM/ECF LIVE US District Court-Texas Southern-    Filed 04/13/22 in TXSD    Page 37 of 37