## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CABOT OIL & GAS CORPORATION, *et al.*,<br><br>Defendants. | Case No: 4:21-CV-02045 |

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

I.     THE "SUBSTANTIALLY COMPLY" DISCLOSURES ARE NOT
FRAUDULENT ........................................................................................................ 1

II.    CATEGORIES 2, 3, AND 4 ARE NOT MATERIALLY FALSE OR
FRAUDULENT ........................................................................................................ 8

III.   STALNAKER DID NOT "MAKE" ANY OF THE CHALLENGED
STATEMENTS ......................................................................................................... 9

IV.   PLAINTIFFS DO NOT ALLEGE LOSS CAUSATION ................................................. 10

V.    THE CASE SHOULD BE DISMISSED ...................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrams v. Baker Hughes Inc.*,
   292 F.3d 424 (5th Cir. 2002) ..............................................................................................3, 6

*In re Alamosa Holdings, Inc.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) .....................................................................................4

*Alaska Elec. Pens. Fnd. v. Flotek Indus., Inc.*,
   915 F.3d 975 (5th Cir. 2019) ....................................................................................................1

*In re Bank of Am. AIG Disclosure Secs. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 Fed.Appx. 93 (2d. Cir. 2014) .....................2

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)................................................................................................................10

*In re Cabot Oil & Gas Corp. Deriv. Litig.*,
   2022 WL 991999 (S.D. Tex. Apr. 1, 2022).........................................................................1, 7, 8

*City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*,
   388 F. Supp. 2d 932 (S.D. Ind. 2005).......................................................................................7

*Del. County Empls. Ret. Sys. v. Cabot Oil & Gas Corp.*,
   -- F. Supp. 3d --, 2012 WL 112029 (S.D. Tex. Jan. 12, 2022) ..................................................6

*E-Prime Aerospace Corp. v. Davis.*,
   2009 WL 10670355 (M.D. Fla. June 18, 2009).........................................................................4

*Edgar v. Anadarko Petroleum Corp.*,
   2019 WL 1167786 (S.D. Tex. Mar. 13, 2019)......................................................................6, 10

*Ferris v. Wynn Resorts Ltd.*,
   2021 WL 3216462 (D. Nev. July 28, 2021) ...............................................................................8

*Gamboa v. Citizens, Inc.*,
   2018 WL 2107205 (W.D. Tex. May 7, 2018) ............................................................................2

*In re GeoPharma, Inc. Secs. Litig.*,
   411 F. Supp. 2d 434 (S.D.N.Y. 2006)........................................................................................2

*Glaser v. The9, Ltd.*,
   772 F. Supp. 2d 573 (S.D.N.Y. 2011)........................................................................................4

*Goldstein v. MCI WorldCom*,
   340 F.3d 238 (5th Cir. 2003) .....................................................................................................3

*Gregory v. ProNAi Therapeutics Inc.*,
   297 F. Supp. 3d 372 (S.D.N.Y. 2018)........................................................................................3

*Heinze v. Tesco Corp.*,
  971 F.3d 475 (5th Cir. 2020) ................................................................................................1

*Ho v. Flotek Indus., Inc.*,
  248 F. Supp. 3d 847 (S.D. Tex. 2017), *aff'd sub nom. Alaska Electrical*
  *Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019) ...........................................2

*In re Impinj, Inc. Secs. Litig.*,
  414 F. Supp. 3d 1327 (W.D. Wash. Oct. 4, 2019)....................................................................9

*Jacobowitz v. Range Resources Corp.*,
  -- F. Supp. 3d --, 2022 WL 976003 (N.D. Tex. Mar. 31, 2022) ................................................2

*Kakkar v. Bellicum Pharms., Inc.*,
  2020 WL 2845279 (S.D. Tex. May 29, 2020)...........................................................................1

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)......................................................................................................2

*Marcus v. J.C. Penney Co., Inc.*,
  2015 WL 5766870 (E.D. Tex. Sept. 29, 2015)..........................................................................7

*Masterson v. Commonwealth Bankshares, Inc.*,
  2013 WL 6917423 (E.D. Va. Dec. 27, 2013) ............................................................................7

*North Port Firefighters' Pension-Local Option Plan v. Temple-Inland, Inc.*,
  936 F. Supp. 2d 722 (N.D. Tex. 2013) ......................................................................................3

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) .....................................................................................................2

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) ................................................................................7, 10

