| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and On Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>CABOT OIL & GAS CORPORATION, et al.,<br><br>    Defendants. | § Civil Action No. 4:21-cv-02045<br>§<br>§<br>§<br>§<br>§<br>§<br>§ **DECLARATION OF JOHN SMELKO**<br>§<br>§<br>§<br>§<br>§ |

In accordance with the Federal Rules of Civil Procedure, I, John Smelko, do hereby declare as follows.

1.    My name is John Smelko. I currently serve as Environmental & Regulatory Compliance Manager at Coterra Energy Inc. ("Coterra"). Throughout the Class Period, I served in the same role at Cabot Oil & Gas Corporation ("Cabot"). I am competent to make this Declaration and have knowledge of the facts discussed below based on my job responsibilities; my familiarity with Cabot's environmental compliance practices and communications with environmental regulators; my review of documents referenced below; and through my further investigation, including consultation with other persons who worked at Cabot between February 22, 2016 and June 12, 2020 (the "Class Period").

2.    Based on my role and responsibilities at Cabot, I am familiar with the Notices of Violation ("NOVs") issued to Cabot by the Pennsylvania Department of Environmental Protection ("PaDEP") that are described in this Declaration, as well as: the prohibition of drilling and completion activities within a nine-square-mile area in the vicinity of Dimock Township, Pennsylvania that PaDEP imposed in a December 2010 Consent Order (the "Dimock Box"); the June 11, 2018 letter from PaDEP in response to Cabot's request to resume drilling within the

- 1 -

Dimock Box (the "June 2018 Letter"); the June 15, 2020 Presentment of Charges filed by the Pennsylvania Attorney General's Office (the "AG Presentment"); the November 29, 2022 Nolo Contendere Plea Agreement and Colloquy of Defendant entered by Coterra (the "Plea Agreement"); and the November 29, 2022 Consent Order and Agreement between Coterra and PaDEP (the "November 2022 Consent Order"). I have reviewed the NOVs referenced in this paragraph, as well as the AG Presentment, the June 2018 Letter, the Plea Agreement, and the November 2022 Consent Order.

3.      I am also aware of Plaintiff's First Amended Consolidated Complaint for Violation of the Federal Securities Laws (the "Complaint") and the Court's August 10, 2022 Memorandum and Opinion granting in part and denying in part Defendants' motion to dismiss (the "Opinion").

4.      I understand from the Opinion that the Court denied dismissal as to three categories of alleged misstatements. These three categories of alleged misstatements (the "Categories"; each a "Category") are described in more detail on pages 28-29 of the Opinion.

5.      The first Category includes the statements in Cabot's 2015 Form 10-K and in Cabot's May, July, and October 2016 Form 10-Qs about remediation related to a September 2011 Notice of Violation, which include statements that Cabot was "engaged with the PaDEP in investigating the incident and ha[s] performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents," that Cabot believed "the source of methane has been remediated," that Cabot was "working with the PaDEP to reach agreement on the disposition of this matter," that Cabot had received a proposed Consent Order that, if finalized, would result in a civil penalty of between $100,000 and $300,000, and that Cabot would continue to work to bring the matter to a close.

6.      The second Category of alleged misstatements consists of the disclosure in Cabot's

- 2 -

2016 Form 10-K that Cabot had "entered into a Consent order and Agreement with the PaDEP on December 30, 2016," pursuant to which Cabot "agreed to pay a civil monetary penalty in the amount of approximately $0.3 million and to continue to provide alternative sources of drinking water to affected residents until the affected water supplies are permanently restored." The disclosure further stated that "the related gas well is being permanently plugged. Following the plugging of the gas well, additional monitoring will be required to ensure the source of methane has been remediated. Cabot continues to work with the PaDEP to bring this matter to a close."

7.      The third Category of alleged misstatements consists of a disclosure in Cabot's July 26, 2019 Form 10-Q pertaining to two NOVs issued by PaDEP to Cabot in June and November 2017, respectively, as well as similar disclosures in Cabot's Form 10-Qs filed on October 26, 2019, and May 1, 2020. The disclosure included a statement that Cabot would "continue to work with the PaDEP" to finalize proposed Consent Orders with respect to those NOVs. With respect to the June 2017 NOV, the disclosure stated that "we believe these water quality complaints have been resolved, and we are working with the PaDEP to reach agreement on the disposition of this matter." With respect to the November 2017 NOV, the disclosure stated that the proposed Consent Order and Agreement "would require Cabot to submit a detailed remediation plan, continue water sampling and other investigative measures and restore or replace affected water supplies and would result in the payment of a civil monetary penalty in an amount likely to exceed $100,000, up to approximately $355,000. We will continue to work with the PaDEP to finalize the [Consent Order and Agreement], and to complete the ongoing investigation and remediation."

