# Exhibit 2



**pennsylvania**
DEPARTMENT OF ENVIRONMENTAL
PROTECTION

November 12, 2015

**CERTIFIED MAIL NO. 7013 3020 0000 7703 8935**

Cabot Oil and Gas Corporation
Attn: Mr. Phillip L. Stalnaker
2000 Park Lane, Suite 300
Pittsburgh, PA 15275

Re:　Settlement of Oil and Gas Violations
　　　Cabot Oil and Gas Corporation
　　　Stalter Area Gas Migration
　　　Lenox Township, Susquehanna County

Mr. Stalnaker:

Enclosed are three copies of a Consent Order and Agreement. If your company is willing to
resolve its civil penalty liability by signing the enclosed document, please have two authorized
officials sign all three copies of the Consent Order and Agreement and return them to me at the
letterhead address below by December 11, 2015. Also due at that time is your check, made
payable to the "Commonwealth of Pennsylvania," for Two Hundred Ninety Four Thousand Four
Hundred and Twenty One Dollars and Forty-Two Cents ($294,421.42), as outlined in Paragraph
7. of the Consent Order and Agreement. If your company's civil penalty liability has to be
resolved by a unilateral assessment issued by the Department of Environmental Protection
(Department), the penalty amount could be substantially higher.

The documents also provide for an attorney's signature on behalf of Cabot Oil and Gas
Corporation. If you choose to sign these documents without consulting legal counsel, please
cross out the attorney's signature block and pen in the word "waived". The entry of the date
upon which the Consent Order and Agreement is finalized, in the first paragraph of the
document, will be completed by the Department's attorney.

Thank you for your efforts in resolving this matter. If you have any questions, please feel free to
contact me by phone at (570) 327-3780 or by e-mail at aliguori@pa.gov.

Sincerely,

Anthony P. Liguori
Environmental Protection Compliance Specialist
Eastern District Oil and Gas Operations

Cabot Oil and Gas Corporation                    -2-                    November 12, 2015

Enclosure

cc:    Permit File 115-20517, 115-20496, and 115-20457

# COMMONWEALTH OF PENNSYLVANIA
# DEPARTMENT OF ENVIRONMENTAL PROTECTION

**IN THE MATTER OF:**

| | | |
|---|---|---|
| Cabot Oil & Gas Corporation | : | Violations of the 2012 Oil and Gas |
| Stalter Area Gas Migration | : | Act, the Clean Streams Law, and § 78 |
| Lenox Township | : | of the Department's Rules and Regulations |
| Susquehanna County | | |

## CONSENT ORDER AND AGREEMENT

This Consent Order and Agreement is entered into this _____ day of _____, 2015, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection (hereinafter "Department"), and Cabot Oil & Gas Corporation (hereinafter "Cabot"); collectively, the "Parties".

## Findings

The Department has found and determined the following:

A.　The Department is the agency with the duty and authority to administer and enforce the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, as amended, 58 Pa. C.S. §§ 3201-3274 (hereinafter "2012 Oil and Gas Act"); The Clean Streams Law, Act of June 22, 1937, P.L. 1987, as amended, 35 P.S. § 691.1 et seq. (hereinafter "Clean Streams Law"); Section 1917-A of the Administrative Code, Act of April 9, 1929, P.L. 177, as amended, 71 P.S. § 510-17 (hereinafter "Administrative Code"); and the rules and regulations promulgated thereunder ("Regulations").

B.　Cabot is a Delaware corporation authorized to do business in Pennsylvania and is engaged in various oil and gas exploration and production activities in Pennsylvania, including Lenox Township, Susquehanna County. Cabot maintains a business address of 2000 Park Lane, Suite 300, Pittsburgh, Pennsylvania 15275.

C.　Cabot is a "person" as that term is defined in Section 1 of the Clean Streams Law, 35 P.S. § 691.1, and "operator," "owner" and "person" as those terms are defined in Section 3203 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3203.

D.   Cabot owns and operates several natural gas wells in the vicinity of the gas migration area (hereafter "Affected Area").  These gas wells include the Stalter 1H, Stalter 2H, and Stalter 8V, (hereinafter "Gas Wells"),  authorized by Permit Numbers 115-20517, 115-20496, and 115-20457, respectively.  The Gas Wells are located in Lenox Township, Susquehanna County, Pennsylvania.

