# Exhibit 5

# COMMONWEALTH OF PENNSYLVANIA
# DEPARTMENT OF ENVIRONMENTAL PROTECTION

**IN THE MATTER OF:**

| | | |
|---|---|---|
| Cabot Oil & Gas Corporation | : | Violations of the 2012 Oil and Gas |
| Howell Well Pad Gas Migration | : | Act, the Clean Streams Law and § 78a |
| Auburn Township, Susquehanna | : | of the Department's Regulations |
| County | | |

## CONSENT ORDER AND AGREEMENT

This Consent Order and Agreement (hereinafter "CO&A") is entered into this _____ day of _____, 2019, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection (hereinafter "Department"), and Cabot Oil & Gas Corporation (hereinafter "Cabot").

The Department has found and determined the following:

A.      The Department is the agency with the duty and authority to administer and enforce the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*, 58 Pa.C.S. §§ 3201-3274 (hereinafter "2012 Oil and Gas Act"); the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001 ("Clean Streams Law"); Section 1917-A of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 510-17 (hereinafter "Administrative Code"); and the rules and regulations promulgated thereunder ("Regulations").

B.      Cabot is a Delaware Corporation, which engages in oil and gas exploration and production activities in Pennsylvania and maintains a business address of 2000 Park Lane, Suite 300, Pittsburgh, Pennsylvania 15275-1121.

C.      Cabot constitutes a "person" as that term is defined by Section 3203 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3203, and Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

D.      Cabot is the "owner" and "operator," as those terms are defined in Section 3203 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3203, of the Howell, G. 2H, 4H, 6H, and 8H gas wells, authorized by permit numbers 115-22172, 115-22173, 115-22174, and 115-22175 respectively (hereinafter "Gas Wells"), located on the Howell, G. Well Pad (hereinafter "Well Pad") in Auburn Township, Susquehanna County, Pennsylvania.

E.      Cabot spud the Gas Wells on October 9, 2016 and completed drilling the Gas Wells to total permitted depth in December 2016.  The Gas Wells were stimulated between March 4, 2017 and March 31, 2017.

F.      On March 2, 2017, Cabot notified the Department of a complaint regarding the conditions of a water supply in Auburn Township, Susquehanna County, identified as "Water

Supply #1" on the list attached hereto identified as Exhibit A – "Water Supplies."  Specifically, the complaint was regarding effervescence in Water Supply #1.  Both Cabot and the Department initiated a water supply complaint investigation.

G.	On March 7, 2017, the Department issued to Cabot a Notice of Legal Presumption for the presumed pollution and degradation of Water Supply #1 by Cabot's oil and gas activities.  The Department requested that Cabot provide temporary water to the owner(s) of Water Supply #1 within 24 hours and submit either a plan to restore or replace Water Supply #1 or a rebuttal to the presumption of responsibility for pollution of Water Supply #1 within 30 calendar days.

H.	On March 8, 2017, Cabot notified the Department that during an evaluation of water supplies within 2500' of the Well Pad as part of the water supply complaint and gas migration investigations for Water Supply #1, Cabot identified a second water supply with elevated methane concentrations detected in the headspace of the water well compared to predrill conditions.  Both Cabot and the Department initiated a water supply complaint investigation for the water supply, identified as "Water Supply #2" in Exhibit A.

I.	On March 16, 2017 the Department inspected the Gas Wells as part of its water supply complaint and gas migration investigations due to the proximity of the Well Pad to the Water Supplies.  The Department found that combustible gas was present in the $13\frac{3}{8}$" x $9\frac{5}{8}$" cemented annular spaces of all the Gas Wells and in the $9\frac{5}{8}$" x $5\frac{1}{2}$" cemented annular spaces of the Howell, G. 2H, 4H and 8H gas wells.  The Department also found that combustible gas was present outside of the surface casing (in the 20" x $13\frac{3}{8}$" cemented annular space) in the Howell, G. 6H gas well, in violation of 25 Pa. Code § 78a.85(a)(5).

J.	On April 3, 2017, the Department sent the owner(s) of Water Supply #1 a 58 Pa. C.S. § 3218 Determination Letter, which found that the Department's investigation indicated that gas well drilling activities were presumed to be the cause of the pollution Water Supply #1.  Specifically, the Department's investigation found an increase in the concentrations of methane, ethane and propane in Water Supply #1 in comparison to predrill conditions.

