# Exhibit 8

# COMMONWEALTH OF PENNSYLVANIA
# DEPARTMENT OF ENVIRONMENTAL PROTECTION

**IN THE MATTER OF:**

| | | |
|---|---|---|
| Cabot Oil & Gas Corporation | : | Violations of the 2012 Oil and Gas |
| Jeffers Farms Pad 2 Gas Migration | : | Act, the Clean Streams Law and § 78a |
| Harford Township, Susquehanna | : | of the Department's Regulations |
| County | | |

## <u>CONSENT ORDER AND AGREEMENT</u>

This Consent Order and Agreement (hereinafter "CO&A") is entered into this _____ day of _____, 2019, by and between the Commonwealth of Pennsylvania, Department of Environmental Protection (hereinafter "Department"), and Cabot Oil & Gas Corporation (hereinafter "Cabot").

The Department has found and determined the following:

A.     The Department is the agency with the duty and authority to administer and enforce the Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended*, 58 Pa.C.S. §§ 3201-3274 (hereinafter "2012 Oil and Gas Act"); the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001 ("Clean Streams Law"); Section 1917-A of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 510-17 (hereinafter "Administrative Code"); and the rules and regulations promulgated thereunder ("Regulations").

B.     Cabot is a Delaware Corporation, which engages in oil and gas exploration and production activities in Pennsylvania and maintains a business address of 2000 Park Lane, Suite 300, Pittsburgh, Pennsylvania 15275-1121.

C.     Cabot constitutes a "person" as that term is defined by Section 3203 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3203, and Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

D.     Cabot is the "owner" and "operator," as those terms are defined in Section 3203 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3203, of the Jeffers Farms Pad 2 7H, 8H, 9H, 10H, 11H, 12H, 13H, 14H, 15H, 16H, 17H, and 18H gas wells, authorized by permit numbers 115-22250, 115-22251, 115-22252, 115-22253, 115-22254, 115-22255, 115-22256, 115-22257, 115-22258, 115-22259, 115-22260 and 115-22261 respectively, located in Harford Township, Susquehanna County, Pennsylvania, (hereinafter "Gas Wells").

E.     Cabot spud the Gas Wells on February 20, 2017.

**Affected Water Supplies.**

F.      On June 30, 2017, Cabot notified the Department of the receipt of a complaint on June 29, 2017 regarding the conditions of a water supply in Harford Township, Susquehanna County, identified as "Water Supply #1" on the list attached hereto identified as Exhibit A – "Water Supplies."  Specifically, the complaint was regarding discoloration of and odor from Water Supply #1.  Both Cabot and the Department initiated a water supply complaint investigation.

G.      On October 16, 2017, the Department sent the owner(s) of Water Supply #1 a 58 Pa. C.S. § 3218 Determination Letter, which found that the Department's investigation indicated that gas well drilling activities impacted Water Supply #1.  Specifically, the Department's investigation found an increase in the concentrations of methane, turbidity and iron in Water Supply #1 from predrill conditions.

H.      On November 16, 2017, the Department issued to Cabot a Notice of Violation ("NOV") for the following:

1) Causing or allowing the unpermitted discharge of combustible gas from the lower formations to waters of the Commonwealth (Water Supply #1), in violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.
2) Failure to case and cement a gas well to prevent the migration of gas or other fluids into sources of fresh groundwater and prevent pollution or diminution of fresh groundwater (Water Supply #1), in violation of Sections 78a.81(a)(2) and (3) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(2) and (3).
3) Failure to prevent gas and any other fluids or materials from below the casing seat from entering fresh groundwater and otherwise prevent pollution or diminution of fresh groundwater (Water Supply #1), in violation of Section 78a.73(b) of the Department Rules and Regulations, 25 Pa. Code § 78a.73(b).
4) Failure to cement the surface casing of the Jeffers Farms Pad 2 9H gas well to prevent gas flow in the annulus, as observed during an inspection by the Department on August 17, 2017, in violation of Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5).

The NOV requested that Cabot submit to the Department a corrective action plan to continue any necessary diagnostic and remedial efforts to identify and eliminate any suspected sources of stray gas from the Gas Wells and submit a Restoration or Replacement Plan for Water Supply #1.

