# Exhibit 9

## COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF ENVIRONMENTAL PROTECTION

**IN THE MATTER OF:**

| | | |
|---|---|---|
| Cabot Oil & Gas Corporation | : | Violations of the 2012 Oil and Gas |
| Jeffers Farms Pad 2 Gas Migration | : | Act, the Clean Streams Law and § 78a |
| Harford Township, Susquehanna | : | of the Department's Regulations |
| County | | |

## <u>ORDER</u>

Now this 28th day of December 2020, the Commonwealth of Pennsylvania, Department of Environmental Protection ("Department") has made and determined the following Findings and issues this Order to Cabot Oil & Gas Corporation (hereinafter "Cabot").

### Findings

A.      The Department is the agency with the duty and authority to administer and enforce the Oil and Gas Act, Act of February 14, 2012, P.L. 87, No. 13, 58 Pa.C.S. §§ 3201-3274 (hereinafter "2012 Oil and Gas Act"); the Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001 ("Clean Streams Law"); Section 1917-A of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. § 510-17 (hereinafter "Administrative Code"); and the rules and regulations promulgated thereunder ("Regulations").

B.      Cabot is a Delaware Corporation, which engages in oil and gas exploration and production activities in Pennsylvania and maintains a business address of 2000 Park Lane, Suite 300, Pittsburgh, Pennsylvania 15275-1121.

C.      Cabot constitutes a "person" as that term is defined by Section 3203 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3203, and Section 1 of the Clean Streams Law, 35 P.S. § 691.1.

D.      Cabot is the "owner" and "operator," as those terms are defined in Section 3203 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3203, of the Jeffers Farms Pad 2 7H, 8H, 9H, 10H, 11H, 12H, 13H, 14H, 15H, 16H, 17H, and 18H gas wells, authorized by permit numbers 115-22250, 115-22251, 115-22252, 115-22253, 115-22254, 115-22255, 115-22256, 115-22257, 115-22258, 115-22259, 115-22260 and 115-22261 respectively, located in Harford Township, Susquehanna County, Pennsylvania, (hereinafter "Gas Wells").

E.      Cabot started spudding the Gas Wells on February 21, 2017.

**Affected Water Supplies.**

F.      On June 30, 2017, Cabot notified the Department of the receipt of a complaint on June 29, 2017 regarding the conditions of a water supply in Harford Township, Susquehanna County, identified as "Water Supply #1" on the list attached hereto identified as Exhibit A – "Water Supplies." Specifically, the complaint was regarding discoloration of and odor from Water Supply #1.

G.      Both Cabot and the Department initiated a water supply complaint investigation. Cabot began providing temporary bottled drinking water on July 1, 2017 and vented the water well at that time.

H.      On October 16, 2017, the Department sent the owner(s) of Water Supply #1 a 58 Pa. C.S. § 3218 Determination Letter, which indicated that gas well drilling activities impacted Water Supply #1. Specifically, there was an increase in the concentrations of methane, turbidity and iron in Water Supply #1 from predrill conditions.

I.      On November 16, 2017, the Department issued to Cabot a Notice of Violation ("NOV") for the following:

1) Causing or allowing the unpermitted discharge of combustible gas from the lower formations to waters of the Commonwealth (Water Supply #1), in violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.
2) Failure to case and cement a gas well to prevent the migration of gas or other fluids into sources of fresh groundwater and prevent pollution or diminution of fresh groundwater (Water Supply #1), in violation of Sections 78a.81(a)(2) and (3) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(2) and (3).
3) Failure to prevent gas and any other fluids or materials from below the casing seat from entering fresh groundwater and otherwise prevent pollution or diminution of fresh groundwater (Water Supply #1), in violation of Section 78a.73(b) of the Department's Rules and Regulations, 25 Pa. Code § 78a.73(b).
4) Failure to cement the surface casing of the Jeffers Farms Pad 2 9H gas well to prevent gas flow in the annulus, as observed during an inspection by the Department on August 17, 2017, in violation of Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5).

