Deposition of Steve Novakowski

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

Civil Action No. 4:21-cv-02045

DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated,

Plaintiffs,

v.

CABOT OIL & GAS CORPORATION, et al.,

Defendants.

_____

*************************************

REMOTE VIDEO DEPOSITION OF STEVE NOVAKOWSKI

July 28, 2023

*************************************

REMOTE VIDEO DEPOSITION OF STEVE NOVAKOWSKI taken via Zoom in the above-styled and numbered cause on July 28, 2023, commencing at 9:07 a.m. Eastern before Gina Williams, Registered Professional Reporter, Certified Realtime Reporter, and Certified Realtime Captioner.

team, and that's why we continued to try and make that team better to try and intercede more quickly, more effectively when we sense problems, right, and I think -- I think that just comes with time, but it also comes with, you know, what maybe in looking back at ongoing issues that are take a long time to resolve, what's not being done in those that could be used to speed up a process should something happen in the future.

And we were very fortunate that we could try some of those techniques on the Howell, which was some of the flowmeters we installed and the background testing we did prior to doing the intercession on the wells to be sure we were doing the right work and focus our -- laser focus our work on the right intervals.

That was just a watershed for us, so actually very happy how that worked out in a very bad situation.

BY MR. STOKES:

Q        Were you aware of any widespread or systemic deficiencies in Cabot's efforts to prevent gas migration?

MR. McCALL:   Objection.

A        No.

I mean, the Dimock box was well-identified at that point.   And then absent the Stalter situation, which I'm a little bit unfamiliar with at this point, until we had that change in 2017, we actually had a very good run.

So there wasn't any reason to think there was anything more than just these isolated incidences -- incidents that occurred, especially in 2017.

BY MR. STOKES:

Q    Were with you aware of any widespread or systemic deficiencies in Cabot cementing practices?

MR. McCALL:  Objection to form.

A    No.

I mean, they always used --

They always used a cement that was, you know, designed for the job.  It's just that over time cement designs change to address issues that -- the perception of issues, whether it's gas block additives or whatever.

New technologies come, so the slurries get updated, and old slurry ideas are abandoned.  Again, that's just an evolution.

BY MR. STOKES:

Q    Did you ever communicate to Mr. Stalnaker that you believed there were widespread or systemic deficiencies in Cabot's cementing or gas migration prevention practices?

MR. McCALL:  Objection to form.

A    No.

BY MR. STOKES:

Q    Did you ever communicate to Mr. Dinges or Mr. Schroeder or anybody else in senior management that you

Deposition of Steve Novakowski

believed there were widespread or systemic deficiencies in Cabot's cementing or gas migration prevention practices?

MR. McCALL:   Objection to form.

A      No.

BY MR. STOKES:

Q      Did --

Were there widespread or systemic problems with gas migration generally during your time at Cabot?

MR. McCALL:   Objection to form.

A      No.

BY MR. STOKES:

Q      Did you ever communicate to Mr. Stalnaker or Mr. Dinges or Mr. Schroeder or anybody else in senior management that you believed there was widespread or systemic gas migration with respect to Cabot's gas wells?

MR. McCALL:   Objection to form.

A      No.

BY MR. STOKES:

Q      You testified about remediation efforts with respect to the Howell, Jeffers, Foltz and Powers wells, I believe.

Is that correct?

A      Yes.

Q      What were the outcomes of those remediation efforts that your team performed?

Deposition of Steve Novakowski

A     Well, I know Howell and Jeffers were brought to a satisfactory conclusion.

I think Foltz was also brought to a conclusion.

Powers, I know we got that headed in the right direction, but I'm not sure what the status on the water well is yet, but I know it was headed in the right direction.

That's pretty much --

There hasn't been any need to do additional work. Put it that way.  So I'm pretty sure that the remediations we did in the end were sufficient because I haven't heard the need to reassess that situation.

So I'm feeling like we were successful, at least from my end, because we were able to intercede in a positive way.

Q     How would you rate the performance of your team in remediating these wells?

MR. McCALL:  Objection to form.

A     Good.  Generally good, except for a couple of instances where we maybe, you know, had some bad data that we unfortunately had to pull back, and that was very disappointing, but generally they were good.

As far as the actual work that was performed on the ground, the intercessions, they were rock stars when it came to that.

Deposition of Steve Novakowski

So the squeezes were placed successfully. Diagnostics were done very well.  That I'm very proud of.

BY MR. STOKES:

Q    When you say they were rock stars, are you referring to the actual remediation work itself?

