UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | § § § § | Civil Action No. 4:21-cv-02045 |
| | § | District Judge Lee H. Rosenthal |
| Plaintiff, | § § | CLASS ACTION |
| | § | |
| vs. | § § | |
| | § | |
| CABOT OIL & GAS CORPORATION, et al., | § § | |
| | § | |
| Defendants. | § § | |
| | § | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES' MOTION FOR LEAVE TO AMEND THE COMPLAINT PURSUANT TO FED. R. CIV. P. 15(a)**

**[REDACTED]**

# TABLE OF CONTENTS

**Page No.**

I.    SUMMARY OF THE ARGUMENT ................................................................................. 1

II.    SUMMARY OF THE AMENDED ALLEGATIONS ....................................................... 2

    A.    FY 2018 Production Guidance Statements ............................................................. 3

    B.    FY 2019 Production Guidance Statements ............................................................. 5

    C.    The Failure to Disclose Pending Criminal Charges and Ongoing
        Gas Migration Issues.............................................................................................. 8

III.    NATURE AND STAGE OF THE PROCEEDINGS ....................................................... 10

IV.    ARGUMENT................................................................................................................... 11

    A.    The Proposed Amendment Is Timely and Not Made in Bad Faith....................... 11

    B.    Defendants Will Not Suffer Undue Prejudice if Leave to Amend Is
        Granted.................................................................................................................. 12

    C.    The Proposed Amendment Is Not Futile .............................................................. 13

        1.    The FY 2018 Production Guidance Statements Are
            Actionable ................................................................................................. 14

        2.    The FY 2019 Production Guidance Statements Are
            Actionable ................................................................................................. 15

        3.    The Failures to Disclose the Ongoing Criminal
            Case, Pending Criminal Charges and Ongoing Gas
            Migration Incidents Are Actionable ......................................................... 17

V.    CONCLUSION................................................................................................................ 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dueling v. Devon Energy Corp.*,
623 F. App'x 127 (5th Cir. 2015) ........................................................................................12

*Dussouy v. Gulf Coast Inv. Corp.*,
660 F.2d 594 (5th Cir. 1981) ...............................................................................................11

*Foman v. Davis*,
371 U.S. 178 (1962)........................................................................................................1, 11

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
2011 WL 3329374 (D.N.J. Aug. 1, 2011) ...........................................................................12

*Hudson v. L&W Supply Corp., Inc.*,
2009 WL 10693829 (S.D. Tex. June 18, 2009)...............................................................12, 13

*Jones v Robinson Prop. Grp., LP*,
427 F.3d 987 (5th Cir. 2005) ...............................................................................................11

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ...............................................................................................17

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
751 F.3d 368 (5th Cir. 2014) ...............................................................................................11

*Matrixx Initiatives, Inc. v. Siracusano*,
563 U.S. 27 (2011).................................................................................................................13

*Mayeaux v. La. Health Serv. & Indem. Co.*,
376 F.3d 420 (5th Cir. 2004) ...............................................................................................11

*N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*,
898 F.3d 461 (5th Cir. 2018) ............................................................................................2, 13

*In re OCA, Inc. Sec. & Derivative Litig.*,
2006 WL 3747560 (E.D. La. Dec. 14, 2006)........................................................................14

*Rubinstein v. Collins*,
20 F.3d 160 (5th Cir. 1994) .................................................................................................17

*Smith v. EMC Corp.*,
393 F.3d 590 (5th Cir. 2004) ...............................................................................................12

*Stripling v. Jordan Prod. Co., LLC,*
   234 F.3d 863 (5th Cir. 2000) ...................................................................................13

*Vasto v. Credico (USA) LLC,*
   2016 WL 3926466 (S.D.N.Y. July 18, 2016) ........................................................12

**Other Authorities**

Fed. R. Civ. P. 15(a) ...................................................................................................1

Fed. R. Civ. P. 15(a)(2)..............................................................................................11

## I.    SUMMARY OF THE ARGUMENT

The Court set an October 20, 2023 deadline to move to amend the pleadings in this case. *See* ECF No. 156.  Pursuant to that schedule, Class Representatives Delaware County Employees Retirement System and the Iron Workers District Council (Philadelphia & Vicinity) Retirement and Pension Plan ("Plaintiffs") seek leave to amend the First Amended Consolidated Complaint ("FAC") to conform the pleadings to the evidence developed during discovery.[1]  The proposed Second Amended Consolidated  Complaint ("SAC") alleges relevant facts known and available to, and discussed by, Defendants, as evidenced by the documents produced and depositions taken by Plaintiffs in this action.  The proposed SAC does not name any new parties or expand the certified Class Period (February 22, 2016 and June 12, 2020).

