# Exhibit 3

Case 4:21-cv-02045    Document 190-3    Filed 11/13/23 in TXSD    Page 2 of 5
Deposition of Scott Craig Schroeder
Delaware County Employees Retirement System v. Cabot Oil & Gas Corp., et al

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

Civil Action No. 4:21-cv-02045

DELAWARE COUNTY EMPLOYEES RETIREMENT
SYSTEM, Individually and on behalf
of all others similarly situated,

         Plaintiffs,

v.

CABOT OIL & GAS CORPORATION, et al.,

         Defendants.

_____

***********************************

REMOTE VIDEO DEPOSITION OF SCOTT CRAIG SCHROEDER

September 22, 2023

***********************************

     REMOTE VIDEO DEPOSITION OF SCOTT CRAIG SCHROEDER taken via Zoom in the above-styled and numbered cause on September 22, 2023, commencing at 8:08 a.m. Central Time before Gina Williams, Registered Professional Reporter, Certified Realtime Reporter, and Certified Realtime Captioner.

Deposition of Scott Craig Schroeder

Delaware County Employees Retirement System v. Cabot Oil & Gas Corp., et al

Page 6

VIDEOGRAPHER:  We are now on the record.  Today's date is September 22, 2023, and the time is 8:08 a.m. Central Time.

This is the recorded video deposition of Scott Schroeder being taken in the matter of Delaware County Employees Retirement System v. Cabot Oil & Gas Corp., et al. in the United States District Court for the Southern District of Texas, Civil Action No. 4:21-cv-02045.

My name is Alex Held.  I'm the video specialist. The court reporter is Gina Williams.  We are from Everest Court Reporting.

All counsel appearing today will be noted on the stenographic record.

Will the court reporter please swear in the witness.

- - - -

WHEREUPON,

CRAIG SCOTT SCHROEDER

was called as a witness and, after having been first duly sworn, was deposed and testified as follows:

EXAMINATION

BY MR. ALVARADO:

Q    Good morning, Mr. Schroeder.

Can you please state your full name for the

Page 7

record?

A    Scott Craig Schroeder.

Q    You are located in Houston today; is that correct?

A    That is correct.

Q    Are you taking this deposition at Coterra's offices?

A    Yes, I am.

Q    Is anyone in the room with you?

A    Peter Stokes.

Q    You are recently retired from Coterra Energy; is that right?

A    Not until next Friday -- or next Saturday.

Q    Congratulations.

Today I'm going to refer to Coterra as "the company" or "Cabot."

You'll understand what I'm referring to; is that right?

A    That's correct.

Q    Have you ever had your deposition taken before?

A    I have not.

Q    Okay.  You understand that you're giving testimony here, and that even though we're in an informal setting, the testimony you provide is given the same weight as if given in a court of law?

Page 8

A    Yes, I do.

Q    Do you understand that the testimony you give today may be shown to a jury one day?

A    Yes, I do.

Q    You understand that you are to testify truthfully and to the best of your ability; right?

A    Yes, I do.

Q    The court reporter, Gina, who is on the Zoom with us today, is taking everything that's being said, my questions and your answers and any objections from Mr. Stokes, so it's important that we not speak over each other, so if we could both --

If you'd let me finish my question before you answer, I'll likewise let you finish your answer before I proceed to the next question.

Is that fair?

A    That is fair.

Q    If for any reason you don't understand a question, I'd be happy to rephrase it.  If you go ahead and answer the question, I'm going to assume that you understood it.

Is that fair?

A    That's fair.

Q    Is there anything that would prevent you from giving your best testimony today here, medical or otherwise?

Page 9

A    No, there's not.

Q    Do you have any documents or notes or visual aids with you today?

A    I do not.

Q    Can you agree that you will not consult any documents other than the exhibits I show you during the proceedings today?

A    I will agree.

Q    Have you ever been named as a defendant in a criminal action?

A    I have not.

Q    Other than --

A    Other than this.

Q    Other than this case, have you ever been named as a defendant in a civil action?

A    No, I have not.

Q    You're represented by the Norton Rose law firm; is that right?

A    That's correct.

Q    Did you sign a retention agreement with the law firm for the engagement of them in this case?

