UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 4:21-cv-02045 |
| | § | CLASS ACTION |
| Plaintiff, | § § § | |
| vs. | § § § | |
| CABOT OIL & GAS CORPORATION, et al., | § § | |
| Defendants. | § § § § | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF CLASS REPRESENTATIVES'
MOTION FOR LEAVE TO AMEND THE COMPLAINT PURSUANT TO
FED. R. CIV. P. 15(a)**

4855-8990-3761.v2

**TABLE OF CONTENTS**

                                                                                      **Page**

I.      INTRODUCTION ........................................................................................1

II.     LEAVE TO AMEND SHOULD BE GRANTED .............................................2

        A.     The Proposed Allegations State a Claim .........................................2

               1.     The 2018 Production Guidance Was Knowingly False..................3

               2.     The 2019 Production Guidance Statements Were Knowingly False.................5

               3.     Defendants Omitted Receipt of a Consent Order from the 2Q19 Form
                      10-Q for Longstanding, Known Violations ......................................7

               4.     Defendants Concealed Impending Criminal Charges ......................7

        B.     The Guidance-Related Statements Are Not Protected by the Safe Harbor ...................8

        C.     The 2018 Production Guidance Statements Are Not Time Barred ............................11

               1.     The Statute of Repose Bars New "Actions," Not Amendments to the
                      Same Action................................................................................12

               2.     Rule 15(c)'s Relation Back Applies to Statutes of Repose .............13

               3.     The 2018 Guidance Statements Relate Back.................................13

        D.     The Additional Environmental-Related Claims are Not Futile ....................15

        E.     There is No Undue Delay or Undue Prejudice in Seeking the Amendment ...............18

               1.     Plaintiffs Timely Moved to Amend the Complaint........................18

               2.     Defendants Will Not Suffer Undue Prejudice................................19

III.    PLAINTIFFS' EXISTING ALLEGATIONS..................................................21

        A.     Defendants Improperly Seek to Transform a Motion to Amend into a
               Premature Summary Judgment Motion on Plaintiffs' Existing Allegations ................21

        B.     The Discovery Record Corroborates Plaintiffs' Existing Allegations .........................22

        C.     The Geologist Confirmed the Allegations Attributed to Her .......................................23

IV.     CONCLUSION.............................................................................................25

- i -

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Aforigho v. Tape Prods. Co.*,
    334 F.R.D. 86 (S.D. Tex. 2020).................................................................................................13

*Aguirre v. SBC Commc'ns., Inc.*,
    2007 WL 772756 (S.D. Tex. Mar. 12, 2007) (Rosenthal, J.) ..................................................18

*Beggins v. CBRE Cap. Mkts. of Tex. L.P.*,
    2018 WL 2289509 (S.D. Tex. May 18, 2018) (Rosenthal, J.)................................................18

*Bond v. Clover Health Invs., Corp.*,
    587 F. Supp. 3d 641 (M.D. Tenn. 2022)................................................................................18

*Bos. Ret. Sys. v. Alexion Pharms., Inc.*,
    2023 WL 2932485 (D. Conn. Apr. 13, 2023).........................................................................21

*Brand Coupon Network, LLC v. Catalina Mktg. Corp.*,
    748 F.3d 631 (5th Cir. 2014) ..................................................................................................21

*Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*,
    582 U.S. 497 (2017)................................................................................................................12

*Carlton v. Cannon*,
    184 F. Supp. 3d 428 (S.D. Tex. 2016) (Rosenthal, J.)....................................................10, 15

*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*,
    2021 WL 3190508 (E.D. Tex. July 28, 2021) ........................................................................18

*City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*,
    2019 WL 452051 (S.D.N.Y. Feb. 5, 2019)..............................................................................8

*Clean Energy v. Trillium Transp. Fuels, LLC*,
    2021 WL 3410668 (S.D. Tex. July 6, 2021)...........................................................................15

*Coll. Ret. Equities Fund v. Boeing Co.*,
    2023 WL 6065260 (N.D. Ill. Sept. 18, 2023) ..........................................................................8

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
    2023 WL 6300569 (S.D. Tex. Sept. 27, 2023) ......................................................................17

*Durand v. Hanover Ins. Grp., Inc.*,
    806 F.3d 367 (6th Cir. 2015) ..................................................................................................14

4855-8990-3761.v2

**Page**

*Dussouy v. Gulf Coast Inv. Corp.*,
    660 F.2d 594 (5th Cir. 1981) ...................................................................................20

*FDIC v. Conner*,
    20 F.3d 1376 (5th Cir. 1994) ...................................................................................15

*Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*,
    2015 WL 4879217 (E.D. La. Aug. 14, 2015) ............................................................10

*Flores v. Cameron Cnty.*,
    92 F.3d 258 (5th Cir. 1996) ...............................................................................14, 15

*Franchi v. SmileDirectClub, Inc.*,
    633 F. Supp. 3d 1046 (M.D. Tenn. 2022)..................................................................18

*Friedl v. City of N.Y.*,
    210 F.3d 79 (2d Cir. 2000)........................................................................................19

*Ga. Firefighters' Pension Fund v. Anadarko Petroleum Corp.*,
    514 F. Supp. 3d 942 (S.D. Tex. 2021) ......................................................................10

*Gambo v. Citizens, Inc.*,
    2018 WL2107205 (W.D. Tex. May 7, 2018) .............................................................16

*Greebel v. FTP Software, Inc.*,
    182 F.R.D. 370 (D. Mass. 1998), *aff'd*, 194 F (1st Cir. 1999)..................................19

*Fresno Cnty. Emps.' Ret. Ass'n. v. comScore, Inc.*,
    268 F. Supp. 3d 526 (S.D.N.Y. 2017)........................................................................11

*Ho v. Flotek Indus., Inc.*,
    248 F. Supp. 3d 847 (S.D. Tex. 2017) .......................................................................16

*Hogan v. Pilgrim's Pride Corp.*,
    73 F. 4th 1150 (10th Cir. 2023) .................................................................................13

*Hudson v. L&W Supply Corp.*,
    2009 WL 10693829 (S.D. Tex. June 18, 2009) (Rosenthal, J.).................................20

*In re AT & T Sec. Litig.*,
    2004 WL 6392120 (D.N.J. Apr. 7, 2004) ..................................................................18

*In re Bristol-Myers Squibb Sec. Litig.*,
    228 F.R.D. 221 (D.N.J. 2005)....................................................................................18

**Page**

*In re Cassava Scis., Inc. Sec. Litig.*,
   2023 WL 3442087 (W.D. Tex. May 11, 2023) .........................................................................16

*In re Celgene Corp. Sec. Litig.*,
   2019 WL 6909463 (D.N.J. Dec. 19, 2019) ................................................................................8

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
   2016 WL 215476 (S.D. Tex. Jan. 19, 2016) ............................................................................21

*In re Dynegy, Inc. Sec. Litig.*,
   339 F. Supp. 2d 804 (S.D. Tex. 2004) ....................................................................................21

*In re Envision Healthcare Corp. Sec. Litig.*,
   2022 WL 4551876 (M.D. Tenn. Sept. 29, 2022) ...............................................................12, 13

*In re KLX, Inc. Sec. Litig.*,
   232 F. Supp. 3d 1269 (S.D. Fla. 2017) ...................................................................................10

*In re Longtop Fin. Tech. Ltd. Sec. Litig.*,
   939 F. Supp. 3d 360 (S.D.N.Y. 2013).....................................................................................13

*In re Noah Educ. Holdings, Ltd. Sec. Litig.*,
   2010 WL 1372709 (S.D.N.Y. Mar. 31, 2010) ........................................................................15

*In re Oracle Corp. Sec. Litig.*,
   627 F.3d 376 (9th Cir. 2010) ...................................................................................................8

*In re Overstock Sec. Litig.*,
   2021 WL 4267920 (D. Utah Sept. 20, 2021)............................................................................8

*In re Vale S.A. Sec. Litig.*,
   2017 WL 1102666 (S.D.N.Y. Mar. 23, 2017) ........................................................................10

*Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
   537 F.3d 527 (5th Cir. 2008) ..................................................................................................16

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009).....................................................................................................11

*JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*,
   615 F. Supp. 3d 750 (M.D. Tenn. 2022)..................................................................................13

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001).....................................................................................................16

**Page**

*Lickteig v. Cerberus Cap. Mgmt., L.P.*,
  2020 WL 7629876 (S.D.N.Y. Dec. 22, 2020) ..........................................................................19

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
  594 F.3d 383 (5th Cir. 2010) ....................................................................................................21

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ............................................................................................. *passim*

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016)........................................................................................18

*Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*,
  332 F.R.D. 370 (N.D. Ga. 2019*)*...............................................................................................20

*Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,
  877 F.3d 687 (6th Cir. 2017) ....................................................................................................15

*Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*,
  2011 WL 13135654 (S.D. Tex. July 19, 2011).........................................................................18

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) ............................................................................................6, 7, 16

*Pasternack v. Shrader*,
  863 F.3d 162 (2d Cir. 2017)......................................................................................................12

*Perez v. New Breed Logistics, Inc.*,
  2017 WL 40289 (S.D. Tex. Jan. 4, 2017) .................................................................................11

*Rademaker v. E.D. Flynn Exp. Co.*,
  17 F.2d 15 (5th Cir. 1927) ........................................................................................................11

*Ramirez v. Exxon Mobil Corp.*,
  334 F. Supp. 3d 832 (N.D. Tex. 2018) ........................................................................................9

*Rooney v. EZCORP, Inc.*,
  2018 WL 3596054 (W.D. Tex. July 26, 2018) ..........................................................................19

*Rougier v. Applied Optoelectronics, Inc.*,
  2019 WL 6111516 (S.D. Tex. Mar. 27, 2019)..........................................................................11

*Schirle v. Sokudo USA, L.L.C.*,
  484 F. App'x 893 (5th Cir. 2012) ..............................................................................................15

4855-8990-3761.v2

**Page**

*Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*,
12 F.4th 337 (3d Cir. 2021) ...................................................................................12, 13

*SEPTA v. Orrstown Fin. Svs. Inc.*,
335 F.R.D. 54 (M.D. Pa. 2020).......................................................................................20

*Smith v. EMC Corp.*,
393 F.3d 590 (5th Cir. 2004) ..........................................................................................19

*Smith v. Reg'l Transit Auth.*,
756 F.3d 340 (5th Cir. 2014) ................................................................................2, 5, 11

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125 (C.D. Cal. 2011) .........................................................................15

*St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*,
2022 WL 4598044 (M.D. Tenn. Sept. 30, 2022)...........................................................21

*Thomas as Tr. of Performance Prods. Inc. v. Hughes*,
2018 WL 2996901 (W.D. Tex. Feb. 22, 2018)...............................................................20

*United States v. Corp. Mgmt., Inc.*,
78 F.4th 727 (5th Cir. 2023) ..........................................................................................15

*W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
2017 WL 3668957 (D. Or. June 2, 2017) .........................................................................8

*Yoshikawa v. Exxon Mobil Corp.*,
2022 WL 4677621 (N.D. Tex. Sept. 29, 2022)...............................................................10

*Zwick Partners, LP v. Quorum Health Corp.*,
394 F. Supp. 3d 804 (M.D. Tenn. 2019)........................................................................19

## STATUTES, RULES AND REGULATIONS

28 U.S.C.
§1658(b)...........................................................................................................................12

17 C.F.R.
§229.103(a) ......................................................................................................................17
§229.103(c)(3)(i), (iii).....................................................................................................17

**Page**

Federal Rules of Civil Procedure
    Rule 15(a)...................................................................................................................2, 18
    Rule 15(c)(1)(B)........................................................................................................11, 13
    Rule 15(c)........................................................................................................................13

4855-8990-3761.v2

## I.    INTRODUCTION

Defendants' Opposition ("Opposition" or "Opp."), while long on rhetoric, fails to explain why the Court should not "freely give" Plaintiffs leave to amend under Federal Rule of Civil Procedure ("Rule") 15(a)'s liberal standard.  Far from an "eleventh-hour" effort to "transform this suit" (Opp. at 1), the proposed Second Amended Consolidated Complaint ("SAC") was timely filed pursuant to the Court's schedule and simply conforms the pleadings to the evidence obtained in discovery – precisely what was contemplated by the ***Court-ordered*** post-fact discovery deadline to amend the pleadings ***agreed to by all parties***.  Accordingly, Defendants do not and cannot meet their burden to establish that the amendment would cause either undue delay or undue prejudice, or that the amendment would be futile.

***First***, because the SAC readily meets the pleading standards for the Exchange Act claims, Defendants cannot establish futility.  Here, the SAC alleges, based on evidence, including internal Cabot communications and deposition testimony, that Defendants knowingly made materially misleading statements and omissions regarding the Company's publicly stated production guidance and the legal and regulatory risks Cabot faced.  Defendants, unable to legitimately challenge the sufficiency of Plaintiffs' allegations, resort to disputing the well-pled facts and inferences and citing extrinsic evidence from outside the four corners of the SAC, none of which is proper at the pleading stage.

***Second***, Defendants' safe harbor argument likewise fails, as Defendants had actual knowledge that their production guidance statements were false.  Moreover, the statements were not accompanied by meaningful cautionary language beyond rote, boilerplate, and regurgitated disclaimers.  Nowhere in any of the cautionary language cited by Defendants did Cabot warn that its publicly issued production guidance was false and manufactured from the top down for the purpose of appeasing the market.  Accordingly, Defendants find no immunity in the safe harbor.

***Third***, the 2018 production guidance statements are not barred by the statute of repose, as the

- 1 -

4855-8990-3761.v2

SAC does not constitute a "new" action, and relates back to the claims in the timely-filed operative complaint concerning the impact of faulty well construction on Cabot's ability to produce gas and meet its guidance.

*Fourth*, because the SAC was filed in accordance with the Court's scheduling order (to which the Defendants agreed) and immediately following the close of fact discovery, a "presumption of timeliness" applies to the SAC. As such, Defendants cannot establish undue delay.

*Fifth*, because the SAC does not add defendants, expand the Class Period, or bring new causes of action, but instead adds allegations that arise from the same operative facts as the First Amended Complaint, all of which was addressed during discovery, Defendants cannot establish undue prejudice.

*Finally*, Defendants' lengthy fact-bound arguments regarding Plaintiffs' previously upheld and unchanged allegations are irrelevant to whether leave to amend should be granted under Rule 15(a) for the new allegations. Also, Defendants' self-serving recitation of facts outside the SAC mischaracterizes the evidentiary record and the scope of this case as set forth by the Court in its Class Certification ruling.

## II.    LEAVE TO AMEND SHOULD BE GRANTED

### A.    The Proposed Allegations State a Claim

Defendants contend that the SAC is "futile" because Plaintiffs fail to adequately plead falsity and scienter. Opp. at 18-24. Yet, although they recognize that the amendment is evaluated under the same standards that govern a Rule 12(b)(6) motion to dismiss (Opp. at 18), Defendants' arguments are nonetheless based on impermissible factual disputes and conflicting "interpretations" of the allegations that are inappropriate at the pleading stage. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014). As discussed below, the SAC's allegations state a claim.[1]

---

[1]    Unless otherwise noted, all emphasis is added and citations are omitted, and all capitalized terms used herein have the same meaning as set forth in the Memorandum of Law in Support of Class Representatives' Motion for Leave to Amend the Complaint Pursuant to Fed. R. Civ. P. 15(a) and all "¶__" and "¶¶__" are to the SAC.

