**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action 4:21-cv-02045 |
| Plaintiff, | District Judge Lee H. Rosenthal |
| vs. | <u>CLASS ACTION</u> |
| CABOT OIL & GAS CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR AN ORDER PRELIMINARILY APPROVING SETTLEMENT**
**AND PROVIDING FOR NOTICE**

## **TABLE OF CONTENTS**

I.    NATURE AND STAGE OF THE PROCEEDINGS ............................................... 1

II.   STATEMENT OF ISSUES TO BE RULED UPON ............................................. 2

III.  SUMMARY OF THE ARGUMENT ................................................................... 2

IV.   FACTUAL BACKGROUND ............................................................................ 4

      A.    OVERVIEW OF THE LITIGATION ............................................................ 4

      B.    THE SETTLING PARTIES' SETTLEMENT NEGOTIATIONS
            AND TERMS OF THE PROPOSED SETTLEMENT ................................. 8

V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ........................... 11

      A.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION
            SETTLEMENTS ...................................................................................... 11

      B.    THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE
            PROPOSED SETTLEMENT UNDER RULE 23(e)(2) ............................ 12

            1.    Plaintiffs and Class Counsel Have Zealously Represented the
                  Class ........................................................................................ 12

            2.    The Settlement Is the Product of Good Faith, Informed, and
                  Arm's-Length Negotiations by Experienced Counsel .................... 14

            3.    The Settlement Provides Substantial Relief, Especially in
                  Light of the Costs, Risks, and Delay of Further Litigation.............. 14

            4.    The Settlement Does Not Unjustly Favor Any Class Member ........ 16

            5.    The Anticipated Request for Attorneys' Fees Is Reasonable .......... 17

            6.    Plaintiffs Have Identified All Agreements Made in
                  Connection with the Settlement ................................................. 18

VI.   THE CLASS SATISFIES THE STANDARDS FOR CLASS
      CERTIFICATION ........................................................................................ 19

VII.  NOTICE OF THE SETTLEMENT SHOULD BE APPROVED ......................... 19

VIII. PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS ................ 21

IX.   CONCLUSION ............................................................................................ 22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*,
   2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ................................................................12, 18

*Buettgen v. Harless*,
   2013 WL 12303143 (N.D. Tex. Nov. 13, 2013) .....................................................................16

*In re Cabot Oil & Gas Corp. Deriv. Litig.*,
   2024 WL 23365 (S.D. Tex. Jan. 2, 2024) ...............................................................................15

*Celeste v. Intrusion Inc.*,
   2022 WL 17736350 (E.D. Tex. Dec. 16, 2022) .....................................................................21

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ...................................................................................................16

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................................................................ 18

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*,
   2015 WL 965693 (W.D. La. Mar. 3, 2015) ............................................................................15

*Claudet v. Cytec Ret. Plan*,
   2020 WL 3128611 (E.D. La. June 12, 2020) ..........................................................................11

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ...............................................................................................15

*In re Deepwater Horizon*,
   739 F.3d 790 (5th Cir. 2014) .................................................................................................11

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ...............................................................................................................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ...........................................................14, 18, 21

*In re EZCORP, Inc. Sec. Litig.*,
   2019 WL 6681962 (W.D. Tex. Dec. 6, 2019) ........................................................................21

*Farrar v. Workhorse Grp., Inc.*,
   2023 WL 5505981 (C.D. Cal. July 24, 2023) ........................................................................16

*Howard v. Liquidity Servs. Inc.*,
   2018 WL 4853898 (D.D.C. Oct. 5, 2018) ..............................................................16

*Jones v. Singing River Health Servs. Found.*,
   865 F.3d 285 (5th Cir. 2017) ...............................................................................14

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021).........................................................16

*Marcus v. J.C. Penney Co., Inc.*,
   2017 WL 6590976 (E.D. Tex. Dec. 18, 2017),
   *R. & R. adopted*, 2018 WL 307024 (E.D. Tex. Jan 4, 2018)..................................11

*Miller v. Republic Nat'l Life Ins. Co.*,
   559 F.2d 426 (5th Cir. 1977) ................................................................................11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950)...............................................................................................19

*NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*,
   2016 WL 3369534 (S.D.N.Y. May 2, 2016) ..........................................................18

*Parmelee v. Santander Consumer USA Holdings, Inc.*,
   2019 WL 2352837 (N.D. Tex. June 3, 2019) .........................................................21

*Reed v. Gen. Motors Corp.*,
   703 F.2d 170 (5th Cir. 1983) ................................................................................12

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005)...........................................13, 18, 21

**Statutes**

15 U.S.C. § 78u-4(a)(4) ..................................................................................................17

15 U.S.C. § 78u-4(a)(7) ..................................................................................................20

**Other Authorities**

Fed. R. Civ. P. 23 ............................................................................................... *passim*

Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment......................12

Manual for Complex Litigation (Fourth) § 13.14 (2020)........................................11

iii

Plaintiffs and Court-appointed Class Representatives Delaware County Employees Retirement System and Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan (together, "Plaintiffs"), on behalf of themselves and the Court-certified Class, respectfully move, pursuant to Rule 23(e)(1) of the Federal Rules of Civil Procedure ("Rule(s)"), for entry of the Parties' agreed-upon [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") submitted herewith. The Preliminary Approval Order will, among other things, grant preliminary approval of the proposed $40 million settlement ("Settlement") reached in this action ("Litigation").[1]

## I.    NATURE AND STAGE OF THE PROCEEDINGS

This Litigation is a securities class action asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendants Cabot Oil & Gas Corporation ("Cabot"),[2] Dan O. Dinges, and Scott C. Schroeder on behalf of a Court-certified Class of investors who purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby. After more than three years of litigation, Plaintiffs and Defendants have agreed to resolve the Litigation for $40 million in cash. At this time, Plaintiffs seek the Court's preliminary approval of the Settling Parties' proposed Settlement under Rule 23 so that notice of the Settlement can be provided to the Class and the final Settlement Hearing can be scheduled.

