**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action 4:21-cv-02045 |
| | District Judge Lee H. Rosenthal |
| Plaintiff, | CLASS ACTION |
| vs. | |
| CABOT OIL & GAS CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARDS TO PLAINTIFFS PURSUANT TO 15 U.S.C. §78U-4(A)(4)**

**TABLE OF CONTENTS**

<b>Page</b>

I.      NATURE AND STAGE OF THE PROCEEDINGS ........................................................1

II.     STATEMENT OF ISSUES TO BE RULED UPON............................................................2

III.    SUMMARY OF THE ARGUMENT .....................................................................2

IV.     CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE
        AND SHOULD BE APPROVED ......................................................................5

        A.    Class Counsel Are Entitled to a Reasonable Fee from the Common Fund ............5

        B.    The Requested Attorneys' Fees are Reasonable Under Either the
              Percentage-of-the-Fund Method or the Lodestar Method .......................................6

              1.    The Requested Attorneys' Fees Are Reasonable Under the
                    Percentage-of-the-Fund Method ....................................................7

              2.    The Requested Attorneys' Fees are Reasonable Under the Lodestar
                    Method .........................................................................8

        C.    The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable ............11

              1.    The Time and Labor Expended................................................12

              2.    The Novelty and Difficulty of the Issues...................................13

              3.    The Amount Involved and the Results Achieved ......................................15

              4.    The Skill Required to Perform the Legal Services Properly, and the
                    Experience, Reputation, and Ability of the Attorneys ..............................16

              5.    The Preclusion of Other Employment ......................................17

              6.    The Customary Fee and Awards in Similar Cases....................................17

              7.    The Contingent Nature of the Fee............................................18

              8.    The Undesirability of the Case .............................................19

              9.    Other Factors Considered by Courts Further Support the Requested
                    Fee as Fair and Reasonable...................................................19

                    a.    Public Policy Considerations ........................................19

                    b.    Plaintiffs Have Approved the Requested Fee ..............................20

                    c.    The Class's Reaction to Date....................................20

i

V.     PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE
       AND SHOULD BE APPROVED ......................................................................................21

VI.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS
       UNDER THE PSLRA.....................................................................................................22

VII.   CONCLUSION................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al's Pals Pet Care v. Woodforest Nat'l Bank, NA,*
2019 WL 387409 (S.D. Tex. Jan. 30, 2019) ...........................................................................7

*Anixter v. Home-Stake Prod. Co.,*
77 F.3d 1215 (10th Cir. 1996) ...........................................................................................18

*In re Apple Comput. Sec. Litig.,*
1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .......................................................................18

*In re Arthrocare Corp. Sec. Litig.,*
2012 WL 12951371 (W.D. Tex. June 4, 2012) .............................................................. 23-24

*Backman v. Polaroid Corp.,*
910 F.2d 10 (1st Cir. 1990) ...............................................................................................18

*In re BankAtlantic Bancorp, Inc. Sec. Litig.,*
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom.*
*Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) ...............................18

*Barton v. Drummond Co.,*
636 F.2d 978 (5th Cir. 1981) ...............................................................................................6

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
472 U.S. 299 (1985).......................................................................................................6, 19

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.,*
909 F. Supp. 2d 259 (S.D.N.Y. 2012)...........................................................................10, 20

*Bentley v. Legent Corp.,*
849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom. Herman v. Legent Co.*, 50
F.3d 6 (4th Cir. 1995) ........................................................................................................18

*Billitteri v. Sec. Am. Inc.,*
2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)................................................................11, 21

*Blackmon v. Zachary Holdings, Inc.,*
2022 WL 2866411 (W.D. Tex. July 21, 2022) ....................................................................22

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980)......................................................................................................... 5-6

*Buettgen v. Harless,*
2013 WL 12303194 (N.D. Tex. Nov. 13, 2013)....................................................................8

*Burford v. Cargill, Inc.*,
　2012 WL 5471985 (W.D. La. Nov. 8, 2012) .........................................................17

*Burnett v. CallCore Media, Inc.*,
　2024 WL 3166453 (S.D. Tex. June 25, 2024) .........................................................7

*Celeste v. Intrusion Inc.*,
　2022 WL 17736350 (E.D. Tex. Dec. 16, 2022)..................................................7, 17

*City of Detroit v. Grinnell Corp.*,
　495 F.2d 448 (2d Cir. 1974)...................................................................................18

*City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*,
　2020 WL 218518 (W.D. Tex. Jan. 10, 2020) ...........................................................8

*In re Cobalt Int'l Energy, Inc. Sec. Litig.*,
　2019 WL 6043440 (S.D. Tex. Feb. 13, 2019) ........................................................23

*DeHoyos v. Allstate Corp.*,
　240 F.R.D. 269 (W.D. Tex. 2007) ............................................................................9

*Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*,
　2021 WL 118288 (N.D. Tex. Jan. 12, 2021) ..........................................................23

*In re Dell Inc., Sec. Litig.*,
　2010 WL 2371834 (W.D. Tex. June 11, 2010), *aff'd sub nom. Union Asset*
　*Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012)...........................15

*Erica P. John Fund, Inc. v. Halliburton Co.*,
　2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) ......................................8, 19, 21, 23

*Farrar v. Workhorse Grp., Inc.*,
　2023 WL 5505981 (C.D. Cal. July 24, 2023) .........................................................16

*Glock v. FTS Int'l*,
　2021 WL 1422714 (S.D. Tex. Apr. 13, 2021) (Rosenthal, J.)...................................8

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
　851 F. Supp. 2d 1040 (S.D. Tex. 2012) ..................................................................10

*Hicks v. Morgan Stanley*,
　2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...........................................................6

*Howard v. Liquidity Servs. Inc.*,
　2018 WL 4853898 (D.D.C. Oct. 5, 2018) ...............................................................16

*Jenkins v. Trustmark Nat'l Bank*,
　300 F.R.D. 291 (S.D. Miss. 2014) .............................................................6, 11, 19

iv

*Johnson v. Ga. Highway Express, Inc.*,
   488 F.2d 714 (5th Cir. 1974) ........................................................................ *passim*

*Klein v. O'Neal, Inc.*,
   705 F. Supp. 2d 632 (N.D. Tex. 2010) ...................................................... 4, 8, 9, 11

*Lea v. Tal Educ. Grp.*,
   2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ........................................................ 16

*Leroy v. City of Houston*,
   831 F.2d 576 (5th Cir. 1987) .............................................................................. 10

*Marcus v. J.C. Penney Co., Inc.*,
   2018 WL 11275437 (E.D. Tex. Jan. 5, 2018) .......................................................... 8

