# EXHIBIT 3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>CABOT OIL & GAS CORPORATION, et al.,<br><br>Defendants. | Civil Action No. 4:21-cv-02045<br><br>CLASS ACTION |

**DECLARATION OF LUIGGY SEGURA REGARDING:**
**(A) DISSEMINATION OF THE POSTCARD NOTICE AND NOTICE PACKET;**
**(B) PUBLICATION/TRANSMISSION OF THE SUMMARY NOTICE;**
**(C) ESTABLISHMENT OF CALL CENTER SERVICES AND WEBSITE;**
**AND (D) REQUESTS FOR EXCLUSION RECEIVED TO DATE**

I, LUIGGY SEGURA, declare as follows:

1.      I am the Vice President of Securities Operations at JND Legal Administration ("JND").  Pursuant to Paragraph 6 of the Court's June 27, 2024 Order Preliminarily Approving Settlement and Providing for Notice (ECF 211) (the "Preliminary Approval Order"), JND was appointed to supervise and administer the notice procedure as well as the processing of Claims in connection with the Settlement of the above-captioned action (the "Litigation").[1]  I submit this Declaration in order to provide the Court and the parties to the Litigation with information regarding the mailing of the Postcard Notice and the Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Claim Form," and together with the Notice, the "Notice Packet") as well as other status updates regarding notice and the settlement administration process.  The following statements are based on my personal knowledge and information provided to me by other experienced JND employees, and, if called as a witness, I could and would testify competently thereto.

## DISSEMINATION OF THE POSTCARD NOTICE AND NOTICE PACKET

2.      Pursuant to the Preliminary Approval Order, JND was responsible for disseminating notice of the Settlement.  Specifically, JND mailed the Postcard Notice to potential Class Members and mailed the Notice Packet to Nominees (defined below) as well as potential Class Members upon request.  By definition, the Class is comprised of all persons or entities who purchased or otherwise acquired Cabot Oil & Gas Corporation ("Cabot") common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby.  Copies of the Postcard Notice and Notice Packet are attached hereto as Exhibits A and B, respectively.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation of Settlement, dated June 3, 2024 (ECF 207-2) (the "Stipulation").

3.     On July 3, 2024, JND received from Defendants' Counsel a data file containing the names and mailing addresses of holders of record of Cabot common stock during the Class Period. JND extracted the records from the file received and, after clean-up and de-duplication, identified a total of 916 unique names and addresses of potential Class Members (the "Class List"). Prior to mailing Postcard Notices to the individuals and entities contained on the Class List, JND verified the mailing records through the National Change of Address ("NCOA") database to ensure the most current address was being used. On July 18, 2024, JND caused the Postcard Notice to be sent by First-Class mail to these 916 potential Class Members.

4.     JND also identified additional address records through reasonable efforts and researched filings with the U.S. Securities and Exchange Commission ("SEC") on Form 13-F to identify additional institutions or entities that may have held Cabot common stock during the Class Period. As a result of these efforts, an additional 717 address records were identified and added to the Class List. On July 18, 2024, JND caused the Postcard Notice to be sent by First-Class mail to these 717 potential Class Members.

5.     In addition to the above, Class Counsel provided JND with the names and addresses of an additional four (4) potential Class Members to be sent Postcard Notices along with the records in the Class List. On July 18, 2024, JND caused the Postcard Notice to be sent by First-Class mail to these four potential Class Members.

6.     JND also provided a copy of the Notice to the Depository Trust Company ("DTC") for posting on its Legal Notice System ("LENS"). The LENS may be accessed by any Nominee that participates in DTC's security system. The Notice was posted on DTC's LENS on July 17, 2024.

7.     As in most securities class actions, a large majority of potential Class Members are beneficial purchasers whose securities are held in "street name," *i.e.*, the securities are purchased by brokerage firms, banks, institutions, or other third-party nominees ("Nominees") in the name of the Nominee, on behalf of the beneficial purchasers.  JND maintains a proprietary database with the names and addresses of the most common Nominees ("Nominees Database").  At the time of the initial mailing, JND's Nominee Database contained 4,077 records.[2]  On July 18, 2024, JND caused the Notice Packet to be sent by First-Class mail, postage prepaid, to the 4,077 mailing records contained in its Nominee Database.

8.     In total, on July 18, 2024, JND caused 1,637 Postcard Notices to be sent to potential Class Members and 4,077 Notice Packets to be sent to Nominees by First-Class mail, postage prepaid, in accordance with the Preliminary Approval Order as described in the previous paragraphs (the "Initial Mailing").

9.     The Notice itself and a cover letter that accompanied the Notice Packet mailed to Nominees (as well as an email mailed to Nominees) directed those who purchased or otherwise acquired Cabot common stock during the Class Period for beneficial owners who are potential Class Members to, within seven (7) calendar days of receipt of the Notice, either (i) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) calendar days of receipt of those Postcard Notices email or mail them to all such beneficial owners; or (ii) send a list of the names and addresses (including email addresses if available) of all such beneficial owners to the Claims Administrator (who would then mail copies of the Postcard Notice to those beneficial owners).  *See* Notice at page 20.

---

[2] JND's Nominee Database is updated from time to time as new Nominees are identified, and others merge or cease to exist.

3

10.     JND also caused reminder postcards to be mailed by First-Class mail, postage prepaid, to the Nominees that did not respond to the Initial Mailing.  The postcard advised these entities of their obligation to facilitate notice of the Settlement to their clients who purchased or acquired Cabot common stock during the Class Period.  JND monitored the responses received from Nominees and followed up by email and, if necessary, phone calls to ensure that Nominees provided timely responses to JND's mailing.  In a further attempt to garner responses, JND reached out via telephone to the top 100 Nominees.

11.     Since the Initial Mailing, JND has mailed an additional 82,414 Postcard Notices to potential Class Members whose names and addresses were received from persons or Nominees requesting that Postcard Notices be mailed to such persons or entities.  JND has also mailed another 108,952 Postcard Notices in bulk to Nominees who requested Postcard Notices to forward directly to their customers.  In addition, JND has mailed 31 Notice Packets and emailed 335 Notice Packets to potential Class Members at the request of those individuals, Nominees, or Class Counsel.[3]  All such requests for notice have been, and will continue to be, complied with and addressed in a timely manner.

12.     As a result of the efforts described above, as of September 18, 2024, a total of 193,003 Postcard Notices and 4,443 Notice Packets have been disseminated to potential Class Members and Nominees.  In addition, JND has re-mailed 718 Notice Packets to persons whose original mailings were returned by the U.S. Postal Service ("USPS") and for whom updated addresses were provided to JND by the USPS or were obtained through other means.

---

[3] Receiving email addresses for notice mailings is not common practice in securities matters, but emails (if available) were requested by Class Counsel in light of the 2018 amendments to Federal Rule of Civil Procedure 23.  In the event that both an email address and mailing address were provided for the same potential Class Member, that Class Member was mailed a Postcard Notice and also emailed a Notice Packet.

**PUBLICATION/TRANSMISSION OF THE SUMMARY NOTICE**

13.    Pursuant to Paragraph 6(c) of the Preliminary Approval Order, JND was also responsible for publishing/transmitting the Summary Notice of Pendency and Proposed Settlement of Class Action (the "Summary Notice").  JND caused the Summary Notice to be (i) published once in *The Wall Street Journal* on July 25, 2024; and (ii) transmitted once over *PR Newswire* on July 25, 2024.  Attached hereto as Exhibits C and D, respectively, are confirmations of *The Wall Street Journal* and *PR Newswire* publication/transmission.  The Summary Notice released via *PR Newswire* has been available online since its publication on July 25, 2024.[4]

**ESTABLISHMENT OF CALL CENTER SERVICES**

14.    Beginning on July 17, 2024, JND established and continues to maintain a case-specific, toll-free telephone number (1-877-495-5094) for Class Members to call and obtain information about the Settlement.  The toll-free telephone number connects callers with an Interactive Voice Recording ("IVR").  The IVR provides callers with pre-recorded information about the Settlement, including the option to request a copy of the Notice Packet.  The toll-free telephone number with pre-recorded information is available 24 hours a day, 7 days a week, and provides the option to speak with a live operator during regular business hours.  During other hours, callers may leave a message for a JND representative to call them back.  The toll-free telephone number is set forth in the Postcard Notice, Notice, and on the Settlement Website.

---

[4] *See* https://www.prnewswire.com/news-releases/robbins-geller-rudman--dowd-llp-and-kessler-topaz-meltzer--check-llp-announce-pendency-of-class-action-and-proposed-settlement-for-all-persons-or-entities-who-purchased-or-otherwise-acquired-cabot-oil--gas-corporation-common-s-302193846.html?tc=eml_cleartime.

## ESTABLISHMENT OF SETTLEMENT WEBSITE

15.     In connection with the Initial Mailing and in order to further assist potential Class Members, JND established, and since then has continued to maintain, a dedicated website for the Settlement, www.CabotOilSecuritiesLitigation.com ("Settlement Website").   The Settlement Website became operational on July 17, 2024, and is accessible 24 hours a day, 7 days a week. The address for the Settlement Website was set forth in the notices.   The Settlement Website includes information regarding the Litigation and the proposed Settlement, including the exclusion, objection, and claim filing deadlines, and details about the Court's Settlement Hearing. Copies of the Notice and Claim Form, as well as the Stipulation, Preliminary Approval Order, and operative complaint are posted on the Settlement Website and are available for downloading.   In addition, the Settlement Website provides Class Members with the ability to submit their Claim Form online and includes detailed instructions for institutions submitting their Claims electronically.   JND will continue operating, maintaining, and, as appropriate, updating the Settlement Website until the conclusion of the administration.

## REQUESTS FOR EXCLUSION RECEIVED TO DATE

16.     The notices and Settlement Website inform potential Class Members that requests for exclusion from the Class are to be sent by First-Class mail to *Cabot Oil Securities Litigation*, Claims Administrator, c/o JND Legal Administration, EXCLUSIONS, P.O. Box 91217, Seattle, Washington 98111, postmarked no later than October 3, 2024.   The Notice also sets forth the information that must be included in each request for exclusion.   JND has monitored and will continue to monitor all mail delivered to the dedicated P.O. Box.   As of September 18, 2024, JND has received two (2) requests for exclusion.   JND will submit a supplemental declaration after the

6

October 3, 2024 exclusion deadline, which will include a full report on all exclusion requests received.

17.    The Notice requests that objections must be filed with the Court and mailed or delivered to Class Counsel and Defendants' Counsel such that they are received no later than October 3, 2024.  While JND was not listed as a recipient of objections, JND has not received any misdirected objections.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 19th, 2024.

_____
LUIGGY SEGURA

7

# EXHIBIT A

**Court-Ordered Legal Notice**
(Forwarding Service Requested)

*Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation, et al.,*

No. 4:21-cv-02045 (S.D. Tex.)

This notice contains important Information about a securities
class action settlement

You may be entitled to a payment.
This notice may affect your legal rights.

Please read this notice carefully.



**This postcard provides only limited information about the settlement. Visit www.CabotOilSecuritiesLitigation.com or call 877-495-5094 for more information.**

*Cabot Oil Securities Litigation*
c/o JND Legal Administration
P.O. Box 91217
Seattle, WA 98111

||||||||||||||||||||
Postal Service: Please do not mark barcode

«FULL_NAME»
«CF_ADDRESS_1»
«CF_ADDRESS_2»
«CF_CITY», «CF_STATE» «CF_ZIP»
«CF_COUNTRY»

you purchased or otherwise acquired Cabot Oil & Gas Corporation ("Cabot" or the "Company") common stock between February 21, 2019 and June 12, 2020, inclusive, and were damaged thereby, you could be entitled to a payment from a proposed settlement ("Settlement") reached in the above-captioned action ("Litigation"). Your rights may be affected by this Litigation and the Settlement. A hearing will be held on October 24, 2024, at 3:00 p.m. ("Settlement Hearing"), before the Honorable Lee H. Rosenthal, to determine whether the proposed Settlement of the Litigation against Defendants Cabot, Dan O. Dinges, and Scott C. Schroeder for $40 million in cash and the Plan of Allocation should be approved as fair, reasonable, and adequate and whether the Litigation should be dismissed with prejudice against Defendants, as set forth in the Stipulation of Settlement ("Stipulation") filed with the Court; and whether Class Counsel's application for an award of attorneys' fees of up to 33-1/3% of the Settlement Amount, and expenses not to exceed $1,750,000, plus interest on both amounts, and awards of costs to Plaintiffs, should be granted.

