UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> CABOT OIL & GAS CORPORATION, et al., <br><br> Defendants. | Civil Action 4:21-cv-02045 <br><br> District Judge Lee H. Rosenthal <br><br> <u>CLASS ACTION</u> |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR APPROVAL OF DISTRIBUTION PLAN**

**TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF THE PROCEEDINGS ..........................................................3

II. STATEMENT OF ISSUES TO BE RULED UPON........................................................3

III. SUMMARY OF THE ARGUMENT ................................................................................4

IV. THE NET SETTLEMENT FUND ....................................................................................4

V. CLAIMS ADMINISTRATION........................................................................................5

VI. DISPUTING CLAIMANTS .............................................................................................6

VII. ADMINISTRATIVE DETERMINATIONS FOR CLAIMS ...........................................8

    A. Claims Recommended for Acceptance................................................................8

    B. Claims Recommended for Rejection ..................................................................9

VIII. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ............................................9

IX. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .................................10

X. RELEASE OF CLAIMS.................................................................................................13

XI. RECORD RETENTION AND DESTRUCTION ..........................................................14

XII. CONCLUSION...............................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Baker v. SeaWorld Ent., Inc.*,
  2022 WL 298662 (S.D. Cal. Jan. 31, 2022)................................................................................14

*In re Bumble, Inc. Sec. Litig.*,
  2025 WL 1649669 (S.D.N.Y. June 11, 2025) ...........................................................................14

*In re Forterra Inc. Sec. Litig.*,
  2021 WL 3464255 (N.D. Tex. Aug. 4, 2021).............................................................................14

*Rodriguez v. Alfi, Inc.*,
  2025 WL 2046444 (S.D. Fla. July 22, 2025).............................................................................14

*In re Stable Road Acquisition Corp., Sec. Litig.*,
  2025 WL 924928 (C.D. Cal. Mar. 24, 2025).............................................................................14

Pursuant to Federal Rule of Civil Procedure ("Rule") 23, Delaware County Employees Retirement System and Iron Workers District Counsel (Philadelphia and Vicinity) Retirement and Pension Plan (together, "Plaintiffs"), on behalf of themselves and the Court-certified Class, hereby respectfully move for an order ("Class Distribution Order") which will, *inter alia*: (i) approve the administrative determinations of the Court-appointed Claims Administrator, JND Legal Administration ("JND"), accepting and rejecting the Claims submitted for the Settlement reached in the above-captioned action ("Litigation") as set forth in the Declaration of Luiggy Segura in Support of Plaintiffs' Motion for Approval of Distribution Plan ("Segura Declaration" or "Segura Decl."),[1] submitted herewith; (ii) approve payment of $118,079.13 out of the Net Settlement Fund to JND for the balance of its fees and expenses incurred in connection with administering the Settlement and its estimated fees and expenses to be incurred for work performed in connection with the Initial Distribution of the Net Settlement Fund, plus any monthly charges incurred by JND from the filing of this motion through the entry of the Class Distribution Order; (iii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by JND as valid and approved by the Court ("Authorized Claimants"); (iv) direct that distribution checks issued in the Initial Distribution state that the check must be cashed within ninety (90) days after the issue date; (v) direct that Authorized Claimants will forfeit all recovery from the Settlement if they fail to cash their distribution checks in a timely manner; (vi) approve the recommended plan for redistribution and/or contribution of any funds remaining in the Net Settlement Fund following the Initial Distribution; (vii) release claims related to the administration process; (viii) authorize the destruction of Claims and supporting documents as set forth in the Segura Declaration; and

---

[1] All terms with initial capitalization not defined herein shall have the meanings ascribed to them in the Segura Declaration and in the Stipulation of Settlement previously filed with the Court (ECF 207-7) ("Stipulation").

1

(ix) provide that the Court retains jurisdiction to consider any further applications concerning the administration of the Settlement, and such other and further relief as this Court deems appropriate.

