**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| DELAWARE COUNTY EMPLOYEES RETIREMENT SYSTEM, Individually and on Behalf of All Others Similarly Situated, | Civil Action 4:21-cv-02045 |
|  | District Judge Lee H. Rosenthal |
| Plaintiff, | <u>CLASS ACTION</u> |
| vs. |  |
| CABOT OIL & GAS CORPORATION, et al., |  |
| Defendants. |  |

**DECLARATION OF LUIGGY SEGURA IN SUPPORT OF PLAINTIFFS' MOTION
FOR APPROVAL OF DISTRIBUTION PLAN**

I, LUIGGY SEGURA, declare as follows:

1.     I am the Vice President of Securities Operations for JND Legal Administration ("JND"). I am over 21 years of age and am not a party to the above-captioned action (the "Action").[1] The following statements are based on my personal knowledge and information provided to me by other experienced JND employees, and, if called as a witness, I could and would testify competently thereto.

2.     Pursuant to Paragraph 6 of the Court's Order Preliminarily Approving Settlement and Providing for Notice dated June 27, 2024 (ECF 211, the "Preliminary Approval Order"), JND was appointed as the Claims Administrator to supervise and administer the notice procedure as well as the processing of Claims in connection with the Settlement of the Action. On October 29, 2024, the Court entered the Final Judgment and Order of Dismissal with Prejudice (ECF 219, the "Judgment"), granting final approval of the Settlement reached in the Action. Pursuant to the Settlement, $40,000,000.00 in cash was deposited into escrow for the Class's benefit and, now that the Effective Date of the Settlement has occurred, and claims administration is complete, the Net Settlement Fund is ready for distribution to Authorized Claimants pursuant to order of this Court. *See* Stipulation, ¶¶ 5.3, 7.1.

3.     As Claims Administrator, JND has, among other things: (i) mailed the Postcard Notice, the Notice of Pendency and Proposed Settlement of Class Action (the "Notice"), and the Proof of Claim and Release form (the "Proof of Claim" or "Claim Form" and, together with the Notice, the "Notice Packet") to potential Class Members and nominees; (ii) created and continues to maintain a toll-free telephone helpline for inquiries regarding the Settlement and its

---

[1]     All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in the Stipulation of Settlement dated June 3, 2024 (ECF 207-2, the "Stipulation").

administration; (iii) designed, implemented, and continues to maintain a case-specific website which includes downloadable copies of the Notice and Proof of Claim; (iv) published the Summary Notice; (v) provided, upon request, additional copies of the Postcard Notice and Notice Packet to potential Class Members and nominees; (vi) received and processed Claims submitted in connection with the Settlement; (vii) reviewed submitted Claims for accuracy and completeness and to ensure that they were supported by sufficient documentary evidence; (viii) provided notice to Claimants whose Claims were deficient or rejected; (ix) assisted Claimants in curing any deficiencies in their Claims in order to be eligible to receive a payment from the Settlement; and (x) calculated Claimants' Recognized Claim Amounts, both on an individual and a Class-wide basis, pursuant to the Court-approved Plan of Allocation set forth in the Notice.

4.      JND has completed processing all Claims received through August 5, 2025, in accordance with the terms of the Stipulation and the Court-approved Plan of Allocation set forth in the Notice, and hereby submits its administrative determinations accepting and rejecting the Claims received for the Settlement in preparation for distribution of the Net Settlement Fund to Authorized Claimants. JND also presents this declaration in support of Plaintiffs' Motion for Approval of Distribution Plan.

**DISSEMINATION OF NOTICE**

5.      As more fully described in the Declaration of Luiggy Segura Regarding: (A) Dissemination of the Postcard Notice and Notice Packet; (B) Publication/Transmission of the Summary Notice; (C) Establishment of Call Center Services and Website; and (D) Requests for Exclusion Received to Date, dated September 19, 2024 (ECF 214-3, the "Initial Mailing Decl.") and the Supplemental Declaration of Luiggy Segura Regarding: (A) Continued Dissemination of Notice; (B) Update on Call Center Services and Website; and (C) Requests for Exclusion

3

Received, dated October 17, 2024 (ECF 215-1, the "Supplemental Mailing Decl."), JND mailed a total of 200,303 Postcard Notices and 4,077 Notice Packets to potential Class Members and nominees through October 16, 2024. *See* Supplemental Mailing Decl., ¶ 3. JND has not mailed any additional Postcard Notices or Notice Packets to potential Class Members and nominees since that date.

6.    JND established and continues to maintain a dedicated website, www.CabotOilSecuritiesLitigation.com (the "Settlement Website") and a toll-free telephone helpline (1-877-495-5094) to assist potential Class Members in obtaining information about the Settlement. In connection with establishing and maintaining the Settlement Website and toll-free telephone helpline, JND, among other things, formulated a system to ensure that proper responses were provided to all telephone and electronic inquiries. That work included training telephone agents to respond to inquiries specific to the Settlement; developing a series of common questions and the answers thereto, known as Frequently Asked Questions, or "FAQs"; loading key documents onto the Settlement Website; and programming the Settlement Website to permit the viewing and downloading of those documents.

7.    In accordance with Paragraph 6(c) of the Preliminary Approval Order, JND also caused the Summary Notice to be published once in *The Wall Street Journal* and transmitted once over *PR Newswire* on July 25, 2024. *See* Initial Mailing Decl., ¶ 13.