*Richman v. Goldman Sachs Group, Inc.*,
  868 F. Supp. 2d 261 (S.D.N.Y. 2012)........................................................................................3

*Sanders v. AVEO Pharm., Inc.*,
  2015 WL 1276824 (D. Mass. Mar. 20, 2015)............................................................................2

*Schiller v. Phys. Res. Grp.*,
  2002 WL 318441 (N.D. Tex. Feb. 26, 2002)..............................................................................3

*SEC v. Jammin Java Corp.*,
  2016 WL 6595133 (C.D. Cal. July 18, 2016).............................................................................4

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014)..........................................................................................2

*Smith v. First Marblehead Corp.*,
  55 F. Supp. 3d 223 (D. Mass. 2012) ......................................................................................1, 2

*In re Sona Nanotech, Inc. Secs. Litig.*,
  -- F. Supp. 3d --, 2021 WL 5504758 (C.D. Cal. Oct. 28, 2021)...............................................3

*Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*,
   365 F.3d 353 (5th Cir. 2004) ..................................................................................10

*Stephens v. Uranium Energy Corp.*,
   2016 WL 3855860 (S.D. Tex. July 15, 2016) (Rosenthal, J.) ....................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007).................................................................................................5

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
   818 F. Supp. 2d 744 (S.D.N.Y. 2011)....................................................................10

**Rules and Statutes**

15 U.S.C. § 78u-4(b)(1) ...................................................................................................4

PSLRA ........................................................................................................................4, 5

Rule 10b-5...................................................................................................................8

**INTRODUCTION**

Plaintiffs have failed again to identify any materially false or fraudulent statements. There are no well-pled (let alone PSLRA-compliant) allegations showing that the "we believe we substantially comply" opinion statements are fraudulent. Nor are there any particularized allegations showing that Cabot did not in fact perform "appropriate" remediation on the specific wells cited in the second, third, and fourth categories of disclosures at issue in this motion, let alone specific facts supporting a strong inference that the individual Defendants who made the alleged misstatements knew specifically that those particular wells had not been appropriately remediated.[1] Plaintiffs' loss causation allegations likewise remain deficient. Having already amended twice, Plaintiffs' claims should be dismissed with prejudice.[2]

**ARGUMENT**

**I.    THE "SUBSTANTIALLY COMPLY" DISCLOSURES ARE NOT FRAUDULENT**

Plaintiffs' Opposition fails to show how the "we believe we substantially comply" statements are materially false, let alone fraudulent. "Substantially" means "to a great or significant extent" or "for the most part; essentially."[3] It does not mean "fully." Consistent with this Court's prior rulings, the Northern District recently rejected claims over a similar disclosure,

---

[1] *See In re Cabot Oil & Gas Corp. Deriv. Litig.*, 2022 WL 991999, at *20 (S.D. Tex. Apr. 1, 2022) (rejecting claims over remediation statements where allegations failed to connect allegations about outstanding migration issues "to the gas migration that was at issue in the 2011 Notice of Violation").

[2] *See Stephens v. Uranium Energy Corp.*, 2016 WL 3855860, at *24 (S.D. Tex. July 15, 2016) (Rosenthal, J.) (denying leave to amend initial amended complaint after selection of lead plaintiffs); *Kakkar v. Bellicum Pharms., Inc.*, 2020 WL 2845279, at *5 (S.D. Tex. May 29, 2020) (denying "nested" request to amend initial post-appointment complaint); *Heinze v. Tesco Corp.*, 971 F.3d 475, 485 (5th Cir. 2020) (affirming denial of leave to amend *first* amended complaint); *Alaska Elec. Pens. Fnd. v. Flotek Indus., Inc.*, 915 F.3d 975, 979 (5th Cir. 2019) (initial post-appointment complaint dismissed).