8.      I have reviewed all three Categories of disclosures and am familiar with their contents. I have also reviewed the NOVs associated with those Categories. The first two Categories

of alleged misstatements discussed above—including the statements regarding the September 2011 NOV and 2016 Consent Order and the statements that Cabot has "performed appropriate remediation measures" and believed that "the source of methane has been remediated"—pertain exclusively to wells 1, 2, and 8 on the Stalter well pad (the "Stalter Wells"). The statements in the third Category of alleged misstatements regarding the June 2017 NOV pertain exclusively to wells 2H, 4H, 6H, and 8H on the Howell well pad (the "Howell Wells"), which were also the only wells referenced in the proposed Consent Order for the June 2017 NOV referenced in the Category 3 disclosures and in the final Consent Order entered with respect to this NOV on December 28, 2020. The statements in the third Category of alleged misstatements regarding the November 2017 NOV pertain exclusively to wells 7H, 8H, 9H, 10H, 11H, 12H, 13H, 14H, 15H, 16H, 17H, and 18H on the Jeffers Farms Pad 2 well pad (the "Jeffers Farms Pad 2 Wells"), which were also the only wells addressed in the proposed Consent Order described in the Category 3 disclosures and in the final Consent Order entered on December 28, 2020 with respect to these wells. No other wells are referenced or discussed in these three Categories of alleged misstatements besides the wells specifically listed in this paragraph.

9.    I have additionally reviewed paragraphs 258-261 of the Complaint, which references Cabot's July 26, 2019 disclosures regarding the June 2017 and November 2017 NOVs, the receipt of proposed Consent Orders and Agreements pertaining to those two NOVs, and the issuance of new production guidance on July 26, 2019 (collectively, the "July 26, 2019 Disclosures").

10.    As stated above, the June 2017 NOV referenced in the July 26, 2019 Disclosures pertained exclusively to the Howell Wells. The November 2017 NOV referenced in the July 26, 2019 Disclosures pertained exclusively to the Jeffers Farms Pad 2 Wells. Neither of these NOVs

pertained in any way to the Stalter Wells. The two proposed Consent Orders and Agreements referenced in the July 26, 2019 Disclosures likewise pertained to the Howell Wells and the Jeffers Farms Pad 2 Wells, respectively. Neither of these two proposed Consent Orders and Agreements referenced in the July 26, 2019 Disclosures pertained to the Stalter Wells.

11. To the best of my personal knowledge, the disclosures contained in the first two Categories of alleged misstatements—including but not limited to the statements that "we have been engaged with the PaDEP in investigating the incident and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents" and that "[w]e believe the source of methane has been remediated and are working with the PaDEP to reach agreement on the disposition of this matter"—were accurate and truthful. To the best of my knowledge, at no time after the first alleged misstatement on February 22, 2016 did any regulatory or governmental authority cite Cabot for any new violations pertaining to the Stalter Wells based on conduct occurring during the Class Period, nor did Cabot make any disclosure after February 22, 2016 that it had been cited for any additional violations pertaining to the Stalter Wells based on conduct occurring during the Class Period. The Stalter Wells were not mentioned in the June 2018 Letter, were not the subject of the NOVs and Consent Orders announced on July 26, 2019, did not contribute to the changes in production and capital budget guidance that were announced on July 26, 2019, and were not part of the AG Presentment announced on June 15, 2020.

12. The July 26, 2019 Disclosures announced that Cabot would be subject to a monetary penalty of up to approximately $215,000 in connection with resolving the June 2017 NOV, and a monetary penalty of up to approximately $355,000 in connection with resolving the November 2017 NOV.

13.    To the best of my knowledge, the statements made in the third Category of alleged misstatements identified above were accurate and truthful. In particular, with respect to the Howell Wells that were the subject of the June 2017 NOV, the statements that "we have been engaged with the PaDEP in investigating the incidents and have performed appropriate remediation efforts, including the provision of alternative sources of drinking water to affected residents" and that "[w]e believe the source of methane has been remediated and are working with the PaDEP to reach agreement on the disposition of this matter" were, to the best of my knowledge, true and correct as of the time of these disclosures, which were initially made on July 26, 2019.

14.    On or about December 28, 2020, PaDEP issued an Order finding that *"Cabot concluded remedial actions [on the Howell Wells] in November 2017.* Evaluation of pressure in the annuli of the Gas Wells since the remedial work indicated that the work was effective in eliminating the flow of gas in the cemented annuli." To the best of my knowledge, Cabot did indeed perform appropriate remediation measures with respect to the Howell Wells prior to the making of the third Category of disclosures and believed at the time of those disclosures that the source of methane had been remediated with respect to the Howell Wells. Nothing in the Order faulted Cabot for any violation or deficiency with respect to the Howell Wells occurring on or after July 26, 2019.