**Impacted Water Supplies**

E.   On August 16, 2011, the Department received a complaint of methane present in a private water supply serving a residence in Lenox Township, Susquehanna County, Pennsylvania.  The water  had a strong odor, the toilet that was bubbling, and the water that was flammable.

F.   In response to this complaint, Cabot conducted a survey of water supplies within 2,500 feet of the Gas Wells in accordance with the requirements of 25 Pa. Code § 78.89.

G.   As a result of  Cabot's survey, three other premises with water supplies located within 2,500 feet of the Gas Wells exhibited elevated concentrations of natural gas.

H.   Inspections of the Gas Wells on August 18, 2011, documented the presence of natural gas between the various casing strings of all of the Gas Wells.

I.   On September 19, 2011, the Department issued to Cabot a Notice of Violation ("NOV") for the following:

1)  Failure to prevent the migration of gas or other fluids into sources of fresh groundwater, in violation of Sections 78.81(a)(2) and (3) of the Department's Rules and Regulations, 25 Pa. Code §§ 78.81(a)(2) and (3);

2)  Failure to report defective, insufficient, or improperly cemented casing, in violation of Sections 78.86 of the Department's Rules and Regulations, 25 Pa. Code §78.86; and,

-2-

3) Causing or allowing the unpermitted discharge of pollutional substances to waters of the Commonwealth, in violation of Section 401 of the Clean Steams Law, 35 P.S. § 691.401.

J.    On July 2, 2012, Cabot reported to the Department that it had responded to an additional complaint from a resident in Lenox Township, Susquehanna County, Pennsylvania, indicating the water supply had become dark and turbid.

K.    Over the course of the gas migration investigation, between August 16, 2011, and September 6, 2012, the Department determined that five water supplies (hereafter "Water Supplies"), as identified in the list attached hereto as Exhibit A, were impacted by gas drilling activities.

L.    As of the date of this Order, Cabot has not restored or replaced the affected Water Supplies with an alternative, non-temporary source of water adequate in quantity and quality for the purposes served by the water supply as determined by the Department.

## Additional Investigations

M. On September 15, 2011, the Department reviewed a down hole video of the Stalter 8V Gas Well which documented improper construction of the 5 ½ inch casing string that Cabot had not reported to the Department.

N. Isotopic samples collected by the Department showed that gas in the residential Water Supplies listed in Exhibit A, were of a similar isotopic composition as gas found in the annuli of the Stalter 8V, Stalter 1H, and Stalter 2H Gas Wells, identified in Paragraph D., above.

O. Between January and July 2012, Cabot performed perforation and squeeze operations on the Stalter 8V Gas Well at various depths in the wellbore. In October 2012, Cabot milled out a section of the five and one half inch production casing in an area around the 4,700

-3-

foot depth point in the wellbore.  In December 2012, Cabot set and squeezed a cement plug in the approximate 3300 foot to 4,700 foot  depth point in the wellbore.

P. Between June 2012 and April 2014, Cabot performed perforation and squeeze operations on the Stalter 1H at various depths in the wellbore.  The Stalter 1H Gas Well was stimulated in April 2013 and put into production in April 2014.

## Gas Migration Violations

Q.      Section 78.81(a)(2) and (3) of the Department's Rules and Regulations, 25 Pa. Code § 78.81(a)(2) and (3), states: "The operator shall case and cement a well to accomplish the following:... (2) Prevent the migration of gas or other fluids into sources of fresh groundwater." and, "(3) Prevent pollution or diminution of fresh groundwater."

R.      Section 78.86 of the Department's Rules and Regulations, 25 Pa. Code § 78.86, states: "In a well that has defective, insufficient, or improperly cemented casing, the operator shall report the defect to the Department within 24 hours of discovery by the operator and shall correct the defect.  The operator shall correct the defect or submit a plan to correct the defect for approval by the Department within 30 days.  If the defect cannot be corrected or an alternate method is not approved by the Department, the well shall be plugged under §§ 78.91-78.98 (relating to plugging)."