K.	On April 7, 2017, Cabot submitted to the Department a response to the March 7, 2017 Notice of Legal Presumption that included the following:

1) Cabot was providing bottled water to the owner(s) of Water Supply #1 (bulk water supply was declined).
2) Although methane was the primary constituent of concern in Water Supply #1, intermittent episodes of turbidity that correlate with elevated levels of aluminum, iron, and manganese were observed in subsequent samples from Water Supply #1.
3) Cabot was actively engaged in discussions/negotiations with the owner(s) of Water Supply #1 regarding treatment system installation; components and logistics; and also, a settlement agreement to provide for increased costs associated with the permanent operation and maintenance of the water treatment system.
4) Cabot's proposed conceptual treatment system to permanently restore Water Supply #1.
5) Cabot's proposed plan for confirmatory sampling of the restored water supply after treatment system installation.

L. On June 6, 2017, the Department collected water and gas samples from Water Supply #2 which showed that, in addition to the continued presence of free methane gas, dissolved methane gas was now present at elevated levels when compared to predrill conditions.

M. On June 9, 2017, Cabot notified the Department that during a second evaluation of water supplies near the Well Pad as part of the water supply complaint and gas migration investigations for the Water Supplies, Cabot identified a third water supply with methane detected in the headspace (hereinafter "Additional Water Supply"). Neither Cabot's predrill screenings nor the previous evaluation of water supplies near the Well Pad in March 2017 (in response to the complaint for Water Supply #1) had found free methane gas in the headspace of the Additional Water Supply. Both Cabot and the Department initiated a water supply complaint investigation of the Additional Water Supply.

N. On June 14, 2017, the Department issued to Cabot a Notice of Legal Presumption for the presumed pollution and degradation of Water Supply #2 and the Additional Water Supply by Cabot's oil and gas activities. The Department requested that Cabot provide temporary water to the owner(s) of Water Supply #2 and the Additional Water Supply within 24 hours and submit either a plan to restore or replace Water Supply #2 and the Additional Water Supply, or a rebuttal to the presumption of responsibility for pollution of Water Supply #2 and the Additional Water Supply within 30 calendar days.

O. On June 20, 2017, the Department issued to Cabot a Notice of Violation ("NOV") for the following:

1) Causing or allowing the unpermitted discharge of combustible gas from the lower formations to waters of the Commonwealth, in violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.
2) Failure to case and cement a gas well to prevent the migration of gas or other fluids into sources of fresh groundwater and prevent pollution or diminution of fresh groundwater, in violation of Sections 78a.81(a)(2) and (3) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(2) and (3).
3) Failure to prevent gas and any other fluids or materials from below the casing seat from entering fresh groundwater and otherwise prevent pollution or diminution of fresh groundwater, in violation of Section 78a.73(b) of the Department Rules and Regulations, 25 Pa. Code § 78a.73(b).
4) Failure to cement the surface casing of the Howell, G. 6H gas well to prevent gas flow in the annulus, as observed during the Department's March 16, 2017 inspection, in violation of Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5).

The NOV requested the following from Cabot: continue any necessary diagnostic and remedial efforts already underway to identify and eliminate any suspected sources of stray gas from the Gas Wells; continue implementation of the restoration/replacement plan for Water Supply #1; and submit a restoration/replacement plan for Water Supply #2. The Department deferred its request for temporary water and a restoration/replacement plan for the Additional Water Supply pending further investigation.

-3-

P.        On July 14, 2017 Cabot submitted to the Department a response to the June 14, 2017 Notice of Legal Presumption that included the following:

1) Cabot was providing bottled water to the owner(s) of Water Supply #2 (bulk water supply had been declined).
2) Methane was the primary constituent of concern in Water Supply #2, and no other parameters were observed above their respective primary or secondary maximum contaminant levels in any samples collected to date.
3) Cabot's plan to engage in discussions/negotiations with the owner(s) of Water Supply #2 regarding treatment system installation, components and logistics and also a settlement agreement to provide for increased costs associated with the permanent operation and maintenance of the water treatment system.
4) Cabot's proposed conceptual treatment system to permanently restore Water Supply #2.
5) Cabot's proposed plan for confirmatory sampling of the restored water supply after treatment system installation.