I.      On November 16, 2017, Cabot notified the Department that during an evaluation of water supplies near the Jeffers Farms Pad 2 as part of the water supply complaint and gas migration investigations for Water Supply #1, Cabot identified a second water supply with elevated methane concentrations compared to predrill conditions.  Both Cabot and the Department initiated a water supply complaint investigation for the water supply, identified as "Water Supply #2" in Exhibit A.

-2-

J.        On December 1, 2017, the Department issued to Cabot a Notice of Legal Presumption for the presumed pollution and degradation of Water Supply #2 by Cabot's oil and gas activities.  The Department requested that Cabot provide temporary water to the owner(s) of Water Supply #2 within 24 hours and submit either a plan to restore or replace Water Supply #2 or a rebuttal to the presumption of responsibility for pollution of Water Supply #2 within 30 calendar days.

K.        On December 20, 2017, Cabot submitted a response as requested in the Department's November 16, 2017 NOV that included the following:

1) A summary of Cabot's ongoing 25 Pa. Code § 78a.89 Gas Migration Investigation of the Water Supplies, including providing temporary water, installing a treatment system on Water Supply #1, and implementing a sampling and monitoring plan for both Water Supplies.
2) A detailed summary of the mechanical integrity assessments and corrective actions on the Gas Wells, including running cement bond logs and acoustic logs in the wellbores, collecting isotopic samples, performing remedial cement perforation and squeeze jobs, and utilizing pulse testing to evaluate remedial activities.
3) A plan for further remedial actions for the Gas Wells based on the success of Cabot's ongoing remedial/corrective actions and in consultation with the Department.

L.   On January 3, 2018, Cabot submitted to the Department a response to the December 1, 2017 Notice of Legal Presumption that included the following:

1) Cabot was providing bottled water to the owner(s) of Water Supply #2 (bulk water supply was declined).
2) Only one sample collected from Water Supply #2 on December 4, 2017 exceeded the Department's 7 mg/L action level for methane.
3) Although elevated free gas was not observed in Water Supply #2, Cabot installed a vent on Water Supply #2 as a precautionary measure.
4) Cabot's proposed plan of action to collect weekly dissolved gas samples from Water Supply #2 through February 2018, followed by monthly dissolved gas samples until Cabot and the Department concur that sampling can cease.
5) Because the analytical results for Water Supply #2 had been comparable with pre-existing conditions, Cabot did not propose a treatment option for Water Supply #2 but would re-evaluate if conditions changed in the water supply.

M.        On June 1, 2018, the Department sent the owner(s) of Water Supply #2 a 58 Pa. C.S. § 3218 Determination Letter, which found that the Department's investigation indicated that gas well drilling activities were presumed to be the cause of the pollution of Water Supply #2. Specifically, the Department's investigation found an increase in the concentrations of methane and ethane in Water Supply #2 from predrill conditions.

N        The Department and Cabot continue to monitor an additional ten (10) water supplies identified on Exhibit B, for potential impacts, although the Department has not received official complaints from all of these property owners, and no determinations have yet been made.

**Gas Well Investigations and Remedial Actions.**

O.      On August 17, 2017, the Department inspected the Gas Wells as part of its water supply complaint and gas migration investigations due to the proximity of the Jeffers Farms Pad 2 to Water Supply #1.  The Department found that combustible gas was present in the 13⅜" x 9⅝" and/or 9⅝" x 5½" cemented annular spaces of the Jeffers Farms Pad 2 7H, 8H, 9H, 10H, 11H, 12H and 14H gas wells.  The Department also found that combustible gas was present outside of the surface casing (in the 20" x 13⅜" cemented annular space) in the Jeffers Farms Pad 2 9H gas well, in violation of 25 Pa. Code § 78a.85(a)(5).  Gas samples were collected from these annuli for isotopic analysis.  At the time of this inspection, the 11H, 13H, 15H, 16H, 17H, and 18H gas wells had surface and intermediate casing installed but were not yet drilled to total depth.  The other wells on the pad had been drilled to total depth but were not yet stimulated.