The NOV requested that Cabot submit to the Department a corrective action plan to continue any necessary diagnostic and remedial efforts to identify and eliminate any suspected sources of stray gas from the Gas Wells and submit a Restoration or Replacement Plan for Water Supply #1.

J.      On November 16, 2017, Cabot notified the Department that during an evaluation of water supplies near the Jeffers Farms Pad 2 as part of the water supply complaint and gas migration investigations for Water Supply #1, Cabot identified a second water supply with elevated methane concentrations compared to predrill conditions.

K.      Both Cabot and the Department initiated a water supply complaint investigation for the water supply, identified as "Water Supply #2" in Exhibit A. Water Supply #2 is located within 2,500 feet of the Gas Wells.

L.      On December 1, 2017, the Department issued to Cabot a Notice of Legal Presumption for the pollution and degradation of Water Supply #2 by Cabot's oil and gas activities.  Cabot received the Notice on December 4, 2017.

M.      The Department requested that Cabot provide temporary water to the owner(s) of Water Supply #2 within 24 hours and submit either a plan to restore or replace Water Supply #2 or a rebuttal to the presumption of responsibility for pollution of Water Supply #2 within 30 calendar days.  Cabot did not rebut the presumption and initiated discussions regarding the temporary provision of water with the owner of Water Supply #2 on December 5, 2017, arranging for the landowner to set-up water delivery with the vendor. Delivery of bottled water began on December 6, 2017.

N.      On December 20, 2017, Cabot submitted a response as requested in the Department's November 16, 2017 NOV that included the following:

1) A summary of Cabot's ongoing 25 Pa. Code § 78a.89 Gas Migration Investigation of the Water Supplies, including providing temporary water, installing a treatment system on Water Supply #1, and implementing a sampling and monitoring plan for both Water Supplies.
2) A detailed summary of the mechanical integrity assessments and corrective actions on the Gas Wells, including running cement bond logs and acoustic logs in the wellbores, collecting isotopic samples, performing remedial perforation and cement squeeze jobs, and utilizing pulse testing to evaluate remedial activities.
3) A plan for further remedial actions for the Gas Wells based on the success of Cabot's ongoing remedial/corrective actions and in consultation with the Department.

O.  On January 3, 2018, Cabot submitted to the Department a response to the December 1, 2017 Notice of Legal Presumption that included the following:

1) Cabot was providing bottled water to the owner(s) of Water Supply #2 (bulk water supply was declined).
2) Only one sample collected from Water Supply #2 on December 4, 2017 exceeded the Department's 7 mg/L action level for methane.
3) Although elevated free gas was not observed in Water Supply #2, Cabot installed a vent on Water Supply #2 as a precautionary measure.
4) Cabot proposed a plan of action to collect weekly dissolved gas samples from Water Supply #2 through February 2018, followed by monthly dissolved gas samples until Cabot and the Department concur that sampling can cease.
5) Because the analytical results for Water Supply #2 had been comparable with pre-existing conditions, Cabot did not propose a treatment option for Water Supply #2 but would re-evaluate if conditions changed in the water supply.

3

P.      On June 1, 2018, the Department sent the owner(s) of Water Supply #2 a 58 Pa. C.S. § 3218 Determination Letter, which indicated that gas well drilling activities were presumed to be the cause of the pollution of Water Supply #2.  Specifically, there was an increase in the concentrations of methane and ethane in Water Supply #2 from predrill conditions.

Q.      On May 15, 2019, Cabot drilled the owners of Water Supply #1 a new water well in order to replace the impacted Water Supply.

R      On February 12, 2020, the Department determined that a third water supply, "Water Supply #3" identified in Exhibit A, had been impacted by gas well drilling activities associated with the Gas Wells.

S.      As of the date of this Order, water quality in Water Supply #1 is showing improvement and the Department and Cabot continue to monitor the Water Supplies and Gas Wells. Water Supply #2 has returned to background conditions as demonstrated by Cabot's letter entitled "Notice of Legal Presumption – Water Supply A, Request to Discontinue Provision of Temporary Water and Water Supply Sampling, Water Supply Investigation # 330982, Harford Township, Susquehanna County" dated September 10, 2020, and submitted to the Department via e-mail on September 14, 2020.