A    Yes.

MR. McCALL:  Object to form.

A    Execution of the remedial work.

BY MR. STOKES:

Q    How quickly did Cabot act to remediate the Howell, Jeffers and Foltz wells?

A    Well, as soon as --

In the case of the Howell, as soon as we got the notice from regulatory that there was an issue with a water well, we started that process immediately.

Regulatory, the first thing they do is assess what's going on at the water well, and then they -- you know, if they need to offer alternate water or whatever based on that initial analysis, that's what starts it.

And then it's just, for us, it's like we're put on notice to start reviewing and trying to figure out where issues may -- may be resident, what actually might be the cause of it.

So we start gathering our information immediately once we're noticed and, you know, that starts with just

Deposition of Steve Novakowski                          Delaware County Employees Retirement System v. Cabot Oil & Gas Corp., et al

getting pressure data and LEL data and then accumulating the bond logs that we have, and then running more bond logs if we don't have them at that point, and then we just start building the war chest before we develop the procedure on an intervention, but it starts immediately upon notice.

BY MR. STOKES:

Q      Did your team have enough time and resources to complete the remediation of the Howell, Jeffers and Foltz wells?

MR. McCALL:   Objection to form.

A      Yes.   In retrospect, yes.

I know there was some frustration with the possibility, you know, that pressure would result in us getting done -- or being forced to be done earlier, but we saw them all the way through to completion.

Nobody --

Nobody in the end forced us to go faster in the remediations, and I think that led to the success that we saw.

BY MR. STOKES:

Q      Was there ever a time when you or your team requested resources, funding, or extra time from senior management to perform remediation work and were told no?

A      No.

Q      Do you recall being asked about some questions --

Deposition of Steve Novakowski                                    Delaware County Employees Retirement System v. Cabot Oil & Gas Corp., et al

Strike that.

Do you recall being asked about some disclosure questionnaire responses that you provided back in 2017?

A    No.

Q    Do you recall --

We can look at Exhibits 20 and 21, but do you recall some questions earlier today about a disclosure questionnaire document and responses about things that would keep you up at night, for example?

A    Yes.  Yes.

Q    And do you recall, for example, I think it was Exhibits 20 and 21 where you expressed concerns about pressure that was created by gas migration investigations and some of the timing pressure and other pressure associated with remediation and investigation work?

Do you recall that?

MR. McCALL:  Objection to form.  Sorry.  I needed to get that in.

A    Yes.

BY MR. STOKES:

Q    Okay.  Did you continue to express concern during your 2018 and 2019 disclosure questionnaire responses about this pressure issue that you raised in 2017?

A    I think there was --

I'd have to review them all to know for sure if I

continued, but I think generally over time, you know, that ebbed and flowed with the gas investigations that were going on the GMIs.

Q     Did --

To the best of your knowledge, did Cabot ever fail to perform necessary or timely remediation work due to any drill schedule pressure or any other internal or external pressures?

MR. McCALL:  Objection to form.

A     No, I never --

We were -- immediately shifted gears into remedial mode so, no, I never felt any pressure on that.

BY MR. STOKES:

Q     And would you personally have allowed Cabot to engage in inadequate or untimely remedial work due to any type of pressure?

MR. McCALL:  Objection to form.

A     No.

BY MR. STOKES:

Q     Did you ever communicate to Mr. Dinges, Mr. Schroeder, Mr. Stalnaker or anybody else in senior management that you believe Cabot took inadequate, insufficient or untimely steps to remediate gas migration?

MR. McCALL:  Objection to form.

A     No.

Deposition of Steve Novakowski

BY MR. STOKES:

Q    Did you ever communicate to Mr. Dinges, Mr. Schroeder, Mr. Stalnaker or anybody else in senior management that you thought Cabot had inadequately or insufficiently remediated the Howell or the Jeffers Farm wells?

A    No.

Q    Did you ever communicate --

Strike that.

Did you ever communicate to Mr. Dinges, Mr. Schroeder, Mr. Stalnaker or anybody else in senior management that you believe Cabot took inadequate or insufficient or untimely steps to remediate other gas wells?

MR. McCALL:  Objection to form.

A    No.

BY MR. STOKES:

Q    We looked at or I think you were shown Exhibit 18 earlier, and I'd like to pull that document back up, if you've got it.

I can share my screen, if needed.

A    I have it.

Q    You have it?

Do you know --

Sorry.  I just had it in front of me, and it disappeared.