This motion ("Motion") is governed by the liberal standard of Federal Rule of Civil Procedure ("Rule") 15(a).  Under this standard, the Court should "freely give" Plaintiffs leave to amend unless Defendants can establish:  (i) undue delay, bad faith, or a failure to cure deficiencies in the pleadings through amendments previously allowed; (ii) that the amendment would be unduly prejudicial to Defendants; or (iii) that the amendment would be futile.  *See* Rule 15(a); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  None of these factors are present here.[2]

*First*, Plaintiffs have timely filed this Motion in accordance with the Court's Scheduling Order.  ECF No. 156.  Plaintiffs' SAC includes evidence that was uncovered during Plaintiffs' review of documents produced by Defendants and through recent deposition testimony, which has not yet concluded.  Thus, there is no undue delay or bad faith.

---

[1] A copy of the proposed SAC and a "redlined" copy of the proposed SAC, comparing the new, proposed allegations to the FAC (ECF No. 110), are attached as Exhibits A and B, respectively to the accompanying Declaration of Andrew L. Zivitz.  Unless otherwise noted: (i) internal quotation marks and citations are omitted; and (ii) emphasis is added. Citations to ¶__ refers to the SAC.

[2] Pursuant to the Court's Procedures, Rule 9.A.4, Plaintiffs state the issues to be ruled upon and relevant standards of review *infra* at 11 (Rule 15(a) standard), 11-12 (undue delay), 12 (prejudice), and 13-14 (futility).

*Second*, the amendment is not unduly prejudicial to Defendants.  The SAC does not require additional discovery or alter the Class Period, and contains new allegations on only three discrete issues that arise from the same common nucleus of operative fact upon which the parties have already focused their discovery efforts.  As such, the SAC will not delay the proceedings.  Indeed, with the exception of two remaining depositions, fact discovery is complete.

*Third*, the proposed amendment is not futile.  The futility of a proposed amendment is evaluated under the same standards that govern a motion to dismiss under Rule 12(b)(6). *N. Cypress Med. Ctr. Operating Co., Ltd. v. Aetna Life Ins. Co.*, 898 F.3d 461, 478 (5th Cir. 2018). Plaintiffs' new allegations involve false and misleading statements involving the (i) FY2018 production guidance; (ii) FY2019 production guidance; and (iii) failure to disclose material information about the Pennsylvania Attorney General's ongoing criminal case and forthcoming charges against Cabot and ongoing gas migration issues.  In each instance, the new allegations provide ample factual support to show that Defendants knew these alleged false statements were false and misleading and lacked any reasonable basis or, in the case of the omitted information about the criminal charges and ongoing gas migration issues, made recklessly.  These detailed allegations easily satisfy the Rule 12(b)(6) pleading standard, and Defendants therefore cannot establish that amendment would be futile.

For these reasons, Plaintiffs' proposed amendment should be allowed.

## II.   SUMMARY OF THE AMENDED ALLEGATIONS

The SAC includes three new sets of alleged misleading statements regarding (i) the FY2018 production guidance; (ii) the FY2019 production guidance; and (iii) the failure to disclose material information about the Pennsylvania Attorney General's ongoing criminal case and forthcoming charges against Cabot and ongoing gas migration issues impacting the company's operations. The first set of statements regarding the FY2018 production guidance occurred on

April 27, 2018, and were corrected on July 27, 2018.  The second set of statements regarding the FY2019 production guidance occurred on October 28, 2018, February 22, 2019, and April 26, 2019, and were corrected on July 26, 2019.  The third set of statements regarding Defendants' failure to disclose the impending criminal charges and ongoing gas migration issues occurred on July 26, 2019, February 25, 2020 and May 1, 2020, respectively, and was corrected on June 15, 2020—the same day criminal charges were filed against Cabot. The SAC alleges that internal documents produced by Defendants and testimony from witnesses now show that these statements were materially misleading, omitted material facts, and lacked any reasonable basis.