A    I did not.

Q    You're not paying the bills for your legal representation that's being provided by Norton Rose; right?

A    I am not paying.

Deposition of Scott Craig Schroeder

Page 182

Do you recall that this -- this is a draft of one of the disclosures at issue in this lawsuit?

A    Yes, I recall that.

Q    Do you also recall that there were other disclosures in 2016 and early 2017 about a different NOV from 2011 that's also the subject of this lawsuit?

MR. ALVARADO:  Objection to form.

A    Yes.

BY MR. STOKES:

Q    You can answer again.

A    Yes, I'm aware of that.

Q    You made references to a process that you followed in reviewing 10-Q and 10-K disclosures.

Can you describe the process that you followed in reviewing the disclosure in Exhibit 205 and the other disclosures relating to these two NOVs from 2017 and the prior NOVs from 2011?

A    Yes.

The process that I referred to is our disclosure committee process that we utilize at the end of every quarter.

As I shared before, Todd Roemer and Deidre Shearer, chief accounting officer and SEC counsel corporate secretary, are the leaders of that with two other senior team members, Jeff Hutton and Steve Lindeman.

Page 183

Steve Lindeman is over all the EHS effort at the organization.

And all the critical managers each quarter would meet with those four individually and would come before the four individually and talk about anything that had come to mind during the most recent quarter, and with the goal of having determination, do we have additional disclosures we need to do on all kinds of topics, is there anything we should be aware of, and that group then vetted and made recommendations to Dan Dinges and myself about what changes we may need to make.

That group would bring forward any kind of disclosure changes, written examples like this, the language around all the referenced environmental disclosures that you talked about, of which then the team --

It would be incorporated in the draft of the public documents and reviewed by everybody on the distribution list, which was probably at least ten-plus people, as I talked about before earlier today.

And in addition, it would be presented to the committees of the board, EHS committee, obviously the 10-Q, 10-K would be in front of the audit committee, and in general board session.

So there was a lot of eyes looking at anything before it went out the door, and we were always very

Page 184

comfortable with what we put forth.

Q    As a result of the process you described, did you reach any conclusions with respect to the substance of the disclosure -- the draft disclosure contained in Exhibit 205?

A    That it was --

From knowledge internally, it was true and accurate and 100 percent factual in terms of what we were going to present to the marketplace.

Q    Did you reach any conclusions as a result of the process you described with respect to the earlier disclosures about the 2011 NOVs?

A    Same outcome.

It was well thought out, well written, and it laid all the facts out, and it was true and accurate for disclosure to the marketplace.

Q    During the board -- board committee meetings that you described, did you hear any information that would cause you to disagree with or question any of the statements in these disclosures?

A    No, I did not.

Q    You've been shown a number of documents today as part of your deposition.

As a result of the documents you've seen today, do you, sitting here today, have any different views about the accuracy of the disclosure reflected in Exhibit 205 and

Page 185

the earlier disclosures about the 2011 NOVs?

MR. ALVARADO:  Objection to form.

A    I do not.

BY MR. STOKES:

Q    Do you have any doubt, sitting here today, about the accuracy of these disclosures?

A    I do not.

MR. ALVARADO:  Same objection.

BY MR. STOKES:

Q    Did anybody furnish you with any factual information prior to publishing these disclosures that contradicted any of the statements that were contained in the disclosure?

MR. ALVARADO:  Objection to form.

A    No, I did not.

BY MR. STOKES:

Q    You were also asked about changes to guidance in capital budget July 26, 2019.

Do you recall those questions?

A    I do.

Q    How much of those changes resulted from any issues relating to gas migration?

MR. ALVARADO:  Objection to form.

A    None.

Deposition of Scott Craig Schroeder

CERTIFICATE

I, Gina Williams, Registered Professional Court Reporter, do certify that the above deposition was reported by me and that the foregoing transcript is a true and accurate record to the best of my knowledge, skills, and ability.

I further certify that I am not an employee of counsel or any of the parties, nor a relative or employee of any attorney or counsel connected with the action, nor financially interested in the action.

Subscribed and sworn to before me when taken this 22nd day of September, 2023.

*Gina Williams*

GINA WILLIAMS, RPR, CRR