4855-8990-3761.v2

### 1.    The 2018 Production Guidance Was Knowingly False

██████████████████████████████████████████████████████████

███████████████████████████████████████████. ¶191.  The SAC

cites selected internal company documents and deposition testimony corroborating ████████

██████████████████████

For example, Steven Novakowski, the Drilling Manager for the North Region, stated █

██████████████████████████████████████████████████████████

████████████████████████████  ¶191(b).  Starting in 2017, █████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████  *Id.*

Novakowski further testified that delays in the drilling schedule resulted in a "cascading effect" that

impacted Cabot's ability to maintain its production budget.  *Id.*

Defendants attempt to explain away these facts, stating that the "guidance claims fail" because

Novakowski did not express a "specific concern that any of Cabot's publicly reported guidance was

unachievable" and that there is no evidence that "Novakowski's concerns actually materialized."  Opp.

at 14.  Both arguments fail.  The SAC cites documentary evidence ██████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

¶191(f).

Moreover, the SAC alleges ██████████████████████████████████

████████████████████  ¶191.  Prior to publicly reporting financial guidance regarding Cabot's

production levels, Dinges and Schroeder received forecasting information from the North region and

attended meetings with other key Cabot executives to review this information.  ¶191(a).  ██████████

- 3 -

4855-8990-3761.v2

██████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* For

example, ████████████████████████████████████████

██████████████████████████████████████ ¶191(c). ████

██████████████████████████████████████████████████

¶191(d). ████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████ ¶191(e).

Faced with these allegations, Defendants offer a counter-narrative, suggesting that this April 9,

2018 email (¶191(e)) somehow "refutes any inference [that] the guidance was knowingly false" because

Schroeder inquired as to what was being done to "get back *closer* to budget." Opp. at 12. First,

Defendants' fact-bound argument conflicts with the SAC's allegations. Second, the email plainly shows

that, in the weeks leading up to the false April 27, 2018 statement, Schroeder knew that Cabot's

production levels placed the Company below the guidance range provided to investors.



██████████████████████████████████████████. ¶191(g). Second, █████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ ¶191(h). Here again,

Defendants offer alternate interpretations and claim that these emails actually "confirm[] that Cabot did

have a reasonable belief the guidance range could still be achieved." Opp. at 13. But those factual

arguments are not only incorrect (the emails demonstrate early April events belied the April 27 guidance),

- 4 -

4855-8990-3761.v2

they have no place at the pleading stage. *See Smith*, 756 F.3d at 347 ("When deciding a Rule 12(b)(6) motion, '[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'") (alteration in original).

### 2.    The 2019 Production Guidance Statements Were Knowingly False

The SAC adequately alleges that

¶197.

¶193.                          . ¶197(a)-(f). In fact,

¶197(a)-(f).[2]

¶197(h).

*Id.* Defendants ignore this startling admission, pointing instead to Kerin's comment that Cabot was at "19 and change," not 20%. Opp. at 15.

¶198.

---

[2]    Defendants suggest that the fact that the October 26, 2018 guidance was "preliminary" somehow absolves them of liability. Opp. at 14.



¶197(h).

*Id.*

*Id.*

Defendants assert that they "did not represent that the acreage acquisition was the only reason for the change."  Opp. at 16.

¶200; *see Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 217 (5th Cir. 2023) ("'a duty to speak the full truth arises when a defendant undertakes a duty to say anything'").  Defendants also claim that the SAC fails to allege "that the Powers Pad investigation resulted in any change to the guidance . . . or that Dinges and Schroeder acted with scienter."  Opp. at 16.  Wrong again.

¶200.  In fact, a *previously-withheld document* Ex. 1[3] at CABOT_03407786-R.[4]

---

[3]    Unless otherwise noted, all "Ex __" references are to the Declaration of Kevin A. Lavelle, filed concurrently herewith ("Lavelle Decl.").

[4]    On November 2, 2023, Defendants produced, for the first time, Ex. 1 to Plaintiffs.  Inexplicably, the email showing ▮▮▮▮ was withheld throughout fact discovery based on purported privilege grounds despite not including any lawyers or discussion of legal advice.

- 6 -



¶200.

### 3. Defendants Omitted Receipt of a Consent Order from the 2Q19 Form 10-Q for Longstanding, Known Violations

¶201.

Defendants claim that this omission did not "render[] any other statements materially misleading or fraudulent" (Opp. at 16), but fail to grapple with their disclosure obligations under Item 103 (*see* §II.D., *infra*), as well as their duty to speak the "'full truth.'" *Six Flags*, 58 F.4th at 217. Plainly, selectively disclosing only two of three Consent Orders received from the ***same regulator*** on the ***same day*** to conceal decade-old continuing violations in the infamous Dimock Box was materially misleading. *Id.*

### 4. Defendants Concealed Impending Criminal Charges

¶202. These statements were misleading by omission

*Id.* Internal documents confirm that,

¶203.

Unable to disclaim that they had actual knowledge of the impending charges, Defendants resort

to splitting hairs as to the exact nature of their knowledge.  They claim that their knowledge was limited to the impending misdemeanor charges "rather than the felonies that were ultimately announced in June 2020."  Opp. at 17.  But even accepting this premise, Defendants still **knew** of a criminal complaint, regardless of whether they had actually "seen" it, and **expected criminal charges** to be filed.  Equally unpersuasive is Defendants' contention that the statement was not misleading because "[s]imply being 'charged' is not the same as being 'convicted.'"  *Id.* ███████████████████████████████

███████████████████████ ¶202; *see* §II.D., *infra*.

## B.      The Guidance-Related Statements Are Not Protected by the Safe Harbor

The 2018 and 2019 guidance-related statements are actionable because they were made knowingly and were not accompanied by meaningful cautionary language.  ***First***, ████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████ *See* ¶¶191(a)-(i), 197(a)-(h).  The SAC alleges detailed facts

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████ *Id.*; *see also*, §§II.A.1.-2., *supra*.[5]

***Second***, "[e]ven if the plaintiff had failed to plead actual knowledge, the safe harbor provision

---

[5]     Defendants' cases are inapposite.  Opp. at 21 n.12.  None involve allegations, like those here, of defendants' actual knowledge of falsity based on ***evidence***.  *See Coll. Ret. Equities Fund v. Boeing Co.*, 2023 WL 6065260, at *13 (N.D. Ill. Sept. 18, 2023) (finding that forward-looking statements were not false on the grounds that "[t]he plaintiffs have not pled with particularity the specific knowledge that [defendants] possessed which would contradict" their public statements); *In re Celgene Corp. Sec. Litig.*, 2019 WL 6909463, at *16 (D.N.J. Dec. 19, 2019) (finding that plaintiffs did not plead actual falsity only because the statements in question were made before the defendants were "'expressly warned' . . . 'that the forecasted . . . sales . . . were not attainable'"); *City of Warwick Mun. Emps. Pension Fund v. Rackspace Hosting, Inc.*, 2019 WL 452051, at *4 (S.D.N.Y. Feb. 5, 2019) (holding that falsity was not sufficiently pled on the grounds that plaintiffs "repeatedly failed to specifically allege why they believe [d]efendants' actual knowledge was incompatible" with the allegedly false statements); *W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 2017 WL 3668957, at *25 (D. Or. June 2, 2017) (finding that statements lay within the safe harbor because plaintiffs "alleged only that [defendant] faced obstacles to meeting its forecast[s]"); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 390-91 (9th Cir. 2010) (finding that plaintiffs had failed to show that defendants had no reasonable basis for several of its guidance statements); *In re Overstock Sec. Litig.*, 2021 WL 4267920, at *8 (D. Utah Sept. 20, 2021) (same).