---

[1]   All capitalized terms not defined herein have the meanings ascribed to them in the Stipulation of Settlement dated June 3, 2024 ("Stipulation" or "Stip."), which is attached as Exhibit 1 to the accompanying Declaration of Darryl J. Alvarado ("Alvardo Decl."). Internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

[2]   Cabot merged with Cimarex Energy Co. on October 1, 2021, to form Coterra Energy Inc. For sake of simplicity, "Cabot" or the "Company" is used herein.

1

## II.    STATEMENT OF ISSUES TO BE RULED UPON

1.    Whether the Court will likely be able to approve the proposed $40 million Settlement of this Litigation under Rule 23(e)(2) so that notice of the Settlement's terms and conditions may be provided to members of the Class;

2.    Whether the proposed form and content of the notices and Proof of Claim and the manner for disseminating them to the Class (including the retention of JND Legal Administration ("JND") as the Claims Administrator) should be approved; and

3.    Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and Class Counsel's forthcoming motion for attorneys' fees and expenses.

## III.    SUMMARY OF THE ARGUMENT

Following more than three years of highly contested litigation, Plaintiffs have agreed to resolve the Class's claims against Defendants for a $40 million cash payment pursuant to the terms of the Stipulation. In agreeing to settle, Plaintiffs and Class Counsel made a fully-informed evaluation of the risks of continuing to litigate this complex case—including risks related to the completion of expert discovery and depositions, anticipated summary judgment motions, trial, and potential appeals—against the benefits of a sizable and certain recovery at this time.

Plaintiffs and Class Counsel believe that the Settlement—reached following well-informed, arm's-length negotiations facilitated by an experienced mediator—provides an excellent benefit to the Class given the significant risks, costs, and delays attendant to continued litigation. While Plaintiffs and Class Counsel believe strongly in the merits of their case, they recognize that Defendants do as well. Indeed, in the absence of settlement, Defendants would continue to vigorously assert numerous defenses to Plaintiffs' claims, and Plaintiffs faced the risk that the Court would rule in Defendants' favor at the summary judgment stage, or that a trial of the

Litigation and the likely appeals that would follow could have precluded *any* recovery for the Class, let alone a recovery greater than the Settlement Amount.

When the Settlement was reached, the Litigation was at an advanced stage and Plaintiffs and Class Counsel had a well-developed understanding of the strengths and weaknesses of the Class's claims and Defendants' defenses. In addition to the Court's rulings on two rounds of motions to dismiss, a motion for class certification, and a motion for leave to amend the complaint, Plaintiffs and Class Counsel had developed a robust factual record through their extensive investigation into the claims at issue, including a detailed review of publicly available information, interviews with former Cabot employees and other persons knowledgeable about Cabot's business, and consultation with experts. Plaintiffs and Class Counsel also, among other things: (i) prepared and filed four detailed complaints; (ii) briefed two rounds of motions to dismiss and a motion to amend the complaint; (iii) successfully moved for class certification and defeated Defendants' 23(f) petition to the Fifth Circuit Court of Appeals ("Fifth Circuit"); and (iv) engaged in comprehensive fact and expert discovery, including reviewing more than 4.4 million pages of documents produced by Defendants and nonparties, taking/defending 19 depositions, and exchanging opening and rebuttal expert reports. Further, the Settling Parties engaged in arm's-length negotiations facilitated by a highly-experienced and well-respected mediator, David M. Murphy, Esq. of Phillips ADR Enterprises, P.C., including two formal mediation sessions (nearly a year apart) and the preparation of detailed mediation statements. Both sides ultimately accepted Mr. Murphy's proposal to resolve the Litigation for $40 million.

At the Settlement Hearing, the Court will have before it more extensive submissions in support of the Settlement, and will be asked to determine whether, in accordance with Rule 23(e)(2), the Settlement is fair, reasonable, and adequate. Entry of the Preliminary Approval

Order will begin this process by, among other things: (i) preliminarily approving the Settlement; (ii) approving the form and content of the notices and Proof of Claim; (iii) approving the plan for disseminating notice of the Settlement to the Class; (iv) approving JND as the Claims Administrator for the Settlement; and (v) setting a date and time for the Settlement Hearing, at which the Court will consider final approval of the Settlement, the Plan of Allocation, and Class Counsel's motion for attorneys' fees and expenses.[3]

For the reasons stated herein, Plaintiffs respectfully submit that the Settlement warrants the Court's preliminary approval and respectfully request entry of the Preliminary Approval Order.

## IV.   FACTUAL BACKGROUND

### A.   OVERVIEW OF THE LITIGATION

This Litigation commenced on October 5, 2020, with the filing of the initial complaint by Delaware County Employees Retirement System in the United States District Court for the Middle District of Pennsylvania ("Pennsylvania Court").  ECF No. 1. Following briefing, and pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Pennsylvania Court appointed Delaware County Employees Retirement System as Lead Plaintiff and approved its selection of Robbins Geller Rudman & Dowd LLP ("Robbins Geller") as Lead Counsel on February 3, 2021. ECF Nos. 24-25.

On April 12, 2021, Lead Plaintiff, along with additional plaintiff Iron Workers District Counsel (Philadelphia and Vicinity) Retirement and Pension Plan, represented by Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz"), filed the Consolidated Complaint for Violation of the

---

[3]   As set forth in Section VIII below, Plaintiffs request that the Settlement Hearing be scheduled for at least 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter, to allow sufficient time for providing notice to the Class and compliance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715(b), *et seq*.