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................... 15

*Miller v. Glob. Geophysical Servs. Inc.*,
   2016 WL 11645372 (S.D. Tex. Jan. 14, 2016) ...................................................... 23

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ............................................................................................ 10

*In re N. Dynasty Mins. Ltd. Sec. Litig.*,
   2024 WL 308242 (E.D.N.Y. Jan. 26, 2024) ........................................................ 16

*In re OCA, Inc. Sec. & Deriv. Litig.*,
   2009 WL 512081 (E.D. La. Mar. 2, 2009) ............................................................ 13

*Prause v. TechnipFMC*,
   2021 WL 6053219 (S.D. Tex. Mar. 23, 2021) ........................................................ 8

*Robbins v. Koger Props. Inc.*,
   116 F.3d 1441 (11th Cir. 1997) .......................................................................... 18

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .............................................. 7, 8, 18

*Shen v. Exela Techs., Inc.*,
   2023 WL 8518901 (N.D. Tex. Dec. 7, 2023) ........................................................ 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................ 6

*In re Tesla, Inc. Sec. Litig.*,
   2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) ........................................................ 18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) .........................................................................6, 7, 9

*In re Waste Mgmt., Inc. Sec. Litig.*,
    2002 WL 35644013 (S.D. Tex. May 10, 2002), *amended on other grounds*,
    2003 WL 27380802 (S.D. Tex. July 31, 2003).........................................................20

*In re Willbros Grp., Inc. Sec. Litig.*,
    407 F. Supp. 3d 689 (S.D. Tex. 2018) ......................................................................8

*Willix v. Healthfirst, Inc.*,
    2011 WL 754862 (E.D.N.Y. Feb. 18, 2011)............................................................10

**Statutes**

15 U.S.C. § 78u-4(a)(4) ...............................................................................................22

15 U.S.C. § 77z-1(a)(4)................................................................................................22

15 U.S.C. § 78u-4(a)(6) .................................................................................................7

**Other Authorities**

Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action
    Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ....................................16

H.R. Conf. Rep. No. 104-369, at 32 (1995)
    *reprinted in* 1995 U.S.C.C.A.N. 731 .....................................................................20

Pursuant to Rule 23(h) of the Federal Rules of Civil Procedure ("Rule(s)"), Court-appointed Class Counsel Robbins Geller Rudman & Dowd LLP and Kessler Topaz Meltzer & Check, LLP (together, "Class Counsel") hereby respectfully move for: (i) an award of attorneys' fees for Plaintiffs' Counsel[1] in the amount of 30% of the Settlement Fund; (ii) payment of $1,515,974.05 for expenses reasonably and necessarily incurred by Plaintiffs' Counsel in prosecuting and resolving the above-captioned securities class action ("Litigation"); and (iii) payment in the aggregate amount of $12,454.32 to Court-appointed Class Representatives Delaware County Employees Retirement System and Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan (together, "Plaintiffs") for time and expenses directly related to their representation of the Class in the Litigation, as authorized by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[2]

## I.      NATURE AND STAGE OF THE PROCEEDINGS

In a separate, contemporaneous motion, Plaintiffs seek final approval of a proposed $40 million all-cash Settlement with Cabot Oil & Gas Corporation ("Cabot" or the "Company")[3], Dan O. Dinges, and Scott C. Schroeder (collectively, "Defendants"). If approved, the Settlement will resolve all claims in this Litigation. By this Motion, Class Counsel move for an award of attorneys'

---

[1]      Plaintiffs' Counsel consists of Class Counsel and Local Counsel Kendall Law Group, PLLC.

[2]      All capitalized terms not defined herein have the meanings set forth in the Stipulation of Settlement dated June 3, 2024 (ECF 207-2) ("Stipulation" or "Stip.") and in the Joint Declaration of Darryl J. Alvarado and Andrew L. Zivitz ("Joint Declaration" or "Joint Decl."), submitted herewith. Citations to "¶ _" refer to paragraphs in the Joint Declaration and citations to "Ex. _" refer to exhibits to the Joint Declaration. All internal citations, quotation marks, and footnotes have been omitted and emphasis has been added unless otherwise indicated.

[3]      Cabot merged with Cimarex Energy Co. on October 1, 2021, to form Coterra Energy Inc. For sake of simplicity, "Cabot" or the "Company" is used herein.

fees and expenses to Plaintiffs' Counsel and PSLRA awards to Plaintiffs.

## II.     STATEMENT OF ISSUES TO BE RULED UPON

1.     Whether the Court should approve Class Counsel's request for an award of attorneys' fees.

2.     Whether the Court should approve Class Counsel's request for litigation expenses.

3.     Whether the Court should approve awards to Plaintiffs for their time and expenses in connection with their prosecution of the Litigation on behalf of the Class, as permitted by the PSLRA.

## III.    SUMMARY OF THE ARGUMENT

Following more than three years of dedicated efforts, Class Counsel successfully negotiated a settlement of the Litigation with Defendants. The Settlement, if approved by the Court, will resolve this highly contentious Litigation in its entirety in exchange for $40 million in cash. Based on Class Counsel's and Plaintiffs' thorough understanding of the risks and uncertainties in this Litigation as well as the assessment of approximate class-wide damages, the Settlement is an excellent result. The Settlement not only eliminates the possibility of an adverse ruling for the Class at summary judgment or trial, as well as the risk, delays, and expense of trial and post-trial appeals, but it also recovers a significant portion of the Class's damages.

As detailed in the Joint Declaration,[4] Class Counsel vigorously pursued this Litigation from its outset. Among their efforts, Class Counsel: (i) conducted a far-reaching investigation (including, with the assistance of in-house investigators, locating and speaking to witnesses with

---

[4]     The Joint Declaration is an integral part of this submission and, for the sake of brevity herein, Plaintiffs respectfully refer the Court to the Joint Declaration for a detailed description of, *inter alia*: the history of the Litigation and Class Counsel's extensive litigation efforts (¶¶ 5, 15-59); the settlement negotiations (¶¶ 77-83); and the risks of continued litigation (¶¶ 89-99).

first-hand knowledge of the alleged fraud); (ii) prepared four detailed complaints; (iii) opposed two rounds of motions to dismiss; (iv) briefed a motion to amend Plaintiffs' pleadings based on new evidence uncovered during discovery; (v) briefed and argued a motion for class certification and participated in class-related discovery, including depositions of the Settling Parties' experts and Plaintiffs' representatives; (vi) defeated Defendants' Rule 23(f) petition challenging the Court's certification of the Class; (vii) pursued myriad sources of discovery, including propounding document subpoenas on 10 relevant nonparties and conferring on numerous occasions with Defendants and nonparties regarding discovery disputes; (viii) analyzed over 4.4 million pages of documents produced by Defendants and nonparties during discovery and deposed 15 fact witnesses; and (ix) exchanged opening and rebuttal expert reports and were preparing to defend/depose these experts at the time of settlement. Class Counsel also engaged in protracted settlement negotiations with Defendants, including the exchange of detailed mediation statements and participation in two in-person mediation sessions followed by continued negotiations with the assistance of a highly-experienced mediator, David M. Murphy, Esq. of Phillips ADR. ¶¶ 5, 18-82. The Settling Parties ultimately accepted Mr. Murphy's recommendation to resolve the Litigation for $40 million. ¶ 82.