If approved, the Settlement will resolve a putative class action lawsuit alleging that, in violation of the U.S. federal securities laws, Defendants materially misled investors by making materially false and misleading statements and failing to disclose material information regarding Cabot's production growth guidance, the Company's failure to remediate faulty gas wells in Pennsylvania, and Cabot's exposure to criminal and civil liability related to its failure to remediate, which caused Cabot's stock to trade at artificially inflated prices until the nature of the alleged wrongdoing was revealed, causing Cabot's stock price to fall. Defendants deny the allegations and any liability or wrongdoing of any kind. For a full description of the proposed Settlement and your rights, and to make a claim, you may obtain the Stipulation, long-form Notice of Pendency and Proposed Settlement of Class Action ("Notice"), and the Proof of Claim and Release form ("Claim Form") by visiting the website: www.CabotOilSecuritiesLitigation.com ( "Website") or you may request copies of the documents from the Claims Administrator by: (i) mail: *Cabot Oil Securities Litigation*, c/o JND Legal Administration, P.O. Box 91217, Seattle, WA 98111, or (ii) toll-free call: 877-495-5094.

To qualify for a payment from the Settlement, you must submit a valid Claim Form, with supporting documentation, postmarked or submitted online no later than October 16, 2024. Your *pro rata* share of the Settlement will depend on the number of valid claims, and the number, size, and timing of your transactions in Cabot common stock. The estimated average distribution per share is approximately $0.16, before deducting any Court-approved fees and expenses. Your actual share of the Settlement will be determined pursuant to the proposed Plan of Allocation set forth in the Notice, or other plan approved by the Court.

You will be bound by any judgment or order entered in the Litigation, regardless of whether you submit a Claim Form, unless you exclude yourself from the Class. If you exclude yourself from the Class, you cannot get money from this Settlement. If you are a Class Member and do not exclude yourself from the Class, you may object to the proposed Settlement, Plan of Allocation, and/or request for award of attorneys' fees and expenses and awards to Plaintiffs no later than October 3, 2024. The long-form Notice and the Website explain how to exclude yourself from the Class or how to object.

Plaintiffs and the Class are represented by Class Counsel: Ellen Gusikoff Stewart, Robbins Geller Rudman & Dowd LLP, 655 W. Broadway, Suite 1900, San Diego, CA 92101, 800-449-4900, settlementinfo@rgrdlaw.com and Andrew L. Zivitz, Kessler Topaz Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, PA 19087, 610-667-7706, info@ktmc.com. You may, but do not have to, attend the Settlement Hearing to be heard. The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means and/or change its date and/or time. Please check the Website for updates.

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

DELAWARE COUNTY EMPLOYEES
RETIREMENT SYSTEM, Individually and
on Behalf of All Others Similarly Situated,

                       Plaintiff,

      vs.

CABOT OIL & GAS CORPORATION, et al.,

                 Defendants.

Civil Action No. 4:21-cv-02045

CLASS ACTION

**NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION**

**TO:** **ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED CABOT OIL & GAS CORPORATION ("CABOT" OR THE "COMPANY") COMMON STOCK BETWEEN FEBRUARY 22, 2016, AND JUNE 12, 2020, INCLUSIVE (THE "CLASS PERIOD"), AND WERE DAMAGED THEREBY.**

PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.  YOUR RIGHTS MAY BE AFFECTED BY PROCEEDINGS IN THIS LITIGATION.  PLEASE NOTE THAT IF YOU ARE A CLASS MEMBER, YOU MAY BE ENTITLED TO SHARE IN THE PROCEEDS OF THE SETTLEMENT DESCRIBED IN THIS NOTICE.   TO CLAIM YOUR SHARE OF THE SETTLEMENT PROCEEDS, YOU MUST SUBMIT A VALID PROOF OF CLAIM AND RELEASE FORM ("PROOF OF CLAIM") **POSTMARKED OR SUBMITTED ONLINE (AT WWW.CABOTOILSECURITIESLITIGATION.COM) ON OR BEFORE OCTOBER 16, 2024.**[1]

**THIS NOTICE WAS AUTHORIZED BY THE COURT.**
**IT IS NOT A LAWYER SOLICITATION**.

This Notice of Pendency and Proposed Settlement of Class Action ("Notice") has been issued pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of Texas (the "Court").  The purpose of this Notice is to inform you of: (i) the pendency of this class action (the "Litigation") between Delaware County Employees Retirement System and Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan ("Plaintiffs") and Cabot[2], Dan O. Dinges, and Scott C. Schroeder ("Individual Defendants" and, collectively with Cabot, "Defendants"); (ii) the proposed $40 million cash settlement reached therein (the "Settlement"); and (iii) the hearing (the "Settlement Hearing") to be held by the Court to consider the fairness, reasonableness, and adequacy of the

---

[1]    Claims, requests for exclusion, objections, and other correspondence that are legibly postmarked will be treated as received on the postmark date.  Please be advised that the U.S. Postal Service may not postmark mail which is not presented in person.

[2]    Cabot merged with Cimarex Energy Co. on October 1, 2021, to form Coterra Energy Inc.

Settlement, as set forth in the Stipulation of Settlement dated June 3, 2024 (the "Stipulation"), by and between Plaintiffs and Defendants (the "Settling Parties").  This Notice describes what steps you may take in relation to the Settlement and this class action.[3]

This Notice is not intended to be, and should not be construed as, an expression of any opinion by the Court with respect to the truth of the allegations in the Litigation as to any of the Defendants or the merits of the claims or defenses asserted by or against the Defendants.  This Notice is solely to advise you of the pendency of the Litigation, the proposed Settlement of the Litigation, and your rights in connection therewith.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A PROOF OF CLAIM** | The only way to be eligible to receive a payment from the Settlement. **Proofs of Claim must be *postmarked* or submitted online on or before October 16, 2024.** |
| **EXCLUDE YOURSELF FROM THE CLASS** | Get no payment.  This is the only option that ***potentially*** allows you to ever be part of any other lawsuit against the Defendants or any other Released Defendant Parties about the legal claims being resolved by this Settlement.  Should you elect to exclude yourself from the Class you should understand that Defendants and the other Released Defendant Parties will have the right to assert any and all defenses they may have to any claims that you may seek to assert, including, without limitation, the defense that any such claims are untimely under applicable statutes of limitations and statutes of repose.  **Requests for exclusion must be *postmarked* or *received* on or before October 3, 2024.** |
| **OBJECT** | Write to the Court about why you do not like the Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses.  You will still be a Member of the Class.  **Objections must be *received* on or before October 3, 2024.  If you submit a written objection, you may (but do not have to) attend the Settlement Hearing.** |
| **GO TO THE SETTLEMENT HEARING ON OCTOBER 24, 2024** | Ask to speak in Court about the fairness of the Settlement, the Plan of Allocation, and/or the request for attorneys' fees and expenses.  **Requests to speak at the Settlement Hearing must be *received* by the Court and counsel on or before October 3, 2024.** |
| **DO NOTHING** | Receive no payment.  You will, however, still be a Member of the Class, which means that you give up your right to ever be part of any other lawsuit against Defendants or any other Released Defendant Parties about the legal claims being resolved by this Settlement and you will be bound by any judgments or orders entered by the Court in the Litigation. |

---

[3]   All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings provided in the Stipulation, which is available on the website www.CabotOilSecuritiesLitigation.com.

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

2

## SUMMARY OF THIS NOTICE

**Statement of Class Recovery**

Pursuant to the Settlement described herein, a $40 million cash settlement fund has been established. Based on Plaintiffs' estimate of the number of allegedly damaged shares eligible to recover under the Settlement, the average distribution per share of Cabot common stock under the Plan of Allocation is approximately $0.16, before deduction of any taxes on the income earned on the Settlement Amount, notice and administration costs, and the attorneys' fees and expenses as determined by the Court. **Class Members should note, however, that this is only an estimate**. A Class Member's actual recovery will be a proportion of the Net Settlement Fund determined by that claimant's claim as compared to the total claims of all Class Members who submit acceptable Proofs of Claim. An individual Class Member may receive more or less than this estimated average distribution amount. *See* Plan of Allocation set forth and discussed at pages 14-19 below for more information on the calculation of your claim.

**Statement of Potential Outcome of Case**

The Settling Parties disagree on both liability and damages and do not agree on the amount of damages that would be recoverable if the Class prevailed on each or any claim alleged. Defendants deny that they are liable to the Class and deny that the Class has suffered any damages. The issues on which the Settling Parties disagree are many, but include: (1) whether Defendants engaged in conduct that would give rise to any liability to the Class under the federal securities laws; (2) whether Defendants have valid defenses to any such claims of liability; (3) the appropriate economic model for determining the amount by which the price of Cabot common stock was allegedly artificially inflated (if at all) during the relevant period; (4) the amount, if any, by which the price of Cabot common stock was allegedly artificially inflated (if at all) during the relevant period; (5) the effect of various market forces on the price of Cabot common stock at various times during the relevant period; (6) the extent to which external factors influenced the price of Cabot common stock at various times during the relevant period; (7) the extent to which the matters that Plaintiffs alleged were materially false or misleading influenced (if at all) the price of Cabot common stock at various times during the relevant period; and (8) the extent to which the various allegedly adverse material facts that Plaintiffs alleged were omitted influenced (if at all) the price of Cabot common stock at various times during the relevant period.

**Statement of Attorneys' Fees and Expenses Sought**

Since the Litigation's inception, Plaintiffs' Counsel have expended considerable time and effort in the prosecution of this Litigation on a wholly contingent basis and have advanced the expenses of the Litigation in the expectation that if they were successful in obtaining a recovery for the Class, they would be paid from such recovery. Class Counsel will apply to the Court on behalf of all Plaintiffs' Counsel for an award of attorneys' fees not to exceed 33-1/3% of the Settlement Amount, plus expenses not to exceed $1,750,000, plus interest earned on both amounts at the same rate as earned by the Settlement Fund. If the amounts requested are approved by the Court, the average cost per Cabot common stock share will be approximately $0.06. In addition, Plaintiffs may seek payment for their time and expenses incurred in representing the Class.

**Further Information**

For further information regarding the Litigation, this Notice, or to review the Stipulation of Settlement, please contact the Claims Administrator toll-free at 877-495-5094, or visit the website www.CabotOilSecuritiesLitigation.com.

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

3

You may also contact a representative of counsel for the Class: Greg Wood, Shareholder Relations, Robbins Geller Rudman & Dowd LLP, 655 West Broadway, Suite 1900, San Diego, CA 92101, 800-449-4900, settlementinfo@rgrdlaw.com; or Andrew L. Zivitz, Kessler Topaz Meltzer & Check, LLP, 280 King of Prussia Road, Radnor, PA 19087, 610-667-7706, info@ktmc.com.

**Please Do Not Call the Court or Defendants with Questions About the Settlement.**

**Reasons for the Settlement**

Plaintiffs' principal reason for entering into the Settlement is the benefit to the Class now, without further risk or the delays inherent in continued litigation. The cash benefit under the Settlement must be considered against the significant risk that a smaller recovery – or, indeed, no recovery at all – might be achieved after contested motions, trial, and likely appeals, a process that could last several years into the future. For Defendants, who have denied and continue to deny all allegations of liability, fault, or wrongdoing whatsoever, the principal reason for entering into the Settlement is to eliminate the uncertainty, risk, costs, and burdens inherent in any litigation, especially in complex cases such as this Litigation. Defendants have concluded that further conduct of this Litigation could be protracted and distracting.

## BASIC INFORMATION

### 1.    What is the purpose of this Notice?

The Court has directed the issuance of this Notice to inform potential Class Members about the Litigation and the proposed Settlement and their options in connection therewith before the Court rules on the Settlement. Additionally, Class Members have the right to understand how this class action lawsuit may generally affect their legal rights.

This Notice explains the class action lawsuit, the Settlement, Class Members' legal rights in connection with the Settlement, what benefits are available, who is eligible for them, and how to get them.

The Court in charge of the Litigation is the United States District Court for the Southern District of Texas, and the case is known as *Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation, et al.*, No. 4:21-cv-02045. The case has been assigned to the Honorable Lee H. Rosenthal. The entities representing the Class are the "Plaintiffs," and the individuals and entity they sued and who have now settled are called the "Defendants."

### 2.    What is this lawsuit about?

The Litigation is currently pending before the Honorable Lee H. Rosenthal in the United States District Court for the Southern District of Texas. The initial complaint in the Litigation was filed in the United States District Court for the Middle District of Pennsylvania (the "Pennsylvania Court") on October 5, 2020. On February 3, 2021, the Pennsylvania Court appointed Delaware County Employees Retirement System as Lead Plaintiff and Robbins Geller Rudman & Dowd LLP as Lead Counsel.

On April 12, 2021, Iron Workers District Counsel (Philadelphia and Vicinity) Retirement and Pension Plan, represented by Kessler Topaz Meltzer & Check, LLP, joined the Litigation as an additional plaintiff, and together Plaintiffs filed the Consolidated Complaint for Violation of the Federal Securities Laws ("Complaint"), alleging violations of §§10(b) and 20(a) of the

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

4

Securities Exchange Act of 1934 (the "Exchange Act"). On June 11, 2021, Defendants moved to dismiss the Complaint. On June 22, 2021, upon Defendants' motion, the Pennsylvania Court transferred the Litigation to this Court.