As set forth in the Segura Declaration, there are currently two Claimants with outstanding requests for Court review of JND's administrative determination with respect to their Claims ("Disputing Claimants"). Upon the filing of this motion, Class Counsel will send each Disputing Claimant a copy of this motion and supporting memorandum, the Segura Declaration, Exhibit D to the Segura Declaration along with the supporting documentation that relates to the Disputing Claimant's Claim, and the proposed Class Distribution Order. Class Counsel will inform each Disputing Claimant that they do not need to take any further action to have the Court consider their dispute; however, if the Disputing Claimant wishes to make an additional submission, they should direct it to Your Honor's attention with a copy to Class Counsel postmarked no later than September 30, 2025. If any submission(s) is made, Class Counsel will submit a response by October 7, 2025 addressing such submission(s).

Class Counsel have provided Defendants' Counsel advance notice of this motion. Defendants take no position on the motion.[2]

---

[2] Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation, ¶ 5.11 ("The Released Defendant Parties shall have no responsibility for, interest in, or liability whatsoever with respect to the distribution of the Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of Claims, the payment or withholding of Taxes or Tax Expenses, or any losses incurred in connection therewith.").

2

## I. NATURE AND STAGE OF THE PROCEEDINGS

This Litigation asserted claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendants Cabot Oil & Gas Corporation ("Cabot"),[3] Dan O. Dinges, and Scott C. Schroeder on behalf of a Court-certified Class of investors who purchased or otherwise acquired Cabot common stock between February 22, 2016, and June 12, 2020, inclusive, and were damaged thereby.

Plaintiffs agreed to settle all claims in the Litigation in exchange for a non-reversionary, all-cash payment of $40 million for the benefit of the Class. The Court granted final approval of the Settlement and proposed plan for allocating the Net Settlement Fund to eligible Class Members by its Final Judgment and Order of Dismissal with Prejudice dated October 29, 2024 (ECF 219) and Order Approving Plan of Allocation of Net Settlement Fund dated October 29, 2024 (ECF 218), respectively. Pursuant to the Settlement, the Effective Date has occurred, Claims received through August 5, 2025, have been processed, and the Net Settlement Fund is ready to be distributed to Authorized Claimants. Plaintiffs now move the Court for authorization to distribute the Net Settlement Fund to Authorized Claimants in accordance with the proposed distribution plan set forth at Paragraph 56 of the Segura Declaration ("Distribution Plan").

## II. STATEMENT OF ISSUES TO BE RULED UPON

1. Whether the Court should approve JND's administrative determinations regarding the acceptance and rejection of submitted Claims;

2. Whether the Court should approve payment out of the Net Settlement Fund to JND for the balance of its fees and expenses incurred in connection with administering the Settlement

---

[3] Cabot merged with Cimarex Energy Co. on October 1, 2021, to form Coterra Energy Inc. For sake of simplicity, "Cabot" or the "Company" is used herein.

3

and its estimated fees and expenses to be incurred for work in connection with the Initial Distribution of the Net Settlement Fund, plus any monthly charges incurred from the filing of this motion through the entry of the Class Distribution Order; and

      3.      Whether the Court should approve the recommended plan for distribution of the Net Settlement Fund.

### III. SUMMARY OF THE ARGUMENT

Plaintiffs respectfully submit that the Net Settlement Fund should be distributed to Authorized Claimants pursuant to the Distribution Plan set forth in the Segura Declaration. Pursuant to ¶ 5.3 of the Stipulation, the Effective Date of the Settlement has occurred, claims administration is complete, and the Net Settlement may be distributed to Authorized Claimants. Accordingly, Plaintiffs respectfully request that the Court enter the Class Distribution Order submitted herewith.