## PROCEDURES FOLLOWED IN PROCESSING CLAIMS

8.    Under the terms of the Preliminary Approval Order and as set forth in the Postcard Notice and Notice, each Class Member who wished to be eligible to receive a distribution from the Net Settlement Fund was required to complete and submit to JND a properly executed Claim postmarked (or submitted via the Settlement Website or electronically) no later than October 16,

2024, together with adequate supporting documentation for the transactions and holdings reported in the Claim. Through August 5, 2025, JND has received and fully processed 205,512 Claims (the "Presented Claims").[2]

9.      In preparation for receiving and processing Claims, JND: (i) conferred with Class Counsel to define the guidelines for processing Claims; (ii) created a unique database to store Claim details, images of Claims, and supporting documentation (the "Settlement Database"); (iii) trained staff in the specifics of the Settlement so that Claims would be properly processed; (iv) formulated a system so that telephone and email inquiries would be properly responded to; (v) developed various computer programs and screens for entry of Class Members' identifying information and their transactional information; and (vi) developed a proprietary "calculation module" to calculate Recognized Claim Amounts pursuant to the Court-approved Plan of Allocation set forth in the Notice.

10.     Class Members seeking to share in the Net Settlement Fund were directed in the notices to submit their Claims to a post office box specifically designated for the Settlement or through a secure claims-filing portal available on the Settlement Website. Postcard Notices and Notice Packets returned by the United States Postal Service as undeliverable were reviewed for updated addresses and, where available, updated addresses were entered into the Settlement Database and Postcard Notices and Notice Packets were mailed to the updated addresses. Any correspondence received at the post office box was reviewed and, when necessary, appropriate responses were provided to the senders.

---

[2]     The number of Claims received is notably high relative to the number of Postcard Notices and Notice Packets mailed. As further discussed below, the vast majority of Claims were submitted electronically by third-party filers and as noted below, follows recent patterns observed by JND in other, similar securities class actions.

## PROCESSING CLAIMS

### A.     Paper and Online Claims

11.     Of the 205,512 Presented Claims, 1,233 Claims were submitted on paper (370 Claims) or via the claims-filing portal on the Settlement Website provided for individual investors (863 Claims).

12.     Once received, the paper Claims were opened and prepared for scanning. This process included unfolding documents, removing staples, copying nonconforming-sized documents, and sorting documents. This manual task of preparing the paper Claims for processing is very laborious and time-intensive. Once prepared, each Claim was assigned a unique Claim number and scanned into the Settlement Database together with all submitted documentation.

13.     Once scanned, the information from each Claim (including the Claimant's name, address, account number/information from his, her, its, or their supporting documentation, and the Claimant's purchase/acquisition transactions, sale transactions, and holdings listed on the Claim) was entered into the Settlement Database. Once entered into the Settlement Database, each Claim was reviewed to verify that all required information had been provided. The documentation provided by the Claimant in support of his, her, its, or their Claim was reviewed for authenticity and compared to the information provided in the Claim to verify the Claimant's identity and the purchase/acquisition transactions, sale transactions, and holdings listed on the Claim.

14.     To process the transactions detailed in the Claims, JND utilized internal messages to identify and classify deficiency or ineligibility conditions existing within the Claims. Appropriate messages were assigned to the Claims as they were processed. For example, where a Claim was submitted by a Claimant who did not have any eligible transactions in Cabot Oil & Gas Corporation ("Cabot") common stock during the Class Period (*e.g.*, the Claimant purchased Cabot

6

common stock only after the Class Period), that Claim would receive a "Claim-level" message that denoted ineligibility. Similar Claim-level ineligible messages were used to denote other ineligible conditions, such as duplicate Claims. These messages would indicate to JND that the Claimant was not eligible to receive any payment from the Net Settlement Fund with respect to that Claim unless the deficiency was cured in its entirety. Examples of Claim-level messages are as follows:

- The Documentation Provided is Inadequate

- No Documentation was Provided to Support the Claim

- No Purchase was Claimed in the Class Period

15.     Because a Claim may be deficient only in part, but otherwise acceptable, JND also utilized messages that were applied only to specific transactions within a Claim. For example, if a Claimant submitted a Claim with supporting documentation for all but one purchase transaction, that one transaction would receive a "transaction-level" message. These messages indicated that although the transaction was deficient, the Claim was otherwise eligible for payment if other transactions in the Claim calculated to a Recognized Claim Amount pursuant to the Court-approved Plan of Allocation. Thus, even if the transaction-level deficiency was never cured, the Claim could still be partially accepted. Examples of transaction-level messages are as follows:

- No Documentation Provided for Transaction/Position

- Inadequate Documentation Provided for Certain Transaction(s)/Position(s)

- Illegible Documentation Provided for Transaction/Position

**B.      Electronic Claims**

16.     Of the 205,512 Presented Claims, 204,279 were submitted electronically ("Electronic Claims" or "E-Claims"). Electronic Claims filers ("Electronic Claim Filers" or "E-Claim Filers") are typically banks, brokers, nominees and other third-party filers, who submit

claims on behalf of numerous claimants. Because E-Claim Filers typically submit a high volume (hundreds or thousands) of transactions during the class period on behalf of beneficial owners, JND provides E-Claim Filers with the opportunity to mail a computer disc or electronically submit a file containing all the transactions—rather than provide reams of paper requiring data entry—so that JND can load all transactions into the Settlement Database.

17.     JND maintains an electronic filing operations team ("Electronic Filing Team") to coordinate and supervise the receipt and handling of all Electronic Claims. In this case, the Electronic Filing Team reviewed and analyzed each electronic file to ensure that it was formatted in accordance with JND's required format and to identify any potential data issues or inconsistencies within the file. If any issues or inconsistencies arose, JND notified the E-Claim Filer. If the electronic file was deemed to be in an acceptable format, it was then loaded into the Settlement Database.

18.     Once each electronic file was loaded, the Electronic Claims were coded with messages to denote any deficient or ineligible conditions that existed within them. The messages JND used to code Electronic Claims were similar to those applied to paper Claims. However, in lieu of manually applying messages, the Electronic Filing Team performed programmatic reviews on Electronic Claims to identify deficient and ineligible conditions (such as, but not limited to, price out-of-range issues, out-of-balance conditions, transactions outside the Class Period, etc.). The output was thoroughly verified and confirmed as accurate.