[3] *See* Google/Oxford Languages Definition of "Substantially."

agreeing that the statement was a "general comment on [the company's] belief that it was in substantial compliance" and was accompanied by "qualifying and hedging" language.[4]

Even stretching Plaintiffs' allegations far beyond what is actually pled with particularity, Plaintiffs still fail to plead any noncompliance as to the vast majority of Cabot's wells and total production. And even if Plaintiffs actually pled with particularity that the individual Defendants had full knowledge of every alleged incidence of noncompliance before each challenged disclosure (which Plaintiffs have not), the allegations still would not show that the "we believe we substantially comply" disclosures are so inexcusably and blatantly misleading as to support a strong inference of recklessness.[5] That is particularly so given the stark cautionary language[6] and

---

[4] *See Jacobowitz v. Range Resources Corp.*, -- F. Supp. 3d --, 2022 WL 976003, at *6-7 (N.D. Tex. Mar. 31, 2022) (granting dismissal despite $294,000 settlement with PaDEP). The court also found that the plaintiffs did not adequately allege liability for a statement of opinion, which Plaintiffs here likewise have failed to do with respect to any of the challenged statements. *See id.*

[5] *See Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017) ("Even if Flotek could have provided clearer disclosures . . ., Flotek's actual disclosures are not so blatantly misleading as to be severely reckless."), *aff'd sub nom. Alaska Electrical Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975 (5th Cir. 2019); *see also Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) (claim fails where "the duty to disclose . . . was not so clear"); *Gamboa v. Citizens, Inc.*, 2018 WL 2107205, at *3 (W.D. Tex. May 7, 2018) (plaintiff "must show more than that it is debatable whether the disclosures were adequate"); *Sanders v. AVEO Pharm., Inc.*, 2015 WL 1276824, at *10 (D. Mass. Mar. 20, 2015) (no scienter when sufficiency of disclosures is "at least debatable."); *In re Bank of Am. AIG Disclosure Secs. Litig.*, 980 F. Supp. 2d 564, 586 (S.D.N.Y. 2013) (holding that if "reasonable minds could differ" whether information had to be disclosed, it "precludes scienter because reckless conduct must be 'highly *unreasonable*'. . . .'"), *aff'd*, 566 Fed.Appx. 93 (2d. Cir. 2014); *In re GeoPharma, Inc. Secs. Litig.*, 411 F. Supp. 2d 434, 448 (S.D.N.Y. 2006) ("To infer scienter from an arguably material omission, in the face of allegations that cut against such an inference, and in the absence of valid motive allegations, would be to expand the anti-fraud provisions of the securities laws beyond their intended scope.").

[6] *See* Defendants' Motion to Dismiss ("Mot."), ECF #111 at 8. These warnings weigh heavily against any inference of scienter. *See Smith v. First Marblehead Corp.*, 55 F. Supp. 3d 223, 231 (D. Mass. 2012) ("[A]ttempts by defendants to warn investors about risks weigh *against* an inference of scienter"); *Owens v. Jastrow*, 789 F.3d 529, 540-41 (5th Cir. 2015) (noting that while plaintiffs disputed the sufficiency of defendant's disclosures of alleged "red flags," the fact that the red flags were "disclosed to the public . . . negates the inference that defendants acted with scienter"); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 369-70 (S.D.N.Y. 2014) (holding that company's

2

the prior rulings of this Court and others that similar statements do not imply full compliance.[7]

Moreover, Cabot **never** publicly represented it had satisfied all requirements for lifting the

"Dimock Box" restrictions imposed in the 2010 Consent Order, or that those restrictions were

likely to be lifted, which further weighs against any inference Defendants intended to deceive

investors.[8]  A reasonable investor would thus understand that Cabot had not sufficiently satisfied

Pennsylvania regulators to be able to resume drilling within the "box."  Even if the Court were to

conclude Cabot's "we believe we substantially comply" disclosures were grossly negligent, which

they were not, that would still not entail the "extreme" culpability needed to show recklessness.[9]

Regardless, the allegations are simply not sufficiently particularized to show an actionable

misstatement or to support the requisite inference of scienter.  Plaintiffs appear to admit that the

"65 wells" from the purported "proprietary forensic analysis" described in paragraph 150 did

indeed include wells from **outside** the class period – wells that are wholly irrelevant to whether

---

disclosures regarding litigation risks "weigh heavily against scienter"); *Richman v. Goldman Sachs Group, Inc.*, 868 F. Supp. 2d 261, 274-76 (S.D.N.Y. 2012) (observing that defendants provided at least "some notice about ongoing governmental investigations" and rejecting fraud claim over failure to disclose Wells notice given lack of an "obvious duty to disclose" the notice); *Schiller v. Phys. Res. Grp.*, 2002 WL 318441, at \*14 (N.D. Tex. Feb. 26, 2002) (rejecting fraud claim where company disclosed arbitration proceeding against seller of allegedly overvalued assets, which undercut inference that company acted fraudulently by not immediately writing off the assets).  .