15.    With respect to the Jeffers Farms Pad 2 Wells, the July 26, 2019 Form 10-Q (along with the subsequent substantially similar disclosures that comprise the third Category of alleged misstatements) disclosed that Cabot would be required to "submit a detailed written remediation plan, continue water sampling and other investigative measures and restore or replace affected water supplies," and that Cabot "will continue to work with the PaDEP to finalize the CO&A, and to complete the ongoing investigation and remediation." The disclosure thus specifically conveyed

that investigation and remediation work was "ongoing" and would be completed in the future. Prior to July 26, 2019, Cabot had already performed appropriate remediation efforts on the Jeffers Farms Pad 2 Wells. Indeed, on December 28, 2020, PaDEP issued an Order with respect to the Jeffers Farms Pad 2 Wells that recited how Cabot "ran various diagnostic logs and performed multiple remedial perforation and squeeze activities" on multiple wells on the Jeffers Farms Pad 2 pad between August 2017 and March 2018, that Cabot ensured in June and July 2019 "that all annular vents on all gas wells on the pad were isolated and monitored correctly via the Alicat meters" that Cabot had installed, and that an August 9, 2019 inspection by PaDEP confirmed there was "no flow and no methane present on the 20x13 and 13x9 cemented annular spaces for each of the" Jeffers Farms Pad 2 Wells. To the best of my knowledge, Cabot did indeed perform the remediation work set forth in the Order, and nothing in the Order faulted Cabot for any violation or deficiency with respect to the Jeffers Farms Pad 2 Wells occurring on or after July 26, 2019.

16.     To the best of my knowledge, the AG Presentment did not charge Cabot for any violations with respect to the Stalter Wells, nor did it charge Cabot for any violations with respect to the Howell Wells or the Jeffers Farms Pad 2 Wells that occurred on or after July 26, 2019. Instead, with respect to the Howell Wells and the Jeffers Farms Pad 2 Wells, the AG Presentment charged Cabot for alleged violations occurring "on one or more occasion . . . through June 11, 2018."

17.     Accordingly, nothing in the AG Presentment contradicts any of Cabot's statements in the three Categories of challenged disclosures, as: (i) the Stalter Wells were not charged at all in the AG Presentment; and (ii) the AG Presentment does not charge Cabot for any alleged violations occurring after June 11, 2018, or for any violations (or any purported remediation shortcomings) occurring or existing on or after July 26, 2019.

18.     On November 29, 2022, Coterra (as successor to Cabot following the merger) entered into the Plea Agreement to resolve the charges set forth in the AG Presentment, as well as the November 2022 Consent Order. Pursuant to the Plea Agreement, Coterra entered a plea of nolo contendere to a single misdemeanor charge under the Pennsylvania Clean Streams Law with respect to the alleged negligent discharge of methane into groundwater "[o]n one or more occasions between March 2008 and June 2018."

19.     The Plea Agreement thus does not include any plea with respect to any alleged violations with respect to any wells occurring after June 2018.

20.     The November 2022 Consent Order likewise does not find any violations with respect to any wells occurring on or after July 26, 2019, nor does the November 2022 Consent Order reference any alleged violations with respect to the Stalter Wells, Howell Wells, or Jeffers Farms Pad 2 Wells at all.

21.     Pursuant to the Plea Agreement, Cabot agreed to pay a total fine of $2,500 to the Clean Water Fund maintained by PaDEP. In addition, pursuant to the Plea Agreement and November 2022 Consent Order, Cabot agreed to pay $16.29 million to an interest bearing account established by the Office of Attorney General for construction of a community water well system and water distribution system (the "Public Water System"), which will provide water to certain properties and property owners affected by prior alleged methane migration from Cabot gas wells that occurred prior to July 26, 2019 (the "Subject Water Supplies").

22.     The Subject Water Supplies do not include any water supplies, properties, or property owners affected by the Stalter Wells, Howell Wells, or Jeffers Farms Pad 2 Wells, nor is the Public Water System intended to provide water to those properties or property owners. The Stalter Wells, Howell Wells, and Jeffers Farms Pad 2 Wells are located outside the Dimock Box,

- 9 -

whereas the wells and properties addressed by the Public Water System are located inside the Dimock Box. In return for funding the Public Water System and complying with the other terms of the November 2022 Consent Order, PaDEP agreed that Coterra may resume drilling new wells in the Dimock Box upon meeting certain conditions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing facts are true and correct.

Executed this 19th day of January 2023 in Pittsburgh, Pennsylvania.

John J. Smelko