S.      Section 401 of the Clean Streams Law, 35 P.S. § 691.401, states: "It shall be unlawful for any person ... to put or place into any of the waters of the Commonwealth, or allow or permit to be discharged from property owned or occupied by such person ... into any waters of the Commonwealth, any substance of any kind or character resulting in pollution as herein defined. ..."

T.      Section 78.51(a) of the Department's Rules and Regulations, 25 Pa. Code § 78.51(a), states: "A well operator who affects a public or private water supply by pollution or

diminution shall restore or replace the affected supply with an alternate source of water adequate in quantity and quality for the purposes served by the supply as determined by the Department."

U.      Additionally, Section 78.51(f) of the Department's Rules and Regulations, 25 Pa. Code § 78.-51(f), states: "Tank trucks or bottled water are acceptable only as temporary water replacement for a period approved by the Department and do not relieve the operator of the obligation to provide a restored or replaced water supply."

V.      Failure to properly case and cement a gas well to prevent the migration of gas or other fluids into sources of fresh groundwater and to prevent pollution or diminution of fresh groundwater, as described in Paragraphs E. through N., above, constitute violations of Sections 78.81(a)(2) and (3) of the Department's Rules and Regulations, 25 Pa. Code §§ 78.81(a)(2) and (3).

W.      Cabot's' failure to notify the Department within 24 hours of the improper construction of the 5 ½ inch casing string on the Stalter 8V Well, as described in Paragraph M., constitutes a violation of Sections 78.86 of the Department's Rules and Regulations, 25 Pa. Code § 78.86.

X.      The unpermitted discharge of natural gas, a pollutional substance, into groundwater, a water of the Commonwealth, as described in Paragraphs E. through K., above, constitutes a violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.

Y.      Failure to restore or replace the affected supplies with an alternate, non-temporary source of water adequate in quantity and quality for the purposes served by the water supply as determined by the Department constitutes a violation of Section 78.51(a) and (f) of the Department's Rules and Regulations, 25 Pa. Code §§ 78.51(a) and (f).

Z.      The violations described in Paragraphs V. through Y., above, constitute unlawful conduct under Section 611 of the Clean Streams Law, 35 P.S. § 691.611; and Section 3259 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3259; constitute a public nuisance under Section 401 of the Clean Streams Law, 35 P.S. § 691.401; and Section 3252 of the 2012 Oil and Gas Act, 58

Pa.C.S. § 3252; and subject Cabot to civil penalty liability under Section 605 of the Clean Streams Law, 35 P.S. § 691.605; and Section 3256 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3256.

## Order

After full and complete negotiation of all matters set forth in this Consent Order and Agreement, and upon mutual exchange of the covenants contained herein, the Parties, desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Cabot as follows:

1. **Authority.** This Consent Order and Agreement is an Order of the Department authorized and issued pursuant to Section 5 of the Clean Streams Law, 35 P.S. § 691.5; Section 3253 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3253; and Section 1917-A of the Administrative Code.

2. **Findings.**

   a. Cabot agrees that the Findings in Paragraphs A. through Z. are true and correct and, in any manner or proceeding involving Cabot and the Department, Cabot shall not challenge the accuracy of validity of these Findings.

   b. The parties do not authorize any other persons to use the findings in this Consent Order and Agreement in any matter or proceeding.

3. **Compliance with Environmental Laws and Regulations.** Cabot shall take all actions necessary, including the corrective actions set forth in this Consent Order and Agreement, to maintain compliance with all applicable environmental regulations, including all applicable provisions of the Clean Streams Law, 2012 Oil and Gas Act, and the Regulations.

4. **Corrective Actions.**

    a.  Gas Well Remedial Plan. Within thirty (30) days of the date of this Consent Order and Agreement, Cabot shall submit to the Department for review and approval, a written plan with detailed wellbore diagrams and a schedule for the remedial work necessary to stop the vertical flow of fluids or gas at the depth of its subsurface, geologic source within the annular spaces of the wellbores of the Gas Wells, and control and mitigate stray gas migration away from the Gas Wells. Included in this submission shall be a prioritization of the Gas Wells for remedial work; an implementation schedule including a timeframe for completion of plugging of the Stalter 8V Gas Well; and all related seismic data, available and in Cabot's possession, along with Cabot's and any third party interpretation of that data.