Q.        On July 31, 2017, Cabot submitted a response as requested in the Department's June 20, 2017 NOV that included the following:

1) A summary of Cabot's ongoing 25 Pa. Code § 78a.89 Gas Migration Investigation of the Water Supplies, including providing temporary bottled water to the owners of the Water Supplies, installing a treatment system on Water Supply #1, and negotiating permanent restoration (treatment) of Water Supply #2 with the landowner.
2) A summary of Cabot's response to the Additional Water Supply. Although Cabot voluntarily placed a vent on the Additional Water Supply, with the concurrence of the Department, Cabot did not provide temporary water and did not submit a water supply restoration/replacement plan for the Additional Water Supply pending further investigation.
3) A detailed summary of the mechanical integrity assessments and corrective actions on the Gas Wells, including running cement bond logs, collecting isotopic samples, performing remedial cement perforation and squeeze jobs, and utilizing pulse testing to evaluate remedial activities.
4) A plan for further remedial actions for the Gas Wells based on the success of Cabot's ongoing remedial/corrective actions and in consultation with the Department.

R.        On September 29, 2017, the Department sent the owner(s) of Water Supply #2 a 58 Pa. C.S. § 3218 Determination Letter, which found that the Department's investigation indicated that gas well drilling activities were presumed to have been the cause of the pollution of Water Supply #2.  Specifically, the Department's investigation found an increase in the concentrations of dissolved methane and ethane in Water Supply #2 in comparison to predrill conditions.

S.  Cabot concluded remedial actions on the Gas Wells in November 2017.  Evaluation of pressure in the annuli of the Gas Wells since the remedial work indicated that the work was effective in eliminating the flow of gas in the cemented annuli.

T.   On April 25, 2019, the Department inspected the Gas Wells and documented that combustible gas was not detected in the 20"x13⅜" annulus of the Howell, G 6H and that combustible gas had been reduced or eliminated from the 13⅜"x9⅝" cemented annular spaces of all the Gas Wells.

**Violations.**

U.      Section 78a.73(b) of the Department's Rules and Regulations, 25 Pa. Code § 78a.73(b), states that "[t]he operator shall prevent gas, oil, brine, completion and servicing fluids, and any other fluids or materials from below the casing seat from entering fresh groundwater, and shall otherwise prevent pollution or diminution of fresh groundwater."

V.      Cabot's failure to prevent gas from below the casing seat from entering fresh groundwater, as described in Paragraphs F., H., I., J., M., and R. above, constitutes a violation of Section 78a.73(b) of the Department's Rules and Regulations, 25 Pa. Code § 78a.73(b).

W.      Section 78a.81(a)(2) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(2), states, in relevant part, "[t]he operator shall case and cement a well to accomplish the following: … [p]revent the migration of gas or other fluids into sources of fresh groundwater."

X.      Section 78a.81(a)(3) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(3), states, in relevant part, "[t]he operator shall case and cement a well to accomplish the following: … [p]revent pollution or diminution of fresh groundwater."

Y.      Cabot's failure to properly case and cement its gas wells to prevent the migration of gas or other fluids into sources of fresh groundwater, and Cabot's failure to prevent the pollution or diminution of fresh groundwater, as described in Paragraphs F., H., I., J., M., and R. above, constitute violations of Sections 78a.81(a)(2) and (a)(3) of the Department's Rules and Regulations, 25 Pa. Code §§ 78a.81(a)(2) and (3).

Z.      Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5), states in relevant part, "[w]hen cementing surface casing or coal protective casing, the operator shall use cement that meets or exceeds the ASTM International C 150, Type I, II or III Standard or API Specification 10. The cement must also… (5) Prevent gas flow in the annulus…"

AA.     Cabot's failure to cement the surface casing in the Howell, G. 6H gas well to prevent gas flow in the annulus, as described in Paragraph I. above, constitutes a violation of Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5).

BB.     Section 401 of the Clean Streams Law, 35 P.S. § 691.401, states in relevant part, "[i]t shall be unlawful for any person or municipality to put or place into any of the waters of the Commonwealth… any substance of any kind or character resulting in pollution as herein defined …."

CC.     Cabot's failure to prevent gas or other fluids generated from the operation of the Gas Wells from polluting groundwater, a water of the Commonwealth, as described in Paragraphs F., H., I., J., M., and R. above, constitutes a violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.