P.      Between August 2017 and March 2018, Cabot ran various diagnostic logs and performed multiple remedial perforation and squeeze activities on the 7H, 8H, 10H & 14H gas wells, at depths beneath the intermediate casing shoes. Casing patches were installed across all (4) wells' perforated areas in preparation for future stimulation operations. Prior to, during and after this remedial work was performed, these wells' annular vents were equipped with Alicat "Whisper" flow meters to measure the annular flow rates and help to assess the remedial efforts as they progressed.

Q.      Cabot completed the drilling of the 11H, 13H, 15H, 16H, 17H, and 18H gas wells to total depth between November 2017 and January 2018.

R.      Between March 2018 and July 2018, Cabot stimulated the Gas Wells.  The Gas Wells were placed into production in August 2018.

S.      The Department inspected the Gas Wells on August 7, 2018 in response to a notification from Cabot that they planned to evaluate and collect isotopic samples from the annuli of the Gas Wells.  The Department's inspections of the Gas Wells found that combustible gas was detected in all three annuli in all the Gas Wells, which the Department hypothesized was due to comingling of gas occurring within the vent plumbing setup.

T.      During an inspection by the Department on April 23, 2019, all of the Gas Wells were producing and equipped with Alicat flow meters on all (3) annular vents for potential monitoring.  However, all annular vents were venting to vent tanks, and were not being monitored through the Alicat meters at the time of inspection.

**Violations.**

U.      Section 78a.73(b) of the Department's Rules and Regulations, 25 Pa. Code § 78a.73(b), states that "[t]he operator shall prevent gas, oil, brine, completion and servicing fluids, and any other fluids or materials from below the casing seat from entering fresh groundwater, and shall otherwise prevent pollution or diminution of fresh groundwater."

V.      Cabot's failure to prevent gas from below the casing seat from entering fresh groundwater, as described in Paragraphs F., G., I., M., and O. above, constitutes a violation of Section 78a.73(b) of the Department's Rules and Regulations, 25 Pa. Code § 78a.73(b).

-4-

W.      Section 78a.81(a)(2) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(2), states, in relevant part, "[t]he operator shall case and cement a well to accomplish the following: … [p]revent the migration of gas or other fluids into sources of fresh groundwater."

X.      Section 78a.81(a)(3) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(3), states, in relevant part, "[t]he operator shall case and cement a well to accomplish the following: … [p]revent pollution or diminution of fresh groundwater."

Y.      Cabot's failure to properly case and cement its gas wells to prevent the migration of gas or other fluids into sources of fresh groundwater and Cabot's failure to prevent the pollution or diminution of fresh groundwater, as described in Paragraphs F., G., I., M., and O. above, constitute violations of Sections 78a.81(a)(2) and (a)(3) of the Department's Rules and Regulations, 25 Pa. Code §§ 78a.81(a)(2) and (3).

Z.      Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5), states in relevant part, "[w]hen cementing surface casing or coal protective casing, the operator shall use cement that meets or exceeds the ASTM International C 150, Type I, II or III Standard or API Specification 10. The cement must also… (5) Prevent gas flow in the annulus…"

AA.     Cabot's failure to cement the surface casing in the Jeffers Farms Pad 2 9H gas well to prevent gas flow in the annulus, as described in Paragraph O. above, constitutes a violation of Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5).

BB.     Section 78a.86 of the Department's Rules and Regulations, 25 Pa. Code § 78a.86, states, "[i]n a well that has defective, insufficient or improperly cemented casing, the operator shall report the defect to the Department within 24 hours of discovery by the operator and shall correct the defect.  The operator shall correct the defect or submit a plan to correct the defect for approval by the Department within 30 days.  If the defect cannot be corrected or an alternate method is not approved by the Department, the well shall be plugged under §§ 78a.91 – 78a.98 (relating to plugging)."

CC.     Cabot's failure to correct the defects in the Gas Wells, as described in Paragraphs O., P., S., and T. above, constitutes violations of Section 78a.86 of the Department's Rules and Regulations, 25 Pa. Code § 78a.86.

DD.     Section 401 of the Clean Streams Law, 35 P.S. § 691.401, states in relevant part, "[i]t shall be unlawful for any person or municipality to put or place into any of the waters of the Commonwealth… any substance of any kind or character resulting in pollution as herein defined …."

EE.     Cabot's failure to prevent gas or other fluids generated from the operation of the Gas Well from polluting groundwater, a water of the Commonwealth, as described in Paragraphs F., G., I., M., and O. above, constitutes a violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.