**Gas Well Investigations and Remedial Actions.**

T.      On August 17, 2017, the Department inspected the Gas Wells as part of its water supply complaint and gas migration investigations due to the proximity of the Jeffers Farms Pad 2 to Water Supply #1.  Combustible gas was present in the 13⅜" x 9⅝" and/or 9⅝" x 5½" annular spaces of the Jeffers Farms Pad 2 7H, 8H, 9H, 10H, 11H, 12H, and 14H gas wells. Combustible gas was also present outside of the surface casing (in the 20" x 13⅜" cemented annular space) in the Jeffers Farms Pad 2 9H gas well, in violation of 25 Pa. Code § 78a.85(a)(5). Gas samples were collected from these annuli for isotopic analysis.  At the time of this inspection, the 11H, 13H, 15H, 16H, 17H, and 18H gas wells had surface and intermediate casing installed but were not yet drilled to total depth.  The other wells on the pad had been drilled to total depth but were not yet stimulated.

U.      Between August 2017 and March 2018, Cabot ran various diagnostic logs and performed multiple remedial perforation and squeeze activities on the 7H, 8H, 10H, and 14H gas wells, at depths beneath the intermediate casing shoes. Remedial work conducted was consistent with Cabot's remedial work plan submitted on December 20, 2017.  Casing patches were installed across all (4) wells' perforated areas in preparation for future stimulation operations. Prior to, during and after this remedial work was performed, these wells' annular vents were equipped with Alicat "Whisper" flow meters to measure the annular flow rates and help to assess the remedial efforts as they progressed.

V.      Cabot completed the drilling of the 11H, 13H, 15H, 16H, 17H, and 18H gas wells to total depth between November 2017 and January 2018.

W.      Between March 2018 and July 2018, Cabot stimulated the Gas Wells.  The Gas Wells were placed into production in August 2018.

X.      The Department inspected the Gas Wells on August 7, 2018 in response to a notification from Cabot that they planned to evaluate and collect isotopic samples from the annuli of the Gas Wells.   Combustible gas was detected in all three annuli in all the Gas Wells, which the Department hypothesized was due to comingling of gas occurring within the vent plumbing setup.

Y.      During an inspection by the Department on April 23, 2019, all of the Gas Wells were producing and equipped with Alicat flow meters on all (3) annular vents for potential monitoring.  However, all annular vents were venting to vent tanks, and not all were being monitored through the Alicat meters at the time of inspection.

Z.      In June and July 2019, Cabot ensured that all annular vents on all gas wells on the pad were isolated and monitored correctly via the Alicat meters. On August 9, 2019, the Department checked the Gas Wells and associated Alicat flow meters.  This inspection showed no flow and no methane present on the 20x13 and 13x9 cemented annular spaces for each of the Gas Wells.

**Violations.**

AA.      Section 78a.73(b) of the Department's Rules and Regulations, 25 Pa. Code § 78a.73(b), states that "[t]he operator shall prevent gas, oil, brine, completion and servicing fluids, and any other fluids or materials from below the casing seat from entering fresh groundwater, and shall otherwise prevent pollution or diminution of fresh groundwater."

BB.      Cabot's failure to prevent gas from below the casing seat from entering fresh groundwater, as described in Paragraphs F., H., J., L., P., R., and T. above, constitutes a violation of Section 78a.73(b) of the Department's Rules and Regulations, 25 Pa. Code § 78a.73(b).

CC.      Section 78a.81(a)(2) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(2), states, in relevant part, "[t]he operator shall case and cement a well to accomplish the following: … [p]revent the migration of gas or other fluids into sources of fresh groundwater."

DD.      Section 78a.81(a)(3) of the Department's Rules and Regulations, 25 Pa. Code § 78a.81(a)(3), states, in relevant part, "[t]he operator shall case and cement a well to accomplish the following: … [p]revent pollution or diminution of fresh groundwater."