### A.      FY 2018 Production Guidance Statements

The SAC alleges that on April 27, 2018, during Cabot's first quarter 2018 Earnings Call, Defendant Dinges told investors that Cabot was "reaffirm[ing]" its "2018 daily production guidance range of 10% to 15%." ¶ 191.  This guidance range was reiterated in a subsequent press release filed that same day. *Id*.  The SAC further alleges, however, that Cabot knew the FY2018 production results would fall materially short of that range and lacked any reasonable basis. *Id*.

Beginning in 2017, and lasting through 2019, Cabot's Drilling Manager for the North Region, Steve Novakowski, ████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████. *Id*.

In addition to these concerns, the SAC alleges that Cabot's senior management also

3

repeatedly expressed doubt about the company's ability to achieve their production guidance in the weeks and days leading up to the April 27, 2018 earnings release and conference call. ¶ 191(c). For example, on April 9, 2018, Matthew Kerin, Cabot's Treasurer and Head of Investor Relations, sent an email to Dinges and Schroeder observing that ███████████████████████ ███████████████████████ ¶ 191(d).  That same day, Defendant Schroeder emailed other senior executives, including Stalnaker and Kerin, noting that ████████████████████ ████████████████████████████████████████████ ███████████████████████ ¶ 191(e).  Schroeder then ████████████████ ████████████████████████████████████████████ ███████████████████████████ *Id*.

Within hours of Schroeder's ████████████, the SAC alleges that the forecasting team identified ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████. ¶ 191(f).  On April 18, 2018, the forecasting team submitted a new forecast to Cabot's senior management in response to Schroeder's mandate. ¶ 191(g).  Upon receiving this "new" forecast, Kerin immediately ████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████. *Id*.

On April 24, 2018, just three days before Cabot reissued its 2018 guidance, Hlavinka conceded in an email sent to Schroeder that ████████████████████████ ████████████████████████████████. ¶ 191(h).  That same day, Hlavinka sent a separate email to Stalnaker, which included ██████████████████████ ████████████████████████████████████████████

4

███████████████████████████████████ ¶ 191(i).  In comparing these two forecasts,

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████. *Id*.

Despite these ██████████████████████████████████████, the SAC

alleges that on April 27, 2018, Defendants reaffirmed the previously provided 2018 production

guidance.  ¶ 192.  It was not until July 27, 2018 that Cabot publicly reduced its production guidance

range.  *Id*.  During Cabot's 2Q 2018 Earnings Call, Defendant Dinges announced a reduction in

the top end of the Company's annual production guidance for FY2018, down to 10%-12%.  *Id*.

This announcement caused Cabot's stock price to decline 7.7%, on abnormally heavy trading, and

damaged investors.  *Id*.

**B.    FY 2019 Production Guidance Statements**

The SAC next alleges that on October 26, 2018, February 22, 2019 and April 26, 2019,

Defendants materially misled investors about Cabot's FY2019 production growth guidance.  On

October 26, 2018, during Cabot's third quarter 2018 Earnings Call, Defendant Dinges stated that

Cabot's "2019 production growth guidance range [was between] 20% to 25%."   ¶ 193.  Dinges

further assured investors on this same call that the 20%-25% guidance range was "light" because

of the Company's purportedly "prudent" decision to cut growth in order to provide additional value

to shareholders.  ¶ 194.  On February 22 and April 26, 2019, in press releases accompanying other

financial results, Defendants continued to issue false statements regarding the FY2019 production

guidance, by narrowing and reaffirming the production guidance to 20%, which represented the

lower end of the previously provided guidance range.  ¶ 196.  Like the FY2018 statements, the

SAC alleges that the evidence shows ██████████████████████████████████

███████████████████████████████████████████████████████████████████████████.

¶ 197.