- 8 -

still would not apply here, because the alleged misrepresentations are not accompanied by 'meaningful cautionary language.'" *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 244 (5th Cir. 2009).[6]  The press releases containing the false guidance statements generically provide, without specifying which statements were purportedly forward-looking, that "such statements" involve risks related to "market factors, market prices (including geographic basis differentials) of natural gas and crude oil, results of future drilling and marketing activity, future production and costs, legislative and regulatory initiatives, electronic, cyber or physical security breaches and other factors detailed herein and in our other Securities and Exchange Commission (SEC) filings" and that if any of these generic risks come to fruition, "***actual outcomes may vary*** materially from those indicated."  ECFs 190-11 at 9 of 15, 190-12 at 11-12 of 19, 190-13 at 13 of 21, 190-14 at 10 of 17.  This is the ***exact*** type of "warning" that the Fifth Circuit has held to be boilerplate and not "meaningful."  *See Lormand*, 565 F.3d at 244 (holding that disclaimer that forward-looking "statements in its documents are 'not guarantees of future performance . . . and involve known and unknown risks and other factors that ***could cause actual results to be materially different*** from any future results expressed or implied by them'" to be boilerplate and not meaningful) (ellipsis in original); *see also id.* at 245 ("The generic language is merely a 'litany of generally applicable risk factors' applied as boilerplate to every alleged misrepresentation . . . .").[7]

Further, "'[w]hen risks have already begun to materialize, it is no longer sufficient to generally warn of the possibility of these risks in the future.'"  *Ga. Firefighters' Pension Fund v. Anadarko*

---

[6]   Defendants challenge the analysis in *Lormand*, stating that the Fifth Circuit's holding that actual knowledge is sufficient to render forward-looking statements actionable "would conflict with prior Fifth Circuit precedent."  Opp. at 19 n.10. Regardless, the SAC pleads both actual knowledge and that Defendants' guidance-related statements were not accompanied by meaningful cautionary language.

[7]   In fact, those ***same*** generic disclaimers were ***repeated*** at the bottom of each relevant press release in summary form disconnected from any purportedly forward-looking statement, further highlighting that the disclaimers were not meaningful. *Id.*; *see also id.* ("Each statement that benefits from the safe harbor must be addressed individually."); *see also Ramirez v. Exxon Mobil Corp.*, 334 F. Supp. 3d 832, 850 (N.D. Tex. 2018) ("Courts cannot apply a blanket safe harbor for all forward-looking statements but must determine how a statement is specifically and meaningfully protected by the safe harbor.").

- 9 -

4855-8990-3761.v2

*Petroleum Corp.*, 514 F. Supp. 3d 942, 953 (S.D. Tex. 2021).  Defendants' disclosure of risks that had already materialized renders them not meaningful.[8]

Recognizing that the disclaimers in the relevant press releases are woefully inadequate, Defendants improperly cite to other warnings contained in extraneous Forms 10-K.  But that is insufficient.  *See In re Vale S.A. Sec. Litig.*, 2017 WL 1102666, at *25 (S.D.N.Y. Mar. 23, 2017) ("However, given that the risk disclosures are found in entirely different, unrelated documents from the forward-looking statements, those forward-looking statements were not 'accompanied by' the purported cautionary language.").  Moreover, the non-accompanying language only warns that actual results may vary due to a litany of general risks that could impact ***any*** oil and gas company.  *See* Opp. at 19-20 (citing to warnings relating to "'unexpected drilling conditions,'" "'equipment failures,'" "'delays in the availability of drilling rigs or crews,'" "'the availability of leases,'" "'business opportunities not previously identified,'" and "numerous other risks").  None of these risks warned that Defendants knew the guidance was unachievable.  *See Lormand*, 565 F.3d at 247 ("These warnings did not disclose that defendants knew" that existing conditions subjected the company to business and financial harm.); *see also id.* (finding that the "warning ***does not disclose the specific risks*** and their magnitude").  Indeed, as this Court has held previously, "[t]he case law is clear that . . . '"boilerplate" warnings won't do; ***cautions must be tailored to the risks that accompany the particular projections***,'" yet none of the cited disclaimers here warned that production guidance might not be achieved because Defendants knowingly overstated it.  *Carlton v. Cannon*, 184 F. Supp. 3d 428, 454 (S.D. Tex. 2016) (Rosenthal, J.); *see also*

---

[8]   Defendants' cases are unavailing (Opp. at 19 n.10), as each is based on a finding that the defendants did not have actual knowledge that the risks identified in the warning statements had already begun to materialize.  *See Yoshikawa v. Exxon Mobil Corp.*, 2022 WL 4677621, at *11 (N.D. Tex. Sept. 29, 2022) ("[p]laintiffs have not pleaded facts showing that [d]efendants knew the warned-of risks were already coming to fruition"); *Firefighters Pension & Relief Fund of the City of New Orleans v. Bulmahn*, 2015 WL 4879217, at *16 (E.D. La. Aug. 14, 2015) ("plaintiff has failed to allege facts that the risks that [defendants] warned of had already come to pass so as to take the cautionary language out of the PSLRA's safe harbor protection"); *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1281 (S.D. Fla. 2017) ("Plaintiffs' Amended Complaint contains no relevant allegations – no reports . . ., no tips, no emails, no confidential witnesses – that indicate or even suggest that [d]efendants made any statements knowing them to be false.").

4855-8990-3761.v2

*Fresno Cnty. Emps.' Ret. Ass'n. v. comScore, Inc.*, 268 F. Supp. 3d 526, 548 (S.D.N.Y. 2017) ("'"the relevant cautionary language must be ***prominent and specific***, and must ***directly address exactly the risk that . . . was not disclosed***'"'"). As the Fifth Circuit stated in *Lormand*, Cabot's general extraneous warnings "do not provide sufficiently meaningful caution about clearly present danger that was materializing." *Lormand*, 565 F.3d at 247.[9]

***Third***, ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████. ¶194; *see Rougier v. Applied Optoelectronics, Inc.*, 2019 WL 6111516, at *10 (S.D. Tex. Mar. 27, 2019) ("a lie about a ***present fact*** is not protected by the PSLRA's safe harbor provision"); *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 255 (3d Cir. 2009) (present fact statements "justify[ing] the financial projections" actionable). Moreover, ████████████████████████████████████

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████ ¶197.

### C.    The 2018 Production Guidance Statements Are Not Time Barred

The 2018 production guidance statements are not barred by the statute of repose because: (i) the statute of repose bars new "actions," not amendments to the ***same*** action; and (ii) the relation back doctrine applies, as the 2018 production guidance statements "arose out of the conduct, transaction, or occurrence" described in the FAC. Fed. R. Civ. P. 15 (c)(1)(B).[10]

---

[9]   Asking the Court to indulge an impermissible dispute of fact at the pleading stage, Defendants argue that their cited disclaimers "warned of the same types of risks that led to the guidance reductions," citing to their own self-serving cause for the production misses. Opp. at 20. But the SAC alleges █████████████████████████████████████
████████████████████████████████████████ ¶¶191, 197. While Defendants can argue at trial that Cabot's production missed the mark for the reasons they disclosed, Plaintiffs' allegations govern at the pleading stage. *See Smith*, 756 F.3d at 347.

[10]   To the extent Defendants are also challenging the 2019 production guidance statements on repose grounds, their argument fails for the same reasons set forth above ██████████████████████████████████████████
███████████████████ *See* ¶¶193-194; *see also Rademaker v. E.D. Flynn Exp. Co.*, 17 F.2d 15, 17 (5th Cir. 1927) ("application for leave to amend, as full and comprehensive as this one is in its averment of facts, stands in the place of an actual amendment"); *Perez v. New Breed Logistics, Inc.*, 2017

- 11 -

4855-8990-3761.v2

### 1.  The Statute of Repose Bars New "Actions," Not Amendments to the Same Action

The Exchange Act's statute of repose provides that a "right of action" may not be "brought" outside of the five-year repose period.  *See* 28 U.S.C. 1658(b).  But the Supreme Court has made clear that "action" refers to a "judicial 'proceeding,' or . . . to a 'suit' – not to the general content of claims." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 514 (2017).  The Third Circuit recently applied this plain statutory language in *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs., Inc.*, 12 F.4th 337, 349-50 (3d Cir. 2021) ("*SEPTA*").  In that case, the plaintiff moved for leave to file its third amended complaint, *nine years* after the defendants issued the alleged misstatements, to reassert securities fraud claims against previously dismissed defendants with additional allegations regarding scienter.  *Id.*  The Third Circuit determined that the amendment was *not* time-barred, finding that "statutes of repose create a deadline for *filing* actions, rather than *resolving* them," and that the defendants had no right to repose because – like here – the plaintiff "brought an action under . . . the Exchange Act against all [d]efendants before the Act['s] deadlines."  *Id.* at 353; *see also In re Envision Healthcare Corp. Sec. Litig.*, 2022 WL 4551876, at *4 (M.D. Tenn. Sept. 29, 2022) ("The [c]ourt is not persuaded that by adding additional alleged misstatements to an existing cause of action in an existing case, Plaintiffs have 'brought' an 'action' within the meaning of 28 U.S.C. §1658(b).").