Federal Securities Laws ("Complaint") on behalf of all persons who purchased or otherwise acquired Cabot common stock between October 23, 2015 and June 12, 2020, inclusive. ECF No. 47. The Complaint asserted claims under Sections 10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder by the U.S. Securities and Exchange Commission, against Cabot, Dan O. Dinges (Cabot's Chairman and CEO), Scott O. Schroeder (Cabot's CFO), and Phil L. Stalnaker (Cabot's Vice President and Regional Manager). Plaintiffs alleged that, during the relevant time period, defendants issued materially false and misleading statements concerning Cabot's compliance with environmental law and regulations. More specifically, Plaintiffs alleged that defendants repeatedly represented that Cabot was in compliance with applicable environmental laws and a "good steward of the environment" when, in reality, the Company "cut corners and knowingly violated the very environmental laws it publicly claimed to uphold – polluting Pennsylvania's waters over and over again, despite repeated notices of regulatory violations and consent orders, for over a decade." ECF No. 47, ¶ 1. Plaintiffs further alleged that Cabot's stock price was artificially inflated due to these allegedly false and misleading statements, and declined when the alleged corrective disclosures were made.

On June 11, 2021, defendants moved to dismiss the Complaint. ECF Nos. 63-65.[4] Following full briefing on defendants' motion (ECF Nos. 90 & 93), the Court held oral argument on November 29, 2021 (ECF No. 103). By Memorandum and Opinion dated January 12, 2022 ("January 2022 Opinion"), the Court granted defendants' motion to dismiss with leave to amend with respect to certain allegations. ECF No. 109. By the January 2022 Opinion, the Court also

---

[4] On June 22, 2021, the Pennsylvania Court, upon Defendants' motion, transferred the Litigation (along with the derivative case captioned *In re Cabot Oil & Gas Corporation Derivative Litigation*, No. 3:20-CV-1948 (M.D. Pa.) / No. 4:21-cv-02046 (S.D. Tex.) ("Derivative Litigation")) to this Court. ECF No. 68.

denied as moot Plaintiffs' December 15, 2021 motion for partial relief from the PSLRA discovery stay for the limited purpose of obtaining documents produced in the Derivative Litigation (ECF No. 106).

In accordance with the Court's January 2022 Opinion, Plaintiffs, on February 11, 2022, filed the First Amended Consolidated Complaint for Violation of the Federal Securities Laws ("Amended Complaint") on behalf of all purchasers of Cabot common stock between February 22, 2016 and June 12, 2020, inclusive. ECF No. 110. Defendants moved to dismiss the Amended Complaint on March 10, 2022. ECF No. 111. Plaintiffs filed their opposition to defendants' motion on April 13, 2022 (ECF No. 113), defendants filed a reply in further support of their motion on May 10, 2022 (ECF No. 114), and Plaintiffs, with permission from the Court (ECF No. 116), filed a sur-reply in further opposition to defendants' motion on May 31, 2022 (ECF No. 117). By Memorandum and Opinion dated August 10, 2022, the Court granted in part and denied in part defendants' motion to dismiss the Amended Complaint. ECF No. 118. Specifically, the Court: (i) granted the motion with respect to claims based on defendants' "substantial compliance" statements and claims against Phil L. Stalnaker and (ii) denied the motion with respect to claims based on the following three categories of statements—statements about remediation related to the 2011 Notice of Violation in Form 10-Qs and Form 10-Ks; the 2016 Consent Order Notification in the 2016 Form 10-K; and the Report of 2017 Notices of Violation in the 2019 Form 10-Q. *Id.*

Defendants answered the Amended Complaint on August 10, 2022. ECF No. 127. Thereafter, discovery in the Litigation commenced.

From August 2022 through October 2023, the Settling Parties engaged in extensive fact discovery. Plaintiffs' efforts, through Class Counsel, included, among other things: (i) preparing and serving initial disclosures, requests for production of documents, and interrogatories on

Defendants; (ii) exchanging correspondence with Defendants concerning discovery issues; (iii) serving document subpoenas on 21 nonparties; (iv) obtaining, reviewing, and analyzing more than 4.4 million pages of documents produced by Defendants and nonparties; (v) reviewing and analyzing thousands of privilege log entries; and (vi) reviewing and producing documents in response to Defendants' discovery requests, as well as providing written responses to Defendants' document requests and interrogatories. Depositions of Plaintiffs' corporate representatives and the Settling Parties' expert witnesses were taken in connection with the Class Certification Motion (described below). Class Counsel also deposed 15 fact witnesses.

While discovery was ongoing, Plaintiffs moved to certify a class. Plaintiffs' December 5, 2022 motion (ECF No. 134) ("Class Certification Motion") was accompanied by a report from their economic expert, Professor Steven P. Feinstein, Ph.D, CFA, on market efficiency and a proposed common damages methodology (ECF No. 134-3). On January 21, 2023, Defendants filed their opposition to the Class Certification Motion (ECF No. 142-44), along with an expert rebuttal report from Lucy P. Allen (ECF No. 142-1). Plaintiffs filed a reply in further support of their motion on May 8, 2023. ECF No. 151. The Court heard oral argument on the Class Certification Motion on July 7, 2023. ECF No. 161.

On September 27, 2023, the Court issued a Memorandum and Opinion ("Class Certification Order") granting Plaintiffs' Class Certification Motion and "certify[ing] a class consisting of all persons or entities who purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby." ECF No. 173. The Class Certification Order also appointed Plaintiffs as Class Representatives and Robbins Geller and Kessler Topaz as Class Counsel. *Id*. Thereafter, on October 11, 2023, Defendants filed a petition to the Fifth Circuit for leave to appeal the Class Certification Order pursuant to Rule

23(f), which Plaintiffs opposed on October 23, 2023. The Fifth Circuit denied Defendants' petition on November 17, 2023. Thereafter, on December 1, 2023, Defendants filed a petition for panel and *en banc* rehearing of their Rule 23(f) petition, which the Firth Circuit denied on December 18, 2023.