As fully set forth in the Joint Declaration, the litigation risks in this complex case were substantial, including with respect to liability, damages, and loss causation. Class Counsel assumed all of these risks by taking this case on a fully contingent basis and devoted substantial resources to prosecuting the Litigation against highly-skilled opposing counsel. ¶¶ 118, 120-121. To succeed in the Litigation, Class Counsel deployed an extremely dedicated group of professionals to develop, support, and aggressively pursue the Class's claims, including not only litigators skilled in the area of securities litigation, but also experienced investigators, paralegals, administrative

staff, and others.

As compensation for these efforts and their commitment to bringing the Litigation to a successful conclusion with a cash recovery for the Class, Class Counsel, on behalf of Plaintiffs' Counsel, request a fee of 30% of the Settlement Fund (or, $12 million plus interest). The amount of quality legal work Class Counsel dedicated to the prosecution of this Litigation—and the significant risk they took on by prosecuting and funding this Litigation with no guarantee of recovery—justifies the request. As discussed below, Class Counsel's fee request is consistent with percentage fees awarded in other securities class actions. Further, if approved, a 30% fee would result in a fractional (or *negative*) multiplier of approximately 0.64 on Plaintiffs' Counsel's lodestar. Thus, despite the substantial contingency risks Plaintiffs' Counsel faced (which would otherwise justify a positive multiplier),[5] Class Counsel are requesting a fee that represents a substantial discount on the value of the time Plaintiffs' Counsel devoted to the case. Class Counsel also request payment from the Settlement Fund of $1,528,428.37 in Litigation Expenses (which includes the amounts requested by Plaintiffs). After their diligent involvement in the Litigation, Plaintiffs—sophisticated, institutional investors which are precisely the type of fiduciary envisioned by Congress when enacting the PSLRA—have reviewed and approved Class Counsel's requests for attorneys' fees and Litigation Expenses.[6]

The reaction of the Class to date also supports Class Counsel's requests. Pursuant to the

---

[5]    *See, e.g.*, *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 680 (N.D. Tex. 2010) (awarding fee representing 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that the 2.5 multiplier was "warranted due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class").

[6]    *See* Declaration of Jonathan Lichtenstein on behalf of Delaware County (Ex. 1 to Joint Decl.), at ¶ 5 and Declaration of William Andrew Kolfenbach, Jr. on behalf of Iron Workers (Ex. 2 to Joint Decl.), at ¶¶ 9-11.

Court's Preliminary Approval Order (ECF 211), over 197,000 notices have been mailed or emailed to potential Class Members and nominees.[7] These notices advised recipients that Class Counsel would be applying to the Court for attorneys' fees in an amount not to exceed 33⅓% of the Settlement Amount and expenses in an amount not to exceed $1,750,000, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund. Ex. 3 (Exs. A-D). While the October 3, 2024 objection deadline has not yet passed, to date, there have been ***no*** objections to the fee and expense amounts set forth in the notices. ¶ 112.[8]

For the reasons discussed herein, Class Counsel respectfully submit that their requested fee is fair and reasonable under the applicable legal standards. Class Counsel also respectfully submit that the expenses for which they seek payment were reasonable and necessary for the successful prosecution of the Litigation and that the request for payment to Plaintiffs pursuant to the PSLRA for the time they dedicated to the Litigation on behalf of the Class is likewise reasonable and appropriate. Accordingly, Class Counsel request that their Motion for an Award of Attorneys' Fees and Expenses be granted in full.

## IV.    CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND SHOULD BE APPROVED

### A.    Class Counsel Are Entitled to a Reasonable Fee from the Common Fund

The propriety of awarding attorneys' fees from a common fund is well established. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a

---

[7]    *See* Declaration of Luiggy Segura Regarding: (A) Dissemination of the Postcard Notice and Notice Packet; (B) Publication/Transmission of the Summary Notice; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date (Ex. 3 to Joint Decl.), ¶ 12.

[8]    If any objections are received after this submission, Class Counsel will address them in their October 17, 2024 reply.

common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Barton v. Drummond Co.*, 636 F.2d 978, 982 (5th Cir. 1981) ("[I]t is well settled that the 'common benefit' or 'common fund' equitable doctrine allows for the assessment of attorneys' fees against a common fund created by the attorneys' efforts."). Fee awards from a common fund serve the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 306 (S.D. Miss. 2014).

Further, the Supreme Court has emphasized that private securities actions such as this provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 318-19 (2007). Compensating plaintiffs' counsel for the risks they take in bringing these actions is essential, because "[s]uch actions could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class." *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005).

**B.      The Requested Attorneys' Fees are Reasonable Under Either the Percentage-of-the-Fund Method or the Lodestar Method**

Fees awarded to counsel from a common fund can be determined under either the percentage-of-the-fund method or the lodestar method. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012) (district courts have "the flexibility to choose between the percentage and lodestar methods in common fund cases"). Under either method, the requested fee in this Litigation is fair and reasonable.

1.      **The Requested Attorneys' Fees Are Reasonable Under the Percentage-of-the-Fund Method**

Class Counsel respectfully submit that the Court should award a fee based on a percentage of the common fund obtained. As noted above, the Fifth Circuit has expressly approved the percentage method for determining a fee award, noting that it "brings certain advantages . . . because it allows for easy computation" and "aligns the interests of class counsel with those of the class members." *Id.* at 643 ("district courts in this Circuit regularly use the percentage method"); *see also Burnett v. CallCore Media, Inc.*, 2024 WL 3166453, at *5 (S.D. Tex. June 25, 2024) (the percentage method for determining fees is generally "the preferred method" in this Circuit "because it aligns the interests between class counsel and the class members, encouraging successes and penalizing failure").