Plaintiffs filed their opposition to Defendants' motion to dismiss on August 10, 2021, and Defendants filed their reply on September 6, 2021. The Court held oral argument on Defendants' motion to dismiss on November 29, 2021, and on January 12, 2022, the Court granted Defendants' motion to dismiss with leave to amend with respect to certain allegations.

On December 15, 2021, Plaintiffs moved for partial relief from the PSLRA discovery stay. Defendants filed their opposition on December 28, 2021, and Plaintiffs filed their reply on January 4, 2022. On January 12, 2022, the Court denied as moot Plaintiffs' motion.

On February 11, 2022, Plaintiffs filed the First Amended Consolidated Complaint for Violation of the Federal Securities Laws ("Amended Complaint"). Defendants moved to dismiss the Amended Complaint on March 10, 2022. Plaintiffs filed their opposition on April 13, 2022, and Defendants filed their reply on May 10, 2022. Plaintiffs filed their sur-reply in further opposition to the motion to dismiss on May 31, 2022. On August 10, 2022, the Court issued a Memorandum and Opinion granting in part and denying in part Defendants' motion to dismiss. Defendants answered the Amended Complaint on September 14, 2022.

On December 5, 2022, Plaintiffs moved to certify a class. Defendants filed their opposition on January 21, 2023. Plaintiffs filed their reply on May 8, 2023. Oral argument on Plaintiffs' class certification motion was held on July 7, 2023. On September 27, 2023, the Court granted Plaintiffs' motion, certifying a class consisting of all persons or entities who purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby. The Court also appointed Plaintiffs as class representatives and Robbins Geller Rudman & Dowd LLP and Kessler Topaz Meltzer & Check, LLP as class counsel. On October 11, 2023, Defendants filed a petition to the Fifth Circuit for leave to appeal the class certification order pursuant to Rule 23(f). Plaintiffs filed their opposition on October 23, 2023, and on November 17, 2023, the Fifth Circuit denied Defendants' Rule 23(f) petition. On December 1, 2023, Defendants filed a petition for panel and *en banc* rehearing of the Rule 23(f) petition, which was denied by the Fifth Circuit on December 18, 2023.

The parties conducted extensive fact and expert discovery, including litigating various discovery disputes, and class certification-related expert discovery. In all, Defendants and third parties produced more than 4.4 million pages of documents, and the parties conducted 19 fact and expert depositions.

On October 20, 2023, Plaintiffs moved to amend the Amended Complaint. Defendants filed their opposition to the motion on November 13, 2023, and Plaintiffs filed their reply on November 20, 2023. On January 8, 2024, the Court granted in part and denied in part the motion to amend. Thereafter, Plaintiffs filed the Second Amended Consolidated Complaint for Violation of the Federal Securities Laws ("Second Amended Complaint") on January 9, 2024. Defendants answered the Second Amended Complaint on January 22, 2024.

Plaintiffs and Defendants participated in a voluntary confidential mediation session with David M. Murphy (of Phillips ADR), an experienced mediator, on May 11, 2023. The mediation session was preceded by submission of mediation statements by both Plaintiffs and Defendants (*i.e.*, the Settling Parties). The Settling Parties engaged in good-faith negotiations but did not reach a settlement at the mediation session, and litigation continued. The Settling Parties participated in

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

5

a second mediation session with Mr. Murphy on April 18, 2024. This second mediation session was preceded once again by the submission and exchange of supplemental mediation briefs and exhibits. The Settling Parties engaged in good-faith negotiations but did not reach an agreement at the second mediation session. Following additional settlement discussions, on April 29, 2024, the Settling Parties accepted a mediator's proposal to settle the Litigation in return for a cash payment of $40 million to be paid by Defendants and/or their insurers on behalf of Defendants for the benefit of the Class, subject to the negotiation of the terms of a Stipulation of Settlement and approval by the Court. The Stipulation (together with the Exhibits thereto) reflects the final and binding agreement among the Settling Parties.

Defendants deny each and all of the claims and contentions of wrongdoing alleged by Plaintiffs in the Litigation. Defendants contend that they did not make any materially false or misleading statements, that they disclosed all material information required by the federal securities laws, and that they at all times acted in good faith. Defendants also contend that any losses allegedly suffered by Members of the Class were not caused by any false or misleading statements by them and/or were caused by intervening events. Defendants also maintain that they have meritorious defenses to all claims that were raised or could have been raised in the Litigation.

| 3. | Why is there a settlement? |
|---|---|

The Court has not decided in favor of Defendants or Plaintiffs. Instead, both sides agreed to the Settlement to avoid the distraction, costs, and risks of further litigation, and Plaintiffs agreed to the Settlement in order to ensure that Class Members will receive compensation.

## WHO IS IN THE SETTLEMENT

| 4. | How do I know if I am a Member of the Class? |
|---|---|

The Court directed that everyone who fits this description is a Class Member: All persons or entities who purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby. Excluded from the Class are: (1) Defendants; (2) any directors and officers of Cabot during the Class Period and members of their immediate families; (3) the subsidiaries, parents, and affiliates of Cabot; (4) any firm, trust, corporation, or other entity in which Defendants have or had a controlling interest; and (5) the legal representatives, heirs, successors, and assigns of any such excluded party. Also excluded from the Class is any Person who properly excludes himself, herself, itself, or themselves from the Class by submitting a valid and timely request for exclusion. To the extent any Cabot employee benefit plan receives a distribution from the Net Settlement Fund, no portion shall be allocated to any person or entity who is excluded from the Class by definition.

**Please Note**: Receipt of this Notice or the Postcard Notice does not mean that you are a Class Member or that you will be entitled to receive a payment from the Settlement. If you are a Class Member and you wish to be eligible to participate in the distribution of the proceeds from the Settlement, you are required to submit a Proof of Claim and the required supporting documentation as set forth therein postmarked or submitted online on or before October 16, 2024.

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

6

**5.      What if I am still not sure if l am included in the Class?**

If you are still not sure whether you are included in the Class, you can ask for free help. You can contact the Claims Administrator toll-free at 877-495-5094, or you can fill out and return the Proof of Claim to see if you qualify.

### THE SETTLEMENT BENEFITS – WHAT YOU GET

**6.      What does the Settlement provide?**

The Settlement provides that, in exchange for the release of the Released Claims (defined below) and dismissal of the Litigation, Defendants and/or their insurance carriers on behalf of Defendants have agreed to pay or cause to be paid $40 million in cash to be distributed after taxes, tax expenses, notice and claims administration expenses, and Court approved attorneys' fees and expenses, *pro rata*, to Class Members who send in a valid Proof of Claim pursuant to the Court-approved Plan of Allocation.  The Plan of Allocation is described in more detail at the end of this Notice.

**7.      How much will my payment be?**

Your share of the Net Settlement Fund will depend on several things, including the total dollar amount of claims represented by the valid Proofs of Claim that Class Members submit, compared to the dollar amount of your claim, all as calculated under the Plan of Allocation discussed below.

### HOW YOU GET A PAYMENT – SUBMITTING A PROOF OF CLAIM

**8.      How can I get a payment?**

To be eligible to receive a payment from the Settlement, you must submit a Proof of Claim. A Proof of Claim may be downloaded at www.CabotOilSecuritiesLitigation.com.  Read the instructions contained in the Proof of Claim carefully, fill out the Proof of Claim, include all the documents the form asks for, sign it, and **mail it to the Claims Administrator at the address provided in the Proof of Claim or submit it online at www.CabotOilSecuritiesLitigation.com so that it is** *postmarked* **or** *received* **no later than October 16, 2024**.

**9.      When will I get my payment?**

**The Court will hold a Settlement Hearing on October 24, 2024, at 3:00 p.m.**, to decide whether to approve the Settlement.  If the Court approves the Settlement, there might be appeals. It is always uncertain whether appeals can be resolved, and if so, how long it will take to resolve them.  It also takes time for all the Proofs of Claim to be processed.  Please be patient.

**10.     What am I giving up to get a payment or to stay in the Class?**

If you are a Class Member, unless you timely and validly exclude yourself from the Class, you will remain a Class Member, and that means you cannot sue, continue to sue, or be part of any other lawsuit against Defendants or the other Released Defendant Parties about the Released Claims (as defined below) in this Litigation.  It also means that all of the Court's orders will apply

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

7

to you and legally bind you.  If you remain a Class Member, and if the Settlement is approved, you will give up all "Released Claims" (as defined below), including "Unknown Claims" (as defined below), against the "Defendants' Released Persons" (as defined below):

- "Released Claims" means any and all claims and causes of action of every nature and description, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, whether arising under federal, state, local, common or foreign law, or any other law, rule or regulation, whether class or individual in nature, based on, arising out of, or in connection with both: (i) the purchase or acquisition of Cabot common stock during the period between February 22, 2016, and June 12, 2020, inclusive, and (ii) the allegations, acts, facts, matters, occurrences, disclosures, filings, representations, statements, or omissions that were or could have been alleged by Plaintiffs and other Members of the Class in the Litigation.  "Released Claims" does not include claims to enforce the Settlement, or any derivative or ERISA claims, or the claims of any Person who submits a request for exclusion from the Class in connection with this Settlement that is accepted by the Court.  "Released Claims" includes "Unknown Claims" as defined below.

- "Released Defendants' Claims" means any and all claims and causes of action of every nature and description whatsoever, including both known claims and Unknown Claims, against Plaintiffs, Plaintiffs' Counsel, or any Class Member that arise out of or relate in any way to the institution, prosecution, or settlement of the claims against Defendants in the Litigation, except for claims relating to the enforcement of the Settlement.

- "Released Defendant Party" or "Released Defendant Parties" or "Defendants' Released Persons" mean any or all of Defendants, and/or any or all of their related parties, including, without limitation, any and all of their current or former parents, subsidiaries, affiliates, predecessors, successors, divisions, funds, joint ventures, and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, members, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants, investment bankers, commercial bankers, financial or investment advisors, consultants, advisors, underwriters, insurers in their capacities as such, as well as each of the Individual Defendants' immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors, legatees, devisees, administrators, spouses, receivers and trustees, settlors, auditors, accountants, and assigns, as well as any trust of which any of the Defendants is the settlor or which is for the benefit of any of the Defendants and/or member(s) of his family, and any person, firm, trust, corporation, officer, director or other individual or entity in which any of the Defendants has a controlling interest or which is related to or affiliated with any of the Defendants.

- "Unknown Claims" means (a) any and all Released Claims which any of the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her, or it, might have affected his, her, or its settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that any of

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

8

the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of Plaintiffs, the Class, and Plaintiffs' Counsel, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiffs, the Class, and Plaintiffs' Counsel. With respect to (a) any and all Released Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against Plaintiffs, the Class, and Plaintiffs' Counsel, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Releasing Plaintiff Parties and Released Defendant Parties acknowledge that they may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but (a) the Releasing Plaintiff Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Releasing Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Released Defendant Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Defendants' Claims against Plaintiffs, the Class, and Plaintiffs' Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

9

negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

## EXCLUDING YOURSELF FROM THE CLASS

If you do not want to participate in this Settlement, and you want to keep the right to potentially sue Defendants and the other Released Defendant Parties, on your own, about the claims being released by the Settlement, then you must take steps to remove yourself from the Class.  This is called excluding yourself – or is sometimes referred to as "opting out."  If you are requesting exclusion from the Class because you want to bring your own lawsuit based on the matters alleged in this Litigation, you may want to consult an attorney and discuss whether any individual claim that you may wish to pursue would be time-barred by the applicable statutes of limitation or repose.  If requests for exclusion exceed a certain amount, as set forth in a separate confidential agreement between the Settling Parties, Defendants shall have, in their discretion, the option to terminate the Settlement in accordance with the procedures set forth in the Supplemental Agreement.

| 11. | How do I get out of the Class and the proposed Settlement? |
|---|---|

To exclude yourself from the Class and the Settlement, you must send a letter by First-Class Mail stating that you "request exclusion from the Class in the *Cabot Oil Securities Litigation*."  Your letter must include your purchases or other acquisitions of Cabot common stock during the Class Period, including the dates and number of shares of Cabot common stock purchased, acquired, or sold, and the price paid for each such purchase or acquisition and received for each such sale.  In addition, you must include your name, address, email address, telephone number, and your signature.  You must mail your exclusion request so that it is **postmarked no later than October 3, 2024** to:

*Cabot Oil Securities Litigation*
Claims Administrator
c/o JND Legal Administration
EXCLUSIONS
P.O. Box 91217
Seattle, WA  98111

If you ask to be excluded, you will not get any payment from the Settlement, and you cannot object to the Settlement.  You will not be legally bound by anything that happens in this lawsuit, and you may be able to sue Defendants and the other Released Defendant Parties about the Released Claims in the future, if such claims are not time-barred.

**12.    If I do not exclude myself, can I sue Defendants and the other Released Defendant Parties for the same thing later?**

No.   Unless you exclude yourself from the Class, you give up any rights you may potentially have to sue Defendants and the other Released Defendant Parties for any and all Released Claims.  If you have a pending lawsuit against any of the Released Defendant Parties, speak to your lawyer in that case immediately.  You must exclude yourself from the Class in this Litigation to continue your own lawsuit.  Remember, the exclusion deadline is October 3, 2024.