### IV. THE NET SETTLEMENT FUND

As set forth in the Stipulation, the Settlement Amount (i.e., $40,000,000) has been deposited into the escrow account established by Class Counsel ("Escrow Account"). In total, $1,655,253.07 in income has been earned on the Settlement Amount through August 31, 2025. In addition, the following amounts have been paid from the Escrow Account: (i) $1,184,593.33 in Notice and Administration Costs to JND (which amount includes reimbursement to brokerage firms/nominees in connection with providing notice);[4] (ii) $835,150.00 in Taxes; and (iii)

---

[4] Under the terms of the Stipulation, Class Counsel were authorized to pay from the Settlement Fund, "…without further approval from Defendants and/or order of the Court, all reasonable costs and expenses actually incurred in connection with providing notice of the Settlement by mail, publication, and other means, locating potential Class Members, assisting with the submission of Claims, processing Proofs of Claim, administering the Settlement, and paying escrow taxes, fees, and costs, if any." Stipulation, ¶ 2.10.

4

$10,248,786.86 in Court-awarded attorneys' fees, expenses, interest, and Plaintiffs' awards.[5] As of August 31, 2025, the balance of the Escrow Account ("Net Settlement Fund") was $29,386,722.88.[6]

## V. CLAIMS ADMINISTRATION

All Claims received by JND through August 5, 2025, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation set forth in the Notice. Segura Decl., ¶ 4.[7] JND has responded to all inquiries regarding the Action, the Settlement, and the procedures for completing and submitting Claims, and has worked with Claimants throughout this administration to help them perfect their Claims. *See generally id.*, ¶¶ 22-32.

As discussed in the Segura Declaration, a large portion of the Claims submitted in connection with the Settlement were initially deficient or ineligible for one or more reasons, including not being signed, not being properly documented, or indicating no eligible transactions in Cabot common stock during the Class Period, and these Claims required additional follow-up work by JND. Segura Decl., ¶¶ 22, 25, 29-32. For Claims that were determined to be deficient, or

---

[5] The Court awarded attorneys' fees in the amount of 30% of the Settlement Fund (i.e., $12,000,000), $1,515,974.05 in litigation expenses, plus interest on the fees and expenses awarded, and reimbursement of costs and expenses to Plaintiffs in the aggregate amount of $12,454.32. *See* Order Awarding Attorneys' Fees and Expenses and Awards to Plaintiffs Pursuant to 15 U.S.C. § 78U-4(A)(4) dated October 29, 2024 (ECF 220), ¶¶ 4, 7, 8. Per the Order, 75% of the attorneys' fees awarded has been paid to Class Counsel from the Settlement Fund, and the remaining 25% of the attorneys' fees will be paid to Class Counsel from the Settlement Fund after the Initial Distribution of the Net Settlement Fund to Authorized Claimants. *Id.*, ¶ 5.

[6] This amount includes the remaining 25% of Court-awarded attorneys' fees that will be held back from the Initial Distribution and paid to Class Counsel after the Initial Distribution.

[7] In anticipation of completing the administration for this Settlement, August 5, 2025, was chosen as the cut-off date after which no additional Claims would be accepted for processing or considered for inclusion in the Initial Distribution of the Net Settlement Fund. Segura Decl., ¶ 37. Claims received or adjusted after August 5, 2025, will be eligible to participate in subsequent distributions subject to the provisions of ¶¶ 56(e)-(f) of the Distribution Plan set forth in the Segura Declaration.

5

ineligible, JND mailed a notice (or sent an email/report in the case of Electronic Claims) to the Claimant describing the defects in their Claim(s) and advising what, if anything, was necessary to complete the Claim(s). *Id.*, ¶¶ 23, 25-28.[8] These notices/emails advised Claimants that they were required to submit the appropriate information and/or documentary evidence to complete their Claim(s) within twenty (20) days from the date of the notice/email or their Claim(s) would be recommended for rejection to the extent the deficiency(ies) or condition(s) of ineligibility were not cured. *Id.*, ¶¶ 23, 26.

Throughout this administration, JND spent considerable time addressing deficient and ineligible Claims and assisting Claimants in curing the deficiencies in their Claims in order to be eligible to participate in the Settlement. As a result of JND's efforts, many Claimants who submitted Claims with curable deficiencies were able to properly complete their Claims and are now eligible to participate in the Settlement and receive a payment from the Net Settlement Fund.