19.     The review process also included message coding any Electronic Claims that were not accompanied by a signed Proof of Claim, which serves as a "Master Proof of Claim" for all Claims referenced on the electronic file submitted. This process was reviewed by JND's Electronic Filing Team and, when appropriate, JND contacted the E-Claim Filers whose submissions were

missing information. This ensured that only fully completed Claims, submitted by properly authorized representatives of the Claimants, were considered eligible for payment from the Net Settlement Fund.

20.     Finally, at the end of the process, JND performed various targeted reviews of Electronic Claims. Specifically, JND used criteria such as the calculated Recognized Claim Amounts and other identified criteria to message code and reach out to a number of E-Claim Filers and request that various sample purchases/acquisitions, sales, and holdings selected by JND be documented by providing confirmation slips or other transaction-specific supporting documentation. These targeted reviews help to ensure that the electronic data supplied by Claimants does not contain inaccurate information.

## EXCLUDED PERSONS

21.     JND also reviewed all Claims to ensure that they were not submitted by, or on behalf of, "Excluded Persons," to the extent that the identities of such persons or entities were known to JND through the list of Defendants and other excluded persons and entities set forth in the Stipulation, the Notice, and from the Claimants' certifications on the Claim Forms. JND also reviewed all Claims against the list of persons who were excluded from the Class pursuant to request. *See* Judgment, Ex. 1.

## THE DEFICIENCY PROCESS

### A.     Paper and Online Claims

22.     Approximately 65% of the paper and online Claims received through August 5, 2025, *i.e.*, 807 of the 1,233 Claims submitted either on paper or via the Settlement Website, were incomplete or had one or more defects or conditions of ineligibility, such as the Claim not being signed, not being properly documented, or indicating no eligible transactions in Cabot common

9

stock during the Class Period. The "Deficiency Process," which primarily involved mailing letters to Claimants and responding to communications from Claimants by email and/or telephone, was intended to assist Claimants in properly completing their otherwise deficient submissions so that they could be eligible to participate in the Settlement.

23.     If a paper or online Claim was determined to be defective, a Notice of Deficient/Ineligible Claim Submission ("Deficiency Notice") was sent to the Claimant describing the defect(s) in the Claim and advising what, if anything, was necessary to cure the defect(s) in the Claim. The Deficiency Notice advised the Claimant that submission of appropriate information and/or documentary evidence to complete their Claim was required to be sent to JND within twenty (20) days from the date of the Deficiency Notice or the Claim would be recommended for rejection to the extent that the deficiency or condition of ineligibility was not cured. The Deficiency Notice also advised Claimants that if they disagreed with JND's administrative determination to reject their Claim, they could contest JND's determination and request Court review of their Claim by submitting a written statement to JND setting forth the basis for such request. JND sent a total of 807 Deficiency Notices to Claimants who submitted paper or online Claims that JND determined to be defective. Attached hereto as Exhibit A is a sample Deficiency Notice.

24.     Claimants' responses to Deficiency Notices were scanned into the Settlement Database and associated with the corresponding Claims. The responses were then carefully reviewed and evaluated by JND's team of processors. If a Claimant's response corrected the defect(s) in their Claim, JND manually updated the Settlement Database to reflect the changes in the Claim's status.

### B.     Electronic Claims

25.     Approximately 82% of the E-Claims received through August 5, 2025, *i.e.*, 167,118 of the 204,279 E-Claims, were incomplete or had one or more defects or conditions of ineligibility.

10

JND informed each of the E-Claim Filers of these deficiencies by sending an email ("Deficiency Email") to the email address included with the respective E-Claim Filer's Proof of Claim with an attached report containing detailed information associated with the Claims included within the filing and indicating which of those Claims within the filing were deficient and/or rejected ("Deficiency Spreadsheet"). A sample Deficiency Email and a sample Deficiency Spreadsheet are attached hereto as Exhibits B and C, respectively.

26.     The Deficiency Email sent to the email address of record provided with the E-Claim Filer's Proof of Claim:

(a)     Notified the E-Claim Filer that any Claim(s) with deficiencies not corrected within twenty (20) days from the date of the Deficiency Email may be rejected;

(b)     Advised the E-Claim Filer of his, her, its, or their right to contest the rejection of the Claim(s) and request Court review of JND's administrative determination(s) with respect to the Claim(s); and

(c)     Provided instructions for how to submit corrections to Claim(s).

27.     The Deficiency Spreadsheet attached to the Deficiency Email identified each of the individual Claims that were found to be deficient or ineligible and the basis for that deficiency or condition of ineligibility.

28.     JND emailed a Deficiency Email and Deficiency Spreadsheet to 49 E-Claim Filers. The E-Claim Filers' responses to the Deficiency Emails were reviewed, scanned, and/or loaded into the Settlement Database, and associated with the corresponding Electronic Claims. If a response corrected the defect(s) or affected an Electronic Claim's status, JND manually and/or

programmatically updated the Settlement Database to reflect such change in the status of the Electronic Claim.

### C. Calling Campaign to Claimants Who Did Not Cure Deficiencies

29. JND also called Claimants with still-deficient Claims to provide them with a final opportunity to cure the deficiencies in their Claims.

30. During this calling campaign, when a JND agent spoke with a Claimant, he or she explained to the Claimant that the Claim they submitted was still deficient and advised the Claimant of the steps required to cure the deficiency(s). JND provided assistance to Claimants where possible, depending on the nature of the deficiency(s). For example, if a Claimant needed additional supporting documentation, JND explained the types of documentation that would render the Claim eligible, and how the Claimant could obtain the necessary documentation. JND also provided some Claimants with direct phone numbers and email addresses so that they could receive continued personalized attention and assistance.