[7] *See* Mot. at 17 & footnotes 43-44.  This is fundamentally a disclosure case, and courts may consider the state of the law regarding disclosure requirements in assessing recklessness.  *See Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 417 (S.D.N.Y. 2018) (no scienter, despite actionable omission, where caselaw making the omission actionable had recently changed).

[8] *See* Current Amended Complaint ("Compl."), ECF #110 ¶¶ 94, 137, 259.

[9] *See North Port Firefighters' Pension-Local Option Plan v. Temple-Inland, Inc.*, 936 F. Supp. 2d 722, 750 (N.D. Tex. 2013) ("[S]imple or even gross negligence are insufficient to meet the PSLRA's scienter requirement"); *Abrams v. Baker Hughes Inc.*, 292 F.3d 424, 430 (5th Cir. 2002) ("inexcusable negligence" insufficient to show "extreme departure from the standard of ordinary care"); *Goldstein v. MCI WorldCom*, 340 F.3d 238, 253–54 (5th Cir. 2003) ("gross mismanagement" of accounting compliance held insufficient to show strong inference of scienter); *In re Sona Nanotech, Inc. Secs. Litig.*, -- F. Supp. 3d --, 2021 WL 5504758, at \*9 (C.D. Cal. Oct. 28, 2021) (observing that "even gross negligence does not suffice to allege scienter").

3

Cabot's "substantially comply" statements were true at the time they were made.[10]  Nor does the Opposition attempt to distinguish the Fifth Circuit's holding in *Financial Acquisition Partners LP v. Blackwell* that purported expert conclusions may be disregarded.[11]  The "proprietary forensic analysis" offered here is even less particularized than in *Blackwell*, with no specific assertions about the qualifications of whomever performed the "analysis" or the methodology employed.[12]  Plaintiffs cite no Fifth Circuit authority approving any similar "analysis" under the PSLRA, nor do Plaintiffs explain how it complies with the bedrock PSLRA requirements to plead facts with particularity and to "state with particularity all facts on which that belief is formed."[13]

Plaintiffs also assert in footnote 8 of the Opposition that if the wells outside the class period are excluded from the "analysis," the remaining wells purportedly account for "approximately 7.4% of Cabot's Class Period gas production."[14]  This 7.4% figure is pled nowhere in the operative Complaint. Not only is it unavailing to rely on unpled facts in an opposition brief,[15] but the allegation remains unparticularized even if considered to have been pled.  Plaintiffs do not allege specific facts showing how this number was calculated, which wells accounted for what production

---

[10] *See* Opp. at 14 n. 8 (highlighting the word "during"); *see also* Mot. at 2-3 (describing flaws in purported "forensic analysis").

[11] *See* 440 F.3d 278, 285-86 (5th Cir. 2006).

[12] *See id.*

[13] 15 U.S.C. § 78u-4(b)(1).

[14] *See* Opp. at 14 n. 8.

[15] *See In re Alamosa Holdings, Inc.*, 382 F. Supp. 2d 832 (N.D. Tex. 2005) ("Plaintiffs cannot amend the Complaint by way of the Response [brief] to attempt to include" unpled allegations); *SEC v. Jammin Java Corp.*, 2016 WL 6595133, at *12 (C.D. Cal. July 18, 2016) ("The Court cannot consider new facts asserted in the SEC's oppositions to the motions"); *Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011) ("[T]he Court can hardly consider assertions made in a legal brief, but not in a pleading"); *E-Prime Aerospace Corp. v. Davis.*, 2009 WL 10670355, at *4 n. 6 (M.D. Fla. June 18, 2009) ("Plaintiff has alluded to numerous factual matters in its response brief which are not pled in the complaint and are, therefore, not properly before the Court").

at what time, the specific percentage of production that was attributable to allegedly noncompliant wells at the time of any specific Form 10-K, the severity of each alleged violation, when and how each individual Defendant was apprised of each alleged violation, or that any specific individual Defendant knew what specific amount of production came from purportedly noncompliant wells at any specific time.[16]  Plaintiffs also vaguely assert that the 7.4% includes not only the wells from the June 2018 Letter[17] and the Grand Jury Presentment, but includes additional purported "continuing" violations cited in a 27-paragraph swath of the Complaint (¶¶ 120-47), a swath that includes paragraphs referencing alleged violations outside the class period (¶¶ 141-42, 148).[18] "[O]missions and ambiguities count against inferring scienter,"[19] and for good reason: There is no benefit for a plaintiff in the PSLRA era (especially in this circuit) to withhold or obscure supporting details from a complaint unless those details would ***undercut*** the plaintiff's claims if disclosed.[20] And even if the 7.4% number is accepted wholesale, it shows that ***more than 92%*** of Cabot's production – a "substantial" majority– was not implicated by the alleged violations.[21]

---

[16] *See* Mot. at 3, 12, 16 (setting forth criticisms of Plaintiffs' production "analysis").