    b.  Within five (5) days of the Department's written approval of the Remedial Plan, including any modifications made by the Department, Cabot shall implement the Remedial Plan in accordance with the Department-approved implementation schedule contained therein.

    c.  Cabot's obligation to perform the remedial work required in Paragraph 4.a. and b., above, shall terminate only when the Department determines in writing that Cabot has effectively eliminated all unpermitted discharges of stray wellhead gas and gas migration from the Gas Wells.

    d.  Unless otherwise agreed to by the Department in writing, if Cabot fails to stop the migration of gas or other fluids into sources of fresh groundwater from the Gas Wells identified by the Department in Paragraph D, above, as required by 25 Pa. Code § 78.81(a)(2) and (3), Cabot shall commence plugging the remaining Gas Wells by January 1, 2017, in accordance with Section 3220 of the 2012 Oil and Gas Act, 58 -Pa.C.S. § 3220, and 25 Pa. Code §§ 78.91-78.98.

5.  **Restore or Replace the Water Supplies.**

    a.  Temporary Drinking Water Supply.  Within five (5) days of the date of this Consent Order and Agreement, Cabot shall start providing or continue to provide the users and/or landowner(s) of the Water Supplies with a temporary drinking water supply of adequate and reliable quantity and quality for the purposes served by the supply until the Department notifies Cabot, in writing, that the requirements of this Order have been satisfied.  Cabot shall notify the Department of any substantive changes to the way in which temporary water is being provided for the duration that this Consent Order and Agreement is in effect and until the Water Supplies are permanently restored.

    b.  Investigation of Gas Migration.

        i.   Within thirty (30) days of the date of this Consent Order and Agreement, Cabot shall submit to the Department for review and approval, a proposed schedule for continued sampling of the affected Water Supplies as identified in Exhibit A, in order to evaluate the effectiveness of any of the remedial measures proposed under 4.a. above.

        ii.  Within thirty (30) days of eliminating the unpermitted discharge of stray wellhead gas and gas migration from the Gas Wells, or in a time frame otherwise approved by the Department in writing, Cabot shall submit to the Department for review and approval, a "Gas Migration Final Report" which complies with 25 Pa. Code § 78.89(h).  The Gas Migration Final Report shall identify in detail:  1) Cabot's findings and conclusions from its gas migration investigation; and, 2) all corrective actions taken by Cabot at the Gas Wells, in accordance with all of the requirements under 25 Pa. Code § 78.89, and this Consent Order and Agreement.

-8-

c.  Restoration/Replacement Plan.  Within thirty (30) days of the date of this Consent Order and Agreement, Cabot shall submit to the Department, in writing, a plan to permanently restore or replace the Water Supplies identified in Exhibit A ("Restoration/Replacement Plan") that, at a minimum, shall identify the:

   i.  Proposed corrective actions (*e.g.* treatment, drill new water supply well, hook into public water supply, and/or other corrective actions) necessary to permanently restore or replace the Water Supplies in compliance with Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3218(a), and 25 Pa. Code § 78.51(d);

   ii.  Proposed schedule to implement the corrective actions so that the Water Supplies are restored or replaced within forty-five (45) days of receipt of the Department's written approval of the Restoration/ Replacement Plan or of the modified Restoration/Replacement Plan;

   iii.  The independent laboratory, certified by the Department, that Cabot will use to analyze samples from the restored or replaced Water Supplies;

   iv.  Agreements/contracts between Cabot and the owner(s) of the Water Supplies to provide for all plumbing, conveyance, pumping, or auxiliary facilities necessary for the use of the permanently restored or replaced Water Supplies;

   v.  Plan for permanent operation and maintenance of the Water Supplies or contracts/agreements between Cabot and the owner(s) of the Water Supplies documenting how Cabot will compensate the owner(s) on a permanent basis for any increased operating and maintenance costs for the replaced or restored Water Supplies; and,

vi. Plan for confirmatory samples of the restored and/or replaced Water Supplies after the date that Cabot asserts that it has permanently restored or replaced the Water Supplies, or after the date that Cabot asserts that the Water Supplies are no longer affected. Such samples will be used to determine whether the Water Supplies meet the standards set forth in Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3218(a), and 25 Pa. Code § 78.51(d). The confirmatory sampling plan should:  provide for split samples with the Department; ensure that sampling would only take place Monday through Thursday during Department working hours; and, specify that Cabot will notify the Department at least three (3) working days before any scheduled sampling of the Water Supplies.