DD.    The violations described in Paragraphs U. through CC. above, constitute unlawful conduct under Section 3259 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3259, and Section 611 of the Clean Streams Law, 35 P.S. § 691.611; and subject Cabot to civil penalty liability under Section 3256 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3256, and Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

### ORDER

After full and complete negotiation of all matters set forth in this CO&A, and upon mutual exchange of the covenants contained herein, the parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Cabot as follows:

1.    **Authority**.  This CO&A is an Order of the Department authorized and issued pursuant to Section 3253 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3253; Section 610 of the Clean Streams Law, 35 P.S. § 691.610; and Section 1917-A of the Administrative Code, 71 P.S. § 510-17.

2.    **Findings**.

    a)    Cabot agrees that the findings in Paragraphs A. through DD. above are true and correct and, in any matter or proceeding involving Cabot and the Department, Cabot shall not challenge the accuracy or validity of these findings.

    b)    The parties do not authorize any other persons to use the findings in this CO&A in any matter or proceeding.

3.    **Corrective Actions.**

    a)    Unless the Department determines in writing that the concentration of methane in the Water Supplies is at background levels for the aquifer that supplies the Water Supplies, Cabot shall conduct wellhead screening and water sampling of the Water Supplies for each quarter until the results of the screenings and sampling done by the Department and by Cabot show that, for eight (8) consecutive quarters, seventy-five percent (75%) of the water samples within each monitoring period over time contain seven (7) milligrams per liter or less of dissolved methane (or meets the standard then prescribed by applicable regulations), and no individual water sample exceeds two times this standard.  After four (4) consecutive quarters of attainment sampling that meet the above standard, Cabot may request in writing that the Department reconsider whether continued sampling is required.

4.    **Investigation of Gas Migration.**

    a)    Cabot shall continue sampling of the affected Water Supplies, as identified in Exhibit A, in accordance with Paragraph 3.a), above, to evaluate the effectiveness of the remedial measures conducted on the Gas Wells.

b) Within ninety (90) days of the completion of the monitoring required by Paragraph 3.a), above, or by a certain date otherwise approved by the Department in writing, Cabot shall submit to the Department for review and approval, a "Gas Migration Final Report" which complies with the Department's Rules and Regulations at 25 Pa. Code § 78a.89(h).  The Gas Migration Final Report shall identify in detail:  1) all of Cabot's findings and conclusions from its gas migration investigation; and 2) all corrective actions taken by Cabot at the Gas Wells, in accordance with all of the requirements under the Department's Rules and Regulations at 25 Pa. Code § 78a.89, and this Consent Order and Agreement.

5. **Restoration or Replacement of Water Supplies.**

a) <u>Water Supply Restoration/Replacement Final Report</u>.  Within ninety (90) days of the date of this CO&A, Cabot shall submit to the Department for review and approval, a final report of the actions taken to permanently restore or replace the Water Supplies ("Water Supply Restoration/Replacement Final Report").   At a minimum, the Water Supply Restoration/Replacement Final Report shall identify:

i. All corrective actions (*e.g.,* treatment, drill new water supply well, connection to public water supply, etc.) taken to permanently restore or replace the Water Supplies in compliance with Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3218(a), and the Department's Rules and Regulations at 25 Pa. Code § 78a.51(d);

ii. The independent laboratory, certified by the Department, that Cabot will use to analyze samples from the restored or replaced Water Supplies;

iii. All agreements, contracts, or other formal binding commitments between Cabot and the owner(s) of the Water Supplies to provide for all plumbing, conveyance, pumping, or auxiliary facilities necessary for the use of the permanently restored or replaced Water Supplies;

iv. A plan for the permanent operation and maintenance of each of the Water Supplies, or the agreements, contracts, or other formal binding commitments between Cabot and the owner(s) of the Water Supplies documenting how Cabot will compensate the owner(s) on a permanent basis for any increased operating and maintenance costs for the replaced or restored Water Supplies.  If a determination is made by the Department, pursuant to Paragraph 3.a) that the quality of a Water Supply has returned to background levels, Cabot's obligation under this term shall be concluded.