FF.     The violations described in Paragraphs U. through EE. above, constitute unlawful conduct under Section 3259 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3259, and Section 611 of

-5-

the Clean Streams Law, 35 P.S. § 691.611; and subject Cabot to civil penalty liability under Section 3256 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3256, and Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

## ORDER

After full and complete negotiation of all matters set forth in this CO&A, and upon mutual exchange of the covenants contained herein, the parties desiring to avoid litigation and intending to be legally bound, it is hereby ORDERED by the Department and AGREED to by Cabot as follows:

1. **Authority**.  This CO&A is an Order of the Department authorized and issued pursuant to Section 3253 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3253; Section 610 of the Clean Streams Law, 35 P.S. § 691.610; and Section 1917-A of the Administrative Code, 71 P.S. § 510-17.

2. **Findings**.

   a) Cabot agrees that the findings in Paragraphs A. through FF. above are true and correct and, in any matter or proceeding involving Cabot and the Department, Cabot shall not challenge the accuracy or validity of these findings.

   b) The parties do not authorize any other persons to use the findings in this CO&A in any matter or proceeding.

3. **Corrective Actions.**

   a) Remedial Work Plan.  Within ninety (90) days of the date of this CO&A, Cabot shall submit to the Department for review and approval, a written plan with detailed wellbore diagrams and a schedule for the remedial work necessary to stop the vertical flow of fluids or gas at the depth of its subsurface, geologic source within the annular spaces of the wellbores of the Gas Wells, and control and mitigate stray gas migration away from the Gas Wells.  Included in this submission shall be a prioritization of the Gas Wells for remedial work and an implementation schedule.  If the Remedial Work Plan proposes plugging any of the Gas Wells as a remedial action, plugging shall be in accordance with the requirements of Section 3220 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3220; and the Department's Rules and Regulations at 25 Pa. Code §§ 78a.91-78a.98, or appropriate alternative.

   b) Within fifteen (15) days of the Department's written approval of the Remedial Work Plan, including any modifications made by the Department, Cabot shall implement the Remedial Work Plan in accordance with the Department-approved implementation schedule contained therein.  During remedial operations on the Gas Wells, Cabot will simultaneously monitor and evaluate nearby gas wells, water supplies, and other potential receptors for any changes.  Cabot may submit in writing, for Department review and approval, modifications to the Remedial Work Plan as appropriate based upon interim results of the remedial activities.

-6-

c) Unless the Department determines that the concentration of methane in the Water Supplies is at background levels for the aquifer that supplies the Water Supplies, Cabot shall conduct wellhead screening and water sampling of the Water Supplies for each quarter until the results of the screenings and sampling done by the Department and by Cabot show that, for eight (8) consecutive quarters, seventy-five percent (75%) of the water samples within each monitoring period over time contain seven (7) milligrams per liter or less of dissolved methane (or meets the standard then prescribed by applicable regulations), and no individual water sample exceeds two times this standard. This eight (8) consecutive quarter water sampling for attainment shall not commence until the conditions of Paragraphs 3a. and 3.b. above have been satisfied. After four (4) consecutive quarters of attainment sampling that meet the above standard, Cabot may request in writing that the Department reconsider whether continued sampling is required.

d) Cabot may also request in writing, after four (4) consecutive quarters of attainment sampling, a determination from the Department for each Water Supply, that the methane concentration in the Water Supply has returned to background levels.

e) For each Water Supply that Cabot believes meets one of the standards defined in Paragraphs 3.c. or d., above, Cabot shall submit to the Department for review and approval, a written Final Water Supply Report compiling all data for the Water Supply and Cabot's justification for the conclusion that attainment sampling is complete, or that the concentration of methane in the Water Supply is at background levels for the aquifer that supplies the Water Supply. Each such report shall be prepared and sealed by a geologist licensed in this Commonwealth.

f) Cabot's obligation to perform the remedial work required in Paragraphs 3.a. and b., above, shall terminate only when the Department determines in writing that Cabot has effectively eliminated all unpermitted discharges of stray wellhead gas and gas migration from the Gas Wells, as exhibited by both of the Water Supplies attaining one of the standards defined in Paragraphs 3.c. or d., above. An approval of the Final Water Supply Report for the last Water Supply to attain one of those standards shall constitute Cabot's request for the Department's determination that Cabot has effectively eliminated all unpermitted discharges of stray wellhead gas and gas migration from the Gas Wells.