EE.      Cabot's failure to properly case and cement its gas wells to prevent the migration of gas or other fluids into sources of fresh groundwater and Cabot's failure to prevent the pollution or diminution of fresh groundwater, as described in Paragraphs F., H., J., L., P., R., and T.  above, constitute violations of Sections 78a.81(a)(2) and (a)(3) of the Department's Rules and Regulations, 25 Pa. Code §§ 78a.81(a)(2) and (3).

FF.      Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5), states in relevant part, "[w]hen cementing surface casing or coal protective casing, the operator shall use cement that meets or exceeds the ASTM International C 150, Type I, II or III Standard or API Specification 10. The cement must also… (5) Prevent gas flow in the annulus .…"

5

GG.    Cabot's failure to cement the surface casing in the Jeffers Farms Pad 2 9H gas well to prevent gas flow in the annulus, as described in Paragraph T. above, constitutes a violation of Section 78a.85(a)(5) of the Department's Rules and Regulations, 25 Pa. Code § 78a.85(a)(5).

HH.    Section 401 of the Clean Streams Law, 35 P.S. § 691.401, states in relevant part, "[i]t shall be unlawful for any person or municipality to put or place into any of the waters of the Commonwealth… any substance of any kind or character resulting in pollution as herein defined …."

II.    Cabot's failure to prevent gas or other fluids generated from the operation of the Gas Well from polluting groundwater, a water of the Commonwealth, as described in Paragraphs F., H., J., L., P., R., and U.  above, constitutes a violation of Section 401 of the Clean Streams Law, 35 P.S. § 691.401.

JJ.  The violations described in Paragraphs AA. through II. above, constitute unlawful conduct under Section 3259 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3259, and Section 611 of the Clean Streams Law, 35 P.S. § 691.611; and subject Cabot to civil penalty liability under Section 3256 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3256, and Section 605 of the Clean Streams Law, 35 P.S. § 691.605.

## **ORDER**

NOW, THEREFORE, pursuant to Section 3253 of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3253; Section 610 of the Clean Streams Law, 35 P.S. § 691.610; and Section 1917-A of the Administrative Code, 71 P.S. § 510-17, the Department hereby ORDERS the following:

1. **Corrective Actions.**

   a) <u>Gas Well Remediation.</u>  Within sixty (60) days of the date of this Order, Cabot shall conduct Pressure Build-Up Tests (PBUTs) on the Gas Wells to evaluate the success of previous remedial work conducted on the Gas Wells.

   b) Cabot shall continue vent flow monitoring of all isolated annuli of the Gas Wells via Alicat flow meters for one year from the date of this Order and shall submit the data to the Department on a monthly basis.   If the vent flow monitoring or PBUTs identify integrity issues at any Gas Well(s), Cabot shall submit to the Department for review and approval, a written plan with detailed wellbore diagrams and a schedule for the remedial work necessary to stop the vertical flow of fluids or gas within the wellbores of the Gas Well(s) in compliance with Chapter 78a, and control and mitigate stray gas migration away from the Gas Well(s).  Included in this submission shall be a prioritization of the Gas Wells for remedial work and an implementation schedule.  Cabot shall implement the remedial work plan in accordance with the Department-approved implementation schedule contained therein.

c) Unless the Department determines that the concentration of methane in the Water Supplies is at background levels for the aquifer that supplies the Water Supplies, Cabot shall conduct wellhead screening and water sampling of Water Supplies #1 and #3 for each quarter until the results of the screenings and sampling done by the Department and by Cabot show that, for eight (8) consecutive quarters, seventy-five percent (75%) of the water samples from each Water Supply over time contain seven (7) milligrams per liter or less of dissolved methane (or meets the standard then prescribed by applicable regulations), and no individual water sample exceeds two times this standard. If remedial work is conducted on the Gas Wells as a result of the PBUTs or vent flow monitoring required in Paragraph 1.a. and b., above, the eight (8) consecutive quarters of water sampling for attainment shall commence after the completion of that remedial work.  After four (4) consecutive quarters of attainment sampling that meet the above standard, Cabot may request in writing that the Department consider whether continued sampling is required.