The SAC alleges that throughout 2018, Cabot struggled to meet its preliminary FY2018 production guidance of 10%-15%, lowering it on two separate occasions during the year, including down to 7%-8% on October 26, 2018—the same day Cabot issued its false and misleading preliminary production guidance for FY2019. ¶ 197(a). Prior to publicly reducing the FY2018 guidance for the first time on July 27, 2018, Kerin informed Dinges, Schroeder, and Stalnaker that

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████. *Id.* Additionally, Novakowski continued to warn Stalnaker and the Disclosure Committee, including on October 1, 2018 and April 3, 2019, about

████████████████████████████████████████████████████████████████

████████ ¶ 197(b).

According to the SAC, it was against this backdrop that Defendants manufactured an inflated 2019 production range that lacked any reasonable basis. On October 18, 2018, Stalnaker informed Hlavinka and other members of the forecasting team to ██████████████████

████████████████████████████████████████████████. ¶ 197(c). Shortly thereafter, the forecasting team, led by Reservoir Engineer Guy Shirey, warned Stalnaker and Hlavinka about █████████████████████████████████████████████████

███████████████████████████████████ ¶ 197(d). In particular, Shirey highlighted

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ *Id.*

On October 24, 2018, just two days before Cabot released its FY2019 preliminary production guidance of 20%-25%, the SAC alleges that Hlavinka emailed Stalnaker informing him that ███████████████████████████████████████████ ¶ 197(e)-(f). ███████████████████████████

███████████████████████████████████████████

███████████████████████████ ¶ 197(e).  Hlavinka testified, however, that ████████

███████████████████████████████████████████

███████████████████████. ¶ 197(f).  Hlavinka further testified that ████████████

███████████████████████████████████████████

███████████████████████████████. *Id*.  Moreover, according to the SAC, when Hlavinka was shown the █████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████ *Id*.

In response to Hlavinka's █████████████, the SAC alleges that Stalnaker told him to ███████████████████████████████████████. ¶ 197(g) Stalnaker, however, also █████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████. *Id*.

The SAC alleges that by July 2019, Cabot internally recognized that ████████████

███████████████████████████████████████████

███████████████████████████████████ ¶ 197(h).  On July 15, 2019, Kerin informed Dinges, Schroeder, and Stalnaker that ██████████████

███████████████████████████████████████████

██████████. *Id.* After Kerin clarified for Stalnaker the ████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████ *Id.*

On July 26, 2019, according to the SAC, Cabot publicly reduced its production growth guidance to a range of 16%-18% – ████████████████████████████████. ¶ 198. That same day, Cabot issued its Form 10-Q filed with the SEC which also revealed that it had received two proposed Consent Orders and Agreements related to a June 2017 Notice of Violation and a November 2017 Notice of Violation. ¶ 199. These announcements caused Cabot's stock price to decline 12%, on abnormally heavy trading, and damaged investors. *Id.*

**C.      The Failure to Disclose Pending Criminal Charges and Ongoing Gas Migration Issues**

The SAC alleges that on February 25, 2020, when Cabot filed its 2019 Form 10-K, it disclosed to investors that "[t]he company is a defendant in various legal proceedings arising in the normal course of business." ¶ 202. In this same disclosure, Cabot also made representations about legal proceedings related to "Environmental Matters" currently facing the Company, including the previously sustained false statements involving ongoing environmental claims that the Company faced limited and non-specific Notice of Violations, "performed appropriate remediation efforts," and that "the[] water quality complaints had been resolved." ¶¶ 202, 220. According to the SAC, these disclosures were false and misleading when made because Defendants failed to disclose material information related to ████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████. ¶ 202.

The SAC alleges that Defendants omitted material information regarding ████████████

██████████████████████████████████████████████████

8

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ *Id.*

Indeed, the Grand Jury's subsequent public presentment of charges, referenced throughout the SAC, confirmed that it recommended criminal charges to be filed against Cabot on February 11, 2020. *Id.* Thus, the SAC alleges that given ████████████████████████████████ ████████████████████████ they had a duty to disclose this information based on their selective disclosures, as well as pursuant to Item 103 of Regulation S-K, which requires, among other things, disclosure of "proceedings known to be contemplated by governmental authorities." *Id.*

Additionally, on July 26, 2019, Cabot filed its Form 10-Q, disclosing that the company had received two proposed Consent Orders and Agreements related to the June 2017 Notice of Violation and the November 2017 Notice of Violation. ¶ 201. However, Defendants omitted that

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████. *Id.* Thus, despite disclosing the first two proposed Consent Orders, Defendants ████████████████████████████████████████ ████████████████████████████████████████████████. Cabot's failure to remediate gas migration under its obligations pursuant to the December 2010 Consent Order provided the basis, in part, for the eventual criminal allegations filed against Cabot by the Pennsylvania Attorney General on June 15, 2020. ¶¶ 121-26.