The same reasoning applies here.  Plaintiffs filed the FAC on February 11, 2022, well before the repose period expired, and now seek merely to amend the FAC with evidence and additional misstatements related to the existing claims.  The SAC thus does not constitute a new "action," but rather simply amends the allegations in the operative FAC.  As in *SEPTA*, the SAC "reasserts no more than the same claims, against the same parties, as the timely filed [original complaint]."  *SEPTA*, 12 F. 4th at 351.

WL 40289, at *4 (S.D. Tex. Jan. 4, 2017) ("*amended complaint is deemed filed on the date he filed his motion for leave to amend the complaint*"); *accord Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017).

- 12 -

4855-8990-3761.v2

And as the Tenth Circuit recently noted, "[w]e are aware of no authority suggesting that statutes of repose are intended to protect litigants from evidence uncovered late in the course of litigation." *Hogan v. Pilgrim's Pride Corp.*, 73 F. 4th 1150, 1158 (10th Cir. 2023) (permitting amendment after repose period).[11]

### 2.    Rule 15(c)'s Relation Back Applies to Statutes of Repose

Rule 15(c)'s relation back doctrine applies to statutes of repose where, as here, the amended complaint "restates claims with greater particularity and amplifies the factual circumstances surrounding the relevant conduct by adding significantly more factual detail to [plaintiff's] existing claims." *SEPTA*, 12 F.4th at 345, 350; *see also Hogan*, 73 F.4th at 1158 ("[I]t is well settled that an amendment that relates back to an earlier timely pleading is not barred by [the] statute of limitations . . . . We can think of no reason why a statute of repose should be treated otherwise."); *Envision*, 2022 WL 4551876, at *5 (finding that the statute of repose does not "foreclose relation back under Rule 15(c)").[12]

### 3.    The 2018 Guidance Statements Relate Back

Pursuant to Rule 15(c), an amendment relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15 (c)(1)(B). Thus, Rule 15(c) "is met if the original and amended complaints allege the same '***general conduct***' and '***general wrong***.'" *Aforigho v. Tape Prods. Co.*, 334

---

[11]    Defendants incorrectly claim Stalnaker has been inappropriately added as a Defendant, ignoring SAC footnote 2, which specifies that Plaintiffs are not re-alleging the prior claims and defendants that the Court already dismissed, and that those claims are only re-alleged to preserve appellate rights.

[12]    Without substantive analysis, Defendants cite two district court cases, *JRS Partners, GP v. Leech Tishman Fuscaldo & Lampl, LLC*, 615 F. Supp. 3d 750, 766-67 (M.D. Tenn. 2022), and *In re Longtop Fin. Tech. Ltd. Sec. Litig.*, 939 F. Supp. 3d 360, 380 (S.D.N.Y. 2013), to argue that relation back does not apply for securities claims. Opp. at 22. But these cases are factually distinguishable and do not address the logic of the Third and Tenth Circuit cases, including that amendments to the ***same*** action are not foreclosed by the statute of repose. In *JRS Partners*, the amended complaint ***added two new*** securities fraud causes of action which occurred outside the repose period, *see* 615 F. Supp. 3d at 760, while in *Longtop*, the amended complaint ***expanded the class period*** to allege an additional substantive claim that also occurred outside the five-year repose period (939 F. Supp. 3d at 366-67). Here, the SAC does not add any new causes of action, expand the Class Period, or add any new defendants, but instead adds evidence and misstatements that arise from the same core operative facts alleged in the FAC.

4855-8990-3761.v2

- 14 -

F.R.D. 86, 90 (S.D. Tex. 2020) (quoting *Durand v. Hanover Ins. Grp., Inc.*, 806 F.3d 367, 375 (6th Cir. 2015)); *see also Flores v. Cameron Cnty.*, 92 F.3d 258, 273 (5th Cir. 1996) (If a plaintiff seeks to "'amplify the facts alleged in a prior complaint, then relation back is allowed.'").

Applying these principles, a comparison of the FAC to the SAC shows that the alleged conduct underlying the 2018 production guidance statements arose from the same operative conduct previously alleged in the FAC. Specifically, regarding the FAC's sustained false statements and omissions, which focus on claims made by Cabot that it was, among other things, "performing appropriate remediation efforts," the FAC alleges that these statements were materially misleading because, in part, the ongoing remedial issues were "reasonably likely to, and would, adversely impact Cabot's ability to ***achieve its financial and operational projections*.**" FAC, ¶190(i); *see also id.*, ¶154 (alleging that remediation of a single well could "have a significant effect on Cabot's gas production"); *id.*, ¶222 (alleging Dinges's familiarity with "remediation issues" and their impact on production guidance); *id.*, ¶259 (alleging Cabot's production guidance had been negatively impacted by its "inability to resume drilling in the Dimock Box" due to ongoing violations).

The SAC's allegations concerning the 2018 production guidance arose, in part, from the same undisclosed remedial issues alleged in the FAC that plagued Cabot throughout the Class Period and impacted their ability to meet production guidance goals. For example, the SAC alleges that ███████

███████

███████

███████

███████

███████  ¶191(b).

Further, the SAC alleges that ███████

███████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████ ¶191(e)-(f).  Then, ████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████ ¶271.  Thus, the SAC's new

allegations arose from the same operative conduct alleged in the FAC and amplify that Cabot's ongoing

remedial work negatively impacted Cabot's ability to meet its production guidance.    The SAC's

allegations therefore relate back.  *See Flores*, 92 F.3d at 273 (holding if plaintiff seeks to "'amplify the

facts alleged in a prior complaint, then relation back is allowed'"); *FDIC v. Conner*, 20 F.3d 1376, 1386

(5th Cir. 1994) ("[I]f a plaintiff seeks to . . . state a new legal theory of relief, or amplify the facts alleged

in the prior complaint, then relation back is allowed."); *Norfolk Cnty. Ret. Sys. v. Cmty. Health Sys., Inc.*,

877 F.3d 687, 694 (6th Cir. 2017) ("[I]f the original complaint puts a defendant on notice of the plaintiff's

general claim, then new allegations that merely build on that claim should come as no surprise.").[13]

### D.    The Additional Environmental-Related Claims are Not Futile

The additional environmental-related allegations are not futile because Defendants knowingly

presented "an impression of a state of affairs that differ[ed] in a material way from [the] one that actually

existed."  *Carlton*, 184 F. Supp. 3d at 468 (alterations in original).  It is well-settled that "the disclosure

required by the securities laws is measured not by literal truth, but by the ability of the statements to

accurately inform rather than mislead prospective buyers."  *Lormand*, 565 F.3d at 248-49.  "Once the

---

[13]    Defendants' cases are distinguishable.  *See, e.g.*, (i) *United States v. Corp. Mgmt., Inc.*, 78 F.4th 727, 743 (5th Cir. 2023), holding that the new allegations related to "conduct different than that alleged in the original complaint"; (ii) *Schirle v. Sokudo USA, L.L.C.*, 484 F. App'x 893, 901-02 (5th Cir. 2012), holding that applicable Texas law (unlike the instant federal securities law) treats "'each alleged defamatory publication as a single transaction'"; (iii) *Clean Energy v. Trillium Transp. Fuels, LLC*, 2021 WL 3410668, at *3-*4 (S.D. Tex. July 6, 2021), holding that the amended complaint "changes gears," "adds an entirely new field of business"; (iv) *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1133 (C.D. Cal. 2011), holding that a complaint filed in California-state court that "expressly disclaimed all allegations of fraud and scienter," before being removed to federal court and amended to include, a ***newly alleged*** 10(b) fraud claim did not relate back; and (v) *In re Noah Educ. Holdings, Ltd. Sec. Litig.*, 2010 WL 1372709, at *9 (S.D.N.Y. Mar. 31, 2010), holding that the original complaint focused solely on the omission of information about the cost of raw materials, as opposed to the new allegations which turned on the defendant's noncompliance with Chinese regulatory requirements, labeling practices, and brand image.