During the same time, Plaintiffs filed a motion to amend the Amended Complaint on October 20, 2023, based on new information learned during discovery. ECF Nos. 185-86.[5] Defendants opposed Plaintiffs' motion on November 13, 2023 (ECF No. 191), and Plaintiffs filed their reply on November 20, 2023 (ECF No. 192). By Memorandum and Opinion dated January 8, 2024, the Court granted Plaintiffs' motion to amend but dismissed Plaintiffs' claims based on the 2018 production guidance as time-barred. ECF No. 196. Plaintiffs filed the operative Second Amended Consolidated Complaint for Violation of the Federal Securities Laws ("Second Amended Complaint") on January 9, 2024. ECF No. 199. Defendants answered the Second Amended Complaint on January 22, 2024. ECF No. 200.

At the time of settlement, the Settling Parties were engaged in expert discovery. The Settling Parties had exchanged multiple expert reports and rebuttal reports and were preparing for expert depositions.

### B. THE SETTLING PARTIES' SETTLEMENT NEGOTIATIONS AND TERMS OF THE PROPOSED SETTLEMENT

While Plaintiffs' Class Certification Motion was pending, the Settling Parties began discussing the possibility of resolving the Litigation through settlement, and engaged David M. Murphy (of Phillips ADR) to assist in those efforts. In advance of the mediation session on May

---

[5]   Also on October 20, 2023, Defendants, with permission from the Court (ECF No. 183), filed their First Amended Answer to Plaintiffs' Amended Complaint. ECF No. 184.

11, 2023, the Settling Parties prepared and exchanged detailed mediation statements and exhibits. At the mediation, the Settling Parties shared further information addressing their views on liability and damages and engaged in good-faith negotiations; however they were unable to reach agreement to resolve the Litigation at that time.

Eleven months later, following a ruling on Plaintiffs' Class Certification (which was upheld by the Fifth Circuit), the Settling Parties participated in a second mediation session with Mr. Murphy on April 18, 2024. This second mediation session was preceded by the preparation and exchange of supplemental mediation briefs and exhibits. Although the Settling Parties were unable to reach agreement at the second mediation, they continued to engage in settlement discussions with Mr. Murphy's assistance. Following these additional discussions, Mr. Murphy issued a mediator's proposal to settle the Litigation for $40 million, which the Settling Parties accepted on April 29, 2024, subject to the negotiation of the Stipulation and approval by the Court.

Thereafter, the Settling Parties engaged in further negotiations over the specific terms of their agreement and executed the Stipulation on June 3, 2024.[6] The Stipulation provides that Defendants and/or their insurance carriers on behalf of Defendants will pay or cause to be paid the Settlement Amount into an interest-bearing escrow account maintained on behalf of the Class. The Settlement is not claims-made and is non-reversionary. Accordingly, if approved, the Class will receive the full benefit of the $40 million Settlement Amount, plus interest, after deducting Court-approved attorneys' fees, expenses and costs ("Net Settlement Fund"), without regard to the number of Claims submitted. After the Settlement becomes Final, the Net Settlement Fund will be

---

[6]  On the same day, the Settling Parties also entered into a confidential Supplemental Agreement, which gives Defendants the right to terminate the Settlement if valid requests for exclusion received from Class Members exceed an agreed-upon amount. *See* Section V.B.6 herein.

distributed among eligible Class Members who submit valid Claims in accordance with a Court-approved plan of allocation. *See* Stip., ¶ 5.10. Pursuant to its Class Certification Order dated September 27, 2023, the Court certified the Class—*i.e.*, all persons or entities who purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby—whose members will be eligible to submit Claims.[7] *See* Stip. ¶ 1.4.

If the Court grants final approval to the Settlement, upon the Effective Date, Class Members will release the "Released Claims" in exchange for the Settlement Amount and the right to participate in the distribution of the Net Settlement Fund. Stip., ¶ 1.27. The scope of the Released Claims is limited to claims related to Class Period transactions in Cabot common stock and the allegations at issue in the Litigation.[8]

---

[7]  Excluded from the Class are: (1) Defendants; (2) any directors and officers of Cabot during the Class Period and members of their immediate families; (3) the subsidiaries, parents, and affiliates of Cabot; (4) any firm, trust, corporation, or other entity in which Defendants have or had a controlling interest; and (5) the legal representatives, heirs, successors, and assigns of any such excluded party. Also excluded from the Class is any Person who properly excludes himself, herself, itself or themselves from the Class by submitting a valid and timely request for exclusion. To the extent any Cabot employee benefit plan receives a distribution from the Net Settlement Fund, no portion shall be allocated to any person or entity who is excluded from the Class by definition.

[8]  The Stipulation (at ¶ 1.27) defines "Released Claims" as follows:

"Released Claims" means any and all claims and causes of action of every nature and description, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, whether arising under federal, state, local, common or foreign law, or any other law, rule or regulation, whether class or individual in nature, based on, arising out of, or in connection with both: (i) the purchase or acquisition of Cabot common stock during the period between February 22, 2016, and June 12, 2020, inclusive, and (ii) the allegations, acts, facts, matters, occurrences, disclosures, filings, representations, statements, or omissions that were or could have been alleged by Plaintiffs and other members of the Class in the Litigation. "Released Claims" does not include claims to enforce the Settlement, or any derivative or ERISA claims, or the claims of any Person who submits a request for exclusion from the Class in connection with this Settlement that is accepted by the Court. "Released Claims" includes "Unknown Claims" as defined in ¶1.37 hereof.