In light of these advantages, a "strong consensus in favor of awarding attorneys' fees in common fund cases as a percentage of the recovery" has developed. *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *26 (N.D. Tex. Nov. 8, 2005). The percentage method is particularly appropriate in securities cases like this one, as the PSLRA states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a *reasonable percentage* of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6) (emphasis added).

Class Counsel's 30% request falls within the range of percentage fees routinely awarded in the Fifth Circuit. *See Celeste v. Intrusion Inc*., 2022 WL 17736350, at *11 (E.D. Tex. Dec. 16, 2022) ("Recognizing that common fund litigation is risky for counsel, on the one hand, and beneficial to the public, on the other, courts frequently award attorney's fees ranging from twenty-five percent of the settlement fund to over thirty-three percent of the settlement fund."); *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019) (a fee

7

of one-third "is an oft-awarded percentage in common fund class action settlements in this Circuit"); *Schwartz*, 2005 WL 3148350, at \*27 (courts "regularly" award fees of "30% or more of the total recovery").

Moreover, ample precedent exists in this Circuit for granting percentage-based fees in class actions at the level requested here. *See, e.g.*, Order, *Doyle v. Reata Pharms., Inc.*, No. 4:21-cv-00987 (E.D. Tex. Mar. 29, 2024), ECF 84, at 2 (awarding 30% of $45 million settlement); Order, *Glock v. FTS Int'l*, 2021 WL 1422714, at \*1 (S.D. Tex. Apr. 13, 2021) (Rosenthal, J.) (awarding 33% of $9.875 million settlement); *Prause v. TechnipFMC*, 2021 WL 6053219, at \*1-2 (S.D. Tex. Mar. 23, 2021) (awarding 33% of $19.5 million settlement); *City of Pontiac Gen. Emps.' Ret. Sys. v. Dell Inc.*, 2020 WL 218518, at \*1 (W.D. Tex. Jan. 10, 2020) (awarding 30% of $21 million settlement); *Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at \*12 (N.D. Tex. Apr. 25, 2018) (awarding 33⅓% of $100 million settlement and stating "[c]ompared to other common fund cases in this Circuit, Class Counsel is not asking for an unusually large or high fee"); *In re Willbros Grp., Inc. Sec. Litig.*, 407 F. Supp. 3d 689, 690 (S.D. Tex. 2018) (awarding 30% of $10 million settlement); *Marcus v. J.C. Penney Co., Inc.*, 2018 WL 11275437, at \*1 (E.D. Tex. Jan. 5, 2018) (awarding 30% of $97.5 million settlement); *Buettgen v. Harless*, 2013 WL 12303194, at \*1 (N.D. Tex. Nov. 13, 2013) (awarding 30% of $33.75 million settlement); *Klein*, 705 F. Supp. 2d at 678-81 (awarding 30% of settlement between $90 and $110 million).

### 2. The Requested Attorneys' Fees are Reasonable Under the Lodestar Method

Class Counsel's fee request is also eminently reasonable when considering counsel's lodestar, which courts may utilize as a cross-check to confirm the reasonableness of the requested percentage fee. *See Halliburton*, 2018 WL 1942227, at \*13 ("A court is to apply a lodestar calculation as a crosscheck of the percentage method."). In this case, Class Counsel's lodestar

strongly confirms the reasonableness of the fee request.

When utilizing the lodestar method "the court computes fees by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate and, in its discretion, applying an upward or downward multiplier." *Dell*, 669 F.3d at 642-43. In securities class actions and other complex cases with substantial contingency risks, fees representing multiples above the lodestar are typically awarded to reflect contingency risks and other relevant factors. *See, e.g.*, *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 333 (W.D. Tex. 2007) ("The average range of multipliers applied to other class actions has been from 1.0 to 4.5. The range of multipliers on large and complicated class actions have ranged from at least 2.26 to 4.5."); *Klein*, 705 F. Supp. 2d at 680 (awarding 2.5 multiplier and noting that "[m]ultipliers in this range are not uncommon in class action settlements" and that 2.5 multiplier was "warranted due to the risks entailed in this lawsuit and the zealous efforts of the attorneys that resulted in a significant recovery for the class").

Through September 10, 2024, Plaintiffs' Counsel have spent 31,806 hours of attorney and other professional support time prosecuting the Litigation on behalf of the Class. ¶ 115. Based on these hours, Plaintiffs' Counsel's lodestar is $18,607,588.00. *Id.*; *see also* Exs. 4-6. This lodestar represents the vigorous prosecution of the case as described in the Joint Declaration, which included a detailed investigation, the preparation of four complaints, two rounds of motions to dismiss, a motion to amend the pleadings, a motion to certify the class, extensive discovery, including 19 depositions and the review of over 4.4 million pages of documents, and work with multiple experts (including the exchange of opening and rebuttal reports). ¶¶ 18-76. Accordingly, the 30% fee request represents a negative "multiplier" of approximately 0.64 on the lodestar value of Plaintiffs' Counsel's time. ¶ 115. In other words, the requested fee is equal to approximately 64% of the value of the time expended by Plaintiffs' Counsel at their regular hourly rates. This

fact strongly supports the reasonableness of the requested fee. *See, e.g., In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 271 (S.D.N.Y. 2012) (approving negative fee multiplier and noting it to be "strong indication of the reasonableness of the [requested] fee").[9]

Moreover, in conducting a lodestar analysis, the appropriate hourly rates to use are the current prevailing market rates.[10] *See In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1087-88 (S.D. Tex. 2012) (an attorney's hourly rates should be judged in relation to "prevailing market rates for lawyers with comparable experience and expertise in complex class action litigation" and "[a]n attorney's requested hourly rate is prima facie reasonable when he requests that the lodestar be computed at his or her customary billing rate, the rate is within the range of prevailing market rates[,] and the rate is not contested") (second alteration in original). In this respect, Class Counsel's current hourly rates, or similar hourly rates, have been approved in numerous cases throughout the country. *See* Exs. 4 and 5.[11]

---

[9]    Should the Court approve the Settlement, Class Counsel will continue to perform legal work on behalf of the Class—assisting Class Members with their Claims and related inquires and working with the Claims Administrator, JND Legal Administration, to ensure the smooth progression of claims processing and distribution of the Net Settlement Fund. No additional legal fees will be sought for this work. *See Willix v. Healthfirst, Inc.*, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) ("The fact that Class Counsel's fee award will not only compensate them for time and effort already expended, but for time that they will be required to spend administering the settlement going forward also supports their fee request.").