**13.    If I exclude myself, can I get money from the proposed Settlement?**

No.  If you exclude yourself from the Class, you should not send in a Proof of Claim to ask for any money from the Settlement.  But you may have the right to potentially sue or be part of a different lawsuit against Defendants and/or the other Released Defendant Parties.

## THE LAWYERS REPRESENTING YOU

**14.    Do I have a lawyer in this case?**

The Court ordered that the law firms of Robbins Geller Rudman & Dowd LLP and Kessler Topaz Meltzer & Check, LLP represent the Class Members, including you.  These lawyers are called Class Counsel.  If you want to be represented by your own lawyer, you may hire one at your own expense.

**15.    How will the lawyers be paid?**

Class Counsel, on behalf of Plaintiffs' Counsel, will apply to the Court for an award of attorneys' fees not to exceed 33-1/3% of the Settlement Amount and for expenses, costs, and charges in an amount not to exceed $1,750,000 in connection with the Litigation, plus interest on such fees and expenses at the same rate as earned by the Settlement Fund.  In addition, Plaintiffs may seek reimbursement for their time and expenses incurred in representing the Class.  Such sums as may be approved by the Court will be paid from the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with the Settlement or any part of it.

**16.    How do I tell the Court that I object to the proposed Settlement?**

If you are a Class Member, you can comment on or object to the proposed Settlement, the proposed Plan of Allocation, and/or Class Counsel's fee and expense application.  You can write to the Court setting out your comment or objection.  The Court will consider your views.  To comment or object, you must send a signed letter saying that you wish to comment on or object to the proposed Settlement in the *Cabot Oil Securities Litigation*.  Include your name, address, email address, telephone number, and your signature (even if you are represented by counsel), identify the date(s), price(s), and number of shares of Cabot common stock purchased, acquired, or sold during the Class Period, and state with specificity your comments or the reasons why you object to the Settlement, Plan of Allocation, and/or fee and expense application, including any legal and evidentiary support for such objection.  Any objection must state whether it applies only to the

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

11

objector, to a specific subset of the Class, or to the entire Class.  In addition, the objector must identify all class action settlements to which the objector or his, her, or its counsel have previously objected.  You must also include copies of documents demonstrating your purchases, other acquisitions, and/or sales of Cabot common stock during the Class Period.  Your comment or objection must be filed with the Court and mailed or delivered to each of the following addresses such that it is *received* **no later than October 3, 2024:**

| COURT | CLASS COUNSEL | DEFENDANTS' COUNSEL |
|---|---|---|
| CLERK OF THE COURT UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF TEXAS Bob Casey United States Courthouse 515 Rusk Street Houston, TX 77002 | ROBBINS GELLER RUDMAN & DOWD LLP Attn: Ellen Gusikoff Stewart 655 West Broadway, Suite 1900 San Diego, CA  92101  KESSLER TOPAZ MELTZER & CHECK, LLP Attn: Andrew L. Zivitz 280 King of Prussia Road Radnor, PA  19087 | NORTON ROSE FULBRIGHT US LLP Attn: Peter Andrew Stokes 98 San Jacinto Boulevard, Suite 1100 Austin, TX  78701 |

**17.  What is the difference between objecting and excluding?**

Objecting is simply telling the Court that you do not like something about the Settlement.  You can object **only** if you stay in the Class.

Excluding yourself is telling the Court that you do not want to be paid and do not want to release any claims you think you may have against Defendants and the other Released Defendant Parties.  If you exclude yourself from the Class, you cannot object to the Settlement because it does not affect you.

## THE COURT'S SETTLEMENT HEARING

The Court will hold a hearing to decide whether to approve the proposed Settlement.  You may attend the hearing and speak, but you do not have to.

**18.  When and where will the Court decide whether to approve the proposed Settlement?**

The Court will hold a Settlement Hearing at **3:00 p.m., on October 24, 2024**, in the Courtroom of the Honorable Lee H. Rosenthal, at the United States District Court for the Southern District of Texas, Bob Casey United States Courthouse, 515 Rusk Street, Houston, TX 77002.  At the hearing, the Court will consider whether the Settlement and the Plan of Allocation are fair, reasonable, and adequate.  If there are objections, the Court will consider them, even if the objectors do not ask to speak at the hearing.  The Court will listen to people who have asked to speak at the hearing.  The Court may also decide the amount of attorneys' fees and expenses to award Class Counsel and Plaintiffs.  At or after the Settlement Hearing, the Court will decide

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

12

whether to approve the Settlement and the Plan of Allocation.  We do not know how long these decisions will take.  You should be aware that the Court may change the date, time, and location of the Settlement Hearing without another notice being sent to Class Members.

There exists the possibility that the Court may decide to conduct the Settlement Hearing by video or telephonic conference, or otherwise allow Class Members to appear at the hearing by phone or video conference, without further written notice to the Class.  **In order to determine whether the date and time of the Settlement Hearing have changed, or whether Class Members (who wish to attend the hearing) must or may participate by phone or video, it is important that you monitor the Court's docket or the Settlement website, www.CabotOilSecuritiesLitigation.com, before making any plans to attend the Settlement Hearing.  Any updates regarding the Settlement Hearing, including any changes to the date and time of the hearing or updates regarding in-person or remote appearances at the hearing, will be posted to the Settlement website.  Also, if the Court requires or allows Class Members to participate in the Settlement Hearing by telephone or video conference, the information for accessing the hearing will be posted to the Settlement website**.  Accordingly, please continue to check the Settlement website for important updates.

| 19. | Do I have to come to the hearing? |
| --- | --- |

No.  Class Counsel will answer any questions the Court may have.  But you are welcome to come at your own expense.  If you are a Class Member and send an objection, you do not have to come to Court to talk about it.  As long as you are a Class Member and mailed your complete written objection on time, the Court will consider it.  You may also pay your own lawyer to attend the hearing, but it is not necessary.  Class Members do not need to appear at the hearing or take any other action to indicate their approval.

| 20. | May I speak at the hearing? |
| --- | --- |

If you object to the Settlement, the Plan of Allocation, and/or the fee and expense application, you may ask the Court for permission to speak at the Settlement Hearing.  To do so, you must include with your objection (*see* question 16 above) a statement saying that it is your "Notice of Intention to Appear in the *Cabot Oil Securities Litigation*."  Persons who intend to object to the Settlement, the Plan of Allocation, and/or any attorneys' fees and expenses to be awarded to Plaintiffs' Counsel or Plaintiffs and desire to present evidence at the Settlement Hearing must include in their written objections the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the Settlement Hearing.  Your notice of intention to appear must be *received* **no later than October 3, 2024**, and addressed to the Clerk of Court, Class Counsel, and Defendants' Counsel, at the addresses listed above in question 16.

You cannot speak at the hearing if you exclude yourself from the Class.

### IF YOU DO NOTHING

| 21. | What happens if I do nothing? |
| --- | --- |

If you do nothing, you will not receive any money from this Settlement.  In addition, unless you exclude yourself from the Class, you will not be able to start a lawsuit, continue with a lawsuit,

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

13

or be part of any other lawsuit against Defendants and/or the other Released Defendant Parties about the Released Claims in this case.

## GETTING MORE INFORMATION

| **22.** | **How do I get more information?** |
|---|---|

For even more detailed information concerning the matters involved in this Litigation, you can obtain answers to common questions regarding the proposed Settlement by contacting the Claims Administrator toll-free at 877-495-5094 or by email at info@CabotOilSecuritiesLitigation.com. Reference is also made to the Stipulation, to the pleadings in support of the Settlement, to the Orders entered by the Court and to the other settlement related papers filed in the Litigation, which are posted on the Settlement website at www.CabotOilSecuritiesLitigation.com, and which may be inspected at the Office of the Clerk of the United States District Court for the Southern District of Texas, during regular business hours. For a fee, all papers filed in this Litigation are available at www.pacer.gov.

## THE PROPOSED PLAN OF ALLOCATION OF NET SETTLEMENT FUND AMONG CLASS MEMBERS

| **23.** | **How will my claim be calculated?** |
|---|---|

As discussed above, the Settlement provides $40 million in cash for the benefit of the Class. The Settlement Amount and any interest it earns constitute the "Settlement Fund." The Settlement Fund, after deduction of Court-approved attorneys' fees and expenses, Notice and Administration Expenses, Taxes, and any other fees or expenses approved by the Court, is the "Net Settlement Fund." If the Settlement is approved by the Court, the Net Settlement Fund will be distributed to eligible Authorized Claimants – *i.e.*, Members of the Class who timely submit valid Proofs of Claim that are accepted for payment by the Court – in accordance with this proposed Plan of Allocation ("Plan of Allocation" or "Plan") or such other plan of allocation as the Court may approve. Class Members who do not timely submit valid Proofs of Claim will not share in the Net Settlement Fund but will otherwise be bound by the Settlement. The Court may approve this proposed Plan of Allocation, or modify it, without additional notice to the Class. Any order modifying the Plan of Allocation will be posted on the Settlement website, www.CabotOilSecuritiesLitigation.com.

The objective of the Plan of Allocation is to distribute the Settlement proceeds equitably among those Class Members who allegedly suffered economic losses as a proximate result of the alleged wrongdoing. The Plan is not a formal damages analysis, and the calculations made in accordance with the Plan are not necessarily intended to be estimates of, or indicative of, the amounts that Class Members might have been able to recover after a trial. Nor are the calculations in accordance with the Plan intended to be estimates of the amounts that will be paid to Authorized Claimants under the Settlement. The computations under the Plan of Allocation are only a method to weigh, in a fair and equitable manner, the claims of Authorized Claimants against one another for the purpose of making *pro rata* allocations of the Net Settlement Fund.

The Plan of Allocation was developed in consultation with Plaintiffs' damages expert. In developing the Plan, the expert calculated the estimated amount of alleged artificial inflation in the per share prices of Cabot common stock that was allegedly proximately caused by Defendants' alleged materially false and misleading statements and omissions during the Class Period.

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

14

In calculating the estimated artificial inflation allegedly caused by the misrepresentations and omissions, Plaintiffs' damages expert considered price changes in Cabot common stock in reaction to the public disclosures that allegedly corrected the respective alleged misrepresentations and omissions, adjusting the price changes for factors that were attributable to market or industry forces, and for non-fraud related, Cabot-specific information.

In order to have recoverable damages in connection with purchases and/or acquisitions of Cabot common stock during the Class Period, disclosure of the alleged misrepresentations or omissions must be the cause of the decline in the price of the Cabot common stock.  In this case, Plaintiffs allege that Defendants made false statements and omitted material facts during the period from February 22, 2016, through and including the close of trading on June 12, 2020, which had the effect of artificially inflating the prices of Cabot common stock.  As a result of the alleged corrective disclosures, artificial inflation was removed from the price of Cabot stock on July 26, 2019 and June 15, 2020.[4]

In order to have a "Recognized Claim Amount" under the Plan of Allocation, shares of Cabot common stock must have been purchased or otherwise acquired during the Class Period and held through a corrective disclosure.

### CALCULATION OF RECOGNIZED CLAIM AMOUNT

Based on the formula stated below, a "Recognized Claim Amount" will be calculated for each purchase or acquisition of Cabot common stock during the Class Period that is listed on the Proof of Claim and for which adequate documentation is provided.  If a Recognized Claim Amount calculates to a negative number or zero under the formula below, that Recognized Claim Amount will be zero.

For each share of Cabot common stock purchased or otherwise acquired during the period from February 22, 2016, through June 12, 2020, inclusive, and:

     (a)     sold prior to July 26, 2019, the Recognized Loss Amount will be $0.00;

     (b)     sold from July 26, 2019 through June 12, 2020, inclusive, the Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), or (ii) the purchase price minus the sale price;

     (c)     sold from June 15, 2020, through and including the close of trading on September 11, 2020, the Recognized Loss Amount will be *the least of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), (ii) the purchase price minus the sale price, or (iii) the purchase price minus the average closing price between June 15, 2020, and the date of sale as stated in Table 2 below; or

     (d)     held as of the close of trading on September 11, 2020, the Recognized Loss Amount will be *the lesser of*: (i) the decline in inflation during the holding period (as presented in Table 1 below), or (ii) the purchase price minus

---

[4]   Any transactions in Cabot common stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

15

$18.58, the average closing price for Cabot common stock between June 15, 2020, and September 11, 2020 (the last entry in Table 2 below).[5]

If a Class Member held Cabot common stock at the beginning of the Class Period or made multiple purchases, acquisitions, or sales of Cabot common stock during or after the Class Period, the starting point for calculating a claimant's Recognized Claim Amount is to match the claimant's holdings, purchases, and acquisitions to their sales using the FIFO (*i.e.*, first-in-first-out) method. Under the FIFO method, Cabot common stock sold during the Class Period will be matched, in chronological order first against Cabot common stock held at the beginning of the Class Period. The remaining sales of Cabot common stock during the Class Period will then be matched, in chronological order against Cabot common stock purchased or acquired during the Class Period.