## VI. DISPUTING CLAIMANTS

In addition to advising Claimants what was required to cure their Claim(s), the notices/emails advised Claimants of their right to request an additional review (and ultimately, the Court's review) of their Claim(s) if they contested JND's administrative determination to reject their Claim(s) in whole or in part. Segura Decl., ¶¶ 23, 26(b), 33. During this administration, JND received five requests for Court review. *Id.*, ¶ 34. After additional follow up by JND, one Claimant requesting Court review resolved the deficiencies in their Claim and their request for Court review

---

[8] A sample Deficiency Notice is attached as Exhibit A to the Segura Declaration. For electronic Claims, JND emailed Claimants to notify them of any deficiencies in or the ineligibility of their electronic Claims. These emails attached a report containing detailed information associated with the Claims contained in the electronic submission, including which of the Claims were deficient or rejected. Segura Decl., ¶ 26. A sample Deficiency Email and Deficiency Spreadsheet are attached as Exhibits B and C to the Segura Declaration.

was resolved and the Claim is being recommended for approval. *Id.*, ¶ 34. Another two Claimants requesting Court review understood JND's administrative determination with respect to their Claims and are no longer requesting Court review. *Id.* Accordingly, there are a total of two outstanding requests for Court review that are being submitted to the Court for resolution (the "Disputed Claims"). *Id.*, ¶ 35.

Exhibit D of the Segura Declaration contains the Disputed Claims and the documentation submitted with each of the Disputed Claims. Segura Decl., ¶ 35. For privacy reasons, the documents included in Exhibit D have been redacted to remove personal information such as names, street addresses, email addresses, telephone numbers, account numbers, Social Security Numbers, and all financial and transactional information not related to the Claimants' transactions in Cabot common stock. *Id.*, ¶ 35 n.3.

As detailed in Exhibit D to the Segura Declaration, JND recommends rejection of the two Disputed Claims due to the fact that the Disputing Claimants' transactions in Cabot common stock do not calculate to a Recognized Claim Amount pursuant to the Court-approved Plan of Allocation. *Id.*, ¶ 35. Specifically, when calculated pursuant to the Plan of Allocation, Disputed Claim No. 1 calculates to an overall market gain in Cabot common stock (*see id.*, ¶ 35(a)) and Disputed Claim No. 2 purchased and sold their Cabot common stock between April and May 2020, a period with a decline in inflation of $0.00 (*see id.*, ¶ 35(b)). Despite repeated follow-up, these Disputing Claimants maintain their request for Court review. Class Counsel have reviewed the Disputed Claims and JND's administrative determinations with respect to each Disputed Claim and concurs with JND's recommendations with respect to such Claims.

## VII.   ADMINISTRATIVE DETERMINATIONS FOR CLAIMS

### A.   Claims Recommended for Acceptance

As set forth in the Segura Declaration, a total of 205,512 Claims were received by JND in connection with the Settlement through August 5, 2025. Segura Decl., ¶¶ 7, 42. A total of 33,967 of these Claims have been provisionally accepted by JND. *Id.*, ¶¶ 43-44; *see also id.*, Exs. E & F (listing all accepted Claims and their Recognized Claim Amounts, in Claim number order). Of the 33,967 Claims being recommended for acceptance and approval by the Court, 86 Claims were submitted after the postmark deadline set forth in the notices and Claim Form (i.e., October 16, 2024), but were received by JND on or before August 5, 2025. *Id.*, ¶¶ 36, 44. Although these 86 Claims were submitted late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received for the Settlement, the processing of these late Claims has not delayed the completion of the Claims administration process or the distribution of the Net Settlement Fund. Accordingly, Class Counsel believe that it would be appropriate to allow these Late But Otherwise Eligible Claims to share in the Net Settlement Fund. *See Id.*, ¶ 44.[9]

The total Recognized Claims for the 33,967 Claims being recommended for acceptance is $267,040,458.34 ($265,790,640.91 for the Timely Eligible Claims listed on Exhibit E to the Segura Declaration and $1,249,817.43 for the Late But Otherwise Eligible Claims listed on Exhibit F to the Segura Declaration). Segura Decl., ¶¶ 43-44.[10] Class Counsel respectfully request that the

---

[9]   Pursuant to ¶ 9 of the Preliminary Approval Order: "Notwithstanding the foregoing, Class Counsel may, in their discretion, accept late-submitted Claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund to Authorized Claimants is not materially delayed thereby."