31. If JND could not reach a Claimant to speak one-on-one, JND left a voice message, when possible, requesting a return call. JND explained in the voice message that it was calling to assist the Claimant in remedying the outstanding deficiencies in his, her, its, or their Claim. JND also reached out to Claimants via email if a valid email address was provided in their Claim submission.

32. If, in response to a telephone call or email, a Claimant cured the deficiency in his, her, its, or their Claim by providing the appropriate information and/or supporting documentation, JND updated the Settlement Database to reflect the change in the status of the Claim.

## DISPUTED CLAIMS

33.    As noted above, Claimants were advised that they had the right to contest JND's administrative determination of deficiencies or ineligibility with respect to their Claim within twenty (20) days from the date of notification and that they could request that their dispute be submitted to the Court for review. More specifically, Claimants were advised in the Deficiency Notice/Email that, if they disputed JND's administrative determination with respect to their Claim, they had to provide a statement of reasons indicating the grounds for contesting JND's determination, along with supporting documentation, and if the dispute concerning the Claim could not otherwise be resolved, Class Counsel would thereafter present the request for review to the Court for a final determination.

34.    During this administration, JND received requests for Court review for five (5) Claims. JND reached out to each of the Claimants who requested Court review to fully explain JND's administrative determination with respect to their Claim(s) and any additional documentation that had been submitted. As a result of this outreach, the Claimant for one (1) of these Claims was able to resolve the deficiency in their Claim, withdrew their request for Court review, and the Claim is now being recommended for approval; the Claimants for two (2) of these Claims understood the reason for JND's administrative determination to reject their Claims and these Claimants are no longer requesting Court review of their Claims.

35.    There are currently two (2) requests for Court review that remain outstanding (the "Disputing Claimants" or "Disputing Claims"). Attached hereto as Exhibit D are the pending

13

requests for Court review (along with the relevant Claims and documentation submitted with the Claims),[3] which are also summarized below:

a)    **Claim ID: PNEZQ-7XTA8** ("Disputing Claimant No. 1" or "Disputed Claim No. 1"): Disputing Claimant No. 1 submitted a timely Claim with supporting documentation. According to the Claim and supporting documentation, the Claimant made five (5) purchases of Cabot common stock during the Class Period and held all purchased shares through the end of the 90-day look-back period (*i.e.*, September 11, 2020). While these purchases initially calculate to a Recognized Claim/Loss Amount under the Plan of Allocation, when further assessed under the Plan of Allocation's market gain/loss calculation, the purchases result in an overall market gain, resulting in a Recognized Claim Amount of zero.[4] More specifically, pursuant to the formula in the Plan of Allocation for determining market gains/losses, the difference between the Claimant's total purchase amount during the Class Period ($190,620.00) and the Holding Value for all claimed shares (as the Claimant held his shares through the end of the Class Period) ($194,000.00) results in a market gain ($3,380.00). On January 9, 2025, JND mailed a Deficiency Notice to Disputing Claimant No. 1 advising that the Claim was ineligible to participate in the Settlement because it did not calculate to a Recognized Claim Amount pursuant to the Court-approved Plan of Allocation. On January 16, 2025, JND received a call from the Claimant inquiring about the Deficiency Notice he received. JND advised the Claimant

---

[3]    For privacy reasons, the documents in Exhibit D have been redacted to remove the Disputing Claimants' personal information such as names, street addresses, email addresses, telephone numbers, account numbers, Social Security Numbers, and all financial and transactional information not related to the Claimants' transactions in Cabot common stock.

[4]    "If a claimant had a market gain with respect to their overall transactions in Cabot common stock during the Class Period, the value of the claimant's Recognized Claim Amount will be zero." *See* Notice, page 16.

14

of the determination regarding his Claim and directed him to send an email if he had specific questions. On the same day, JND received an email from the Claimant asking for an explanation of the determination of his Claim. On January 21, 2025, after further evaluation of the Claim, JND responded to the Claimant's email with a detailed explanation of how the Claim's Recognized Claim Amount (specifically the market gain) was calculated. On January 23, 2025, JND received the Claimant's response to the mailed Deficiency Notice in which he requested Court review of JND's determination regarding his Claim. In his response, the Claimant asserted that he had demonstrated ownership of the Cabot common stock during the Class Period. On February 3, 2025, JND followed up with the Claimant by email, asking for confirmation on whether the detailed explanation JND provided satisfied the Claimant's request for Court review. On February 4, 2025, JND called the Claimant to further discuss its administrative determination with respect to his Claim. On the call, the Claimant noted that he understood the Claim's Recognized Claim Amount was calculated according to the Plan of Allocation but did not agree that he should not be considered eligible for payment. On the call, the Claimant also stated that he would consider resolving his request for Court review. On February 11, 2025, JND followed up with the Claimant by email to inquire whether he had decided to withdraw his request for Court review. On February 18, 2025, JND called and further spoke with the Claimant, who again stated that although he understood the determination with respect to his Claim, he believed he should be eligible for payment and wanted to maintain his request for Court review. JND recommends that Disputed Claim No. 1 be rejected because it does not calculate to a Recognized Claim Amount pursuant to the Plan of Allocation

15

due to the Claimant having an overall market gain in his transactions in Cabot common stock.