[17] Again, Cabot never publicly stated it had complied with all requirements to lift the "Dimock Box" restrictions, which was the context of the June 2018 letter.

[18] *See* Opp. at 14 n. 8.

[19] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007).  That is consistent with this circuit's

[20] Plaintiffs also argue that Defendants do not provide "alternative data" (Opp. at 14.).  Defendants cannot cite nonpublic data on a motion to dismiss, nor is it Defendants' burden to plead facts affirmatively refuting scienter.  And again, it is unclear which wells or production Plaintiffs are actually including in their purported "analysis."

[21] Again, there is no particularized allegation that Pennsylvania regulators found any of the violations so "substantial" that they took any steps to shut down or otherwise curtail any Cabot production outside the already-curtailed Dimock Box area, that they pursued an enforcement action against Cabot for violating the 2010 Consent Order, or that the fines and penalties Cabot has faced or is likely to face would be material to its financial statements.

Further, merely asserting that Cabot received notices of violation, or that individual Defendants generally knew of potential compliance issues, cannot substitute for particularized allegations that Dinges and Schroeder were personally apprised of specific facts showing that they "***knew as a matter of law***" that the wells at issue actually remained in violation of Pennsylvania law at the time of the statements.[22]  Those facts remain wholly absent.

Plaintiffs have thus failed again to plead specific facts showing that the "we believe we substantially comply" statements are actionably and materially false, or facts supporting a strong inference that the individuals who made those statements knew specific details that would render these generalized statements of "belief" (accompanied by stark "hedging" language) so undeniably misleading as to show "an extreme departure from the standard of ordinary care" in which "the danger of misleading buyers" was "known to the defendant or so obvious that the defendant must have been aware of it."[23]  Plaintiffs fail to make "specific allegations" about the contents of any documents or communications in which the individual Defendants were purportedly apprised of the alleged deficiencies, including "specific allegations about the document, its author, contents, and character, and when and by whom it was received, to link it to the person making the challenged statement, at the time the statement was made."[24] The allegations simply do not cure the material misstatement or scienter deficiencies highlighted in the Court's prior opinion.[25]  Nor

---

[22] *See Anadarko*, 788 F. App'x at 270  (affirming dismissal despite evidence that "could have led [individual defendants] to conclude that Anadarko's Colorado operations weren't in compliance with Commission rules," where allegations did not support strong inference that "Walker and McBride were aware that Anadarko was, as a matter of law, in violation of Commission rules"); *Edgar*, 2019 WL 1167786, at *16 (rejecting "should have known" argument); *Abrams*, 292 F.3d at 432 (allegations that defendants "should have known" of alleged control problems insufficient).

[23] *See Abrams*, 292 F.3d at 430.

[24] *See Del. County Empls. Ret. Sys. v. Cabot Oil & Gas Corp.*, -- F. Supp. 3d --, 2012 WL 112029, at *13 (S.D. Tex. Jan. 12, 2022).

[25] *See id.* at *11, 13-15.

do they show that the individual Defendants lacked any basis for reasonably believing Cabot was in substantial compliance – a belief that can lawfully be expressed even when a company faces adverse action from a regulator or outside party.[26]   Companies can reasonably disagree with regulators and are not bound to accept a regulator's assertions of noncompliance.

Plaintiffs' case citations are readily distinguishable.[27]   The Court's opinion in the derivative action likewise only further undercuts Plaintiffs' claims.[28]   As set forth in Defendants' Motion, the

---

[26] *See City of Austin Police Ret. Sys. v. ITT Educ. Servs., Inc.*, 388 F. Supp. 2d 932, 946 (S.D. Ind. 2005) (company can still "believe in" its compliance even when it is the "object of a state investigation").