6. **Submission of Documents.**

   a. With regard to any document that Cabot submits to the Department pursuant to Paragraphs 4 and 5 of this Consent Order and Agreement, such document may be approved as submitted, approved as modified by the Department, or disapproved by the Department, in writing.

   b. If the Department initially disapproves a document, or any portion thereof, Cabot shall, within fourteen (14) days of receiving the Department's written disapproval, submit to the Department a revised document, or portion thereof, which fully addresses the Department's reasons for disapproval. The Department will either approve the revised document or modify and approve the revised document.

   c. Upon the Department's approval of a document, or any portion thereof, such approved document, including any Department modifications, shall become an obligation of this Consent Order and Agreement and shall be enforceable as such.

7. **Civil Penalty Settlement.** Upon signing this Consent Order and Agreement, Cabot shall pay a civil penalty of Two Hundred Ninety Four Thousand Four Hundred and Twenty One Dollars and Forty-Two Cents ($294,421.42). This payment shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania" and sent to the Department at the address set forth in Paragraph 13., below.

8. **Stipulated Civil Penalties.**

   a. If Cabot fails to comply with the provisions of this Consent Order and Agreement, Cabot shall be in violation of this Consent Order and Agreement and, in addition to other applicable remedies, shall pay a civil penalty in the amount of One Thousand Dollars ($1,000) per day for each day, or any portion thereof, that Cabot fails to comply with its obligation.

   b. Stipulated penalties shall be due automatically without further notice on or before the 15th day of each succeeding month, shall be made by corporate check or the like made payable to "Commonwealth of Pennsylvania", and shall be sent to the Department at the address set forth in Paragraph 13, below.

   c. Any payment under this Paragraph shall neither waive Cabot's duty to meet its obligations under this Consent Order and Agreement nor preclude the Department from commencing an action to compel Cabot's compliance with the terms and conditions of this Consent Order and Agreement. The payment resolves only Cabot's liability for civil penalties arising from the violation of this Consent Order and Agreement for which the payment is made.

9. **Additional Remedies.**

    a. In the event that Cabot fails to comply with any provisions of this Consent order and Agreement, the Department may, in addition to the remedies prescribed herein, pursue any remedy available for a violation of an order of the Department, including an action to enforce this Consent Order and Agreement.

    b. The remedies provided by this Paragraph and Paragraph 8 (Stipulated Civil Penalties) are cumulative and the exercise of one does not preclude the exercise of any other. The failure of the Department to pursue any remedy shall not be deemed to be a waiver of that remedy. The payment of a stipulated civil penalty, however, shall preclude any further assessment of civil penalties for the violation for which the stipulated penalty is paid.

10. **Reservation of Rights.** The Department reserves the right to require additional measures to achieve compliance with applicable law. Cabot reserves the right to challenge any action which the Department may take to require those measures.

11. **Liability of Cabot.** Cabot shall be liable for any violations of the Consent Order and Agreement, including those caused by, contributed to, or allowed by its officers, directors, agents, employees, contractors, successors, and assigns.

12. **Transfer of Cabot Gas Wells and/or Leases.**

    a. Cabot's duties and obligations under this Consent Order and Agreement shall not be modified, diminished, terminated, or otherwise altered by the transfer of the Cabot Gas Wells, leases, and other wells owned and/or operated by Cabot within the Affected Area, and/or any parts thereof, except as hereinafter provided.

-12-

b. If before the termination of this Consent Order and Agreement, Cabot intends to transfer the Cabot Gas Wells, leases any other wells owned and/or operated within the Affected Area and/or any parts thereof, Cabot shall provide a copy of this Consent Order and Agreement to the prospective transferee at least 30 days prior to the contemplated transfer and shall simultaneously inform the Department of such intent in accordance with Paragraph 13 (Correspondence with Department), below.

c. The Department, in its sole discretion, may agree to modify or terminate Cabot's duties and obligations under this Consent Order and Agreement and may agree to a transfer upon determination that Cabot is in full compliance with this Consent Order and Agreement, including payment of any stipulated penalties owed, and upon the transferee entering into a Consent Order and Agreement with the Department concerning the Gas Wells and/or leases at issue. Cabot agrees to waive any right that it may have to challenge the Department's decision in this regard.