v. A plan for confirmatory samples of each of the restored and/or replaced Water Supplies after the date that Cabot asserts that it

has permanently restored or replaced the Water Supplies, or after the date that Cabot asserts that the Water Supplies are no longer affected.  Such samples will be used to determine whether the Water Supplies meet the standards set forth in Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3218(a), and the Department's Rules and Regulations at 25 Pa. Code § 78a.51(d).  The confirmatory sampling plan should:  provide for split samples with the Department; ensure that sampling would only take place Monday through Thursday during Department working hours; and specify that Cabot will notify the Department at least three (3) working days before any scheduled sampling of the Water Supplies.

b) No settlement, agreement, or other understanding between Cabot and any owner of one or more of the Water Supplies  shall prohibit, hinder, obstruct, delay, impede, impair, or prevent the Department or its duly authorized agents, acting in the course of lawful performance and duty, from entering upon lands, buildings, facilities, premises, or operations in order to make inspections, conduct tests or sampling, examine records, or otherwise carrying out investigations as may be necessary, relating to gas migration or causes thereto.

**6.   Civil Penalty Settlement**.  Cabot consents to the assessment of a civil penalty of Two Hundred Fifteen Thousand Dollars ($215,000.00), which shall be paid in full upon signing this CO&A.  This payment is in settlement of the Department's claim for civil penalties for the violations set forth in Paragraphs U. through DD. above, for the dates set forth in Paragraphs E. through R., above.  The payment shall be made by corporate check or the like, made payable to the "Commonwealth of Pennsylvania", and forwarded to Eastern District Oil and Gas Operations, Pennsylvania Department of Environmental Protection, 208 West Third Street, Suite 101, Williamsport, Pennsylvania 17701-6448.  Additionally, the payment shall be made in conjunction with the return of this CO&A by Cabot to the Department as described in Paragraph 12., below.

7.  **Stipulated Civil Penalties**.

a)      In the event Cabot fails to comply in a timely manner with any provision of this CO&A, Cabot shall be in violation of this CO&A and, in addition to other applicable remedies, shall pay a stipulated civil penalty in the amount of One Thousand Dollars ($1,000.00) per day for each day, or any portion thereof, that Cabot fails to comply with its obligations or to meet the deadlines established herein.

b)      Stipulated civil penalty payments shall be payable on or before the fifteenth (15th) day of each succeeding month and shall be forwarded as described in Paragraphs 6. and 12.

c)      Any payment under this paragraph shall neither waive Cabot's duty to meet its obligations under this CO&A nor preclude the Department from commencing an action to compel Cabot's compliance with the terms and

-8-

conditions of this CO&A.  The payment resolves only Cabot's liability for civil penalties arising from the violations of this CO&A for which the payment is made.

d)    Stipulated penalties shall be due automatically and without notice.

8. **Additional Remedies**.

a)    In the event Cabot fails to comply with any provision of this CO&A, the Department may, in addition to the remedies prescribed herein, pursue any remedy available for a violation of an order of the Department, including an action to enforce this CO&A.

b)    The remedies provided by this Paragraph and Paragraph 7. (Stipulated Civil Penalties) are cumulative and the exercise of one does not preclude the exercise of any other.  The failure of the Department to pursue any remedy shall not be deemed to be a waiver of that remedy.  The payment of a stipulated civil penalty, however, shall preclude any further assessment of civil penalties for the violation for which the stipulated civil penalty is paid.

9.  **Reservation of Rights**.  The Department reserves the right to require additional measures to achieve compliance with applicable law.  Cabot reserves the right to challenge any action which the Department may take to require those measures.

10. **Liability of Operator**.  Cabot shall be liable for any violations of the CO&A, including those caused by, contributed to, or allowed by its officers, agents, employees, or contractors.  Cabot also shall be liable for any violation of this CO&A caused by, contributed to, or allowed by its successors and assigns.

11. **Transfer of Gas Wells**.

a)    The duties and obligations under this CO&A shall not be modified, diminished, terminated or otherwise altered by the transfer of any legal or equitable interest in the Gas Wells or any part thereof.

b)    If Cabot intends to transfer any legal or equitable interest in the Gas Wells which is affected by this CO&A, Cabot shall serve a copy of this CO&A upon the prospective transferee of the legal and equitable interest at least thirty (30) days prior to the contemplated transfer and shall simultaneously inform the Eastern Oil and Gas District of the Department of such intent.

c)    The Department in its sole discretion may agree to modify or terminate Cabot's duties and obligations under this CO&A upon transfer of the Gas Wells.  Cabot waives any right that it may have to challenge the Department's decision in this regard.