4. **Investigation of Gas Migration.**

a) Cabot shall continue sampling of the affected Water Supplies, as identified in Exhibit A, in accordance with Paragraph 3.c., above, to evaluate the effectiveness of any of the remedial measures proposed under Paragraph 3.a. above.

b) Within ninety (90) days of eliminating the unpermitted discharge of stray wellhead gas and gas migration from the Gas Wells, or by a date certain otherwise approved by the Department in writing, Cabot shall submit to the

-7-

Department for review and approval, a "Gas Migration Final Report" which complies with the Department's Rules and Regulations at 25 Pa. Code § 78a.89(h).  The Gas Migration Final Report shall identify in detail:  1) Cabot's findings and conclusions from its gas migration investigation; and 2) all corrective actions taken by Cabot at the Gas Wells, in accordance with all of the requirements under the Department's Rules and Regulations at 25 Pa. Code § 78a.89, and this Consent Order and Agreement.

5. **Restoration or Replacement of Water Supplies.**

a) <u>Water Supply Restoration/Replacement Plan</u>.  Within ninety (90) days of the date of this CO&A, Cabot shall submit to the Department for review and approval, a plan to permanently restore or replace the Water Supplies ("Water Supply Restoration/Replacement Plan").  Restoration/Replacement of the Water Supplies shall be completed within 180 days of the Department's approval of the Water Supply Restoration/Replacement Plan.  At a minimum, the Water Supply Restoration/Replacement Plan shall identify:

   i. Corrective actions (*e.g.,* treatment, drill new water supply well, connection to public water supply, etc.) necessary to permanently restore or replace the Water Supplies in compliance with Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3218(a), and the Department's Rules and Regulations at 25 Pa. Code § 78a.51(d);

   ii. A proposed schedule to implement the corrective actions so that the Water Supplies are restored or replaced within 180 days of receipt of the Department's written approval of the Water Supply Restoration/Replacement Plan or of the modified Water Supply Restoration/Replacement Plan;

   iii. The independent laboratory, certified by the Department, that Cabot will use to analyze samples from the restored or replaced Water Supplies;

   iv. All agreements, contracts, or other formal binding commitments between Cabot and the owner(s) of the Water Supplies to provide for all plumbing, conveyance, pumping, or auxiliary facilities necessary for the use of the permanently restored or replaced Water Supplies;

   v. Plan for permanent operation and maintenance of the Water Supplies, or the agreements, contracts, or other formal binding commitments between Cabot and the owner(s) of the Water Supplies documenting how Cabot will compensate the owner(s) on a permanent basis for any increased operating and maintenance costs for the replaced or restored Water Supplies. If the owner(s) of the Water Supplies refuse to enter into an agreement with Cabot, in response to a reasonable offer as

-8-

submitted in writing to the Department by Cabot, Cabot may request that the Department allow alternative mechanisms for long-term operation and maintenance.  If a determination is made by the Department, pursuant to Paragraph 3.d, that the quality of a Water Supply has returned to background levels, Cabot's obligation under this term shall be concluded.

vi. Plan for confirmatory samples of the restored and/or replaced Water Supplies after the date that Cabot asserts that it has permanently restored or replaced the Water Supplies, or after the date that Cabot asserts that the Water Supplies are no longer affected.  Such samples will be used to determine whether the Water Supplies meet the standards set forth in Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3218(a), and the Department's Rules and Regulations at 25 Pa. Code § 78a.51(d).  The confirmatory sampling plan should:  provide for split samples with the Department; ensure that sampling would only take place Monday through Thursday during Department working hours; and specify that Cabot will notify the Department at least three (3) working days before any scheduled sampling of the Water Supplies.

b) If the Department determines that any of the water supplies identified in Exhibit B have been impacted as a result of Cabot's oil and gas activities, within ninety (90) days of that determination, Cabot shall submit a Water Supply Restoration/Replacement Plan to the Department for review and approval.  The Plan shall include all items identified in Paragraphs 5.a.i. through 5.a.vi., above. Restoration/Replacement of the Water Supply(ies) shall be completed within 180 days of the Department's approval of the Water Supply Restoration/Replacement Plan.