d) Cabot may also request in writing, after four (4) consecutive quarters of attainment sampling, a determination from the Department for each Water Supply, that the methane concentration in the Water Supply has returned to background levels.

e) For each Water Supply #1 and #3 that Cabot believes meets one of the standards defined in Paragraph 1.c. or d., above, Cabot shall submit to the Department for review and approval, a written Final Water Supply Report compiling all data for the Water Supply and Cabot's justification for the conclusion that attainment sampling is complete, or that the concentration of methane in the Water Supply is at background levels for the aquifer that supplies the Water Supply.  Each such report shall be prepared and sealed by a geologist licensed in this Commonwealth.

2. **Investigation of Gas Migration.**

a) Cabot shall continue sampling of affected Water Supplies #1 and #3, as identified in Exhibit A, in accordance with Paragraph 1.c., to evaluate the effectiveness of any of the remedial measures described above.  The original Water Supply #1 Well was plugged and is no longer able to be sampled.  A replacement water well was installed at the property as part of the water supply restoration and will be sampled in its stead.

b) Once the Department determines that Water Supplies #1 and #3 are no longer impacted or have returned to background, Cabot will within one hundred eighty (180) days of that date submit to the Department for review and approval, a "Gas Migration Final Report" which complies with the Department's Rules and Regulations at 25 Pa. Code § 78a.89(h).  The Gas Migration Final Report shall identify in detail:  1) Cabot's findings and conclusions from its gas migration investigation; and 2) all corrective actions taken by Cabot at the Gas Wells, in accordance with all of the requirements

7

under the Department's Rules and Regulations at 25 Pa. Code § 78a.89, and this Consent Order and Agreement.

3. **Restoration or Replacement of Water Supplies.**

a) <u>Water Supply Restoration/Replacement Plan</u>.  Within ninety (90) days of the date of this Order, Cabot shall submit to the Department for review and approval, a plan to permanently restore or replace Water Supply #3 ("Water Supply Restoration/Replacement Plan").  Restoration/Replacement of Water Supply #3 shall be completed within 180 days of the Department's approval of the Water Supply Restoration/Replacement Plan.  At a minimum, the Water Supply Restoration/Replacement Plan shall identify:

    i. Corrective actions (*e.g.,* treatment, drill new water supply well, connection to public water supply, etc.) necessary to permanently restore or replace Water Supply #3 in compliance with Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa. C.S. § 3218(a), and the Department's Rules and Regulations at 25 Pa. Code § 78a.51(d);

    ii. A proposed schedule to implement the corrective actions so that Water Supply #3 is restored or replaced within 180 days of receipt of the Department's written approval of the Water Supply Restoration/Replacement Plan or of the modified Water Supply Restoration/Replacement Plan;

    iii. The independent laboratory, certified by the Department, that Cabot will use to analyze samples from the restored or replaced Water Supply;

    iv. All agreements, contracts, or other formal binding commitments between Cabot and the owner(s) of the Water Supply #3 to provide for all plumbing, conveyance, pumping, or auxiliary facilities necessary for the use of the permanently restored or replaced Water Supply;

    v. Plan for permanent operation and maintenance of Water Supply #3, or the agreements, contracts, or other formal binding commitments between Cabot and the owner(s) of Water Supply #3 documenting how Cabot will compensate the owner(s) on a permanent basis for any increased operating and maintenance costs for the replaced or restored Water Supply.  If the owner(s) of the Water Supply #3 refuse to enter into an agreement with Cabot, in response to a reasonable offer as submitted in writing to the Department by Cabot, Cabot may request that the Department allow alternative mechanisms for long-term operation and maintenance.  If a determination is made by the Department, pursuant to Paragraph 1.c, that the

quality of Water Supply #3 has returned to background levels, Cabot's obligation under this term shall be concluded.