In Cabot's July 26, 2019 press release the company also concealed information relating to ████████████████████████████████████████████████████. The press release stated that Cabot's reduction in production guidance was due "in large part to a change in the operating

9

plan resulting from a unique opportunity to acquire acreage adjacent to an eight-well pad, allowing the Company to increase the total lateral footage on the pad . . . ." ¶ 200.  Cabot's statement, ███

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████ *Id*.  Notably, the Powers M well pad was one of the well pads that provided the basis for the eventual criminal allegations filed against Cabot by the Pennsylvania Attorney General on June 15, 2020.  *Id*.

## III.    NATURE AND STAGE OF THE PROCEEDINGS

On February 11, 2022, Plaintiffs filed the FAC individually and on behalf of the putative class.  ECF No. 110.  On August 10, 2022, the Court denied in part Defendants' motion to dismiss the FAC.  ECF No. 118.  On December 5, 2022, Plaintiffs filed their Motion for Class Certification.  ECF No. 134.  On September 27, 2023, the Court granted Plaintiffs' Motion for Class Certification, certifying a Class "consisting of all persons or entities who purchased or otherwise acquired Cabot…common stock between February 22, 2016 and June 12, 2020, inclusive…, and were damaged thereby." ECF No. 173.

Pursuant to the Court's Scheduling Order, which was negotiated and proposed by the parties, the deadline for motions for leave to amend pleadings is October 20, 2023.  ECF No. 156.  The fact discovery deadline was October 13, 2023.  *Id.*  The parties have completed fact discovery with the exception of the depositions of two individuals, including Defendant Dinges. The parties must serve opening expert reports by November 3, 2023; rebuttal expert reports by November 22, 2023; and completion of expert discovery is December 22, 2023.  *Id.*  The dispositive motion deadline is January 19, 2024.  *Id*.

## IV.    ARGUMENT

Rule 15(a) establishes a liberal standard for amendments: "[T]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2); *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004); *Jones v Robinson Prop. Grp., LP*, 427 F.3d 987, 994 (5th Cir. 2005). The Supreme Court has held that "this mandate is to be heeded" to allow a plaintiff the "opportunity to test his claim on the merits." *Foman*, 371 U.S. at 182. Moreover, the Fifth Circuit has routinely found that the language of Rule 15(a) "evinces a bias in favor of granting leave to amend" and that district courts "must entertain a presumption in favor of granting parties leave to amend." *Mayeaux*, 376 F.3d at 425. In deciding whether to grant leave to amend, the district court may consider a variety factors, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party…, and futility of the amendment." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (ellipsis in original); *Foman*, 371 U.S. at 182.[3]

Because there is no evidence supporting any of these factors, the Court should grant Plaintiffs' Motion.

### A.    The Proposed Amendment Is Timely and Not Made in Bad Faith

Plaintiffs did not unduly delay or act in bad faith in seeking leave to amend. A court cannot deny leave to amend on grounds of delay based on the "mere passage of time." *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981) (the "mere passage of time need not result in refusal of leave to amend; on the contrary, it is only undue delay that forecloses amendment").

---

[3] This Motion does not implicate a "failure to cure deficiencies in the pleadings through amendments previously allowed." Rule 15(a)(2). On January 12, 2022, the Court dismissed Plaintiffs' consolidated complaint with leave to amend. ECF No. 109. Plaintiffs then filed the FAC. ECF No. 110. Since that time, Plaintiffs have not sought leave to amend. The newly added allegations in the SAC are not related to the allegations that the Court previously dismissed.