- 15 -

4855-8990-3761.v2

defendants engaged in public discussions concerning the [issue], they had a duty to disclose a 'mix of information' that is not misleading." *Id.*

**_First_**, Defendants failed to disclose ███████████████████████████████████████████.

*See Six Flags*, 58 F.4th at 217 (For each of the issues Defendants spoke about, "a duty to speak **_the full_**

**_truth_** arises when a defendant undertakes a duty to say anything.").   Defendants told investors ██



¶200.[14]

**_Second_**, ███████████████████████████████████████████

███████████████████████████████████████████████████ ¶¶137-138, 201; *see*

*also In re Cassava Scis., Inc. Sec. Litig.*, 2023 WL 3442087, at *9 (W.D. Tex. May 11, 2023) (finding

that selective reporting "supports an inference of scienter").

**_Third_**, Item 103(a) required disclosure of the Pennsylvania Attorney General's criminal case.

---

[14]   Defendants cite *Ind. Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541-42 (5th Cir. 2008), to claim that their July 26, 2019 statements were not misleading because "a company need not disclose every conceivable reason for a change in outlook . . . as long as the affirmative statements are not misleading." Opp. at 23.  But here, Plaintiffs have alleged that Cabot's "affirmative statements" **_are_** misleading.  And here, in contrast to *Shaw*, Defendants chose to speak in detail regarding the delay and resulting impacts at Powers M, but failed to disclose that the delay was then caused by a contemporaneous ongoing gas migration investigation that would impact production at Powers M, thus creating a misleading impression of the underlying circumstances to the market.  Defendants also misconstrue *Ho v. Flotek Indus., Inc.*, 248 F. Supp. 3d 847, 857 (S.D. Tex. 2017).  The relevant allegations in *Flotek* do not concern, like here, intentionally withholding damaging information regarding environmental violations that negatively impacted production in order to create the false impression that operational delays were short-term, planned, and of no alarm.  Defendants' other cases are equally unavailing: *Kalnit v. Eichler*, 264 F.3d 131, 136-38, 143 (2d Cir. 2001) (finding plaintiff claimed that the defendants withheld information that actually increased the value of the company); and *Gambo v. Citizens, Inc.*, 2018 WL2107205, at *4 (W.D. Tex. May 7, 2018) (finding defendant "did disclose negative information").

- 16 -

Defendants █████████████████████████████████████████████████████████ (¶¶202-203); "not ordinary routine litigation incidental to [Cabot's] business" (17 C.F.R. §229.103(a)), but rather a material event. *See Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 2023 WL 6300569, at *10 (S.D. Tex. Sept. 27, 2023) (noting "Cabot's argument that 'analysts did not view the criminal charges as information material to Cabot's stock price' is unpersuasive").[15]  Item 103(c) *separately* required disclosure, as well, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████ *See* Ex. 2 at CABOT_00118083; *also* ¶187 (noting fine likely exceeding $100,000).

**Fourth**, ██████████████████████████████████████████ (¶201) was *also* required under Item 103(a) and (c), ████████████████████████████████████

████████████████████████████████. *See* Ex. 2 at CABOT_00118083.

**Fifth**, ████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████ (¶202), were misleading due to Defendants' failure to inform investors ██

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████ (¶¶138, 201); and █████████████████████████████████. Cabot therefore misleadingly failed to disclose the "existence of significant additional legal and regulatory risks

---

[15]    Item 103 of Regulation S-K requires the disclosure of material pending legal proceedings, including "proceedings known to be *contemplated* by governmental authorities." 17 C.F.R. §229.103(a).  Disclosure is also required where the proceeding pertains to "the discharge of materials into the environment or primarily for the purpose of protecting the environment" and (i) "is material to the business" *or* (ii) if "[a] governmental authority is a party to such proceeding and such proceeding involves potential monetary sanctions, unless the registrant reasonably believes that such proceeding will result in no monetary sanctions, or in monetary sanctions, exclusive of interest and costs, of less than $100,000." 17 C.F.R. §229.103(c)(3)(i), (iii). The monetary figure was increased from $100,000 to $300,000, after the end of the Class Period.  Opp. at 5 n.4.

- 17 -

. . . that [went] beyond the limited risks disclosed" and that "Defendants were already being adversely affected by these risks." *Franchi v. SmileDirectClub, Inc.*, 633 F. Supp. 3d 1046, 1075-76 (M.D. Tenn. 2022); *see Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 673 (M.D. Tenn. 2022) (statements regarding "routine inquires" rendered misleading by undisclosed DOJ investigation where it was not a "run-of-the-mill matter that investors had no reason to expect disclosure about"); *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 583-84 (S.D.N.Y. 2016) ("[Cabot] opted to speak on the subject of investigations, but 'did not speak in an accurate and complete manner.'").

### E.  There Is No Undue Delay or Undue Prejudice in Seeking the Amendment

Defendants fail to carry their burden to establish undue delay and undue prejudice under Rule 15's liberal standard.

### 1.  Plaintiffs Timely Moved to Amend the Complaint

Plaintiffs' proposed amendment is timely because they sought leave to amend: (1) within the deadline ***agreed to by the parties*** and ***ordered by the Court***; and (2) immediately following the close of fact discovery.  ***First***, where, as here, plaintiffs seek leave to amend within a court-ordered schedule, there is a "presumption of timeliness." *Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*, 2021 WL 3190508, at *2 (E.D. Tex. July 28, 2021); *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, 2011 WL 13135654, at *4 (S.D. Tex. July 19, 2011) (same); *see also Beggins v. CBRE Cap. Mkts. of Tex. L.P.*, 2018 WL 2289509, at *2 (S.D. Tex. May 18, 2018) (Rosenthal, J.) ("the 'freely given' standard of Rule 15(a)" governs a motion to amend filed prior to the deadline set in the scheduling order).  Tellingly, Defendants fail to identify a single case denying an amendment as untimely where leave was requested within the court's schedule, and instead rely on cases denying amendments filed ***outside*** of such deadlines.[16]

---

[16]  Defendants' cases (Opp. at 24-25) are therefore inapt.  *In re Bristol-Myers Squibb Sec. Litig.*, 228 F.R.D. 221, 229 (D.N.J. 2005) (denying motion to amend filed after expiration of scheduling order deadlines, including after more than four years of discovery and more than one year after close of fact discovery); *Aguirre v. SBC Commc'ns., Inc.*, 2007 WL 772756, at *17-

- 18 -

***Second***, Defendants' undue delay arguments ignore that the SAC seeks to conform the new allegations to evidence developed ***immediately*** following the close of discovery.  Plaintiffs diligently analyzed more than 3.5 million pages of documents, identified relevant information within those materials, and spent months preparing for and taking depositions to understand those documents in context – all of which concluded just as the amendment was due and filed.  Given that Plaintiffs sought to amend the FAC at the conclusion of discovery, Defendants cannot show undue delay.  *See Rooney v. EZCORP, Inc.*, 2018 WL 3596054, at *3 (W.D. Tex. July 26, 2018) (amendment not unduly delayed when filed two months ***after*** the deadline for the filing of amended pleadings because the plaintiff uncovered documents bolstering their allegations); *see also Friedl v. City of N.Y.*, 210 F.3d 79, 88 (2d Cir. 2000) ("[T]here has been no showing of . . . undue delay, given that the amendment was proposed only after discovery revealed additional relevant facts.").