## V.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL

### A.    STANDARDS GOVERNING APPROVAL OF CLASS ACTION SETTLEMENTS

Settlement is a strongly favored method for resolving class action litigation. *See In re Deepwater Horizon*, 739 F.3d 790, 807 (5th Cir. 2014) (noting the "overriding public interest in favor of settlement that [the Fifth Circuit has] recognized [p]articularly in class action suits") (alteration in original); *Marcus v. J.C. Penney Co., Inc.*, 2017 WL 6590976, at *3 (E.D. Tex. Dec. 18, 2017) ("There is a strong judicial policy in favor of settlements, particularly in the class action context."), *R. & R. adopted*, 2018 WL 307024 (E.D. Tex. Jan 4, 2018). Further, the Fifth Circuit has consistently held that, as a result of their highly-favored status, settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits." *Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426, 428 (5th Cir. 1977).

Rule 23(e) requires judicial approval of class action settlements. Such approval is a two-step process. First, the court performs a preliminary review to determine whether the terms of the proposed settlement are sufficient to warrant notice of the settlement to the class and a hearing; and second, after notice has been provided and a hearing held, the court determines whether to grant final approval of the settlement. *See Claudet v. Cytec Ret. Plan*, 2020 WL 3128611, at *3 (E.D. La. June 12, 2020) (describing two-step process as required under Rule 23 and applied in the Fifth Circuit); MANUAL FOR COMPLEX LITIGATION (FOURTH) § 13.14 (2020).

With respect to the first step of the approval process, a court should grant preliminary approval and authorize notice to the class upon a finding that the court "*will likely be able*" to: (i) finally "approve the settlement under Rule 23(e)(2) and (ii) certify the class for purposes of the

11

[settlement]." Fed. R. Civ. P. 23(e)(1)(B).[9] In considering whether final approval is likely, Rule

23(e)(2) provides that courts should consider whether:

> (A) the class representatives and class counsel have adequately represented the
> class; (B) the proposal was negotiated at arm's length; (C) the relief provided for
> the class is adequate, taking into account: (i) the costs, risks, and delay of trial
> and appeal; (ii) the effectiveness of any proposed method of distributing relief to
> the class, including the method of processing class-member claims; (iii) the terms
> of any proposed award of attorney's fees, including timing of payment; and (iv)
> any agreement required to be identified under Rule 23(e)(3); and (D) the proposal
> treats class members equitably relative to each other.[10]

All of these factors support approval of the Settlement and, thus, preliminary approval is

appropriate here.

## B.    THE COURT "WILL LIKELY BE ABLE" TO APPROVE THE PROPOSED SETTLEMENT UNDER RULE 23(e)(2)

### 1.    Plaintiffs and Class Counsel Have Zealously Represented the Class

In determining whether to approve a class action settlement, a court should consider

whether "the class representatives and class counsel have adequately represented the class." Fed.

R. Civ. P. 23(e)(2)(A).

Here, Plaintiffs, both large sophisticated institutional investors, have been active and

---

[9]  Here, the Court already certified the Class in the course of litigation. ECF No. 173. There is no
difference between the Class previously certified and the Class the proposed Settlement will bind.

[10]  Final approval will involve an analysis of the Rule 23(e)(2) factors and, to the extent they do
not overlap, the following Fifth Circuit approval factors: "(1) the existence of fraud or collusion
behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the
stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs'
success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel,
class representatives, and absent class members." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172
(5th Cir. 1983). The Rule 23(e)(2) factors are not intended to "displace any factor" traditionally
used by courts to assess settlement approval, but rather to focus on core concerns to guide the
approval decision. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 2018 amendment; *see
also, e.g., Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *3 (S.D. Tex.
Jan. 30, 2019) (considering "the criteria set forth in [Rule] 23(e)(2) as well as the Fifth Circuit's
*Reed* factors").

informed participants in the Litigation. Plaintiffs consulted with Class Counsel on litigation strategy and case developments, oversaw the drafting of the complaints and reviewed briefing on Defendants' motions to dismiss and their Class Certification Motion, and actively participated in discovery, producing documents to Defendants and sitting for depositions. Plaintiffs also conferred with Class Counsel during the Settling Parties' settlement negotiations, were aware of both sides' principal arguments, and reviewed and approved the terms of the Settlement. Additionally, by appointing Plaintiffs as Class Representatives in connection with class certification, the Court has already found Plaintiffs to have claims typical of those of other Class Members. Moreover, like the rest of the Class, Plaintiffs have an interest in obtaining the largest possible recovery from Defendants.

Likewise, Class Counsel, law firms experienced in prosecuting complex class actions, had a clear view of the strengths and risks of the case and were equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) ("where the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case"). Prior to reaching the Settlement, Class Counsel developed a deep understanding of the case by: (i) conducting a comprehensive investigation into the claims asserted, including interviews with former Cabot employees; (ii) opposing two rounds of motions to dismiss and moving to amend the complaint; (iii) engaging in extensive fact discovery, including taking/defending 19 depositions, and reviewing more than 4.4 million pages of documents produced by Defendants and relevant nonparties; (iv) consulting with multiple experts; (v) briefing and arguing Plaintiffs' Class Certification Motion and successfully defending the

13

Court's ruling on appeal; and (vi) preparing and exchanging expert reports and preparing for the depositions of those experts. Further, through the mediation process, Class Counsel comprehensively vetted the factual record, analyzed Defendants' arguments and contrary facts, thoroughly considered their loss causation and damages arguments (and their potential impact on recoverable damages) and the costs and risks of ongoing litigation, and negotiated vigorously with Defendants to secure the $40 million recovery.