[10]    The use of current hourly rates to calculate lodestar as a means of compensating for the delay in payment was approved in this Circuit, *see Leroy v. City of Houston*, 831 F.2d 576, 584 (5th Cir. 1987) ("current rates may be used to compensate for inflation and delays in payment"), even before the Supreme Court adopted this approach in *Missouri v. Jenkins*, 491 U.S. 274, 284 (1989).

[11]    Here, Class Counsel's per-hourly rates range from $785-$1,400 for partners, $300-$985 for counsel and associates, and $370-$475 for other attorneys, which are reasonable. By way of comparison, Defendants' Counsel in the Litigation, Norton Rose Fulbright US LLP, reported its 2023 hourly rates to be: $715 to $1,700 for partners, $585 to $1,350 for senior counsel, $550 to $1,050 for senior associates, and $485 to $995 for associates. *See In re: Chapter 11 Sorrento Therapeutics, Inc., et al.*, Case No. 23-90085 (DRJ), ECF 310, at *5 (S.D. Tex. Bktcy Ct. Mar. 28,

In sum, whether calculated utilizing the percentage-of-the-fund or lodestar method, the requested fee is reasonable and well within the range of fees awarded by courts in these actions.

### C.    The *Johnson* Factors Confirm the Requested Fee Is Fair and Reasonable

An analysis of the factors identified by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) ("*Johnson*") confirms that a 30% fee award is fair and reasonable in this case.  The *Johnson* factors are:

> (1) The time and labor required…[;] (2) The novelty and difficulty of the questions…[;] (3) The skill requisite to perform the legal service properly…[;] (4) The preclusion of other employment by the attorney due to acceptance of the case…[;] (5) The customary fee…[;] (6) Whether the fee is fixed or contingent…[;] (7) Time limitations imposed by the client or the circumstances…[;] (8) The amount involved and the results obtained…[;] (9) The experience, reputation, and ability of the attorneys…[;] (10) The "undesirability" of the case…[;] (11) The nature and length of the professional relationship with the client…[; and] (12) Awards in similar cases.[12]

*Id.* (quotation marks in original); *see also Billitteri v. Sec. Am. Inc.*, 2011 WL 3585983, at *3 (N.D. Tex. Aug. 4, 2011) (applying *Johnson* factors). In addition, courts may consider other factors, such as: (i) public policy considerations, (ii) plaintiffs' approval of the fee, and (iii) the reaction of the class. *See, e.g.*, *Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual claims—support the requested fee."); *Klein*, 705 F. Supp. 2d at 661–62, 678 (noting proposed settlement, including requested fee, was supported by "virtually all class members"). Consideration of these factors here provides further confirmation that the requested

---

2023). These rates are in line with or exceed Class Counsel's rates.

[12]    Two *Johnson* factors—the "time limitations imposed by the client or the circumstances" and the "nature and length of [counsel's] professional relationship with the client"—are not relevant in this case. *See Klein*, 705 F. Supp. 2d at 676 ("not every factor need be necessarily considered").

fee is reasonable.

### 1.    The Time and Labor Expended

The substantial time and effort expended by Plaintiffs' Counsel in prosecuting this

Litigation and achieving the Settlement amply supports the requested fee. As detailed in the Joint

Declaration, Class Counsel among other things:

- Conducted a thorough and wide-ranging investigation concerning the alleged fraudulent misrepresentations made by Defendants, which included an extensive review of publicly available information concerning Cabot (*i.e.*, years of Cabot's public filings with the SEC, findings by regulators and law enforcement resulting from investigations of Cabot, media reports, analyst reports, and trading data), Cabot's compliance with environmental laws and regulations, the Pennsylvania Department of Environmental Protection, and information from percipient witnesses with first-hand knowledge of the alleged fraud, and researched Fifth Circuit law applicable to the claims asserted in the Litigation and Defendants' potential defenses (¶ 18);

- Prepared and filed the Complaint (ECF 47) and Amended Complaint (ECF 110) based on Class Counsel's extensive investigation (¶¶ 18-19, 22);

- Opposed two rounds of motions to dismiss and defeated in substantial part Defendants' motion to dismiss the Amended Complaint (¶¶ 20, 22);

- Prepared for and defended depositions of Plaintiffs' market efficiency and price impact expert, and deposed Defendants' market efficiency and price impact expert, during class certification discovery (¶¶ 29, 74);

- Achieved (following full briefing and argument) certification of a class of investors who purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby and successfully defended that certification against Defendants' Rule 23(f) petition to the Fifth Circuit (¶¶ 25-36);

- Conducted extensive party and third-party document discovery for nearly a year, including the exchange, careful review, and analysis of 4,437,870 pages of documents (¶¶ 37, 39-43, 50, 53);

- Prepared for and conducted 15 fact depositions of both party and third-party witnesses, including current and former Cabot employees, environmental consultants, and government regulators (¶¶ 47-51);

- Responded to Defendants' various discovery requests and interrogatories, and

defended two Rule 30(b)(6) depositions of Plaintiffs' corporate representatives (¶¶ 37, 44, 46);

- Engaged in multiple lengthy and contentious discovery-related disputes concerning the scope of fact discovery, Defendants' privilege logs and assertions of privilege over various materials, and Defendants' delays in producing documents necessary to rebut Defendants' arguments opposing class certification (¶¶ 41, 53);

- Successfully moved for leave to amend the Amended Complaint, over Defendants' opposition, based on new evidence uncovered during discovery, and filed the Second Amended Complaint (ECF 199) (¶¶ 55-59);

- Retained and consulted extensively with experts across a variety of disciplines, including an oil and gas expert, a production guidance expert, a regulatory expert, and an expert in market efficiency, price impact, and damages (¶¶ 60-73);

- Prepared and submitted four expert reports in preparation for trial and were in the process of preparing for the depositions of those experts (¶ 60);

- Engaged in protracted and hard-fought settlement discussions with Defendants, including two in-person mediation sessions (eleven months apart) with an experienced, well-regarded mediator, and engaged in post-mediation negotiation efforts, in an attempt to resolve the Litigation (¶¶ 77-82); and

- Negotiated the final terms of the Settlement with Defendants and drafted, finalized, and filed the Stipulation and related Settlement documents (¶¶ 82-83).

Class Counsel *alone* expended 31,762 hours prosecuting this Litigation resulting in a *negative* lodestar. This time and effort was critical in obtaining the excellent result represented by the Settlement and confirms the reasonableness of the fee requested here.