Purchases or acquisitions and sales of Cabot common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance, or operation of law of Cabot common stock during the Class Period shall not be deemed a purchase, acquisition or sale of Cabot common stock for the calculation of a Recognized Claim Amount, unless (i) the donor or decedent purchased or otherwise acquired such shares of Cabot common stock during the Class Period; (ii) no Proof of Claim was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such shares of Cabot common stock; and (iii) it is specifically so provided in the instrument of gift or assignment.

An Authorized Claimant's Recognized Claim Amount shall be the amount used to calculate the Authorized Claimant's *pro rata* share of the Net Settlement Fund. If the sum total of the Recognized Claim Amounts of all Authorized Claimants who are entitled to receive payment out of the Net Settlement Fund is greater than the Net Settlement Fund, each Authorized Claimant shall receive his, her, or its *pro rata* share of the Net Settlement Fund. The *pro rata* share shall be the Authorized Claimant's Recognized Claim Amount divided by the total of the Recognized Claim Amounts of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Given the costs of distribution, the Net Settlement Fund will be allocated among all Authorized Claimants whose *pro rata* share of the Net Settlement Fund is $10.00 or greater.

If a claimant had a market gain with respect to their overall transactions in Cabot common stock during the Class Period, the value of the claimant's Recognized Claim Amount will be zero. If a claimant suffered an overall market loss with respect to their overall transactions in Cabot common stock during the Class Period but that market loss was less than the claimant's total Recognized Claim Amount calculated above, then the claimant's Recognized Claim Amount will be limited to the amount of the actual market loss. For purposes of determining whether a claimant had a market gain, or suffered a market loss, with respect to his, her, or its overall transactions in Cabot common stock during the Class Period, the Claims Administrator will determine the

---

[5]   Under Section 21(e)(1) of the Exchange Act, "in any private action arising under this Act in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market." Consistent with the requirements of the statute, Recognized Claim Amounts are reduced to an appropriate extent by taking into account the closing prices of Cabot common stock during the 90-day look-back period. The mean (average) closing price for Cabot common stock during this 90-day look-back period was $18.58.

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

16

difference between (i) the Total Purchase Amount[6] and (ii) the sum of the Total Sales Proceeds[7] and Holding Value.[8]

Distributions will be made to Authorized Claimants after all claims have been processed, after the Court has finally approved the Settlement, and after any appeals are resolved. If there is any balance remaining in the Net Settlement Fund after at least six (6) months from the initial date of distribution of the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), the Claims Administrator shall, if feasible, reallocate such balance among Authorized Claimants in an equitable and economic fashion. These redistributions shall be repeated until the balance remaining in the Net Settlement Fund is no longer economically feasible to distribute to Class Members. Thereafter, any balance that still remains in the Net Settlement Fund shall be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest.

Please contact the Claims Administrator or Class Counsel if you disagree with any determinations made by the Claims Administrator regarding your Proof of Claim. If you are dissatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Class Members and the claims administration process, to decide the issue by submitting a written request for review.

The Court has reserved jurisdiction to allow, disallow, or adjust the claim of any Class Member on equitable grounds.

Payment pursuant to the Plan of Allocation set forth above shall be conclusive against all Authorized Claimants. Defendants, their counsel, and all other Released Defendant Parties will have no responsibility or liability whatsoever for the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any claim. No Person shall have any claim against Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, or other Person designated by Plaintiffs' Counsel, Defendants, or Defendants' Counsel based on distributions made substantially in accordance with the Stipulation and the Settlement contained therein, the Plan of Allocation, or further orders of the Court.

---

[6]    The "Total Purchase Amount" is the total amount the claimant paid (excluding commissions and other charges) for Cabot common stock purchased or acquired during the Class Period.

[7]    The Claims Administrator will match any sales of Cabot common stock from the start of the Class Period through and including the close of trading on June 12, 2020, first against the claimant's opening position (the proceeds of those sales will not be considered for purposes of calculating market gains or losses). The total amount received (excluding commissions and other charges) for the remaining sales of Cabot common stock sold from the start of the Class Period through and including the close of trading on June 12, 2020, will be the "Total Sales Proceeds."

[8]    The Claims Administrator will ascribe a "Holding Value" equal to $19.40 for each share of Cabot common stock purchased or acquired during the Class Period and still held as of the close of trading on June 12, 2020.

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

17

**TABLE 1**

**Decline in Inflation Per Share of Cabot Common Stock
by Date of Purchase and Date of Sale**

| Purchase Date | Sale Date | | | |
|---|---|---|---|---|
| | 2/22/2016 - 10/25/2018 | 10/26/2018 - 7/25/2019 | 7/26/2019 - 6/12/2020 | Sold on or Retained Beyond 6/15/2020 |
| 2/22/2016 - 10/25/2018 | $0.00 | $0.00 | $0.00 | $0.85 |
| 10/26/2018 - 7/25/2019 | | $0.00 | $1.37 | $2.22 |
| 7/26/2019 - 6/12/2020 | | | $0.00 | $0.85 |
| Purchased on or Beyond 6/15/2020 | | | | $0.00 |

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

18

**TABLE 2**

**Cabot Common Stock Closing Prices and Average Closing Prices**

| Date | Closing Price | Average Closing Price Between June 15, 2020 and Date Shown | Date | Closing Price | Average Closing Price Between June 15, 2020 and Date Shown |
|---|---|---|---|---|---|
| 6/15/2020 | $19.40 | $19.40 | 7/30/2020 | $18.14 | $18.00 |
| 6/16/2020 | $19.31 | $19.36 | 7/31/2020 | $18.70 | $18.02 |
| 6/17/2020 | $18.89 | $19.20 | 8/3/2020 | $19.12 | $18.05 |
| 6/18/2020 | $18.77 | $19.09 | 8/4/2020 | $19.63 | $18.10 |
| 6/19/2020 | $18.69 | $19.01 | 8/5/2020 | $19.62 | $18.14 |
| 6/22/2020 | $18.07 | $18.86 | 8/6/2020 | $19.83 | $18.18 |
| 6/23/2020 | $18.17 | $18.76 | 8/7/2020 | $20.59 | $18.25 |
| 6/24/2020 | $17.92 | $18.65 | 8/10/2020 | $20.58 | $18.30 |
| 6/25/2020 | $17.17 | $18.49 | 8/11/2020 | $19.73 | $18.34 |
| 6/26/2020 | $16.57 | $18.30 | 8/12/2020 | $19.81 | $18.37 |
| 6/29/2020 | $17.06 | $18.18 | 8/13/2020 | $19.35 | $18.40 |
| 6/30/2020 | $17.18 | $18.10 | 8/14/2020 | $20.04 | $18.43 |
| 7/1/2020 | $17.00 | $18.02 | 8/17/2020 | $20.16 | $18.47 |
| 7/2/2020 | $17.74 | $18.00 | 8/18/2020 | $19.89 | $18.50 |
| 7/6/2020 | $17.92 | $17.99 | 8/19/2020 | $20.10 | $18.54 |
| 7/7/2020 | $18.08 | $18.00 | 8/20/2020 | $19.37 | $18.55 |
| 7/8/2020 | $17.55 | $17.97 | 8/21/2020 | $19.52 | $18.57 |
| 7/9/2020 | $17.03 | $17.92 | 8/24/2020 | $19.51 | $18.59 |
| 7/10/2020 | $17.60 | $17.90 | 8/25/2020 | $19.29 | $18.61 |
| 7/13/2020 | $17.08 | $17.86 | 8/26/2020 | $18.68 | $18.61 |
| 7/14/2020 | $17.44 | $17.84 | 8/27/2020 | $19.07 | $18.62 |
| 7/15/2020 | $17.85 | $17.84 | 8/28/2020 | $18.95 | $18.62 |
| 7/16/2020 | $17.71 | $17.83 | 8/31/2020 | $18.97 | $18.63 |
| 7/17/2020 | $17.94 | $17.84 | 9/1/2020 | $18.59 | $18.63 |
| 7/20/2020 | $17.84 | $17.84 | 9/2/2020 | $18.17 | $18.62 |
| 7/21/2020 | $18.53 | $17.87 | 9/3/2020 | $18.14 | $18.61 |
| 7/22/2020 | $18.48 | $17.89 | 9/4/2020 | $18.33 | $18.61 |
| 7/23/2020 | $19.19 | $17.94 | 9/8/2020 | $17.88 | $18.60 |
| 7/24/2020 | $19.04 | $17.97 | 9/9/2020 | $18.58 | $18.59 |
| 7/27/2020 | $17.97 | $17.97 | 9/10/2020 | $18.20 | $18.59 |
| 7/28/2020 | $18.27 | $17.98 | 9/11/2020 | $18.24 | $18.58 |
| 7/29/2020 | $18.48 | $18.00 | | | |

Questions? Visit www.CabotOilSecuritiesLitigation.com or call toll-free at 877-495-5094

19

## SPECIAL NOTICE TO SECURITIES BROKERS AND OTHER NOMINEES

Nominees who purchased or otherwise acquired Cabot common stock during the Class Period for beneficial owners who are Class Members are directed to: (i) request within seven (7) calendar days of receipt of this Notice sufficient copies of the Postcard Notice from the Claims Administrator to forward to all such beneficial owners; or (ii) send a list of the names and addresses (including email addresses if available) of such beneficial owners to the Claims Administrator within seven (7) calendar days after receipt of this Notice.  If a nominee elects to send the Postcard Notice to beneficial owners, such nominee is directed to email or mail (where an email is unavailable) the Postcard Notice within seven (7) calendar days of receipt of those documents from the Claims Administrator, and upon such emailing or mailing, the nominee shall send a statement to the Claims Administrator confirming that the emailing or mailing was made as directed, and the nominee shall retain the list of names and addresses for use in connection with any possible future notice to the Class.  Upon full compliance with these instructions, including the timely emailing or mailing of the Postcard Notice to beneficial owners, such nominees may seek reimbursement of their reasonable expenses actually incurred in complying with these instructions by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought and reflecting compliance with these instructions.  Reasonable out of-pocket expenses actually incurred in connection with the foregoing includes up to $0.03 for providing names, addresses, and email addresses to the Claims Administrator per record; up to a maximum of $0.03 per Postcard Notice mailed by you, plus postage at the rate used by the Claims Administrator; or $0.03 per Postcard Notice sent by email.  Such properly documented expenses incurred by nominees in compliance with the terms of these instructions will be paid from the Settlement Fund.  Copies of this Notice may also be obtained by calling toll-free 877-495-5094, and may be downloaded from the Settlement website, www.CabotOilSecuritiesLitigation.com.

*Cabot Oil Securities Litigation*
Claims Administrator
c/o JND Legal Administration
P.O. Box 91217
Seattle, WA  98111
www.CabotOilSecuritiesLitigation.com


DATED:  July 18, 2024                    BY ORDER OF THE COURT
                                         UNITED STATES DISTRICT COURT
                                         SOUTHERN DISTRICT OF TEXAS

# PROOF OF CLAIM AND RELEASE FORM

***Delaware County Employees Retirement System v. Cabot Oil & Gas Corporation, et al.***

**No. 4:21-cv-02045**

**This Form Must Be Postmarked (if Mailed) or Received (if Submitted Online) No Later Than:**

## October 16, 2024

<u>Please Type or Print</u>

REMEMBER TO ATTACH COPIES OF BROKER CONFIRMATIONS OR OTHER DOCUMENTATION OF YOUR TRANSACTIONS IN CABOT COMMON STOCK.  FAILURE TO PROVIDE THIS DOCUMENTATION COULD DELAY VERIFICATION OF YOUR CLAIM OR RESULT IN THE REJECTION OF YOUR CLAIM.

## CONTENTS

**02**   PART I.   GENERAL INSTRUCTIONS

**04**   PART II.   CLAIMANT IDENTIFICATION

**05**   PART III.   SCHEDULE OF TRANSACTIONS IN CABOT COMMON STOCK

**06**   PART IV.   RELEASE OF CLAIMS AND SIGNATURE

# PART I – GENERAL INSTRUCTIONS

1.      To recover as a Class Member based on the claims in the Litigation,[1] you must complete and, on page 8 hereof, sign this Proof of Claim and Release Form ("Proof of Claim").  If you fail to submit a properly addressed (as set forth in paragraph 3 below) Proof of Claim, your claim may be rejected and you may be precluded from any recovery from the Net Settlement Fund created in connection with the proposed Settlement.

2.      Submission of this Proof of Claim, however, does not assure that you will share in the proceeds of the Settlement of the Litigation.