[10]   As estimated by Plaintiffs' damages expert, the Class's reasonably recoverable damages in this Litigation (assuming success by Plaintiffs on all liability and loss causations issues) was approximately $288 million. ECF No. 212, pp 14-15. The total Recognized Claim Amount for the

Court approve JND's administrative determinations with respect to the Claims being recommended for acceptance as listed on Exhibits E and F to the Segura Declaration.

### B.      Claims Recommended for Rejection

Of the total Claims received by JND through August 5, 2025, 171,545 Claims are being recommended for rejection. Segura Decl., ¶ 45; *see also id*., Ex. G (listing all Claims being recommended for rejection and the reasons for rejection, in Claim number order). The 171,545 Claims being recommended for rejection were determined to be ineligible for the following reasons: (i) 134,456 Claims did not result in a Recognized Claim Amount pursuant to the Court-approved Plan of Allocation;[11] (ii) 24,695 Claims had uncured deficiencies; (iii) 12,263 Claims did not fit the Class definition (i.e., these Claims did not reflect any eligible purchase(s) and/or acquisition(s) of Cabot common stock during the Class Period); (iv) 91 Claims were withdrawn by the filer; and (v) 40 Claims were duplicates of Claims previously submitted. *Id.*, ¶ 45. Class Counsel respectfully request that the Court approve JND's administrative determinations with respect to the Claims being recommended for rejection as listed on Exhibit G to the Segura Declaration.

## VIII.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with JND's agreement with Class Counsel to serve as the Claims Administrator for the Settlement, JND was responsible for, among other things, disseminating

---

Claims recommended for acceptance in this Settlement represent a substantial portion (approximately 92%) of the estimated damages amount.

[11]    As explained in the Segura Declaration, 133,791 of the 134,456 Claims that did not result in a Recognized Claim Amount were E-Claims, with 111,250 of these E-Claims being collectively submitted by two E-Claim filers. *See* Segura Decl., ¶ 53. Given the relative ease with which E-Claims can be filed, a recent trend noted by JND is that some E-Claim Filers will submit a high volume of claims without carefully checking whether the claimants are actually class members or whether they qualify for a settlement payment. *Id.*

notice of the Settlement to the Class, maintaining a website and toll-free telephone hotline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. As set forth in the accompanying Segura Declaration, JND has incurred total fees and expenses of $1,152,049.13 through August 31, 2025 in connection with the Settlement. Segura Decl., ¶ 55. Additional charges in the amount of $71,046.25 were incurred, and submitted to JND for payment, by brokerage firms/nominees for their work in connection with providing notice to potential Class Members. *Id*. To date, JND has been paid a total of $1,184,593.33 (which includes the brokerage firm/nominee charges) from the Settlement Fund. *Id*. JND expects to incur an additional $79,577.08 in fees and expenses to conduct the Initial Distribution, and approximately $10,200.00 in monthly fees and expenses during the interim period between submission of this motion and entry of the Class Distribution Order. *Id*.; *see also id*., Ex. H.[12]

Class Counsel respectfully request that the Court approve payment of JND's outstanding fees and expenses as well as the fees and expenses JND expects to incur to conduct the Initial Distribution and direct payment of this amount (i.e., $118,079.13) plus any monthly charges incurred by JND until the Initial Distribution is authorized to JND prior to the Initial Distribution of the Net Settlement Fund.

## IX. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed at this time. Class Counsel, therefore, respectfully request the Court enter an order approving JND's determinations concerning the

---

[12] Should the estimated fees and expenses to conduct the Initial Distribution exceed JND's actual cost to conduct the Initial Distribution, the excess shall be returned to the Net Settlement Fund and will be available for subsequent distributions of the Net Settlement Fund to Authorized Claimants. *Id.*, ¶ 55, n.8.

acceptance and rejection of the Claims received through August 5, 2025, and approving the Distribution Plan set forth at Paragraph 56 of the Segura Declaration.