b)   **Claim ID: PWZQK-VUX9B** ("Disputing Claimant No. 2" or "Disputed Claim No. 2"): Disputing Claimant No. 2 submitted a late Claim with no supporting documentation. The Claim indicated one (1) sale of Cabot common stock during the 90-day look-back period and no other transactions or holdings. On January 9, 2025, JND mailed a Deficiency Notice to Disputing Claimant No. 2 advising that the Claim was ineligible to receive a payment from the Settlement because it did not claim any purchases of Cabot common stock during the Class Period. On February 4, 2025, JND received the Claimant's response to the Deficiency Notice in which he requested Court review of JND's determination regarding his Claim. In his response, the Claimant did not provide a basis for disputing JND's determination with respect to his Claim, but directed JND to enclosed documentation indicating that he purchased Cabot common stock during the Class Period. JND accordingly updated the Claim to include the Claimant's one (1) purchase of Cabot common stock on April 9, 2020. On February 11, 2025, JND contacted the Claimant by email to inform him that the Claim had been updated with the additional information provided but still lacked documentation for the sale transaction. On February 15, 2025, the Claimant responded by email with documentation indicating one (1) additional purchase of Cabot common stock during the Class Period on May 5, 2020 and one (1) additional sale of Cabot common stock during the Class Period on May 5, 2020 (which appeared to reflect the sale of all previously purchased shares). JND again updated the Claim accordingly and followed up with the Claimant by email on February 18, 2025 to again inquire about documentation for his originally claimed 90-day look-back period

16

sale transaction. According to the Court-approved Plan of Allocation, the Recognized Loss Amount for shares "sold from July 26, 2019 through June 12, 2020, inclusive . . . will be the lesser of: (i) the decline in inflation during the holding period (as presented in Table 1 of the Notice), or (ii) the purchase price minus the sale price." *See* Notice, page 15. As all documented transactions took place between April and May 2020, the decline in inflation per share is zero for those shares, and the Recognized Claim Amount for those transactions is zero. On February 28, 2025, JND attempted to contact the Claimant by phone, but was unable to reach the Claimant or leave a voicemail. On the same day, JND followed up with the Claimant by email to inform the Claimant of the updated determination for his Claim and provide a detailed explanation of the calculation of his Claim's Recognized Claim/Loss Amount. On March 3, 2025, JND again attempted to call the Claimant, but was unable to connect using the phone number provided. JND followed up with additional emails between May 12, 2025 and May 16, 2025, but has received no further response from the Claimant by phone or email. JND recommends Disputed Claim No. 2 be rejected because it does not calculate to a Recognized Claim Amount pursuant to the Court-approved Plan of Allocation.

**LATE BUT OTHERWISE ELIGIBLE CLAIMS**

36.    Of the Presented Claims, 180 Claims were received or postmarked after the October 16, 2024 Claim-submission deadline established by the Court but received on or before August 5, 2025. JND has processed all late Claims received through August 5, 2025 and 86 of these Claims have been found to be otherwise eligible in whole or in part (the "Late But Otherwise Eligible Claims"). JND has not rejected any Claim received through August 5, 2025, solely based on its late submission. In fact, in securities cases, it is typical for courts to accept

17

claims submitted after the claim-submission deadline but while timely claims are still being processed. Therefore, to the extent these Claims are eligible but for the fact that they were submitted late, they are recommended for payment by JND, subject to the Court's determination.

37.     However, there must be a final cut-off date after which no more Claims will be accepted so that there may be a proportional allocation of the Net Settlement Fund and the distribution may be accomplished. Acceptance of additional Claims or responses to Deficiency Notices/Emails received during the finalization of the administration and the preparation of this declaration would necessarily require a delay in the distribution. Accordingly, JND respectfully requests that this Court order that no Claim received or adjusted after August 5, 2025, be eligible for payment for any reason whatsoever subject only to the provision of ¶ 56(f) of the proposed distribution plan discussed below. Class Counsel approve this Claim cut-off date. If the Court adopts the proposed distribution plan set forth herein, then, after Class Counsel have determined that further distributions are not cost-effective and before any contribution of the residual funds to charity, if sufficient funds remain to warrant the processing of Claims received after August 5, 2025, these Claims will be processed and, if any of these Claims would have been eligible if timely received, these Claimants will be paid their distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent permitted by the amount of remaining funds. *See* ¶ 56(e) below. Likewise, with respect to previously-submitted Claims that are cured or adjusted after August 5, 2025, such Claims will be reevaluated upon receipt of the adjustment and, to the extent that they are found eligible for a distribution or additional distribution, they will be treated in the same manner as Claims received after August 5, 2025. *See* ¶ 56(f) below. Should an adjustment be received that

18

results in a lower Recognized Claim Amount, however, that adjustment will be made, and the Recognized Claim Amount will be reduced accordingly prior to a distribution to that Claimant.

## QUALITY ASSURANCE

38.    An integral part of the claims administration process in any settlement JND handles is the Quality Assurance review. Throughout this administration, JND's Quality Assurance personnel worked to verify that Claims were processed properly by ensuring that information was entered correctly into the Settlement Database, deficiency and/or rejection message codes were assigned accurately, and Deficiency Notices/Emails were sent appropriately. After all Claims were processed, Deficiency Notices/Emails were mailed and/or emailed, and Claimants' responses to Deficiency Notices/Emails were reviewed and processed, JND's Quality Assurance personnel performed additional Quality Assurance reviews. These final Quality Assurance reviews further ensured the correctness and completeness of all Claims processed prior to preparing this declaration and all of JND's final documents in support of distribution of the Net Settlement Fund. As part of the Quality Assurance reviews, JND:

(a)    Verified that all Proofs of Claim had signatures of authorized individuals;

(b)    Verified that true duplicate Claims were identified, verified, and rejected;

(c)    Verified that persons and entities excluded from the Class did not submit Claims or their Claims were rejected upon review;

(d)    Performed a final Quality Assurance audit of Claims and all supporting documentation to ensure completeness of Claims;

(e)    Performed an audit of deficient Claims;

(f)    Performed an additional review of Claims with high Recognized Claim Amounts;

19

(g)     Audited Claims that were designated invalid;

(h)     Audited Claims with a Recognized Claim Amount equal to zero;

(i)     Performed other auditing based on Claims completion requirements and the approved calculation specifications based on the Court-approved Plan of Allocation; and

(j)     Re-tested the accuracy of the Recognized Claim Amount calculation program.