[27] In *Brody v. Zix Corp.*, the plaintiffs alleged substantial insider stock sales and made specific allegations about "what the confidential sources allege Defendants knew based on" internal tracking reports identified in the complaint.  2006 WL 2739352, at *6-7 (N.D. Tex. Sept. 26, 2006). In *In re Fleming Companies Inc. Securities & Derivative Litigation*, the confidential witness did not merely see unspecified "cement logs" on someone's desk, but personally delivered financial documents to the individuals showing the improper deductions at issue.  2004 WL 5278716, at 29 (E.D. Tex. June 16, 2004).  In *Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 855 (N.D. Tex. 2018), the complaint included specific emails where individual defendants were allegedly told of and approved proxy cost metrics that were lower than the publicly touted proxy cost.  In *Marcus v. J.C. Penney Co., Inc.*, 2015 WL 5766870, at *2-3 (E.D. Tex. Sept. 29, 2015), the company announced it was raising new capital one day after the CEO assured he did not see conditions requiring the company to do so.  The allegations here are also a far cry from the rampant accounting violations in *In re ArthroCare Corp. Securities Litigation*, which resulted in a significant restatement (and ultimately a 20-year prison sentence for the CEO).  726 F. Supp. 2d 696, 705-08 (W.D. Tex. 2010); https://www.justice.gov/opa/pr/former-ceo-arthrocare-corporation-sentenced-20-years-prison-role-750-million-securities-fraud?msclkid=0d0cbb2dcfa411ecb07b71da5f743775.  In *In re Cognizant Tech. Sols. Corp. Secs. Litig.*, two individual defendants were personally indicted for bribery.  *See* 2020 WL 3026564, at *4 (D.N.J. June 5, 2020); *see also Masterson v. Commonwealth Bankshares, Inc.*, 2013 WL 6917423, at *1 (E.D. Va. Dec. 27, 2013) (individual defendants criminally convicted for fraudulent conduct).  The claims likewise bear no resemblance to those in the Enron litigation.  Further, while Plaintiffs cite *In re Gentiva Securities Litigation*, that court **granted** the motion to dismiss and found the allegations insufficient.  *See* 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013).

[28] *See In re Cabot Oil & Gas Corp. Deriv. Litig.*, 2022 WL 991999, at *20 (rejecting derivative plaintiffs' false-statement claims).   Contrary to plaintiffs' assertion, the board's receipt of information showing that remediation was being performed on the limited number of wells at issue, as discussed in the derivative case opinion, would only bolster, and would not undermine, a reasonable belief that the company is in substantial compliance.  *See id.* at *17.

"new" confidential witness allegations do not materially improve upon the prior allegations.[29]

Plaintiffs' "core operations," stock sale, and other scienter allegations remain deficient.[30]

## II.    CATEGORIES 2, 3, AND 4 ARE NOT MATERIALLY FALSE OR FRAUDULENT

Plaintiffs likewise fail to show how the second, third, and fourth categories – which involve *specific* wells subject to *specific* Notices of Violation – are materially false or fraudulent. As in the derivative case, Plaintiffs plead no facts showing that the individual Defendants knew of any facts showing that the specific wells addressed in those disclosures were insufficiently remediated[31] (or, for that matter, that those specific wells were in fact unremediated). Plaintiffs primarily assert that the Court should not revisit its prior ruling on whether the "material misstatement" element was alleged.[32] But as Plaintiffs acknowledge, the Court retains power to reconsider prior interlocutory rulings – a proposition that should apply with particular force here because the Court's ultimate ruling was that the claims did *not* satisfy all elements of a Rule 10b-5 claim.[33] And the most salient part of that ruling – that Plaintiffs failed to plead scienter – stands wholly unremedied. Neither the class plaintiffs nor the derivative plaintiffs allege any specific facts showing that the individual Defendants knew of specific problems suggesting that the specific

---

[29] *See* Mot. at 13-15.

[30] *See Delaware County*, 2022 WL 112029, at *14-15 (rejecting scienter allegations).

[31] *See In re Cabot*, 2022 WL 991999, at *20 ("Although the shareholders point to numerous statements in Section 220 documents that the Board was on notice of several wells that had outstanding gas migration issues, the shareholders do not connect those statements to the gas migration that was at issue in the 2011 Notice of Violation"); *Ferris v. Wynn Resorts Ltd.*, 2021 WL 3216462, at *11 (D. Nev. July 28, 2021) (dismissing compliance disclosure claim on falsity grounds where it was made in context of one specific matter and not all matters generally).

[32] *See* Opp. at 9-10.