13. **Correspondence with the Department.** All correspondence with the Department concerning this Consent Order and Agreement shall be addressed to:

Jennifer W. Means

Environmental Program Manager

Eastern District Oil and Gas Operations

Department of Environmental Protection

208 W. Third Street, Suite 101

Williamsport, PA 17701

Telephone: (570) 321-6557

e-Mail: jenmeans@pa.gov

14. **Correspondence with Cabot.** All correspondence with Cabot concerning this Consent Order and Agreement shall be addressed to:

-13-

Phil Stalnaker

Cabot Oil and Gas Corporation

2000 Park Lane, Suite 300

Pittsburgh, Pennsylvania 15275

Telephone: (412) 249-3850

Fax: (303) 226-4064

Cabot shall notify the Department whenever there is a change in the contact person's name, title, or address. Service of any notice or legal process for any purpose under this Consent Order and Agreement, including its enforcement, may be made by mailing a copy by certified mail, return receipt requested, to the above address.

15. **Decisions Under Consent Order and Agreement.** Except as provided in Paragraph 12.c, above, any decision which the Department makes under the provisions of this Consent Order and Agreement, including a notice that stipulated civil penalties are due, is intended to be neither a final action under 25 Pa. Code § 1021.2, nor an adjudication under 2 Pa.C.S.A. § 101. Any objection, which Cabot may have to the decision, will be preserved until the Department enforces this Consent Order and Agreement.

16. **Severability.** The Paragraphs of this Consent Order and Agreement shall be severable and should any part thereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the Parties.

17. **Entire Agreement.** This Consent Order and Agreement shall constitute the entire integrated agreement of the Parties as to the subject matter hereof. No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of deterring the meaning or intent of any provisions herein in any litigation or any other proceeding.

-14-

18. **Attorney Fees.**  The Parties shall bear their respective attorney fees, expenses, and other costs in the prosecution or defense of this matter or any related matters, arising prior to execution of this Consent Order and Agreement.

19. **Modifications.**  No change, additions, modifications, or amendments of this Consent Order and Agreement shall be effective unless they are set out in writing and signed by the Parties.

20. **Titles.**  A title used at the beginning of any Paragraph of this Consent Order and Agreement may be used to aid in the construction of that Paragraph, but shall not be treated as controlling.

21. **Termination of Consent Order and Agreement.**  Cabot's obligations, but not the Findings, of this Consent Order and Agreement shall terminate when the Department determines that Cabot has completed all of the requirements of this Consent Order and Agreement and paid the civil penalty due under Paragraph 7 above and any outstanding stipulated penalties due under Paragraph 8, above.

IN WITNESS WHEREOF, the Parties have caused this Consent Order and Agreement to be executed by their duly authorized representatives.  The undersigned representatives of Cabot certify under penalty of law, as provided by 18 Pa C.S.A. § 4904, that they are authorized to execute this Consent Order and Agreement on behalf of Cabot, that Cabot consents to the entry of this Consent Order and Agreement as a final ORDER of the Department; and that Cabot hereby knowingly waives its right to appeal this Consent Order and Agreement and to challenge its content or validity, which rights may be available under Section 4 of the Environmental Hearing Board Act, the Act of July 13, 1988, P.L. 530, No. 1988-94, 35 P.S. § 7514; the Administrative Agency Law, 2 Pa. C.S.A. § 103(a) and Chapters 5A and 7A; or any other provision of law.  Signature by Cabot's attorney certifies only that the Consent Order and Agreement has been signed after consulting with counsel.

FOR CABOT OIL& GAS CORPORATION:

FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:

_____
Signature                              (Date)

_____
Jennifer W. Means                   (Date)
Environmental Program Manager
East Region Oil and Gas Management

_____
Name (Typed or Printed)

_____
Title for Cabot Oil & Gas Corporation

_____
Signature                              (Date)

_____
Anne C. Shapiro                     (Date)
Assistant Counsel
Northcentral Region

_____
Name (Typed or Printed)

_____
Attorney for Cabot Oil & Gas Corporation

-16-

CONFIDENTIAL

Exhibit A