12. **Correspondence with Department**.  All correspondence with the Department concerning this CO&A shall be addressed to:

Jennifer W. Means

-9-

Environmental Program Manager
Eastern District Oil and Gas Operations
Department of Environmental Protection
208 West Third Street, Suite 101
Williamsport, PA 17701-6448
Phone: (570) 321-6557
e-Mail: jenmeans@pa.gov

13. **Correspondence with Cabot**.  All correspondence with Cabot concerning this CO&A shall be addressed to:

Phil Stalnaker
Senior Vice President, North Region
Cabot Oil & Gas Corporation
2000 Park Lane, Suite 300
Pittsburgh, PA 15275-1121
Phone: (412) 395-3305

Cabot shall notify the Department whenever there is a change in the contact person's name, title, or address.  Service of any notice or any legal process for any purpose under this CO&A, including its enforcement, may be made by mailing a copy by first class mail to the above address.

14. **Severability**.  The paragraphs of this CO&A shall be severable and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the parties.

15. **Entire Agreement**.  This CO&A shall constitute the entire integrated agreement of the parties.  No prior or contemporaneous communications or prior drafts shall be relevant or admissible for purposes of determining the meaning or intent of any provisions herein in any litigation or any other proceeding.

16. **Attorney's Fees**.  The parties shall bear their respective attorney fees, expenses and other costs in the prosecution or defense of this matter or any related matters, arising prior to execution of this CO&A.

17. **Modifications**.  No changes, additions, modifications, or amendments of this CO&A shall be effective unless they are set out in writing and signed by the parties hereto.

18. **Titles**.  A title used at the beginning of any paragraph of this CO&A may be used to aid in the construction of that paragraph but shall not be treated as controlling.

19. **Decisions under Consent Order**.  Any decision which the Department makes under the provisions of this CO&A, including a notice that stipulated civil penalties are due, is intended to be neither a final action under 25 Pa. Code § 1021.2, nor an adjudication under 2 Pa. C.S.A. § 101.  Any objection which Cabot may have to the decision will be preserved until the Department enforces this CO&A.

20. **Termination.**  The obligations of this CO&A shall terminate when the Department determines that Cabot has complied with the requirements of Paragraphs 3. through 5.

21. **Execution of Agreement**.  This CO&A may be signed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

Remainder of Page Intentionally Left Blank.<br>Signature Page to Follow.

IN WITNESS WHEREOF, the parties hereto have caused this CO&A to be executed by their duly authorized representatives.  The undersigned representatives of Cabot certify under penalty of law, as provided by 18 Pa. C.S.A. § 4904, that they are authorized to execute this CO&A on behalf of Cabot; that Cabot consents to the entry of this CO&A as a final ORDER  of the Department; and that Cabot hereby knowingly waives its rights to a hearing under the statutes referenced in this CO&A; and that Cabot knowingly waives its right to appeal this CO&A and to challenge its content or validity, which rights may be available under Section 4 of the Environmental Hearing Board Act, the Act of July 13, 1988, P.L. 530,  35 P.S. § 7514; the Administrative Agency Law, 2 Pa. C.S.A. § 103(a) and Chapters 5A and 7A; or any other provisions of law.  Signature by Cabot's attorney certifies only that the agreement has been signed after consulting with counsel.

FOR CABOT OIL & GAS CORPORATION:

FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:

_____
Signature                                    (Date)

_____
Jennifer W. Means                    (Date)
Environmental Program Manager
Eastern Oil and Gas District

_____
Name (Typed or Printed)

_____
Title for Cabot Oil & Gas Corporation

_____
Signature                                    (Date)

_____
Geoffrey J. Ayers                       (Date)
Regional Counsel
Northcentral Region

_____
Name (Typed or Printed)

_____
Title for Cabot Oil & Gas Corporation

_____
Signature                                    (Date)

_____
Name (Typed or Printed): Attorney for
Cabot Oil & Gas Corporation

# EXHIBIT A

## CONTAINS CONFIDENTIAL COMPLAINANT INFORMATION

**Water Supplies**

1.

2.