c) No settlement, agreement, or other understanding between Cabot and any owner of one or more of the Water Supplies shall prohibit, hinder, obstruct, delay, impede, impair, or prevent the Department or its duly authorized agents, acting in the course of lawful performance and duty, from entering upon lands, buildings, facilities, premises, or operations in order to make inspections, conduct tests or sampling, examine records, or otherwise carrying out investigations as may be necessary, relating to gas migration or causes thereto

**6.  Civil Penalty Settlement**.  Cabot consents to the assessment of a civil penalty of Three Hundred Fifty-Five Thousand One Hundred Fifty Dollars ($355,150.00), which shall be paid in full upon signing this CO&A.  This payment is in settlement of the Department's claim for civil penalties for the violations set forth in Paragraphs U. through FF. above, for the dates set forth in Paragraphs E. through T., above.  The payment shall be made by corporate check or the like, made payable to the "Commonwealth of Pennsylvania", and forwarded to Eastern District Oil and Gas Operations, Pennsylvania Department of Environmental Protection, 208 West Third Street, Suite 101, Williamsport, Pennsylvania 17701-6448.  Additionally, the payment shall be made in conjunction with the return of this CO&A by Cabot to the Department as described in Paragraph 12., below.

-9-

7. **Stipulated Civil Penalties**.

    a)    In the event Cabot fails to comply in a timely manner with any provision of this CO&A, Cabot shall be in violation of this CO&A and, in addition to other applicable remedies, shall pay a stipulated civil penalty in the amount of One Thousand Dollars ($1,000.00) per day for each day, or any portion thereof, that Cabot fails to comply with its obligations or to meet the deadlines established herein.

    b)    Stipulated civil penalty payments shall be payable on or before the fifteenth (15th) day of each succeeding month and shall be forwarded as described in Paragraph 6. above.

    c)    Any payment under this paragraph shall neither waive Cabot's duty to meet its obligations under this CO&A nor preclude the Department from commencing an action to compel Cabot's compliance with the terms and conditions of this CO&A.  The payment resolves only Cabot's liability for civil penalties arising from the violations of this CO&A for which the payment is made.

    d)    Stipulated penalties shall be due automatically and without notice.

8. **Additional Remedies**.

    a)    In the event Cabot fails to comply with any provision of this CO&A, the Department may, in addition to the remedies prescribed herein, pursue any remedy available for a violation of an order of the Department, including an action to enforce this CO&A.

    b)    The remedies provided by this Paragraph and Paragraph 7. (Stipulated Civil Penalties) are cumulative and the exercise of one does not preclude the exercise of any other.  The failure of the Department to pursue any remedy shall not be deemed to be a waiver of that remedy.  The payment of a stipulated civil penalty, however, shall preclude any further assessment of civil penalties for the violation for which the stipulated civil penalty is paid.

9. **Reservation of Rights**.  The Department reserves the right to require additional measures to achieve compliance with applicable law.  Cabot reserves the right to challenge any action which the Department may take to require those measures.

10. **Liability of Operator**.  Cabot shall be liable for any violations of the CO&A, including those caused by, contributed to, or allowed by its officers, agents, employees, or contractors.  Cabot also shall be liable for any violation of this CO&A caused by, contributed to, or allowed by its successors and assigns.

11. **Transfer of Gas Wells**.

    a)  The duties and obligations under this CO&A shall not be modified, diminished, terminated or otherwise altered by the transfer of any legal or equitable interest in the Gas Wells or any part thereof.

    b)  If Cabot intends to transfer any legal or equitable interest in the Gas Wells which is affected by this CO&A, Cabot shall serve a copy of this CO&A upon the prospective transferee of the legal and equitable interest at least thirty (30) days prior to the contemplated transfer and shall simultaneously inform the Eastern Oil and Gas District of the Department of such intent.

    c)  The Department in its sole discretion may agree to modify or terminate Cabot's duties and obligations under this CO&A upon transfer of the Gas Wells. Cabot waives any right that it may have to challenge the Department's decision in this regard.