vi. Plan for confirmatory samples of the restored and/or replaced Water Supply #3 after the date that Cabot asserts that it has permanently restored or replaced Water Supply #3, or after the date that Cabot asserts that Water Supply #3 is no longer affected. Such samples will be used to determine whether Water Supply #3 meets the standards set forth in Section 3218(a) of the 2012 Oil and Gas Act, 58 Pa.C.S. § 3218(a), and the Department's Rules and Regulations at 25 Pa. Code § 78a.51(d). The confirmatory sampling plan should: provide for split samples with the Department; ensure that sampling would only take place Monday through Thursday during Department working hours; and specify that Cabot will notify the Department at least three (3) working days before any scheduled sampling of Water Supply #3.

4. **Document Review and Approval by the Department.**

a) Regarding any document that Cabot submits to the Department pursuant to Paragraphs 1, 2, and 3, above, the Department will review such document and will approve or comment on and disapprove the document or portion thereof, in writing.

b) If the document, or any portion thereof, is disapproved by the Department, Cabot shall, within 14 days after the date of the Department's written disapproval, submit to the Department a revised document, or portion thereof, that addresses the Department's basis for disapproval.

c) Upon the Department's approval of a document, or any portion thereof, such approved document, including any identified corrective action and schedule contained therein, shall become an obligation of this Order and shall be enforceable as such.

5. **Correspondence with Department**. All correspondence with the Department concerning this CO&A shall be addressed to:

Jennifer W. Means
Environmental Program Manager
Eastern District Oil and Gas Operations
Department of Environmental Protection
208 West Third Street, Suite 101
Williamsport, PA 17701-6448
Phone: (570) 321-6557
e-Mail: jenmeans@pa.gov

Any person aggrieved by this action may appeal the action to the Environmental Hearing Board (Board) pursuant to Section 4 of the Environmental Hearing Board Act, 35 P.S. § 7514, and the Administrative Agency Law, 2 Pa. C.S. Chapter 5A.  The Board's address is:

> Environmental Hearing Board
> Rachel Carson State Office Building, Second Floor
> 400 Market Street
> P.O. Box 8457
> Harrisburg, PA 17105-8457

TDD users may contact the Environmental Hearing Board through the Pennsylvania Relay Service, 800-654-5984.

Appeals must be filed with the Board within 30 days of receipt of notice of this action unless the appropriate statute provides a different time.  This paragraph does not, in and of itself, create any right of appeal beyond that permitted by applicable statutes and decisional law.

A Notice of Appeal form and the Board's rules of practice and procedure may be obtained online at http://ehb.courtapps.com or by contacting the Secretary to the Board at 717-787-3483. The Notice of Appeal form and the Board's rules are also available in braille and on audiotape from the Secretary to the Board.

IMPORTANT LEGAL RIGHTS ARE AT STAKE.  YOU SHOULD SHOW THIS DOCUMENT TO A LAWYER AT ONCE.  IF YOU CANNOT AFFORD A LAWYER, YOU MAY QUALIFY FOR FREE PRO BONO REPRESENTATION. CALL THE SECRETARY TO THE BOARD AT 717-787-3483 FOR MORE INFORMATION.  YOU DO NOT NEED A LAWYER TO FILE A NOTICE OF APPEAL WITH THE BOARD.

**IF YOU WANT TO CHALLENGE THIS ACTION, YOUR APPEAL MUST BE FILED WITH AND RECEIVED BY THE BOARD WITHIN 30 DAYS OF RECEIPT OF NOTICE OF THIS ACTION.**

FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF ENVIRONMENTAL PROTECTION:

*Jennifer W. Means*

Jennifer W. Means
Environmental Program Manager
Eastern Oil and Gas District Office

10

# EXHIBIT A

## CONTAINS CONFIDENTIAL COMPLAINANT INFORMATION

## Water Supplies

1. Boyd & Diana Smith
   306 Stephens Road
   Kingsley, PA 18826

2. Joseph Paolucci
   888 Stephens Road
   Kingsley, PA 18826

3. George Hall
   270 Stephens Road
   Kingsley, PA  18826