11

Delay becomes "undue" only when it places an "unwarranted burdens on the court." *Hudson v. L&W Supply Corp., Inc.*, 2009 WL 10693829, at *5 (S.D. Tex. June 18, 2009) (Rosenthal, J.).

No such burden exists here.  First, Plaintiffs moved for leave to amend within the deadlines established by the Court's Scheduling Order.  *See id.* ("Undue delay is present when an amendment is untimely..."); *Vasto v. Credico (USA) LLC*, 2016 WL 3926466, at *2 (S.D.N.Y. July 18, 2016) (finding that when leave to amend is sought within the deadline, "[i]t is . . . ***per se timely***."); *Howmedica Osteonics Corp. v. Zimmer, Inc.*, 2011 WL 3329374, at *1 n.2 (D.N.J. Aug. 1, 2011) ("Plaintiff moved for leave [to] amend by the Court's deadline and thereby seasonably exercised its opportunity to amend its pleading within the window framed by the Court.").  Second, Plaintiffs moved to amend after new evidence supporting the amendments came to light and immediately following the close of fact discovery (as contemplated by the Scheduling Order).  In drafting the SAC, Plaintiffs reviewed the critical documents and witness testimony adduced in discovery, thereby avoiding serial motions to amend and conserving judicial resources.

**B.      Defendants Will Not Suffer Undue Prejudice if Leave to Amend Is Granted**

Defendants will not suffer undue prejudice if the Court grants the Motion.  In certain situations, a defendant is prejudiced if an added claim would require the defendant "to reopen discovery and prepare a defense for a claim different from the [one]…that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (*quoting Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (alterations in original); *Dueling v. Devon Energy Corp.*, 623 F. App'x 127, 130 (5th Cir. 2015) ("Delay is undue and prejudicial if it hinders the opposing party's ability to respond to the proposed amendment or to prepare for trial.").

Here, Defendants cannot establish that any prejudice, let alone, undue prejudice will result from the filing of the SAC.  The SAC names the same Defendants as the prior complaint, does not extend the Class Period, and contains only discrete allegations that arise from the same common

12

nucleus of operative fact upon which the parties have already focused their discovery efforts. Indeed, the newly alleged misstatements involve allegations that Cabot ███████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████. The new allegations also involve Defendants' omission of material information concerning the ████████████████████ ████████████████████████████████████████████. These allegations are fully supportable on the current record without the need for additional fact discovery and will not delay these proceedings. Accordingly, because the newly alleged statements will not require Defendants to expend any additional resources to conduct discovery or prepare for trial, the Motion should be granted.

### C.    The Proposed Amendment Is Not Futile

Finally, granting Plaintiffs leave to amend the Complaint would not be futile, as the new allegations in the SAC largely expand upon claims and theories previously sustained by the Court. "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion." *N. Cypress Med. Ctr. Operating Co., Ltd.*, 898 F.3d at 478. In determining whether an amendment is insufficient on its face, courts employ "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *see also Hudson*, 2009 WL 10693829 at *5. Accordingly, consistent with Rule 12(b)(6), courts must: (i) review the allegations of the complaint "in the light most favorable to the plaintiff and with every doubt resolved in his behalf"; and (ii) uphold a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Stripling*, 234 F.3d at 873.[4]

---

[4] To state an actionable claim under Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5, a plaintiff must allege: (1) a false statement or omission of material fact in connection with the sale or purchase of a security; (2) made with scienter; (3) upon which the plaintiff relied; and (4) that caused plaintiff's losses. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

13

The proposed amendments in the SAC are not futile.  The additional grounds for liability alleged are based on viable legal theories and particularized facts that are derived from evidence obtained during discovery.  The Class relied upon these statements and suffered losses as a result.

**1.      The FY 2018 Production Guidance Statements Are Actionable**

The allegations in the SAC supporting the first set of false and misleading statements involving the FY2018 production guidance range of 10%-15% are sufficient to state a claim and are not futile.  *In re OCA, Inc. Sec. & Derivative Litig.*, 2006 WL 3747560, at *16 (E.D. La. Dec. 14, 2006) (finding a statement or omissions is actionable if it "would lead a reasonable investor to form an impression . . . in contradiction to the reality…those statements can be considered false under the PSLRA's heightened pleading standard").  Here, the SAC provides ample factual support showing that Defendants knew these statements regarding FY2018 production results were misleading and lacked any reasonable basis.