### 2.      Defendants Will Not Suffer Undue Prejudice

Defendants' contention that adding the 2018 false production guidance statements and the July 27, 2018 corrective disclosure would cause undue prejudice fares no better.  Opp. at 25.  To establish undue prejudice, Defendants must show the need to "'reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court.'"  *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (alteration and ellipsis in original).  But where, as here, the amendment "will not drastically affect the contours of this case such that Defendants would have to expend significant additional resources to conduct discovery and prepare for trial," there is no prejudice to the Defendants in allowing the amendment.  *Lickteig v. Cerberus Cap. Mgmt., L.P.*, 2020 WL 7629876, at *5 (S.D.N.Y. Dec. 22, 2020);

---

*18 (S.D. Tex. Mar. 12, 2007) (Rosenthal, J.) (denying motion to amend filed by plaintiff outside scheduling order deadlines and without any explanation); *In re AT & T Sec. Litig.*, 2004 WL 6392120, at *7 (D.N.J. Apr. 7, 2004) (denying motion to amend at "very late date in the proceedings" as the matter was nearing the end of the case); *Zwick Partners, LP v. Quorum Health Corp*., 394 F. Supp. 3d 804, 814 (M.D. Tenn. 2019) (denying motion to amend due to plaintiffs' lack of diligence in alerting court to new information revealed in discovery prior to class certification ruling); *Greebel v. FTP Software, Inc.*, 182 F.R.D. 370, 376 (D. Mass. 1998) (denying plaintiffs ability to amend when claims that saved earlier dismissal were baseless and plaintiffs never should have had access to defendants' files in discovery), *aff'd*, 194 F,3d 185 (1st Cir. 1999).

4855-8990-3761.v2

*Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 599 (5th Cir. 1981) (no prejudice where the "new theory" did not "necessitate reiteration of discovery proceedings").

Plaintiffs' additional allegations do not add any defendants, present new causes of action, extend the Class Period, or otherwise concern events that have not already been the subject of extensive discovery. Rather, because discovery focused on the three new sets of alleged misleading statements and omissions, including the 2018 production guidance statements, the allegations are fully supportable on the current record without the need for additional discovery. The amendment will, at most, require limited additional expert discovery, and any potential prejudice has already been alleviated by the Court's modified schedule. *Hudson v. L&W Supply Corp.*, 2009 WL 10693829, at *5 (S.D. Tex. June 18, 2009) (Rosenthal, J.) ("[e]xtending the pretrial deadlines . . . avoids potential prejudice").[17]

Defendants' next contention that allowing the amendment would require a new class certification proceeding to assess the July 27, 2018 stock drop likewise fails. This Court found that Defendants did not "rebut[] the *Basic* presumption by showing ***no*** price impact." ECF 173 at 23. The Court also certified a class "consisting of all persons or entities who purchased or otherwise acquired Cabot common stock ***between*** February 22, 2016, and June 12, 2020." *Id.* As such, the July 27, 2018 corrective disclosure, which falls within the Class Period, does not change the Class definition or Class Period, and any challenges to this newly alleged stock decline are merits issues regarding loss causation and damages at trial, not price impact. *See Monroe Cnty. Emps.' Ret. Sys. v. S. Co.*, 332 F.R.D. 370, 397 (N.D. Ga. 2019) (finding that because defendants "failed to prove an absence of price impact" any causal issues involving the "stock price to decline following each of the corrective disclosures (*i.e.*, loss causation) and how much

---

[17] Notably, Defendants do not specify any additional discovery they believe is necessary or would "force parties to reopen discovery." Opp. at 25; *see also Thomas as Tr. of Performance Prods. Inc. v. Hughes*, 2018 WL 2996901, at *5 (W.D. Tex. Feb. 22, 2018) (finding no undue prejudice because "[a]lthough the proposed amendment adds new claims, [d]efendant has not sufficiently shown that additional discovery regarding the proposed claims is necessary"); *SEPTA v. Orrstown Fin. Svs. Inc.*, 335 F.R.D. 54, 77 (M.D. Pa. 2020) (no prejudice where "virtually all of the necessary document discovery has already been produced").

- 20 -

inflation was dissipated as a result of those disclosures (*i.e.*, damages) – are ultimate questions for the trier of fact on the merits")*; see also St. Clair Cnty. Emps.' Ret. Sys. v. Acadia Healthcare Co.*, 2022 WL 4598044, at *5 (M.D. Tenn. Sept. 30, 2022) (same); *Bos. Ret. Sys. v. Alexion Pharms., Inc.*, 2023 WL 2932485, at *12 (D. Conn. Apr. 13, 2023) (same).[18]   There is, therefore, no undue prejudice.

## III.   PLAINTIFFS' EXISTING ALLEGATIONS

### A.   Defendants Improperly Seek to Transform a Motion to Amend into a Premature Summary Judgment Motion on Plaintiffs' Existing Allegations

Defendants devote much of their Opposition to raising factual disputes concerning Plaintiffs' previously sustained allegations that were **not changed** and **are not the subject of the proposed amendment**.  In doing so, Defendants forget that the sole issue before the Court "is whether the securities claims in Plaintiffs' Complaint are adequately **alleged**, not whether the claims are likely to survive a motion for summary judgment following discovery." *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2016 WL 215476, at *7 (S.D. Tex. Jan. 19, 2016) (emphasis in original).[19]   Worse yet, Defendants selectively cite and mischaracterize the evidentiary record to support their premature merits arguments and in doing so also mischaracterize the operative misstatements and omissions in the case.  Opp. at 3-4.  The Court's

---

[18]   Defendants also incorrectly contend that class certification would need to be revisited because of "potential predominance issues based on the expiration of the two-year statute of limitations for the new 2019 and 2020 claims."  *See* Opp. at 25.  **First**, Plaintiffs timely asserted the additional statements because they recently uncovered the facts supporting these allegations during discovery and the additional statements relate back to the claims in the FAC, *see* §II.C., *supra*.  *See In re Dynegy, Inc. Sec. Litig.*, 339 F. Supp. 2d 804, 845 (S.D. Tex. 2004) (statute of limitations "begins to run when the plaintiff has actual knowledge of the facts giving rise to his claims or has notice of facts that in the exercise of reasonable diligence should have led to such knowledge").  **Second**, a statute of limitations defense implicates **common issues** that affect all class members **equally** – there is no predominance concern.  **Third**, citing a "potential" predominance issue without more does not support a showing of undue prejudice.  **Fourth**, none of the cases cited by Defendants involve statute of limitations issues in securities fraud cases, but instead involve consumer, property rights, and contractual-based claims that are entirely distinct from the present case.

[19]   Defendants' arguments regarding Plaintiffs' "existing claims" are manufactured largely from sources outside of the four-corners of the SAC.  *See, e.g.*, summary of evidence not referenced in SAC regarding Disclosure Committee.  Opp. at 4.  Defendants may not use documents that are not referenced in the SAC in order to challenge Plaintiffs' well-pled factual allegations and litigate disputed issues of fact.  *See Brand Coupon Network, LLC v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (district courts cannot "consider[] evidence outside the pleadings – and not referred to therein – without converting the motion to dismiss into a motion for summary judgment"); *see also Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) ("The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.").

- 21 -

Class Certification Order held that the three categories of misstatements and omissions are *not* limited to representations regarding three Cabot well pads. ECF 173 at 19, 22 (holding that "the statements in Categories 1 and 2 were *not* limited to the Stalter Wells"); *id.* at 22 (finding that the Category 3 statements are not limited to specific wells and noting, "Cabot's mismatch argument about the Category 3 Statements is based on a misreading" of the statements).[20]   Accordingly, the Court should reject Defendants' renewed challenge to Plaintiffs' previously sustained allegations.

## B. The Discovery Record Corroborates Plaintiffs' Existing Allegations

Although now is not the time to re-litigate the sufficiency of the previously sustained misstatements and omissions, the limited evidence below corroborates Plaintiffs' existing claims. Discovery now shows that Defendants contemporaneously concealed from investors pervasive gas migration problems, including from wells inside the "Dimock Box," which were the subject of the 2010 Consent Order, all while they claimed to have "performed appropriate remediation" to investors. *See, e.g.,* ¶187. And while Dinges proclaimed on December 15, 2010 that Defendants "*redoubled our efforts with the [Pennsylvania Department] to resolve past issues*" (Ex. 3 at 1), the record shows that, far from performing "appropriate" remediation, the same remedial issues persisted for years:



-                                                                         Ex. 4 at CABOT_00320532.