        **2.**      **The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations by Experienced Counsel**

In assessing a proposed settlement, courts must also consider whether the settlement "was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In conducting this assessment, courts recognize "[t]he involvement of an experienced and well-known mediator [to be] a strong indicator of procedural fairness." *Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 296 (5th Cir. 2017); *see also Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (approving securities class action settlement that was "obtained through formal mediation before [an experienced mediator], which strongly suggests that the settlement was not the result of improper dealings").

Here, the Settling Parties' negotiations were at arm's length and Mr. Murphy's close involvement in the settlement process (including through two formal mediation sessions and additional settlement discussions)—as well as the issuance of a mediator's proposal to resolve the Litigation following these negotiations—further supports that the Settlement is fair and that the Settling Parties achieved it free of collusion.

        **3.**      **The Settlement Provides Substantial Relief, Especially in Light of the Costs, Risks, and Delay of Further Litigation**

A key factor in assessing whether to approve a class action settlement is a plaintiff's likelihood of success on the merits, balanced against the relief offered in settlement. *See* Fed. R.

Civ. P. 23(e)(2)(C).[11] Here, the Settlement provides for a substantial and certain, near-term cash recovery of $40 million to be allocated among Class Members who submit valid Claims following deduction of Court-approved fees and costs.

In comparison, if the Litigation had continued, Plaintiffs would face numerous factual and legal risks that could have substantially decreased the Class's potential recovery, or eliminated it altogether. To this day, Defendants adamantly deny any wrongdoing. As they did at the motion to dismiss stage and during mediation, Defendants undoubtedly would have argued at summary judgment and trial that the statements at issue in the Litigation were not false at the time they were made and that Plaintiffs would be unable to prove that Defendants did not legitimately believe the truth of such statements. In support, Defendants would likely point to the Court's recent ruling in the Derivative Litigation, and while easily distinguishable from the instant case, this Court granted defendants' motion to dismiss, finding, among other things, that the complaint failed to state a claim with respect to certain disclosures. *See In re Cabot Oil & Gas Corp. Derivative Litig.*, 2024 WL 23365, at *21-28 (S.D. Tex. Jan. 2, 2024).

Plaintiffs also faced challenges in establishing loss causation and damages. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiff bears burden of proving "that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"). Had the Litigation continued, Defendants would likely assert that Plaintiffs would be unable to demonstrate that many (or all) of Defendants' alleged misrepresentations directly or proximately caused the

---

[11]   "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). Further, courts repeatedly recognize federal securities litigation to be an "extremely complex" and "highly technical and specialized area of the law." *City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965693, at *7 (W.D. La. Mar. 3, 2015).

economic losses incurred. Ultimately, resolution of these issues would come down to a "battle of experts" with no guarantee as to which expert's testimony or methodology would be more compelling to a jury. *See Buettgen v. Harless*, 2013 WL 12303143, at \*8 (N.D. Tex. Nov. 13, 2013) ("One cannot predict which expert's testimony or methodology a jury would find reliable."); *In re Cendant Corp. Litig*., 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a battle of experts, with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

The Settlement is a strong result when balanced against these risks. The Settlement represents approximately 14% of the Class's reasonably recoverable damages (assuming success by Plaintiffs on all liability issues),[12] which exceeds damages recoveries in similar cases.[13] Thus, the Settlement provides a significant recovery for Class Members.

### 4.    The Settlement Does Not Unjustly Favor Any Class Member

The Court must also assess the Settlement's effectiveness in equitably distributing relief to the Class. Fed. R. Civ. P. 23(e)(2)(C)(ii) & (e)(2)(D). The proposed Plan of Allocation ("Plan"), set forth in the long-form Notice and developed in consultation with Plaintiffs' damages expert, provides a fair and effective means of distributing the Net Settlement Fund and treats Class

---

[12] This estimate is based on the price declines following the two corrective disclosures in this case—*i.e.*, the July 26, 2019 price decline after Cabot reduced its 2019 annual production growth guidance, and the June 15, 2020 price decline after the AG announced criminal charges.

[13]    While each securities class action reflects its own unique risks, the recovery obtained in this Litigation compares favorably to recoveries achieved in other securities cases and approved by courts. *See, e.g., Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at \*7 (C.D. Cal. July 24, 2023) (approving securities class action settlement where recovery represented 3% of estimated damages); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at \*10 (S.D.N.Y. Nov. 30, 2021) (approving securities class action settlement where recovery represented "5.3% of the Settlement's Class's maximum estimated damages"); *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at \*5 (D.D.C. Oct. 5, 2018) (approving securities class action settlement "constitut[ing] approximately 4% of the ***maximum*** realistic recoverable damages") (emphasis in original).

16

Members equitably relative to each other.

Specifically, the Plan provides for distribution of the Net Settlement Fund to Class Members who submit timely and valid Claims demonstrating a loss on their transactions in Cabot common stock during the Class Period.[14] The Plan is based on the estimated amount of artificial inflation in the price of Cabot common stock during the Class Period that was allegedly caused by Defendants' alleged misconduct. In order to have a loss under the Plan, a Class Member must have held Cabot common stock purchased or acquired during the Class Period through one of the alleged corrective disclosures that removed artificial inflation from the stock price. The Plan treats all Class Members equitably and eligible Class Members will receive a *pro rata* distribution from the Net Settlement Fund based on the amount of their recognized losses.[15] Here, too, the Court can readily find the Settlement will likely earn approval.