## 2.    The Novelty and Difficulty of the Issues

The difficulty of questions presented by the litigation is also considered in determining the reasonableness of a requested fee. *See Johnson*, 488 F.2d at 718. Courts have long recognized that securities class actions are complex and challenging, and that "Fifth Circuit decisions on causation, pleading and proof at the class certification stage make PSLRA claims particularly difficult." *In re OCA, Inc. Sec. & Deriv. Litig.*, 2009 WL 512081, at *21 (E.D. La. Mar. 2, 2009). This case was

13

no exception. It involved not only the complexities of a securities class action generally but also highly technical concepts regarding Cabot's drilling and natural gas production operations, requiring regular consultation with industry experts, including experts in natural gas production and the environmental laws and regulations that govern the fracking industry as well as the processes underpinning the development of natural gas production guidance. ¶¶ 47, 50.

Plaintiffs faced substantial challenges to establishing Defendants' liability. To this end, Plaintiffs would be required to show that the statements at issue in the Litigation were materially false or misleading when made. In their defense, Defendants would have argued, among other things, that: (i) the alleged misstatements regarding the state of Cabot's environmental compliance, including the statements that survived Defendants' motions to dismiss, were factually accurate or generalized statements of opinion that did not result in liability under the securities laws; (ii) any falsity relating to the guidance statements was immunized by the risk warnings regarding production that Defendants included in the Company's SEC filings; and (iii) the alleged guidance statements were forward-looking, and protected by the PSLRA safe harbor. ¶ 97. At summary judgment and trial, Defendants would also continue to challenge Plaintiffs' scienter allegations as insufficiently particularized and unable to support a strong inference that Defendants' statements were knowingly false or misleading. ¶ 98.

Plaintiffs also faced formidable challenges with respect to proving loss causation and damages. On these issues, Plaintiffs would ultimately have to prove through expert testimony that the revelation of the alleged fraud through the alleged partial corrective disclosures proximately caused declines in Cabot's stock price, and that other information released around the same time played little or no role in the price declines. ¶ 94. Defendants, on the other hand, likely would have argued with the assistance of their experts that Plaintiffs could not prove that many (or all) of

Defendants' alleged misrepresentations directly or proximately caused the economic losses incurred. Further, Defendants would continue to argue, that any losses suffered by Class Members on their investments in Cabot common stock were not attributable to the alleged corrective disclosures, as Defendants repeatedly claimed that the information contained in Cabot's alleged disclosures did not contain information corrective of the fraud—that there was a "mismatch" between the false statements alleged and the disclosures. ¶ 95. Defendants would also assert that there was no statistically significant decline following each of the alleged corrective disclosures. *Id*. These contested issues would ultimately come down to a battle of the experts. *See, e.g.*, *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 665 (S.D.N.Y. 2015) ("On the issue of damages, a trial would likely have turned heavily on a battle of the experts between the parties' respective economists. It is impossible to predict which party's model of damages—if either—the jury would credit.").

Notwithstanding these difficulties and uncertainties regarding the outcome of the case, Plaintiffs' Counsel zealously prosecuted this Litigation in order to secure the best result for the Class. Accordingly, this factor weighs in favor of the requested fee.

### 3.    The Amount Involved and the Results Achieved

Courts have consistently recognized that the result achieved is a significant factor to be considered in awarding attorneys' fees. *See, e.g.*, *In re Dell Inc., Sec. Litig.*, 2010 WL 2371834, at *18 (W.D. Tex. June 11, 2010) ("The United States Supreme Court and the Fifth Circuit have held the most critical factor in determining the reasonableness of a fee award is the degree of success obtained."), *aff'd sub nom. Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012). Here, Class Counsel secured a $40 million Settlement that will provide payment to Class Members in the near term while avoiding the serious risks of continued litigation.

The Settlement provides a meaningful recovery of damages—representing approximately 14% of the Class's reasonably recoverable damages in this Litigation (assuming success by Plaintiffs on all liability and loss causation issues) of approximately $288 million. ¶ 100. This result reflects the informed assessment by Class Counsel and Plaintiffs of the strengths of the Class's claims and the risks of litigating this complex case through the remainder of expert discovery (including depositions), summary judgment motions, trial, and appeals and exceeds damage-percentage recoveries in similar cases. *See, e.g.*, *In re N. Dynasty Mins. Ltd. Sec. Litig.*, 2024 WL 308242, at *13 (E.D.N.Y. Jan. 26, 2024) (approving settlement recovering 2.3% of maximum damages); *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *7 (C.D. Cal. July 24, 2023) (approving settlement recovering 3% of estimated damages); *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *10 (S.D.N.Y. Nov. 30, 2021) (approving settlement recovering "5.3% of the Settlement's Class's maximum estimated damages"); *Howard v. Liquidity Servs. Inc.*, 2018 WL 4853898, at *5 (D.D.C. Oct. 5, 2018) (approving settlement "constitut[ing] approximately 4% of the *maximum* realistic recoverable damages") (emphasis in original).[13] Thus, this factor supports the requested fee.

### 4. The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The *Johnson* factors also consider the skill required to litigate the case and "the experience, reputation and ability of the attorneys" involved. *See Johnson*, 488 F.2d at 718 (emphasis omitted). Class Counsel prosecuted the Litigation vigorously, provided high-quality legal services, and

---

[13]     *See also* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) at 26, Fig. 22, available at: https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2023-full-y.html?lang=en (reporting median ratio of settlement amount to investor losses in securities litigation did not exceed 1.8% from 2019 to 2023).

obtained a favorable result for the Class. Class Counsel's experience in the field of securities class actions and other complex litigation, along with their effort and skill in surviving in substantial part Defendants' motion to dismiss the Amended Complaint, developing the evidentiary record, obtaining and digesting the voluminous discovery in the Litigation, and presenting a strong case at mediation and during the settlement discussions that followed were essential to achieving a meaningful resolution.[14]

Courts have also recognized the quality of opposing counsel in assessing plaintiffs' counsel's efforts. *See, e.g.*, *Celeste*, 2022 WL 17736350, at *12 ("class counsel obtained a favorable settlement against formidable legal opposition—a fact demonstrating the superior quality of [the class] representation") (alteration in original). In this Litigation, Defendants were represented by highly experienced and well-respected counsel from Norton Rose Fulbright US LLP, who aggressively litigated this Litigation at every step of the way. In the face of this formidable opposition, Class Counsel were able to persuade Defendants to settle the case on terms that were favorable to the Class. This factor strongly supports the requested fee.

### 5.      The Preclusion of Other Employment

As noted above, Class Counsel *alone* spent 31,762 hours prosecuting this Litigation. Those hours represented time that counsel could have devoted to other matters. Further, Class Counsel dedicated this time despite the significant risks of no recovery or payment of their fees and expenses. ¶¶ 119-121. Accordingly, this factor also supports the requested fee. *See, e.g.*, *Johnson*, 488 F.2d at 718; *Burford v. Cargill, Inc.*, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012).