3.      YOU MUST MAIL OR SUBMIT ONLINE YOUR COMPLETED AND SIGNED PROOF OF CLAIM, ACCOMPANIED BY COPIES OF THE DOCUMENTS REQUESTED HEREIN, **ON OR BEFORE OCTOBER 16, 2024**, ADDRESSED AS FOLLOWS:

*Cabot Oil Securities Litigation*
Claims Administrator
c/o JND Legal Administration
P.O. Box 91217
Seattle, WA  98111
Online Submissions: www.CabotOilSecuritiesLitigation.com

If you are NOT a Class Member, as defined in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), DO NOT submit a Proof of Claim.

4.      If you are a Class Member and you do not timely request exclusion from the Class, you will be bound by the terms of any judgment entered in the Litigation, including the releases provided therein, WHETHER OR NOT YOU SUBMIT A PROOF OF CLAIM.

## I.      CLAIMANT IDENTIFICATION

5.      You are a Member of the Class if you purchased or otherwise acquired the common stock of Cabot Oil & Gas Corporation ("Cabot") between February 22, 2016, and June 12, 2020, inclusive (the "Class Period"), and were damaged thereby, and are not otherwise excluded from the Class.[2]

6.      Use Part II of this form entitled "Claimant Identification" to identify each purchaser or acquirer of record ("nominee") of the Cabot common stock that forms the basis of this claim.  THIS PROOF OF CLAIM MUST BE SUBMITTED BY THE ACTUAL BENEFICIAL PURCHASER(S) OR ACQUIRER(S) OR THE LEGAL REPRESENTATIVE OF SUCH PURCHASER(S) OR ACQUIRER(S) OF CABOT COMMON STOCK UPON WHICH THIS CLAIM IS BASED.

7.      All joint purchasers or acquirers must sign this Proof of Claim.  Executors, administrators, guardians, conservators, and trustees must complete and sign this claim on behalf of Persons represented by them and their authority must accompany this claim and their titles or capacities must be stated.  The last four digits of the Social Security Number (or Taxpayer Identification Number) and telephone number of the beneficial owner may be used in verifying the claim.  Failure to provide the foregoing information could delay verification of your claim or result in the rejection of the claim.

---

[1]      This Proof of Claim and Release ("Proof of Claim") incorporates by reference the definitions in the Stipulation of Settlement ("Stipulation"), which can be obtained at www.CabotOilSecuritiesLitigation.com.

[2]      Cabot merged with Cimarex Energy Co. on October 1, 2021, to form Coterra Energy Inc.

8.    A Proof of Claim should be submitted for each separate legal entity (*e.g.*, a claim of joint owners should not include separate transactions of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made solely in the individual's name).  Conversely, a single Proof of Claim should be submitted on behalf of one legal entity including all transactions made by that entity, no matter how many separate accounts that entity has (*e.g.*, an institution with multiple brokerage accounts that the entity has transacted in Cabot common stock during the Class Period).

## II.    CLAIM FORM

9.    Use Part III of this form entitled "Schedule of Transactions in Cabot Common Stock" to supply all required details of your transaction(s).  If you need more space or additional schedules, attach separate sheets giving all of the required information in substantially the same form.  Sign and print or type your name on each additional sheet.

10.    On the schedules, provide all of the requested information with respect to *all* of your purchases, acquisitions, and sales of Cabot common stock that took place between February 22, 2016 and September 11, 2020, inclusive, whether such transactions resulted in a profit or a loss.[3] You must also provide all of the requested information with respect to the number of shares of Cabot common stock you held at the close of trading on February 21, 2016 and September 11, 2020. Failure to report all such transactions may result in the rejection of your claim.

11.    List each transaction separately and in chronological order, by trade date, beginning with the earliest.  You must accurately provide the month, day, and year of each transaction you list.

12.    The date of covering a "short sale" is deemed to be the date of purchase or other acquisition of Cabot common stock.  The date of a "short sale" is deemed to be the date of sale of Cabot common stock.

13.    COPIES OF BROKER CONFIRMATIONS OR OTHER DOCUMENTATION OF YOUR TRANSACTIONS IN CABOT COMMON STOCK SHOULD BE ATTACHED TO YOUR PROOF OF CLAIM.  FAILURE TO PROVIDE THIS DOCUMENTATION COULD DELAY VERIFICATION OF YOUR CLAIM OR RESULT IN THE REJECTION OF YOUR CLAIM.  **THE SETTLING PARTIES DO NOT HAVE INFORMATION ABOUT YOUR TRANSACTIONS IN CABOT COMMON STOCK**.

14.    PLEASE NOTE: As set forth in the Plan of Allocation contained in the Notice, each Authorized Claimant shall receive his, her, its, or their *pro rata* share of the Net Settlement Fund.  If the prorated payment to any Authorized Claimant calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

15.    NOTICE REGARDING ELECTRONIC FILES: Certain claimants with large numbers of transactions may request, or may be requested, to submit information regarding their transactions in electronic files.  All such claimants MUST also submit a manually signed paper Proof of Claim whether or not they also submit electronic copies. If you wish to submit your claim electronically, you must contact the Claims Administrator at CBOSecurities@JNDLA.com to obtain the required file layout.  No electronic files will be considered to have been properly submitted unless the Claims Administrator issues to the claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

---

[3]    Information requested about your purchases/acquisitions on June 13, 2020 through and including the close of trading on September 11, 2020 is needed only for the Claims Administrator to confirm that you have reported all relevant transactions.  Purchases/acquisitions during this period are not eligible for a recovery because they are outside the Class Period.

# PART II – CLAIMANT IDENTIFICATION

Last Name

MI

First Name

Last Name (Co-Beneficial Owner)

MI

First Name (Co-Beneficial Owner)

☐ Individual (includes joint owner accounts)     ☐ Corporation     ☐ Pension Plan     ☐ IRA/401k

☐ Estate     ☐ Trust     ☐ Other (please specify): _____

Company Name (Beneficial Owner – If Claimant is not an Individual) or Custodian Name if an IRA

Trustee/Asset Manager/Nominee/Record Owner's Name (If Different from Beneficial Owner Listed Above)

Account #/Fund # (Not Necessary for Individual Filers)

Last 4 digits of Social Security Number or Taxpayer Identification Number

Telephone Number (Primary Daytime)

Telephone Number (Alternate)

Email Address

Street Address 1

Street Address 2

City

State

Zip Code

Foreign Province

Foreign Postal Code

Foreign Country Name/Abbreviation

4

# PART III – SCHEDULE OF TRANSACTIONS IN CABOT COMMON STOCK

**A.  Number of shares of Cabot common stock held at the close of trading on February 21, 2016.  If none, write "0" or "zero."**

**B.  Purchases or other acquisitions of Cabot common stock between February 22, 2016 and September 11, 2020, inclusive:**

| Trade Date(s) Month Day Year (List chronologically) | Number of Shares Purchased or Otherwise Acquired | Purchase or Acquisition Price Per Share | Total Purchase or Acquisition Price (Excluding commissions, taxes and fees) | Proof of Purchase/ Acquisition Enclosed |
|---|---|---|---|---|
| /    / | | $ | $ | ☐ Yes    ☐ No |
| /    / | | $ | $ | ☐ Yes    ☐ No |
| /    / | | $ | $ | ☐ Yes    ☐ No |

**IMPORTANT:**    (i)  If any purchase listed covered a "short sale," please mark Yes: ☐ Yes

(ii)  If you received shares through an acquisition or merger at some date beginning February 22, 2016 through September 11, 2020, please identify the date, the share amount, and the company acquired:

_____/_____/_____          _____          _____
MM  DD  YYYY                          Merger Shares                          Company

**C.  Sales of Cabot common stock between February 22, 2016 and September 11, 2020, inclusive:**

| Trade Date Month Day Year | Number of Shares Sold | Sale Price Per Share | Total Sales Price (Excluding commissions, taxes and fees) | Proof of Sale Enclosed |
|---|---|---|---|---|
| /    / | | $ | $ | ☐ Yes    ☐ No |
| /    / | | $ | $ | ☐ Yes    ☐ No |
| /    / | | $ | $ | ☐ Yes    ☐ No |

**D.  Number of shares of Cabot common stock held at the close of trading on September 11, 2020. If none, write "0" or "zero."**

**Proof of Position Enclosed**

☐ Yes ☐ No

**YOU MUST READ AND SIGN THE RELEASE ON PAGE 8. FAILURE TO SIGN THE RELEASE MAY RESULT IN A DELAY IN PROCESSING OR THE REJECTION OF YOUR CLAIM.**

Questions?  Visit www.CabotOilSecuritiesLitigation.com
To view JND's privacy policy, please visit https://www.jndla.com/privacy-policy

# PART IV – RELEASE OF CLAIMS AND SIGNATURE

## I.    SUBMISSION TO JURISDICTION OF COURT AND ACKNOWLEDGMENTS

I (We) submit this Proof of Claim under the terms of the Stipulation of Settlement described in the Notice.  I (We) also submit to the jurisdiction of the United States District Court for the Southern District of Texas with respect to my (our) claim as a Class Member and for purposes of enforcing the release set forth herein.  I (We) further acknowledge that I am (we are) bound by and subject to the terms of any judgment that may be entered in the Litigation.  I (We) agree to furnish additional information to the Claims Administrator to support this claim if requested to do so.  I (We) have not submitted any other claim covering the same purchases, other acquisitions, or sales of Cabot common stock during the relevant period and know of no other Person having done so on my (our) behalf.

## II.    RELEASE

1.     I (We) hereby acknowledge full and complete satisfaction of, and do hereby fully, finally, and forever waive, release, relinquish, discharge and dismiss from the Released Claims each and all of the "Released Defendant Parties," defined as any or all of Defendants, and/or any or all of their related parties, including, without limitation, any and all of their current or former parents, subsidiaries, affiliates, predecessors, successors, divisions, funds, joint ventures, and general or limited partnerships, and each of their respective current or former officers, directors, trustees, partners, members, contractors, auditors, principals, agents, managing agents, employees, attorneys, accountants, investment bankers, commercial bankers, financial or investment advisors, consultants, advisors, underwriters, insurers in their capacities as such, as well as each of the Individual Defendants' immediate family members, heirs, executors, personal or legal representatives, estates, beneficiaries, predecessors, successors, legatees, devisees, administrators, spouses, receivers and trustees, settlors, auditors, accountants, and assigns, as well as any trust of which any of the Defendants is the settlor or which is for the benefit of any of the Defendants and/or member(s) of his family, and any person, firm, trust, corporation, officer, director or other individual or entity in which any of the Defendants has a controlling interest or which is related to or affiliated with any of the Defendants.

2.     "Released Claims" means any and all claims and causes of action of every nature and description, whether known or unknown, asserted or unasserted, accrued or unaccrued, fixed or contingent, liquidated or unliquidated, whether arising under federal, state, local, common or foreign law, or any other law, rule or regulation, whether class or individual in nature, based on, arising out of, or in connection with both: (i) the purchase or acquisition of Cabot common stock during the period between February 22, 2016, and June 12, 2020, inclusive, and (ii) the allegations, acts, facts, matters, occurrences, disclosures, filings, representations, statements, or omissions that were or could have been alleged by Plaintiffs and other Members of the Class in the Litigation.  "Released Claims" does not include claims to enforce the Settlement, or any derivative or ERISA claims, or the claims of any Person who submits a request for exclusion in connection with this Settlement that is accepted by the Court.  "Released Claims" includes "Unknown Claims" as defined below.

3.     "Unknown Claims" means (a) any and all Released Claims which any of the Releasing Plaintiff Parties do not know or suspect to exist in his, her, or its favor at the time of the release of the Released Defendant Parties, which, if known by him, her, or it, might have affected his, her, or its

Questions?  Visit www.CabotOilSecuritiesLitigation.com
To view JND's privacy policy, please visit https://www.jndla.com/privacy-policy

settlement with and release of the Released Defendant Parties, or might have affected his, her, or its decision(s) with respect to the Settlement, including, but not limited to, whether or not to object to this Settlement or seek exclusion from the Class; and (b) any and all Released Defendants' Claims that any of the Released Defendant Parties do not know or suspect to exist in his, her, or its favor at the time of the release of Plaintiffs, the Class, and Plaintiffs' Counsel, which, if known by him, her, or it, might have affected his, her, or its settlement and release of Plaintiffs, the Class, and Plaintiffs' Counsel.  With respect to (a) any and all Released Claims against the Released Defendant Parties, and (b) any and all Released Defendants' Claims against Plaintiffs, the Class, and Plaintiffs' Counsel, the Settling Parties stipulate and agree that, upon the Effective Date, the Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have expressly waived, the provisions, rights, and benefits of California Civil Code §1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

The Settling Parties shall expressly waive, and each Releasing Plaintiff Party and Released Defendant Party shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to California Civil Code §1542. The Releasing Plaintiff Parties and Released Defendant Parties acknowledge that they may hereafter discover facts, legal theories, or authorities in addition to or different from those which he, she, it, or their counsel now knows or believes to be true with respect to the subject matter of the Released Claims or Released Defendants' Claims, but (a) the Releasing Plaintiff Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Releasing Plaintiff Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Claims against the Released Defendant Parties, known or unknown, suspected or unsuspected, contingent or non-contingent, accrued or unaccrued, whether or not concealed or hidden, which now exist, or heretofore have existed, or may hereafter exist, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law, or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities, and (b) the Released Defendant Parties shall expressly fully, finally, and forever waive, compromise, settle, discharge, extinguish, and release, and each Released Defendant Party shall be deemed to have waived, compromised, settled, discharged, extinguished, and released, and upon the Effective Date, and by operation of the Judgment shall have waived, compromised, settled, discharged, extinguished, and released, fully, finally, and forever, any and all Released Defendants' Claims against Plaintiffs, the Class, and Plaintiffs' Counsel, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts, legal theories, or authorities.  The Settling Parties acknowledge, and the Releasing Plaintiff Parties and Released Defendant Parties shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and is an essential element of the Settlement of which this release is a part.