Under the Distribution Plan, JND will distribute the Net Settlement Fund, after deducting all payments approved by the Court and after payment of any estimated Taxes (i.e., the Initial Distribution). Segura Decl., ¶ 56(a). In the Initial Distribution, JND will calculate award amounts for all Authorized Claimants. *Id.*, ¶ 56(a)(i). JND will first determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the Claimant's Recognized Claim Amount in comparison to the total Recognized Claim Amounts of all Authorized Claimants. *Id*. In accordance with the Court-approved Plan of Allocation, JND will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by JND. *Id.*, ¶ 56(a)(ii). JND will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more ("Distribution Amount"). *Id.*, ¶ 56(a)(iii).

It is expected that not all of the checks sent to Authorized Claimants will be cashed promptly and some of these checks will remain uncashed.[13] Following the Initial Distribution, and after JND has made reasonable and diligent efforts to have Authorized Claimants negotiate their Initial Distribution checks, any balance remaining in the Net Settlement Fund (including from Tax returns, uncashed checks or otherwise) not earlier than six (6) months after the Initial Distribution will, if cost-effective to do so, be redistributed, after deduction of JND's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the

---

[13] In order to encourage Authorized Claimants to promptly deposit their payments, the Class Distribution Order sets forth that all distribution checks in the Initial Distribution state: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY DATE 90 DAYS AFTER ISSUE DATE." Segura Decl., ¶ 56(b).

11

costs for conducting the redistribution), and after deduction of any estimated Taxes, the costs of preparing appropriate Tax returns, and any escrow fees, to Authorized Claimants who cashed their Initial Distribution checks and who would receive at least $10.00 from such redistribution ("Second Distribution"). Segura Decl., ¶ 56(d).

Additional redistributions to Authorized Claimants who have cashed their prior checks and who would receive at least $10.00 on such additional redistributions may occur thereafter if Class Counsel, in consultation with JND, determine that an additional redistribution, after deduction of any additional fees and expenses incurred in administering the Settlement and after deduction of any estimated Taxes, the costs of preparing appropriate Tax returns, and any escrow fees, would be cost-effective. Segura Decl., ¶ 56(d). At such time as it is determined that further redistribution of the funds remaining in the Net Settlement Fund is not cost-effective, Class Counsel request that, in their discretion, they may pay any Claims received after August 5, 2025, or any Claims adjusted after August 5, 2025, their distribution amounts or additional distribution amounts on a *pro rata* basis, to the extent that funds are available, that would bring these Claimants into parity with other Authorized Claimants that have cashed all their prior distribution checks. *Id.*, ¶¶ 56(e)-(f). Otherwise, any remaining balance, after deducting any additional fees and expenses incurred in administering the Settlement and after deducting any estimated Taxes, the costs of preparing appropriate Tax returns, and any escrow fees, will be donated, in accordance with the Court-approved Plan of Allocation, to appropriate non-sectarian, non-profit charitable organization(s) serving the public interest. *Id.*, ¶ 56(e).

If funds remain to be donated, Plaintiffs propose to donate such funds to the National Consumer Law Center ("NCLC"). NCLC is a private, non-sectarian, non-profit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See* Financials,

12

NCLC, https://nclc.org/about-us/financials/ (last visited September 12, 2025). For over 50 years, NCLC has worked to build and strengthen a legal network to provide legal services addressed to two main goals: improving access to the legal system for all people and enabling advocates to seek remedies for low-income people where needed. *See* History, NCLC, https://nclc.org/about-us/history/ (last visited September 12, 2025). NCLC's lawyers provide policy analysis, advocacy, litigation, expert-witness services, and training for consumer advocates throughout the United States. *See* Mission, NCLC, https://nclc.org/aboutus/mission/ (last visited September 12, 2025). Moreover, "NCLC uses its unmatched expertise in consumer law to protect consumers from exploitation and expand access to fair credit by advocating for laws, rules, and regulations that benefit real people: those with low incomes, older people, students, people of color, and others who have been abused, deceived, discriminated against, or left behind in our economy." *See* About Us, NCLC, https://nclc.org/about-us/ (last visited September 12, 2025).