39.     In support of the work described above, JND's computer staff designed and implemented, and the project team tested, the following for this administration: (i) data entry screens that store Claim information (including all transactional data included on each Claim) and attach messages and, where necessary, text to denote conditions existing within the Claim; (ii) programs to load and analyze transactional data submitted electronically for all Electronic Claims; (iii) a program to compare the claimed transaction prices against the reported market prices to confirm that the claimed transactions were within an acceptable range of the reported market prices; (iv) a calculation program to analyze the transactional data for all Claims, and calculate each Claimant's Recognized Claim Amount pursuant to the Court-approved Plan of Allocation; and (v) programs to generate various reports throughout and at the conclusion of the administration, including lists of all eligible and ineligible Claims.

40.     JND also used a variety of fraud protection controls throughout the administration to identify potential fraudulent Claims. Duplicate claim searches, high value reviews, spot reviews, and other standard audit reports that examined the information in a variety of ways were used during this administration.

20

41.    Also, as part of its due diligence in processing the Claims, JND reviewed and compared the entire Settlement Database against its "watch list" of known questionable filers that JND has developed throughout its years of experience as a Claims Administrator. JND works closely with law enforcement to update its watch list with the latest information available. JND performs searches based on names, aliases, addresses, and city/zip codes. In addition, JND's claim processors are trained to identify any potentially inauthentic documentation when processing claims, including claims submitted by claimants not previously captured on the "watch list." Processors are instructed to apply a message code to any claim that matches a record on the "watch list" or any claim that appears to be potentially fraudulent and escalate to management for further review. In this administration, JND's fraud protection procedures identified one (1) potentially fraudulent Claim necessitating further review and verification. Following this additional review, JND is recommending the Claim for rejection.

### RECOMMENDATIONS FOR APPROVAL AND REJECTION OF CLAIMS

42.    As noted above, JND has received a total of 205,512 Claims through August 5, 2025 (*i.e.*, the Presented Claims).

#### A.    Timely Submitted and Valid Claims

43.    Of the Presented Claims, a total of 205,332 Claims were received or postmarked on or before the Claim-submission deadline of October 16, 2024. Of these 205,332 Claims, 33,881 were determined by JND to be eligible and are recommended for approval (the "Timely Eligible Claims"). The total Recognized Claim Amount for the Timely Eligible Claims is $265,790,640.91. A list of the Timely Eligible Claims showing each Claimant's Recognized Claim Amount is attached hereto as Exhibit E.

21

## B.    Late But Otherwise Eligible Claims

44.    Of the Presented Claims, a total of 180 Claims were received or postmarked after the Claim-submission deadline of October 16, 2024, but received on or before August 5, 2025. Of these 180 Claims, 86 were determined by JND to be otherwise eligible and are recommended for approval (*i.e.*, the Late But Otherwise Eligible Claims). The total Recognized Claim Amount for the Late But Otherwise Eligible Claims is $1,249,817.43. A list of the Late But Otherwise Eligible Claims showing each Claimant's Recognized Claim Amount is attached hereto as Exhibit F.

## C.    Rejected Claims

45.    After the responses to Deficiency Notices/Emails were processed, a total of 171,545 Claims remain recommended for rejection (the "Rejected Claims") for the following reasons:

- 134,456 Claims Did Not Result in a Recognized Claim Amount pursuant to the Court-approved Plan of Allocation;

- 12,263 Claims Did Not Fit the Definition of the Class;

- 24,695 Claims were Deficient and Never Cured;

- 40 Claims were Duplicate Claims; and

- 91 Claims were Withdrawn.

46.    A list of the Rejected Claims with the reasons for rejection is attached hereto as Exhibit G.

### BREAKDOWN OF REASONS FOR REJECTED CLAIMS THAT DID NOT RESULT IN A RECOGNIZED CLAIM AMOUNT

47.    As noted above, JND recommends 134,456 Claims for rejection because they did not result in a Recognized Claim Amount under the Court-approved Plan of Allocation, which outlines the formula for calculating "Recognized Claim Amounts" for Cabot common stock purchased or otherwise acquired during the Class Period. The Plan of Allocation provides that if any Recognized

22

Claim Amount calculates to a negative number or zero under the Plan of Allocation, it is set to zero. *See* Notice, page 15. The Plan of Allocation also provides that a Claimant's Recognized Claim Amount will be capped at the amount of the "market loss" that the Claimant suffered on its transactions in Cabot common stock during the Class Period, *see* Notice, pages 16-17, and set to zero if the Claimant has an overall "market gain" on those transactions, *see id.*

48.     Claims rejected because they did not calculate to a Recognized Claim Amount under the Court-approved Plan of Allocation were rejected for one of four principal reasons:

| Reason for Rejection | Number of Claims |
| --- | --- |
| Shares were not held over a corrective disclosure | 54,826 |
| Transactions resulted in an overall market gain and set to zero | 56,889 |
| All shares purchased in the Class Period were to cover short sales | 226 |
| The Recognized Claim Amount calculated to zero for a combination of reasons under the Plan of Allocation | 22,515 |
| **Total** | **134,456** |

49.     **Shares Not Held Over A Corrective Disclosure**: JND identified 54,826 Claims that had eligible purchases or acquisitions of Cabot common stock during the Class Period but none of the claimed purchased/acquired shares were held through an alleged corrective disclosure date (*i.e.*, July 26, 2019 and June 15, 2020). Specifically, this category includes (i) Claims in which Cabot shares were purchased during the Class Period and sold prior to the first alleged corrective disclosure on July 26, 2019 and (ii) Claims in which Cabot shares were purchased after the first alleged corrective disclosure on July 26, 2019 and sold prior to the second alleged corrective disclosure on June 15, 2020. *See* Notice, page 15. In such cases, because the Claimants did not hold their shares over at least one of the dates in which the artificial inflation was allegedly removed from the price

of Cabot common stock, they were not injured by Defendants' alleged misconduct in the Action and therefore have no Recognized Claim Amount.