[33] *See id.* at 10.

individual wells implicated by the category 2, 3, and 4 disclosures were not remediated at the time of the challenged disclosures (or at any time thereafter).

Plaintiffs cannot "group plead" wells any more than they can "group plead" other allegations. Indeed, Plaintiffs appear to admit that the wells at issue in the 2011 and 2016 consent orders were *not* part of the June 2018 Letter or the Grand Jury Presentment.[34] Plaintiffs are also wrong in calling Defendants "disingenuous[]" for pointing out there was no allegation by PaDEP or in the Grand Jury Presentment that the Howell and Jeffers Farms wells were still noncompliant as of the date of the challenged July 26, 2019 statement about those wells.[35] Plaintiffs' argument regarding the July 26, 2019 statement is that the *remediation* statement was false. The absence of allegations by the regulators that those wells were still in violation *at the time of the 2019 disclosure* (or that any of the other wells at issue in the Category 2, 3, and 4 disclosures were still in violation at the time of those disclosures), combined with the absence of any specific allegation in Plaintiffs' own Complaint that those wells remained unremediated, should merit reconsideration of the Court's prior ruling on the "material misstatement" element. Regardless, the absence of such allegations plainly supports the same outcome on scienter that the Court reached before.

## III.   STALNAKER DID NOT "MAKE" THE CHALLENGED STATEMENTS.

Stalnaker was not the "maker" of any challenged statements, which requires dismissal of the claims against him and renders the already-insufficient scienter allegations against him irrelevant. The question is not whether Stalnaker "had the power to suggest what should be

---

[34] *See* Opp. at 10.

[35] *See id.* at 11.

communicated to the public," but whether he "possessed the ultimate authority over the content and dissemination of the statements" at issue.[36]  The allegations do not show such authority.[37]

## IV.     PLAINTIFFS DO NOT ALLEGE LOSS CAUSATION

The Opposition also fails to salvage Plaintiffs' deficient loss causation allegations.  Even under a *Twombly* notice standard, simply alleging correlation does not plausibly allege causation. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 564 (2007) (allegations of parallel conduct insufficient to plead conspiracy).  Plaintiffs affirmatively alleged a far more plausible cause for the first decline – "disappointing production guidance" – and plead no facts plausibly showing that the first stock price decline resulted from the immaterial $215,000 penalty and not the reduced guidance.  *See Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp. 2d 744, 757 (S.D.N.Y. 2011) (rejecting no-need-to-disaggregate-on-pleadings argument).  Nor do Plaintiffs allege showing more than a possibility that the second drop resulted from the Attorney General announcement or was outside the normal daily fluctuations in Cabot's stock and gas prices.[38]

## V.     THE CASE SHOULD BE DISMISSED

Plaintiffs have failed to allege a primary claim under any theory[39] or a control person claim. Having amended twice, Plaintiffs' claims should be dismissed with prejudice.[40]

---

[36] *See In re Impinj, Inc. Secs. Litig.*, 414 F. Supp. 3d 1327, 1336 (W.D. Wash. Oct. 4, 2019).

[37] *See Edgar v. Anadarko Petroleum Corp.*, 2019 WL 1167786, at *9 (S.D. Tex. Mar. 13, 2019) (rejecting conclusory claim that officer was maker of misstatements); *Southland Secs. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365 (5th Cir. 2004) (requiring "specific facts" such as a "signature on the document").  Further, unlike in *Ramirez* (where the alleged control person made statements but did not act with scienter), there is no similar allegation about Stalnaker's ultimate "control" of the statements.  *See Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 856 (N.D. Tex. 2018) (describing conduct by defendant Woodbury, for whom control was pled).

[38] *See* Mot. at 24-25; *Wilamowsky*, 818 F. Supp. 2d at 757 (emphasizing plausibility standard).

[39] The purported "scheme" claim again fails.  *See id.* at 20.

[40] *See supra* footnote 2.

Dated:  May 10, 2022

Respectfully submitted,

/s/ Peter A. Stokes
Gerard G. Pecht
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone:  (713) 651-5151
Facsimile:  (713) 651-5246
gerard.pecht@nortonrosefulbright.com

Peter A. Stokes
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701-4255
Telephone:  (512) 474-5201
Facsimile:  (512) 536-4598
peter.stokes@nortonrosefulbright.com

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that I filed this document on May 10, 2022 through the Court's ECF system, which automatically transmits the filing to all counsel of record for all parties in this litigation.

/s/ Peter A. Stokes

11