12. **Correspondence with Department**. All correspondence with the Department concerning this CO&A shall be addressed to:

Jennifer W. Means
Environmental Program Manager
Eastern District Oil and Gas Operations
Department of Environmental Protection
208 West Third Street, Suite 101
Williamsport, PA 17701-6448
Phone: (570) 321-6557
e-Mail: jenmeans@pa.gov

13. **Correspondence with Cabot**. All correspondence with Cabot concerning this CO&A shall be addressed to:

Phil Stalnaker
Senior Vice President, North Region
Cabot Oil & Gas Corporation
2000 Park Lane, Suite 300
Pittsburgh, PA 15275-1121
Phone: (412) 395-3305

Cabot shall notify the Department whenever there is a change in the contact person's name, title, or address. Service of any notice or any legal process for any purpose under this CO&A, including its enforcement, may be made by mailing a copy by first class mail to the above address.

14. **Severability**. The paragraphs of this CO&A shall be severable and should any part hereof be declared invalid or unenforceable, the remainder shall continue in full force and effect between the parties.

15. **Entire Agreement**. This CO&A shall constitute the entire integrated agreement of the parties. No prior or contemporaneous communications or prior drafts shall be relevant or

-11-

admissible for purposes of determining the meaning or intent of any provisions herein in any litigation or any other proceeding.

16. **Attorney's Fees**.  The parties shall bear their respective attorney fees, expenses and other costs in the prosecution or defense of this matter or any related matters, arising prior to execution of this CO&A.

17. **Modifications**.  No changes, additions, modifications, or amendments of this CO&A shall be effective unless they are set out in writing and signed by the parties hereto.

18. **Titles**.  A title used at the beginning of any paragraph of this CO&A may be used to aid in the construction of that paragraph but shall not be treated as controlling.

19. **Decisions under Consent Order**.  Any decision which the Department makes under the provisions of this CO&A, including a notice that stipulated civil penalties are due, is intended to be neither a final action under 25 Pa. Code § 1021.2, nor an adjudication under 2 Pa. C.S.A. § 101.  Any objection which Cabot may have to the decision will be preserved until the Department enforces this CO&A.

20. **Termination.**  The obligations of Paragraphs 3. through 5. shall terminate when the Department determines that Cabot has complied with the requirements of Paragraphs 3. through 5.

21. **Execution of Agreement**.  This CO&A may be signed in counterparts, each of which shall be deemed to be an original and all of which together shall constitute one and the same instrument.

**Remainder of Page Intentionally Left Blank.**
**Signature Page to Follow.**

-12-

IN WITNESS WHEREOF, the parties hereto have caused this CO&A to be executed by their duly authorized representatives.  The undersigned representatives of Cabot certify under penalty of law, as provided by 18 Pa. C.S.A. § 4904, that they are authorized to execute this CO&A on behalf of Cabot; that Cabot consents to the entry of this CO&A as a final ORDER  of the Department; and that Cabot hereby knowingly waives its rights to a hearing under the statutes referenced in this CO&A; and that Cabot knowingly waives its right to appeal this CO&A and to challenge its content or validity, which rights may be available under Section 4 of the Environmental Hearing Board Act, the Act of July 13, 1988, P.L. 530,  35 P.S. § 7514; the Administrative Agency Law, 2 Pa. C.S.A. § 103(a) and Chapters 5A and 7A; or any other provisions of law.  Signature by Cabot's attorney certifies only that the agreement has been signed after consulting with counsel.

FOR CABOT OIL & GAS CORPORATION:

FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:

_____
Signature                                    (Date)

_____
Name (Typed or Printed)

_____
Title for Cabot Oil & Gas Corporation

_____
Jennifer W. Means                      (Date)
Environmental Program Manager
Eastern Oil and Gas District

_____
Signature                                    (Date)

_____
Name (Typed or Printed)

_____
Title for Cabot Oil & Gas Corporation

_____
Geoffrey J. Ayers                        (Date)
Regional Counsel
Northcentral Region

_____
Signature                                    (Date)

_____
Name (Typed or Printed): Attorney for
Cabot Oil & Gas Corporation

# <u>EXHIBIT A</u>

## <u>CONTAINS CONFIDENTIAL COMPLAINANT INFORMATION</u>

**Water Supplies**

1.

2.

**CONFIDENTIAL**

**Exhibit B**