The SAC alleges that prior to publicly reporting financial guidance,



¶ 191(c)-(d).

¶ 191(e)-(i).  Indeed, just days before

Defendants issued the allege false statement, ███████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████████.

¶ 191(i). Thus, as these allegations demonstrate, on April 27, 2018, Defendants knew that when they reaffirmed their production guidance range as 10%-15%, their statements were false and misleading and lacked any reasonable basis. Moreover, when these statements were corrected on July 27, 2018, and Dinges was forced to reduce the top-end of Cabot's FY2018 production guidance range down to 10%-12%, Cabot's stock price to decline 7.7%. ¶ 192.

Accordingly, these alleged false statements are sufficiently particularized and establish falsity and scienter on the part of Defendants, as well as provide a reasonable inference of loss causation. As such, they are not futile.

**2.      The FY 2019 Production Guidance Statements Are Actionable**

The second set of false statements alleged in the SAC also sufficiently state a claim and are not futile. Like the FY2018 statements described above, the SAC sufficiently alleges that Defendants knew the alleged false statements about Cabot's FY2019 production guidance range, which were made on three separate occasions and initially included a production range of 20%-25% before being narrowed to 20%, were materially misleading to investors and lacked a reasonable basis. ¶¶ 193-97. Here, the SAC alleges that Novakowski again ████████████

████████████████████████████████████████████████████

███████████████████ ¶ 197(b). The SAC further alleges that around the same time as

Novakowski's █████████████████████████████████

████████████████████████████████████████████. ¶ 197(a).

Kerin even sought █████████████████████████████████

████████████████████████████. *Id.*

15

As the date for publishing the FY2019 guidance range neared, ███████████████ ███████████████████████████████████████████████ ¶ 197(c)-(d). Indeed, the SAC alleges that Dinges and Schroeder sought to ███████████████ ████████████████████████████████ ¶ 197(c).  In response, members of the forecasting team warned their direct supervisors, Stalnaker and Hlavinka, ████████ ██████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████ ¶ 197(d).  When the forecasting team delivered the FY2019 forecast to senior management, which indicated a ███████████████████████████████ ████████████████████████ ¶ 197(e)-(f).  In its place, Hlavinka ████████████ ██████████████████████████████████████ 197(e). But, as the SAC alleges, neither Hlavinka nor Stalnaker could ██████████████ ████████████████████████████████████████████████████████. 197(f)-(g).

Additional internal documents described in the SAC show that by July 2019, Defendants understood that ██████████████████████████████████████. ¶ 197(h). In yet another email exchange between Kerin and Stalnaker over the pending FY2019 guidance reduction that the company was preparing to disclose, Stalnaker admitted that ████████████ ██████████████████████████████ In response, Kerin conceded that Defendants ████████████████████████████████████████████████████ *Id*. Thus, demonstrating knowledge on the part of these senior executives, who routinely met with Dinges and Schroeder to review financial disclosures, that the previously disclosed FY2019 ranges were false and misleading.  Ultimately, on July 26, 2019, when Defendants did publicly disclose their guidance reduction to 16%-18% (██████████████████████████████████

16

████████████████ ), Cabot's stock price declined by 12%. ¶¶ 198-99.

Accordingly, the SAC provides sufficient support to show that the statements made by Defendants involving the FY2019 production guidance were also misleading and lacked any reasonable basis, and establish a reasonable inference of loss causation. As such, these statements are not futile.

> **3. The Failures to Disclose the Ongoing Criminal Case, Pending Criminal Charges and Ongoing Gas Migration Incidents Are Actionable**

The allegations supporting Defendants' failure to disclose the Pennsylvania Attorney General's ongoing criminal case, including the impending criminal charges, in its 2019 Form 10-K and May 1, 2020 10-Q, and ongoing gas migration incidents in its July 26, 2019 Form 10-Q press release also sufficiently state a claim and are not futile. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 248-49 (5th Cir. 2009) ("Once the defendants engaged in public discussions concerning the [issue] . . . they had a duty to disclose a mix of information that is not misleading."); *see also Rubinstein v. Collins*, 20 F.3d 160, 170 (5th Cir. 1994) (duty to speak full truth arises when defendant undertakes "a duty to say anything").