-                                                                         Ex. 5; Ex. 6 137:14-17.

-

---

[20]   The Court explained that, when read correctly, the Presentment of Charges "is corrective of Cabot's representation that it had performed 'appropriate remediation efforts' between the Spring of 2017 and July 26, 2019." *Id.* at 22-23.

4855-8990-3761.v2

████████████████████████████████████████████

██████████████████████████ Ex. 7 at CABOT_00542041-10.
Novakowski later confirmed that the phrase "dark side" refers to the unintended negative consequences caused by changes made to improve drilling efficiency. Ex. 8 146:16-21.

- ████████████████████████████████████

  ████ Ex. 9 at PADEP0000001.

- ████████████████████████████████████

  *See, e.g.*, Exs. 10, 11.

- ████████████████████████████████████

  ████████████████████████████████ Ex. 12
  128:11-15.

- ████████████████████████████████████

  ████████ *See* Ex. 13.

- The failure to comply with the 2010 Consent Order *culminated with the felony criminal charges related to the following Dimock wells*: Ratzel, Gesford, Ely, Shields and Costello; while other conduct resulted in misdemeanor charges related to: Howell, Jeffers, and Powers. *See* Ex. 14.[21]

### C.    The Geologist Confirmed the Allegations Attributed to Her

Knowing that Dr. Mercurio's testimony is problematic for them, Defendants adopt the maxim

---

[21]  Even the record on the Stalter, Howell, and Jeffers wells shows ongoing and unresolved issues at the time of the alleged misstatements. For example, on████████████████████████████████████████

████████████ Ex. 15 at CABOT_00314949.

████████████████████████████████ Ex. 16 at CABOT_00028067.

████ Ex. 17 at CABOT_00326653.

████ *See* Ex. 18.

████████████████████████ *See* Ex. 19.

- 23 -

that the best defense is a good offense, delivering a lengthy personal attack on Dr. Mercurio, whose testimony has *no relevance to Plaintiffs' new allegations*. Opp. at 6-11. In addition to being irrelevant, Defendants' attempt to smear both Dr. Mercurio and Plaintiffs' counsel falls flat. ███████████ █████████████████████████████ (Ex. 20 309:18-310:2), ██████████████ █████████████ (*see id.* 145:25-146:2 ("████████")),[22] ████████████ ██████████████████████████████████████. *Id.* 300:5-22.[23]

Though Defendants claim that Dr. Mercurio is "unqualified" and relies on mere "speculation" (Opp. at 8-9), ████████████████████████████████ ██████████████████████. Ex. 20 14:5-8; 22:23-24. Moreover, ████████ ████████████████████ *Id.* 29:15-31:15; 26:13-27:9; 28:4-25. And, ████████ ████████████████████ *Id.* 42:20-43:23; 44:3-12. Additionally, ████ ████████████████████████████████████████████ ████ (*id.* 62:7-25), ████████████████████████████ ████████████ *Id.* 300:5-22. *See also id.* 74:4-11 ████████████████████████, *id.* 81:12-82:4 ████████████████

Accordingly, Dr. Mercurio ██████████████████ ████████████████ (*id.* 67:7-11; 299:10-300:4), ██████████████ ████████████████████████████████████ ████████████████████ *Id.* 269:4-8.

---

[22]    Dr. Mercurio ████████████████████████████ ████████████ *See* Ex. 20 52:15-53:20; 296:9-25.

[23]    ████████████ (*id.* 35:13-16; 38:15-22), ████████ (*id.* 310:15-24). ████████████████████████████ Ex. 20 305:3-306:8. ████████████████████████ Ex. 20 146:3-147:14.

- 24 -

Among

Contrary to Defendants' claim that Dr. Mercurio "admitted" her statements were "just speculation" (Opp. at 9), ███████████████████████████████████

████████████████████████████████████████

████████████████████████████████ Ex. 20 244:8-25.[24]

Defendants' ███████████████████[25] Dr. Mercurio is a side-show with no bearing on the sufficiency of Plaintiffs' new allegations.

## IV.   CONCLUSION

For the reasons stated herein and the Motion, Plaintiffs respectfully submit that the motion for leave to file the Second Amended Complaint should be granted.[26]

---

[24]   Though Defendants claim that Dr. Mercurio could not identify a "single instance where Cabot refused to perform a needed repair" (Opp. at 9), ████████████████████████████████████ (Ex. 20 304:13-18), ████████ Id. 86:10-19 ███████ Consistent with the allegations in the Complaint (¶¶111-114), Dr. Mercurio also confirmed, contrary to Defendants' assertions (Opp. at 10), ███████████ ████████████████████████████ Ex. 20 123:16-23.

[25]   ████████████████████ Id. 135:12-14. ████████████ Id. 140:1-9. Nor did she supply any Cabot trade secrets, but rather information regarding a potential public hazard.

[26]   Should the Court deny the Motion based on futility, Plaintiffs respectfully request leave to amend the proposed SAC to address any pleading deficiency.

- 25 -

DATED:  November 20, 2023

Respectfully submitted,
KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700, S.D. Texas Bar No. 30973, Attorney in Charge)

*s/ Joe Kendall*
JOE KENDALL

3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARRYL J. ALVARADO
KEVIN A. LAVELLE
FRANCISCO J. MEJIA
JACK ABBEY GEPHART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
klavelle@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

Class Counsel

KESSLER TOPAZ MELTZER
  & CHECK, LLP
ANDREW L. ZIVITZ
JAMIE M. MCCALL
JOSHUA E. D'ANCONA
ALEX B. HELLER
MAX JOHNSON
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
jmccall@ktmc.com
jdancona@ktmc.com
aheller@ktmc.com
mjohnson@ktmc.com

- 26 -

4855-8990-3761.v2

- 27 -

Class Counsel

<u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that on November 20, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

<div align="center" style="text-align:left; margin-left:50%;">

*s/ Joe Kendall*
JOE KENDALL

KENDALL LAW GROUP, PLLC
3811 Turtle Creek Boulevard, Suite 1450
Dallas, TX  75219
Telephone:  214/744-3000
214/744-3015 (fax)

Email: jkendall@kendalllawgroup.com

</div>

- 1 -

4855-8990-3761.v2

# Mailing Information for a Case 4:21-cv-02045 Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Darryl James Alvarado**
  dalvarado@rgrdlaw.com

- **Amy L. Barrette**
  amy.barrette@bipc.com,tara.klingensmith@bipc.com,eservice@bipc.com

- **Helen J Bass**
  hbass@ktmc.com,3956293420@filings.docketbird.com

- **Joshua Edward D'Ancona**
  jdancona@ktmc.com

- **Jack Abbey Gephart**
  jgephart@rgrdlaw.com

- **Alex B Heller**
  aheller@ktmc.com

- **Joe Kendall**
  jkendall@kendalllawgroup.com,administrator@kendalllawgroup.com

- **Kevin Lavelle**
  klavelle@rgrdlaw.com

- **Henry W. Longley**
  hlongley@ktmc.com

- **Jamie M McCall**
  jmcc@ktmc.com

- **Francisco J Mejia**
  fmejia@rgrdlaw.com,E_File_SD@rgrdlaw.com,kjohnson@rgrdlaw.com,bengfelt@rgrdlaw.com

- **Gerard G Pecht**
  gerard.pecht@nortonrosefulbright.com,sumera.khan@nortonrosefulbright.com,tanya.lowe@nortonrosefulbright.com

- **Kelly A Potter**
  kelly.potter@nortonrosefulbright.com

- **Peter Andrew Stokes**
  peter.stokes@nortonrosefulbright.com,julie.wright@nortonrosefulbright.com

- **Andrew L. Zivitz**
  azivitz@ktmc.com,3949407420@filings.docketbird.com,mswift@ktmc.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

```
Stuart          L. Berman
Kessler Topaz Meltzer & Check LLP
280 King of Prussia Rd.
Radnor, PA 19087

Lawrence          F. Stengel
Saxton & Stump LLC
280 Granite Run Drive
Suite 300
Lancaster, PA 17601
```