### 5.    The Anticipated Request for Attorneys' Fees Is Reasonable

The proposed notices to the Class advise that Class Counsel, on behalf of Plaintiffs' Counsel, will apply for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Fund, plus payment of expenses. In light of Plaintiffs' Counsel's efforts over the past 3+ years without any payment whatsoever, a fee of up to 33⅓% is reasonable and falls within the

---

[14]   The Settlement will be effectuated with the assistance of an experienced claims administrator. If approved to serve as Claims Administrator, JND will employ a standard and well-tested protocol for processing claims in securities class actions. Namely, Class Members will submit Claims, either by mail or electronically and, based on the information submitted, JND will determine each claimant's eligibility to participate in the Settlement by calculating his, her, or its "Recognized Claim" under the Plan. *See* Stip., ¶ 5.6. Claimants will be notified of (and given the chance to remedy) any defects in their Claims, and will also have the opportunity to contest a rejection. *Id*., ¶ 5.8. Any Claim disputes that cannot be resolved will be presented to the Court. *Id*.

[15]   As set forth in the notices, Class Counsel may request reimbursement of Plaintiffs' reasonable costs and expenses incurred in representing the Class, as permitted by the PSLRA. 15 U.S.C. § 78u-4(a)(4) (allowing the "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class").

range of attorneys' fees regularly awarded in this Circuit. *See*, *e.g.*, *Al's Pals Pet Care*, 2019 WL 387409, at \*4 (a fee of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Halliburton*, 2018 WL 1942227, at \*12 (granting one-third fee); *Schwartz*, 2005 WL 3148350, at \*27 (courts "regularly" award fees of "30% or more of the total recovery").[16] Class Members will have an opportunity to address the fee request before the Settlement Hearing, and after Class Counsel have made submissions in support of their request.

### 6. Plaintiffs Have Identified All Agreements Made in Connection with the Settlement

In addition to the Stipulation, the Settling Parties have entered into a standard, confidential Supplemental Agreement that gives Defendants the option to terminate the Settlement in the event that requests for exclusion from the Class exceed certain agreed-upon conditions. Stip., ¶ 7.4. "This type of agreement is common in securities fraud actions and does not weigh against [settlement] approval." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at \*7 (C.D. Cal. Oct. 10, 2019).[17]

---

[16] Additionally, the proposal that Class Counsel receive their fee award immediately after the Court executes the Judgment and an order awarding such fees and expenses is appropriate and consistent with common practice in cases of this nature as the Stipulation provides (at ¶ 6.2) that if the Settlement is ultimately terminated, or the fee award is later reversed or modified, Class Counsel will refund or repay the subject amount to the Settlement Fund. *See, e.g.*, *NECA-IBEW Health & Welfare Fund v. Goldman, Sachs & Co.*, 2016 WL 3369534, at \*1 (S.D.N.Y. May 2, 2016) (("[T]he fees and expenses awarded herein shall be paid from the Settlement Fund to Lead Counsel immediately upon entry of this Order, notwithstanding the existence of any timely filed objections thereto, if any, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to repay all such amounts with interest[.]").

[17] Also, as is standard in securities class actions, agreements of this kind are not made public to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging the opt-out threshold to exact individual settlements. In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

18

## VI.    THE CLASS SATISFIES THE STANDARDS FOR CLASS CERTIFICATION

The second part of the settlement approval process is to determine whether the Litigation may be maintained as a class action for settlement purposes under Rule 23. *See* Fed. R. Civ. P. 23(e)(1)(B)(ii). Here, the Court certified a class on September 27, 2023, finding that the Class satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy requirements as well as Rule 23(b)(3)'s requirement that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. ECF No. 173. Accordingly, the Court need not determine whether, pursuant to Rule 23(e)(1)(B) it "will likely be able to" certify the Class, as it has already certified a class in this Litigation.

## VII.    NOTICE OF THE SETTLEMENT SHOULD BE APPROVED

Rule 23(c)(2)(B) requires the court to direct to a class certified under Rule 23(b)(3) "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by a proposed settlement. Moreover, notice must "apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

Consistent with Rules 23(c)(2)(B) and 23(e)(1)(B), the proposed notices here will collectively apprise recipients of (among other disclosures): (i) the nature of the Litigation; (ii) the definition of the Court-certified Class; (iii) the claims and issues involved; (iv) that a Class Member may enter an appearance through an attorney if desired; (v) that the Court will exclude from the Class any Class Member who requests exclusion (and the procedures and deadlines for doing so); and (vi) the binding effect of a class judgment on Class Members under Rule

19

23(c)(3)(B). The long-form Notice also satisfies the PSLRA's additional notice requirements by stating: (i) the Settlement amount in the aggregate and on an average per share basis; (ii) that the Parties do not agree on the amount of damages per share that would be recoverable at trial; (iii) that Class Counsel intend to apply for attorneys' fees and expenses (including the amount of such fees and estimated expenses on an average per share basis); (iv) Class Counsel's contact information; and (v) the reasons for the Settlement. 15 U.S.C. § 78u-4(a)(7).

As outlined in the Preliminary Approval Order, if the Settlement is preliminarily approved, the Claims Administrator[18] will provide direct notice via mail and/or email (*see* Postcard Notice, Ex. A-4 to the Stipulation) to those Class Members set forth in the records to be provided by Cabot, or who otherwise can be identified with reasonable effort, including through a network of banks, brokerage firms, and other nominees.[19] The Postcard Notice provides important information regarding the Settlement, along with the rights of Class Members in connection therewith, and directs recipients to the Settlement website (*i.e.*, www.CabotOilSecuritiesLitigation.com) and

---

[18]   Plaintiffs also request the Court's approval to retain JND as the Claims Administrator. JND is a nationally recognized notice and claims administration firm that has successfully administered numerous complex securities class action settlements throughout the country. *See* JND resume (attached as Exhibit 2 to the Alvarado Decl.; *see also* www.jndla.com.