### 6.      The Customary Fee and Awards in Similar Cases

As discussed above, Class Counsel's fee request falls within the range of fees awarded in

---

[14]     *See* Exhibits 4 through 6 to the Joint Declaration for Plaintiffs' Counsel's resumes.

similar cases on a percentage basis. *See* § IV.B.1 above. This factor supports the reasonableness of the requested fee. *See Johnson*, 488 F.2d at 717-19.

### 7. The Contingent Nature of the Fee

Class Counsel undertook this Litigation on a contingent basis, assuming a substantial risk that the Litigation would yield no recovery and leave counsel uncompensated. Courts have consistently recognized that "the risk of receiving little or no recovery is a major factor in considering an award of attorneys' fees." *Schwartz*, 2005 WL 3148350, at *31; *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.").

Even with the most vigorous and skillful of efforts, success in contingent-fee, complex securities fraud litigation such as this is never assured.[15] Any fee award has always been at risk, and completely dependent on the result achieved. Accordingly, the contingent risk also supports

---

[15] There have been many hard-fought lawsuits where excellent professional efforts produced no fee for counsel. *See, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022) and *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict in favor of securities fraud defendants where court had previously granted summary judgment in favor of plaintiffs on falsity and recklessness); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting defendants' judgment as a matter of law following plaintiff's jury verdict); *Robbins v. Koger Props. Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against accounting firm reversed on appeal); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning securities class action jury verdict for plaintiffs' in case filed in 1973 and tried in 1988); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994), *aff'd sub nom. Herman v. Legent Co.*, 50 F.3d 6 (4th Cir. 1995) (entering judgment as a matter of law for defendants after plaintiffs' presentation of their case to the jury); *In re Apple Comput. Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (after jury verdict for plaintiffs following an extended trial, the court overturned the verdict); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (after eleven years of litigation, and following a jury verdict for plaintiffs and an affirmance by a First Circuit panel, plaintiffs' claims were dismissed by an *en banc* decision and plaintiffs recovered nothing).

the requested fee.

### 8.    The Undesirability of the Case

Although Class Counsel did not consider this case to be "undesirable," there were substantial risks in financing and prosecuting the Litigation and Class Counsel knew they would need to devote substantial resources to the case in order to generate a successful outcome. *See, e.g.*, *Halliburton*, 2018 WL 1942227, at *12 (the "risk of non-recovery and undertaking expensive litigation against . . . well-financial corporate defendants on a contingent fee has been held to make a case undesirable, warranting a higher fee") (ellipsis in original). It is also worth noting that Robbins Geller and Delaware County were the only parties to move for appointment as Lead Plaintiff/Lead Counsel at the outset of the Litigation. ¶ 124. This factor supports the requested fee.

### 9.    Other Factors Considered by Courts Further Support the Requested Fee as Fair and Reasonable

In addition to the *Johnson* factors, courts often consider certain other factors in determining an appropriate fee in a class action. The below factors also confirm the reasonableness of the fee request.

#### a.    Public Policy Considerations

A recognized public policy interest favors rewarding firms that bring successful securities litigation. As noted above, the Supreme Court has emphasized that private securities actions provide "a most effective weapon in the enforcement of the securities laws and are a necessary supplement to [SEC] action." *Bateman*, 472 U.S. at 310. Here, that public policy was advanced, as Class Counsel achieved a meaningful recovery for investors, notwithstanding the absence of any recovery for Cabot investors from the SEC or any other regulatory agency. *See Jenkins*, 300 F.R.D. at 309 ("Public policy concerns—in particular, ensuring the continued availability of experienced and capable counsel to represent classes of injured plaintiffs holding small individual

claims—support the requested fee.").

### b.      Plaintiffs Have Approved the Requested Fee

Plaintiffs are large, institutional investors who played an active role in the prosecution and resolution of the Litigation. As such, each has a sound basis for assessing the reasonableness of the fee request.[16] Plaintiffs, after considering the extensive time and effort dedicated to the case by Plaintiffs' Counsel and the considerable risks of the litigation, have endorsed the requested fee as fair and reasonable. *See* Ex. 1, ¶ 5; Ex. 2, ¶¶ 9-11; *see also In re Waste Mgmt., Inc. Sec. Litig.*, 2002 WL 35644013, at *25 (S.D. Tex. May 10, 2002) (finding fee request "fair and reasonable" where lead plaintiff, who was "heavily involved in each facet of this litigation, including the settlement negotiations, fully support[ed] the fee requested"), *amended on other grounds*, 2003 WL 27380802 (S.D. Tex. July 31, 2003); *Bear Stearns Cos.*, 909 F. Supp. 2d at 272 (where "sophisticated lead plaintiff possessing a large stake in the litigation . . . endorses the [fee] application following close supervision of the litigation, the court should give [this] great weight").

### c.      The Class's Reaction to Date

The reaction of the Class also supports the requested fee. To date, a total of 193,003 Postcard Notices and 4,443 Notices have been mailed or emailed to potential Class Members and nominees informing them of, among other things, Class Counsel's intention to apply to the Court for an award of attorneys' fees in an amount not to exceed 33⅓% of the Settlement Amount and payment of expenses in an amount not to exceed $1,750,000, plus interest. *See* Ex. 3 (Exs. A-D).

---

[16]    The PSLRA was intended to encourage institutional investors like Plaintiffs to assume control of securities class actions in order to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiff's counsel." H.R. Conf. Rep. No. 104-369, at 32 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 731.

To date, there have been no objections. ¶ 112.[17]

## V.     PLAINTIFFS' COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Class Counsel also respectfully request that this Court approve payment of Plaintiffs' Counsel's litigation expenses. These expenses, which are set forth in Plaintiffs' Counsel's individual firm declarations (Exs. 4-6 to Joint Decl.), were reasonably necessary for the prosecution and settlement of this Litigation and are properly recovered by counsel. *See Halliburton*, 2018 WL 1942227, at *14 ("Expenses and administrative costs expended by class counsel are recoverable from a common fund in a class action settlement."); *Billitteri*, 2011 WL 3585983, at *10 (same).