7

4.      These releases shall be of no force or effect unless and until the Court approves the Stipulation and the Settlement becomes effective on the Effective Date.

5.      I (We) hereby warrant and represent that I (we) have not assigned or transferred or purported to assign or transfer, voluntarily or involuntarily, any matter released pursuant to this release or any other part or portion thereof.

6.      I (We) hereby warrant and represent that I (we) have included information about all of my (our) transactions in Cabot common stock that occurred during the relevant period as well as the number of shares held by me (us) at the close of trading on February 21, 2016 and September 11, 2020.

7.      I (We) am (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (i) I (we) am (are) exempt from backup withholding or (ii) I (we) have not been notified by the IRS that I (we) am (are) subject to backup withholding as a result of a failure to report all interest or dividends or (iii) the IRS has notified me (us) that I (we) am (are) no longer subject to backup withholding. **If you have been notified by the IRS that you are subject to backup withholding, please strike out the prior sentence.**

I (We) declare under penalty of perjury under the laws of the United States of America that all of the foregoing information supplied on this Proof of Claim by the undersigned is true and correct.

Executed this _____ day of _____
(Month/Year)

in _____
(City)                                                    (State/Country)


_____
(Sign your name here)


_____
(Type or print your name here)


_____
(Signature of Co-Beneficial Owner)


_____
(Type or print name of Co-Beneficial Owner)


_____
(Capacity of person(s) signing, *e.g.*, Beneficial Purchaser or Acquirer, Executor or Administrator)


**ACCURATE CLAIMS PROCESSING TAKES A SIGNIFICANT AMOUNT OF TIME.
THANK YOU FOR YOUR PATIENCE.**

Questions?  Visit www.CabotOilSecuritiesLitigation.com
To view JND's privacy policy, please visit https://www.jndla.com/privacy-policy

# REMINDER CHECKLIST



1. Please sign the above release and acknowledgment.

2. Remember to attach copies of supporting documentation.



3. **Do not send originals** of certificates or other documentation as they will not be returned.



4. Keep a copy of your Proof of Claim and all supporting documentation for your records.

5. If you desire an acknowledgment of receipt of your Proof of Claim, please send it Certified Mail, Return Receipt Requested.





6. If you move, please send your new address to the address below.

7. **Do not use red pen or highlighter** on the Proof of Claim or supporting documentation.



**THIS PROOF OF CLAIM MUST BE SUBMITTED ONLINE OR MAILED NO LATER THAN OCTOBER 16, 2024, ADDRESSED AS FOLLOWS:**

***Cabot Oil Securities Litigation***
**Claims Administrator**
**c/o JND Legal Administration**
**P.O. Box 91217**
**Seattle, WA 98111**

**Online Submissions: www.CabotOilSecuritiesLitigation.com**

Questions?  Visit www.CabotOilSecuritiesLitigation.com
To view JND's privacy policy, please visit https://www.jndla.com/privacy-policy

# EXHIBIT C

THE WALL STREET JOURNAL.

Thursday, July 25, 2024 | **B5**

## BUSINESS NEWS

# Marketers Eye Google's Cookies Reversal

**Expanded consumer choice to stop the tracking tools offers a marketing hurdle**

BY MEGAN GRAHAM

After a yearslong saga involving squabbles with the larger ad industry and regulators, Google is ending a plan to eliminate third-party tracking cookies on its Chrome browser.

The marketing world is now trying to figure out how such tracking would fare if consumers have more choice to stop it.

Four years ago, Google said it would phase out support for third-party cookies, which log the activity of internet users across websites so advertisers can target them with relevant ads and track the effectiveness of those ads. The insights can be valuable to advertisers but have generated consumer privacy concerns.

Instead of eliminating those third-party cookies, Google will present users with a prompt to decide whether to retain third-party cookies, according to the U.K. competition regulator that has been overseeing the search giant's plan to block cookies, leaving marketers to wonder how that will work, and how they will reach consumers if they opt out en masse.

Google first announced its intention to phase out third-party cookies in 2020. Privacy advocates were enthusiastic, but many advertisers objected, saying Google's plan to replace cookies would force them to shift spending to its digital-ad products.

What followed was years of delays and disagreements with the industry and regulators.

"Google was being pulled in multiple directions. The company had to thread the needle between offering a more privacy-centric approach to web browsing while not disrupting the ad tech ecosystem to the point that antitrust concerns could be raised," Raymond James analysts wrote in a research note this week. "In the end, the company seems to have satisfied nobody."

Following delays from Google and concerns from the U.K. Competition and Markets Authority, plans to eliminate third-party cookies have seemed less than solid, some industry watchers said.

"In the last six months, there has been a growing feeling that this was very possible," Shiv Gupta, founder of ad tech education company U of Digital, said of Google dropping its plan to end third-party cookies.

Jason Hartley, head of media innovation at marketing agency PMG, said there had been skepticism among regulators and the wider ad industry about the viability of Google's Privacy Sandbox, which refers to the company's set of technologies to replace ad targeting and measurement features.

"Surprising, but not shocking," Hartley said. "The issues were complex and solutions weren't obvious. Recent tests suggested that there was still a significant gap in perfor-



A Google event in California earlier this year. Google opted to end efforts to eliminate cookies from its Chrome browser.

mance with Privacy Sandbox solutions."

Though Google's immediate plan to eliminate cookies isn't moving forward, industry onlookers say efforts to move in that direction weren't for nothing.

"I have been very vocal about saying I believe cookies are going away, and Google is going to do away with cookies," Gupta said. "My stance on that doesn't change...The plan is still to do away with cookies. The plan is just to do it in a way that can appease people and authorities and pawn off the responsibility of cookie deprecation to users, in a way—[with] user consent."

Raymond James analysts say user choice means Google's planning likely wasn't in vain.

"Much technical effort has been expended and ink spilled about the preparations that advertisers and publishers were making to deal with the phaseout of the cookie. While no longer as urgent as feared, that effort may not have been for naught," they wrote.

They added that, "Depending on the alternative framework that Google will offer to users seeking privacy-first web browsing, industry participants may be able to use this work to reach these opted-out users on a contextual or cohort-based framework."

Whether consumers accept cookies likely will depend on how Google chooses to prompt them. Google in a post said it would propose an updated approach that would involve "a new experience in Chrome that lets people make an informed choice that applies across their web browsing, and they'd be able to adjust that choice at any time."

Advertising industry executives and experts say they have questions about what that will look like, and how closely prompts will resemble those from Apple to allow app tracking, for instance.

"We don't have the details and regulators may have a say in this. If we see the type of opting out we have seen with [Apple's App Tracking Transparency], Privacy Sandbox and other cookieless options will be important tools," said Hartley. "If not, advertisers will have to decide if cookies are right for them based on their goals, brand values, etc."

Gupta said people in the ad industry are wondering how user choice will look—whether prompts are opt-in or opt-out, what language is used, how much control publishers have over prompts, and whether prompts appear on every website or just once and apply across all sites.

No matter what the opt-out procedure looks like, advertisers should be ready to not rely heavily on cookies as time passes, according to some executives.

"It's fun to speculate what [the cookie prompt] will ultimately look like—regardless of the end result, the practical outcome here is that the cookie-addressable universe of users will be getting smaller and smaller every day," said Ana Milicevic, a principal and co-founder at Sparrow Advisers, a management consulting firm specializing in ad tech. She also serves as an independent director sitting on the board of adtech infrastructure company ID5.

Regardless of the cookie deadline no longer being imminent, advertising executives said marketers shouldn't expect the desire for privacy to diminish.

"Marketers should continue preparing for a future where data privacy is increasingly prioritized," said Dimitrios Koromilas, director of platform services for Europe, the Middle East, and Africa at data-marketing company Acxiom. "Those who have been proactive in exploring alternatives will be better positioned to adapt when changes do inevitably occur, particularly given the changing regulatory landscape and shifts by other major players in the industry."

The decision to not eliminate cookies outright may provide an illusion of respite for some media owners that haven't had resources to adopt alternatives, said Milicevic.

"Marketers need to have a resilient strategy that's not overly dependent on a single company, a single channel, or a single piece of obsolete technology—like cookies," she said.

Smart marketers will keep trying to test different approaches to connect with consumers, said Matt Barash, a longtime ad tech industry executive.

"Change is inevitable and the most important will be how the efficacy of campaigns are measured in an undefined future state," he said. "Privacy is a consumer's inherent right and their choice to opt in or out of personalization has historically been overly complicated by design. It's clear that the pendulum will swing in the consumer's favor and ad tech companies will have to continue to plan to do more with less signal."

---

The Spanish investigation is adding to a list of headaches that Apple is facing in Europe.

# Spanish Antitrust Officials Probe Apple's App Store

BY MAURO ORRU

Spanish antitrust officials launched an investigation into **Apple**, saying the iPhone maker might be imposing unfair conditions on developers who rely on its App Store to distribute their applications.

The country's National Markets and Competition Commission, known as CNMC, said it is probing Apple's treatment of developers to ascertain whether the tech giant is engaging in anticompetitive practices.

The CNMC has the power to fine companies up to 10% of their global sales for the year. Apple reported nearly $383.29 billion in sales in the fiscal year ended Sept. 30, 2023, meaning it faces a multibillion-dollar fine if CNMC officials conclude it stifled competition.

"Today, Spanish developers of all sizes compete on a level playing field on the App Store," an Apple representative said. "Apple will continue to work with the Spanish Competition Authority to understand and respond to their concerns."

The Spanish investigation adds to a growing list of headaches that Apple is facing in Europe. Last month, the EU said the company might be in breach of its digital-competition law, alleging that the company's App Store wasn't allowing developers to freely direct customers to alternative ways to make purchases.

# Trucker ODFL Earnings Jump With Sales Gains, Lower Costs

BY DEAN SEAL

**Old Dominion Freight Line** logged higher earnings in the second quarter as shipments climbed and cost-cutting efforts flowed to the bottom line.

The Thomasville, N.C.-based freight carrier posted a profit of $322 million, up from $292.4 million in the same quarter a year ago.

Per-share earnings rose to $1.48 from $1.33, clearing analyst forecasts by 3 cents, according to FactSet.

Revenue climbed 6.1% to $1.50 billion, in line with analyst projections.

The gain was primarily driven by higher less-than-truckload revenue per hundredweight, a measure of pricing strength, along with a lift in less-than-truckload tons per day.

ODFL said shipments per day was higher during the quarter, partially offset by a small decrease in weight per shipment.

The company's operating ratio improved slightly thanks to both the top-line growth and a focus on driving efficiencies, ODFL said. Operating costs were a lower percentage of revenue during the quarter, though overhead costs were a higher proportion than they were a year ago.

Chief Executive Marty Freeman said the gains came despite ongoing softness in the domestic economy.

Trucking demand across North America has been muted this year, although carriers in ODFL's less-than-truckload corner of the market—in which shipments from multiple customers are combined on a single truck—have fared better than the broader market on tight capacity and relatively stable rates.

---

**ADVERTISEMENT**

## The Marketplace

To advertise: 800-366-3975 or WSJ.com/classifieds

### CLASS ACTION

### LEGAL NOTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, Plaintiff, vs. | Civil Action No. 4:21-cv-02045 <u>CLASS ACTION</u> |
| CABOT OIL & GAS CORPORATION, et al., Defendants. | |

SUMMARY NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION

**TO: ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED CABOT OIL & GAS CORPORATION ("CABOT") COMMON STOCK BETWEEN FEBRUARY 22, 2016, AND JUNE 12, 2020, INCLUSIVE, AND WERE DAMAGED THEREBY ("CLASS" OR "CLASS MEMBERS")**

**THIS NOTICE WAS AUTHORIZED BY THE COURT. IT IS NOT A LAWYER SOLICITATION. PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

**YOU ARE HEREBY NOTIFIED,** pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of Texas ("Court"), that the above-captioned action ("Litigation") has been certified as a class action, except for certain persons and entities who are excluded from the Class by definition as set forth in the Stipulation of Settlement dated June 3, 2024 ("Stipulation") and the detailed Notice of Pendency and Proposed Settlement of Class Action ("Notice"). The Stipulation and Notice can be viewed at www.CabotOilSecuritiesLitigation.com.