## X.     RELEASE OF CLAIMS

In order to allow for the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons and entities involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of the Litigation, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising from such involvement. Accordingly, Class Counsel respectfully request the Court release and discharge all persons and entities who are involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement of the Litigation, or who are otherwise involved in

the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and, pursuant to the release terms of the Settlement, bar all Class Members, whether or not they are to receive payment from the Net Settlement Fund, from making any further claim against the Net Settlement Fund or the parties released pursuant to the Settlement beyond the amount allocated to them by the Settlement as approved by the Court.[14]

## XI.  RECORD RETENTION AND DESTRUCTION

Class Counsel respectfully request that the Court authorize JND to destroy paper copies of Claims and all supporting documentation one year after the Second Distribution, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution and all electronic copies of the same one year after all funds have been distributed. Segura Decl., ¶ 56(g).

## XII.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court approve their Motion for Approval of Distribution Plan and enter the Class Distribution Order.

---

[14]   Similar language has been routinely approved by courts in connection with the distribution of settlement proceeds. *See, e.g.*, *In re Forterra Inc. Sec. Litig.*, 2021 WL 3464255, at *2 (N.D. Tex. Aug. 4, 2021) ("all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising our of such involvement. All Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claims against the Net Settlement Fund or Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Plaintiffs' Counsel, in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them pursuant to this Order."); *Rodriguez v. Alfi, Inc.*, 2025 WL 2046444, at *2 (S.D. Fla. July 22, 2025) (approving substantially similar language in order authorizing distribution of settlement proceeds); *In re Bumble, Inc. Sec. Litig.*, 2025 WL 1649669, at *3 (S.D.N.Y. June 11, 2025) (same); *In re Stable Road Acquisition Corp., Sec. Litig.*, 2025 WL 924928, at *4 (C.D. Cal. Mar. 24, 2025) (same); *Baker v. SeaWorld Ent., Inc.*, 2022 WL 298662, at *3 (S.D. Cal. Jan. 31, 2022) (same).

Dated: September 16, 2025

Respectfully submitted,

    */s/Darryl J. Alvarado*
ROBBINS GELLER RUDMAN
  &amp; DOWD LLP
DARRYL J. ALVARADO
ELLEN GUSIKOFF STEWART
KEVIN A. LAVELLE
FRANCISCO J. MEJIA
JACK ABBEY GEPHART
655 West Broadway, Suite 1900
San Diego, CA  92101-8498
Telephone:  619/231-1058
619/231-7423 (fax)
dalvarado@rgrdlaw.com
elleng@rgrdlaw.com
klavelle@rgrdlaw.com
fmejia@rgrdlaw.com
jgephart@rgrdlaw.com

*Class Counsel*

KESSLER TOPAZ MELTZER
  &amp; CHECK, LLP
ANDREW L. ZIVITZ
JAMIE M. MCCALL
JOSHUA E. D'ANCONA
MAX JOHNSON
280 King of Prussia Road
Radnor, PA  19087
Telephone:  610/667-7706
610/667-7056 (fax)
azivitz@ktmc.com
jmccall@ktmc.com
jdancona@ktmc.com
mjohnson@ktmc.com

*Class Counsel*

KENDALL LAW GROUP, PLLC
JOE KENDALL (Texas Bar No. 11260700, S.D. Texas Bar No. 30973, Attorney in Charge)
3811 Turtle Creek Blvd., Suite 825
Dallas, TX  75219
Telephone:  214/744-3000

15

214/744-3015 (fax)
jkendall@kendalllawgroup.com

*Local Counsel*

**CERTIFICATE OF SERVICE**

I certify that on September 16, 2025, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to counsel of record by operation of the Court's electronic filing system.

                                            */s/Darryl J. Alvarado*
                                            Darryl J. Alvarado