50.    **Overall Market Gain and Set to Zero**: JND identified 56,889 Claims that included at least some shares of Cabot common stock that were held through a corrective disclosure, but nonetheless had no overall market loss, and therefore, no Recognized Claim Amount pursuant to the Court-approved Plan of Allocation. Under the Plan of Allocation, a Claimant must have a market loss with respect to his, her, its, or their overall transactions in Cabot common stock during the Class Period in order to be eligible for payment. *See* Notice, pages 16-17. More specifically, for purposes of determining whether a claimant had a market gain, or suffered a market loss, with respect to his, her, its, or their overall transactions in Cabot common stock during the Class Period, JND determined the difference between (i) the Total Purchase Amount[5] and (ii) the sum of the Total Sales Proceeds[6] and Holding Value.[7] If a Claimant had an overall market gain, the Claimant's Recognized Claim Amount would be set to zero pursuant to the Plan of Allocation, and the Claimant would not be eligible to receive a payment in the Settlement. *See id*.

51.    **Short Sales**: JND identified 226 Claims where relevant purchases of Cabot common stock during the Class Period were purchases to cover a prior short position of the stock ("short sales"). Given that selling short and purchasing to cover a "short sale" is an investment strategy by

---

[5]    The Total Purchase Amount is the total amount the Claimant paid (excluding commissions and other charges) for Cabot common stock purchased or acquired during the Class Period.

[6]    Pursuant to the Plan of Allocation, JND matched sales of Cabot common stock from the start of the Class Period through and including the close of trading on June 12, 2020, first against the Claimant's opening position (the proceeds of which are not considered for purposes of calculating market gains or losses). The Total Sales Proceeds is the total amount received (excluding commissions and other charges) for the remaining sales of Cabot common stock sold from the start of the Class Period through and including the close of trading on June 12, 2020.

[7]    The Holding Value ascribed to each share of Cabot common stock purchased or acquired during the Class Period and still held as of the close of trading on June 12, 2020, is $19.40.

24

which an investor is attempting to profit from the decline in the price of the security (and therefore would not result in being "damaged" by the Defendants' alleged actions), the Recognized Claim Amount on "short sales" and purchases covering a "short sale" is zero.

52.     **Claims Rejected for a Combination of Reasons**: JND also identified 22,515 Claims that calculated to a Recognized Claim Amount of zero as the result of the application of different provisions of the Plan of Allocation to different transactions within the Claim. For example, Claims may have contained one or more transactions where shares of Cabot common stock were purchased and sold prior to July 26, 2019 (resulting in no Recognized Claim Amount on those transactions for that reason) and a separate transaction in which shares of Cabot common stock were held past July 26, 2019 but the shares were sold for a gain (resulting in a Recognized Claim Amount of zero), so the Claim as a whole would have a Recognized Claim Amount of zero.

53.     Notably, of the 134,456 Claims that did not result in a Recognized Claim Amount, 133,791 were E-Claims, and 111,250 of those E-Claims were submitted collectively by two E-Claim Filers which also submitted the highest number of Rejected Claims overall. Claims rejected for other reasons followed a similar pattern, with the majority of those being E-Claims filed by select E-Claim Filers. Given the relative ease with which E-Claims can be filed, a recent trend of note is that some E-Claim Filers will submit a high volume of claims without carefully checking whether the claimants are class members or qualify for a settlement payment.

54.     The percentage of rejected Claims for this Settlement (whether rejected for no Recognized Claim Amount or for other reasons) is within the range that has been seen by JND in these types of securities class actions in recent years.

## ADMINISTRATION FEES AND DISBURSEMENTS

55.    JND agreed to serve as the Claims Administrator in exchange for the payment of its fees and out-of-pocket expenses. JND's total fees and expenses for this matter through August 31, 2025 are $1,152,049.13. In addition, in accordance with the Notice (*see* page 20), brokerage firms and nominees have submitted charges to JND for another $71,046.25 for their work in connection with providing notice to potential Class Members. JND anticipates incurring monthly fees and expenses of approximately $10,200.00 until the Court enters an order authorizing distribution of the Net Settlement Fund to the Class ("Class Distribution Order"), and anticipates that it will incur $79,577.08 for work performed in conjunction with the Initial Distribution (defined below).[8] *See* Exhibit H hereto. To date, JND has been reimbursed $1,184,593.33 from the Settlement Fund,[9] which includes its fees and expenses through August 31, 2025, as well as broker/nominee charges to date. Accordingly, there is an outstanding balance of $118,079.13, plus the anticipated monthly charges until the initial distribution is authorized. JND respectfully requests payment of its fees and expenses, as reflected in the invoices attached hereto as Exhibit H, along with incurred monthly fees and expenses during the interim period between submission of this declaration and entry of the Class Distribution Order, as outlined above.

---

[8]    Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund and will be available for a subsequent distribution to Authorized Claimants.

[9]    In accordance with the Stipulation, "notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Class Counsel may pay, without further approval from Defendants and/or order of the Court, all reasonable costs and expenses actually incurred in connection with providing notice of the Settlement by mail, publication, and other means, locating potential Class Members, assisting with the submission of Claims, processing Proofs of Claim, administering the Settlement, and paying escrow taxes, fees, and costs, if any." Stipulation, § 2.10.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

56.     Should the Court concur with JND's determinations concerning the provisionally accepted and rejected Claims, including the Late But Otherwise Eligible Claims, JND recommends the following distribution plan (the "Distribution Plan"):

(a)     JND will conduct an initial distribution (the "Initial Distribution") of the Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any estimated Taxes, as follows:

(i)     JND will calculate award amounts for all Authorized Claimants. In accordance with the Court-approved Plan of Allocation, JND will calculate each Authorized Claimant's *pro rata* share of the Net Settlement Fund based on the amount of the Authorized Claimant's Recognized Claim Amount in comparison to the total Recognized Claim Amounts of all Authorized Claimants. *See* Notice, ¶ 23, pg. 16.