Here, as the SAC alleges, at the time of the false statements on February 25, 2020 and May 1, 2020, Defendants' contemporaneous knowledge involving the ongoing criminal case into its environmental operations included: (i) ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████. ¶ 202. Thus, Defendants were fully aware of ████████████████████████████████████

████████ But rather than disclose this material information, Defendants instead offered the market generic language about, among other things, general compliance with environmental laws

and that the Company typically is a "defendant in various legal proceedings *arising in the normal course of business*." *Id*. Moreover, Defendants continued to make limited disclosures about two unnamed Notices of Violation for which they claimed to have "performed appropriate remediation." ¶ 220. Not surprisingly, the wells that were the subject of these Notices of Violation, were part of the slate of wells that were subsequently charged by the Pennsylvania Attorney General. ¶¶ 129-30. Finally, as the SAC alleges, Cabot also had an independent duty to disclose this information according to Item 103 of Regulation S-K. ¶ 202.

The SAC also alleges selective and incomplete disclosures regarding gas migration incidents facing Cabot. In Cabot's July 26, 2019 Form 10-Q, Defendants made an affirmative decision to disclose two proposed consent orders and agreements received from the Pennsylvania Department for gas migration incidents while concealing ██████████████████████

████████████████████████████████████████████████

████████████████████████████████ ¶ 201.[5]  Though Cabot

received ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████  *Id*.

Moreover, in Cabot's July 26, 2019 press release, Defendants made a similar affirmative decision to disclose the impact of a change in the operating plan at the Powers M pad supposedly caused by an increase to the length of the well. ¶ 200. But the press release concealed that, at the time of the press release, the operating plan for the Powers M well pad was ████████████████

████████████████████████████████████████████████

---

[5] The Court has already held that Cabot's disclosures regarding its remedial efforts at the wells encompassed by the two disclosed consent orders and agreements are themselves misleading. ECF No. 118.

18

██████████████████████████████ – nine days prior to the July 26 press release. *Id.* Ultimately, the Pennsylvania Department issued Cabot a Notice of Violation for the incident, and the Powers M well pad ████████████████████████████████ ████████████████████████. *Id.*

Ultimately, and as previously alleged by Plaintiffs, on June 15, 2020, when Cabot was criminally charged with fifteen criminal counts—including nine felonies—arising from its failure to remediate faulty gas wells, Cabot's stock price declined by more than 3%. ¶¶ 274-75. Defendants' failure to disclose the information involving the pending criminal charges and known, ongoing gas migration incidents that formed a basis for the charges was, therefore, false and misleading and foreseeably connected to the subsequent stock decline that harmed investors. As such, the Motion sufficiently states a claim and is not futile.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for leave to file the proposed Second Amended Complaint.

Dated:  October 20, 2023                Respectfully submitted,

                                        KENDALL LAW GROUP, PLLC
                                        JOE KENDALL (S.D. Texas Bar No. 30973,
                                        Texas Bar No. 11260700, Attorney in Charge)


                                                /s/ Joe Kendall
                                                JOE KENDALL

                                        3811 Turtle Creek Blvd., Suite 1450
                                        Dallas, TX  75219
                                        Telephone:  214/744-3000
                                        214/744-3015 (fax)
                                        jkendall@kendalllawgroup.com

                                        Local Counsel

19

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARRYL J. ALVARADO
KEVIN A. LAVELLE
JACK A. GEPHART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
klavelle@rgrdlaw.com
jgephart@rgrdlaw.com

Class Counsel

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ANDREW L. ZIVITZ
JOSHUA E. D'ANCONA
JAMIE M. McCALL
ALEX B. HELLER
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
jdancona@ktmc.com
jmccall@ktmc.com
aheller@ktmc.com


Class Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on October 20, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

/s/ Joe Kendall
JOE KENDALL

KENDALL LAW GROUP, PLLC
3811 Turtle Creek Blvd., Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

E-mail:  jkendall@kendalllawgroup.com