[19]   JND will utilize its proprietary list of the largest and most common banks, brokerage firms, and nominees ("Nominees") to facilitate the dissemination of notice. JND will send notice to all Nominees on its list. Nominees who purchased or otherwise acquired shares of Cabot common stock during the Class Period on behalf of other beneficial owners will be required to either mail the Postcard Notice to their customers or provide the names and addresses of the beneficial owners to JND, which will then promptly send the Postcard Notice by first-class mail or email to such identified beneficial owners.

detailed long-form Notice for more information regarding the Litigation and Settlement.[20] The Claims Administrator will post downloadable copies of the Notice and Proof of Claim (Exs. A-1 & A-2 to the Stipulation), as well as other important documents, on the Settlement website and will cause the Summary Notice (Ex. A-3 to the Stipulation) to be published once in the national edition of *The Wall Street Journal* and once over a national newswire service. *See* Stip., Ex. A ¶ 6(c).

The proposed plan for providing notice here is the same method used in numerous other securities class actions. Courts routinely find that comparable notice procedures represent the best notice practicable under the circumstances and satisfy the requirements of Rule 23 and due process. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *3 (holding that notices delivered though similar procedures—i.e., mailed notice, publication notice, and website—satisfied the Rule 23 requirements); *Schwartz*, 2005 WL 3148350, at *10-11 (same). Accordingly, Plaintiffs respectfully submit that the Court should approve the proposed manner and form of providing notice to Class Members.

## VIII.   PROPOSED SCHEDULE OF SETTLEMENT-RELATED EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (i.e., the Settlement Hearing, mailing of notice, and deadlines for submitting Claims, requesting exclusion from the Class and objecting to the Settlement). Plaintiffs respectfully propose the schedule set forth in the chart below, as agreed to by the Settling Parties

---

[20]   Courts routinely allow notice by postcard as proposed here. *See, e.g.*, *Celeste v. Intrusion Inc.*, 2022 WL 17736350, at *8 (E.D. Tex. Dec. 16, 2022) (approving notice though mailing of postcard, posting of long-form notice on website, and publishing a summary notice); *In re EZCORP, Inc. Sec. Litig.*, 2019 WL 6681962, at *2 (W.D. Tex. Dec. 6, 2019) (same); *Parmelee v. Santander Consumer USA Holdings, Inc.*, 2019 WL 2352837, at *2 (N.D. Tex. June 3, 2019) (same).

and set forth in the proposed Preliminary Approval Order. Additionally, Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. The Court need only enter the date of the Settlement Hearing at ¶ 3 of the Preliminary Approval Order, as all other dates referenced below will be set based on either (a) the date the Preliminary Approval Order is entered, or (b) the date selected by the Court for the Settlement Hearing.

| **Event** | **Proposed Timing** |
| --- | --- |
| Deadline for mailing/e-mailing the Postcard Notice to Class Members (which date shall be the "Notice Date") and posting the Notice and Proof of Claim on the Settlement website | Not later than 21 calendar days after entry of Preliminary Approval Order ("PAO") (PAO ¶ 6(b)) |
| Deadline for publishing the Summary Notice | Not later than 7 calendar days after Notice Date (PAO ¶ 6(c)) |
| Deadline for filing papers in support of final approval of the Settlement, Plan of Allocation, and Class Counsel's motion for attorneys' fees and expenses) | Not later than 35 calendar days prior to Settlement Hearing (PAO ¶ 17) |
| Deadline for requests for exclusion to be postmarked | Not later than 21 calendar days prior to Settlement Hearing (PAO ¶ 11) |
| Deadline for receipt of objections | Not later than 21 calendar days prior to Settlement Hearing (PAO ¶ 13) |
| Deadline for filing reply papers | Not later than 7 calendar days prior to Settlement Hearing (PAO ¶ 17) |
| Settlement Hearing | 100 calendar days after entry of Preliminary Approval Order, or at the Court's earliest convenience thereafter (PAO ¶ 3) |
| Deadline for Proofs of Claim to be postmarked/submitted electronically | No later than 90 calendar days from the Notice Date (PAO ¶ 9) |

## IX.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) preliminarily approve the Settlement; (ii) approve the proposed form and manner of providing notice to Class

Members; (iii) approve the retention of JND as the Claims Administrator for the Settlement; and (iv) schedule a date and time for the Settlement Hearing to consider final approval of the Settlement and related matters.

Dated: June 3, 2024                     Respectfully submitted,

                                        *s/ Darryl J. Alvarado*
                                        ROBBINS GELLER RUDMAN
                                            & DOWD LLP
                                        DARRYL J. ALVARADO
                                        KEVIN A. LAVELLE
                                        FRANCISCO J. MEJIA
                                        JACK ABBEY GEPHART
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101-8498
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)
                                        dalvarado@rgrdlaw.com
                                        klavelle@rgrdlaw.com
                                        fmejia@rgrdlaw.com
                                        jgephart@rgrdlaw.com

                                        *Class Counsel*


                                        KESSLER TOPAZ MELTZER
                                            & CHECK, LLP
                                        ANDREW L. ZIVITZ
                                        JAMIE M. MCCALL
                                        JOSHUA E. D'ANCONA
                                        ALEX B. HELLER
                                        MAX JOHNSON
                                        280 King of Prussia Road
                                        Radnor, PA  19087
                                        Telephone:  610/667-7706
                                        610/667-7056 (fax)
                                        azivitz@ktmc.com
                                        jmccall@ktmc.com
                                        jdancona@ktmc.com
                                        aheller@ktmc.com
                                        mjohnson@ktmc.com

                                        *Class Counsel*

23

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700, S.D.
Texas Bar No. 30973, Attorney in Charge)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

*Local Counsel*

24

## **CERTIFICATE OF SERVICE**

I certify that on June 3, 2024, I caused a true and correct copy of the foregoing to be electrically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.


*s/ Darryl J. Alvarado*
Darryl J. Alvarado

25