Plaintiffs' Counsel incurred an aggregate of $1,515,974.05 in litigation expenses in the prosecution and resolution of the Litigation. ¶ 112.[18] The largest component of Plaintiffs' Counsel's expenses—$1,186,601.64 or approximately 78% of total expenses—was for experts and consultants, including Plaintiffs' economic expert, Steven P. Feinstein, Ph.D., CFA of Crowninshield Financial Research, Inc., who assisted Class Counsel with their motion for class certification, during the mediations and settlement negotiations with the Defendants, and in developing the proposed Plan of Allocation. ¶¶ 60-73, 108. Class Counsel also retained several industry experts to assist in navigating the complex issues involved in this matter. ¶¶ 65-72.

In addition to these expert expenses, Plaintiffs' Counsel also incurred, among other expenses: (i) $109,260.80 in connection with hosting the over 4.4 million pages of documents produced in the Litigation; (ii) $54,800.00 for Plaintiffs' portion of the costs for formal mediation

---

[17]     Class Counsel will address any objections that may be received in their reply papers to be filed with the Court on October 17, 2024.

[18]     These expense items are not duplicated in the firms' hourly rates.

and ongoing settlement negotiations with Mr. Murphy; (iii) $46,149.67 for online research; (iv) $15,187.34 for travel-related expenses; (v) $39,238.70 for court reporters, videographers, and transcripts in connection with the 19 depositions Class Counsel took or defended in the Litigation; and (vi) $4,987.66 for document-reproduction costs. ¶¶ 126-128; Exs. 4-6; *see also Blackmon v. Zachary Holdings, Inc.*, 2022 WL 2866411, at *5 (W.D. Tex. July 21, 2022) (approving filing fees, mediation expenses, expert fees, copying, delivery, and telecommunications charges, computer-based research and database charges and noting all were "associated with Class Counsel's investigation, discovery, and mediation, and other activities necessary to effectively prosecute this case."). The notices informed recipients that Class Counsel would seek payment of Litigation Expenses (including reimbursement of the reasonable costs incurred by Plaintiffs as discussed below) in an amount not to exceed $1,750,000, plus interest. The total amount of expenses requested is below this maximum amount and, to date, no objections have been received. ¶ 126. As such, Class Counsel's request for expenses should be approved.

## VI.    PLAINTIFFS SHOULD BE AWARDED THEIR REASONABLE COSTS UNDER THE PSLRA

Lastly, in connection with their request for expenses, Class Counsel also seek payment of a total of $12,454.32 for Plaintiffs' time and expenses directly related to their representation of the Class. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. §§ 78u-4(a)(4), 77z-1(a)(4). Here, Plaintiffs seek awards based on the time dedicated by their employees in furthering and supervising the Litigation. Specifically, Delaware County seeks reimbursement of $6,500 in costs and Iron Workers seeks $5,954.32. *See* Ex. 1, ¶ 6; Ex. 2, ¶¶ 12-16.

Each of the Plaintiffs took an active role in the Litigation and has been committed to pursuing the Class's claims. Plaintiffs' employees expended substantial time overseeing the Litigation including communicating with Class Counsel concerning significant developments in the litigation and case strategy; reviewing and commenting on significant pleadings and briefs filed in the Litigation; assisting Class Counsel in preparing Plaintiffs' responses to Defendants' discovery requests; collecting documents for production in response to Defendants' discovery requests; preparing for and providing deposition testimony; consulting with Class Counsel regarding settlement negotiations; and evaluating and approving the proposed Settlement. *See* Ex. 1, ¶ 3; Ex. 2, ¶¶ 4-6. These efforts required Plaintiffs' staff to dedicate time and resources to the Litigation that they would have otherwise devoted to their regular duties. The requested reimbursement amounts are based on the number of hours that each of the Plaintiffs' employees committed to these activities and a reasonable hourly rate for their time, based on their compensation. *See* Ex. 1, ¶ 6; Ex. 2, ¶ 14.

Courts routinely grant awards to plaintiffs for their time and effort spent in similar cases. *See, e.g.*, *Shen v. Exela Techs., Inc.*, 2023 WL 8518901, at *2 (N.D. Tex. Dec. 7, 2023) (awarding $25,000 to lead plaintiff); *Deka Inv. GMBH v. Santander Consumer USA Holdings Inc.*, 2021 WL 118288, at *2 (N.D. Tex. Jan. 12, 2021) (awarding approximately $37,000 in total to lead plaintiffs); *In re Cobalt Int'l Energy, Inc. Sec. Litig.*, 2019 WL 6043440, at *2 (S.D. Tex. Feb. 13, 2019) (awarding over $56,000 to four institutional plaintiffs); *Halliburton*, 2018 WL 1942227, at *14 (awarding $100,000 as "compensation for the time [lead plaintiff] dedicated in supervising this action"); *Miller v. Glob. Geophysical Servs. Inc.*, 2016 WL 11645372, at *1 (S.D. Tex. Jan. 14, 2016) (awarding $15,000 to lead plaintiff); *In re Arthrocare Corp. Sec. Litig.*, 2012 WL 12951371, at *6 (W.D. Tex. June 4, 2012) (awarding $55,850 to plaintiff for time spent, inter alia,

in "overseeing and communicating with Lead Counsel on a regular basis, reviewing and commenting on various pleadings, [and] sitting for depositions"). Accordingly, the awards sought by Plaintiffs are reasonable and justified under the PSLRA and should be granted.

## VII.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court award: (i) attorneys' fees in the amount of 30% of the Settlement Amount, plus interest; (ii) $1,515,974.05 for Plaintiffs' Counsel's reasonable expenses, plus interest; and (iii) a total of $12,454.32 to Plaintiffs for costs related to their representation of the Class.[19]

Dated: September 19, 2024                    Respectfully submitted,

*s/ Darryl J. Alvarado*
ROBBINS GELLER RUDMAN
    & DOWD LLP
ELLEN GUSIKOFF STEWART
DARRYL J. ALVARADO
KEVIN A. LAVELLE
FRANCISCO J. MEJIA
JACK ABBEY GEPHART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
elleng@rgrdlaw.com
klavelle@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

*Class Counsel*

KESSLER TOPAZ MELTZER
    & CHECK, LLP
ANDREW L. ZIVITZ
JAMIE M. MCCALL

---

[19]    A proposed order will be submitted with Class Counsel's reply papers, after the deadline for objecting has passed.

JOSHUA E. D'ANCONA
MAX JOHNSON
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
jmccall@ktmc.com
jdancona@ktmc.com
mjohnson@ktmc.com

*Class Counsel*

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700, S.D.
Texas Bar No. 30973, Attorney in Charge)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX 75219
Telephone: 214/744-3000
214/744-3015 (fax)
jkendall@kendalllawgroup.com

*Local Counsel*

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on September 19, 2024, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

*s/ Darryl J. Alvarado*
Darryl J. Alvarado