**YOU ARE ALSO HEREBY NOTIFIED** that Delaware County Employees Retirement System and Iron Workers District Council (Philadelphia and Vicinity) Retirement and Pension Plan (together, "Plaintiffs"), and defendants Cabot, Dan O. Dinges, and Scott C. Schroeder (collectively, "Defendants") have reached a proposed settlement of the Litigation on behalf of the Class for $40 million in cash ("Settlement"). If approved by the Court, the Settlement will resolve all claims in the Litigation.

**YOU ARE ALSO HEREBY NOTIFIED** that a hearing will be held on October 24, 2024, at 3:00 p.m., before the Honorable Lee H. Rosenthal at the United States District Court, Southern District of Texas, Houston Division, Bob Casey United States Courthouse, 515 Rusk Street, Houston, TX 77002, to determine whether: (1) the Settlement of the above-captioned Litigation as set forth in the Stipulation for $40 million in cash should be approved by the Court as fair, reasonable, and adequate; (2) the Judgment as provided under the Stipulation should be entered dismissing the Litigation with prejudice; (3) to award Plaintiffs' Counsel attorneys' fees and expenses out of the Settlement Fund (as defined in the Notice) and, if so, in what amounts; (4) to award Plaintiffs their costs and expenses in representing the Class out of the Settlement Fund and, if so, in what amounts; and (5) the Plan of Allocation should be approved by the Court as fair, reasonable, and adequate.

There exists the possibility that the Court may decide to change the date and/or time of the Settlement Hearing, conduct the hearing by video or telephonic conference, or otherwise allow Class Members to appear at the hearing by telephone or videoconference, without further written notice to the Class. It is important that you check the website, www.CabotOilSecuritiesLitigation.com, before making any plans to attend the Settlement Hearing. Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person or telephonic appearances at the hearing, will be posted to the website. Also, if the Court requires or allows Class Members to participate in the hearing by telephone or videoconference, the access information will be posted to the website.

IF YOU PURCHASED OR OTHERWISE ACQUIRED CABOT COMMON STOCK BETWEEN FEBRUARY 22, 2016, AND JUNE 12, 2020, INCLUSIVE, AND WERE DAMAGED THEREBY, YOUR RIGHTS ARE AFFECTED BY THE SETTLEMENT OF THIS LITIGATION.

To share in the distribution of the Net Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release form ("Proof of Claim") by mail **(postmarked no later than October 16, 2024)** or electronically via the website **(no later than October 16, 2024)**.[1] Failure to submit your Proof of Claim by October 16, 2024, will subject your claim to rejection and preclude you from receiving any of the recovery in connection with the Settlement of this Litigation. If you are a Class Member and do not request exclusion from the Class (as described below), you will be bound by the Settlement and any judgment and releases entered in the Litigation, including, but not limited to, the Judgment, whether or not you submit a Proof of Claim.

The Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement), the Proof of Claim, the Stipulation (which, among other things, contains definitions for the capitalized terms used in this Summary Notice), and other important documents, may be accessed online at www.CabotOilSecuritiesLitigation.com, or by writing to:

*Cabot Oil Securities Litigation*
Claims Administrator
c/o JND Legal Administration
P.O. Box 91217
Seattle, WA 98111

Inquiries should NOT be directed to Defendants, the Court, or the Clerk of the Court.

Inquiries, other than requests for the Notice or for a Proof of Claim, may be made to Class Counsel:

ROBBINS GELLER RUDMAN & DOWD LLP
Ellen Gusikoff Stewart
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 800/449-4900
settlementinfo@rgrdlaw.com

KESSLER TOPAZ MELTZER & CHECK, LLP
Andrew L. Zivitz
280 King of Prussia Road
Radnor, PA 19087
Telephone: 610/667-7706
info@ktmc.com

IF YOU DESIRE TO BE EXCLUDED FROM THE CLASS, YOU MUST SUBMIT A REQUEST FOR EXCLUSION SUCH THAT IT IS **POSTMARKED BY OCTOBER 3, 2024,** IN THE MANNER AND FORM EXPLAINED IN THE NOTICE. IF YOU PROPERLY EXCLUDE YOURSELF FROM THE CLASS, YOU WILL NOT BE BOUND BY ANY RELEASES, JUDGMENTS, OR ORDERS ENTERED BY THE COURT IN THE LITIGATION AND YOU WILL NOT RECEIVE ANY BENEFITS FROM THE SETTLEMENT. EXCLUDING YOURSELF FROM THE CLASS IS THE ONLY OPTION THAT MAY ALLOW YOU TO BE PART OF ANY OTHER CURRENT OR FUTURE LAWSUIT AGAINST DEFENDANTS OR ANY OF THE OTHER RELEASED DEFENDANT PARTIES CONCERNING THE CLAIMS BEING RESOLVED BY THE SETTLEMENT.

IF YOU ARE A CLASS MEMBER, YOU HAVE THE RIGHT TO OBJECT TO THE SETTLEMENT, THE PLAN OF ALLOCATION, THE REQUEST BY CLASS COUNSEL FOR AN AWARD OF ATTORNEYS' FEES NOT TO EXCEED 33-1/3% OF THE $40 MILLION SETTLEMENT AMOUNT AND EXPENSES NOT TO EXCEED $1,750,000, PLUS INTEREST ON BOTH AMOUNTS, AND/OR THE REQUEST FOR AN AWARD TO PLAINTIFFS FOR THEIR COSTS AND EXPENSES. ANY OBJECTIONS MUST BE FILED WITH THE COURT AND SENT TO CLASS COUNSEL AND DEFENDANTS' COUNSEL **BY OCTOBER 3, 2024,** IN THE MANNER AND FORM EXPLAINED IN THE NOTICE.

BY ORDER OF THE COURT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

[1] Proofs of Claim, requests for exclusion, objections, and other correspondence that are legibly postmarked will be treated as received on the postmark date. Please be advised that the U.S. Postal Service may not postmark mail which is not presented in person.

**www.CabotOilSecuritiesLitigation.com**

# EXHIBIT D

# Robbins Geller Rudman & Dowd LLP and Kessler Topaz Meltzer & Check, LLP Announce Pendency of Class Action and Proposed Settlement for All Persons or Entities who Purchased or Otherwise Acquired Cabot Oil & Gas Corporation Common Stock Between February 22, 2016, and June 12, 2020, Inclusive and Were Damaged Thereby

NEWS PROVIDED BY

**JND Legal Administration** ➞

Jul 25, 2024, 09:25 ET

SEATTLE, July 25, 2024 /PRNewswire/ --

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | § | Civil Action No. 4:21-cv-02045 |
| Plaintiff, | § | <u>CLASS ACTION</u> |
| vs. | § | |
| CABOT OIL & GAS CORPORATION, et al., | § | |
| Defendants. | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |

SUMMARY NOTICE OF PENDENCY AND

PROPOSED SETTLEMENT OF CLASS ACTION

**TO: ALL PERSONS OR ENTITIES WHO PURCHASED OR OTHERWISE ACQUIRED CABOT OIL & GAS CORPORATION ("CABOT") COMMON STOCK BETWEEN FEBRUARY 22, 2016, AND JUNE 12, 2020, INCLUSIVE, AND WERE DAMAGED THEREBY ("CLASS" OR "CLASS MEMBERS")**

**THIS NOTICE WAS AUTHORIZED BY THE COURT.  IT IS NOT A LAWYER SOLICITATION.  PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.**

**YOU ARE HEREBY NOTIFIED**, pursuant to Rule 23 of the Federal Rules of Civil Procedure and an Order of the United States District Court for the Southern District of Texas ("Court"), that the above-captioned action ("Litigation") has been certified as a class action, except for certain persons and entities who are excluded from the Class by definition as set forth in the Stipulation of Settlement dated June 3, 2024 ("Stipulation") and the detailed Notice of Pendency and Proposed Settlement of Class Action ("Notice"). The Stipulation and Notice can be viewed at **www.CabotOilSecuritiesLitigation.com**.

**YOU ARE ALSO HEREBY NOTIFIED** that Delaware County Employees Retirement System and Iron Workers District Counsel (Philadelphia and Vicinity) Retirement and Pension Plan (together, "Plaintiffs"), and defendants Cabot, Dan O. Dinges, and Scott C. Schroeder (collectively, "Defendants") have reached a proposed settlement of the Litigation on behalf of the Class for $40 million in cash ("Settlement").  If approved by the Court, the Settlement will resolve all claims in the Litigation.

**YOU ARE ALSO HEREBY NOTIFIED** that a hearing will be held on October 24, 2024, at 3:00 p.m., before the Honorable Lee H. Rosenthal at the United States District Court, Southern District of Texas, Houston Division, Bob Casey United States Courthouse, 515 Rusk Street, Houston, TX  77002, to determine whether: (1) the Settlement of the above-captioned Litigation as set forth in the Stipulation for $40 million in cash should be approved by the Court as fair, reasonable, and adequate; (2) the Judgment as provided under the Stipulation should be entered dismissing the Litigation with prejudice; (3) to award Plaintiffs' Counsel attorneys' fees and expenses out of the Settlement Fund (as defined in the Notice) and, if so, in what amounts; (4) to award Plaintiffs their costs and expenses in representing the Class out of the Settlement Fund and, if so, in what amounts; and (5) the Plan of Allocation should be approved by the Court as fair, reasonable, and adequate.

There exists the possibility that the Court may decide to change the date and/or time of the Settlement Hearing, conduct the hearing by video or telephonic conference, or otherwise allow Class Members to appear at the hearing by telephone or videoconference, without further written notice to the Class.  It is important that you check the website, **www.CabotOilSecuritiesLitigation.com**, before making any plans to attend the Settlement Hearing.  Any updates regarding the Settlement Hearing, including any changes to the date or time of the hearing or updates regarding in-person or telephonic appearances at the hearing, will be posted to the website.  Also, if the Court requires or allows Class Members to participate in the hearing by telephone or videoconference, the access information will be posted to the website.

If you purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby, your rights are affected by the settlement of this Litigation.

To share in the distribution of the Net Settlement Fund, you must establish your rights by submitting a Proof of Claim and Release form ("Proof of Claim") by mail **(postmarked no later than October 16, 2024)** or electronically via the website **(no later than October 16, 2024)**.[1]  Failure to submit your Proof of Claim by October 16, 2024, will subject your claim to rejection and preclude you from receiving any of the recovery in connection with the Settlement of this Litigation.  If you are a Class Member and do not request exclusion from the Class (as described below), you will be bound by the Settlement and any judgment and releases entered in the Litigation, including, but not limited to, the Judgment, whether or not you submit a Proof of Claim.

The Notice, which more completely describes the Settlement and your rights thereunder (including your right to object to the Settlement), the Proof of Claim, the Stipulation (which, among other things, contains definitions for the capitalized terms used in this Summary Notice), and other important documents, may be accessed online at **www.CabotOilSecuritiesLitigation.com**, or by writing to:

*Cabot Oil Securities Litigation*

Claims Administrator

c/o JND Legal Administration

P.O. Box 91217

Seattle, WA  98111

Inquiries should NOT be directed to Defendants, the Court, or the Clerk of the Court.

Inquiries, other than requests for the Notice or for a Proof of Claim, may be made to Class Counsel:

ROBBINS GELLER RUDMAN & DOWD LLP

Ellen Gusikoff Stewart

655 West Broadway, Suite 1900

San Diego, CA 92101

Telephone: 800/449-4900

**settlementinfo@rgrdlaw.com**

KESSLER TOPAZ MELTZER & CHECK, LLP

Andrew L. Zivitz

280 King of Prussia Road

Radnor, PA  19087

Telephone: 610/667-7706

**info@ktmc.com**

If you desire to be excluded from the Class, you must submit a request for exclusion such that it is **postmarked by October 3, 2024**, in the manner and form explained in the Notice.  If you properly exclude yourself from the Class, you will not be bound by any releases, judgments, or orders entered by the Court in the Litigation and you will not receive any benefits from the Settlement.  Excluding yourself from the Class is the only option that may allow you to be part of any other current or future lawsuit against Defendants or any of the other Released Defendant Parties concerning the claims being resolved by the Settlement.

If you are a Class Member, you have the right to object to the Settlement, the Plan of Allocation, the request by Class Counsel for an award of attorneys' fees not to exceed 33-1/3% of the $40 million Settlement Amount and expenses not to exceed $1,750,000, plus interest on both amounts, and/or the request for an award to Plaintiffs

for their costs and expenses. Any objections must be filed with the Court and sent to Class Counsel and Defendants' Counsel **by October 3, 2024**, in the manner and form explained in the Notice.

BY ORDER OF THE COURT

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

[1] Proofs of Claim, requests for exclusion, objections, and other correspondence that are legibly postmarked will be treated as received on the postmark date. Please be advised that the U.S. Postal Service may not postmark mail which is not presented in person.

SOURCE JND Legal Administration