(ii)     JND will, pursuant to the terms of the Court-approved Plan of Allocation, eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00. *See id*. These Claimants will not receive any payment from the Net Settlement Fund, and JND will send these Claimants a postcard advising them of that fact.

(iii)     After eliminating Claimants who would have received less than $10.00, JND will recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or

more pursuant to the calculations described in ¶ 56(a)(i) above. This

*pro rata* share is the Authorized Claimant's "Distribution Amount."

(b)  In order to encourage Authorized Claimants to promptly deposit their payments, all distribution checks in the Initial Distribution will bear a notation: "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY DATE 90 DAYS AFTER ISSUE DATE."[10]

(c)  Authorized Claimants who do not cash their Initial Distribution checks within the time allotted or on the conditions set forth in footnote 10 will irrevocably forfeit all recovery from the Settlement. The funds allocated to all such stale-dated checks will be available to be redistributed to other Authorized Claimants, if Class Counsel, in consultation with JND, determine that it is cost-effective to conduct a second distribution. Similarly,

---

[10]  For Authorized Claimants whose checks are returned as undeliverable, JND will endeavor to locate new addresses by running the undeliverable addresses through address-lookup services. Where a new address is located, JND will update the Settlement Database accordingly and reissue a distribution check to the Authorized Claimant at the new address. In the event an Authorized Claimant loses or damages his, her, its, or their check, or otherwise requires a new check, JND will issue replacements. Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check where appropriate. For all checks, JND will void the initial payment prior to reissuing a payment. In order not to delay further distributions to Authorized Claimants who have timely cashed their checks, JND's outreach program, described in the preceding sentences, shall end 30 days after the initial void date. Authorized Claimants will be informed that, if they do not cash their Initial Distribution checks within 90 days of the mail date, or they do not cash check reissues within 30 days of the mailing of such reissued check, their check will lapse, their entitlement to recovery will be irrevocably forfeited, and the funds will be reallocated to other Authorized Claimants. Reissue requests for lost or damaged checks will be granted after the void date on the checks as long as the request for the reissue is received no later than 45 days prior to the next planned distribution. Requests for reissued checks in connection with any subsequent distributions (should such distributions occur) will be handled in the same manner.

Authorized Claimants who do not cash their second or subsequent distribution checks (should such distributions occur) within the time allotted or on the conditions set forth in footnote 10 will irrevocably forfeit any further recovery from the Settlement.

(d)     Consistent with the Court-approved Plan of Allocation, after JND has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, which efforts shall consist of the follow-up efforts described in footnote 10, but not earlier than six (6) months after the Initial Distribution, JND will, if Class Counsel, in consultation with JND, determine that it is cost-effective to do so, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). *See id.*, pg. 17. Any amounts remaining in the Net Settlement Fund after the Initial Distribution (including from Tax refunds., uncashed checks, or otherwise), after deducting JND's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the costs for conducting the Second Distribution), and after deducting any estimated Taxes, the costs of preparing appropriate Tax returns, and any escrow fees, will be distributed to all Authorized Claimants who cashed their Initial Distribution check and who would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. Additional distributions, after deduction of any additional fees and expenses as described above and subject to the same conditions, may occur thereafter until Class Counsel, in consultation with JND, determine that further distribution is not cost-effective. *See id.*

(e) At such time as Class Counsel, in consultation with JND, determine that further distribution of the funds remaining in the Net Settlement Fund is not economically feasible, if sufficient funds remain to warrant the processing of Claims received after August 5, 2025, such Claims will be processed, and any such Claims that are otherwise valid as well as any earlier received Claims for which an adjustment was received after August 5, 2025, which resulted in an increased Recognized Claim Amount, will be paid in accordance with ¶ 56(f) below. If any funds remain in the Net Settlement Fund after payment of such late or late-adjusted Claims, the remaining balance of the Net Settlement Fund, after deducting any additional fees and expenses incurred in connection with administering the Settlement and after deducting any estimated Taxes, the costs of preparing appropriate Tax returns, and any escrow fees, will be donated to any appropriate non-sectarian, non-profit charitable organization(s) serving the public interest. *See id.*

(f) No new Claims may be accepted after August 5, 2025, and no further adjustments to Claims received on or before August 5, 2025, that would result in an increased Recognized Claim Amount may be made for any reason after August 5, 2025, subject to the following exception. If Claims are received after August 5, 2025 or modified after August 5, 2025, that would have been eligible for payment or additional payment under the Plan of Allocation if timely received, then, at the time that Class Counsel, in consultation with JND, determine that a redistribution is not cost-effective

30

as provided in ¶ 56(e) above, and after deducting any additional fees and expenses incurred in connection with administering the Settlement and after deducting any estimated Taxes, the costs of preparing appropriate Tax returns, and any escrow fees, such Claimants, at the discretion of Class Counsel, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks to the extent possible.

(g)    Unless otherwise ordered by the Court, one (1) year after the Second Distribution, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, JND may destroy the paper copies of Claims and all supporting documentation, and one (1) year after all funds have been distributed, JND may destroy electronic copies of the same.

## CONCLUSION

57.    JND respectfully requests that the Court enter an order approving its administrative determinations accepting and rejecting the Claims submitted herein and approving the proposed Distribution Plan. JND further respectfully submits that the fees and expenses it expects to incur in connection with conducting the Initial Distribution and the total monthly fees and expenses incurred during the period between submission of this declaration and entry of the Class Distribution Order, as reflected on the invoices attached hereto as Exhibit H, should be approved for payment from the Settlement Fund.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed in New Hyde Park, New York, on September 15th, 2025.

_____
Luiggy Segura